1  MICHAEL A. JACOBS (SBN 111664)
   MJacobs@mofo.com
2  JOSEPH C. GRATZ (SBN 240676)
   JGratz@mofo.com
3  TIFFANY CHEUNG (SBN 211497)
   TCheung@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone:    (415) 268-7000
6  Facsimile:    (415) 268-7522
   [CAPTION PAGE CONTINUED ON NEXT PAGE]
7

8  Attorneys for Defendants OPENAI, INC., a Delaware nonprofit
   corporation, OPENAI, L.P., a Delaware limited partnership,
9  OPENAI GP, L.L.C., a Delaware limited liability company,
   OPENAI STARTUP FUND GP I, L.L.C., a Delaware limited
10 liability company, OPENAI STARTUP FUND I, L.P., a
   Delaware limited partnership, OPENAI STARTUP FUND
11 MANAGEMENT, LLC, a Delaware limited liability company

12                    **UNITED STATES DISTRICT COURT**

13                   **NORTHERN DISTRICT OF CALIFORNIA**

14                       **SAN FRANCISCO DIVISION**

15

16 | J. DOE 1 and J. DOE 2, individually and on behalf of all others similarly situated, | Case No.  4:22-cv-06823-JST |
   | | 4:22-cv-07074-JST |

17 |                     Plaintiffs, | Hon. Jon S. Tigar |

18 |                          v. | **CLASS ACTION** |

19 | GITHUB, INC., a Delaware corporation; MICROSOFT CORPORATION, a Washington corporation; OPENAI, INC., a Delaware nonprofit corporation; OPENAI, L.P., a Delaware limited partnership; OPENAI GP, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND GP I, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND I, L.P., a Delaware limited partnership; OPENAI STARTUP FUND MANAGEMENT, LLC, a Delaware limited liability company, | **DEFENDANTS OPENAI, INC., OPENAI, L.P., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I, L.L.C., OPENAI STARTUP FUND I, L.P. AND OPENAI STARTUP FUND MANAGEMENT, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |

20

21

22

23

24 |                     Defendants. | Date:      May 4, 2023 |
   | | Time:      2:00 p.m. |
   | | Courtroom: 6 |

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROSE S. LEE (SBN 294658)
RoseLee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone:    (213) 892-5200
Facsimile:    (213) 892-5454

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 4, 2023  at 2:00 p.m., or at a different time and date set by the Court, Defendants OPENAI, INC., OPENAI, L.P., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I, L.L.C., OPENAI STARTUP FUND I, L.P. AND OPENAI STARTUP FUND MANAGEMENT, LLC (hereinafter "OPENAI ENTITIES"), by and through counsel, will and hereby do move the Court to dismiss all claims asserted in the Complaint against the OpenAI Entities: (1) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, *et seq.*; (2) breach of contract; (3) "tortious interference in a contractual relationship"; (4) false designation of origin under the Lanham Act, 15 U.S.C. § 1125; (5) unjust enrichment under common law and California Business & Professions Code § 17200, *et seq.*; (6) unfair competition under common law, the Lanham Act, 15 U.S.C. § 1125, and California Business & Professions Code § 17200, *et seq.*; (7) violations of the California Consumer Privacy Act ("CCPA"), California Civil Code § 1798.150; (8) negligence; (9) civil conspiracy; and (10) declaratory relief.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities included herewith, the Declaration of Michael Jacobs and attached exhibits, the Proposed Order submitted herewith, all pleadings and papers on file in this action, and such further evidence that may be submitted to the Court or before the hearing.

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................. 1

II.  PLAINTIFFS' ALLEGATIONS ......................................................... 2

III.  LEGAL STANDARD ......................................................................... 3

    A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction................... 3

    B.  Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6). ..... 4

IV.  ARGUMENT ...................................................................................... 5

    A.  The Complaint Fails for Reasons Applicable to All Causes of Action.......... 5

        1.  Plaintiffs Lack Article III Standing to Assert Their Claims. ...... 5

        2.  Plaintiffs Have Failed to Obtain Leave to Proceed Anonymously. ........... 6

        3.  The Complaint's Undifferentiated Allegations Against the Six OpenAI Entities Fail to Satisfy Pleading Requirements. ......................... 7

    B.  The Copyright Act Preempts Several State Law Causes of Action. ..... 8

    C.  Plaintiffs' Claims Fail for Reasons Specific to Each Claim. ................. 9

        1.  Plaintiffs' DMCA Claim Should be Dismissed. ......................... 9

            a.  Plaintiffs Have Not Properly Pled a Claim for Removal of CMI. ...... 9

            b.  Plaintiffs Have Failed to Plead a Claim for Distributing Copies of Works from Which CMI Has Been Removed. ...... 12

            c.  Plaintiffs Have Failed to Show that OpenAI Has Conveyed Any False CMI in Connection with Copilot Outputs. ......... 13

        2.  Plaintiffs' Breach of Contract Claim Fails. ............................. 13

            a.  Plaintiffs Have Not Sufficiently Pled Existence of a Contract. ...... 14

            b.  Plaintiffs Fail to Allege Facts Demonstrating the Contractual Provisions OpenAI Entities Allegedly Breached. ...... 14

        3.  The Claim for Tortious Interference in Contractual Relationship Fails. ...... 15

        4.  Plaintiffs Fail to Allege a False Designation of Origin Claim. ..... 16

        5.  Plaintiffs Fail to State a Claim for Unjust Enrichment. ............. 17

        6.  Plaintiffs Fail to State an Unfair Competition Claim. ............... 18

        7.  Plaintiffs Fail to Adequately Plead A Violation of the CCPA. ..... 19

        8.  Plaintiffs Fail to State a Claim for Negligence. ....................... 21

        9.  Plaintiffs Fail to State a Civil Conspiracy Claim. .................... 24

        10.  Plaintiffs Fail to State a Claim for Declaratory Relief. ............. 25

V.  CONCLUSION ................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003) ................................................................................24, 25

*Agence France Presse v. Morel*,
   769 F. Supp. 2d 295 (S.D.N.Y. 2011) ........................................................................................16

*Aguilar v. Hartford Accident & Indem. Co.*,
   No. CV 18-8123-R, 2019 WL 2912861 (C.D. Cal. Mar. 13, 2019) ...................................21, 23

*Alsheikh v. Lew*,
   No. 3:15-CV-03601-JST, 2016 WL 1394338 (N.D. Cal. Apr. 7, 2016) ......................................6

*Anderson v. Kimpton Hotel & Rest. Grp., LLC*,
   No. 19-CV-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) ...........................20, 22

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) .................................................................................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .....................................................................................................................4

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753, 762 (9th Cir. 2015) .............................................................................................17

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015) .......................................................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .....................................................................................................................4

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) .......................................................................................................5

*Cetacean Cmty. v. Bush*,
   386 F.3d 1169 (9th Cir. 2004) .....................................................................................................4

*Chandler v. State Farm Mut. Auto Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) .....................................................................................................4

*Corona v. Sony Pictures Ent., Inc.*,
   No. 14-CV-09600 RGK (Ex), 2015 WL 3916744 (C.D. Cal. June 15, 2015) ..........................23

*CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*,
   No. CV 12-10876-CAS (AJWx), 2013 WL 1249021 (C.D. Cal. Mar. 25, 2013) ...................14

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) .................................................................................................16

*Davis v. FEC*,
   554 U.S. 724 (2008) ..................................................................................................5

*Del Madera Props. v. Rhodes & Gardner, Inc.*,
   820 F.2d 973 (9th Cir. 1987)......................................................................................8

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*,
   596 F.3d 1036 (9th Cir. 2010)....................................................................................6

*Doe v. UNUM Life Ins. Co. of Am.*,
   164 F. Supp. 3d 1140 (N.D. Cal. 2016) .....................................................................6

*Does 1 Thru XXIII v. Advanced Textile Corp.*,
   214 F.3d 1058 (9th Cir. 2000).....................................................................................6

*Dolls Kill, Inc. v. Zoetop Business Co.*,
   No. 2:22-cv-01463-RGK-MAA, 2022 WL 16961477
   (C.D. Cal. Aug. 25, 2022) .........................................................................................12

*Eidmann v. Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021) ......................................................................18

*Firoozye v. Earthlink Network*,
   153 F. Supp. 2d 1115 (N.D. Cal. 2001) ......................................................................8

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ....................................................................10

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   No. CIV. 13-00496 SOM, 2015 WL 263556 (D. Haw. Jan. 21, 2015),
   *aff'd*, 700 F. App'x 674 (9th Cir. 2017).....................................................................10

*Gardiner v. Walmart Inc.*,
   No. 20-CV-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)....................23

*Gen. Am. Life Ins. Co. v. Rana*,
   769 F. Supp. 1121 (N.D. Cal. 1991) .........................................................................25

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)......................................................................................4

*Google LLC v. Oracle Am., Inc.*,
   141 S. Ct. 1183 (2021) ..............................................................................................12

*Hayden v. Retail Equation, Inc.*,
   No. SACV2001203DOCDFM, 2022 WL 2254461 (C.D. Cal. May 4, 2022).........19

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*,
665 F. Supp. 2d 239 (S.D.N.Y. 2009)....................................................................24

*Huynh v. Quora, Inc.*,
No. 18-CV-07597-BLF, 2020 WL 7408230 (N.D. Cal. June 1, 2020) ...................23

*Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*,
No. CV 12-08968 DDP (JCx), 2013 WL 489899 (C.D. Cal. Feb. 7, 2013) ...........15

*In re iPhone App. Litig.*,
No. 11-MD-022590-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)..............4

*Johnson v. Weinberger*,
851 F.2d 233 (9th Cir. 1988)..................................................................................5

*Kelly v. Arriba Soft Corp.*,
77 F. Supp. 2d 1116 (C.D. Cal. 1999),
*aff'd and rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003) ...................9

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
No.CV 20-1931-DMG (EX), 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ..................10, 12

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012)................................................................................17

*Kokkonen v. Guardian life Ins. Co. of Am.*,
511 U.S. 375 (1994).................................................................................................3

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ..........................................................................................16

*Lance v. Coffman*,
549 U.S. 437 (2007)..................................................................................................4

*Laxalt v. McClatchy*,
622 F. Supp. 737 (D. Nev. 1985).............................................................................25

*Lewis v. Casey*,
518 U.S. 343 (1996)..................................................................................................5

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003)..................................................................................5

*Lil' Man In the Boat, Inc. v. City and Cnty. of San Francisco*,
No. C17-CV-00904-JST, 2018 WL 4207260 (N.D. Cal. Sept. 4, 2018) ..................20

*Logan v. Meta Platforms, Inc.*,
No. 22-cv-1847, 2022 WL 14813836 (N.D. Cal. Oct. 25, 2022) ............................13

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................................5

*Lynwood Invs. CY Ltd. v. Konovalov*,
    No. 20-CV-03778-MMC, 2022 WL 3370795 (N.D. Cal. Aug. 16, 2022) ...............12

*Maag v. U.S. Bank Nat'l Ass'n*,
    No. 21-cv-00031-H-LL, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ...................20

*Malasky v. Esposito*,
    No. 16-CV-04102-DMR, 2019 WL 79032, at *10 (N.D. Cal. Jan. 2, 2019),
    *aff'd*, 781 F. App'x 643 (9th Cir. 2019) ..................................................................25

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ....................................................................................8

*Mango v. BuzzFeed, Inc.*,
    356 F. Supp. 3d 368 (S.D.N.Y 2019),
    *aff'd*, 970 F.3d 167 (2d Cir. 2020) ...........................................................................12

*Mango v. BuzzFeed, Inc.*,
    970 F.3d 167 (2d Cir. 2020)......................................................................................11

*Mayen v. Bank of Am. N.A.*,
    No. 14-CV-03757-JST, 2015 WL 179541 (N.D. Cal. Jan. 14, 2015) .....................25

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
    156 F. Supp. 3d 1052 (N.D. Cal. 2016) .....................................................................8

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008)....................................................................................4

*name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    No. CV 12-8676 (PLAx), 2013 WL 2151478 (C.D. Cal. Mar. 4, 2013) .................16

*O'Neal v. Sideshow, Inc.*,
    583 F. Supp. 3d 1282 (C.D. Cal. 2022).......................................................................9

*Oppenheimer v. Allvoices, Inc.*,
    No. C 14-00499 LB, 2014 WL 2604033 (N.D. Cal. June 10, 2014) .......................17

*Oracle Am., Inc. v. Google Inc.*,
    872 F. Supp. 2d 974 (N.D. Cal. 2012) ......................................................................12

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013) ......................................................................15

*Ramirez v. GMAC Mortg.*,
No. CV 09-8189 PSG (FFMx), 2010 WL 148167 (C.D. Cal. Jan. 12, 2010).........................14

*Razuki v. Caliber Home Loans, Inc.*,
No. 17CV1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) .......................20

*Roe v. San Jose Unified Sch. Dist. Bd.*,
No. 20-CV-02798-LHK, 2021 WL 292035 (N.D. Cal. Jan. 28, 2021) ....................................4

*Rosas v. City of Santa Rosa*,
No. 21-CV-06179-JST, 2022 WL 2158968 (N.D. Cal. June 15, 2022) ...................................7

*Rubio v. U.S. Bank N.A.*,
No. C 13-05752 LB, 2014 WL 1318631 (N.D. Cal. Apr. 1, 2014) .........................................15

*Schmitt v. SN Servicing Corp.*,
No. 21-CV-03355-WHO, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021)...........................22, 23

*Sebastian Brown Prods. LLC v. Muzooka Inc.*,
143 F. Supp. 3d 1026 (N.D. Cal. 2015) ...................................................................................7

*Sebastian Brown Prods. LLC v. Muzooka Inc.*,
No. 15-CV-01720-LHK, 2016 WL 949004 (N.D. Cal. Mar. 14, 2016) .................................19

*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*,
804 F. App'x 668 (9th Cir. 2020) ...........................................................................................13

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
No. SACV 11-01197-CJC(ANx), 2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) ..................18

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)..................................................................................................18

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014), *order corrected*, No. 11MD2258 AJB
(MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014) .........................................................21

*Stevens v. CoreLogic, Inc.*,
899 F.3d 666 (9th Cir. 2018)...............................................................................................9, 11

*Sulit v. Sound Choice Inc.*,
No. C06-00045 MJJ, 2006 WL 8442163 (N.D. Cal. Nov. 14, 2006) ......................................9

*Sutherland v. Francis*,
No. 12-CV-05110-LHK, 2014 WL 879697 (N.D. Cal. Mar. 3, 2014) ...................................15

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008)................................................................................................18

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
 435 F.3d 989 (9th Cir. 2006)................................................................................24

*Wynn v. NBC*,
 234 F. Supp. 2d 1067 (C.D. Cal. 2002).................................................................15

*Yellowcake, Inc. v. Hyphy Music, Inc.*,
 No. 1:20-CV-0988 AWI BAM, 2021 WL 3052535 (E.D. Cal. July 20, 2021) ......18

*Young v. Facebook, Inc.*,
 790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...............................................................14

*Zepeda v. PayPal, Inc.*,
 777 F. Supp. 2d 1215 (N.D. Cal. 2011) ...............................................................14

**Constitution, Statutes, and Rules**

U.S. Const. art. III ..............................................................................................3, 4, 5, 6

15 U.S.C. § 1125, *et seq.* (Lanham Act) ................................................................ *passim*

17 U.S.C. §§ 1201-1205 (Digital Millennium Copyright Act, ("DMCA"))........................ *passim*

Cal. Bus & Prof. Code § 17200, *et seq.* ...............................................................3

Cal. Civ. Code
 § 1798.82, *et seq.* ........................................................................................22
 § 1798.100, *et seq.* ......................................................................................22
 § 1798.140(i) ..............................................................................................19
 § 1798.150, *et. seq.* (California Consumer Privacy Act ("CCPA"))...............................*passim*
 § 1798.155(a) ..............................................................................................20

Fed. R. Civ. P.
 8....................................................................................................................5
 10(a)............................................................................................................6
 12(b)....................................................................................................4, 5, 6
 23(b).............................................................................................................3

**Other Authorities**

B. Witkin, Summary of California Law, Torts § 44 (9th ed.1988)................................24

### STATEMENT OF THE ISSUES TO BE DECIDED

This motion raises the following issues:

1.    **Article III Standing.**  Whether the complaint should be dismissed for lack of standing under Article III of the United States Constitution.

2.    **Anonymous Pleading**.  Whether the complaint should be dismissed because Plaintiffs have failed to obtain Court approval to proceed anonymously.

3.    **Minimal Pleading Requirements.**  Whether the complaint should be dismissed for failing to specify the allegations against each OpenAI Entity in violation of pleading standards.

4.    **Preemption.**  Whether the Copyright Act preempts the state law causes of action for tortious interference with contract, unjust enrichment, and unfair competition.

5.    **Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205 (Count I).**  Whether this claim should be dismissed for failing to (i) identify specific works from which Copyright Management Information ("CMI") was removed, (ii) allege removal of CMI from identical copies, (iii) allege the requisite intent; (iv) allege distribution of works with removed CMI; or (v) allege false CMI conveyed in connection with copies of those works.

6.    **Breach of Contract (Count II).**  Whether this claim should be dismissed for failure to adequately plead that a contract exists and that any OpenAI Entity breached it.

7.    **Tortious Interference in a Contractual Relationship (Count III).**  Whether this claim should be dismissed for failure to plead that a contract exists between plaintiffs and a third-party with which any OpenAI Entity allegedly interfered.

8.    **False Designation (Count V).**  Whether this claim should be dismissed because the Lanham Act does not provide a remedy for false attribution of authorship.

9.    **Unjust Enrichment (Count VI).**  Whether this claim should be dismissed because there is no standalone cause of action for unjust enrichment and Plaintiffs fail to plead the required elements.

10.    **Unfair Competition (Count VII)**. Whether this claim should be dismissed for (i) failure to sufficiently plead a predicate violation or lack of an adequate legal remedy for the

Unfair Competition Law ("UCL") claim under California Business. & Professions Code § 17200 and (ii) an actionable basis for a common law or Lanham Act claim.

11.    **California Consumer Privacy Act, § 1798.150 ("CCPA") (Count IX).**  Whether this claim should be dismissed for (i) lack of statutory standing, (ii) failure to provide written notice of CCPA violations prior to filing, (iii) lack of a private right of action for certain allegations, and (iv) failure to plead facts showing a violation of OpenAI Entities' duty to implement and maintain reasonable security procedures and practices.

12.    **Negligence (Count X).** Whether this claim should be dismissed for failure to plead a duty of care owed to Plaintiffs, breach of that duty, causation, and actual damages.

13.    **Civil Conspiracy (Count XI).** Whether this claim should be dismissed because civil conspiracy is not an independent cause of action and, in any event, the complaint fails to adequately plead the role or wrongful acts of each defendant in the alleged conspiracy.

14.    **Declaratory Relief (Count XII).**  Whether this claim should be dismissed because there is no standalone cause of action for declaratory relief.

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3    This case is about an emerging field of artificial intelligence known as "Generative AI."

4    Generative AI systems learn concepts and relationships from large bodies of existing knowledge,

5    and use what they learn to help people create new works.  Plaintiffs' lawsuit challenges two

6    generative AI tools that help people write computer programming code—GitHub Copilot and

7    OpenAI Codex.  But Plaintiffs attempt to plead causes of action that don't actually apply to these

8    tools, rendering the complaint subject to dismissal on multiple grounds.

9    OpenAI is the creator of Codex and a pioneer in the field of AI.  It is an independent

10   company whose mission is to ensure that artificial intelligence, including generative AI systems,

11   benefit all of humanity.  OpenAI is governed by a non-profit and its organizational structure

12   limits the economic returns of investors and employees.

13   Open AI developed Codex using publicly available computer programming code based on

14   theories of how the human brain learns from new information.  With that training, Codex

15   generates coding suggestions in response to a person's requests.  A programmer can provide a

16   short text request (*e.g.*, "create a button on a website that lets a user upload a document"), and

17   Codex will generate a coding suggestion to meet the request.  Codex's training allows it to help

18   people write code for common functions and for functions that have never been written

19   before.  This capability makes computer programming more accessible to broad segments of the

20   population and makes those who have already learned to program more productive.

21   The essence of Plaintiffs' complaint is that rarely—the complaint cites a study reporting

22   1% of the time—Copilot (and therefore Codex) allegedly generates snippets of code similar to the

23   publicly available code that it learned from, and does so without also generating copyright notices

24   or open source license terms that originally accompanied the code.  But Plaintiffs provide no

25   allegation that any code that they authored was used by Codex or generated as a suggestion to a

26   Codex user; they only point to Codex's abilities to generate common textbook programming

27   functions, such as a function for determining if a number is odd or even.  Plaintiffs also do not

28   allege copyright infringement by any OpenAI Entity, but instead allege a grab bag of claims that

1    fail to plead violations of cognizable legal rights.

2          The complaint thus suffers from both threshold defects requiring dismissal of the entire

3    complaint and specific defects in each pleaded cause of action.

4    **II.    PLAINTIFFS' ALLEGATIONS[1]**

5          **OpenAI.**  While the complaint treats "OpenAI" as a single party, it names six distinct

6    OpenAI entities as defendants: (1) OpenAI, Inc.; (2) OpenAI, L.P., (3) OpenAI GP, L.L.C.; (4)

7    OpenAI Startup Fund I, L.P.; (5) OpenAI Startup Fund GP I, L.L.C.; and (6) OpenAI Startup

8    Fund Management, LLC.  The Complaint alleges that OpenAI, Inc. developed Codex, and that

9    OpenAI, L.P. "co-created" Copilot.  (Compl. (Dkt. No. 1) ¶¶ 23-24.)  The complaint does not

10   allege that any of the other OpenAI entities engaged in any of the conduct alleged in the

11   complaint, but seeks to hold them liable nonetheless.  (*Id.* ¶¶ 25-28.)

12         **Plaintiffs.**  The named Plaintiffs have filed this complaint under pseudonyms without

13   leave of Court.  Plaintiff J. Doe 3 is a resident of Idaho and Plaintiff J. Doe 4 is a resident of

14   South Carolina.[2]  Plaintiffs allege that they "made available publicly" unspecified "Licensed

15   Materials" on at least one GitHub repository.  (*Id.* ¶¶ 1, 19-20.)

16         Plaintiffs do not allege that their rights associated with code they authored were violated,

17   nor do they provide a single example of their code they claim to be at issue.  The complaint

18   instead includes excerpts of code functions from third-party textbooks with which Plaintiffs claim

19   no association: (1) *Eloquent Javascript* by Marijn Haverbeke (*id.* ¶¶ 56-60); (2) *Mastering JS* by

20   Valeri Karpov (*id.* ¶¶ 71-73); (3) *Think JavaScript* by Matthew X. Curinga et al. (*id.* ¶¶ 74-76).

21         **Plaintiffs' Allegations.**  The core of the complaint is that Defendants[3] developed and

22

23   [1] This section is based on the allegations of the complaint, which must be taken as true for
     purposes of this motion.  By discussing them in this motion, the OpenAI Entities do not admit the

24   truth of those allegations.

25   [2] Pursuant to the parties' stipulation and the Court's order, "[t]he Complaint in the Doe 3 Action
     shall be deemed the operative Complaint."  (Dkt. No. 46 at 2; Dkt. No. 47.)  Accordingly,

26   OpenAI addresses in this motion only the Plaintiffs in the Doe 3 Action (Case 3:22-cv-07074).

27   [3] Plaintiffs lump together GitHub, Microsoft, and OpenAI entities as "Defendants" throughout the
     complaint.  (*See* Compl. at n.1.)

28

released Codex and Copilot—two "assistive AI-based systems" that are alleged to generate copied copyrighted material without attribution in some instances.  (*Id.* ¶¶ 46, 77.)  Plaintiffs allege that after Defendants trained Copilot and Codex using data gathered from publicly accessible repositories on GitHub, they used Copilot and Codex to distribute similar code to users.  (*Id.* ¶¶ 46, 140.)  In doing so, Plaintiffs contend that Defendants violated open-source licenses and infringed intellectual property rights.  (*Id.* ¶¶ 143-171.)

Based on these allegations, Plaintiffs seek to represent two classes: an "Injunctive Relief Class" under Rule 23(b)(2) and a "Damages Class" under Rule 23(b)(3).  (*Id.* ¶ 34.)  Plaintiffs define both classes as "[a]ll persons or entities domiciled in the United States that, (1) owned an interest in at least one US copyright in any work; (2) offered that work under one of GitHub's Suggested Licenses; and (3) stored Licensed Materials in any public GitHub repositories at any time" between January 1, 2015 and the present (the "Class Period").  (*Id.*)

The complaint asserts ten causes of action against the OpenAI Entities: (1) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, *et seq.*; (2) breach of contract; (3) "tortious interference in a contract relationship"; (4) false designation of origin under the Lanham Act, 15 U.S.C. § 1125; (5) unjust enrichment under common law and California Business & Professions Code § 17200, *et seq.*; (6) violations of the California Consumer Privacy Act ("CCPA"), California Civil Code § 1798.150; (7) negligence; (8) unfair competition under common law, the Lanham Act, 15 U.S.C. § 1125, and California Business & Professions Code § 17200, *et seq.*; (9) civil conspiracy; and (10) declaratory relief.[4]

## III.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Federal courts "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Article III "limits the

---

[4] Where the complaint refers to common law or state law, OpenAI assumes for purposes of this motion that Plaintiffs have asserted such claims under California law.  Although OpenAI does not concede that California law can be applied to acts occurring outside California here, even as pled under California law, Plaintiffs' common law and state law claims should be dismissed.

jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman,* 549 U.S. 437, 439 (2007).  If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction, and the suit must be dismissed under Rule 12(b)(1).  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

Moreover, where a complaint fails to disclose the identities of anonymous plaintiffs, in violation of Rule 10(a)'s requirement that the complaint "name all parties," dismissal under Rule 12(b)(1) is appropriate.  *Roe v. San Jose Unified Sch. Dist. Bd.*, No. 20-CV-02798-LHK, 2021 WL 292035, at *10 (N.D. Cal. Jan. 28, 2021).

Once a defendant has moved to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction.  *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

## B.  Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6).

To satisfy Rule 8 and survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Where a plaintiff raises generalized allegations against multiple defendants, the complaint has not "stated sufficient facts to state a claim for relief that is plausible against *one* [d]efendant." *In re iPhone App. Litig.*, No. 11-MD-022590-LHK, 2011 WL 4403963, at *3 (N.D. Cal. Sept. 20, 2011).  Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court need not accept as true conclusory allegations or legal characterizations, nor need it accept unreasonable inferences or unwarranted factual deductions. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

IV.     **ARGUMENT**

    A.     **The Complaint Fails for Reasons Applicable to All Causes of Action.**

        1.     **Plaintiffs Lack Article III Standing to Assert Their Claims.**

     The complaint must be dismissed because Plaintiffs have failed to sufficiently plead that they suffered a cognizable injury to satisfy "the irreducible constitutional minimum of standing" under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff bears the burden of establishing standing "for each claim [s]he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (cleaned up). To satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision. *Id.* at 733. A plaintiff does not satisfy the standing requirement "[w]hen speculative inferences are necessary . . . to establish [the] injury." *Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir. 1988) (cleaned up). In a putative class action, the named plaintiffs seeking to represent the class must establish that they *personally* have standing to bring the action. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (cleaned up); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (affirming dismissal of putative class action brought by iPod users for lack of standing where "[t]he risk of injury the plaintiffs allege is not concrete and particularized *as to themselves*"); *see also Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003) (vacating class certification where named plaintiff lacked standing to assert a claim under state law).

     Here, the complaint contains no allegation or explanation of whether and how any Plaintiff was harmed. Plaintiffs rely entirely on generic descriptions of the alleged practices of the OpenAI Entities to support their theory of injury. (*See, e.g.*, Compl. ¶¶ 90-91.) Plaintiffs do not allege that Copilot or Codex reproduced *their* code or disclosed *their* personal information. Instead, the complaint describes the purported reproduction of the code or personal information *of*

*others*.  (*See* Compl. ¶¶ 48-63, 68-77, 87-89.)  Plaintiffs have not provided a single example nor alleged any injury that is concrete and particularized *as to them.*  This is insufficient under Article III.  *See, e.g.*, *Alsheikh v. Lew*, No. 3:15-CV-03601-JST, 2016 WL 1394338, at *2-3 (N.D. Cal. Apr. 7, 2016) (dismissing claim for lack of Article III standing where plaintiff did not "identif[y] any particular injury that he has suffered").

### 2.    Plaintiffs Have Failed to Obtain Leave to Proceed Anonymously.

The complaint must be dismissed under Rule 12(b)(1) because Plaintiffs failed to comply with Federal Rule of Civil Procedure 10(a), which requires that a "complaint name all the parties."  This rule reflects the "paramount importance of open courts."  *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1046 (9th Cir. 2010) (affirming dismissal of complaint based on plaintiffs' failure to disclose identities).  Plaintiffs have not identified themselves.  And while, in the Ninth Circuit, they may seek leave to proceed anonymously after filing the complaint, they have not done so and could not succeed were they to try.  *See, e.g.*, *Doe v. UNUM*, 164 F. Supp. 3d 1140, 1144 (N.D. Cal. 2016) (dismissing complaint).  A party may proceed anonymously only where "special circumstances justify secrecy."  *Does 1 Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).  Courts "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party."  *Id*. at 1068.  Under this balancing test, the Ninth Circuit has identified three situations in which parties may proceed anonymously: (1) "when identification creates a risk of retaliatory physical or mental harm;" (2) "when anonymity is necessary to 'preserve privacy in a matter of a sensitive and highly personal nature;" or (3) "when the anonymous party is 'compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution.'"  *Id*. at 1068 (citations omitted).  Plaintiffs provide no facts at all justifying their request to keep their identities hidden and provide no examples of Plaintiffs' code they claim to be at issue, and thus make it impossible for OpenAI to respond to their allegations.  Accordingly, unless and until Plaintiffs are willing to put their names and their code

1   on the allegations they have made, dismissal is appropriate.[5]

2       **3.      The Complaint's Undifferentiated Allegations Against the Six OpenAI**
        **Entities Fail to Satisfy Pleading Requirements.**
3

4       Plaintiffs have also failed to specify what acts they contend each of the six OpenAI

5   Entities committed individually, requiring dismissal.  A complaint that "lumps together multiple

6   defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)."

7   *Sebastian Brown Prods. v. Muzooka Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) (cleaned

8   up).  Where a plaintiff sues multiple defendants, "the complaint must specify exactly what each

9   separate defendant is alleged to have done to cause plaintiff harm."  *Rosas v. City of Santa Rosa*,

10  No. 21-CV-06179-JST, 2022 WL 2158968, at *2 (N.D. Cal. June 15, 2022) (cleaned up).

11      Plaintiffs fail to meet this standard.  Through the body of the complaint, the six OpenAI

12  Entities are referred to collectively as "OpenAI."  (*See, e.g.*, Compl. at 1 n.1.)  After alleging that

13  "OpenAI" was involved in "launch[ing] Copilot" and "debut[ing] its Codex product," the

14  complaint proceeds to accuse the various OpenAI Entities collectively of violating Plaintiffs'

15  "intellectual-property rights, licenses, and other rights" by using unidentified code from GitHub's

16  public repositories.  (*See id.* ¶¶ 8-9, 139.)  But this is not a case in which the acts alleged against

17  each OpenAI Entity are the same.  Indeed, the complaint concedes that each OpenAI Entity

18  performed distinct activities and that not all Entities played a role in developing Copilot and

19  Codex.  (*Compare id.* ¶¶ 23-28.)  In describing the parties, Plaintiffs allege that OpenAI, Inc. and

20  OpenAI, L.P. "programmed, trained, and maintains Codex," which provides "an integral piece of

21  Copilot."  (*Id.* ¶ 23.)  The complaint does not allege that OpenAI GP, L.L.C., OpenAI Startup

22  Fund I, L.P., OpenAI Startup Fund GP I, L.L.C., and OpenAI Startup Fund Management, LLC

23  played any role in developing Codex or Copilot.  (*See id.* ¶¶ 25-28.)

24      Plaintiffs' indiscriminate lumping together of the OpenAI Entities violates Rule 8(a)(2)'s

25

26  [5] The Defendants notified Plaintiffs that their complaint was procedurally deficient under Rule
    10(a) on January 11, 2023.  (*See* Declaration of Michael Jacobs, filed herewith, Ex. 1).  Plaintiffs
27  responded that they would seek approval to proceed anonymously but have yet to file the
    requisite motion.  (*See id.* Ex. 2.)
28

notice requirement.  The complaint fails to provide fair notice to Defendants as it merely alleges wrongdoing against "OpenAI" or "Defendants" without specifying which OpenAI Entity allegedly committed the act.  (*See* Compl. ¶¶ 8-9, 14, 37, 43-44, 47, 63, 66, 82-84, 134-141.)

### B.   The Copyright Act Preempts Several State Law Causes of Action.

Federal law preempts Plaintiffs' claims for tortious interference in a contractual relationship, unjust enrichment, and unfair competition, and accordingly, provides another basis for dismissal.  Preemption under Section 301 of the Copyright Act applies if (1) "the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103" and (2) "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (cleaned up).  Courts have concluded that the Copyright Act precludes the following:

- **Tortious interference with a contract.**  Plaintiffs claim that the OpenAI Entities have "wrongfully interfered with the business interests and expectations of Plaintiffs … by improperly using Copilot to create Derivative Works that compete against" Plaintiffs' works.  (Compl. ¶ 189.)  This, in essence, boils down to an allegation that is "not qualitatively different from [a] copyright infringement" claim.  *See Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1072 (N.D. Cal. 2016) (concluding preemption where plaintiff alleged that defendant directly copied plaintiff's code to create its own product and "undermined [p]laintiff's relationship with Microsoft by representing that [its] products could work just as well").

- **Unjust enrichment.**  The Copyright Act preempts Plaintiffs' unjust enrichment claim because the crux of this claim asserts that OpenAI improperly benefitted from using Licensed Materials to create Derivative Works.  *Del Madera Props. V. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (finding preemption because an "implied promise not to use or copy materials within the subject matter of copyright is equivalent" to the Copyright Act's protections); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1126 (N.D. Cal. 2001) (finding preemption where plaintiff alleged defendant improperly benefitted from using copyrighted software and "that a contract should be implied in law (e.g., a quasi-contract [] or unjust enrichment claim)").

- **Unfair Competition.** To the extent Plaintiffs' claims are based on preempted state law claims, the derivative claim must also fail. *See Sulit v. Sound Choice Inc.*, No. C06-00045 MJJ, 2006 WL 8442163, at *7 (N.D. Cal. Nov. 14, 2006) ("State law causes of action for unfair competition based on misappropriation of copyrighted material are preempted," but, where the state claim acts as "a tort of 'passing off,' it is not preempted.").

### C.   Plaintiffs' Claims Fail for Reasons Specific to Each Claim.

#### 1.   Plaintiffs' DMCA Claim Should be Dismissed.

Although the complaint is replete with allegations about alleged similarities between Copilot's output and the code it was trained on, Plaintiffs do not assert a copyright infringement claim. Instead, they allege that Defendants violated the DMCA by (1) removing or altering CMI from Licensed Materials, (2) distributing copies of Licensed Materials knowing CMI had been removed or altered without authority, and (3) knowingly providing CMI that is false by "asserting and/or implying that Copilot is the author of the Licensed Materials." (Compl. ¶¶ 158-159.) Plaintiffs' allegations do not meet DMCA requirements and fail properly to plead a DMCA claim.

##### a.   Plaintiffs Have Not Properly Pled a Claim for Removal of CMI.

To properly plead a claim for removal of CMI, a plaintiff must plausibly allege: (1) the existence of CMI on a work, (2) removal or alteration of that information, (3) that the removal or alteration was done intentionally; and (4) the removal or alteration was done knowing or having reasonable grounds to know that it would induce, enable, facilitate, or conceal copyright infringement. 17 U.S.C. § 1202(b); *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018) (discussing the mental state elements); *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1286-87 (C.D. Cal. 2022) (discussing other elements).

###### (i)   Failure to Allege Removal from Identical Copies.

Plaintiffs' claim under § 1202(b) arises out of the allegation that CMI was removed from Plaintiffs' code. But in order to prevent § 1202 from subsuming every copyright dispute, courts have interpreted "removal" in the § 1202 context to require that there was some *identical* copy of the plaintiff's work made without the plaintiff's CMI. *See, e.g.*, *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) (requiring that CMI was removed from "a plaintiff's

product or original work"), *aff'd and rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003).  Where a defendant makes a copy of a defendant's work that is substantially similar, but not identical, to the plaintiff's work, and omits CMI from that copy, there may be a claim for copyright infringement, but there cannot be a claim under § 1202.  *See Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir. 2017) ("But the drawing by [the defendant] is not identical to the drawing by [the plaintiff], such that this court can say that [the defendant] removed or altered [the plaintiff's] copyright management information from [the drawing]."); *id.* ("basing a drawing on [the plaintiff's] work is not sufficient to support a claim" under § 1202); *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No.CV 20-1931-DMG (EX), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (dismissing DMCA claim because "while the works may be *substantially similar*, Defendant did not make *identical* copies of Plaintiff's works and then remove engraved CMI").

Here, Plaintiffs concede that Copilot does not generate identical copies:

- "[T]he Output is often a *near-identical* reproduction of code from the training data."  (Compl. ¶ 46 (emphasis added));

- "Codex has reproduced Haverbeke's Licensed Material *almost verbatim*, with the only difference being drawn from a different portion of those same Licensed Materials."  (*Id.* ¶ 60 (emphasis added));

- "Like the other examples above—and most of Copilot's Output—this output is *nearly a verbatim copy* of copyrighted code.  In this case, it is *substantially similar* to the "isPrime" function in the book *Think JavaScript* by Max X. Curinga et al., . . . ."  (*Id.* ¶ 74 (emphasis added).)

Because Plaintiffs affirmatively allege that the output at issue is not identical to the allegedly copied material, they have pled themselves out of court on the § 1202 claim, and it should be dismissed with prejudice.

**(ii)       Failure to Identify the Works.**

The § 1202 claim is also subject to dismissal because Plaintiffs have not sufficiently identified any works from which CMI was allegedly removed.  *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (dismissing DMCA claim because Menzel

"merely alleged that his photographs 'were altered to remove certain of [his] copyright management information' without providing any facts to identify which photographs had CMI removed or to describe what the removed or altered CMI was").  Plaintiffs merely allege generally that Defendants removed CMI from "Licensed Materials," which they define broadly as "materials made available publicly on GitHub that are subject to various licenses containing conditions for use of those works."  (Compl. ¶¶ 1, 148.)  The complaint highlights Plaintiffs' imprecision, reciting in the DMCA cause of action that Copilot was "trained on millions— possibly billions—of lines of code."  (*Id.* ¶ 143.)  But the few specific instances the complaint points to are not examples of Plaintiffs' own code, but snippets from third-party programming textbooks.  (*Id.* ¶¶ 56-61, 71-75.)  That code is not the subject of Plaintiffs' DMCA allegations, as it does not fall within the complaint's definition of "Licensed Materials."  Without identifying specific works from which CMI was removed, Plaintiffs fail to state a claim for CMI removal.

### (iii)     Failure to Adequately Plead Scienter.

Plaintiffs also have not pled facts sufficient to meet the "double-scienter" requirement of Section 1202(b)(3), which requires "the defendant who distributed improperly attributed copyrighted material must have actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law,' as well as actual or constructive knowledge that such distribution 'will induce, enable, facilitate, or conceal an infringement.'"  *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020).  "[T]he plaintiff must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI."  *CoreLogic*, 899 F.3d at 676 (finding CoreLogic not liable for violating § 1202(b) because photographers had "not put forward *any* evidence that CoreLogic knew its software carried even a substantial risk of inducing, enabling, facilitating, or concealing infringement, let alone a pattern or probability of such connection to infringement").

Here, Plaintiffs have not alleged facts sufficient to establish a substantial risk that any copyright infringement has occurred or that any future infringement is likely because of the removal of CMI, nor that any of the OpenAI Entities had reason to know of any such likelihood.  They have not alleged, for example, copying of protectible expression: that is, that the

1    allegedly copied code was original, that there was no merger of idea and expression, and that the

2    allegedly copied code did not represent "*scènes à faire*."  *See, e.g.*, *Oracle Am., Inc. v. Google*

3    *Inc.*, 872 F. Supp. 2d 974, 984-997 (N.D. Cal. 2012) (summarizing the various doctrines limiting

4    copyright in computer programs).  And they would need to allege that any copying was not fair

5    use—a heavy burden in light of the Supreme Court's holding in the source-code context that

6    "taking only what was needed to allow users to put their accrued talents to work in a new and

7    transformative program . . . was a fair use of that material as a matter of law."  *Google LLC v.*

8    *Oracle Am., Inc.*, 141 S. Ct. 1183, 1209 (2021); *see also, e.g.*, *Authors Guild v. Google, Inc.*, 804

9    F.3d 202, 225 (2d Cir. 2015) (copying of millions of books for the purpose of searching them and

10    providing relevant snippets to users was fair use).  Finally, they would have to identify with

11    specificity which work or works were copied and specify which defendant is alleged to have

12    infringed which particular copyright.  *Lynwood Invs. CY Ltd. v. Konovalov*, No. 20-CV-03778-

13    MMC, 2022 WL 3370795, at *19 (N.D. Cal. Aug. 16, 2022) (dismissing claim).  All of these are

14    substantial hurdles to showing that Defendants had reason to know that they would cause or

15    further copyright infringement.  The complaint meets none of them.

16

17             **b.**      **Plaintiffs Have Failed to Plead a Claim for Distributing Copies of Works from Which CMI Has Been Removed.**

18           Plaintiffs' claim that Defendants have distributed copies of code from which CMI has

19    been removed fails for the same reasons as its claim for removal of CMI.  17 U.S.C.

20    §§ 1202(b)(2), 1202(b)(3).  *See Kirk Kara*, 2020 WL 5991503, at *6 (applying same 1202(b)(1)

21    analysis to distribution claims); *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 2:22-cv-01463-RGK-

22    MAA, 2022 WL 16961477, at *3-4 (C.D. Cal. Aug. 25, 2022) (concluding no DMCA violation

23    for complaint that defendants "are distributing knockoff products" where the works were not

24    identical and only had "certain[] similarities"); *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368,

25    376 (S.D.N.Y 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020) (in view of few decisions involving

26    DMCA's distribution prohibitions, looking to CMI removal caselaw for guidance).  Plaintiffs

27    have not specifically identified any such copies; the supposed copies are not identical; and

28    Plaintiffs have not shown the requisite scienter.

1

###### c.      Plaintiffs Have Failed to Show that OpenAI Has Conveyed Any False CMI in Connection with Copilot Outputs.

2

Plaintiffs' claim that Defendants have conveyed false CMI (Compl. ¶¶ 158-159) is also fundamentally flawed.  17 U.S.C. § 1202(a).  The DMCA defines CMI as any information identifying the work, its author or copyright owner, and the terms and condition of use, or "links to such information," "*conveyed in connection with* copies . . . of [the] work."  17 U.S.C. § 1202(c) (emphasis added).  Courts require that the allegedly false CMI's location suggest an association with plaintiff's work.  *See SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*, 804 F. App'x 668, 670-71 (9th Cir. 2020) (affirming grant of summary judgment against plaintiff's false CMI claim, finding defendant's copyright notice at the bottom of the webpage was not "conveyed in connection with" plaintiff's photos); *Logan v. Meta Platforms, Inc.*, No. 22-cv-1847-CRB, 2022 WL 14813836, at *8 (N.D. Cal. Oct. 25, 2022) (finding copyright notice on the bottom of each Facebook user page separated from the rest of the content insufficient to plead that Meta conveyed CMI in connection with plaintiff's photos).

Once again, Plaintiffs have not pointed to any specific code that Defendants conveyed containing false CMI, as pleading standards require.  *See* § IV.C.1.a, *supra*.

Moreover, Plaintiffs have not properly alleged that the OpenAI Entities have conveyed any CMI at all.  Plaintiffs merely allege that "Defendants have a business practice of asserting and/or implying that Copilot is the author of the Licensed Materials."  (Compl. ¶ 158.)  But that is not the same as conveying CMI "in connection with copies" of the work.  And in the complaint's examples of Codex-generated code, there is no CMI presented whatsoever.  (*See id*. ¶¶ 49, 69.)

###### 2.      Plaintiffs' Breach of Contract Claim Fails.

To state a claim for breach of contract under California law, a plaintiff must "plead the contract, plaintiff's performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (cleaned up).  When asserting written contract claims, a plaintiff must "allege the specific provisions in the contract creating the obligation the defendant is said to have breached."  *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011)  Here, Plaintiffs have not

1   adequately pled the existence of a contract between themselves and any of the OpenAI Entities or

2   sufficient factual detail supporting that OpenAI Entities allegedly breached any such agreement.

3             **a.**      **Plaintiffs Have Not Sufficiently Pled Existence of a Contract.**

4        Plaintiffs have not adequately pled facts demonstrating the existence of a contract between

5   Plaintiffs and any OpenAI Entity.  *See CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. CV

6   12-10876-CAS (AJWx), 2013 WL 1249021, at *3 (C.D. Cal. Mar. 25, 2013) (granting motion to

7   dismiss breach of contract claim because complaint failed to adequately allege existence of a

8   contract).  Here, the complaint merely alleges that "Plaintiffs . . .  offer code under various

9   [unspecified] Licenses" and attaches a sampling of the most common licenses in an appendix.

10  (Compl. ¶ 173, App. A.)  The complaint then alleges that contracts have been formed with

11  Defendants, collectively, based on their use of code subject to certain licenses.  (*Id.* ¶ 175.)

12  However, the complaint does not indicate which licenses are at issue or which provisions the

13  OpenAI Entities allegedly breached.  These vague and conclusory allegations are insufficient to

14  establish the existence of a contract.  *See Ramirez v. GMAC Mortg.*, No. CV 09-8189 PSG

15  (FFMx), 2010 WL 148167, at *2 (C.D. Cal. Jan. 12, 2010) (holding plaintiff failed to plead

16  existence of a contract where it did not "set forth [the] terms of the contract that Defendants'

17  conduct is alleged to have breached").

18            **b.**      **Plaintiffs Fail to Allege Facts Demonstrating the Contractual**
19                   **Provisions OpenAI Entities Allegedly Breached.**

20       While Plaintiffs allege generally that OpenAI breached open source licenses by failing to

21  (i) provide attribution, (ii) include copyright notices, and (iii) identify the license applicable to the

22  work (Compl. ¶¶ 181-183), the complaint fails to identify the particular terms of the alleged

23  agreements that the OpenAI Entities purportedly violated.  *See, e.g., Zepeda v. PayPal, Inc.*, 777

24  F. Supp. 2d 1215, 1220 (N.D. Cal. 2011) (dismissing contract claim in part because plaintiffs

25  failed to identify any provision in PayPal's user agreement which prohibited PayPal's conduct).

26       "Facts alleging a breach, like all essential elements of a breach of contract cause of action,

27  must be pleaded with specificity."  *Rubio v. U.S. Bank N.A.*, No. C 13-05752 LB, 2014 WL

28  1318631, at *9 (N.D. Cal. Apr. 1, 2014) (cleaned up); *see also Sutherland v. Francis*, No. 12-CV-

05110-LHK, 2014 WL 879697, at *4 (N.D. Cal. Mar. 3, 2014) (dismissing contract claim that did not include "the essential terms of the agreement and more specific allegations as to breach"). Plaintiffs' generic allegations fail to satisfy this requirement.

### 3. The Claim for Tortious Interference in Contractual Relationship Fails.

Plaintiffs have not alleged facts supporting the existence of a contract between Plaintiffs and a third party or the requisite intent to disrupt it.  A tortious interference with contract claim requires: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 979 (N.D. Cal. 2013) (cleaned up).  "The mere allegation that [defendant] 'purposefully and intentionally interfered' with a contract, without any factual support … does not satisfy the requirements for stating a claim for tortious interference with contractual relations." *Wynn v. NBC*, 234 F. Supp. 2d 1067, 1122 (C.D. Cal. 2002).

The complaint alleges that "Defendants have wrongfully interfered with the business interests and expectations of Plaintiffs . . . by improperly using Copilot to create Derivative Works that compete against OSC." (Compl. ¶ 189.)  But the complaint does not specify the "business interest and expectations" with which the OpenAI Entities allegedly interfered.  At most, the complaint alleges, albeit in connection with other causes of action, that the OpenAI Entities have interfered with Plaintiffs' "contractual relationship with users of their code." (*Id.* ¶¶ 212(b), 244(b).)  However, these vague allegations do not identify a specific contract or contractual provision between Plaintiffs and the unidentified users.  Absent a valid contract and contractual provisions that the OpenAI Entities caused others to breach, Plaintiffs' tortious interference claim fails.  *See Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. CV 12-08968 DDP (JCx), 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013) (dismissing interference claim where plaintiff "has not alleged any facts identifying the particular contracts, the actual disruption of these contracts, or any actual damage to [plaintiff]," and it "cannot simply allege that [defendant] has interfered with its business model").

1      Plaintiffs also do not allege any intentional actions undertaken by the OpenAI Entities that

2    were intended to induce the purported users of Plaintiffs' code to breach their agreement with

3    Plaintiffs.  To satisfy the intent element, a plaintiff must allege: (1) that defendant specifically

4    intended to disrupt the relationship, or (2) that the defendant knew that the interference was

5    certain or substantially certain to occur as a result of its action.  *Korea Supply Co. v. Lockheed*

6    *Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003).  Here, Plaintiffs' allegations fall short of making

7    the necessary showing of intent for two reasons.

8        *First*, Plaintiffs do not allege any particular act by the OpenAI Entities designed to disrupt

9    Plaintiffs' alleged relationship with users of their code.  For example, there is no allegation that

10   the OpenAI Entities contacted the users or otherwise tried to induce them to breach their

11   purported contract with Plaintiffs.  Plaintiffs' failure to allege specific intent requires dismissal.

12   *See name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. CV 12-8676 PA

13   (PLAx), 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013) (dismissing tortious interference

14   claim because "the Complaint does not allege any intentional actions undertaken by [defendant]

15   designed to induce breach of Plaintiff's contracts with its clients or any evidentiary facts, as

16   opposed to conclusory allegations, of actual breach or disruption and resulting damage").

17       *Second*, Plaintiffs do not allege that the OpenAI Entities were substantially certain that

18   their actions would disrupt Plaintiffs' alleged relationship with users of their code.  A plaintiff

19   must show "an interference that is incidental to the actor's independent purpose and desire but

20   known to him to be a necessary consequence of his action."  *Korea Supply*, 29 Cal. 4th at 1155-56

21   (cleaned up).  Nowhere do Plaintiffs allege that the OpenAI Entities knew the "interference" was

22   certain or substantially certain to occur because of their actions.

23              **4.**      **Plaintiffs Fail to Allege a False Designation of Origin Claim.**

24      A claim for false designation of origin must relate to the origin of tangible goods, not the

25   authorship of an intangible work like computer code.  15 U.S.C. § 1125(a)(1)(A); *Dastar Corp. v.*

26   *Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (concluding that the phrase "origin of

27   goods…refers to the producer of the tangible goods that are offered for sale, and not to the author

28   of any idea, concept or communication embedded in those goods"); *Agence France Presse v.*

1  *Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) (holding that *Dastar* forecloses Lanham Act

2  claims relating to authorship).  To hold that authorship is actionable under the Lanham Act would

3  "provide authors of creative works with perpetual protection under the Lanham Act that they did

4  not have under the Copyright Act."  *Oppenheimer v. Allvoices, Inc.*, No. C 14-00499 LB, 2014

5  WL 2604033, at \*11 n.10 (N.D. Cal. June 10, 2014).

6       Plaintiffs' claim is precisely the kind of false designation of origin claim foreclosed by

7  these precedents.  The complaint alleges that "GitHub and OpenAI" have passed off the code

8  contained in Copilot's output as originating from Copilot, GitHub, and/or OpenAI, thereby

9  violating the Lanham Act.  (Compl. ¶¶ 201, 212.)  Plaintiffs also claim that "Codex does not

10  identify the owner of the copyright to [its] Output" because "it has not been trained to provide

11  Attribution" and that "[a]s with Codex, Copilot does not provide the end user any attribution of

12  the original author of the code, nor anything about their license requirements."  (*Id*. ¶¶ 56, 77.)

13  Even taking these allegations as true, the complaint does not give rise to a Lanham Act claim

14  because the alleged misrepresentation relates to authorship.

15       **5.**    **Plaintiffs Fail to State a Claim for Unjust Enrichment.**

16       Plaintiffs' claim for unjust enrichment fails because it is not an independent cause of

17  action.  "[I]n California, there is no[] standalone cause of action for 'unjust enrichment.'"

18  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Courts instead "construe

19  [an unjust enrichment claim] as a quasi-contract claim for restitution."  *Id.* (cleaned up).  But

20  plaintiffs cannot recover on a quasi-contract claim if they also seek to recover under a breach of

21  contract claim, as they do here.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388

22  (2012) (A plaintiff may not "recover on a quasi-contract claim if the parties have an enforceable

23  agreement.").  Because Plaintiffs do not allege the absence of an enforceable contract—and in

24  fact allege the opposite—Plaintiffs' unjust enrichment claim should be dismissed.  In any event,

25  Plaintiffs have not pled the required elements for unjust enrichment as they have not adequately

26  alleged that the OpenAI Entities "ha[ve] been unjustly conferred a benefit through mistake, fraud,

27  coercion, or request."  *See Astiana*, 783 F.3d at 762. (cleaned up).  Finally, to the extent

28  Plaintiffs' "unjust enrichment claim" under the UCL is seeking restitution based on an alleged

1    violation of the UCL, that claim fails for the same reasons discussed in Section B.6.below.

2            **6.       Plaintiffs Fail to State an Unfair Competition Claim.**

3            Plaintiffs assert an unfair competition claim under (1) the Lanham Act, (2) California's

4    UCL statute, and (3) common law, all of which are predicated on the OpenAI Entities' alleged

5    violations of the DMCA, tortious interference with contract relations, false designation of origin,

6    and violations of the CCPA and California's constitutional right to privacy.  (Compl. ¶ 212.)

7    Under any theory, plaintiffs have failed to state a claim.

8            Plaintiffs' UCL claim, brought only under the "unlawful" prong, fails because there is no

9    predicate violation.  When the underlying legal claim that supports a UCL cause of action fails,

10   "so too will the [] derivative UCL claim."  *Yellowcake, Inc. v. Hyphy Music, Inc.*, No. 1:20-CV-

11   0988 AWI BAM, 2021 WL 3052535, at *13 (E.D. Cal. July 20, 2021); *see also Eidmann v.*

12   *Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (If the "plaintiff cannot state a claim

13   under the predicate law … [the UCL] claim also fails.") (cleaned up).  For reasons discussed in

14   this motion, plaintiffs have not adequately alleged any underlying legal claim.

15           Plaintiffs' UCL claim separately fails because plaintiffs have not established that they lack

16   an adequate legal remedy.  "Remedies under the UCL are limited to restitution and injunctive

17   relief, and do not include damages."  *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No.

18   SACV 11-01197-CJC (ANx), 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012).  To state a

19   viable claim for "equitable restitution for past harm under the UCL," a plaintiff "must establish

20   that she lacks an adequate remedy at law."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844

21   (9th Cir. 2020) (affirming dismissal where plaintiff failed to allege an inadequate legal remedy).

22   Here, Plaintiffs have not shown that no adequate legal remedy exists.

23           Plaintiffs also cannot identify any common law or Lanham Act basis for an unfair

24   competition claim separate from their false designation of origin claim.  In California, "[t]he

25   common law tort of unfair competition is generally thought to be synonymous with the act of

26   'passing off' one's goods as those of another."  *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d

27   1137, 1153 (9th Cir. 2008) (explaining the tort provided "an equitable remedy against the

28   wrongful exploitation of trade names and common law trademarks that were not otherwise

entitled to legal protection" and expansion of unfair competition law is primarily based in statute) (cleaned up).  The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to [the UCL] are 'substantially congruent' to claims made under the Lanham Act."  *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-CV-01720-LHK, 2016 WL 949004, at *15 (N.D. Cal. Mar. 14, 2016) (cleaned up).  Plaintiffs' common law unfair competition claim therefore also fails because it is premised on the same conduct underlying their deficient false designation of origin claim.  (*See* § IV.C.4, *supra*.)

### 7.    Plaintiffs Fail to Adequately Plead A Violation of the CCPA.

Plaintiffs' claim under the CCPA suffers from numerous pleading defects.  Plaintiffs lack statutory standing, and they failed to provide the required written notice to the OpenAI Entities prior to filing this complaint.  Even if Plaintiffs satisfied these threshold requirements, the CCPA's limited private right of action does not cover the alleged conduct.  To the extent any of these allegations are actionable, Plaintiffs also failed to allege facts showing that the OpenAI Entities disclosed personal information protected by the CCPA.

As an initial matter, the named Plaintiffs cannot satisfy the statutory requirements for a CCPA claim.  Out-of-state plaintiffs lack standing to assert a claim under the CCPA.  Cal. Civ. Code § 1798.140(i) (defining "consumer" under the CCPA as "a natural person who is a California resident"); *see Hayden v. Retail Equation, Inc.*, No. SACV2001203DOCDFM, 2022 WL 2254461, at *5 (C.D. Cal. May 4, 2022) (concluding that "CCPA claims brought by out-of-state Plaintiffs [] fail because the CCPA does not apply to non-California residents").  Here, Doe 3 and Doe 4 are not California residents.  (*See* Compl. ¶¶ 19-20.)

Moreover, Plaintiffs failed to comply with the requirement to provide the OpenAI Entities with written notice of the alleged CCPA violations prior to filing the complaint.  Section 1798.150(b) states that "*prior to initiating any action*" under the CCPA, the customer must provide "written notice identifying the specific provisions [that] have been or are being violated." Cal. Civ. Code § 1798.150(b).  No OpenAI Entity received such notice, and the complaint does not allege otherwise.

The CCPA claim also should be dismissed because it provides only a limited private right

1  of action: a consumer must allege that their "nonencrypted and nonredacted personal

2  information" was "subject to an unauthorized access and exfiltration, theft, or disclosure as a

3  result of a business's violation of the duty to implement and maintain reasonable security

4  procedures and practices appropriate to the nature of the information." Cal. Civ. Code §

5  1798.150(a)(1).  No cause of action exists for "violations of any other section of [the CCPA]."

6  Cal. Civ. Code § 1798.150(c).  It is well-settled that "a statute creates a private right of action

7  only if the statutory language or legislative history affirmatively indicates such an intent." *Lil'*

8  *Man In the Boat, Inc. v. City and Cnty. of San Francisco*, No. C17-CV-00904-JST, 2018 WL

9  4207260, at *3 (N.D. Cal. Sept. 4, 2018) (cleaned up).  The OpenAI Entities' alleged failures to

10  provide (i) an opt-out notice, (ii) a clear and conspicuous opt-out link, (iii) a right to deletion, and

11  (iv) a right to access personal information, are not actionable because the CCPA unambiguously

12  reserved enforcement of these provisions to the California Privacy Protection Agency.  *See* Cal.

13  Civ. Code § 1798.155(a).

14       Finally, Plaintiffs' vague and conclusory allegations regarding the OpenAI Entities'

15  security practices fail to state a claim under the CCPA.  "[P]lausibility pleading standards are

16  especially important in cases like this, where the Defendant faces the 'potentially enormous

17  expense of discovery' if the Court denies [a] motion to dismiss." *Razuki v. Caliber Home Loans,*

18  *Inc.*, No. 17cv1718-LAB (WVG), 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (dismissing

19  data breach claims).  In the absence of allegations that show the OpenAI Entities' security

20  procedures and practices were deficient, Plaintiffs cannot state a CCPA claim.  *See Maag v. U.S.*

21  *Bank Nat'l Ass'n*, No. 21-cv-00031-H-LL, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021)

22  (dismissing CCPA claim where plaintiff made unsupported allegations that "his PII was

23  compromised because Defendant did not 'implement and maintain security procedures and

24  practices' [and] 'failed to effectively monitor its systems for security vulnerabilities'"); *Anderson*

25  *v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-CV-01860-MMC, 2019 WL 3753308, at *3-4 (N.D.

26  Cal. Aug. 8, 2019) (dismissing complaint that was "devoid of facts" regarding the "inadequate

27  securities measures" that purportedly caused plaintiff's alleged injury).

28       Here, Plaintiffs merely assert that the OpenAI Entities violated the CCPA by "collecting,

maintaining, and controlling their customers' sensitive personal information" and "engineering, designing, maintaining, and controlling systems that exposed their customers' sensitive personal information" without specifying what type of "sensitive personal information" had been collected or exposed.  (Compl. ¶ 233.)  Plaintiffs further allege that the OpenAI Entities were "aware of Copilot's propensity for revealing PII" and acted to "alter[] Copilot to force it to provide mock PII."  (*Id.* ¶ 234.)  But these allegations do not state a claim under the CCPA's narrow private right of action.  Nowhere in the complaint do Plaintiffs allege that any OpenAI Entity was "subject to an unauthorized access and exfiltration, theft, or disclosure" (b) "as a result of [their] violation of the duty to implement and maintain reasonable and appropriate security procedures and practices." Cal. Civ. Code § 1798.150(a).  Nor do plaintiffs provide any factual support for their allegation that any PII (much less their own PII) had been "exposed" or "reveal[ed]." (Comp. ¶¶ 233-34.)  Plaintiffs' CCPA claim has nothing to do with a data breach or unauthorized access to defendants' network—the crux of what this statute was designed to protect.

### 8.      Plaintiffs Fail to State a Claim for Negligence.

Plaintiffs' claim for negligent handling of personal data suffers from the same defects as their CCPA claim and must also be dismissed.  To prevail on a negligence claim, a plaintiff must establish: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to the standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Aguilar v. Hartford Accident & Indem. Co.*, No. CV 18-8123-R, 2019 WL 2912861, at *2 (C.D. Cal. Mar. 13, 2019) (citing *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009)).  The negligence pleading standard in the context of a data breach is "particularly demanding." *See, e.g., In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 971-72 (S.D. Cal. 2014), *order corrected*, No. 11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014) ("[T]he Court will not allow expensive, potentially burdensome class action discovery to ensue in the absence of a viable" negligence claim).  Here, Plaintiffs have not pled any of the required elements.

*First*, the complaint fails to allege any duty of care the OpenAI Entities owed to Plaintiffs. Plaintiffs merely allege that the OpenAI Entities negligently "collect[ed], maintain[ed], and control[ed] their customers' sensitive personal information." (Compl. ¶ 237.)  But Plaintiffs have not alleged that they are customers of any OpenAI Entity or had any relationship with an OpenAI Entity that would have created a duty.  Nor have they alleged that the OpenAI Entities collected or maintained any of *Plaintiffs'* "sensitive personal information" or "personal data."  (*Id.* ¶¶ 19-20, 23-28.)  In fact, Plaintiffs allege that the data at issue is available in public Github repositories.  (*Id.* ¶¶ 10, 46, 82-83.)  Plaintiffs have failed to plead the existence of a duty owed by any OpenAI Entity.  *Schmitt v. SN Servicing Corp.*, No. 21-CV-03355-WHO, 2021 WL 3493754, at *4 (N.D. Cal. Aug. 9, 2021) (finding duty inadequately pled where plaintiffs fail to address the relevant factors, including the "foreseeability of harm to plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, … the extent of the burden to defendant and the consequences to the community of imposing a duty with resulting liability for breach") (cleaned up).

*Second*, Plaintiffs also have not shown a breach of any duty.  Despite generic allegations that the OpenAI Entities learned of "multiple instances of release of [PII]," Plaintiffs offer no facts regarding these purported disclosures.  (*Id.* ¶ 238.)  On these threadbare allegations, Plaintiffs have not sufficiently alleged duty or breach.  *See, e.g.*, *Schmitt*, 2021 WL 3493754, at *5 (dismissing negligence claim where plaintiffs failed to provide "factual allegations from which [the Court] can draw a reasonable inference that PII. . . was among the information compromised during the data breach); *Anderson*, 2019 WL 3753308, at *5 (dismissing claim where "plaintiffs fail to allege any facts in support of their conclusory assertion" that defendant "fail[ed] to implement and maintain reasonable security procedures and practices").

Plaintiffs' citations to statutory standards—Cal. Civ. Code sections 1798.82, *et seq*, and 1798.100, *et seq.*—and to the right to privacy under California Constitution—also fail to support a breach.  Even if Plaintiffs can rely on these provisions to define the standard of care, Plaintiffs have not pled any facts demonstrating how OpenAI purportedly violated them. *See, e.g., Schmitt*, 2021 WL 3493754, at *5; *Anderson*, 2019 WL 3753308, at *5.

1       *Third*, Plaintiffs cannot establish proximate cause as they cannot make "the requisite

2 connection between the alleged breach and damages." *See Schmitt*, 2021 WL 3493754, at *6

3 (dismissing negligence claim because plaintiffs failed to show causation when "plaintiffs have not

4 plausibly pleaded that PII or identifiable information was disclosed (information that [defendant]

5 had a duty to protect)").

6       *Fourth*, Plaintiffs fail to adequately plead any redressable injuries.  None of Plaintiff's

7 alleged injuries satisfy the requisite damages standard for negligence.  (*See* Compl. ¶ 239.)

8     •  **Alleged loss of control over identity** is insufficient.  *Aguilar*, 2019 WL 2912861 at *2

9 ("alleged loss of control [over] medical information and personal financial information" does not

10 establish damages).

11     •  **Alleged lost time** is "too speculative to constitute cognizable injury." *Corona v. Sony*

12 *Pictures Ent., Inc.*, No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *4 (C.D. Cal. June 15,

13 2015).  Plaintiffs fail to specify what steps they took "to cure [the] harm to their privacy." (*See*

14 Compl. ¶ 239.)  In any event, "the cost of lost time" is "not recoverable under the economic loss

15 doctrine."  *See Gardiner v. Walmart Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103, at *8

16 (N.D. Cal. Mar. 5, 2021) (time spent not recoverable in tort).

17     •  **Alleged threat of future harm** "is insufficient to constitute actual loss." *Corona*, 2015

18 WL 3916744, at *3; *see Huynh v. Quora, Inc*., No. 18-CV-07597-BLF, 2020 WL 7408230, at *6

19 (N.D. Cal. June 1, 2020) (dismissing negligence claim because plaintiffs alleged the "mere danger

20 of future harm," without "specific factual statements that Plaintiffs' [PII] has been misused").

21     •  **Alleged privacy injuries** are conclusory and inadequately pled**.**  In any event, "an alleged

22 loss of property in the form of personal information is insufficient to support a claim for

23 negligence." *Aguilar*, 2019 WL 2912861 at *2.

24     •  **Alleged economic loss** is unsupported by any facts demonstrating economic loss

25 associated with the alleged disclosure of their PII.  To the extent plaintiffs are attempting to allege

26 economic losses, the economic loss rule bars recovery for any economic losses in tort unless there

27 is a "special relationship" between the parties. *Corona*, 2015 WL 3916744, at *5.  Plaintiffs have

28 not alleged that a special relationship exists here.

### 9.      Plaintiffs Fail to State a Civil Conspiracy Claim.

Civil conspiracy "is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).  To plead a conspiracy, plaintiffs must allege "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (cleaned up).  Further, such allegations "must be made within the sections of the complaint that contain plaintiff's claims for the underlying torts." *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 947-48 (N.D. Cal. 2003)

Because a conspiracy charge seeks to hold parties liable for the conduct of others, courts impose a heightened standard at the pleading stage: "[P]laintiff must more clearly allege *specific action on the part of each defendant* that corresponds to the elements of a conspiracy cause of action" and "*cannot indiscriminately allege that conspiracies existed between and among all defendants*."  *AccuImage*, 260 F. Supp. 2d at 947-48 (emphasis added); *see also Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 256 (S.D.N.Y. 2009).

Plaintiffs' conspiracy claim fails because this is not an independent cause of action.  *See Accuimage*, 260 F. Supp. 2d at 947 (dismissing conspiracy claim with prejudice because "plaintiff cannot plead conspiracy as an independent cause of action"); *see also* 5 B. Witkin, Summary of California Law, Torts § 44 (9th ed.1988) ("Strictly speaking, however, there is no separate tort of civil conspiracy.").  Plaintiffs' conspiracy claim should be dismissed on this ground alone.

Separately, the conspiracy claim fails because the complaint does not identify the role of each Defendant in the formation and operation of the alleged conspiracy, the wrongful acts done by each Defendant, or anything else about the alleged conspiracy, other than four paragraphs of boilerplate allegations.  (*See* Compl. ¶¶ 241-244.)  Plaintiffs allege vaguely that "[Defendants] agreed to a common plan or design to create, sell, and run Copilot to commit and conceal [various] tortious acts."  (*Id.* ¶ 244.)  These allegations, which indiscriminately allege that conspiracies existed among *all Defendants*, do not satisfy the substantial showing required at the

pleading stage.  *See e.g.*, *AccuImage*, 260 F. Supp. at 947-48 (dismissing conspiracy claim with prejudice, in part, because plaintiff provided "only vague details" about the conspiracies).

In addition, the complaint does not satisfy the "wrongful acts" element upon which the conspiracy claim is based.  To establish a "wrongful act," plaintiffs must satisfy all elements of some other tort or wrong.  *Gen. Am. Life Ins. Co. v. Rana*, 769 F. Supp. 1121, 1125 (N.D. Cal. 1991).  As detailed above, Plaintiffs cannot allege a violation of any of the laws on which they premise their civil conspiracy claim.

Finally, "agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities," *AccuImage*, 260 F. Supp. 2d at 947, nor can a corporate parent and subsidiary conspire together, *Laxalt v. McClatchy*, 622 F. Supp. 737, 745-46 (D. Nev. 1985) (dismissing conspiracy claim against corporation and its wholly owned subsidiaries and employees).  Plaintiffs' conspiracy claim against OpenAI, Inc. and its subsidiaries should be dismissed for this independent reason.

### 10.     Plaintiffs Fail to State a Claim for Declaratory Relief.

Plaintiffs' claim for declaratory relief should be dismissed because it is not an independent cause of action.  *See Mayen v. Bank of Am. N.A.*, No. 14-CV-03757-JST, 2015 WL 179541, at *5 (N.D. Cal. Jan. 14, 2015).  Where, as here, there is no basis for any of the underlying claims, dismissal is appropriate.  *See Malasky v. Esposito*, No. 16-CV-04102-DMR, 2019 WL 79032, at *10 (N.D. Cal. Jan. 2, 2019), *aff'd*, 781 F. App'x 643 (9th Cir. 2019) (dismissing declaratory relief claim "[b]ecause the court has dismissed [the] underlying claims").

## V.     CONCLUSION

For all of these reasons, Plaintiffs' complaint fails to state any claim against the OpenAI Entities.  The complaint should be dismissed in its entirety.

1    Dated: January 26, 2023                      MORRISON & FOERSTER LLP

2

3                                                 By:    */s/ Michael A. Jacobs*
                                                        Michael A. Jacobs
4

5                                                 MICHAEL A. JACOBS
                                                  MJacobs@mofo.com
6                                                 JOSEPH C. GRATZ
                                                  JGratz@mofo.com
7                                                 TIFFANY CHEUNG
                                                  TCheung@mofo.com
8                                                 MORRISON & FOERSTER LLP
                                                  425 Market Street
9                                                 San Francisco, California  94105-2482
                                                  Telephone:     (415) 268-7000
10                                                Facsimile:     (415) 268-7522

11                                                ROSE S. LEE
                                                  RoseLee@mofo.com
12                                                MORRISON & FOERSTER LLP
                                                  707 Wilshire Boulevard
13                                                Los Angeles, California 90017-3543
                                                  Telephone:     (213) 892-5200
14                                                Facsimile:     (213) 892-5454

15                                                Attorneys for Defendants OPENAI, INC., a
                                                  Delaware nonprofit corporation, OPENAI,
16                                                L.P., a Delaware limited partnership,
                                                  OPENAI GP, L.L.C., a Delaware limited
17                                                liability company, OPENAI STARTUP
                                                  FUND GP I, L.L.C., a Delaware limited
18                                                liability company, OPENAI STARTUP
                                                  FUND I, L.P., a Delaware limited
19                                                partnership, OPENAI STARTUP FUND
                                                  MANAGEMENT, LLC, a Delaware limited
20                                                liability company

21

22

23

24

25

26

27

28