Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:     (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                  swilliams@saverilawfirm.com
                  czirpoli@saverilawfirm.com
                  cyoung@saverilawfirm.com
                  eabuchanan@saverilawfirm.com
                  tmanfredi@saverilawfirm.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| J. DOE 1, et al.,<br><br>     Individual and Representative Plaintiffs,<br><br>     v.<br><br>GITHUB, INC., et al.,<br><br>                 Defendants. | Case Nos.   4:22-cv-06823-JST<br>               4:22-cv-07074-JST<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS**<br><br>Date:        May 4, 2023<br>Time:       2:00 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge:     Hon. Jon Tigar |

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND ............................................................. 2

III.  ARGUMENT ....................................................................................... 4

    A.  Plaintiffs Have Established Article III Standing ......................... 5

    B.  As Set Forth in Plaintiffs' Opposition to Defendant OpenAI's Motion to Dismiss, Plaintiffs Have Established They Should be Permitted to Proceed Anonymously ............................................................................... 5

    C.  Plaintiffs Allege Particularized Facts Sufficient to Meet the Requirements of Rule 8(a)(2) ................................................................................ 6

    D.  Plaintiffs Have Plausibly Pled Claims for Violation of the Digital Millennium Copyright Act Against All Defendants (17 U.S.C. § 1202(b)). 7

    E.  Plaintiffs Have Plausibly Alleged State Law Claims Against All Defendants ........................................................................... 9

        1.  Plaintiffs' State Law and Common Law Claims Are Not Preempted by the Copyright Act ............................................................ 9

        2.  Plaintiffs Have Properly Alleged Breach of Contract (Count II) Against All Defendants Based on Violations of the Open-Source Licenses Accompanying Plaintiffs' Software Code. ......................12

        3.  Plaintiffs Have Plausibly Pled Breach of Contract Claims Against Microsoft and GitHub for Violations of the GitHub Terms of Service and Privacy Statement (Count VIII). ...............................14

        4.  Plaintiffs Have Plausibly Pled a Claim for Unjust Enrichment (Count VI) ...................................................................15

        5.  Plaintiffs Have Plausibly Pled a Claim Under California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*) (Count VII) .................................................................................17

        6.  Plaintiffs Have Plausibly Pled a Claim for Negligence (Count X) ..19

        7.  Plaintiffs Have Plausibly Pled a Claim for Civil Conspiracy (Count XI) ........................................................................................21

    F.  Plaintiffs Should be Permitted Leave to Amend ...................... 22

IV.  CONCLUSION ................................................................. 23

**Federal Cases**

*Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974 (S.D. Cal. 2014) ................................................................................................ 7

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) ...............................11

*Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982-JSC, 2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) ...........................................................................................11

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ........................................................................................................................ 4

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ............................ 16

*Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033 (N.D. Cal. 2014) ................................17

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) ......................... 19, 20, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 4

*Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15cv3268 (DLC), 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) .............................................................................................. 8

*Bowers v. Baystate Tech. Inc.*, 320 F.3d 1317 (Fed. Cir. 2003) ............................... 10

*Bruton v. Gerber Prods. Co.*, 703 F. App'x 468 (9th Cir. 2017) .............................. 15, 17

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ............................... 18

*Callahan v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) .................................................................................................... 18

*Cappello v. Walmart Inc.*, 394 F. Supp.3 d 1015, 1023 (N.D. Cal. 2019) ...................17

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................................... 5

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ..................... 4

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) ...................................................... 19

*CSI Elec. Contractors, Inc. v. Zimer Am. Corp.*, No. CV 12-10876-CAS, 2013 WL 1249021 (C.D. Cal. Mar. 25, 2013) ........................................................................... 16

*DecisionQ Corp. v. GigM Techs., LLC*, Civil Action No. 1:17-cv-232, 2018 WL 10466657 (E.D. Va. Feb. 14, 2018) ........................................................................... 10

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) ............................................................ 22

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. CVF03-5412 AWI LJO,
2008 WL 2220396 (E.D. Cal. May 27, 2008) .................................................... 7

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ....................... 22

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) ........................... 15

*Firoozyle v. Earthlink Network*, 153 F. Supp. 2d 1115 (N.D. Cal.2001) ....................... 9

*Fleites v. MindGeek S.A.R.L.*, __ F. Supp. 3d __, 2022 WL 4456077 (C.D. Cal.
July 9, 2022) .................................................................................................. 21, 22

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................... 18

*Friche v. Hyundai Motor, Am.*, No. SACV 21-01324-CJC, 2022 WL 1599868 (C.D.
Cal. Jan 28, 2022) ............................................................................................... 6

*FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, No. 18-232 (JRT/HB), 2022 WL
891473 (D. Minn. Mar. 25, 2022) ....................................................................... 8

*GC2 v. Int'l Game Tech.*, 391 F. Supp. 3d 828 (N.D. Ill. 2019) ..................................... 8

*Hadley v. Kellogg Sales Corp.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ....................... 16

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021) ............... 16, 17

*ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) ................................... 8

*In re Anthem Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783
(N.D. Cal. May 17, 2016) ................................................................................... 19

*In re Facebook, Inc, Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D.
Cal. 2019) ................................................................................................... passim

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................ 4

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871 (N.D. Cal. 2019) ......... 16

*In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) ........... 15

*In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447 (D. Md.
2020) ............................................................................................................... 18

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d
942 (S.D. Cal. 2014) ................................................................................. 5, 20, 21

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION
TO DISMISS

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................................................................... 18

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) ...................................................... 18

*Jacobsen v. Katzer*, 609 F. Supp. 2d 925 (N.D. Cal. 2009) .................................... 9, 20

*James River Ins. Co. v. DCMI, Inc.*, No. C 11–06345 WHA, 2012 WL 2873763 (N.D. Cal. July 12, 2012) ........................................................................................... 13

*Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877 (N.D. Cal. 2022) ........................... 12, 19

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ........................................ 22

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) .................. 4, 13

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ........................................................ 13

*Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134 (9th Cir. 2006) ................................. 9

*Low v. LinkedIn*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................... 12, 14

*Lynwood Inv. Cy Ltd. v. Konovalov*, No. 20-CV-03778-LHK, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021) ......................................................................................... 22

*Maloney v. T3 Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) ........................................... 9

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2d Cir. 2020) ............................................. 7, 8

*McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020) .................... 4

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010) ...................... 11

*Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l*, 991 F.2d 425 (8th Cir. 1993) ........ 10

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ............................................................ 4

*Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-cv-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) ........................................................................................... 4

*Schmitt v. SN Servicing Corp.*, 21-cv-03355-WHO (N.D. Cal. Aug. 9, 2021) .............. 21

*Software Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 8:21-cv-01943-JLS-KES, 2022 WL 1527518 (C.D. Cal. May 13, 2022) .................................................. 9, 10, 12

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) ........................................... 7, 8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ....................................................... 4

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ............................................... 5, 12

*United States v. Doe*, 655 F.2d 920 (9th Cir. 1981) .................................................. 6

*Versata Software, Inc. v. Ameriprise Fin., Inc.*, 2014 WL 950065 (W.D. Tex. Mar. 11, 2014) .................................................................................................... 10

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) .................. 4

*Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) ........................................................................................... 20, 21

*Wu v. Sunrider Corp.*, No. CV 17-4825 DSF (SSX), 2017 WL 6880087 (C.D. Cal. Oct. 10, 2017) ...................................................................................... 16

**State Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994) ................... 21, 22

*Doctors' Co. v. Superior Court*, 49 Cal. 3d 39 (1989) ....................................... 21, 22

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal.4th 988 (2015) .................. 15, 17

*Kahn v. E. Side Union High Sch. Dist.*, 31 Cal. 4th 990 (2003) ........................... 20

*Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011) ...................................... 18

*Lectodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000) ....................................... 15

*McGarry v. Sax*, 158 Cal. App. 4th 983 (2008) .................................................. 19

*Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607 (2018) ....................... 19

*Rowland v. Christian*, 69 Cal. 2d 108 (1968) ............................................... 20, 21

**Federal Statutes**

17 U.S.C. §§ 101 *et seq* ..................................................................... 1, 9, 10, 11

17 U.S.C. § 102 ................................................................................... 9

17 U.S.C. § 103 ................................................................................... 9

17 U.S.C. § 106 ................................................................................... 9

17 U.S.C. § 301(a) ............................................................................... 9

17 U.S.C. § 1202 ........................................................................... *passim*

17 U.S.C. § 1202(b) ........................................................................... 7, 8

17 U.S.C. § 1202(c) ............................................................................ 7

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................17

Cal Bus. & Prof. Code § 17204 ................................................................. 18

Cal. Civ. Code § 1714 .............................................................................. 20

**Rules**

Fed. R. Civ. P. 8 .............................................................................*passim*

Fed. R. Civ. P. 9 ..................................................................................... 6

Fed. R. Civ. P. 10(c) ...............................................................................13

Fed. R. Civ. P. 12 .................................................................................... 4

Fed. R. Civ. P. 15 ...................................................................................22

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS

# I.    INTRODUCTION

Plaintiffs' Class Action Complaint (the "Complaint") alleges with specificity how Defendants Microsoft and GitHub (collectively, "Microsoft/GitHub"), along with the OpenAI Defendants, took and misused Plaintiffs' code that was published subject to open-source licenses and other restraints. Defendants took that code for their own commercial benefit and without any regard to the terms of those licenses. Defendants used Plaintiffs' and class members' code to train their artificial intelligence products, Codex and Copilot, on that code, and then designed the AI programs to ignore or filter out any of the terms of the licenses applicable to Plaintiffs' code. Defendants then sold and marketed Codex and Copilot in violation of federal and state statutes and the common law. This has resulted in significant harm to Plaintiffs. They seek redress in the form of damages and injunctive relief.

Microsoft/GitHub challenge Plaintiffs' Complaint on several grounds, but all fall flat. Microsoft/GitHub join OpenAI in disputing Plaintiff's Article III standing and that Plaintiffs' have failed to satisfy Rule 8(a)(2) pleading requirements. Microsoft/GitHub also join OpenAI in challenging that Plaintiffs have adequately set forth a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202. As set forth fully in Plaintiffs' opposition to OpenAI's motion to dismiss, each of these assertions is unavailing.

Microsoft/GitHub also disputes that Plaintiffs have properly alleged state and common law claims. First, Microsoft/GitHub claims that Plaintiffs' claims are preempted by the Copyright Act. This is incorrect. Preemption typically does not apply to breach of contract claims as those claims generally involve additional obligations not covered by the Copyright Act. As to Plaintiffs' other state law claims, each of Plaintiffs' other claims all involve an "extra element" beyond the elements of a claim under the Copyright Act.

Microsoft/GitHub's pleading challenges also fail. Plaintiffs have specifically alleged the requisite facts with respect to all the required elements to assert a breach of contract claim based on Defendants' disregard of the open-source licenses Plaintiffs publish their code subject to, including specifying the provisions of the licenses Defendants have breached. Plaintiffs also state breach of contract claims against Microsoft/GitHub for breach of GitHub's Terms of Service

which by its terms incorporate GitHub's Privacy Statement and prohibits the unauthorized distribution of Plaintiffs' code to third parties for commercial profit. Plaintiffs' Complaint also sets forth well pleaded facts setting forth a claim for negligence as Defendants, who are the custodians of Plaintiffs' information, had a duty to safekeep that information and prevent unauthorized distribution of that information. Defendants breached that duty when they used Plaintiffs' code to train Codex and Copilot and distributed Plaintiffs' code as output for profit. Plaintiffs have further pled claims for unjust enrichment, negligence, civil conspiracy, and violation of California's Unfair Competition law. To the extent any claims are found to be insufficient, amendment would not be futile. Plaintiffs respectfully request leave to amend to address any deficiencies.

## II.    FACTUAL BACKGROUND

Defendants are in the business of developing AI systems. *See* ¶¶ 44, 47.[1] Codex and Copilot are artificial intelligence programs that, through using statistical models, attempt to simulate human reasoning. ¶¶ 2, 8, 46. OpenAI began development of Codex in 2015 and released Codex on a limited basis in August 2021. ¶ 44. GitHub began development of Copilot in 2019 and released Copilot on a limited basis in June 2021, and GitHub released Copilot on a paid subscription basis in June 2022. ¶ 45. Codex and Copilot are related. ¶ 47. Microsoft acquired GitHub in 2018 and is the current owner of the Copilot platform. ¶ 22.

While corporate ownership is hidden from public view, Copilot appears to be a joint venture between GitHub and OpenAI, and Codex is the product that "powers" Copilot. ¶¶ 22, 47, 66 ("a modified version of Codex is used as the engine that powers Copilot"). The popular press indicates OpenAI received significant startup funding from Microsoft. ¶¶ 6, 132. In addition, Microsoft eventually procured from OpenAI an exclusive license for OpenAI's GPT-3 language model, the basis for their AI products. In June 2021, GitHub and OpenAI launched the Copilot program through a self-described joint venture. ¶ 8.

---

[1] "¶ ___" and "App'x ___" citations are to the Class Action Complaint, Case No. 22-cv-07074, ECF No. 1 unless otherwise indicated.

Copilot works by using the code posted to GitHub and learning from that data to produce code itself. It does so based on OpenAI's Codex, which is an AI model. ¶¶ 66, 84, 241. Like other AI products, Codex and Copilot rely on "training," which is the process by which an AI program can "learn" how to anticipate and provide solutions to coding issues by processing large amounts of data. ¶¶ 10 & n.2, 46, 79. GitHub maintains a website named GitHub.com that allows coders to create and share coding projects under open-source licenses. ¶ 21. As stated by Defendants themselves, Codex and Copilot were trained on code taken from GitHub repositories. ¶¶ 82-83.

Unlike human programmers, AI such as Codex and Copilot function by predicting based on the training data the most likely solution to a given input. ¶ 79. It detects statistically significant patterns in the training data and provides output based on these patterns. ¶ 81. As a result, Copilot regularly outputs verbatim copies of materials it was trained on, i.e., it makes identical copies of underlying code that was used as training data. ¶¶ 87–89. Indeed, GitHub has admitted that Copilot reproduces verbatim passages of code at least 1% of the time. ¶ 90. This likely vastly understates the actual frequency. ¶ 91.

When a coder creates a project on GitHub, they are offered suggested licenses that they can attach to their code to control and govern its use by others. ¶ 34 & n.10. These licenses contain common requirements such as attribution, inclusion of the copyright notice, and inclusion of the copyright's text. *Id.* Plaintiffs utilized these licenses when producing their own code. ¶¶ 19, 20. Plaintiffs then published their code to GitHub pursuant to the rights and obligations outlined in GitHub's Terms of Service and Privacy Statement. ¶¶ 4, 19, 20, 216.

Codex and Copilot were intentionally designed to omit the information included in the licenses. ¶ 80. This is intentional because early iterations of Copilot reproduced license text. ¶ 94. Indeed, even in July 2021, when Copilot was near its initial launch, it would still sometimes reproduce license text, attribution, and copyright notices, albeit not entirely accurately. ¶ 95. Defendants then took further steps to ensure that license text, attribution, and copyright notices were no longer produced as output by Copilot. ¶¶ 94-95. Now, when Codex or Copilot output code, it produces the code without any of the above-mentioned information, such as attribution,

even if otherwise producing a near or exact copy of copyrighted code. ¶¶ 46, 87, 90-91, 147-61. This is not by accident, but by design. ¶¶ 94, 95.

## III.    ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly,* 550 U.S. at 569 n.14, 570. The statements alleged in the complaint must provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.") (citation omitted).

In weighing a motion to dismiss under Rule 12, the court must accept all allegations in the complaint as true. *See McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881, 886-87 (9th Cir. 2020) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."). The Court should "presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000). Further, the allegations should be evaluated holistically, not piecemeal. *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). "Dismissal 'is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-cv-06226-EJD, 2020 WL 6700480, at *2 (N.D. Cal. Nov. 13, 2020) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). This same standard applies to allegations of standing. *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (at the pleading stage, a plaintiff "need only show that the facts alleged, if proved, would confer standing upon him"); *Knevelbaard*, 232 F.3d at 989-90 (same).

**A.      Plaintiffs Have Established Article III Standing**

Microsoft/GitHub joins Defendant OpenAI in alleging that Plaintiffs have not pleaded facts sufficient to confer Article III Standing. For the reasons set forth in Plaintiffs' Opposition to Defendant OpenAI's Motion to Dismiss, and which Plaintiffs incorporate by reference and summarize herein, Plaintiffs establish Article III standing.

Plaintiffs have pleaded concrete injuries analogous to harms long recognized at common law. Plaintiffs allege that they published code they wrote under open-source licenses on GitHub. ¶¶ 19-20. That code was then used as training data for Codex and Copilot which then distributed the code without following the license terms. ¶¶ 45, 46, 52–56, 78–81. Plaintiffs seek to vindicate their property and copyright rights under various federal, state, and common law. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

Plaintiffs have also alleged particularized injury. Plaintiffs each pled they published code under open-source licenses, the relevant terms of which Plaintiffs have set forth in detail. *See*, *e.g.*, ¶¶ 19-20. Those licenses were breached when Copilot and Codex used their code to train and distribute that code without regard to the terms of those licenses, i.e., distributed code without, *inter alia*, attribution of authorship, notice of copyright and a copy of the license as required by those open-source licenses. ¶¶ 64, 77, 79, 81; *see also* App'x A. Plaintiffs also allege that their code is continuing to be displayed, without attribution of authorship and other conditions set forth in their open-source licenses, leading to imminent and significant risk of misappropriation. *See* ¶ 91. That is sufficiently alleged particularized injury and supports injunctive relief. *See*, *e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. 2014); *see also TransUnion*, 141 S. Ct. at 2210 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013))

**B.      As Set Forth in Plaintiffs' Opposition to Defendant OpenAI's Motion to Dismiss, Plaintiffs Have Established They Should be Permitted to Proceed Anonymously**

Defendants Microsoft/GitHub also joins Defendant OpenAI in alleging that Plaintiffs have not pleaded facts sufficient to justify the use of pseudonyms. For the reasons set forth in Plaintiffs' Opposition to OpenAI's Motion to Dismiss, and summarized below in brief, Plaintiffs

should be permitted to proceed pseudonymously. Plaintiffs have legitimate and well-founded concerns that they will be subjected to physical violence should their identities be revealed. Saveri Decl., ¶ 2. Plaintiffs, through their counsel, have received actual legitimate threats of violence. *See*, *e.g.*, Saveri Decl., Exs. 1–3. Further, Defendants have suffered no prejudice because all Plaintiffs sought was an adequate protective order to protect their identities. Plaintiffs have disclosed their identities to Defendants subject to those protections. Saveri Decl., ¶ 12. Indeed, whatever prejudice Defendants have suffered is a result of their own gamesmanship as Defendants delayed entry of a protective order. Saveri Decl., ¶¶ 7–11, Exs. 4–5. These circumstances justify permitting Plaintiffs to proceed pseudonymously. *See United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981).

## C. Plaintiffs Allege Particularized Facts Sufficient to Meet the Requirements of Rule 8(a)(2)

Microsoft/GitHub also appear to challenge the sufficiency of Plaintiffs' claims against them, though they do not refer directly to Rule 8(a)(2). Microsoft/GitHub Br. at 12–13. As an initial matter, at this stage Plaintiffs are not required to plead with specificity the details of the formal relationship between corporate entities, even under the heightened pleading standards under Rule 9. *See*, *e.g.*, *Friche v. Hyundai Motor, Am.*, No. SACV 21-01324-CJC (ADSx), 2022 WL 1599868, at *5 n.4 (C.D. Cal. Jan 28, 2022) (holding that even under Rule 9, "[p]rior to discovery, Plaintiff cannot be expected to know the precise relationship between the members of the Hyundai corporate family"). In any event, despite claiming to be two independent entities, Microsoft and GitHub filed one Motion to Dismiss that makes little distinction between the two entities, except when challenging the sufficiency of Plaintiffs' claims. Microsoft/GitHub are both alleged to have participated in the sale, marketing, and distribution of Copilot (¶¶ 21–22, 143, 241–44), and GitHub is also alleged to have directly participated in Copilot's creation (¶¶ 8, 21, 45, 47). These acts give rise to all the causes of action alleged against "All Defendants."

In addition, Plaintiffs' claims against Microsoft are based in part on Microsoft's control over OpenAI, L.P. (*e.g.*, ¶¶ 126–38), which it maintains at least a 10% interest in (ECF No. 40). OpenAI, L.P. is alleged to have participated directly in the creation and distribution of Copilot

and Codex. ¶¶ 24, 44, 47. Microsoft has established GitHub as its agent with respect to the sale, marketing, and distributing of Copilot. ¶ 22. Microsoft and OpenAI also partnered to ensure that Copilot would operate on Microsoft's cloud-computing platform, Azure. ¶¶ 127-34. Moreover, Microsoft is also vicariously liable for GitHub's acts in creating Copilot under an agency theory. *E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. CVF03-5412 AWI LJO, 2008 WL 2220396, at *11 (E.D. Cal. May 27, 2008); *see also Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 982-83 (S.D. Cal. 2014) (denying summary judgment on issue of agency).

**D.      Plaintiffs Have Plausibly Pled Claims for Violation of the Digital Millennium Copyright Act Against All Defendants (17 U.S.C. § 1202(b))**

Microsoft/GitHub raises many of the same arguments Defendant OpenAI makes in alleging that Plaintiffs have not pleaded facts sufficient to plead a claim for violation of the Digital Millennium Copyright Act ("DMCA"). 17 U.S.C. § 1202(b). Given that many of these arguments are addressed fully in Plaintiffs' Opposition to OpenAI's Motion to Dismiss, Plaintiffs do not repeat them here.

Briefly summarized, however, Plaintiffs have adequately alleged each of the elements for a claim under 17 U.S.C. § 1202(b). *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020); *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018). Plaintiffs have alleged that they make their code available subject to open-source licenses, which include at least three types of copyright management information ("CMI"): (1) the name of the owner; (2) a copyright notice, and (3) the terms of the applicable license; these facts constitute CMI in connection with the original work. *See* 17 U.S.C. § 1202(c); ¶¶ 19–20, 34 n.4. Plaintiffs have alleged Defendants distributed copies of the Licensed Materials and that Defendants did so with knowledge they were removing or altering CMI from the licenses by training Codex and Copilot to either ignore CMI or by filtering out CMI from output. ¶¶ 84, 93-95. Indeed, as further alleged, Defendants knew what was contained in those licenses because GitHub permits users to select which licenses to apply when a programmer uploads a project to GitHub. ¶ 196. And, as evidenced by Copilot's Terms of Service, Defendants induce users of Copilot to commit further infringement and to

conceal their own earlier infringement. ¶ 77, 156–57, 218, Ex. 1. Given GitHub's terms and Defendants' knowledge that early versions of Codex and Copilot did produce CMI, it is reasonable to infer that Defendants had knowledge that Copilot's output would induce, enable, facilitate, or conceal infringement. *Mango*, 970 F.3d at 172; *GC2 v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 842 (N.D. Ill. 2019).

To the extent Microsoft/GitHub argue that a violation of Section 1202(b) requires that the copy be "identical" (Microsoft/GitHub Br. at 13–14), this argument is not well taken. As courts have recognized, CMI can be embedded within computer code itself, so removal of that CMI would necessarily mean that the infringing copy would no longer be identical. *Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15cv3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015) (finding § 1202(b) liability for removing CMI that was woven into and incorporated into code); *see also ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) (finding liability under section 1202 where defendant "deleted source code headers from at least two files that he copied . . . and for those two files they admit that [defendant] added a . . . header in its place.").

Microsoft/GitHub also argues that Section 1202 requires an "active conduct" requirement for liability. In so doing, Microsoft/GitHub read in an "active conduct" element to DMCA claims where there is none. Plaintiffs are required to prove scienter and may do so through facts showing a pattern, practice, or plan from which knowledge or intent can be inferred. *See FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, No. 18-232 ( JRT/HB), 2022 WL 891473, at *25 (D. Minn. Mar. 25, 2022) ("A plaintiff can demonstrate actual or constructive knowledge by showing a past 'pattern of conduct' or 'modus operandi' that the defendant was aware of or had reasonable grounds to be aware and which put defendant on notice of the probable future impact of its actions.") (citing *Stevens*, 899 F.3d at 674). Further, courts have recognized that each time a program is run or updated, it can be an independent removal of CMI. *See, e.g.*, *GC2*, 391 F. Supp. 3d at 842 (finding it reasonable to infer that CMI was "unlawfully removed or manipulated" "each time they updated or launched a game"). Plaintiffs need only allege that Defendants knowingly or intentionally created or designed Copilot to either ignore or filter the CMI

accompanying Plaintiffs' (and class members') code. Plaintiffs' allegations suffice. ¶¶ 8, 92-95, 148.

**E.    Plaintiffs Have Plausibly Alleged State Law Claims Against All Defendants**

**1.    Plaintiffs' State Law and Common Law Claims Are Not Preempted by the Copyright Act**

Defendants argue Plaintiffs' state law claims are preempted by Section 301 of the Copyright Act. 17 U.S.C. § 301(a). They are mistaken. None of Plaintiffs' state law and common law claims are preempted because they are qualitatively different than copyright claims, and they each contain one or more additional elements beyond those of a copyright claim.

In the Ninth Circuit, courts first "[d]ecide 'whether the "subject matter" of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103.' Second, assuming it does, [courts] determine 'whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.'" *Maloney v. T3 Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citations omitted, quoting *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006)); *see also Firoozyle v. Earthlink Network*, 153 F. Supp. 2d 1115, 1122-23 (N.D. Cal.2001) ("After all, section 301(a) only preempts state-law claims where the work involved falls within the general subject matter of the Copyright Act and the rights that the plaintiff asserts under state law are equivalent to those protected by the Act"). "'To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights,' and the 'state claim must have an extra element which changes the nature of the action.'" *Software Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 8:21-cv-01943-JLS-KES, 2022 WL 1527518, at*3 (C.D. Cal. May 13, 2022) ("*SFC*"); *see also Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 933 (N.D. Cal. 2009) ("In other words, to survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights.") (citation omitted).

Plaintiffs allege that Codex and Copilot have taken Plaintiffs' code and distributed it in breach of the accompanying open-source licenses and other contractual provisions. ¶¶ 180–83. This claim for breach of contract is not preempted by the Copyright Act. *SFC*, 2022 WL 1527518,

at *3 ("'Most courts have held that the Copyright Act does not preempt the enforcement of contractual rights.'"); *see also Bowers v. Baystate Tech. Inc.*, 320 F.3d 1317, 1324-25 (Fed. Cir. 2003) ("[M]ost courts to examine this issue have found that the Copyright Act does not preempt contractual constraints on copyrighted articles."); *Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l*, 991 F.2d 425, 431 (8th Cir. 1993) ("National's use of the licensed programs constitutes an extra element in addition to the copyright rights making this cause of action qualitatively different from an action for copyright."). This is especially true when the contract at issue is an open-source license. *See DecisionQ Corp. v. GigM Techs., LLC*, Civil Action No. 1:17-cv-232 (AJT/JFA), 2018 WL 10466657, at *5 (E.D. Va. Feb. 14, 2018) ("An open source license may require, as a condition precedent to use, that any resulting compilation or derivative work be subject to the same license"). Indeed, courts have readily concluded that open-source licenses are not preempted because they include an "extra element" that is not encompassed by the Copyright Act. *See, e.g., Versata Software, Inc. v. Ameriprise Fin., Inc.*, 2014 WL 950065, at *4-5 (W.D. Tex. Mar. 11, 2014) (finding no preemption for breach of contract counterclaim because GPL imposed "an additional obligation: an affirmative promise to make its derivative work open source because it incorporated an open source program into its software").

*SFC*, 2022 WL 1527518, *supra*, is instructive. *SFC* involved claims for breach of contract and declaratory relief stemming from two open-source software license agreements. *Id.* at *1. The *SFC* defendant sought to remove plaintiff's action from federal court on the basis that plaintiff's causes for breach of contract and declaratory relief were preempted by the Copyright Act. *Id.* at *2. The *SFC* court determined that plaintiff's claims were not preempted because "the enforcement of 'an additional contractual promise separate and distinct from any rights provided by the copyright laws' amounts to an 'extra element.'" *Id.* at *3.

Likewise, Plaintiffs' claims for breach of contract claims as set forth in Count II are distinct from the Copyright Act because open-source licenses impose contractual considerations not covered by the Copyright Act. In particular, the licenses require, among other things, attribution of ownership, notice of copyright and a copy of the license. ¶¶ 64, 77, 79, 81, 173, App'x A. These requirements are each an "extra element" precluding preemption. *See, e.g.,*

*Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982-JSC, 2017 WL 1477373, at *3 (N.D. Cal. Apr. 25, 2017) (finding breach of contract claim not preempted by Copyright Act). Similarly, Count VIII for breach of GitHub's Terms of Service is not preempted on similar grounds—GitHub's Terms of Service impose contractual considerations distinct from the Copyright Act. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). Plaintiffs' tortious interference claim based on those claims also is not preempted. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 938 (9th Cir. 2010) (finding no preemption of tortious interference claim where party "seeks to enforce contractual rights that are not equivalent to any of its exclusive rights of copyright").

Plaintiffs other state law claims are not preempted either. Plaintiffs' negligence claim involves duty, breach of duties, causation and damages, which, as demonstrated in Section III.E.6, *infra*, do not overlap with a claim available under the Copyright Act. Plaintiffs' California unfair competition claim under the unlawful prong relies on a violation of the DMCA not the Copyright Act and includes additional elements including restitutionary relief. For example, Plaintiffs allege that, as a result of Defendants' conduct, they have been deprived of the right to identify and control the reproduction of their works, to have the terms of the open-source licenses followed, and to pursue copyright infringement remedies. ¶ 168. Further, this case is not merely about the *reproduction* of Plaintiffs' code, but also the unauthorized *use*. As recognized by the Ninth Circuit, "[a] state law tort claim concerning the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act." *Altera*, 424 F.3d at 1090. Plaintiffs allege that Defendants, through their unauthorized use of Plaintiffs' code to train Codex and Copilot, and their display of Plaintiffs' code to others for commercial gain, violated Plaintiffs' rights under state and common law. ¶¶ 46, 79-84. Plaintiff's state law claims are qualitatively different from claims under the Copyright Act and contain additional elements, and thus are not preempted.

### 2. Plaintiffs Have Properly Alleged Breach of Contract (Count II) Against All Defendants Based on Violations of the Open-Source Licenses Accompanying Plaintiffs' Software Code.

A claim for breach of contract must allege "the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff." *Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012). Plaintiffs have alleged facts supporting each and every element of a breach of contract claim as to Defendants' violations of the Suggested Licenses.

Defendants do not dispute that the open-source licenses constitute a contract—and rightly so, as case law is replete with examples of open-source licenses enforced under contract law. *See, e.g., SFC*, 2022 WL 1527518, at *1. Further, Plaintiffs have specified the licenses at issue and the provisions breached. *See* ¶ 64. Plaintiffs allege that Codex and Copilot's policy of ignoring open-source licenses is not a bug, but a feature, designed into the product by Microsoft/GitHub. ¶¶ 92–95; *see also* ¶ 80 ("Copilot [was] not programmed to treat attribution, copyright notices, and license terms as legally essential."), ¶ 66 ("a modified version of Codex is used as the engine that powers Copilot"). Plaintiffs allege that Defendants "fail[ed] to provide the source code of Copilot nor a written offer to provide the source code upon the request of each licensee" (¶ 180); "fail[ed] to provide attribution to the creator" (¶ 181); "fail[ed] to include copyright notices" (¶ 182); and "fail[ed] to identify the License applicable to the Work and/or including its text when Copilot outputs code including a portion of a Work" (¶ 183). Plaintiffs allege this constitutes a breach of the open-source license terms attached to the training data. ¶¶ 180–83; *see also* Appendix A. And Plaintiffs further allege causation and damages. They allege that they "have suffered monetary damages as a result" of Defendants' breach (¶ 184) as well as other "great and irreparable injury" (¶ 185). *See TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo*, 578 U.S. at 341); *see also id.* (describing concrete harms as physical harms, monetary harms, and intangible harms which "include, for example, reputation harms, disclosure of private information, and inclusion upon seclusion.").

Defendants do not dispute that the open-source licenses constitute a contract, or Plaintiffs' performance. Instead, they quibble that Plaintiffs did not adequately specify the specific provisions violated. Microsoft/GitHub Br. at 16; OpenAI Br. at 14. This is specious. As

an initial matter, Defendants seek to hold Plaintiffs to an improper pleading standard. Plaintiffs only need to give Defendants sufficient notice of the claim under the notice-pleading requirement of Rule 8. *See, e.g., James River Ins. Co. v. DCMI, Inc.*, No. C 11–06345 WHA, 2012 WL 2873763, *3 (N.D. Cal. July 12, 2012) (rejecting requirement to plead contract verbatim or attach a copy to plead breach of contract). As set forth above, Plaintiffs have done so in spades.

Plaintiffs attached the Suggested Licenses in full to their Complaint. ¶ 173, App'x A. Thus, they are "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Moreover, Plaintiffs also allege that the eleven open-source licenses contain explicit common triggered by duplication or use of the licensed material; specifically: (1) attribution to the owner of the licensed material, (2) inclusion of the copyright notice, and (3) the inclusion of the applicable license's text. ¶ 34 n. 4, 173, App'x A. Defendants thus had adequate notice as to the provisions of the licenses Plaintiffs assert they have violated.

### a. Microsoft/GitHub's Conduct Is Not Excused by GitHub's Terms of Service.

Microsoft/GitHub argues that Plaintiffs' claim for breach of license fails because Plaintiffs' "theory against GitHub is predicated on training Copilot with code published in public GitHub repositories" and therefore Plaintiffs' claim for breach of open-source license "is foreclosed by GitHub's Terms of Service." Microsoft/GitHub Br. at 16. Defendants do not— and cannot—dispute that those same Terms of Service "do[ ] not grant GitHub the right to sell [the customer's] Content." ¶ 218, Ex. 1. Thus, Defendants' defense is that ambiguous statements allegedly permit GitHub "the right to store, archive, parse, and display" posted code and to "make incidental copies, as necessary to provide the Service." Microsoft/GitHub Br. at 17; ¶ 218, Ex. 1. Plaintiffs dispute any such ambiguity. And even if it did, this is a dispute of fact, framed by the pleadings. Of course, the Court must "presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Knevelbaard*, 232 F.3d at 984.

Microsoft/GitHub inaccurately suggests that Plaintiffs' "theory against GitHub is predicated on training Copilot"—and nothing more. Microsoft/GitHub Br. at 16. Again, this

distorts and ignores the Complaint, and resolves inferences in Defendants' favor rather than in Plaintiffs' favor as the Court must do. In fact, throughout their complaint, Plaintiffs have alleged how the training **and operation** of Copilot violates Plaintiffs' licenses. *See, e.g.,* ¶¶ 180–83. Microsoft and GitHub also breached the GitHub Terms of Service by basing Copilot on Codex and "sell[ing] Plaintiffs … Licensed Materials as part of Copilot." ¶ 197. Plaintiffs additionally allege that Defendants are in breach of the Terms of Service. ¶¶ 215–24. The Terms of Service explicitly state a GitHub customer "does not grant GitHub the right to sell [the customer's] Content." ¶ 218, Ex. 1. The Terms of Service thus do not bar Plaintiffs breach of contract claims for the breach of the licenses.

### 3. Plaintiffs Have Plausibly Pled Breach of Contract Claims Against Microsoft and GitHub for Violations of the GitHub Terms of Service and Privacy Statement (Count VIII).

Plaintiffs also allege sufficient claims of breach of contract claims for violating the Terms of Service and Privacy Statement (collectively "GitHub's Policies"). Microsoft/GitHub does not contest that the Terms of Service and Privacy Statement constitute a contract with Plaintiffs. *See Low*, 900 F. Supp. 2d at 1028. Indeed, they claim the Terms of Service contractually permitted the conduct in relation to the open-source licenses. Microsoft/GitHub Br. at 16, 23–25. This misconstrues Count VIII.

Plaintiffs allege that Microsoft/GitHub "substantially and materially breached" GitHub's Policies in multiple ways, including by "[s]haring Plaintiffs' and the Class's personal data with unauthorized third parties in violation of the GitHub Privacy Statement"; "[s]elling and distributing Plaintiffs' and the Class's personal data in contravention of the GitHub Policies"; "[u]se of Plaintiffs' and the Class's personal data after the GitHub Privacy Statement explicitly claims it will be deleted"; and "[u]se and distribution of Plaintiffs' and the Class's personal data outside the limitations set forth in the GitHub Privacy Statement." ¶ 220. Breach of these promises gives rise to claims under the law of contract, not statutory or common law privacy rights.

Microsoft/GitHub does not substantively dispute Count VIII except for a conclusory statement that the Terms of Service permits Copilot's use of the Licensed Materials. This is

incorrect, as already set forth in Section III.E.2, *supra*. Microsoft/GitHub is liable for failures to adhere to its Terms of Service as it continues to sell and distribute Plaintiffs' code, repackaged as the Copilot product, in violation of the GitHub Policies. ¶ 220.

Additionally, while Microsoft/GitHub does not contest the pleading of this count as to the GitHub Terms of Service, it does argue that this count is deficient as to the GitHub Privacy Statement, saying "The Complaint does not identify any specific privacy-related provision of any alleged contract that was violated or how." Microsoft/GitHub Br. at 23–24. The Privacy Statement defines "personal data" as including "photographs, documents, or other files" and any "files you upload to our Service." ¶ 218, Ex. 1. The Terms of Service directly reference the Privacy Statement, sufficiently incorporating the Privacy Statement into the contract. *Id.* (Terms of Service "refers, collectively, to all terms, conditions, notices contained or referenced in this document (the 'Terms of Service' or the 'Terms') and all other operating rules, policies (including the GitHub Privacy Statement, available at github.com/site/privacy)."). This data is then distributed to unauthorized third parties. This data is further sold as Copilot output in direct violation of GitHub's Privacy Statement prohibiting sale of personal data. *Id.* Plaintiffs have alleged all the required elements for breach of contract in regard to GitHub's Policies. *See, e.g., In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) (finding plausible allegation for breach of contract based on Terms of Service and Privacy Policy as the underlying contracts).

### 4.   Plaintiffs Have Plausibly Pled a Claim for Unjust Enrichment (Count VI)

In the alternative, Plaintiffs plead a claim for unjust enrichment. ¶¶ 200–06. In the Ninth Circuit, Plaintiffs may pursue a claim for unjust enrichment either "as an independent cause of action or as a quasi-contract claim for restitution." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015)). The pleading requirements are straightforward: "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners*, 828 F.3d at 1038 (citing *Lectodryer v. SeoulBank*, 77

Cal. App. 4th 723, 726 (2000)). "A benefit is broadly defined as 'any type of advantage.'" *CSI Elec. Contractors, Inc. v. Zimer Am. Corp.*, No. CV 12-10876-CAS (AJWx), 2013 WL 1249021, at *5 (C.D. Cal. Mar. 25, 2013). District courts in the Ninth Circuit have routinely permitted unjust enrichment claims under California law to proceed. *See*, *e.g.*, *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 605 (N.D. Cal. 2021) (permitting independent cause of action for unjust enrichment) (quoting *In re Facebook, Inc, Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) ("*Facebook User Profile*"); *Wu v. Sunrider Corp.*, No. CV 17-4825 DSF (SSX), 2017 WL 6880087, at *4 (C.D. Cal. Oct. 10, 2017) ("As the Ninth Circuit noted, the California Supreme Court has recently clarified that unjust enrichment may be sustained as a stand-alone cause of action."); *see also*, *e.g.*, *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 881-82 (N.D. Cal. 2019) (permitting claim for unjust enrichment).

The Court should likewise do so here. Plaintiffs have alleged that they have invested substantial time and energy in creating the licensed materials. ¶ 205. Plaintiffs allege Defendants have utilized their access to the Licensed Materials hosted on GitHub to create Copilot and Codex as well as the output of these AI Systems. ¶¶ 147, 150-55, 206. Further, Defendants have directly profited and otherwise obtained benefits from the removal of attribution, copyright notices and license terms from the Licensed Materials and reselling through Copilot. ¶ 207.

Plaintiffs also allege they have no adequate remedy at law. ¶ 210. Under a theory of unjust enrichment, even if Plaintiffs have not sustained economic losses or other breach of contract damages, plaintiffs may recover the gains defendants obtained as a result of the wrongful conduct. *See Hart*, 526 F. Supp 3d at 605. (even though plaintiffs "suffered no economic loss from the disclosure of [his] information, [he] may proceed at this stage on a claim for unjust enrichment to recover the gains [Defendant] realized from its allegedly improper conduct."); *Hadley v. Kellogg Sales Corp.*, 324 F. Supp. 3d 1084, 1113 (N.D. Cal. 2018) (same); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (finding allegation that defendant "'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that Hain was 'unjustly enriched' as a result" sufficient to state claim). These allegations are

sufficient. *See, e.g., Hart*, 526 F. Supp. 3d at 604-05 (plaintiff sufficiently pleaded unjust enrichment claim by alleging that defendant unjustly benefited from the use of his location data).

Defendants argue that Plaintiffs may not pursue a claim for unjust enrichment because Plaintiffs also assert breach of contract claims under the licenses or terms and conditions. This is not well taken. Plaintiffs may seek relief under an unjust-enrichment theory as an alternative to a breach of contract or other claim. Under Rule 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Plaintiffs may plead unjust enrichment in the alternative to DMCA, breach of contract, or other legal claims. *See Facebook User Profile*, 402 F. Supp. 3d 767, 893 (N.D. Cal. 2019) ("The plaintiffs are permitted to plead claims for breach of contract and unjust enrichment in the alternative.") (citing *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468 (9th Cir. 2017)); *see also Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal.4th 988, 998 (2015).

### 5. Plaintiffs Have Plausibly Pled a Claim Under California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*) (Count VII)

California's Unfair Competition Law "provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200). Plaintiffs allege that Defendants have violated the unlawful prong including, not limited to, violating the DMCA and also by committing negligence. ¶ 212.

Defendants argue that Plaintiffs' claims fail because Plaintiffs have not established a predicate violation under the unlawful prong of the UCL. Microsoft/GitHub Br. at 23; OpenAI Br. at 19. These arguments suffer from a faulty premise. As demonstrated above, Plaintiffs have established predicate violations under the DMCA and other statutory rights in addition to violations of the common law. *See Cappello v. Walmart Inc.*, 394 F. Supp.3 d 1015, 1023 (N.D. Cal. 2019) ("By proscribing 'any unlawful' business act or practice, the UCL 'borrows' violations of other laws and treats them as unlawful practices that the UCL makes independently actionable.") (citations omitted).

Microsoft/GitHub challenges Plaintiffs' standing to bring a UCL claim. Microsoft/GitHub Br. at 23 ("A private plaintiff may only sue under the UCL if it has 'suffered injury in fact and has lost money or property.' Cal Bus. & Prof. Code § 17204."). To satisfy the statutory standing requirement under the UCL, a plaintiff must merely suffer an injury in fact that is an "economic injury." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321–22 (2011)). The Complaint alleges several different economic injuries resulting from the illegal conduct. Plaintiffs have invested substantial time and energy in creating the Licensed Materials. ¶ 205. That code was then used by Defendants and displayed to third parties without adhering to any of the requirements included in the Suggested Licenses. *See*, *e.g.*, ¶¶ 180–83. Plaintiffs also lost the value of that work, including their ability to receive compensation as well as the likelihood they would be retained or hired in the future. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1379 (Fed. Cir. 2008) (explaining that damage from violations of public licenses could include injury to reputation and recognition in the profession).

In addition, Plaintiffs have alleged injury to property interests which have long existed at common law. *See* § III.A., *supra*; *see also* Opposition to OpenAI's Motion to Dismiss, § III.A. An injury to property rights is paradigmatic injury under the UCL. *See*, *e.g.*, *Kwikset*, 51 Cal. 4th at 323 (holding UCL standing conferred for monetary or property injuries). Injuries resulting from use or taking of property or property rights without compensation or unjust enrichment suffice under the UCL (as well as under Article III). *See*, *e.g.*, *Callahan v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2021 WL 5050079, at *14 (N.D. Cal. Nov. 1, 2021) (commercial use of likeness sufficient economic injury); *cf. also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806 (N.D. Cal. 2011) (mental anguish and economic injury can suffice). In particular, the loss of value of the computer code and the value to code authors of their attribution rights to code authors, both suffice. *Compare In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information."); *see also In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017)

(holding that plaintiffs had adequately alleged injury in fact based on the loss of value of their personal information); *In re Anthem Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (concluding that the plaintiffs had plausibly alleged injury from the loss of value of their personal information). Indeed, Plaintiffs specifically allege that they have sustained economic harm and lost money as a result of this conduct. ¶ 213. In particular, Plaintiffs allege that, as a result of Defendants' conduct, they have been deprived of the right to identify and control the reproduction of their copyrighted works, to have the terms of the open-source licenses followed, and to pursue copyright infringement remedies. ¶ 168. And, as shown above, these sorts of claims have a "deep and important pedigree in the common law." *See Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 896 (N.D. Cal. 2022).

### 6. Plaintiffs Have Plausibly Pled a Claim for Negligence (Count X)

In Count X, Plaintiffs plead a plausible claim of negligence with respect to the handling of Plaintiffs' personal information. To prove a claim for negligence in California, a plaintiff must establish the following elements: (1) the defendant had a duty, or an "obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks," (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) injury. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)); *Facebook User Profile*, 402 F. Supp. 3d at 799 ("Negligence has four elements under California law; duty, breach, causation, and injury.") (citation omitted). Plaintiffs satisfy each of these elements. California courts consider several factors when deciding whether a duty of care exists, including "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (quoting *Regents of Univ. of Cal. v. Superior Court*, 4 Cal.

5th 607, 628, (2018) and *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968)). Further, these factors "must be evaluated at a relatively broad level of factual generality." *Id.* (quotation omitted).

Plaintiffs specifically allege duties and facts giving rise to these duties with respect to their personal data. Defendants owed a duty of care based on Defendants' relationship to them. ¶ 236. As alleged, this duty derives from Defendants' contractual obligations, custom and practice. Plaintiffs are the authors of open-source code placed in the GitHub repositories pursuant to open-source licenses. *Id.* Through these licenses, Plaintiffs intended to make their code available in an open-source environment while they received tangible benefits including future prospective coding, engineering, and other professional economic opportunities associated with providing code in an open-source setting made possible by the conditions in those licenses. *See Jacobsen*, 609 F. Supp. 2d at 933; *see also* ¶¶ 19, 20, 64, 98-102, 110, App'x A. Defendants used that code as training data. *See*, *e.g.*, ¶¶ 180–83. Defendants have since been reproducing that code as output without and in disregard of those licenses. *See* ¶¶ 94–95. Defendants also owed Plaintiffs a general duty under California Civil Code section 1714 (¶ 236). *See Kahn v. E. Side Union High Sch. Dist.*, 31 Cal. 4th 990, 1003 (2003) (California Civil Code section 1714 imposes a "duty of care not to cause an unreasonable risk of harm to others").

It is well established that when a company undertakes to collect and handle sensitive information from customers, a duty arises to handle that information with care. *Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10, 2006) (finding allegations that defendant, who "[a]s custodians of the Representative Plaintiff's and the Class Members' personal and confidential information . . . owe[d] a duty of care . . . to prevent access to such information by unauthorized third parties" sufficient); *see also Facebook User Profile*, 402 F. Supp. 3d at 799 ("Facebook had a responsibility to handle its users' sensitive information with care.") (citing *Bass.*, 394 F. Supp. 3d at 1038–39); *Sony Gaming Networks*, 996 F. Supp. 2d at 966 (finding "legal duty to safeguard a consumer's confidential information entrusted to a commercial entity . . . well supported by both common sense and California . . . law."). This duty applied to Microsoft/GitHub, who took the sensitive information of Plaintiffs and then shared and distributed it to third-parties without Plaintiffs' authorization. *See* ¶¶ 87–91, 148–54. The

lack of reasonable care in handling such information can foreseeably harm the individuals providing the information, particularly in a commercial context. Rather than safeguarding the information entrusted to them, Defendants instead failed in their duties with respect to that information by using it for their own economic purposes in disregard for Plaintiffs' rights.[2] *See Facebook User Profile*, 402 F. Supp. 3d at 799 ("Specifically, the plaintiffs allege that they entrusted Facebook with their sensitive information, and that Facebook failed to use reasonable care to safeguard that information, giving third parties access to that information giving parties access to it without taking any precautions to constrain that access to protect the plaintiffs' privacy, despite assurances it would do so."); *Sony Gaming Networks*, 996 F. Supp. 2d at 966 (finding "legal duty to safeguard a consumer's confidential information entrusted to a commercial entity" "well supported by both common sense and California . . . law."); *Witriol*, 2006 WL 4725713, at *8. And Plaintiffs have alleged actual present harms—the personal data including the Licensed Materials they entrusted Defendants to safekeep has been instead used by Defendants for their own commercial gain, namely, to train Codex and Copilot which then reproduces their code to third parties without Plaintiffs' consent. *See* § III.E.2., *supra*.

### 7. Plaintiffs Have Plausibly Pled a Claim for Civil Conspiracy (Count XI)

The elements of a claim for civil conspiracy are (1) the formation and operation of the conspiracy or common course of conduct and (2) damage to plaintiffs from acts committed in furtherance of the common design. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510–11 (1994); *Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 44 (1989). A civil conspiracy claim arises from concerted action in the commission of a tort, imposing joint and several liability "on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.' " *Fleites v. MindGeek S.A.R.L.*, ___ F. Supp. 3d ___, 2022 WL 4456077 (C.D. Cal. July 9, 2022) (citing *Applied Equip.*, 7 Cal.4th at 510-

---

[2] OpenAI relies on *Schmitt v. SN Servicing Corp.*, 21-cv-03355-WHO (N.D. Cal. Aug. 9, 2021). There, the court, distinguishing *Bass*, dismissed the negligence claim with leave to amend on the grounds Plaintiffs did not engage specifically with the *Rowland* factors. *Id*. at *6-7. Here, as explained above, the allegations of the complaint are sufficient under *Rowland* to plead the existence of a duty giving rise to a negligence claim.

11). The statute does not prohibit agreement, it forbids an agreement in furtherance of a tort or other unlawful acts. *See id.* "[A] civil conspiracy claim requires 'that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan.'" *Lynwood Inv. Cy Ltd. v. Konovalov*, No. 20-CV-03778-LHK, 2021 WL 1164838, at *17 (N.D. Cal. Mar. 25, 2021).

As set forth in the complaint, and as described above, Plaintiffs have adequately pleaded the commission of a number of underlying torts and violations of law, including but not limited to claims for negligence, breach of contract, and statutory violations. *See* §§ E(1)–(6), *supra*. And Plaintiffs have pleaded each Defendant's role in the commission of these illegal acts. *See*, *e.g.*, ¶¶ 8, 14, 82–84, 126–38 (OpenAI); 1, 5–7, 8, 10, 12, 15, 82–85, 125–38 (Microsoft/GitHub). In particular, Plaintiffs have alleged a common course of conduct, including that Microsoft acquired and invested in GitHub, together launching the Copilot and the Codex product. ¶¶ 5–9, 11, 21–28. The Complaint specifies a number of overt acts conducted in furtherance of their conspiracy and common course of conduct. Based on these, Plaintiffs specifically allege that Defendants have worked together to create Copilot, deriving economic benefit therefrom, thus intending the success of the venture. ¶¶ 240–42. The Complaint also specifies that they did so to create, sell, and market Copilot in furtherance of the unlawful conduct. ¶ 243. That is all that is needed. *See Applied Equip.*, 7 Cal. 4th at 510-11; *Doctors' Co.*, 49 Cal. 3d at 44.

## F. Plaintiffs Should be Permitted Leave to Amend

Leave to amend is freely granted by courts in this district where the claim could be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). Leave to amend need not be granted where amendment would be futile. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("Generally, Rule 15 advises the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'") (citations omitted). Should the Court determine that dismissal of any counts should be granted, the Court should do so without prejudice and with leave to amend.

Plaintiffs do not concede claims under Section 1202(a) of the DMCA, or under Counts III, IV, V and IX have been inadequately pled. Plaintiffs, however, request amendment as to those Counts.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that Microsoft/GitHub's motion to dismiss be denied, or in the alternative, that Plaintiffs be granted leave to amend the Complaint.

Dated: March 9, 2023

By:    _/s/ Joseph R. Saveri_
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:     (415) 395-9940
Email:        jsaveri@saverilawfirm.com
              swilliams@saverilawfirm.com
              czirpoli@saverilawfirm.com
              cyoung@saverilawfirm.com
              eabuchanan@saverilawfirm.com
              tmanfredi@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:    (323) 968-2632
Facsimile:    (415) 395-9940
Email:        mb@butdericklaw.com

_Counsel for Plaintiffs and the Proposed Class_

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS