Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:     (415) 395-9940
Email:           jsaveri@saverilawfirm.com
                     swilliams@saverilawfirm.com
                     czirpoli@saverilawfirm.com
                     cyoung@saverilawfirm.com
                     eabuchanan@saverilawfirm.com
                     tmanfredi@saverilawfirm.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| J. DOE 1, et al.,<br><br>       Individual and Representative Plaintiffs,<br><br>       v.<br><br>GITHUB, INC., et al.,<br><br>                 Defendants. | Case Nos.   4:22-cv-06823-JST<br>                 4:22-cv-07074-JST<br><br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS OPENAI, INC.; OPENAI, L.P.; OPENAI GP, L.L.C.; OPENAI STARTUP FUND GP I, L.L.C.; OPENAI STARTUP FUND I, L.P.; AND OPENAI STARTUP FUND MANAGEMENT, LLC'S MOTION TO DISMISS**<br><br>Date:       May 4, 2023<br>Time:      2:00 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge:    Hon. Jon Tigar |

4:22-cv-06823-JST

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS OPENAI, INC.; OPENAI, L.P.; OPENAI GP, L.L.C.;
OPENAI STARTUP FUND GP I, L.L.C.; OPENAI STARTUP FUND I, L.P.; AND OPENAI STARTUP FUND
MANAGEMENT, LLC'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND ............................................................................... 2

III.   ARGUMENT ...................................................................................................... 3

    A.   Plaintiffs Have Established Article III Standing ......................................... 4

        1.   Plaintiffs Have Demonstrated Injury-in-Fact ................................. 5

        2.   Plaintiffs Have Standing to Sue for Injunctive and Declaratory Relief .............................................................................................. 9

    B.   Plaintiffs Should be Permitted to Proceed Anonymously ........................... 9

    C.   Plaintiffs Have Alleged Facts Particularized to OpenAI to Meet the Notice Requirement of Rule 8(a)(2). ....................................................................... 11

    D.   Plaintiffs Have Plausibly Pled Claims for Violation of the Digital Millennium Copyright Act Against All Defendants (17 U.S.C. § 1202(b)) 13

        1.   Plaintiffs Have Pleaded All of the Elements of a Section 1202(b) Violation .......................................................................................15

    E.   Plaintiffs Have Properly Alleged State Law Claims Against OpenAI ....... 20

        1.   Plaintiffs Have Plausibly Pled a Claim for Negligence (Count X) .. 21

        2.   Plaintiffs Have Plausibly Pled a Claim for Civil Conspiracy (Count XI) ............................................................................................... 23

        3.   Plaintiffs Have Plausibly Pled their Remaining State Law Claims  24

    F.   Plaintiffs Should be Permitted Leave to Amend ...................................... 25

IV.    CONCLUSION ................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015) ...................... 11, 12

*Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d
    974 (S.D. Cal. 2014) ...............................................................................................................13

*Associated Gen. Contractors of California, Inc. v. California State Council of
    Carpenters*, 459 U.S. 519 (1983) ........................................................................................ 4

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......................................... 21, 22, 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 2, 3

*Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268 (DLC), 2015 WL 8579023
    (S.D.N.Y. Dec. 9, 2015) ................................................................................................14, 17, 18

*Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229 (N.D. Cal. 2004) ............................... 11, 12

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................... 25

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .............................................................. 19

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........................................................................ 9

*Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022) ............................................................. 8

*Connectus LLC v. Ampush Media, Inc.*, No. 8:15-cv-2778-T-33 JSS, 2017 WL
    1155448 (M.D. Fla. Mar. 28, 2017) ................................................................................... 9

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ......................................... 4

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) ......................................................................... 21

*Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL
    5842756 (N.D. Tex. Nov. 7, 2019) ................................................................................... 15, 19

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036 (9th Cir. 2010) .................9, 10

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) ........................................................................ 25

*Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140 (N.D. Cal. 2016)....................................11

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463-RGK-MAA, 2022 WL
    16961477 (C.D. Cal. Aug. 25, 2022) ................................................................................. 18

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. CVF03-5412 AWI LJO, 2008 WL 2220396 (E.D. Cal. May 27, 2008) ........................................................................... 12

*Energy Intel. Grp., Inc. v. Kanye Andersen Cap. Advisors, L.P.*, 948 F.3d 261 (5th Cir. 2020) .......................................................................................................................... 13

*Espineli v. Toyota Motor Sales U.S.A., Inc.*, No. 2:17-CV-00698-KJM-CKD, 2018 WL 3769383 (E.D. Cal. Aug. 9, 2018) ................................................................................ 25

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352 (N.D. Fla. 2010) ........................................................................................................................................ 18

*Fleites v. MindGeek S.A.R.L.*, ___ F. Supp. 3d ___, 2022 WL 4456077 (C.D. Cal. July 9, 2022) ........................................................................................................................ 23

*Friche v. Hyundai Motor, Am.*, No. SACV 21-01324-CJC, 2022 WL 1599868 (C.D. Cal. Jan 28, 2022) ................................................................................................................ 13

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016) ................................................ 14

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ....................................................................................... 18

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 WL 263556 (D. Haw. Jan. 21, 2015) ......................................................................................... 18

*FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, No. 18-232 (JRT/HB), 2022 WL 891473 (D. Minn. Mar. 25, 2022) ...................................................................................... 20

*GC2 v. Int'l Game Tech.*, 391 F. Supp. 3d 828 (N.D. Ill. 2019) ................................................ 17, 18, 20

*Holmes v. Hurst*, 174 U.S. 82 (1899) ...................................................................................................... 6

*Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633 (N.D. Cal. 2020) ........................................................... 22

*I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................................. 5

*Icon Lab, Inc. v. Bausch Health Cos., Inc.*, 828 F. App'x 373 (9th Cir. 2020) ................................ 11

*ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) .......................................... 14, 17, 18

*In re Apple Inc. Device Performance Litig.*, 50 F.4th 768 (9th Cir. 2022) ........................................ 8

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................................................................................................... 7, 8

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) .................................. 3

*In re iPhone Application Litig.*, No. 11-MD02250-LHK, 2020 WL 4403963 (N.D.
  Cal. Sep. 20, 2011) ................................................................................................ 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d
  942 (S.D. Cal. 2014) ......................................................................................... 8, 22

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896
  (N.D. Cal. 2008) ................................................................................................. 11

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) ............................................. 6

*Jacobsen v. Katzer*, 609 F. Supp. 2d 925 (N.D. Cal. 2009) ................................. 7

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603 (9th Cir. 2008) .................. 22

*Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999).......................... 20

*Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV-20-1931-DMG (EX)2020 WL
  5991503 (C.D. Cal. Aug. 14, 2020) ..................................................................... 18

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) ............................. 7, 9

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D.
  Ill. 2014) ............................................................................................................... 14

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ..................................................... 6

*Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836 (N.D. Cal.
  Oct. 25, 2022) ...................................................................................................... 14

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2d Cir. 2020)................................... 15, 16

*McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020)....................... 4

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010)................. 14

*Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov.
  25, 2003) .............................................................................................................. 14

*Merideth v. Chicago Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan.
  9, 2014) ................................................................................................................ 14

*Mollman v. Zoetop Bus. Co.*, No. CV 22-4128 (PA), 2022 WL 17207103 (C.D. Cal.
  Sep. 16, 2022) ................................................................................................ 14, 20

*Murphy v. Millennium Radio Grp.*, Civil Action No. 08-1743 MAS, 2015 WL
  419884 (D.N.J. Jan. 30, 2015).......................................................................... 14, 19

*Murphy v. Millennium Radio Grp., LLC*, 650 F.3d 295 (3d Cir. 2011) ......................... 13

*Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-cv-06226-EJD, 2020 WL 6700480
(N.D. Cal. Nov. 13, 2020) ........................................................................ 4, 14, 15

*Quinones v. Szorc*, 771 F.2d 289 (7th Cir. 1985) ........................................... 24

*Schmitt v. SN Servicing Corp.*, 21-cv-03355-WHO, 2021 WL 3493754 (N.D. Cal.
Aug. 9, 2021) ............................................................................................. 22

*Sims v. Amazon.com, Inc.*, No. 2:20-cv-04389-FLA (ASx), 2022 WL 739524 (C.D.
Cal. Jan. 27, 2022) ..................................................................................... 20

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................... 4

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................................ 11

*Stephens v. Cady*, 55 U.S. 528 (1852) ............................................................ 6

*Stevens. v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) ...................... 15, 19, 20

*Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992 (N.D. Cal. 2007) ............... 12

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890 (N.D. Cal.
2009) ......................................................................................................... 12

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ........................................... 3

*Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, 306 U.S. 118 (1939) ................... 5

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ............................ 5, 6, 7, 9

*Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*, No. 18 C 5369, 2019 WL
2208435 (N.D. Ill. May 22, 2019) ................................................................. 7

*United States v. Doe*, 655 F.2d 920 (9th Cir. 1981) ....................................... 10

*Uzuegbunam v. Preczewski.* 141 S. Ct. 792 (2021) ........................................... 5

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ............... 4

*Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *3 (C.D.
Cal. Feb. 12, 2015)...................................................................................... 14

*Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713 (N.D. Cal. Feb.
10, 2006).................................................................................................... 22

**State Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ...... 23, 24

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS OPENAI, INC.; OPENAI, L.P.; OPENAI GP,
L.L.C.; OPENAI STARTUP FUND GP I, L.L.C.; OPENAI STARTUP FUND I, L.P.; AND OPENAI STARTUP
FUND MANAGEMENT, LLC'S MOTION TO DISMISS

*J'aire Corp. v. Gregory*, 24 Cal.3d 799 (1979) ............................................................... 23

*Rowland v. Christian*, 69 Cal. 2d 108 (1968) ................................................................. 22

**Federal Statutes**

17 U.S.C. §§ 101 *et seq* .................................................................................................... 21

17 U.S.C. § 411(a) ............................................................................................................ 14

17 U.S.C. §§ 1201-1205 ............................................................................................ *passim*

17 U.S.C. § 1202(c)(2) ......................................................................................................15

**State Statutes**

Cal. Bus. & Prof. Code § 17203 ...................................................................................... 25

Cal. Civ. Code § 1714 ...................................................................................................... 22

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................... *passim*

Fed. R. Civ. P. 9 ..........................................................................................................13, 24

Fed. R. Civ. P. 12 ......................................................................................................... 3, 4

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS OPENAI, INC.; OPENAI, L.P.; OPENAI GP, L.L.C.; OPENAI STARTUP FUND GP I, L.L.C.; OPENAI STARTUP FUND I, L.P.; AND OPENAI STARTUP FUND MANAGEMENT, LLC'S MOTION TO DISMISS

## I.   INTRODUCTION

Plaintiffs' Class Action Complaint (the "Complaint") alleges with the requisite specificity how Defendants, among other things, misused Plaintiffs' computer code. Plaintiffs published the code, pursuant to open-source licenses. Defendants took that code without any regard to the terms of those licenses. As set forth with specificity in the Complaint, Defendants, rather than use Plaintiffs' code subject to the terms of the licenses under which they were published, instead trained their artificial intelligence products Codex and Copilot on that code, and then designed Codex and Copilot to either ignore or to filter out any attribution, copyright notices, or copies of the license as the open-source licenses require. Codex and Copilot's output, frequently a copy of the Plaintiffs' code, is then sold and marketed to Defendants' customers without any compensation to Plaintiffs. This has resulted in significant harm to Plaintiffs, and they seek relief in the form of damages and injunctive relief.

The OpenAI Defendants challenge Plaintiffs' Complaint on several grounds, but all fall flat. OpenAI argues that Plaintiffs failed to adequately plead concrete and particularized injury sufficient to establish Article III standing. This is incorrect. In addition to violations of statute, Plaintiffs have pleaded injuries analogous to long-recognized harms cognizable at common law, establish particularized injury to themselves including actual and present injuries and imminent future harms, and have standing to sue for injunctive relief. OpenAI also disputes Plaintiffs' ability to proceed pseudonymously. In so doing, OpenAI omits Plaintiffs' efforts to proceed under the terms of a mutually agreed-upon protective order which would permit Plaintiffs to proceed without subjecting themselves to real and specific threats of physical violence. OpenAI also alleges that Plaintiffs have failed to satisfy the notice requirements of Federal Rule of Civil Procedure 8(a)(2).

With respect to OpenAI's substantive arguments, OpenAI's objections to Plaintiffs' claims under the Digital Millennium Copyright Act are unavailing. Plaintiffs make out each element of a Section 1202(b) violation, and Defendants' arguments to the contrary are attempts to read in requirements found nowhere in Section 1202(b). To the extent OpenAI disputes Plaintiffs' state law and common law allegations, these arguments too are misplaced. Plaintiffs'

Complaint has provided ample allegations sufficient to satisfy *Twombly*.

## II.   FACTUAL BACKGROUND

Defendants are in the business of developing AI systems. *See* ¶¶ 44, 47.[1] Codex and Copilot are both artificial intelligence programs that, by using statistical models, attempt to simulate human reasoning. ¶¶ 2, 8, 46. OpenAI began development of Codex in 2015 and released Codex on a limited basis in August 2021. ¶ 44. GitHub began development of Copilot in 2019 and released Copilot on a limited basis in June 2021. ¶ 45. GitHub released it on a paid subscription basis in June 2022. *Id*. Microsoft acquired GitHub in 2018. ¶ 22.

While corporate ownership is hidden from public view, Copilot appears to be a joint venture between GitHub and OpenAI, and Codex is the product that "powers" Copilot. ¶¶ 22, 47, 66. OpenAI received significant startup funding from Microsoft. ¶¶ 6, 132. In addition, Microsoft eventually procured from OpenAI an exclusive license for OpenAI's GPT-3 language model, the basis for their AI products. In June 2021, GitHub and OpenAI launched the Copilot program through a self-described joint venture. ¶ 8.

Copilot works by using the code posted to GitHub and learning from that data to produce code itself. ¶¶ 82–83. It does so based on OpenAI's Codex, which is an AI model. ¶¶ 66, 84, 241. Like other AI products, Codex and Copilot rely on "training," which is the process by which an AI program can "learn" how to anticipate and provide solutions to coding issues by processing large amounts of data. ¶¶ 10 & n.2, 46, 76. GitHub maintains a website named GitHub.com that allows coders to create and share coding projects under open-source licenses. ¶ 21. As stated by Defendants themselves, Codex and Copilot were trained on code available on GitHub repositories. ¶¶ 82–83.

Unlike human programmers, AI such as Codex and Copilot function by predicting based on the training data the most likely solution to a given input. ¶ 79. They detect statistically significant patterns in the training data and provide output based on these patterns. ¶ 81. As a result, Copilot regularly outputs verbatim copies of materials it was trained on, i.e., it makes

---

[1] "¶ ___" and "App'x ___" citations are to the Class Action Complaint, Case No. 22-cv-07074, ECF No. 1 unless otherwise indicated.

identical copies of underlying code that was used as training data. ¶¶ 46, 60, 74, 87–90. Indeed, GitHub has admitted that Copilot reproduces verbatim copies of code at least 1% of the time. ¶ 90. This likely vastly understates the actual frequency. ¶ 91.

When a coder creates a project on GitHub, they are offered suggested licenses that they can place on their code to govern its use by others. ¶ 34 & n.10. These licenses contain requirements such as attribution of authorship, inclusion of the copyright notice, and inclusion of the copyright's text as conditions of the code's use. *Id*. Plaintiffs utilized these licenses when producing their own code. ¶¶ 19, 20. Plaintiffs then published their code to GitHub pursuant to the rights and obligations outlined in GitHub's Terms of Service and Privacy Statement. ¶¶ 4, 19, 20, 216.

Codex and Copilot were intentionally trained to omit the information included in the licenses. ¶ 80. This is intentional because early iterations of Copilot reproduced license text. ¶ 94. Indeed, even in July 2021, when Copilot was near its initial launch, it would still sometimes reproduce license text, attribution, and copyright notices, albeit sometimes inaccurately. ¶ 95. Defendants then took further steps to ensure that license text, attribution, and copyright notices were no longer produced as output by Copilot. ¶¶ 94–95. Now, when Codex or Copilot output code, it produces the code without any of the above-mentioned information, such as attribution, even if otherwise producing a near or exact copy of copyrighted code. ¶¶ 46, 87, 90–91, 147–161, 174. This is not by accident, but by design. ¶¶ 94, 95.

### III.   ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly,* 550 U.S. at 569 n.14, 570. The statements alleged in the complaint must provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.") (citation omitted). In weighing a

motion to dismiss under Rule 12, the court must accept all allegations in the complaint as true. *See McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881, 886–87 (9th Cir. 2020) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."). Further, the allegations should be evaluated holistically, not piecemeal. *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). "Dismissal 'is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-cv-06226-EJD, 2020 WL 6700480, at *2 (N.D. Cal. Nov. 13, 2020) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). This same standard applies to allegations of standing. *See Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (at the pleading stage, a plaintiff "need only show that the facts alleged, if proved, would confer standing upon him"); *Knevelbaard*, 232 F.3d at 989–90 (same).

## A.    Plaintiffs Have Established Article III Standing

In order to establish Article III standing, a "[p]laintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

OpenAI maintains that Plaintiffs have failed to establish Article III standing. Defendants only challenge that Plaintiffs have not shown injury-in-fact. Specifically, OpenAI contends that Plaintiffs have not asserted how they specifically were harmed. OpenAI Br., § IV.A.1. OpenAI is wrong. Plaintiffs have alleged facts giving rise to concrete injury of the kind long recognized under the common law as well as injuries particularized to them sufficient to confer Article III standing. Article III does not demand the specificity OpenAI demands.

1    **1.     Plaintiffs Have Demonstrated Injury-in-Fact**

2         **a.     Plaintiffs Have Alleged a Concrete Injury-in-Fact**

3         OpenAI asserts that Plaintiffs show no standing because "the complaint contains no

4    allegation or explanation of whether and how any Plaintiff was harmed." Open AI Br. at 5. It is

5    black letter that the injury need not be tangible. "A 'concrete' injury may include tangible or

6    intangible harms, so long as they 'actually exist' and are '"real," and not "abstract." '" *I.C. v.*

7    *Zynga, Inc.*, 600 F. Supp. 3d 1034, 1046 (N.D. Cal. 2022) (quoting *TransUnion LLC v. Ramirez*,

8    141 S. Ct. 2190, 2204 (2021)). In considering standing, "courts should assess whether the alleged

9    injury to plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a

10   basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo*, 578 U.S.

11   at 341); *see also id.* (recognizing as sufficient under Article III physical harms, monetary harms,

12   and intangible harms which "include, for example, reputation harms, disclosure of private

13   information, and inclusion upon seclusion."). The inquiry focuses on "whether plaintiffs have

14   identified a close historical or common-law analogue for their asserted injury . . . but does not

15   require an exact duplicate in American history or tradition." *Id.* "Congress's views may [also] be

16   'instructive.' " *Id.* (quoting *Spokeo*, 578 U.S. at 341).

17        Plaintiffs broadly allege invasions of their property and contractual rights—rights that

18   have long been types of injury recognized by the common law and the American legal system. *See*

19   *Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, 306 U.S. 118, 137–38 (1939); *see also Uzuegbunam v.*

20   *Preczewski.* 141 S. Ct. 792, 799 (2021) (collecting cases where common law property rights

21   recognized to cause concrete harm). Plaintiffs allege that they stored their software code on

22   GitHub. ¶¶ 19–20. Plaintiffs created this code and published it subject to certain open-source

23   licenses. *Id.* In disregard of those licenses, Defendants then used Plaintiffs' code as training data

24   for the Codex AI. ¶ 10. Defendants designed Codex to reproduce the code without attribution

25   and sell Copilot output, in violation of those open-source licenses. ¶¶ 82–83. Particularly

26   pertinent here, courts have long recognized a common law right of authors and creators to

27   maintain control of the fruits of their creative labor, protected from the taking or

28

misappropriation of others.[2] Indeed, Plaintiffs made their code available with open-source

licenses, which include common terms such as the requirement of attribution of authorship,

notice of copyright, and a copy of the license itself. ¶¶ 1, 4, 77, 152, 173, App'x A. Codex and

Copilot produce output from the licensed material without regard for the terms of the license.

¶¶ 46, 87, 90–91, 147–161, 174. This deprives class members of not only the intrinsic value of

attribution, but other recognized benefits of open-source licenses such as future career

opportunities and increasing reputation and authority of the author. *See Jacobsen v. Katzer*, 535

F.3d 1373, 1378–79 (Fed. Cir. 2008) (explaining the value of open-source licenses) These injuries

are analogous to those for which the common law permits redress.

Further, Congress may add additional legal rights and particularized harm to those

developed in the common law. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)

("Congress may enact statutes creating legal rights, the invasion of which creates standing, even

though no injury would exist without the statute."); *see also TransUnion*, 141 S. Ct. at 2204–05. As

demonstrated more fully below, Plaintiffs have alleged concrete injury under the Digital

Millennium Copyright Act, 17 U.S.C. §§ 1201–1205 (the "DMCA") and other statutes and laws.

### b.      Plaintiffs Have Shown Particularized Injury

OpenAI argues that Plaintiffs do not have standing to bring their claims because

"Plaintiffs do not allege that Copilot or Codex reproduced *their* code or disclosed *their* personal

information." Open AI Br. at 5 (italics in original). OpenAI raises this as a standing issue, arguing

Plaintiffs have not identified any injury to themselves. OpenAI asserts that Plaintiffs have failed to

establish particularized injury.

---

[2] *See, e.g.*, *Holmes v. Hurst*, 174 U.S. 82, 86 (1899) ("The nature of this property is perhaps best defined by Mr. Justice Erle in Jefferys v. Boosey, 4 H. L. Cas. 815, 867: 'The subject of property is the order of words in the author's composition, not the words themselves; they being analogous to the elements of matter which are not appropriated unless combined, nor the ideas expressed by those words, they existing in the mind alone, which is not capable of appropriation.'"); *Stephens v. Cady*, 55 U.S. 528, 531 (1852) ("Lord Mansfield observed, in *Millar v. Taylor* [4 Buss. 2303 (1769)] that 'no disposition, no transfer of paper upon which the composition is written, marked, or impressed, (though it gives the power to print and publish,) can be construed a conveyance of the copy, (by which he means copy-right, as appears from a previous part of his opinion,) without the author's express consent "to print and publish," much less against his will.'").

A particularized injury "must have been suffered directly by the individual plaintiff, and it must be distinct from the more general type of objection that members of the public at large might have to a defendant's unlawful conduct." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019) ("*Facebook User Profile*") (citing *Spokeo*, 136 S. Ct. at 1548). "[A] plaintiff's knowledge that he or she is exposed to a risk of future . . . harm could cause its own current emotional or psychological harm" sufficient to establish a particularized injury. *TransUnion*, 141 S. Ct. at 2211 n.7; *see also Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010) (finding Article III standing when plaintiffs "had alleged an act that increased their risk of future harm") (citations omitted).

Plaintiffs have alleged the requisite particularized injury. Plaintiffs, who each published code under open-source licenses (*e.g.*, ¶¶ 19–20), allege that Defendants have violated provisions of those open-source licenses. As specifically alleged, those licenses require, among other things, attribution of authorship, notice of copyright and a copy of the license. ¶¶ 64, 77–79, 173, App'x A. It is well-established that open sources licenses are enforceable and that violations of open-source licenses constitute cognizable injury sufficient to confer standing. *See Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 932 (N.D. Cal. 2009) (explaining that the Federal Circuit in reversing the district court's prior decision "opines that damage to the 'creation and distribution of copyrighted works under public licenses' could include injury to reputation and the programmers' recognition in his profession as well as impact on the likelihood that the product will be further improved.") (citing *Jacobsen*, 553 F.3d at 1379); *Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*, No. 18 C 5369, 2019 WL 2208435, at*3 (N.D. Ill. May 22, 2019) (rejecting argument seeking dismissal "on the ground that the GPL and other open source software licenses deprives [plaintiff] of 'standing' to enforce its copyright and contract rights."). This is cognizable injury.

Defendants attempt to dodge responsibility because Copilot anonymizes and conceals the violations of the license terms Plaintiffs challenge here. As specifically alleged, by operation of the product, it makes it difficult or impossible to prove that the licensed materials belong to any particular licensor. *See* ¶¶ 153, 156. Moreover, as conceded by Defendants, Copilot reproduces

exact copies of Plaintiffs' code that was used as training data. ¶¶ 90–91. Because Copilot is built atop Codex, its copying is also attributable to OpenAI. ¶ 84. Given the number of times users may use Copilot, it is a virtual certainty any particular plaintiff's code will be displayed either with copyright notices removed or in violation of Plaintiffs' open-source licenses for profit. *See Facebook User Profile*, 402 F. Supp. 3d at 787 (finding Article III standing where "Facebook disseminated sensitive user information . . . to tens of thousands of app developers and business partners" and that "it is virtually inevitable that some of these companies obtained information on the named plaintiffs."); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th 768, 781–82 (9th Cir. 2022). Even in the privacy context, where there is no license, that is sufficient. *See Facebook User Profile*, 402 F. Supp. 3d at 787 ("This type of privacy invasion is no less an Article III injury simply because the plaintiffs are left to guess precisely which companies . . . were involved.").

Plaintiffs also allege an imminent and significant harm—now that their software code is part of the training data of Codex and Copilot, their code can be output at any time without the legally necessary notices and attribution, leading to increased and imminent risk of misappropriation. Courts have deemed similar harms sufficient to confer standing. *See, e.g.*, *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 153 (3d Cir. 2022) (rejecting a rule that "would require plaintiffs to wait until they had sustained an actual injury to bring suit") (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. 2014).

Defendants rely on *In re iPhone Application Litig.*, No. 11-MD02250-LHK, 2020 WL 4403963, at *4 (N.D. Cal. Sep. 20, 2011). In *iPhone Application*, the plaintiffs "d[id] not identify what iDevices they used, do not identify which Defendant (if any) accessed or tracked their personal information, do not identify which apps they downloaded that access/track their personal information, and do not identify what harm (if any) resulted from the access or tracking of their personal information." *Id.* In contrast, Plaintiffs here set forth in detail what information was taken (the Licensed Materials, ¶¶ 144, 173), the means by which it was taken (by scraping and collection by Copilot, ¶¶ 78–82, 193), and what was done with the code (Copilot was trained on

1  and reproduced Plaintiffs' code without attribution in derogation of the Licenses, ¶¶ 13, 83-90).

2  These allegations, taken as true, are sufficient to establish standing.

3        **2.**    **Plaintiffs Have Standing to Sue for Injunctive and Declaratory Relief**

4        A "person exposed to a risk of future harm may pursue forward-looking, injunctive relief

5  to prevent harm from occurring, at least so long as the risk of harm is sufficiently imminent and

6  substantial." *TransUnion*, 141 S. Ct. at 2210 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

7  414 n.5 (2013)). Article III requires that the future harm cannot be based on a speculative chain of

8  potential future injury. *See Clapper*, 568 U.S. at 415; *Krottner*, 628 F.3d at 1142. Plaintiffs,

9  however, need not "demonstrate that it is literally certain that the harms they identify will come

10  about." *Clapper*, 568 U.S. at 414 n.5. Here, among other things, Plaintiffs allege the fact of the

11  open-source licenses and the imminent risk their code and other material subject to the licenses

12  will be displayed to third parties without attribution. *See, e.g.*, ¶¶ 83–90. That is sufficient. *See*

13  *Connectus LLC v. Ampush Media, Inc.*, No. 8:15-cv-2778-T-33 JSS, 2017 WL 1155448, at *4 (M.D.

14  Fla. Mar. 28, 2017) (finding standing where complaint alleges "Defendants had been scraping,

15  digitally copying or otherwise misappropriating Plaintiff's proprietary Lead generation data").

16  **B.**    **Plaintiffs Should be Permitted to Proceed Anonymously**

17        OpenAI next claims that Plaintiffs have failed to demonstrate why they need to proceed

18  anonymously. OpenAI Br. at 6. "To determine whether to allow a party to proceed anonymously

19  when the opposing party has objected, a district court must balance five factors: '(1) the severity

20  of the threatened harm, (2) the reasonableness of the anonymous party's fears, . . . (3) the

21  anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and

22  (5) the public interest." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042

23  (9th Cir. 2010). Plaintiffs have met this burden and should be permitted to proceed anonymously.

24        First, Defendants misstate the record to press for strategic advantage to deny Plaintiffs

25  their day in court. They demand dismissal of Plaintiffs' complaint without disclosing Plaintiffs'

26  willingness from the outset to provide their true names to Defendants under the terms of a

27

28

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS OPENAI, INC.; OPENAI, L.P.; OPENAI GP, L.L.C.; OPENAI STARTUP FUND GP I, L.L.C.; OPENAI STARTUP FUND I, L.P.; AND OPENAI STARTUP FUND MANAGEMENT, LLC'S MOTION TO DISMISS

protective order.[3] Saveri Decl., ¶ 6. It was Defendants' suggestion that Plaintiffs proceed under a stipulated protective order. *Id.*, ¶ 7. Nonetheless, months ago in late 2022, when Plaintiffs provided a draft protective order to Defendants for consideration and were met with silence. *Id.* Plaintiffs again sought to discuss a protective order in January 2023, and were again rebuffed. *Id.*, ¶ 8 & Ex. 4. Given the continued silence, Plaintiffs then filed a motion to have their proposed protective order entered by this court. ECF No. 49. Only then did the parties come to agreement on a Stipulated Protective Order. Saveri Decl., ¶ 11.

Plaintiffs recognize that proceeding anonymously is unusual. But the circumstances justify it. Plaintiffs filed under pseudonyms because they reasonably feared they would be subject to threats of retaliation and violence. Unfortunately, those fears were well-founded. Plaintiffs, though their counsel, have received legitimate and credible threats of physical violence.[4] Saveri Decl., ¶¶ 3–5 & Exs. 1–3. These threats are not merely anonymous postings on internet forums. They were specific threats sent directly to Plaintiffs' counsel. *See, e.g., id.* Nothing about the threats from their context "demonstrates frustration, a joke, or political commentary instead of a true intent to harm." *Kamehameha Sch.*, 596 F.3d at 1044 (citing *Watts v. United States*, 394 U.S. 705, 706–07 (1969)). One message states: "I literally hope someone murder you." Ex. 2. Mere days after Plaintiffs filed their initial Complaint, Plaintiffs' counsel received the following message: "go f*****g cry about github you f*****g piece of s**t n****r, I hope your throat gets cut open and every single family member of you is burnt to death." *Id.*, Ex. 3 (alterations added). Plaintiffs' counsel have received many similar messages.

These threats are neither trifling nor benign. Unlike in *Kamehameha Schools*, the threats are not accompanied by any statements opposing violence. 596 F.3d at 1044; *see also* Saveri Decl., Exs. 1–3. These circumstances justify allowing Plaintiffs to proceed pseudonymously. *See, e.g., United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (using pseudonym because appellant

---

[3] OpenAI claims Plaintiffs promised to file a motion regarding proceeding pseudonymously. OpenAI Br. at 7 n.5. Plaintiffs only stated "[w]e are prepared to make the requisite showing to the Court." Jacobs Decl., Ex. 2. Plaintiffs have made that showing here in this response.

[4] Indeed, the threats of physical violence predate the filing of Plaintiffs' initial complaint. Saveri Decl., ¶¶ 3–5 & Exs. 1–3.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS OPENAI, INC.; OPENAI, L.P.; OPENAI GP, L.L.C.; OPENAI STARTUP FUND GP I, L.L.C.; OPENAI STARTUP FUND I, L.P.; AND OPENAI STARTUP FUND MANAGEMENT, LLC'S MOTION TO DISMISS

"faced a serious risk of bodily harm" if his identity were disclosed); *Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1147 (N.D. Cal. 2016).

Lastly, Defendants face no prejudice. As promised, Plaintiffs have disclosed their identities to Defendants under the terms of the Stipulated Protective Order. (ECF No. 63). Saveri Decl., ¶ 12. Defendants have all they need to investigate Plaintiffs and their claims. And, as noted above, what prejudice they may have incurred could have been avoided simply by meeting and conferring with Plaintiffs as counsel for Defendants originally suggested.

**C.      Plaintiffs Have Alleged Facts Particularized to OpenAI to Meet the Notice Requirement of Rule 8(a)(2).**

OpenAI argues that the Complaint lumps together multiple defendants failing to meet the notice requirement of Rule 8(a)(2). *See* OpenAI Br. at 7–8. But Plaintiffs allege facts particularized to each OpenAI entity sufficient to meet Rule 8(a)(2)'s low notice requirement.

OpenAI mischaracterizes the Complaint and ignores explicit allegations regarding each Defendant. "[U]nder the federal rules a complaint is required only to give . . . notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011); *see also Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (citations omitted). This burden is low. *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008). Plaintiffs have met it here. For each Defendant, Plaintiffs allege specific acts attributable to that Defendant or an agency relationship that renders that Defendant liable for the conduct of other Defendants. A parent can be held vicariously liable for acts of a subsidiary if an agency relationship exists. *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1239 (N.D. Cal. 2004), abrogated on other grounds, as recognized by *Icon Lab, Inc. v. Bausch Health Cos., Inc.*, 828 F. App'x 373 (9th Cir. 2020) (citing Restatement (Second) of Agency § 14M). Plaintiffs have satisfied the notice requirement or Rule 8(a)(2).

OpenAI concedes that Plaintiffs have alleged that OpenAI, L.P. and OpenAI, Inc. participated directly in the programming, training, and maintenance of Codex, an integral part of Copilot. ¶¶ 23–24. This is sufficient to put Defendants on notice of the claims against them for

their direct participation and actions. *See Adobe Sys. Inc.*, 125 F. Supp. 3d. at 965 ("Put another way, the gravamen of Adobe's allegations in the instant lawsuit are that all the Defendants infringed on Adobe's trademarks and copyrights . . . . The Court finds that such allegations provide sufficient notice.") (internal quotation marks omitted).

Plaintiffs' claims against the OpenAI entities also proceed based upon an agency theory. As distinguished from a claim based on alter ego or veil piercing, "[w]here one corporation is controlled by another, the former acts not for itself but as but as directed by the latter, the same as an agent, and the principal is liable for the acts of its agent within the scope of the agent's authority." *Bowoto*, 312 F. Supp. 2d at 1234 (quoting *Pac. Can Co. v. Hewes*, 95 F.2d 42, 45-46 (9th Cir. 1938)); *accord Stickrath v. Globalstar, Inc.*, 527 F. Supp. 992, 1002 (N.D. Cal. 2007) ("[A corporate parent] may be held liable if . . . "the subsidiary acts as the general agent of the parent."). In order to establish the agency relationship, "'(1) there must be a manifestation by the principal that the agent shall act for him; (2) the agent must accept the undertaking; and (3) there must be an understanding between the parties that the principal is to be in control of the undertaking.'" *Bowoto*, 312 F. Supp. 2d at 1239 (N.D. Cal. 2004).

Plaintiffs allege OpenAI, L.P. participated directly in the creation of Copilot and offers it jointly with GitHub, Inc. ¶ 24. OpenAI, Inc. is alleged to have had control over all the other OpenAI entities, including OpenAI, L.P., meaning it is liable for OpenAI, L.P.'s conduct under an agency theory. ¶ 23; *E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. CVF03-5412 AWI LJO, 2008 WL 2220396, at *11 (E.D. Cal. May 27, 2008). Plaintiffs specify the control embodied in the corporate structure and investment relationships. Plaintiffs allege that each of the OpenAI entities participate in the management and direction of OpenAI and exercise sufficient control over OpenAI, L.P. to be held liable for its conduct in creating and distributing Copilot and Codex. ¶¶ 25-28.

Plaintiffs' allegations are sufficient to establish the other OpenAI entities "exercise[ ] such a degree of control over [their] subsidiary [OpenAI, L.P.] that the subsidiary can legitimately be described as only a means through which the parent acts," which is sufficient for liability under an agency theory. *E. & J. Gallo Winery*, 2008 WL 2220396, at *11; *Sun*

*Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009) (finding "concepts of day to day control as a touchstone" of determining agency). Determination of whether agency is established is a highly fact-specific inquiry and not suited for resolution on the pleadings. *Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 982–83 (S.D. Cal. 2014) (denying summary judgment on issue of agency) (citing *Bowoto*, 312 F. Supp. 2d at 1235). Plaintiffs have described the ownership and investment relationships of the OpenAI entities with specificity; that they managed the debts and obligations of OpenAI L.P.; that they were aware of and controlled OpenAI L.P.; and that they invested and controlled OpenAI L.P. to develop, sell and market Codex and Copilot. *E.g.*, ¶¶ 126–32. This is sufficient on a motion to dismiss.[5] *See Friche v. Hyundai Motor, Am.*, No. SACV 21-01324-CJC (ADSx), 2022 WL 1599868, at *5 n.4 (C.D. Cal. Jan 28, 2022) (holding that under Rule 9, "[p]rior to discovery, Plaintiff cannot be expected to know the precise relationship between the members of the . . . corporate family"); *see generally Capacitors*, 106 F. Supp. 3d at 1066 (rejecting need "to explain each defendant's own, unique role."). Plaintiffs' allegations satisfy Rule 8(a)(2).

### D.   Plaintiffs Have Plausibly Pled Claims for Violation of the Digital Millennium Copyright Act Against All Defendants (17 U.S.C. § 1202(b))

Generally, Section 1202(b) of the DMCA imposes liability for removing or altering copyright management information ("CMI").[6] 17 U.S.C. § 1202; *Murphy v. Millennium Radio Grp., LLC*, 650 F.3d 295, 305 (3d Cir. 2011). Section 1202(c), which describes protected categories of CMI, has been interpreted broadly—courts have interpreted PDF file names,[7]

---

[5] Notably, the six OpenAI defendants filed a joint brief and treat themselves as one contiguous entity except in the portion challenging the sufficiency of Plaintiffs' allegations against certain OpenAI entities. *See generally Capacitors*, 106 F. Supp. 3d at 1066.

[6] Section 1202(c) provides, in pertinent part, "[a]s used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work[.]"

[7] *Energy Intel. Grp., Inc. v. Kanye Andersen Cap. Advisors, L.P.*, 948 F.3d 261, 276-77 (5th Cir. 2020) ("PDF file names can be CMI").

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS OPENAI, INC.; OPENAI, L.P.; OPENAI GP, L.L.C.; OPENAI STARTUP FUND GP I, L.L.C.; OPENAI STARTUP FUND I, L.P.; AND OPENAI STARTUP FUND MANAGEMENT, LLC'S MOTION TO DISMISS

copyright headers,[8] License.txt files,[9] and portions of code itself[10] to constitute CMI as encompassed by Section 1202(c). *See Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *3 (C.D. Cal. Feb. 12, 2015); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102 (N.D. Ill. 2014). The pleading burden under the DMCA is low. *See Mollman v. Zoetop Bus. Co.*, No. CV 22–4128 (PA) (GJSx), 2022 WL 17207103, at *3 (C.D. Cal. Sep. 16, 2022) (burden is "not as exacting" at the pleading stage).

"Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)." *Merideth v. Chicago Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). As long recognized by the Ninth Circuit, "direct proof of one's specific wrongful intent is rarely available" and such knowledge or intent can be inferred through circumstantial evidence. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (internal quotation marks omitted). "'[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally'" for purposes of pleading Section 1202(b)'s mental state requirements. *Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836, at *9 (N.D. Cal. Oct. 25, 2022) (citations omitted). Further, "[n]othing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit. While a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for copyright infringement, claims under the DMCA are, however, simply not copyright infringement claims and are separate and distinct from the latter." *Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003).

Conduct is prohibited under the DMCA without regard for whether the copyrighted information has been infringed. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 950–52 (9th Cir. 2010) (rejecting infringement nexus requirement for DMCA claims). Because a DMCA claim does not require proof of infringement, fair use is not a defense. *See Murphy v. Millennium*

---

[8] *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016).

[9] *Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-cv 06226-EJD, 2020 WL 6700480, at *5 (N.D. Cal. Nov. 13, 2020).

[10] *Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS OPENAI, INC.; OPENAI, L.P.; OPENAI GP, L.L.C.; OPENAI STARTUP FUND GP I, L.L.C.; OPENAI STARTUP FUND I, L.P.; AND OPENAI STARTUP FUND MANAGEMENT, LLC'S MOTION TO DISMISS

*Radio Grp.*, Civil Action No. 08-1743 MAS, 2015 WL 419884, at *5 (D.N.J. Jan. 30, 2015). Even where the underlying infringement may be deemed fair use, that does not shield the conduct from liability under the DMCA. *Id.* ("A claim under § 1202(b) does not necessarily attack non-infringing fair uses of copyrighted works—it targets conduct that does harm to identifying information that helps to protect the copyright holder, such as CMI."); *see also Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019) ("a DMCA action under section 1202(b) is not an action for infringement").

### 1. Plaintiffs Have Pleaded All of the Elements of a Section 1202(b) Violation

"Section 1202(b)(1) provides: 'No person shall, without the authority of the copyright owner or the law . . . intentionally remove or alter any copyright management information . . . knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any'" copyright." *Stevens. v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018). To succeed on a claim for "removal or alteration of [CMI]" under Section 1202(b)(3), "[a] plaintiff must thus prove the following: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant distributed works or copies of works; (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement." *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (citations and quotation marks omitted); *see also Stevens*, 899 F.3d at 673.

*Existence of CMI.* As Plaintiffs allege, all the Licensed Materials are posted with licenses that include at least three types of CMI: (1) the name of the owner; (2) a copyright notice, and (3) the terms of the applicable license. *See, e.g.,* ¶¶ 34 n.4, 56, 77. Each of these categories of CMI are recognized as such under Section 1202(c). *See* 17 U.S.C. § 1202(c)(2); (3); (6). As alleged, the CMI is provided with the associated code when hosted on GitHub, including in the licenses. ¶¶ 4, 19–20, 93; *see also Neo4j*, 2020 WL 6700480, at *3 (finding liability under § 1202(b) where CMI was "conveyed in a 'LICENSE.txt' file in connection with each source code file").

*Distribution of Copied Works.* Plaintiffs have alleged Defendants distributed copies of the Licensed Materials. For example, as conceded by Defendants, Codex often reproduces exact

copies of Plaintiffs' code that was used as training data. ¶¶ 90–91. Because Copilot is built atop

Codex, Copilot's copying is also attributable to OpenAI. ¶ 84.

**Knowing Removal of CMI.** Plaintiffs allege that "Defendants intentionally removed or

altered CMI from the Licensed Materials after they were uploaded to one or more GitHub

repositories." ¶ 148. According to a GitHub blog post:

> "In one instance, GitHub Copilot suggested starting an empty file with something
> it had even seen more than a whopping 700,000 different times during training–that
> was the GNU General Public License." . . . As GitHub explains: "GitHub Copilot
> *has* changed to require a minimum file content. So **some of the suggestions flagged
> here would not have been shown by the current version**."

¶ 94 (second emphasis added). Defendants then took steps to ensure that CMI was no longer

reproduced in connection with output. First, Copilot was trained to ignore the author name,

copyright notice, and license terms associated with its training data, though it could have

maintained and shared this information, as it did earlier. *Id*. As Copilot still continued to

reproduce some CMI despite Defendants' efforts, it was altered to prevent the output of certain

content, such as the terms of open-source licenses. ¶ 95. In other words, Defendants knew

Copilot was copying and reproducing CMI as output and then intentionally designed Copilot to

stop outputting CMI, either by ignoring CMI, or filtering out CMI from output. As Defendants

admit that Codex "powers" Copilot, which OpenAI trained, both Defendants knew Copilot was

removing CMI. ¶¶ 47, 84. A conclusion to the contrary would adopt a competing inference,

forbidden under Rule 8. *Knevelbaard*, 232 F.3d at 984.

**Knowingly Enabling Infringement.** Finally, Defendants knew or had reasonable grounds

to know that their distribution would induce, enable, facilitate, or conceal an infringement. "[A]

defendant's awareness that distributing copyrighted material without proper attribution of CMI

will conceal *his own* infringing conduct satisfies the DMCA's second scienter requirement."

*Mango*, 970 F.3d at 172; *see also id.* ("Section 1202(b)(3) also encompasses 'an infringement'

that, upon distribution, 'will . . . conceal' the fact of *that* infringement"). This so-called second

scienter element is evidenced by the GitHub Copilot Terms, which state: "GitHub does not

claim any rights in Suggestions, and you retain ownership of and responsibility for Your Code,

including Suggestions you include in Your Code." ¶ 218, Ex. 1 at p. 38. This claim that Copilot's

output is "owned" by the Copilot user that elicits them induces Copilot users to believe they can use that output in any way they choose, including in ways that disregard or ignore Plaintiffs' licenses. ¶ 77. In addition, by falsely claiming the output belongs to the Copilot user that elicits it, Defendants conceal their own prior infringement.

Besides GitHub's explicit terms, it is reasonable to infer that Defendants, who are in the business of creating, producing, and investing in AI, knew that when a user sought an output from Copilot (and Codex), Copilot was often reproducing copied code without CMI. Each time Copilot displayed copied code without CMI, it would lead Copilot users to infringe on Plaintiffs' copyright interests. Courts have deemed similar allegations sufficient under Rule 8. *See GC2 v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 842 (N.D. Ill. 2019) ("reasonable to infer that the defendants—companies engaged in producing and distributing online games—knew that each time they updated or launched a game . . . they reuploaded the entire game library, thereby causing the unlawfully removed or manipulated [CMI] to again be distributed to the public" and defendants "should have known that their unlicensed distribution of artwork missing [CMI] to their customers could lead their customers to infringe [plaintiff's] copyrights"). Plaintiffs' allegations are sufficient to infer a pattern of conduct indicating Defendants' knowledge of future infringement. Plaintiffs have satisfied all the requirements for their claims under Sections 1202(b)(1) and 1202(b)(3).

### a. Section 1202(b) Does Not Require the Copy to be "Identical"

OpenAI appears to argue that a claim under Section 1202(b) must be based on an "identical" copy of a work. OpenAI Br. at 9–10. But Section 1202(b) has no such requirement.

This case is about code published subject to open-source licenses. Courts have recognized that code itself can include CMI. *ICONICS*, 192 F. Supp. 3d at 272 (copyright headers "comprised of relatively human-readable text at the top of a file of code" which includes a statement the material is confidential and then "provide[s] the name of the original author of the file" is "paradigmatic CMI"); *Bounce Exch.*, 2015 WL 8579023, at *3 ("Weaving CMI into the text of the source code may be among the most efficient or security-enhancing ways to include CMI with that code."). The "copy" need not include the entire underlying work. *ICONICS*, 192

F. Supp. 3d at 272 ("[T]he definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work."). Courts have allowed a Section 1202(b) claim when CMI that was incorporated into the work is removed. *E.g.*, *ICONICS*, 192 F. Supp. 3d at 273 (finding liability under Section 1202 where defendant "deleted source code headers from at least two files that he copied"); *Bounce Exch.*, 2015 WL 8579023, at *2–4.

Defendants contend, in effect, that the statute simply cannot apply to collaborative or derivative works. The court in *GC2*, 391 F. Supp. 3d 828, rejected the argument. *Id.* at 844–45. The defendants in *GC2* relied on *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010), and others for the proposition that removal liability is inappropriate where a defendant creates a "different product" using "materials from" a plaintiff's unattributed copyrighted materials. But as the *GC2* court noted, there is no support for this contention:

> [None of the] cases cited by the defendants stands for the broad proposition that derivative or collaborative works are categorically excluded from protection under the DMCA's provision for removal of copyright management information. Indeed, the "original work" language on which the defendants precariously rest their entire argument does not even appear in the statute. Rather, it is entirely a product of district court opinions focused on different language in provision.

391 F. Supp. 3d at 843–844. This reasoning applies with equal force here.

To the extent anything close to an "identical" copy is required to establish any or all DMCA claims, Plaintiffs' allegations meet that measure.[11] Plaintiffs allege the Licensed Materials were incorporated into Copilot itself in their entirety. ¶¶ 147–51. Plaintiffs allege that

---

[11] Defendants cite to *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463-RGK-MAA, 2022 WL 16961477, at *4 (C.D. Cal. Aug. 25, 2022); *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV-20-1931-DMG (EX)2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020); and *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 WL 263556, at *2 (D. Haw. Jan. 21, 2015). But *Dolls Kill*, *Kirk Kara*, and *Frost-Tsuji* each dealt with works which could have been reproduced independently *without removing or altering* CMI. *E.g.*, *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014) ("'Virtually identical' plans could have been created by redrawing [plaintiffs]'s plans and not including [the plaintiff]'s [CMI]"); *Kirk Kara*, 2020 WL 5991503, at *6 ("Defendant did not make identical copies of Plaintiff's works *and then remove the engraved CMI*.") (emphasis added). Further, none of the cases Defendants cite deal with computer code.

1   Copilot's output is often essentially identical to Licensed Materials. *E.g.*, ¶ 46 ("the Output is

2   often a near-identical reproduction of code from the training data."), ¶ 87 ("Copilot regularly

3   Output's verbatim copies of Licensed Materials."); *see also* ¶ 74.

### b.   Plaintiffs Need Not Show the Copied Work Was Not Fair Use

5       OpenAI suggests Plaintiffs must allege facts sufficient to defeat a potential fair use

6   defense. OpenAI Br. at 11–12. This is wrong. While the doctrine of fair use applies to a copyright

7   claim, it does not pertain to claims under the DMCA. *Murphy*, 2015 WL 419884, at *5–6 ("A

8   claim under § 1202(b) . . . targets conduct that does harm to identifying information that helps to

9   protect the copyright holder, such as CMI."); *see also Diamondback Indus.*, 2019 WL 5842756, at

10  *2 (holding that DMCA claim is not predicated on infringement claim). And even if fair use

11  pertains—which it does not—it is an affirmative defense and therefore not subject to *Plaintiffs*'

12  pleading requirements under Rule 8(a) but *Defendants*' under Rule 8(c). *Campbell v. Acuff-Rose*

13  *Music, Inc.*, 510 U.S. 569, 590 (1994) (explaining fair use is an affirmative defense).

### c.   Plaintiffs Have Identified Works From Which CMI Was Removed

15      OpenAI also claims that "Plaintiffs have not sufficiently identified any works from which

16  CMI was allegedly removed." OpenAI Br. at 10. As OpenAI acknowledges, however, the

17  Complaint is replete with examples from which CMI has been altered or removed. *E.g.*, ¶¶ 87,

18  89. OpenAI rehashes their argument that none of the examples provided in the Complaint are

19  *Plaintiffs'* own code, which, as demonstrated above, is the incorrect inquiry. *See* § III.A, *supra*.

### d.   Defendants Wrongly Claim that Plaintiffs "Fail[ed] to Adequately Plead Scienter"

22      Defendants claim that "Plaintiffs have not alleged facts sufficient to establish a substantial

23  risk that any copyright infringement has occurred or that any future infringement is likely because

24  of the removal of CMI, nor that any of the OpenAI Entities had reason to know of any such

25  likelihood." OpenAI Br. at 11. OpenAI primarily relies on *Stevens v. Corelogic, Inc.*, 899 F.3d 666

26  (9th Cir. 2018) for the proposition that "the plaintiff must provide evidence from which one can

27  infer that future infringement is likely, albeit not certain, to occur as a result of the removal or

28  alteration of CMI." OpenAI Br. at 11 (citing *Stevens*, 899 F.3d at 675).

OpenAI ignores Plaintiffs' well-pleaded allegations. Based on Plaintiffs' allegations it is reasonable to infer that Defendants both "knowingly" or "intentionally" created Copilot with either the "intent to" or "knowledge, or . . . having reasonable grounds to know" that Copilot would "induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b); *see also* § III.D.1, *supra*. For example, Defendants admit that Copilot creates identical copies of code at least 1% of the time. ¶ 90. Even if this figure were accurate, the only way Defendants could know this is if Defendants knew that Copilot copies original works from its training data. Defendants can reasonably be inferred to know that users of Copilot will receive code without the required licenses and CMI. *See FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, No. 18-232 (JRT/HB), 2022 WL 891473 at *25 (D. Minn. Mar. 25, 2022) ("A plaintiff can demonstrate actual or constructive knowledge by showing a past 'pattern of conduct' or 'modus operandi' that the defendant was aware of or had reasonable grounds to be aware and which put defendant on notice of the probable future impact of its actions.") (citing *Stevens*, 899 F.3d at 674). Further, it is reasonable to infer that Defendants, who are in the business of creating, producing, and investing in AI, knew that each time Copilot was used, it was reproducing copied code without CMI, and would lead Copilot users to infringe on Plaintiffs' licenses. These allegations are sufficient. *See GC2*, 391 F. Supp. 3d at 842 ("reasonable to infer that the defendants—companies engaged in producing and distributing online games—knew that each time they updated or launched a game . . . they reuploaded the entire game library," they "should have known that their unlicensed distribution of artwork missing [CMI] to their customers could lead their customers to infringe [plaintiff's] copyrights"). Accepting competing inferences would violate Rule 8.[12]

## E.     Plaintiffs Have Properly Alleged State Law Claims Against OpenAI

Defendant OpenAI joins Defendant Microsoft/GitHub in arguing that Plaintiffs have not pleaded facts sufficient to sustain their state law claims. OpenAI raises unique arguments as to

---

[12] Further, *Stevens* was decided on summary judgment, and applied a more stringent standard than that applied on the pleadings; *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999) was likewise decided on summary judgment. *Id.* at 1122. Plaintiff's burden is "not as exacting" here. *See Mollman*, 2022 WL 17207103, at *3; *see also Sims v. Amazon.com, Inc.*, No. 2:20-cv-04389-FLA (ASx), 2022 WL 739524, at *8 (C.D. Cal. Jan. 27, 2022).

Plaintiffs' negligence and civil conspiracy claims. Plaintiffs reiterate that these state law claims are not preempted by the Copyright Act, as each of Plaintiffs' state and common law claims are each qualitatively different from a claim under the Copyright Act. *See* Plaintiffs' Opposition to Defendant Microsoft's Motion to Dismiss, § III.E.1.

### 1.     Plaintiffs Have Plausibly Pled a Claim for Negligence (Count X)

To prove a claim for negligence in California, a plaintiff must establish: (1) the defendant had a duty, or an "obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks," (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). Plaintiffs satisfy each of these elements.

Open AI claims that Plaintiffs have failed to allege any Open AI entity owed a duty to Plaintiff. OpenAI Br. at 22. California courts consider several factors when deciding whether a duty of care exists, including "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (quoting *Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 628, (2018) and *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968)). Further, these factors "must be evaluated at a relatively broad level of factual generality." *Id.* (quotation omitted).

As an initial matter, Plaintiffs' note that Copilot is a joint venture between GitHub and OpenAI (¶ 47), and GitHub's own Privacy Statement defines "personal data" and includes "photographs, documents, or other files" and any "files you upload to our Service." ECF No. 1-2. Plaintiffs specifically allege duties owed to them with respect to that personal data. Defendants owed a duty of care based on Defendants' relationship to them. ¶ 231. Because Defendants possessed Plaintiffs' personal data and had rights to control it, they owed various duties to Plaintiffs. *See Bass*, 394 F. Supp. 3d at 1039. Moreover, it is well established when a company

undertakes to collect and handle sensitive information from customers, a duty arises to handle that information with care. *Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10, 2006) (finding allegations that defendant, "[a]s custodians of the Representative Plaintiff's and the Class Members' personal and confidential information" "owe[d] a duty of care . . . to prevent access to such information by unauthorized third parties" sufficient). This duty applied to Defendants, who took the Plaintiffs' information and then shared and distributed it to third-parties without Plaintiffs' authorization. *See* ¶¶ 87–91, 148–54.

"The lack of reasonable care in handling of personal information can foreseeably harm the individuals providing the information" *See Bass*, 394 F. Supp. 3d at 1039. Defendants failed in their duties with respect to Plaintiffs' information by using it for their own economic purposes in disregard for Plaintiffs' rights.[13] *See Sony Gaming Networks*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014) (finding "legal duty to safeguard a consumer's confidential information entrusted to a commercial entity" "well supported by both common sense and California . . . law."); *Witriol*, 2006 WL 4725713, at *8. Defendants also owed Plaintiffs a general duty of responsibility for the results of one's own actions. Cal. Civ. Code § 1714.

OpenAI's last effort to defeat Plaintiffs' claim rests on invoking the economic loss rule to claim Plaintiffs lack a negligence claim.[14] Under California law, "[i]n the absence of (1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule, recovery of purely economic loss is foreclosed." *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008). The presence or absence of one factor is not decisive. *Id* at 605–06. Of relevance here is the special relationship exception. Whether a "special relationship" exists is based on six factors:

---

[13] OpenAI relies on *Schmitt v. SN Servicing Corp.*, 21-cv-03355-WHO, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021), but the allegations here are sufficient under *Rowland* to plead the existence of a duty. *See id.* at *6-7.

[14] OpenAI claims that Plaintiffs' negligence claims are not redressable. OpenAI Br. at 22-23 (citing *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633 (N.D. Cal. 2020)). As *Huynh* recognized, "[u]nder California law, appreciable, nonspeculative, present harm is an essential element of a negligence cause of action." *Id.* at 649. Plaintiffs have alleged these harms. *See* § III.A.1, *supra*.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS OPENAI, INC.; OPENAI, L.P.; OPENAI GP, L.L.C.; OPENAI STARTUP FUND GP I, L.L.C.; OPENAI STARTUP FUND I, L.P.; AND OPENAI STARTUP FUND MANAGEMENT, LLC'S MOTION TO DISMISS

"(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." *J'aire Corp. v. Gregory*, 24 Cal.3d 799, 804 (1979).

**First**, by taking the code from GitHub, which was provided by users like the Plaintiffs, to train Codex and Copilot, and then to market Copilot to third parties, it was clearly intended for the transaction to affect Plaintiffs as it relies upon the body of work Plaintiffs made. ¶¶ 140–44, 149, 151, 152. Indeed, Codex and Copilot could not exist without the code provided by Plaintiffs and other class members on GitHub. **Second**, Plaintiffs publish code subject to licenses (which GitHub itself permits, ¶ 196), it was foreseeable that they would be harmed if those licenses were not honored. ¶¶ 149–50. As the injury would not happen unless Defendants chose to train their AIs on Plaintiffs' code, that the Defendants themselves were the ones to offer the licenses, and with the rampant growth of AI products based on similar training, the last three *J'aire* factors are clearly implicated. ¶¶ 34, 78–81; *see also*, *e.g., Bass*, 394 F. Supp. 3d at 1039 (finding the absence of a duty of care "would create perverse incentives for businesses who profit off the use of consumers' personal data to turn a blind eye and ignore known security risks.") (citation omitted).

### 2.   Plaintiffs Have Plausibly Pled a Claim for Civil Conspiracy (Count XI)

The elements of a claim for civil conspiracy are (1) the formation and operation of the common course of conduct and (2) damage to plaintiffs from acts committed in furtherance of the common design. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). A civil conspiracy claim arises from concerted action in the commission of a tort, imposing joint and several liability "on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.'" *Fleites v. MindGeek S.A.R.L.*, ___ F. Supp. 3d ___, 2022 WL 4456077 (C.D. Cal. July 9, 2022).

Plaintiffs have adequately pleaded the commission of a number of underlying torts and violations of law, including claims for negligence, breach of contract, and statutory violations. *See*

§ III.E.1, *supra*. And Plaintiffs have pleaded each Defendant's role in the commission of the underlying torts. ¶¶ 8, 14, 82–84, 26–138 (OpenAI); 1, 5–7, 8, 10, 12, 14–15, 82–94, 125–38 (Microsoft/GitHub). Plaintiffs have alleged a common course of conduct, including that Defendants jointly developed, marketed and sold the Copilot product. ¶¶ 5–9, 11, 21–28. The Complaint specifies overt acts conducted in furtherance of their conspiracy. Based on these, Plaintiffs specifically allege that Defendants have worked together to create Copilot, deriving economic benefit therefrom. ¶¶ 236–38. The Complaint also specifies that Defendants did so in furtherance of a number of torts and violations of law. ¶ 239. That is all that is needed under California law. *See Applied Equip.*, 7 Cal. 4th at 510–11.[15]

### 3.    Plaintiffs Have Plausibly Pled their Remaining State Law Claims

As to the remainder of Plaintiffs' state law claims, OpenAI's arguments do not differ substantially from Microsoft/GitHub's. For the reasons set forth in Plaintiffs' Opposition to Microsoft and GitHub's Motion to Dismiss and incorporated herein, each of OpenAI's arguments fail. *See id.*, § III.E.

Plaintiffs allege that OpenAI breached the terms of Plaintiffs' open-source licenses through their training and display of Plaintiffs' code without regard for the licenses. Microsoft/GitHub relied on training performed by OpenAI for Codex, which was then incorporated into Copilot. ¶¶ 47, 66, 84. OpenAI breached Plaintiffs' licenses by using their code for the training and operation of an AI system.

Plaintiffs also allege against OpenAI a count of unjust enrichment. Plaintiffs have alleged that they have invested substantial time and energy in creating the licensed materials, and that Defendants utilized their access to those materials to train their AI. ¶¶ 201–02. Further, Defendants directly profited and otherwise obtained benefits from their disregard of Plaintiffs' licenses through Copilot. ¶ 203. Plaintiffs have no adequate remedy at law. ¶ 206.

---

[15] OpenAI asserts that there is a heightened pleading burden for a civil conspiracy claim. Not so. Rule 9 applies to fraud claims, not conspiracy claims. Moreover, evidence of the conspiracy lies in the hands of the conspirators, and Plaintiffs are not required to set forth all the details in their pleadings. *See Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985).

Plaintiffs allege violations of California's Unfair Competition law ("UCL"). Plaintiffs allege numerous economic injuries sufficient to provide standing to sue under the UCL, namely that Plaintiffs invested substantial time and energy in creating licensed materials, that Defendants used those materials, and that Plaintiffs lost the value of their work as a result. ¶¶ 201–03. To the extent Open AI asserts that the UCL claims fails because Plaintiffs have not shown the absence of an adequate remedy at law (OpenAI Br. at 18), this claim is inconsistent with the pleadings. ¶ 210. Moreover, at this juncture, plaintiffs may proceed with claims for damages and claims for equitable relief as alternative remedies.[16] *Espineli v. Toyota Motor Sales U.S.A., Inc.*, No. 2:17-CV-00698-KJM-CKD, 2018 WL 3769383, at *4 (E.D. Cal. Aug. 9, 2018) (finding "no basis in California or federal law for prohibiting the pursuit of alternate remedies at this early stage").

**F.   Plaintiffs Should be Permitted Leave to Amend**

Leave to amend is freely granted by courts in this district where the claim could be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). Should the Court determine that dismissal should be granted, the Court should do so without prejudice and with leave to amend as to all claims.[17]

### IV.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the motion to dismiss be denied, or in the alternative, that Plaintiffs be granted leave to amend their complaint.

---

[16] Plaintiffs, in any event, can seek restitutionary disgorgement of profits and injunctive relief, which are paradigmatic remedies under the UCL. Cal. Bus. & Prof. Code § 17203; *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (citing *Clark v Superior Court,* 50 Cal 4th 605, 613 (2010)).

[17] Plaintiffs do not concede claims under Section 1202(a) of the DMCA, or under Counts III, IV, V and IX have been inadequately pled. Plaintiffs nonetheless request leave to amend as to those Counts.

Dated: March 9, 2023                    By:      /s/ Joseph R. Saveri
                                                 Joseph R. Saveri


                                        Joseph R. Saveri (State Bar No. 130064)
                                        Steven N. Williams (State Bar No. 175489)
                                        Cadio Zirpoli (State Bar No. 179108)
                                        Christopher K.L. Young (State Bar No. 318371)
                                        Elissa A. Buchanan (State Bar No. 249996)
                                        Travis Manfredi (State Bar No. 281779)
                                        **JOSEPH SAVERI LAW FIRM, LLP**
                                        601 California Street, Suite 1000
                                        San Francisco, California 94108
                                        Telephone:    (415) 500-6800
                                        Facsimile:     (415) 395-9940
                                        Email:        jsaveri@saverilawfirm.com
                                                      swilliams@saverilawfirm.com
                                                      czirpoli@saverilawfirm.com
                                                      cyoung@saverilawfirm.com
                                                      eabuchanan@saverilawfirm.com
                                                      tmanfredi@saverilawfirm.com

                                        Matthew Butterick (State Bar No. 250953)
                                        1920 Hillhurst Avenue, #406
                                        Los Angeles, CA 90027
                                        Telephone:    (323) 968-2632
                                        Facsimile:    (415) 395-9940
                                        Email:        mb@buttericklaw.com

                                        *Counsel for Plaintiffs and the Proposed Class*

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS OPENAI, INC.; OPENAI, L.P.; OPENAI GP,
L.L.C.; OPENAI STARTUP FUND GP I, L.L.C.; OPENAI STARTUP FUND I, L.P.; AND OPENAI STARTUP
FUND MANAGEMENT, LLC'S MOTION TO DISMISS