ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
DANIEL D. JUSTICE (SBN 291907)
djustice@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

WILLIAM W. OXLEY (SBN 136793)
woxley@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

*Attorneys for GitHub, Inc. and Microsoft Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| J. DOE 1, et al.,<br><br>　　　Individual and Representative Plaintiffs,<br><br>　v.<br><br>GITHUB, INC., et al.,<br><br>　　　Defendants.<br><br>AND CONSOLIDATED ACTION | Case No. 4:22-cv-6823-JST<br>Consolidated w/ Case No. 4:22-cv-7074-JST<br><br>**DEFENDANTS GITHUB AND MICROSOFT'S REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS OPERATIVE COMPLAINT IN CONSOLIDATED ACTIONS**<br><br>Date: May 4, 2023<br>Time: 2:00 p.m.<br>Courtroom: 6, 2d Floor (by Zoom)<br>Judge: Hon. Jon S. Tigar<br><br>Complaint Filed:  December 7, 2022 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 1

I.   PLAINTIFFS LACK ARTICLE III STANDING BECAUSE THEY HAVE NOT ALLEGED ACTUAL OR THREATENED INJURY. ........................................................... 1

   A.   Plaintiffs' Lack-Of-Attribution Theory Cannot Confer Standing. ......................... 2

   B.   Plaintiffs Have Abandoned Their Privacy-Based Claims By Failing To Address The Absence Of Privacy-Based Injury. ................................................... 3

II.  PLAINTIFFS FAIL TO STATE A DMCA CLAIM. ......................................................... 4

   A.   Plaintiffs Cannot Allege The Required Likelihood Of Infringement. ................... 4

   B.   Count I Impermissibly Lumps Together Defendants, Claims, And Theories. ...... 7

   C.   Plaintiffs Have Not Plausibly Alleged That GitHub Or Microsoft Intentionally Or Knowingly Removes Or Alters CMI Under § 1202(b) ..................................... 8

   D.   Plaintiffs Abandon Their Claims Predicated On False CMI. ................................ 9

III. PLAINTIFFS FAIL TO STATE A BREACH-OF-LICENSE CLAIM. ............................ 9

IV.  PLAINTIFFS' TORT AND UCL CLAIMS FAIL. ........................................................... 11

   A.   Plaintiffs' Tort And UCL Claims Are Preempted By The Copyright Act. ......... 11

   B.   Plaintiffs Have Abandoned Their Tortious Interference and Fraud Claims. ...... 11

   C.   Plaintiffs' UCL Claim Fails. ................................................................................ 12

V.   PLAINTIFFS HAVE ABANDONED THEIR REVERSE PASSING OFF CLAIM. ...... 12

VI.  PLAINTIFFS' PRIVACY CLAIMS FAIL. ...................................................................... 12

VII. PLAINTIFFS' UNJUST ENRICHMENT, CONSPIRACY, AND DECLARATORY RELIEF ALLEGATIONS FAIL ALONG WITH THE UNDERLYING CLAIMS. ....... 13

VIII. PLAINTIFFS CANNOT PROCEED ANONYMOUSLY. .............................................. 14

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
    529 F. Supp. 3d 1059 (N.D. Cal. 2021) ................................................................................. 13

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
    260 F. Supp. 2d 941 (N.D. Cal. 2003) .................................................................................. 14

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) .................................................................................... 9

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) ........................................................................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................... 11, 14

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ................................................................................................ 13

*Bounce Exchange, Inc. v. Zeus Enterprise Ltd.*,
    No. 15cv3268, 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) .................................................. 8

*Brackett v. Am. Airlines Grp. Inc.*,
    No. 21-cv-02681, 2022 WL 282529 (N.D. Cal. Jan. 31, 2022) .............................................. 9

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................... 3, 9, 12, 14

*Centigram Argentina, S.A. v. Centigram Inc.*,
    60 F. Supp. 2d 1003 (N.D. Cal. 1999) ................................................................................. 11

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ............................................................................................................... 12

*Davis v. Federal Election Commission*,
    554 U.S. 724 (2008) ............................................................................................................... 2

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*,
    596 F.3d 1036 (9th Cir. 2010) .............................................................................................. 15

*Doe v. Stegall*,
    653 F.2d 180 (5th Cir. 1981) ................................................................................................ 15

*Ehret v. Uber Techs., Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ................................................................................. 12

*Google LLC v. Oracle Am., Inc.*,
   141 S. Ct. 1183 (2021) ................................................................................................................ 6

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. 519 (2013) .................................................................................................................... 6

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342 (2012) ................................................................................................. 14

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) .............................................................................................................. 12

*Lopez v. Bank of Am., N.A.*,
   505 F. Supp. 3d 961 (N.D. Cal. 2020) ...................................................................................... 12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) .................................................................................................................... 5

*Murphy v. Millennium Radio Grp. LLC*,
   650 F.3d 295 (3d Cir. 2011) .................................................................................................... 6, 8

*Troyk v. Farmers Grp., Inc.*,
   171 Cal. App. 4th 1305 (2009) ................................................................................................. 12

*Worldwide Media, Inc. v. Twitter, Inc.*,
   No. 17-cv-07335, 2018 WL 5304852 (N.D. Cal. Oct. 24, 2018) ............................................... 9

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...................................................................................... 9

**Statutes**

Copyright Act, 17 U.S.C. §§ 101 *et seq.*

   § 107 ....................................................................................................................................... 6, 11
   § 1201(d)-(j) ............................................................................................................................... 6
   § 1202 ..................................................................................................................................... 1, 6
   § 1202(b) ............................................................................................................................ 4, 5, 8

**Other Authorities**

Federal Rules of Civil Procedure

   Rule 8 ....................................................................................................................................... 14
   Rule 8(a) ..................................................................................................................................... 7
   Rule 12(b)(1) .............................................................................................................................. 1

**INTRODUCTION**

The Complaint's dramatic theme of "software piracy on an unprecedented scale," Compl. ¶ 140, has disintegrated. Plaintiffs fail to articulate harm to any intellectual property or other legal interest that would entitle them to restrict the study, by human or machine, of software code that they made freely and publicly available. On their lead claim for violation of 17 U.S.C. § 1202, Plaintiffs scarcely even address the Ninth Circuit's controlling decision in *Stevens v. Corelogic*. Plaintiffs spend pages reciting historical developments and rebutting arguments that GitHub and Microsoft did not even make. They have simply abandoned several other claims, including tortious interference, fraud, reverse passing off, and any claim predicated on personal identifying information.

All that is left are a handful of vague allegations in search of a coherent legal theory with which to attack Copilot. Plaintiffs assert that "Defendants took [Plaintiffs'] code for their own commercial benefit and without any regard to the terms of [open source] licenses." GH/MSFT Opp. 1.* But they still have not identified which provisions of which open source licenses they claim have been breached by the act of studying their code. Rather, Plaintiffs devoutly disclaim any obligation to do so. Dodges, red herrings, and straw men are a poor substitute for a properly pleaded complaint. GitHub and Microsoft's Motions should be granted in full.

**ARGUMENT**

**I.   PLAINTIFFS LACK ARTICLE III STANDING BECAUSE THEY HAVE NOT ALLEGED ACTUAL OR THREATENED INJURY.**

Microsoft and GitHub's Motion under Rule 12(b)(1) explained Plaintiffs' Article III problem plainly: Even if Plaintiffs' *theories* of injury—lack of attribution and misuse of personal identifying information—were cognizable and plausible in the abstract, Plaintiffs fail to plead that *they themselves* have suffered or are likely to suffer those injuries. Mot. 5-8. Plaintiffs' Opposition does not show otherwise.

---

* We cite GitHub and Microsoft's Motions to Dismiss, ECF No. 50, as "Mot."; Plaintiffs' Opposition to that Motion, ECF No. 66, as "GH/MSFT Opp."; and Plaintiffs' Opposition to the OpenAI Defendants' Motion to Dismiss, ECF No. 67, as "OpenAI Opp." GitHub and Microsoft do not concede the truth of any allegation in the Complaint except for purposes of this Motion.

A.      **Plaintiffs' Lack-Of-Attribution Theory Cannot Confer Standing.**

Plaintiffs begin with a several-page recitation of "broadly allege[d] … property and contractual rights … that have long been types of injury recognized by the common law and the American legal system." OpenAI Opp. 5-6; GH/MSFT Opp. 5. So committed are Plaintiffs to this approach that they invoke Lord Mansfield's observations in 1769 concerning rights to control "paper upon which the composition is written, marked, or impressed," a puzzling reference since Plaintiffs have no copyright claim. OpenAI Opp. 6 n.2. The argument is irrelevant. At issue here is not the legal existence of certain "types of injury"—breach of contract, invasion of intellectual property rights, rights created by Congress, and so forth—but the nonexistence of any such injury *to Plaintiffs*, without which this dispute is no more live than Lord Mansfield himself.

When Plaintiffs do finally turn to the issue of "particularized" injury to them, they seemingly acknowledge what they would need to allege: That Copilot has or likely will generate output that matches Plaintiffs' code in a fashion that causes them cognizable harm. They do not and cannot contest that they lack any claim of injury based on invasion of any copyright interest, having failed to allege infringement of any work. Mot. 6. Nor do Plaintiffs dispute that they "identify [no] harm that has come from the bare use of the contents of public repositories to train Codex or Copilot." Mot. 6. So whether it's to supply standing for their DMCA claims, breach-of-contract claims, or any other claim—each of which requires a basis for standing, *see Davis v. Federal Election Commission*, 554 U.S. 724, 734 (2008)—each Plaintiff must at least allege that a user's input has or likely will generate Copilot output matching Plaintiffs' code.

No Plaintiff does so. They insinuate in a parenthetical that they have "set forth in detail" that "Copilot was trained on *and reproduced Plaintiffs' code* without attribution," OpenAI Opp. 8-9 (emphasis added; citing Compl. ¶¶ 13, 83-90), or that such reproduction is "imminent," *Id*. And they claim that "[g]iven the number of times users may use Copilot, it is a virtual certainty any particular plaintiff's code will be displayed either with copyright notices removed or in violation of Plaintiffs' open-source licenses for profit." OpenAI Opp. 8. But this is an objectively false characterization of the Complaint. Nothing in the paragraphs Plaintiffs cite or anywhere else in their Complaint remotely suggests that Copilot has generated a snippet matching

Plaintiffs' code, nor that it is imminent or inevitable.

Indeed, their Complaint establishes just the opposite. Although it alleges that Copilot is trained on code that GitHub users have made available in public GitHub repositories, Compl. ¶ 143, the Complaint's allegations make clear that Copilot is not equally likely to generate any snippet of code that was in the training set. "As the user types [code] into the editor," Compl. ¶ 67, Copilot treats the user's input as a prompt, "predic[ting] … the most likely [coding] solution," Compl. ¶ 79. "[E]ssentially Copilot returns the solution it has found in the most [coding] projects when those projects are somehow weighted to adjust for whatever variables [the model] ha[s] identified as relevant." Compl. ¶ 79. Plaintiffs repeat this allegation several times, making clear that Copilot generates suggestions in response to prompts, providing "the most statistically likely completion, based on the examples it reviewed in training," Compl. ¶ 53—the solution it has "seen the most," Compl. ¶ 73. And even among the suggestions that the model deems likely, a mere "1%" will be a match for existing code. Compl. ¶ 90. Far from pleading a "virtual certainty" of generating "any particular plaintiff's code," OpenAI Opp. 8, the Complaint describes a system that generates specific suggestions tailored to specific inputs, rarely generates a match, and even the rare match will result not from a particular instance of some user's code, but from a pattern of repetition of that code throughout the training data.

### B. Plaintiffs Have Abandoned Their Privacy-Based Claims By Failing To Address The Absence Of Privacy-Based Injury.

A "failure in an opposition to address arguments raised in a motion to dismiss constitutes abandonment of the claim, which results in dismissal with prejudice." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 122 (N.D. Cal. 2020) (quoting *Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014)). GitHub and Microsoft's Motion explained that Plaintiffs lack standing for their privacy claims because Plaintiffs "have alleged no details concerning collection or mishandling of any of their PII [i.e., personal identifying information]." Mot. 8. Plaintiffs do not address this argument. They have therefore abandoned: (1) Count IX for Violation of the California Consumer Privacy Act, which supplies a cause of action only with respect to certain personal information, Mot. 24; and (2) Count X for Negligent Handling of Personal Data, which

is based on alleged collection and exposure of "sensitive personal information," Compl. ¶ 237.

Insofar as Count VIII—alleging breach of GitHub's Terms of Service and Privacy Statement—is based upon PII, it is abandoned for the same reason. Although still unclear, Plaintiffs now appear to be arguing that the "personal data" referred to in that count is actually the source code they place in public repositories. GH/MSFT Opp. 14-15. As explained below (at 13), if that is the basis for the claim it should be dismissed because Plaintiffs failed to plead it, and because the Privacy Statement makes abundantly clear that software code is *not* "Personal Data" governed by the Privacy Statement.

## II. PLAINTIFFS FAIL TO STATE A DMCA CLAIM.

Plaintiffs fail to overcome various defects in their DMCA claims, and in several instances do not meaningfully address them at all. *See* Mot. 8-15. Plaintiffs cannot avoid dismissal without satisfying the controlling decision in *Stevens v. Corelogic, Inc.*, which requires a showing that "future [copyright] infringement is *likely* … to occur *as a result of* the removal or alteration of CMI." 899 F.3d 666, 675 (9th Cir. 2018) (emphasis added); Mot. 9-12. Nor can they avoid the text of § 1202(b), in particular the requirement of some active step to remove CMI that otherwise would be included with a copy of the work. Mot. 13-14. These deficiencies—in addition to their impermissible bulk pleading and their outright abandonment of claims under § 1202(a) and (b)(2)—necessitate dismissal of the DMCA claim.

### A. Plaintiffs Cannot Allege The Required Likelihood Of Infringement.

*Stevens* is on point. That case, like this one, involved a technology—software for creating real estate listings—whose intended purpose was unrelated to CMI, but that incidentally did not retain CMI when processing data (there, photos). 899 F.3d at 671. The question the Ninth Circuit confronted was what standard must be met to show that the offering of such technology was tantamount to "remov[ing] CMI" "knowing [or] having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement[.]" *Id.* at 673 (citing 17 U.S.C. § 1202(b)). The answer: an "affirmative showing" that "infringement is likely … to occur as a result of the removal or alteration of CMI." *Id.* at 674-75. That showing, moreover, must be specific to the plaintiff's own works. *Id.* at 675-76 (noting absence of "specific evidence"

regarding "their [i.e., plaintiffs'] real estate photographs"). If an incidental effect of a technology is the "general possibility" of infringement "that exists whenever CMI is removed," the mere offering of that technology does not raise an inference that the defendant acted with knowledge of inducement, facilitation, or concealment of infringement. *Id.* at 673. Without the requisite causal connection between the technology that removes CMI and ensuing infringement, a plaintiff has to show something akin to purposeful conduct in aid of identified acts of infringement. *Cf. Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-34 (2005).

Plaintiffs bury *Stevens* at the end of their discussion of § 1202(b). OpenAI Opp. 19-20. But they do not contest that it controls, nor that it requires each Plaintiff to show a likelihood that their works will be infringed (by mere snippets) as a result of Copilot's non-retention of CMI. The Complaint does not directly allege likely infringement of their code, let alone that such infringement is capable of being carried out because of a nexus to mishandling of CMI. That is dispositive under *Stevens*, including, contrary to Plaintiffs' footnoted suggestion (OpenAI Opp. 20 n.12), at the pleading stage. *See* Mot. 10 (citing *Harrington v. Pinterest, Inc.*, No. 20-cv-5290, 2021 WL 4033031, at *6 (N.D. Cal. Sept. 3, 2021); *Philpot v. Alternet Media, Inc.*, No. 18-cv-4479, 2018 WL 6267876, at *5 (N.D. Cal. Nov. 30, 2018)).

Unable to point to allegations of likely *infringement*, Plaintiffs instead point back to their allegation "that Copilot creates *identical copies* of code at least 1% of the time." OpenAI Opp. 20 (citing Compl. ¶ 90) (emphasis added). To begin with, a 1% chance that output may be an identical match of *something* is at best the sort of "general possibility" *Stevens* rejects. But more importantly, Plaintiffs' argument is a non sequitur: An identical copy of a code snippet is not the same thing as an *infringement* of copyright. Plaintiffs do not even attempt to contest the "host of … hurdles to the notion that any particular Output would result in copyright infringement," including questions of copyrightability, the thin protection afforded to software generally, the scope of any licenses, and the broad applicability of fair use in the software context. Mot. 11.

Plaintiffs' other arguments are as weak as their effort to address *Stevens*. They argue that "[c]onduct is prohibited under the DMCA without regard for whether the copyrighted information has been infringed." OpenAI Opp. 14. Their only cited support, *MDY Industries, LLC v.*

*Blizzard Entertainment, Inc.*, involves not § 1202, but § 1201—an entirely different provision addressing circumvention of technological protection measures. 629 F.3d 928, 950-52 (9th Cir. 2010). The anti-circumvention prohibitions of § 1201(a) and (b) do not contain the same explicit requirement concerning inducement, facilitation, or concealment of infringement. And § 1201 contains its own specific list of exemptions that do not correspond to the usual limitations on § 106 such as the idea/expression dichotomy (§ 102), fair use (§ 107), or the first sale doctrine (§109). *See* 17 U.S.C. § 1201(d)-(j). As *Stevens* makes clear, § 1202 *does* expressly incorporate § 106 "infringement" into its scienter requirement, and thus also embraces the defenses that would negate infringement. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 523 (2013) (§ 106 is "qualified … by the application of various limitations").

Plaintiffs' argument that there is no required nexus to infringement under § 1202 thus misses the point. It is true, generally, that a showing of actual infringement is not an *element* of a § 1202 claim. But *Stevens* makes clear that an "affirmative showing" of resulting "likely infringement" *is* necessary to satisfy § 1202(b)'s scienter requirement in the context of technologies that affect CMI only incidentally. 899 F.3d at 674-75.

Similarly, Plaintiffs argue that they are not required "to defeat a potential fair use defense." OpenAI Opp. 19. Again, true as far as it goes—fair use is not itself a defense to a § 1202 claim. But it is relevant under *Stevens* because fair use "is not an infringement of copyright." 17 U.S.C. § 107; *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 301-02 n.8 (3d Cir. 2011) ("those intending to make fair use … are unlikely to be liable under § 1202"). Plaintiffs, of course, have not even tried to allege the likely infringement *Stevens* demands. But even if they had, they would still need to do so plausibly. And to do that, they would need not only an explanation of how a commonly used code snippet hurdles the bar of protectable expression, but also at least some account of why occasional matches to short segments of common code would not be fair use, a doctrine at its most robust in the context of software. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021).

Even more tenuously, Plaintiffs point to GitHub's Terms of Service, which state that "GitHub does not claim any rights in Suggestions, and you retain ownership of and responsibility

for Your Code, including Suggestions you include in Your Code." OpenAI Opp. 16 (quoting Compl. ¶ 218, Ex. 1 at 38). Plaintiffs say this "induces Copilot users to believe they can use that output in any way they choose," and also somehow lets "Defendants conceal their own prior infringement." *Id.* at 17. That makes no sense. First, Plaintiffs have never alleged any infringement at all. Second, Plaintiffs forget that any inducement or facilitation of infringement must be the result of *removal of CMI*, not some irrelevant provision in GitHub's Terms of Service.

Plaintiffs' lone authority only illustrates what the Complaint lacks. In *GC2 Inc. v. International Game Technology*, an Illinois district court applied *Stevens* and found that the defendants "knew or should have known that their unlicensed distribution of artwork missing [CMI] to their customers could lead their customers to infringe GC2's copyrights." 391 F. Supp. 3d 828, 842 (N.D. Ill. 2019). But the plaintiff there actually established what Plaintiffs do not even allege here: that "each of the defendants had both directly and vicariously violated [the plaintiff's] copyrights in relation to all six of the disputed games." *Id.* at 838. *GC2* thus stands for the unremarkable proposition that if a plaintiff demonstrates infringement, it has satisfied *Stevens*' standard. Because Plaintiffs here have not even alleged infringement, their claim fails.

**B.   Count I Impermissibly Lumps Together Defendants, Claims, And Theories.**

As GitHub and Microsoft explained, Plaintiffs' Count I impermissibly lumped multiple DMCA claims, under three separate theories, against two different defendants together in an undifferentiated mass. Mot. 12. Such bulk pleading "does not satisfy Rule 8(a)." *Id.* (citing *In re iPhone Application Litig.*, No. 11-MD-02250, 2011 WL 4403963, *8 (N.D. Cal. Sept. 20, 2011)). Plaintiffs' Opposition points to no authority supporting their approach.

Nor have Plaintiffs justified lumping together all Defendants under their five DMCA claims without particularized allegations concerning what each did. Plaintiffs note that "Microsoft and GitHub filed one Motion to Dismiss," and that "Microsoft/GitHub are both alleged to have participated in the sale, marketing, and distribution of Copilot." GH/MSFT Opp. 6. Those generalized assertions do not plead that Microsoft engaged in primary conduct violating any provision of the DMCA, and Plaintiffs do not even attempt an argument based on a novel

vicarious or contributory DMCA theory. *See* Mot. 12-13. Plaintiffs therefore cannot overcome the bedrock corporate law principle that a corporate parent or shareholder is not liable for the conduct of a subsidiary. *Id.* Count I is improperly pled, meriting dismissal.

### C. Plaintiffs Have Not Plausibly Alleged That GitHub Or Microsoft Intentionally Or Knowingly Removes Or Alters CMI Under § 1202(b).

GitHub and Microsoft's Motion explained in detail how the statutory text of § 1202(b) requires some "active conduct to get rid of or change CMI that would otherwise naturally accompany a copy of the work." Mot. 13. This requirement flows from the plain meaning of the words "remove" and "alter," and the statute's definition of CMI as information "conveyed in connection with copies … of a work." *Id.* Because Plaintiffs have alleged at most passive non-inclusion of CMI in connection with a small snippet of a work, they fail to state a claim.

Plaintiffs' only response is that "there is no[]" such requirement. GH/MSFT Opp. 8. But they say nothing about the statutory text, including the key terms "remove" and "alter"—dictionary definitions of both of which require some active step on the part of an actor. *See* Mot. 13. They fail to address any of the several cases rejecting § 1202(b) claims based only on passive non-inclusion of CMI in connection with some excerpt or portion of a work. *Id.* And they do not dispute their failure to plead active removal of CMI in connection with a copy of a work.

None of the cases Plaintiffs cite for their view of § 1202(b) relieve them of the showing of the active conduct the statutory text requires. In *ICONICS, Inc. v. Massaro*, the defendant copied two source code files, "deleted" one copyright header, and "replaced it" with its own header. 192 F. Supp. 3d 254, 272 (D. Mass. 2016). That is active conduct. So too the defendant's deletion of CMI from *within* an identical snippet of source code in *Bounce Exchange, Inc. v. Zeus Enterprise Ltd.*, No. 15cv3268, 2015 WL 8579023, at *2-3 (S.D.N.Y. Dec. 9, 2015). Meanwhile, both *GC2*, 391 F. Supp. 3d at 843, and *Murphy*, 650 F.3d at 301-02, involved copies that were complete and identical except for CMI that was otherwise naturally included with the work—the sort of active cropping that several cases have held is distinct from a mere snippet excerpted without retention of CMI contained elsewhere on the original copy, *see* Mot. 13-14. Plaintiffs allege only non-inclusion of CMI with a code snippet.

### D. Plaintiffs Abandon Their Claims Predicated On False CMI.

GitHub and Microsoft's Motion sought dismissal of Plaintiffs' claims under § 1202(a) and (b)(2) on the ground that Plaintiffs fail to allege "any distribution of CMI by GitHub or Microsoft *at all*, let alone false CMI." Mot. 15. Plaintiffs do not address this contention or point to any allegation of false CMI. This constitutes abandonment and mandates dismissal of those claims with prejudice. *See Brodsky*, 445 F. Supp. 3d at 122. In a footnote in their Opposition to OpenAI's Motion (but not GitHub and Microsoft's), Plaintiffs request leave to amend the § 1202(a) claims. OpenAI Opp. 25 n.17. But Plaintiffs still have not substantiated the notion that Copilot distributes CMI at all, so amendment would appear to be futile.

## III. PLAINTIFFS FAIL TO STATE A BREACH-OF-LICENSE CLAIM.

GitHub and Microsoft's Motion identified several deficiencies in Plaintiffs' breach-of-license claims. Mot. 15-18. The Opposition does not dispute that the Complaint fails to identify which contract provisions were allegedly violated. GH/MSFT Opp. 12. Instead, Plaintiffs brush off Defendants' argument for dismissal on this basis as a "quibble." *Id.* But this defect is fundamental. *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (to state a breach of contract claim, "a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached."); *see also Brackett v. Am. Airlines Grp. Inc.*, No. 21-cv-02681, 2022 WL 282529, at *3 (N.D. Cal. Jan. 31, 2022) (same); *Kidstar v. Facebook Inc.*, No. 20-cv-05408, 2021 WL 1110227, at *3 (N.D. Cal. Mar. 23, 2021) (same); *Worldwide Media, Inc. v. Twitter, Inc.*, No. 17-cv-07335, 2018 WL 5304852, at *5 (N.D. Cal. Oct. 24, 2018) (same); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 980 (N.D. Cal. 2016) (same).

Ignoring Defendants' authority, Plaintiffs claim they "only need to give Defendants sufficient notice of the claim," and need not plead the specific contract provisions "verbatim" or "attach a copy" of the contract to the Complaint. GH/MSFT Opp. 13. Even if this were the correct standard, "sufficient notice of the claim" is missing here. The Complaint does not plead, and the Opposition does not explain, how training Copilot on public GitHub repositories breaches any provision, or how any of Copilot's actual outputs interfered with Plaintiffs' contract rights.

1    The Opposition's recitation of generic high-level features of the licenses, *id.*, does not provide
2    notice of the basis for the claim.  As explained in GitHub and Microsoft's Motion, identifying the
3    precise contract provisions invoked is critical here, because none of the standard open source
4    licenses appear to bar Copilot's training.  Mot. 16.  To the contrary, the licenses grant broad
5    public rights to inspect and build on public code.  *Id*.  Defendants are entitled to have the
6    provisions identified so they can contest whether the claims should proceed.

7    Plaintiffs argue that the Motion "distorts" their theory and assert that Copilot's "training
8    **and operation**" breach the undisclosed open-source license provisions.  GH/MSFT Opp. 13-14.
9    But the Motion established that the Complaint fails to state a claim as to training *and* as to
10   operation.  As to operation, the Opposition does not attempt to show that Plaintiffs' content has
11   been or is likely to be output of Copilot.  *Supra* 2-4.  As a result, Plaintiffs cannot show that
12   Copilot's "operations" plausibly affected *their* contracts.  *See* Mot. 17-18.

13   As to training, Plaintiffs cannot overcome GitHub's Terms of Service.  The Opposition
14   acknowledges that the TOS "permit[s] GitHub 'the right to store, archive, parse, and display'
15   posted code and to 'make incidental copies, as necessary to provide the Service.'"  GH/MSFT
16   Opp. 13.  But the Opposition offers no rebuttal to the fact that using public repository data for
17   Copilot's training is squarely encompassed within these provisions.  *See* Mot. 16-17.

18   Plaintiffs have no basis for their suggestion that these express authorizations are
19   "ambiguous" because of the TOS's separate provision that GitHub will not "sell" user content.
20   GH/MSFT Opp. 13.  Copilot's inspection and learning from user uploaded content as part of its
21   training is squarely encompassed by the TOS's authorization to "copy," "parse," "analyze," and
22   "share … with other users," Mot. 17, and does not trigger the TOS's promise that GitHub will not
23   "sell [a user's] content," GH/MSFT Opp. 14, because there is no allegation that GitHub is selling
24   any user content.  Neither the Complaint nor the Opposition provides any theory for how
25   Copilot's learning from publicly uploaded user content for training constitutes a "sale."  Thus,
26   there is no "ambiguity" in the TOS authorizations at issue.

27   Nor would the "ambiguity" Plaintiffs attempt to gin up create a question of "fact" entitling
28   Plaintiffs to a "presum[ption]" in their favor at the pleading stage.  GH/MSFT Opp. 13.

Ambiguity in a contract is generally resolved as a matter of law, and creates a question of fact only in the rare instance where there is disputed parol evidence pertaining to the parties' intent. *Centigram Argentina, S.A. v. Centigram Inc.*, 60 F. Supp. 2d 1003, 1007 (N.D. Cal. 1999) (citing *WYDA Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996)). The TOS is a contract setting forth standard terms applicable to millions of users that was not negotiated with the (anonymous) Plaintiffs. There is no "dispute of fact," GH/MSFT Opp. 13, as to the parties' intentions, nor could Plaintiffs allege one.

Finally, the Complaint lacks a theory of damages. Plaintiffs say they "allege[d] causation and damages" because Plaintiffs "suffered monetary damages" and other "great and irreparable injury." GH/MSFT Opp. 12. But the Opposition, like the Complaint, does not offer any theory of *how* Plaintiffs were harmed by Defendants' alleged license breach. "[C]onclusory statements" of causation and damages "do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. PLAINTIFFS' TORT AND UCL CLAIMS FAIL.

### A. Plaintiffs' Tort And UCL Claims Are Preempted By The Copyright Act.

GitHub and Microsoft's Motion argued that the Complaint's "tort and UCL claims" are preempted by the Copyright Act. Mot. 18-19. Yet the Opposition argues only that Plaintiffs' breach of open source license claim is not preempted—an argument that GitHub and Microsoft did not make. GH/MSFT Opp. 1, 9-11. Without knowing whether Plaintiffs authored anything subject to these licenses, and without allegations of which license provisions were supposedly breached, assessment of potential copyright preemption as to the *contract* claim is wholly premature. That issue is not raised at this stage and should be ignored.

As for the preemption arguments GitHub and Microsoft *did* make, Plaintiffs fail to respond at all. Plaintiffs' tortious interference, fraud, and unjust enrichment claims, as well as any portion of their UCL claims based on state tort, should therefore be dismissed with prejudice.

### B. Plaintiffs Have Abandoned Their Tortious Interference and Fraud Claims.

Plaintiffs do not respond to GitHub and Microsoft's detailed arguments (at Mot. 20-22) that their tortious interference and fraud claims fail as a matter of law. Although they "request amendment" in a footnote, OpenAI Opp. 25 n.17, they do not explain what would be added. *Id*.

1    This merits dismissal with prejudice. *Brodsky*, 445 F. Supp. 3d at 122; *supra* 3.

### C. Plaintiffs' UCL Claim Fails.

Plaintiffs acknowledge that their UCL claim requires "lost money or property." GH/MSFT Opp. 18.  This requirement is "more stringent than the federal standing requirements." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011) (quoting *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (2009)).  Yet the Complaint fails to identify a single thing they lost.  The Opposition vaguely claims that Plaintiffs "lost the value of [their] work, including their ability to receive compensation as well as the likelihood they would be retained or hired in the future." GH/MSFT Opp. 18.  The Opposition also asserts that Plaintiffs have been "deprived" of interests with a "pedigree in the common law," including "the right to identify and control the reproduction of their copyrighted works, to have the terms of the open-source licenses followed, and to pursue copyright infringement remedies." *Id.* at 19.  But this is not "lost money or property."  A plaintiff cannot sue under the UCL based on injuries that are "intangible." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014); *see Kwikset*, 51 Cal. 4th at 324; *Troyk*, 171 Cal. App. 4th at 1348 n.31.

On the merits, Plaintiffs acknowledge that their claim, based on the "unlawful prong" of the UCL, is derivative of other claims alleged in the Complaint.  GH/MSFT Opp. 17.  Because the Complaint fails to state a claim as to the predicate violations, the UCL claim must also be dismissed.  Mot. 23; *Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 976 (N.D. Cal. 2020).

## V.   PLAINTIFFS HAVE ABANDONED THEIR REVERSE PASSING OFF CLAIM.

The Opposition does not respond to GitHub and Microsoft's explanation that the "reverse passing off" claim is barred by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).  Plaintiffs have thus abandoned the claim (Count V).

## VI.  PLAINTIFFS' PRIVACY CLAIMS FAIL.

As noted, Plaintiffs abandoned their privacy-based claims by not responding to GitHub and Microsoft's argument that the Complaint fails to identify a privacy-related injury. *Supra* 3-4.  In any event, the Opposition confirms that the Complaint fails to identify any specific privacy-related provision of any alleged contract that was violated, does not describe the alleged PII at

issue, and does not plead PII in one of the statutory categories that could support a CCPA claim. Mot. 23-24. Plaintiffs' attempt to resurrect their negligence claim fills none of these critical gaps. The Opposition reasserts that Defendants took unspecified "sensitive information of Plaintiffs and then shared and distributed it to third-parties without Plaintiffs' authorization," GH/MSFT Opp. 20-21, but they do not say *what* information, *how* it was distributed, or *why* Defendants' use of member data amounted to a violation of any legal obligations. And Plaintiffs have abandoned their CCPA claim by failing to respond to Defendants' explanation that the Complaint fails to plead PII in a relevant statutory category. *Supra* 3-4.

With respect to the alleged breach of GitHub's TOS and Privacy Statement (Count VIII), Plaintiffs now seem to suggest that the software code they upload to GitHub is "personal data," and that Copilot somehow results in unauthorized "sale" of this data, in violation of the TOS. *See* GH/MSFT Opp. 15. This is a distortion of the Complaint, which addresses "personal data" relevant to personal privacy—not the entirety of a user's code, lodged in public repositories. Compl. ¶¶ 215-220. It also rests on an untenable reading of the Privacy Statement, which treats "source code" and "personal data" as separate categories, and expressly defines "personal data" with no reference to source code. *See* Compl. Ex. 1 at 1, 3-4. In any event, as explained above, the Complaint does not plausibly allege that Plaintiffs' content was ever output, much less "sold." *Supra* 2-3. And Plaintiffs cannot claim a breach of the TOS based on Copilot's use of content for training, because the TOS authorize precisely that use. *Supra* 10. The privacy-based claims should therefore be dismissed with prejudice.

### VII. PLAINTIFFS' UNJUST ENRICHMENT, CONSPIRACY, AND DECLARATORY RELIEF ALLEGATIONS FAIL ALONG WITH THE UNDERLYING CLAIMS.

The Ninth Circuit has recognized that, "in California, there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070-71 (N.D. Cal. 2021) (Koh, J.) (evaluating state of the law on unjust enrichment claims). The Opposition confuses matters by pointing to authority noting that a claim labeled unjust enrichment can sometimes be cognizable as a restitution claim on a theory of quasi-contract. GH/MSFT Opp. 15-17. But "a

plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Brodsky*, 445 F. Supp. 3d at 133-34; *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012) (same). The Complaint contains no such allegations here. *See* Compl. ¶¶ 204-10. Count VI must be dismissed.

Next, because "[c]onspiracy is not an independent tort," Count XI must be dismissed along with the defective underlying claims. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994); Mot. 25. The Complaint must "clearly allege specific action on the part of each defendant that corresponds to the elements of a conspiracy cause of action." *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003). It does not do so. In their Opposition, Plaintiffs merely reiterate that Microsoft acquired and invested in GitHub and together launched Copilot. *See* GH/MSFT Opp. 22. But Plaintiffs fail to explain how such acts are unlawful or in furtherance of any unlawful acts. Plaintiffs' bare assertion that Defendants "did so to create, sell, and market Copilot in furtherance of the unlawful conduct," GH/MSFT Opp. 22 (citing Compl. ¶ 243), is a classic conclusory allegation. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Plaintiffs' failure to respond to GitHub and Microsoft's motion to dismiss the declaratory relief request also constitutes abandonment, requiring dismissal of Count XII with prejudice. *Brodsky*, 445 F. Supp. 3d at 122.

### VIII. PLAINTIFFS CANNOT PROCEED ANONYMOUSLY.

Plaintiffs have not established a basis to proceed anonymously. Throughout numerous e-mails, letters, and video calls across several months, Plaintiffs' counsel never disclosed the existence or contents of the three nasty emails sent to Mr. Butterick as their basis for proceeding anonymously. The first time they were disclosed was in connection with the Oppositions. Hurst Decl. ¶ 7. While these communications are deplorable, it also seems apparent that they are not personal threats of harm but instead were sent in response to Mr. Butterick's highly public attempts to solicit plaintiffs for this lawsuit. *Compare* Hurst Decl. Ex. 1 (Butterick newsletter) and Ex. 2 (Butterick website) *with* ECF Nos. 68-1 (Oct. 27, 2022 email), 68-2 (Nov. 4, 2022

1  email), 68-3 (Nov. 5, 2022 email).  None of the Plaintiffs offer declarations explaining how and
2  why they felt personally threatened by these communications, nor that they would refuse to
3  proceed unless permitted to remain anonymous.  Nor, contrary to Plaintiffs' suggestion, did
4  GitHub and Microsoft agree to proceed so long as the names were disclosed under protective
5  order.  *See* OpenAI Opp. 10; ECF No. 68 ¶ 7.  Defendants specifically objected to that approach.
6  *See* Hurst Decl. Ex. 5.  And that issue is now the subject of a separate motion.  ECF 71.

Unfortunately, the types of nasty messages at issue here are a fact of modern life in the era of internet "trolls."  While disgraceful, they do not justify proceeding under a pseudonym.  *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1072 (9th Cir. 2000); Mot. 7 n.*.  They do not threaten harm to the Plaintiffs.  One of them was signed by its author.  Another was sent before this lawsuit was filed.  "[P]eople say things anonymously on the internet that they would never say in another context and have no intention of carrying out."  *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1045 (9th Cir. 2010).  There is no indication that Plaintiffs face real threats of violence over a lawsuit concerning software code.  Indeed, there is not even any indication that Mr. Butterick himself felt threatened, as he decided to be listed on public pleadings—his physical and email addresses included—after receiving these emails.

Balanced against Plaintiffs' assertions, moreover, is the strong public interest in open courts.  "Public access to [plaintiffs' identities] is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings."  *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)).  That is why "[t]he threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity."  *Id.* at 186.  Only additional factors, such as "the special vulnerability of … child-plaintiffs," could justify anonymity.  *Id.*  Plaintiffs do not show such additional factors here.

**CONCLUSION**

The Court should grant the motion to dismiss and dismiss the Complaint in its entirety.

| | |
|---|---|
| Dated: April 6, 2023 | Orrick, Herrington & Sutcliffe LLP<br><br>By:    */s/ Annette L. Hurst*<br>ANNETTE L. HURST<br>Attorneys for Defendants<br>GitHub, Inc. and Microsoft Corp. |