1  MICHAEL A. JACOBS (SBN 111664)
   MJacobs@mofo.com
2  JOSEPH C. GRATZ (SBN 240676)
   JGratz@mofo.com
3  TIFFANY CHEUNG (SBN 211497)
   TCheung@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone:     (415) 268-7000
6  Facsimile:     (415) 268-7522
   [CAPTION PAGE CONTINUED ON NEXT PAGE]
7
   Attorneys for Defendants OPENAI, INC., a Delaware nonprofit
8  corporation, OPENAI, L.P., a Delaware limited partnership,
   OPENAI GP, L.L.C., a Delaware limited liability company,
9  OPENAI STARTUP FUND GP I, L.L.C., a Delaware limited
   liability company, OPENAI STARTUP FUND I, L.P., a
10 Delaware limited partnership, OPENAI STARTUP FUND
   MANAGEMENT, LLC, a Delaware limited liability company
11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15

16 | J. DOE 1 and J. DOE 2, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-06823-JST
   |                                                                                     | Case No. 4:22-cv-07074-JST

17 | Plaintiffs, | Hon. Jon S. Tigar

18 | v. | **CLASS ACTION**

19 | GITHUB, INC., a Delaware corporation; MICROSOFT CORPORATION, a Washington corporation; OPENAI, INC., a Delaware nonprofit corporation; OPENAI, L.P., a Delaware limited partnership; OPENAI GP, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND GP I, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND I, L.P., a Delaware limited partnership; OPENAI STARTUP FUND MANAGEMENT, LLC, a Delaware limited liability company, | **DEFENDANTS OPENAI, INC., OPENAI, L.P., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I, L.L.C., OPENAI STARTUP FUND I, L.P. AND OPENAI STARTUP FUND MANAGEMENT, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

20 | | 

21 | | 

22 | | 

23 | | Date:      May 4, 2023
   |                  | Time:      2:00 p.m.
24 | | Courtroom: 6

25 | Defendants. | 

26 | w | 

27

28

ROSE S. LEE (SBN 294658)
RoseLee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone:    (213) 892-5200
Facsimile:    (213) 892-5454

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .......................................................................................................... 1

II.  ARGUMENT ................................................................................................................ 1

A.   Plaintiffs Cannot Allege Any Injury-in-Fact to Establish Article III Standing ....... 1

B.   Plaintiffs Should Not Be Permitted to Proceed Anonymously ................................. 3

C.   Plaintiffs Fail to Satisfy the Notice Requirement of Rule 8(a) ................................ 4

D.   The Copyright Act Preempts Several State Law Causes of Action .......................... 4

E.   Plaintiffs Fail to Plead a DMCA Claim Under Section 1202(b) .............................. 5

   1.   Plaintiffs Have Not Identified The Works In Which They Have An Interest From Which CMI Was Removed, Or Identify What the Removed CMI Was ......................................................................................... 5

   2.   Plaintiffs Cannot Meet 1202(b)'s "Double-Scienter" Requirement ........... 6

   3.   Plaintiffs Have Failed to Allege Removal from Identical Works ................ 8

F.   Plaintiffs' Remaining State Law Claims Fail ........................................................... 9

   1.   Plaintiffs' Breach of Contract Claim Fails .................................................. 9

   2.   Plaintiffs Have Failed to State a Claim for Unjust Enrichment ................. 10

   3.   Plaintiffs Have Failed to State an Unfair Competition Claim .................... 12

   4.   Plaintiffs Fail to State a Claim for Negligence .......................................... 12

   5.   Plaintiffs Fail to Plead a Civil Conspiracy Claim ...................................... 14

   6.   Plaintiffs Do Not Seriously Dispute That All Other Claims (Counts I (§ 1202(a)), III, V, IX, and XII) Should Be Dismissed ............................. 15

III. CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alan Ross Mach. Corp. v. Machinio Corp.*,
No. 17-CV-3569, 2019 WL 1317664 (N.D. Ill. Mar. 22, 2019)............................................... 6

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) ........................................................................................... 2, 3, 5

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015).................................................................................................. 10

*B.L. v. Fetherman*,
No. CV223471JMVJSA, 2023 WL 1818402 (D.N.J. Feb. 8, 2023) ........................................ 4

*Baiul-Farina v. Lemire*,
804 F. App'x 533 (9th Cir. 2020) ........................................................................................... 11

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .................................................................................. 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................... 10, 11

*Bounce Exch., Inc. v. Zeus Enter., Ltd.*,
No. 15-cv-3268 (DLC), 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015).................................... 9

*Bruton v. Gerber Prods. Co.*,
703 Fed. App'x 470 (9th Cir. 2017)........................................................................................ 10

*Cheramie v. HBB LLC*,
545 Fed. App'x 628 (9th Cir. 2013) ........................................................................................ 11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 409 (2013) .............................................................................................................. 1, 2

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022)................................................................................................... 3, 5

*Cook v. City of Fremont*,
No. 20-CV-02704-JCS, 2020 WL 6318712 (N.D. Cal. Oct. 28, 2020)................................... 6

*Crown Cell Inc. v. Ecovacs Robotics, Inc.*,
No. 21-cv-07890-SI, 2022 WL 17082670 (N.D. Cal. Nov. 18, 2022) ................................... 11

*Davidson v. Sprout Foods Inc.*,
No. 22-cv-01050-RS, 2022 WL 2668481 (ND. Cal. July 11,2022) ....................................... 11

*Diamondback Indus., Inc. v. Repeat Precision, LLC*,
   No. 4:18-CV-902-A, 2019 WL 5842756 (N.D. Tex. Nov. 7, 2019) .......................................... 8

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*,
   596 F.3d 1036 (9th Cir. 2010) ...................................................................................................... 3, 4

*ESG Capital Partners, L.P. v. Stratos*,
   828 F.3d 1038 (9th Cir. 2016) ........................................................................................................ 10

*Ewing v. Encor Solar, LLC*,
   No. 18-cv-2247-CAB-MDD, 2019 WL 277386 (S.D. Cal. Jan. 22, 2019) .............................. 4

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................................................ 2, 5

*Faulkner Press, LLC v. Class Notes, LLC*,
   756 F. Supp. 2d 1352 (N.D. Fla. 2010) .......................................................................................... 9

*Fischer v. Forrest*,
   286 F. Supp. 3d 590 (S.D.N.Y. 2018) ............................................................................................. 9

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) .......................................................................................... 5

*GC2 v. Int'l Game Tech., IGT*,
   391 F. Supp. 3d 828 (N.D. Ill. 2019) .......................................................................................... 8, 9

*Hameed v. IHOP Franchising LLC*,
   520 Fed. App'x 520 (9th Cir. 2013) ............................................................................................... 11

*Huynh v. Quora, Inc.*,
   508 F. Supp. 3d 633 (N.D. Cal. 2020) ..................................................................................... 13, 14

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......................................................................................... 5

*ICONICS, Inc. v. Massaro*,
   192 F. Supp. 3d 254 (D. Mass. 2016) ............................................................................................. 9

*In re iPhone Application Litig.*,
   No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................... 6

*J'Aire Corp. v. Gregory*,
   24 Cal. 3d 799 (1979) ............................................................................................................... 13, 14

*Jacobsen v. Katzer*,
   535 F.3d 1373 (Fed. Cir. 2008) ....................................................................................................... 5

*Jacobsen v. Katzer*,
   609 F. Supp. 2d 925 (N.D. Cal. 2009) ........................................................................................... 6

*Jones v. Ghaly*,
    No. 21-CV-05828-JSW, 2022 WL 1128680 (N.D. Cal. Apr. 15, 2022),
    appeal pending, No. 22-15749 (docketed May 17, 2022) ....................................................... 15

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) ................................................................................................ 11

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ................................................................................................... 5

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973) .................................................................................................................. 5

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ................................................................................................... 2

*McAfee v. Francis*,
    No. 5:11-CV-00821-LHK, 2011 WL 3293759 (N.D. Cal. Aug. 1, 2011) ....................... 10, 15

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
    629 F.3d 928 (9th Cir. 2010) ..................................................................................................... 8

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295 (3rd Cir. 2011) ..................................................................................................... 8

*Quinones v. Szorc*,
    771 F.2d 289 (7th Cir. 1985) .................................................................................................... 15

*Rogers v. Postmates Inc.*,
    No. 19-cv-05619-TSH, 2020 WL 1032153 (N.D. Cal. Mar. 3, 2020) ....................................... 4

*Sanchez v. Nuture, Inc.*,
    No. 21-cv-08566-EJD, 2022 WL 4097337 (N.D. Cal. Sept. 27, 2022) ................................... 11

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
    No. SACV 11-01197-CJC(ANx), 2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) ................. 12

*Software Freedom Conservancy, Inc. v. Vizio, Inc.*,
    No. 821CV01943JLSKES, 2022 WL 1527518 (C.D. Cal. May 13, 2022) ............................. 9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 3d 942 (S.D. Cal. 2014) ....................................................................... 3, 12, 13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .................................................................................................................. 5

*Stevens v. CoreLogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) ..................................................................................................... 7

*Tenn. Elec. Power Co. v. Tenn. Valley Auth.*,
 306 U.S. 118 (1939) ................................................................................................ 5

*Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*,
 No. 18 C 5369, 2019 WL 2208435 (N.D. Ill. May 22, 2019) ................................. 6

*Uzuegbunam v. Preczewski*,
 141 S. Ct. 792 (2021) ............................................................................................. 5

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
 43 F.4th 1313 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 736 (2023) ...................... 7

*Witriol v. LexisNexis Grp.*,
 No. 05-CV-02392-MJJ, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) .................. 12

*In re Zappos.com*,
 888 F.3d 1020 (9th Cir. 2018) ............................................................................... 2

**Constitution, Statutes, and Rules**

U.S. Const. art. III ................................................................................................. 1, 5

17 U.S.C. § 301 ......................................................................................................... 2

17 U.S.C. §§ 1201-1205 (Digital Millennium Copyright Act ("DMCA")) ......................... *passim*

Fed. R. Civ. P.
 8(a) ....................................................................................................................... 4
 12(b)(6) ................................................................................................................. 6

1   **I.      INTRODUCTION**

2           Plaintiffs essentially concede that four of their claims should be dismissed, and that a fifth

3   should be partially dismissed.  As to Plaintiffs' remaining claims, Plaintiffs' opposition confirms

4   that dismissal is appropriate.  None of Plaintiffs' cited cases can change the fundamental problem

5   with Plaintiffs' claims:  That they have not plausibly alleged that Codex or Copilot has ever

6   output any of Plaintiffs' code, or that it is reasonably certain that Plaintiffs' code will be output in

7   the future.  Nor have they plausibly alleged any special relationship or contract between OpenAI

8   and Plaintiffs.  Plaintiffs' Complaint should therefore be dismissed in its entirety.

9   **II.     ARGUMENT**

10          **A.      Plaintiffs Cannot Allege Any Injury-in-Fact to Establish Article III Standing**

11          Plaintiffs don't dispute that they must allege an injury that is "concrete and particularized"

12  and not "conjectural or hypothetical."  (Pls.' Opp. (Dkt. No. 67) ("Opp.") at 4.)  But Plaintiffs

13  haven't pointed to any allegations in the Complaint that Copilot or Codex reproduced any of *their*

14  code.  (*Id.* at 6-9 (not pointing to any allegations specific to Plaintiffs' code).)  Instead, they argue

15  that they have shown an "imminent and significant" injury because "it is a virtual certainty" that

16  their code will be reproduced without copyright notices or attribution at some unspecified point in

17  the future.  (*Id.* at 8.)  But nothing in the Complaint suggests that is true.

18          Plaintiffs rely on the "number of times users may use Copilot."  (*Id.*)  Given those

19  numbers, Plaintiffs hypothesize that their code "can be output at any time."  (*Id.*)  But that is

20  speculation, and speculation is insufficient to confer standing.  *See Clapper v. Amnesty Int'l USA*,

21  568 U.S. 409, 414 (2013) (plaintiffs failed to allege standing because a speculative chain of

22  possibilities based on potential future surveillance was not enough to plausibly allege a "certainly

23  impending" injury).  (*See also* OpenAI's Mot. (Dkt. No. 53) ("Mot.") at 5-6 (citing cases).)

24          Plaintiffs also point to their allegations that GitHub announced that "about 1% of the time,

25  a suggestion [Output] may contain some code snippets longer than ~15-characters that matches

26  code from the training data" and after enough tries, Plaintiffs' code "can be output."  (Compl.

27  ¶ 90 (cleaned up); Opp. at 3.)  That only alleges that *some* preexisting code was included in an

28  output *1%* of the time.  It doesn't mean that Copilot (and therefore Codex) is reasonably certain to

1    reproduce *the Plaintiffs'* code—and it is only the Plaintiffs' code that matters for standing.

2    (Mot. 5-6.)  Nowhere in the Complaint have Plaintiffs alleged what type of code they have

3    published or explained how likely it would be for third-party users of Codex and Copilot to

4    generate Plaintiffs' code as their output.  Nor have Plaintiffs alleged that Codex or Copilot is

5    equally likely to output all types of code—or, if not, what types of code are more likely to be

6    output.  Without these facts, Plaintiffs' purported threat of future harm is insufficient to establish

7    that this injury is "certainly impending" or that there is a "substantial risk [] the harm [would]

8    occur" to satisfy the injury-in-fact requirement for standing.  *See Clapper*, 568 U.S. 409 at

9    414 n.5 (holding that plaintiffs lack standing when risk of potential surveillance relied on

10   "speculation about the unfettered choices made by independent actors not before the court")

11   (cleaned up); *In re Zappos.com*, 888 F.3d 1020, 1027 (9th Cir. 2018) (stating that plaintiff alleged

12   a credible threat of impending harm stemming from the theft of a laptop containing unencrypted

13   personal data but that such "threat would have been 'far less credible'" if plaintiffs "sued based

14   on the risk that it would be stolen at some point in the future").

15          Plaintiffs also argue that they have alleged a concrete injury based on "a common law

16   right of authors and creators to maintain control of the fruits of their creative labor."  (Opp. at 5.)

17   But common law copyright was long ago preempted by Section 301 of the Copyright Act.  *See*

18   *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (recognizing that Section 301

19   "preempt[s] and abolish[es] any rights under the common law").  Plaintiffs therefore cannot rely

20   on common law copyright to establish standing.

21          None of Plaintiffs' cited cases are to the contrary.  (*See* Opp. at 8.)  In *In re Facebook,*

22   *Inc., Consumer Privacy User Profile Litigation*, the court rejected plaintiffs' theory of standing

23   based on risk of future harm as "too speculative" where plaintiffs alleged that "Facebook's

24   dissemination of their personal information increased the risk that they would become victims of

25   identity theft."  402 F. Supp. 3d 767, 784 (N.D. Cal. 2019).  Instead, the court found standing

26   based on an injury to plaintiffs' right to privacy stemming from "Facebook's widespread

27   disclosure of [plaintiffs'] sensitive information" that had been previously shared only with a

28   limited audience (plaintiffs' Facebook "friends").  *Id.*  Similarly, the plaintiffs in *In re Apple Inc.*

1    *Device Performance Litigation* did not allege a risk of future harm; rather, plaintiffs alleged that

2    all putative class members had already experienced harm in the form of slowed performance on

3    their iPhones after Apple pushed software updates to their devices.  50 F.4th 769, 782 (9th Cir.

4    2022).  Likewise, in *Clemens v. ExecuPharm Inc.*, the court concluded that the plaintiff had

5    standing to bring contract and tort claims against her employer for a data breach because there

6    was a "substantial risk" of identity theft or fraud when plaintiff had alleged that her data had

7    *already* been published on the dark web by a "a known hacking group."  48 F.4th 146, 158-59 (3d

8    Cir. 2022).  Here, by contrast, Plaintiffs have not alleged that Copilot or Codex output any of

9    Plaintiffs' personal information.  Plaintiffs' reliance on *In re Sony Gaming Networks and*

10   *Customer Data Security Breach Litigation* is also misplaced.  In *Sony Gaming Networks*,

11   Plaintiffs alleged that their PII was not only collected, but also wrongfully disclosed.  996 F.

12   Supp. 2d 942, 961-62 (S.D. Cal. 2014).  Here, however, Plaintiffs have not alleged that any of

13   their PII has been wrongfully disclosed.

14           Because Plaintiffs have not alleged the type of imminent and concrete injury necessary to

15   confer standing, all of their claims should be dismissed.

16           **B.      Plaintiffs Should Not Be Permitted to Proceed Anonymously**

17           Plaintiffs do not meet the standard for proceeding anonymously.  (*See* Mot. at 6

18   (explaining the relevant standard)).  In arguing otherwise, Plaintiffs rely on threats received by

19   counsel.  (Opp. at 10.)  While threats of physical harm can justify proceeding anonymously,

20   Plaintiffs' fear of harm must be "reasonabl[e]."  *Doe v. Kamehameha Sch./Bernice Pauahi Bishop*

21   *Estate*, 596 F.3d 1036, 1044 (9th Cir. 2010).  To determine whether anonymity is appropriate,

22   courts "view alleged threats in context and determine what the 'reasonable' person in the

23   plaintiffs' situation would fear."  *Id.*  Plaintiffs have not shown such reasonable fears here.

24           The Ninth Circuit's opinion in *Kamehameha Schools* is instructive.  There, the Ninth

25   Circuit examined whether threats of physical violence to Doe children justified allowing them to

26   proceed anonymously.  596 F.3d at 1042.  Despite concluding that the statements made were

27   "undoubtedly severe," the court found the plaintiffs' fears were unreasonable.  *Id.* at 1042-45.  In

28   so holding, the court recognized that "many times people say things anonymously on the internet

1   that they would never say in another context and have no intention of carrying out." *Id.* at 1045;

2   *see also B.L. v. Fetherman*, No. CV223471JMVJSA, 2023 WL 1818402, at *4 (D.N.J. Feb. 8,

3   2023) ("vague references to some members of the public's 'pushback' and 'anger' with Plaintiffs

4   for filing th[e] lawsuit amounts to mere frustration rather than a credible risk of harm").

5   Similarly, Plaintiffs have not demonstrated that their fears are reasonable here.

6           **C.      Plaintiffs Fail to Satisfy the Notice Requirement of Rule 8(a)**

7           Plaintiffs do not dispute that they must allege facts particularized to each defendant, rather

8   than lump them all together.  (*See* Opp. at 11.)  Instead, they contend that they have met their

9   burden by pleading an agency relationship.  (*Id.* at 12.)  They haven't:  Plaintiffs' conclusory

10  statements about the "control embodied in the corporate structure" and the "management and

11  direction of OpenAI" (*id.*) are insufficient to establish agency.  *See Rogers v. Postmates Inc.*,

12  No. 19-cv-05619-TSH, 2020 WL 1032153, *4 (N.D. Cal. Mar. 3, 2020) ("nebulous allegations"

13  that "Defendant, either directly or through one or more intermediaries acting as its agent(s) or

14  sub-agent(s)" sent a text "do not support a plausible inference that [defendant] exercised any

15  control of the sender of the text necessary to establish an agency relationship"); *Ewing v. Encor*

16  *Solar, LLC*, No. 18-cv-2247-CAB-MDD, 2019 WL 277386, at *7 (S.D. Cal. Jan. 22,

17  2019) (plaintiff failed to satisfy pleading standards where the complaint made "confusing

18  allegations regarding the role each of the defendants played in the purported scheme, often using

19  defendants' names interchangeably and switching the theory of control" and that "such

20  allegations are insufficient to establish vicarious liability").  Claims against the OpenAI Entities

21  other than OpenAI LP and OpenAI, Inc. should be dismissed on that basis alone.

22          **D.      The Copyright Act Preempts Several State Law Causes of Action**

23          Plaintiffs do not separately address OpenAI's preemption argument, and instead, refer to

24  their Opposition to Defendants GitHub and Microsoft's (collectively, "Microsoft") Motion to

25  Dismiss to argue that their state and common law claims are not preempted by the Copyright Act.

26  (Opp. at 20-21 (referencing Pls.' Opp. to Microsoft Mot. to Dismiss (Dkt. No. 66) ("Microsoft

27  Opp.").))  Similarly, OpenAI refers to the preemption arguments made in Microsoft's Reply.

28

1

E.      **Plaintiffs Fail to Plead a DMCA Claim Under Section 1202(b)**

2

1.      **Plaintiffs Have Not Identified The Works In Which They Have An Interest From Which CMI Was Removed, Or Identify What the Removed CMI Was**

3

4

Plaintiffs spend much of their opposition arguing that a 1202 claim is different from a

5

copyright infringement claim, and that a copyright registration is not required for DMCA claims.

6

(Opp. at 13-15, 19.)  That is true, but Plaintiffs still must identify some work in which *they* have

7

some interest from which CMI was supposedly removed, as well as the CMI at issue.  (Mot. at

8

10-11).  *See also* 17 U.S.C. § 1202(c) (defining CMI as "information conveyed in connection

9

with copies or phonorecords of *a work*") (emphasis added); *Free Speech Sys., LLC v. Menzel*,

10

390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (dismissing DMCA claim and finding copyright

11

owner failed to provide "any facts to identify which photographs had CMI removed or to describe

12

what the removed or altered CMI was").  Plaintiffs haven't done so.  The paragraphs that

13

Plaintiffs cite from the Complaint (Opp. at 15) generally list available licenses on GitHub (Compl.

14

¶ 34, n.4), state in conclusory manner that a Codex output does not include a Copyright Notice or

15

License Terms (*id.* ¶ 56), and discuss code from a textbook that does not belong to a named

16

Plaintiff (*id.* ¶ 77).  Allegations regarding other peoples' code are insufficient to state a DMCA

17

claim.  *Free Speech Sys.*, 390 F. Supp. 3d at 1175.

18

Plaintiffs also refer to the section of their Opposition on standing to argue that whether

19

Plaintiffs have identified the relevant work from which CMI was removed is the "incorrect

20

inquiry."  (Opp. at 19.)  But even if Plaintiffs had adequately alleged the type of injury that

21

confers Article III standing (which they haven't), Plaintiffs have not shown that that would be

22

enough under the DMCA.  (*See id.* at 4-9 (citing no DMCA Section 1202 cases in which plaintiffs

23

did not identify specific works)[1].)  For example, Plaintiffs claim that they have alleged standing

24

25

26

27

[1] The vast majority of cases Plaintiffs cite in Section III.A of their Opposition do not pertain to the DMCA.  *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022) (not DMCA case); *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (same); *Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, 306 U.S. 118 (1939) (same); *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) (same); *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) (same); *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) (same); *In re Facebook*, 402 F. Supp. 3d at 786 (same); *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) (same); *In re Apple*, 50 F.4th at 781-82 (same); *Clemens v. ExecuPharm*

28

1    by pointing to potential deprivation of "attribution . . . future career opportunities and increasing

2    reputation and authority of the author."  (*Id.* at 6.)  The injury contemplated by the DMCA,

3    however, is not to a plaintiff's *reputation*, but to *the work*—*i.e.*, removal or alteration of CMI that

4    will induce, enable, facilitate, or conceal an *infringement of copyright*.  *Cf. Alan Ross Mach. Corp.*

5    *v. Machinio Corp.*, No. 17-CV-3569, 2019 WL 1317664, at *4 (N.D. Ill. Mar. 22, 2019) (granting

6    motion to dismiss because plaintiff failed to allege injury associated with violation of DMCA,

7    instead alleging only "confusion in the marketplace").

8         Plaintiffs must therefore allege the particular work from which CMI was supposedly

9    removed, and they haven't done that.  Plaintiffs do assert in their brief that "Codex often

10   reproduces exact copies of Plaintiffs' code."  (Opp. at 15-16.)  But Plaintiffs have not identified *in*

11   *their Complaint* a single instance in which Codex distributed any copies of Plaintiffs' works.

12   What matters is the Plaintiffs' allegations in their Complaint, not their lawyer's argument in their

13   briefs.  Because Plaintiffs cannot point to any allegation that Codex reproduces the Plaintiffs'

14   code, their new argument in opposition cannot save them from dismissal.  *Cook v. City of*

15   *Fremont*, No. 20-CV-02704-JCS, 2020 WL 6318712, at *8 n.2 (N.D. Cal. Oct. 28, 2020) ("The

16   Court may not consider facts asserted for the first time in Cook's opposition brief.").

17              **2.    Plaintiffs Cannot Meet 1202(b)'s "Double-Scienter" Requirement**

18        Plaintiffs do not dispute that they must allege both that OpenAI (1) intentionally removed

19   or altered CMI or distributed CMI knowing that the CMI has been removed or altered *and* (2) did

20   so "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or

21   conceal an infringement."  (Opp. at 16-17, 19-20.)  *See* 17 U.S.C. § 1202(b)(3).  Plaintiffs have

22

23   *Inc.*, 48 F.4th 146 (3d Cir. 2022) (same); *In re iPhone Application Litig.*, No. 11-MD-02250-
     LHK, 2011 WL 4403963, at *4 (N.D. Cal. Sept. 20, 2011) (same).  Only two cases pertain to the
24   DMCA, but in both, unlike here, the plaintiffs identified their specific copyrighted works from
     which CMI was allegedly removed.  *See Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 934 (N.D. Cal.
25   2009) (plaintiff "allege[d] that the information contained in the JMRI Project Decoder Definition
     Files constituted 'copyright management information' . . . and that by removing the information
26   and making copies of the files, Defendants violated 17 U.S.C. § 1201(b)'"); *Ubiquiti Networks,*
     *Inc. v. Cambium Networks, Inc.*, No. 18 C 5369, 2019 WL 2208435, at *3 (N.D. Ill. May 22,
27   2019) (plaintiff identified copyrighted works as Ubiquiti's M-series firmware and court still
     dismissed complaint under Rule 12(b)(6) for failure to provide defendants with adequate notice).

28

1   not plausibly alleged either prong of the DMCA's scienter requirement.

2       As to OpenAI's knowledge that CMI is removed (the first scienter requirement), Plaintiffs

3   rely on unfounded *inferences* of knowledge drawn from a GitHub blog post reporting that 1% of

4   the time, Copilot (and therefore Codex) generates snippets of code similar to publicly available

5   code that it learned from—and did so without generating copyright notices or open source license

6   terms.  (Opp. at 19-20.)  But even that blog post contradicts Plaintiffs' claim that OpenAI "knew

7   that *each time* Copilot was being used, it was reproducing copied code without CMI."  (*Id*. at 20

8   (emphasis added).)  In any event, as discussed in OpenAI's Motion, Plaintiffs point only to

9   Codex's abilities to generate common textbook programming functions that Plaintiffs have not

10  alleged are protectible expression (*i.e.*, not merger or fair use) and to which Plaintiffs do not own

11  the copyrights.  (Mot. at 11-12.)  OpenAI had no reason to know of any substantial risk of

12  copyright infringement or of any reasonably certain future infringement of Plaintiffs' works.

13      As to OpenAI's grounds to know that Codex or Copilot would "induce, enable, facilitate,

14  or conceal" copyright infringement (the second scienter requirement), Plaintiffs point to GitHub

15  Copilot Terms stating that "GitHub does not claim any rights in Suggestions, and [users] retain

16  ownership of and responsibility for [their] Code, including Suggestions," which Plaintiffs assert

17  induces infringement.  (Opp. at 16-17.) But Plaintiffs have not plausibly alleged that those terms

18  are attributable to OpenAI, nor have they alleged copyright infringement at all.  Furthermore,

19  under Section 1202(b), it must be the removal or alteration of CMI that will "induce, enable,

20  facilitate, or conceal" copyright infringement, not a provision of terms of service.

21      Moreover, Plaintiffs do not allege a substantial risk of copyright infringement.  A general

22  possibility of encouraging infringement by removing CMI doesn't meet Section 1202(b)'s second

23  scienter requirement.  *See Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673-74 (9th Cir. 2018) (a

24  mere showing of CMI removal, leading to the general possibility that an infringer could use the

25  photos undetected, is insufficient because "Section 1202(b) must have a more specific application

26  than the universal possibility of encouraging infringement"); *Victor Elias Photography, LLC v.*

27  *Ice Portal, Inc*., 43 F.4th 1313, 1325 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 736 (2023) (citing

28  *Stevens*, affirming summary judgment that plaintiff failed to meet burden of coming forward with

1   sufficient evidence demonstrating § 1202(b)'s second scienter requirement).

2          Plaintiffs cite *GC2 v. International Game Technology, IGT*, 391 F. Supp. 3d 828 (N.D. Ill.

3   2019), as an example of a case with "similar allegations" that were deemed "sufficient under

4   Rule 8." (Opp. at 17.)  But in *GC2*, "*each time* [defendants] updated or launched a game . . . they

5   reuploaded the *entire* game library thereby causing the unlawfully removed or manipulated [CMI]

6   to again be distributed to the public." 391 F.3d at 842 (emphasis added).  Here, unlike in *GC2*,

7   the entirety of Codex's training data is not reproduced each time there is an output.  In fact,

8   Plaintiffs have not shown that their particular works have ever been or are reasonably certain to

9   be reproduced by OpenAI, let alone reproduced with CMI removed.

10          Plaintiffs' other cited cases are also of no help.  (Opp. at 14-15.)  *MDY Industries, LLC v.*

11   *Blizzard Entertainment, Inc.*, 629 F.3d 928 (9th Cir. 2010), involved Section 1201 (circumvention

12   of copyright protection systems) and not Section 1202, which is at issue here.  *See* 629 F.3d at

13   935.  Section 1201, unlike Section 1202, does not require that a violation be in furtherance of

14   copyright infringement.  *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302 n.8 (3rd Cir.

15   2011) ("However, unlike § 1201, § 1202 applies only when a defendant knows or has reasonable

16   grounds to know that the removal will 'induce, enable, facilitate, or conceal' an infringement.").

17   Plaintiffs cite *Diamondback Industries, Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019

18   WL 5842756 (N.D. Tex. Nov. 7, 2019) for the proposition that a Section 1202 claim is not an

19   action for copyright infringement.  (Opp. at 15.)  OpenAI agrees; a claim under Section 1202 is a

20   distinct claim, with distinct elements, from a claim for copyright infringement.  Plaintiffs have not

21   sufficiently pled these distinct elements.  (Mot. at 9-12.)  Plaintiffs also cite *Murphy* to argue that

22   fair use is not a defense to a DMCA claim.  (Opp. at 14-15.)  Under *Murphy*, however, a

23   defendant intending to aid fair use would *not* violate Section 1202 because the defendant would

24   not have the requisite intent to "induce, enable, facilitate, or conceal an infringement." 17 U.S.C.

25   § 1202(b)(3).  And the appellate court in *Murphy* made clear that "those intending to make fair

26   use of a copyrighted work are unlikely to be liable under § 1202." *Murphy*, 650 F.3d at 302 n.8.

27          **3.     Plaintiffs Have Failed to Allege Removal from Identical Works**

28          In response to OpenAI's authority from the Ninth Circuit that they must allege removal of

1   CMI from identical copies (Mot. 9-10), Plaintiffs cite only to out-of-circuit cases that do not

2   support their position (Opp. at 17-18).  *See Bounce Exch., Inc. v. Zeus Enter., Ltd.*,

3   No. 15-cv-3268 (DLC), 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) (addressing whether terms

4   appearing in source code were CMI, not whether removal from non-identical copies falls under

5   § 1202); *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) (addressing whether

6   source code headers were CMI, not whether copy must be identical).  Plaintiffs claim, for

7   example, that *GC2* "rejected" OpenAI's argument.  (Opp. at 18.)  But it didn't.  In *GC2*, the

8   artwork at issue was used "in its entirety."  391 F. Supp. 3d at 843-44.  Indeed, the *GC2* court

9   explicitly distinguished *Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018), and *Faulkner

10  Press, LLC v. Class Notes, LLC*, 756 F. Supp. 2d 1352 (N.D. Fla. 2010), two cases in which

11  courts found no DMCA violation as a matter of law because the allegedly violative materials

12  reproduced only portions of the protected works.  *GC2*, 391 F. Supp. 3d at 843-44.  Here, similar

13  to *Fischer* and *Faulkner*, Plaintiffs point only to non-protectible snippets of code that have

14  allegedly been copied and concede that Copilot does not generate identical copies.  (*See* Mot. at

15  10.)  Plaintiffs have pled themselves out of court; their cited cases do not show otherwise.

16      **F.    Plaintiffs' Remaining State Law Claims Fail**

17          **1.    Plaintiffs' Breach of Contract Claim Fails**

18          The Opposition recites the elements of a breach of contract claim, but it does not point to

19  any factual allegations that satisfy its pleading obligations.

20          First, rather than address OpenAI Entities' actual position that Plaintiffs have not pled

21  which contract and which terms Defendants supposedly breached (Mot. at 13-14), Plaintiffs argue

22  that Defendants "do not dispute that the open-source licenses constitute a contract."  (Microsoft

23  Opp. at 19.)  But whether the open-source licenses *could* constitute a contract is beside the point.

24  As outlined in OpenAI's Motion, the Complaint vaguely alleges that Plaintiffs offer code under

25  various licenses and appends eleven of the most common open-source licenses.  (Mot. at 14.)  But

26  Plaintiffs never allege *which* license (if any) was breached, as required to state a claim.

27          Plaintiffs' cited authority does not say otherwise.  (Microsoft Opp. at 19.)  The court in

28  *Software Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 821CV01943JLSKES, 2022 WL

1527518, at *1 (C.D. Cal. May 13, 2022) ("*SFC*"), for example, found that the plaintiffs' breach of contract claim was not preempted by the Copyright Act and granted plaintiffs' motion to remand.  Nowhere did the court address the sufficiency of plaintiffs' breach of contract claim at the pleading stage.  *SFC* therefore does not establish that Plaintiffs have pled facts sufficient to allege the existence of a contract with OpenAI simply because the Complaint refers to licenses.

Second, Plaintiffs haven't pled the contractual provisions that OpenAI breached.  Instead, Plaintiffs allege generally that the "[m]ost common open-source licenses require attribution of the author, notice of their copyright, and a copy of the license," that all of "the Suggested Licenses [appended to the Complaint] include these requirements," and that Defendants, collectively, have violated those requirements.  (Microsoft Opp. at 12, citing Compl. ¶ 64.)  While Plaintiffs attach various open-source licenses to the Complaint, they do not say which allegations refer to which license.  Nor do Plaintiffs "specify the exact terms" of each "agreement."  *See McAfee v. Francis*, No. 5:11-CV-00821-LHK, 2011 WL 3293759, at *2 (N.D. Cal. Aug. 1, 2011).  Plaintiffs' blanket allegations do not state a claim for breach of contract against OpenAI.  *See McAfee*, at 2011 WL 3293759, at *2 (dismissing breach of contract claim because "[w]ithout pleading the essential terms of each agreement and more specific allegations as to breach, Plaintiffs fail to state breach of contract claims."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion").

## 2. Plaintiffs Have Failed to State a Claim for Unjust Enrichment

Plaintiffs argue that unjust enrichment is a standalone claim and that the Complaint sufficiently alleges the "benefits [obtained] from [OpenAI's] disregard of Plaintiff's licenses through Copilot" and lack of "adequate remedy at law."  (Opp. at 24.)  As explained in OpenAI's opening brief (Mot. at 17), courts construe unjust enrichment claims as a "quasi-contract claim for restitution," not as a standalone cause of action.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).[2]  But even if unjust enrichment is a cause of action, Plaintiffs have not

---

[2] To the extent *ESG Capital Partners, L.P. v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016), and *Bruton v. Gerber Products Co.*, 703 Fed. App'x 468, 470 (9th Cir. 2017), can be read to recognize a cause of action for unjust enrichment separate from a quasi-contract theory, other

1    plausibly alleged it.  First, "under California law, unjust enrichment claims cannot proceed when

2    the parties have a valid contract regarding the same subject matter."  *Hameed v. IHOP*

3    *Franchising LLC*, 520 Fed. App'x 520, 522 (9th Cir. 2013) (affirming dismissal of plaintiff's

4    unjust enrichment claim).  Accordingly, while plaintiffs "may plead inconsistent claims that

5    allege both the *existence* of an enforceable agreement and the *absence* of an enforceable

6    agreement," plaintiffs "are precluded from asserting a quasi-contract claim under the theory of

7    unjust enrichment" where "plaintiffs' breach of contract claim plead[s] the existence of an

8    enforceable agreement and their unjust enrichment claim d[oes] not deny the existence or

9    enforceability of that agreement."  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389-

10   90 (2012); *see also Cheramie v. HBB LLC*, 545 Fed. App'x 626, 628 (9th Cir. 2013) (plaintiff had

11   not pled unjust enrichment "because he does not dispute that a valid contract was formed").

12   Here, Plaintiffs have not denied the existence or enforceability of their licenses, and they

13   therefore have not stated an unjust enrichment claim.  (*See* Compl. ¶¶ 200-206.)

14          Second, Plaintiffs have not satisfied their own standard.  They claim that they must plead

15   only that OpenAI "received and unjustly retained a benefit at the plaintiff's expense."  (Microsoft

16   Opp. at 15 (quoting *ESG Capital*, 828 F.3d at 1038).)  The only allegation they point to in support

17   of their claim that OpenAI received a benefit is Paragraph 207 of the Complaint, which states in

18   full: "GitHub and OpenAI derive profit or other benefits from removal of attribution, copyright

19   notices, and license terms from Licensed Materials and reselling it as Output through Copilot."[3]

20   (*Id.*)  But Plaintiffs have not alleged any *facts* to identify what the supposed profit or other

21   benefits are, falling short of their burden to plausibly allege a claim.  *See Bell Atl.*, 550 U.S. at

22   555 ("Factual allegations must be enough to raise a right to relief above the speculative level" and

23

24   cases (including an unpublished Ninth Circuit case) have continued to hold the opposite.  *See*
     *Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020) ("Unjust enrichment is not a cause

25   of action under California law.") (cleaned up); *Davidson v. Sprout Foods Inc.*, No. 22-cv-01050-
     RS, 2022 WL 2668481, at *6 (ND. Cal. July 11,2022); *Crown Cell Inc. v. Ecovacs Robotics, Inc.*,

26   No. 21-cv-07890-SI, 2022 WL 17082670, at *4 (N.D. Cal. Nov. 18, 2022); *Sanchez v. Nuture,*
     *Inc.*, No. 21-cv-08566-EJD, 2022 WL 4097337, at *8 (N.D. Cal. Sept. 27, 2022).

27   [3] Plaintiffs mistakenly cite Paragraph 203.  (Opp. at 24.)  The correct citation should be to
     Paragraph 207 of the operative Complaint.

28

1  "a formulaic recitation of the elements of a cause of action will not do.").

2  **3.    Plaintiffs Have Failed to State an Unfair Competition Claim**

3       Plaintiffs do not dispute that if their DMCA and other statutory claims fail, so too does

4  their unfair competition claim.  (*See* Microsoft Opp. at 17.)  Instead, Plaintiffs focus only on

5  OpenAI's arguments that they do not have standing to bring a UCL claim because they do not

6  lack an adequate remedy at law.  (Opp. at 25; *see also* Microsoft Opp. at 17.)  To show an

7  inadequate remedy at law, Plaintiffs point to a single statement that generally alleges that their

8  injury "cannot fully be compensated or measured in money."  (Compl. ¶ 210; *see also* Opp. at

9  25.)  This general allegation is insufficient to state a claim for relief under the UCL.  *See*

10  *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No. SACV 11-01197-CJC(ANx), 2012 WL

11  13028094, at *2 (C.D. Cal. Apr. 4, 2012) (concluding that plaintiff's general allegation that "it

12  'has no adequate remedy at law'" was insufficient).

13  **4.    Plaintiffs Fail to State a Claim for Negligence**

14       Plaintiffs have not stated a claim for negligence for negligent handling of personal data.

15  Plaintiffs do not dispute that they have made the data at issue available *to the public*.  (Opp. at

16  21.)  Instead, Plaintiffs assert that because GitHub labels any "files [users] upload to [its] service"

17  as "personal data" under its privacy policy, a legal duty to prevent unauthorized access to

18  "personal data" arises (presumably, even if that personal data is already public).  (*Id.*)

19       As Plaintiffs' own cases recognize, a duty of care to prevent unauthorized access by third

20  parties extends only to users who share private, and often sensitive, personal information.  It

21  would be contrary to California law to expand the scope of this duty to information already

22  available to the public.  For example, in *Witriol v. LexisNexis Group*, on which Plaintiffs rely, the

23  court ruled that defendants owed plaintiffs a duty of care to prevent unauthorized access to

24  consumer reports and credit information.  No. 05-CV-02392-MJJ, 2006 WL 4725713, at *1,

25  8 (N.D. Cal. Feb. 10, 2006).  Similarly, *Bass v. Facebook, Inc.*, another case cited by Plaintiffs,

26  held that Facebook owed its users a duty of care because "some of the information [published on

27  Facebook] was private, and plaintiff plausibly placed trust in Facebook to employ appropriate

28  data security." 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019).  Likewise, in *In re Sony*, the court

1   found that defendant owed a legal duty to safeguard consumer information where personal

2   identifying information, including names, mailing addresses, email addresses, birthdates, credit

3   and debit card information, and login credentials, was accessed by unauthorized parties because

4   consumers entrusted this information to defendant as part of a commercial transaction.  996 F.

5   Supp. 2d at 955, 966.  Plaintiffs have not alleged sufficient facts to show that data of a private

6   nature has been disclosed through Codex or Copilot.

7        In addition, Plaintiffs essentially concede that they have failed to allege any redressable

8   injuries, aside from economic loss:  the Opposition does not even address OpenAI's arguments

9   regarding Plaintiffs' purported loss of control over identity, lost time, threat of future harm, and

10   privacy injuries.  (*See* Mot. at 23; Opp. at 21-23.)  Plaintiffs argue that the economic loss rule

11   does not apply because OpenAI supposedly has a "special relationship" to the Plaintiffs.  (Opp. at

12   23.)  But Plaintiffs have neither cited authority for finding a special relationship under these

13   circumstances, nor plausibly alleged that the balance of the six *J'Aire* factors supports the

14   existence of such a relationship.  (*Id*.)  *See J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979).

15        First, Plaintiffs have not satisfied the first factor because they have not alleged that they

16   shared PII with any OpenAI Entity.  *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 655 (N.D. Cal.

17   2020) (collecting cases) (first factor is met when plaintiffs share personal data with a company

18   with the understanding that the company will protect that data.); *see also id.* at 656 ("entrusting

19   PII to a company establishes a 'transaction intended to affect the plaintiff'") (quoting *J'Aire*,

20   24 Cal. 3d at 804).  Second, aside from conclusory allegations about alleged lost time to "cure

21   [the] harm to their privacy," Plaintiffs fail to demonstrate how it is foreseeable that they would

22   incur any *privacy* harm, given that their code was publicly available online.  (*See* Opp. at 23

23   (arguing instead that they would suffer harm if their licenses were not honored, without

24   identifying any harm to privacy)).  Third, with respect to the "degree of certainty that the plaintiff

25   suffered injury," Plaintiffs offer only generic allegations about lost time in the Complaint and

26   conclusory statements that their "injur[ies] would not happen unless [OpenAI] chose to train their

27   AIs on Plaintiffs' code."  (*See* Opp. at 23.)  Fourth, with respect to the closeness of the connection

28   between the *defendant*'s conduct and the injury suffered, Plaintiffs assert that this factor is met

1  because "*Defendants themselves* were the ones to offer the licenses." (*Id.* (emphasis added).)

2  Yet, as the Complaint makes clear, the Suggested Licenses were suggested by GitHub, not any

3  OpenAI Entity. (Compl. ¶¶ 19-20.)  Plaintiffs overlook the fifth factor entirely (the moral blame

4  attached to the defendant's conduct). (*See* Opp. at 23.)  Under the sixth factor (the policy of

5  preventing future harm), courts find this factor weighs in favor of a special relationship in a data

6  breach case because it "would encourage companies . . . to take better care to safeguard their

7  users' PII," and California and federal consumer protection statutes also reflect the same goal.

8  *Huynh*, 508 F. Supp. 3d at 658 (cleaned up).  Plaintiffs contend that this factor is "clearly

9  implicated" given "the rampant growth of AI products based on similar training." (Opp. at 23.)

10  Yet Plaintiffs do not provide any factual support to establish that any OpenAI Entity has disclosed

11  any PII that would implicate the policy of encouraging better safeguards for users' PII, as the

12  Complaint only references code made publicly available. (Compl. ¶¶ 19-20.)

13       Plaintiffs thus have not alleged that the *J'Aire* factors support the existence of a special

14  relationship sufficient to overcome the economic loss doctrine.  This claim should be dismissed.

15               **5.       Plaintiffs Fail to Plead a Civil Conspiracy Claim**

16       As an initial matter, the Opposition fails to address the fact that Plaintiffs cannot plead

17  civil conspiracy as an independent cause of action. (*See* Mot. at 24.)  Plaintiffs also fail to

18  address OpenAI's argument that "agents and employees of a corporation cannot conspire with

19  their corporate principal or employer where they act in their official capacities," nor can a

20  corporate parent and subsidiary conspire together. (*Id*. at 25.)  Plaintiffs' civil conspiracy claim

21  should be dismissed on those grounds alone.

22       In any event, Plaintiffs have not demonstrated that the allegations in the Complaint satisfy

23  the pleading standard courts impose to plead civil conspiracy.  As stated in the Motion,

24  "[P]laintiff must more clearly allege *specific action on the part of each defendant* that

25  corresponds to the elements of a conspiracy cause of action" and "*cannot indiscriminately allege

26  that conspiracies existed between and among all defendants*." (*Id.* at 24 (quoting *AccuImage

27  Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 947-48 (N.D. Cal. 2003) (emphasis

28  added).)  Plaintiffs claim they "specifically allege that Defendants have worked together to create

1   Copilot." (Opp. at 24.)  Those vague allegations, however, do not satisfy the substantial showing

2   required at the pleading stage, such as identifying the role of each Defendant in the formation of

3   the alleged conspiracy and the wrongful acts done by each Defendant.  (*See* Mot. at 24.)

4          Further, while Plaintiffs dispute that a heightened pleading standard applies for their civil

5   conspiracy claim, their only authority is *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985).

6   (*See* Opp. at 24, n.15.)  That case, however, does not involve a civil conspiracy claim under

7   California law, as Plaintiffs raise here, and is not controlling.

8                  **6.     Plaintiffs Do Not Seriously Dispute That All Other Claims (Counts I
                           (§ 1202(a)), III, V, IX, and XII) Should Be Dismissed**
9

10         With respect to Plaintiffs' claims under Section 1202(a) of the DMCA (Count I), for

11  tortious interference (Count III), for false designation of origin (Count V), and for violating the

12  CCPA (Count IX), Plaintiffs did not offer any argument in opposition to the OpenAI's motion to

13  dismiss.  (Opp. at 25, n.17.)  Instead, they ask only for leave to amend.  (*Id.*)  With respect to

14  Plaintiffs' declaratory relief claim (Count XII), Plaintiffs do not dispute that declaratory relief is

15  not an independent claim and merely argues in a heading without support that "Plaintiffs Have

16  Standing to Sue for Injunctive and Declaratory Relief."  (Opp. at 9.)  Nowhere else in their

17  Opposition do Plaintiffs address declaratory relief.

18         Because Plaintiffs failed to oppose OpenAI's arguments with respect to Plaintiffs' claims

19  under Section 1202(a) of the DMCA, for tortious interference, for false designation of origin, for

20  violating the CCPA, and for declaratory relief (*see* Mot. at 15-17, 19-21, 25), all of these claims

21  should be dismissed.  *See Jones v. Ghaly*, No. 21-CV-05828-JSW, 2022 WL 1128680, at *2

22  (N.D. Cal. Apr. 15, 2022), appeal pending, No. 22-15749 (docketed May 17, 2022) (finding

23  "Plaintiff's failure to oppose [Defendant's] arguments as a concession that those claims should be

24  dismissed"); *McAfee*, 2011 WL 3293759, at *2 ("By failing to oppose Defendant's motion to

25  dismiss on the merits, Plaintiffs essentially concede that they fail to state claims . . .").

26  **III.    CONCLUSION**

27         For these reasons, OpenAI's motion to dismiss should be granted.

28

| | |
|---|---|
| 1 | Dated: April 6, 2023 |
| 2 | |

MORRISON & FOERSTER LLP


By:   /s/ Joseph C. Gratz
       Joseph C. Gratz

MICHAEL A. JACOBS (SBN 111664)
MJacobs@mofo.com
JOSEPH C. GRATZ (SBN 240676)
JGratz@mofo.com
TIFFANY CHEUNG (SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:   (415) 268-7000
Facsimile:    (415) 268-7522

ROSE S. LEE (SBN 294658)
RoseLee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone:   (213) 892-5200
Facsimile:    (213) 892-5454

Attorneys for Defendants OPENAI, INC., a
Delaware nonprofit corporation, OPENAI,
L.P., a Delaware limited partnership,
OPENAI GP, L.L.C., a Delaware limited
liability company, OPENAI STARTUP
FUND GP I, L.L.C., a Delaware limited
liability company, OPENAI STARTUP
FUND I, L.P., a Delaware limited
partnership, OPENAI STARTUP FUND
MANAGEMENT, LLC, a Delaware limited
liability company