Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:        jsaveri@saverilawfirm.com
              czirpoli@saverilawfirm.com
              cyoung@saverilawfirm.com
              lkessler@saverilawfirm.com
              eabuchanan@saverilawfirm.com
              tmanfredi@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:    (323) 968-2632
Facsimile:    (415) 395-9940
Email:        mb@butcoricklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| J. DOE 1, et al.,<br><br>      Individual and Representative Plaintiffs,<br><br>      v.<br><br>GITHUB, INC., et al.,<br><br>                     Defendants. | Case Nos.  4:22-cv-06823-JST<br>4:22-cv-07074-JST<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:        September 14, 2023<br>Time:        2:00 p.m.<br>Courtroom:   6, 2nd Floor<br>Judge:       Hon. Jon Tigar |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ............................. 2

    A.    The Court's Order on Defendants' Prior Motion to Dismiss, ECF No. 95..2

    B.    Plaintiffs' FAC and New Allegations ............................................. 3

III.  ARGUMENT ...................................................................................... 4

    A.    Plaintiffs Plead Sufficient Facts for Standing Under Article III.................. 5

        1.    Plaintiffs Allege Injury-in-Fact .......................................... 5

    B.    Defendants' Motion Under Rule 12(b)(6) Should Be Denied ................... 11

        1.    Plaintiffs' Plead a DMCA Claim Under Sections 1202(b)(1) and 1202(b)(3) (Count 1) ............................................. 11

        2.    Plaintiffs Have (Once Again) Pled All Elements of a Section 1202(b) Violation .................................................. 13

        3.    Section 1202(b) Does Not Require Identicality ............................ 13

    C.    Plaintiffs Adequately Plead Their State Tort Claims................................. 16

        1.    Plaintiffs' California State Law Claims Are Not Preempted........... 16

        2.    Plaintiffs State a Claim for Intentional and Negligent Interference with Economic Relations (Counts 4 & 5) ........................ 18

        3.    Plaintiffs State a Claim for Unjust Enrichment (Count 6) .............. 20

        4.    Plaintiffs State a Claim Under California's Unfair Competition Law (Cal. Bus. & Profs. Code §§ 17200 *et seq.*) (Count 7).................... 22

        5.    Plaintiffs State a Claim for Negligence (Count 8).......................... 23

IV.   CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Artifex Software, Inc. v. Hancom, Inc.*, Case No. 16-cv-06982, 2017 WL 4005508
(N.D. Cal. Sep. 12, 2017)....................................................................... 11, 20, 22, 23

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S.
519 (1983) ........................................................................................................ 4

*Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033 (N.D. Cal. 2014) ...................................................... 22

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................... 24, 25

*Behr Process Corp. v. RPM Int'l*, No. SACV14156JLSDFMX, 2014 WL 12584385
(C.D. Cal. May 20, 2014) ................................................................................. 18

*Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys.,
Inc.*, No. C 04-05368 SI, 2006 WL 3218719 (N.D. Cal. Nov. 7, 2006)................................. 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................... 4

*Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268 (DLC), 2015 WL 8579023
(S.D.N.Y. Dec. 9, 2015) ................................................................................. 14, 15

*Buchholz v. Meyer Njus Tanick, PA,* 946 F.3d 855 (6th Cir. 2020).................................................... 9

*Byton N. Am. Co. v. Breitfeld*, No. CV-19-10563-DMG, 2020 WL 3802700 (C.D.
Cal. Apr. 28, 2020) ......................................................................................... 22

*Cappello v. Walmart Inc.*, 394 F. Supp.3 d 1015, 1023 (N.D. Cal. 2019) ....................................... 22

*ChromaDex, Inc. v. Elysium Health, Inc.,* No. SACV1602277CJCDFMX, 2017 WL
7080237 (C.D. Cal. Nov. 28, 2017) ..................................................................... 21

*Clapper v. Amnesty Int'l., USA*, 568 U.S. 398 (2013) ................................................9, 10

*Conley v. Gibson*, 355 U.S. 41 (1957).................................................................... 4

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) ......................................................... 23

*CRST Van Expedited, Inc. v. Werner Enters. Inc.*, 479 F.3d 1099 (9th Cir. 2007)......................... 20

*Design Basics, LLC v. WK Olson Architects, Inc.*, Case No. 17 C 7432, 2019 WL
527535 (N.D. Ill. Feb. 11, 2019) .........................................................................15

*Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL
5842756 (N.D. Tex. Nov. 7, 2019) ......................................................................13

PLAINTIFFS' OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS

*Doe 1 v. GitHub, Inc.*, Case No. 22-cv-06823, 2023 WL 3449131 (N.D. Cal. May 11, 2023) ..........................................................................................................*passim*

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) ............................................... 4, 9

*Dolls Kill, Inc. v. Zeetop Bus. Co.*, Case No. 22-cv-01463, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ............................................................................... 16

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016)............................ 21

*Experian Mktg. Sols., Inc. v. List Serv. Direct, Inc.*, No. SACV0901375CJCMLGX, 2010 WL 11595830 (C.D. Cal. Apr. 21, 2010)............................................... 11

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352 (N.D. Fla. 2010) .................15

*Firoozyle v. Earthlink Network*, 153 F. Supp. 2d 1115 (N.D. Cal. 2001)............................17

*Ford v. Shinseki*, 538 Fed. App'x 803 (9th Cir. 2013)....................................................11

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016) ............................ 12

*Frost-Tsuji Architects v. Highway Inn, Inc.*, Civil No. 13-00496 SOM/BMK, 2015 WL 263556 (D. Haw. Jan. 21, 2015) ............................................................ 16

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ............................................................... 16

*Fry v. Ancestry.com Operations Inc.*, No. 22-CV-140 JD, 2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) ............................................................................... 10

*Garcia v. Sony Comput. Entm't Am.*, LLC, 859 F. Supp. 2d 1056 (N.D. Cal. 2012) .................... 23

*ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) .................................. 14

*In re Bang Energy Drink Mktg. Litig.*, Case No. 18-CV_05758-JST, 2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ......................................................... 21

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................. 4

*Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561 (N.D. Cal. Mar. 26, 2019) ......................................................................................13

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) ............................................*passim*

*Jacobsen v. Katzer*, 609 F. Supp. 2d 925 (N.D. Cal. 2009) ............................................17

*Karter v. Epiq Sys., Inc.*, No. SACV2001385CJCKESX, 2020 WL 11272318 (C.D. Cal. Nov. 9, 2020) ...........................................................................11

*Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999).................................. 16

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) ........................................... 5

*Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006) ........................................... 17

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D. Ill. 2014) ........................................... 12

*Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, No. 22-CV-01847-CRB, 2022 WL 14813836 (N.D. Cal. Oct. 25, 2022) ........................................... 12

*Maloney v. T3 Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) ........................................... 17

*MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928 (9th Cir. 2010) ........................................... 13

*Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov. 25, 2003) ........................................... 13

*Merideth v. Chi. Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) ........................................... 12

*Microsoft Corp. v. Does 1-10*, Case No. C17-1911RSM, 2018 WL 263313 (W.D. Wa. Jan. 2, 2018) ........................................... 18

*Mollman v. Zeetop Bus. Co.*, No. CV 22–4128 (PA), 2022 WL 17207103 (C.D. Cal. Sep. 16, 2022) ........................................... 12

*Murphy v. Millennium Radio Grp.*, Civil Action No. 08-1743 MAS, 2015 WL 419884 (D.N.J. Jan. 30, 2015) ........................................... 13

*Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-cv-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020) ........................................... 4

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ........................................... 13

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007) ........................................... 22

*Pitchford v. Aelitis, SAS*, Case No. 8:12-cv-1897-T35-TGW, 2013 WL 12155928 (M.D. Fla. Apr. 11, 2013) ........................................... 18

*Software Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 8:21-cv-01943-JLS-KES, 2022 WL 1527518 (C.D. Cal. May 13, 2022) ........................................... 17

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................... 5, 6, 8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ........................................... 4

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ........................................... 6, 7, 8

*Vera Mona, LLC v. Dynasty Grp. USA LLC,* No. EDCV202615JGBKKX, 2021 WL
   3623297 (C.D. Cal. Apr. 15, 2021) ........................................................................ 25

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ............................ 4

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................................ 6

*Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *3 (C.D.
   Cal. Feb. 12, 2015) ................................................................................................ 12

*Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713 (N.D. Cal. Feb.
   10, 2006) ................................................................................................................ 25

*Zeiger v. WellPet LLC,* 304 F. Supp. 3d 837 (N.D. Cal. 2018) ...................................... 23

**State Cases**

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021) ........................................................ 24

*Buxbom v. Smith*, 23 Cal. 2d 535 (1944) ...................................................................... 24

*Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134 (2003) .......................... 18

*Ojala v. Bohlin*, 178 Cal. App. 2d 292 (1960) ............................................................... 23

*Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120 (1986) ......... 19

**Federal Statutes**

17 U.S.C. § 102 .................................................................................................................. 17

17 U.S.C. § 103 .................................................................................................................. 17

17 U.S.C. § 106 .................................................................................................................. 17

17 U.S.C. § 301(a) ........................................................................................... 2, 16, 17, 18

17 U.S.C. § 411(a) ............................................................................................................. 13

17 U.S.C. § 1202 ......................................................................................................*passim*

17 U.S.C. § 1203(c) ............................................................................................................. 7

**State Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* ........................................................................ 22

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................................................. 4

Fed. R. Civ. P. 12.................................................................................................*passim*

Fed R. Civ. P. 60 ............................................................................................ 12

**Other Authorities**

5 Witkin, Summary of Cal. Law (11th ed.2017) Torts, § 855 ...................................... 18

6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 1201 ................................... 24

PLAINTIFFS' OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS

# I.   INTRODUCTION

Plaintiffs in their First Amended Complaint ("FAC") have addressed the pleading deficiencies identified by the Court in Plaintiffs' initial Complaint. Even so, Defendants maintain that Plaintiffs' FAC is deficient, including for claims the Court has previously sustained.

First, Plaintiffs have now set forth examples of their own code being emitted from Copilot without copyright management information ("CMI"), raising a plausible inference that Copilot has emitted their code. Nevertheless, Defendants maintain that Plaintiffs have not alleged facts showing they have sustained sufficient injury to confer Article III standing for damages. Plaintiffs' FAC alleges the named representative Plaintiffs in this class action have sustained such harm. They have alleged they themselves have sustained it directly and have included allegations  demonstrating that Defendants' commercial generative AI product, Copilot, can and does output—and therefore plausibly has output in the past—**these specific named Plaintiffs' licensed code** without the code's CMI. There can be little doubt the named Plaintiffs have directly suffered harm themselves upon the output of code many times previously.

Second, the Court previously upheld Plaintiffs' Digital Millennium Copyright Act claims under Sections 1202(b)(1) and 1202(b)(3). Defendants nonetheless repackage an argument they already raised—and already lost—to assert that Plaintiffs still have not adequately pled a DMCA claim. Defendants appear to argue that Plaintiffs' FAC, which contains more specific and particular allegations, is somehow deficient where the prior, less detailed complaint was not. Specifically, Defendants claim the Court must have missed their argument that the DMCA requires copies to be identical. On the contrary—the Parties extensively briefed this issue. As Plaintiffs explained last time, the DMCA has no such identicality requirement. In any event, this case is about the copying of Plaintiffs' licensed code from which CMI has been altered or removed. The Court has considered this argument and deemed it inadequate. This rehashing of arguments already rejected by the Court is a waste of judicial resources and should be rejected.

Third, Plaintiffs have now amended their claims to adequately allege how Defendants' unauthorized use of their code for training purposes violated California law in a manner not equivalent to or preempted by the Copyright Act. As the Court previously explained, the

Copyright Act does not preempt cases based on the unauthorized use of software code. Any prior conflicts between Plaintiffs' California law claims and the Copyright Act have now been cured. And, on the merits, Plaintiffs adequately reallege the requisite economic harm to bring their claims. Plaintiffs' California law claims have likewise been adequately alleged as set forth in the FAC. Defendants GitHub, Inc. ("GitHub") and Microsoft Corporation's ("Microsoft") Motion to Dismiss the FAC (ECF No. 108; the "GitHub/Microsoft Br.") should be denied.

## II.     FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

Plaintiffs allege code they published to GitHub subject to open-source licenses was wrongfully used to train Defendants' Codex and Copilot products in violation of federal and state laws. Plaintiffs specifically allege they suffered direct and particularized injury because Codex and Copilot have output their code without providing attribution and in violation of other terms of the licenses. This alleged fact is supported by specific allegations and all the inferences Plaintiffs are entitled to under Rule 12. Defendants previously moved to dismiss Plaintiffs' original Complaint, asserting Plaintiffs failed to allege they had standing and failed to state a claim. ECF Nos. 50 & 53.

## A.     The Court's Order on Defendants' Prior Motion to Dismiss, ECF No. 95

The Court upheld the sufficiency of Plaintiffs' allegations with respect to their claims for breach of contract and their claims under Sections 1202(b)(1) and 1202(b)(3) of the DMCA. ECF No. 95 (cited herein as *Doe 1 v. GitHub, Inc.*, Case No. 22-cv-06823, 2023 WL 3449131, at *13 (N.D. Cal. May 11, 2023)). The Court dismissed claims under section 1202(b)(2). *Id*. at *13. The Court dismissed the remainder of Plaintiffs' claims, granting leave to amend. *Id*. at *15

With respect to standing, the Court concluded Plaintiffs sufficiently alleged facts showing "an imminent and significant harm" for claims for injunctive relief. With respect to damage claims, the Court concluded Plaintiffs had not alleged facts sufficient facts for standing. *Doe 1*, 2023 WL 3449131, at *5–7. In their original Complaint, Plaintiffs provided examples of how Codex and Copilot produce duplicate code with respect to other coders, without alleging that Codex and Copilot had done so with respect to the code of the named Plaintiffs. *E.g.*, ECF No. 1,

PLAINTIFFS' OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS

¶¶ 48–77.[1] Specifically, the Court noted that "while Plaintiffs identify several instances in which Copilot's output matched licensed code written by a GitHub user, none of these instances involve licensed code published to GitHub by Plaintiffs." *Id.* at *5 (citation omitted and cleaned up).

**B.     Plaintiffs' FAC and New Allegations**

Plaintiffs' FAC asserts claims on behalf of Doe 5, an additional individual and representative class Plaintiff. Plaintiffs, and each of them, maintain their claims under Sections 1202(b)(1) and 1202(b)(3) under the Digital Millennium Copyright Act, ¶¶ 183–213 (Count 1); and breach of contract, ¶¶ 214–29 (Count 2) that were upheld by the Court. Plaintiffs add new allegations giving rise to claims for breach of contract for selling licensed materials in violation of GitHub's policies, ¶¶ 230–40 (Count 3); intentional interference with prospective economic relations, ¶¶ 241–53 (Count 4); negligent interference with prospective economic relations, ¶¶ 254-65 (Count 5); a realleged unjust enrichment claim, ¶¶ 266–74 (Count 6); a cured unfair competition claim that also alleges violations of the illegal, unfair, and fraudulent prongs in the alternative, ¶¶ 275–81 (Count 7); and a realleged negligence claim, ¶¶ 282–89 (Count 8). Plaintiffs' FAC also now asserts additional facts establishing Plaintiffs suffered particularized harm by specifying how Codex and Copilot output code that matches or nearly matches their code copied from GitHub without providing the required attribution and in violation of other terms of their licenses.

Specifically, Plaintiffs provide examples of Copilot emitting Plaintiffs' code as output with only minor cosmetic changes that do not alter its function or essential expressive content. *E.g.*, ¶¶ 100–104 (Doe 2's code); 105–12 (Doe 1); 113–28 (Doe 5). The sample outputs from Copilot are sufficiently distinctive to prove Copilot could have only cribbed its answers from one place: Plaintiffs' GitHub repositories. *E.g.*, ¶¶ 103, 110, 119. These examples illustrate the typical behavior of Copilot and raise a plausible inference that Plaintiffs' code has also been output in the past. ¶ 97. Further, while Plaintiffs have been able to detect these examples of Copilot emitting their code without following the terms of the underlying open-source licenses, Defendants

---

[1] All "¶ ___" citations are to the FAC unless otherwise indicated.

1  entirely control all records of when and how many times Plaintiffs' code has been emitted.

2  ¶¶ 127–28. These allegations suffice to establish Plaintiffs' standing to sue for damages to redress

3  the harm caused to Plaintiffs themselves.

4  ### III.   ARGUMENT

5      "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

6  factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only

7  a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly,* 550

8  U.S. at 569 n.14, 570. The statements alleged in the complaint must provide "the defendant[s] fair

9  notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust*

10 *Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted); *see also Swierkiewicz v.*

11 *Sorema N.A.*, 534 U.S. 506, 515 (2002) ("Indeed it may appear on the face of the pleadings that a

12 recovery is very remote and unlikely but that is not the test.") (citation omitted). The court must

13 construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true

14 and drawing all reasonable inferences from the complaint in her favor. *Doe v. United States*, 419

15 F.3d 1058, 1062 (9th Cir. 2005). Moreover, "a complaint should not be dismissed for failure to

16 state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support

17 of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

18 "Dismissal 'is proper only where there is no cognizable legal theory or an absence of sufficient

19 facts alleged to support a cognizable legal theory.'" *Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-cv-

20 06226-EJD, 2020 WL 6700480, at *2 (N.D. Cal. Nov. 13, 2020) (quoting *Navarro v. Block*, 250

21 F.3d 729, 732 (9th Cir. 2001)). The same standard applies with respect to standing. *See Associated*

22 *Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also*

23 *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (at the pleading stage, a

24 plaintiff "need only show that the facts alleged, if proved, would confer standing upon him");

25 *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989–90 (9th Cir. 2000) (same).

26

27

28

**A.      Plaintiffs Plead Sufficient Facts for Standing Under Article III[2]**

Article III standing requires "a plaintiff have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Defendants continue their standing challenge. They claim Plaintiffs have not pleaded facts sufficient to demonstrate personalized injury caused by their use of Plaintiffs' licensed code as raw material for training Codex and Copilot. Plaintiffs have pleaded specific facts showing their code was emitted by Codex and Copilot and as a result they suffered particular personalized injury. The facts Plaintiffs have pleaded lead to the inference—and ineluctable conclusion—*their* code was copied as training material, Defendants removed *their* CMI, Defendants embedded *their* code in Copilot, Copilot emitted *their* code in violation of their open-source licenses, and Defendants marketed and sold Copilot to the public for these purposes. ¶¶ 94–128. These facts are not only specifically alleged, they are also supported by detailed allegations providing a demonstration that, when prompted, Copilot produces Plaintiffs' code. The detailed step-by-step explanation of how Plaintiffs' code is easily produced in response to straightforward instructions from Copilot leads to a reasonable inference that Plaintiffs' code *already has been* emitted. ¶ 97. Plaintiffs allege this conduct has caused them injury in the past, and, as the conduct continues, will suffer injuries in the future.

**1.      Plaintiffs Allege Injury-in-Fact**

In a class action, named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual

---

[2] Defendants do not challenge Plaintiffs' Article III standing to seek injunctive relief.

1    way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan,* 504 U.S. at 560 n.1); *see also TransUnion LLC v.*

2    *Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("For there to be a case or controversy under Article III,

3    the plaintiff must have a 'personal stake' in the case—in other words, standing." (quoting *Raines*

4    *v. Byrd,* 521 U.S. 811, 819 (1997)). Plaintiffs have now alleged their personal injuries.

5        The allegation that Plaintiffs were the authors and licensors of code maintained in GitHub

6    repositories and that they suffered injury when that code was emitted in contravention of the

7    applicable license satisfies this standing requirement. *See Warth*, 422 U.S. at 502. Plaintiffs have

8    expressly made these allegations. *E.g.*, ¶¶ 97, 100–28. They were personally injured—and they

9    will be injured in the future—when Codex and Copilot emitted their code. Plaintiffs are entitled

10   to redress in the form of money damages for each such incident.

11       The Court recognized this in its prior standing ruling. In the prior Complaint, Plaintiffs

12   alleged—supported by demonstrative examples—that Codex and Copilot replicate matched class

13   member code essentially verbatim. With respect to Article III, the Court held this was sufficient

14   for injunctive relief claims. *See Doe 1*, 2023 WL 3449131, at *6 (citing *Susan B. Anthony List v.*

15   *Driehaus*, 573 U.S. 149, 158 (2014); *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988)). With respect

16   to claims for damages, the Court ruled "*Plaintiffs do not allege that they themselves have suffered the*

17   *injury they describe*, they do not have standing to seek retrospective relief for that injury." *Id.* at *5

18   (emphasis added).

19       Plaintiffs have amended their complaint to add specific allegations that they have suffered

20   the injuries they describe. Plaintiffs allege Codex and Copilot have emitted code that matches

21   their Code in violation of the attached license, directly causing injury to them as a result. These

22   allegations are plausible, highly likely, and, indeed, virtually certain. One can reasonably infer this

23   to be the case because copies of *their* code exist within Copilot and further, have been emitted by

24   the program. ¶¶ 97–128. Plaintiffs' demonstrations of Copilot's capacity to output Plaintiffs'

25   code establishes the past harm to them is very real: (1) Defendants did in fact copy Plaintiffs'

26   licensed computer code when it scraped and copied code from GitHub repositories, and included

27   it in Codex and Copilot without Plaintiffs' consent; (2) that Copilot removed and/or altered the

28   CMI from copies of Plaintiffs' code that it ingested, breaking the chain and purpose of Plaintiffs'

1  open-source licenses; and (3) that Copilot plausibly has emitted Plaintiffs' licensed computer

2  code in violation of Plaintiffs' open-source licenses.

3      Plaintiffs' allegations that the chance Copilot has emitted their code in violation of their

4  licenses is a near statistical certainty, considered with these exemplary demonstrations, is

5  sufficient to plead standing for damages here. ¶¶ 94–95; *see also* ¶ 97 ("Because Copilot was

6  trained on all available public GitHub repositories, if Licensed Materials have been posted to a

7  GitHub public repository, Plaintiffs and the Class can be reasonably certain it was ingested by

8  Copilot and is sometimes returned to users as Output"); ¶ 127 ("It is therefore likely if not

9  certain that verbatim, near-verbatim or modified copies of each Plaintiffs' code have already been

10  emitted by Copilot."). The Court has already acknowledged "Plaintiffs thus plausibly allege that,

11  absent injunctive relief, there is a realistic danger that Codex or Copilot will reproduce Plaintiffs'

12  licensed code as output." *See Doe 1*, 2023 WL 3449131, at *6. Now that the Court can be sure

13  Plaintiffs' code has been ingested by Copilot, and Copilot can and plausibly already has output

14  Plaintiffs' code, Plaintiffs have standing to seek damages for their retrospective harm. *Id.* at *5.

15  ("Because Plaintiffs do not allege that they themselves have suffered the injury they describe,

16  they do not have standing to seek retrospective relief for that injury."). The logic underlying this

17  conclusion rests on the same set of facts and is no different than those the Court recognized leads

18  to the conclusion that there is a substantial risk that Defendants' programs will reproduce

19  Plaintiffs' licensed code as output in the future, sufficient for Article III standing for injunctive

20  relief. *Doe 1*, 2023 WL 3449131, at *5-7. With the FAC, Plaintiffs have further alleged it is a near-

21  certainty their work has already been output and their licenses repeatedly violated. ¶¶ 93–97, 127.

22      The injuries Plaintiffs have themselves sustained, and the resulting foreseeable,

23  consequential damages are straightforward. First, with respect to claims under the DMCA,

24  Plaintiffs are entitled to receive actual statutory damages for the harm to their property, i.e., their

25  licensed code. 17 U.S.C. § 1203(c). Removing CMI from copies of Plaintiffs code alone is a harm

26  to Plaintiffs' property interests. This is sufficient under Article III. *TransUnion*, 141 S. Ct. at

27  2204 ("The most obvious are traditional tangible harms, such as physical harms and monetary

28  harms"). Moreover, the fact Congress has created a statutory private right of action is significant.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS

1   As the Court in *TransUnion* noted, "[i]n determining whether a harm is sufficiently concrete to

2   qualify as an injury in fact, the Court in *Spokeo* said that Congress's views may be 'instructive.'"

3   *Id.* (quoting *Spokeo,* 578 U.S. at 341). The Court continued, "Courts must afford due respect to

4   Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a

5   plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or

6   obligation." *Id.* (citing *Spokeo*, 578 U.S. at 340–41). Congress codified in the DMCA that

7   Plaintiffs' property interests were harmed when CMI was intentionally removed from their code

8   *and* when that code was imported for distribution or distributed without its CMI. 17 U.S.C. §§

9   1202(b)(1) and (b)(3). Less tangible types of harm, including reputational harm, are likewise

10  sufficiently concrete for purposes of Article III. *See TransUnion* ("Various intangible harms can

11  also be concrete. . . . Those include, for example, reputational harms. . . ." (*citing Meese v. Keene*,

12  481 U. S. 465, 473 (1987) (reputational harms))).

13          As courts acknowledge, "there are substantial benefits, including economic benefits, to

14  the creation and distribution of open-source code subject to these open-source licenses." ¶ 243;

15  *e.g.*, *Jacobsen v. Katzer*, 535 F.3d 1373, 1378–79 (Fed. Cir. 2008) (explaining the value of open-

16  source licenses). Licensors obtain reputational benefits personal to them. But they also promote

17  and advance more generalized interests, market share for programs and code and the ability to

18  trace and discover new improvements to their open-source projects which are part of the bargain.

19  ¶ 243; *see also* ¶ 245. When Copilot emits their code in violation of their open-source licenses.

20  Plaintiffs are denied the bargained for benefit of those licenses, including those particular to

21  them. These are concrete harms sufficient to confer Article III standing. *Jacobsen*, 535 F.3d at

22  1379 ("a programmer or company may increase its national or international reputation by

23  incubating open-source projects"); *see also TransUnion*, 141 S. Ct. at 2204 (describing

24  "reputational harms" as among the "injuries with a close relationship to harms traditionally

25  recognized as providing a basis for lawsuits in American courts").

26          Having planted the goalposts when attacking the initial complaint, Defendants now

27  attempt to move them. *See Doe 1*, 2023 WL 3449131, at *4-7. Defendants raise three arguments

28  why Plaintiffs' FAC fails to establish standing for damages: (1) that, "there is nothing in the

8

[FAC] to suggest that the prompts Plaintiffs employed would ever actually happen in the real world"; (2) that "[s]tanding cannot be predicated on events that post-date the filing of the suit"; and (3) that "Plaintiffs identify no cognizable injury from training." GitHub/Microsoft Br. at 9-12. Each of these is unavailing.

Defendants' contention that Codex or Copilot have never emitted Plaintiffs' code misses the point. This is a factual assertion directly at odds with the allegations in the Complaint. It is hornbook law that this is an insufficient basis to dismiss a complaint for failure to state a claim under Rule 12(b)(6). In so arguing, Defendants also seek to deny Plaintiffs of their right to have all reasonable inferences made in their favor. *See Doe*, 419 F.3d at 1062. None of this is proper at this juncture. Defendants are free to controvert these allegations with proof, after discovery.

Defendants' arguments about what is or is not normal use of Copilot is baffling. "Normal use" is neither an element of any claim asserted here or any affirmative defense, and certainly not a relevant inquiry with respect to Article III standing, and therefore appears to be entirely fabricated. With respect to the evidence, the data that will establish just how often Plaintiffs' code is input as a prompt or returned as output by Copilot in violation of Plaintiffs' open-source licenses are exclusively in Defendants' possession. Only discovery can establish—in fact, not conjecture—what is and is not "normal" use of Copilot.

Defendants' reliance on *Clapper v. Amnesty Int'l., USA*, 568 U.S. 398 (2013) is puzzling. In *Clapper*, the injury complained of was a one-time expense by journalists to prevent government snooping that they had no basis to assert had ever happened. *Id.* at 414 ("'respondents' speculative chain of possibilities does not establish that injury based on potential future surveillance is certainly impending or is fairly traceable.").[3] Here, as the Court has already

---

[3] Defendants' citation to *Buchholz v. Meyer Njus Tanick, PA,* 946 F.3d 855, 866-67 (6th Cir. 2020) suffers the same flaw. *Buchholz* was a case where the only injury complained of was created: "a plaintiff cannot create an injury by taking precautionary measures against a speculative fear." Here, Plaintiffs are pursuing claims for alleged harms well beyond just the exemplary harm, and the Court has already held that the risk of harm is not speculative here. Defendants' citation to *Fry v. Ancestry.com Operations Inc.,* No. 22-CV-140 JD, 2023 WL 2631387, at *5 (N.D. Ind. Mar. 24, 2023), is equally unavailing. *Fry* in fact supports Plaintiffs' standing here—plaintiff in *Fry* sued over worry about his yearbook picture being on Ancestry.com (but never actually used

concluded, Plaintiffs have alleged such injuries, with respect to injuries in the future. Moreover, the *Clapper* plaintiffs did not allege any particularized injury to them other than speculative claims they avoided communications subject to Section 1881a. That is not the case here—it is certain that Plaintiffs' code has been copied by Defendants and has been emitted by Copilot without its CMI. It is certainly not "impossible" that an "ordinary" user would prompt Copilot using Plaintiffs' or class members code as Defendants claim without support.[4] GitHub/Microsoft Br. at 10.

Defendants' claim that Plaintiffs have somehow manufactured injury is incorrect. *See Clapper*, 568 U.S. at 416. Plaintiffs have not undertaken conduct in order to give rise to a claim. Plaintiffs placed their code in the open-source repositories long ago, long before that licensed code was copied, stripped of its CMI by Defendants and emitted to users by Codex and Copilot. Plaintiffs allege well pleaded particularized facts supporting the plausible inference that Codex and Copilot emitted and emit verbatim code copied from Plaintiffs' GitHub repositories that were subject to Plaintiffs' open-source licenses. Requiring a Plaintiff to do more when all information about what code has been emitted is in the hands of Defendants would be to ask the impossible, far more than is required at this stage to adequately state a claim for damages.[5]

As to Defendants' argument that Plaintiffs identify no cognizable injury from training, this too is unavailing. Courts in this district recognize that merely because open-source code is offered free of charge does not mean its use is unconditioned. *Artifex Software, Inc. v. Hancom, Inc.*, Case No. 16-cv-06982, 2017 WL 4005508, at *3 (N.D. Cal. Sep. 12, 2017) ("The [open-

---

anywhere else). The *Fry* court found that plaintiff had plead sufficient facts to confer Article III standing.

[4] Defendants' argument that standing here is based on events that post-date the filing of Plaintiffs class action complaint fares no better. The fact that Copilot can be instructed at this very minute to cause injury plausibly supports the inference. Indeed, were it the case that Copilot could not be instructed to do so, that would be evidence showing that Plaintiffs were not injured and will not be injured in the future.

[5] Indeed, Defendants were free to submit evidence showing that Plaintiffs did not have standing. *See Fry*, 2023 WL 2631387, at *6 (explaining that a "court may look at evidence submitted on the issue where external facts call the court's jurisdiction [under Article III] into question on motion to dismiss.") (citing *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017)).

PLAINTIFFS' OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS

source] license was not free in the sense that there was no consideration owed under the agreement.") (citing *Jacobsen*, 535 F.3d at 1379).

To the extent Defendants maintain that Plaintiffs lack standing because Plaintiffs' code has never been emitted *at all*, this dispute can be resolved after the Parties have had adequate discovery. *See, e.g.*, *Karter v. Epiq Sys., Inc.*, No. SACV2001385CJCKESX, 2020 WL 11272318, at *2 (C.D. Cal. Nov. 9, 2020) (denying motion to dismiss on standing grounds without prejudice where "the key question relevant to whether Plaintiff has standing . . . [is] whether Plaintiff's social security number could have been on Defendant's systems at the time of the ransomware attack."); *Experian Mktg. Sols., Inc. v. List Serv. Direct, Inc.*, No. SACV0901375CJCMLGX, 2010 WL 11595830, at *2 (C.D. Cal. Apr. 21, 2010) (denying motion to dismiss on standing grounds and commenting that defendant "may file a motion for partial summary judgment on this jurisdictional issue" regarding standing after conducting discovery).[6]

**B.    Defendants' Motion Under Rule 12(b)(6) Should Be Denied[7]**

  **1.    Plaintiffs' Plead a DMCA Claim Under Sections 1202(b)(1) and 1202(b)(3) (Count 1)**

Plaintiffs have pled all the elements of a DMCA violation. The Court has already sustained the DMCA claim under Sections 1202(b)(1) and 1202(b)(3) from Plaintiffs' prior complaint. *See Doe 1*, 2023 WL 3449131, at *13. Defendants seek another bite at the apple on spurious grounds. Defendants again incorrectly argue that a claim under Section 1202(b) must be based on an "identical" copy of a work. Defendants claim the Court did not reach this argument in its prior Order, and in so doing, the Court overlooked or ignored their argument. Given that the FAC contains all the same allegations as before, and more, Plaintiffs' DMCA claim likewise

---

[6] Should the Court be inclined to dismiss any of Plaintiffs' claims for lack of Article III standing to seek retrospective damages, it should do so without prejudice and grant Plaintiffs leave to amend after Plaintiffs have had an opportunity to take jurisdictional discovery. *See Ford v. Shinseki*, 538 Fed. App'x 803, 804 (9th Cir. 2013) (explaining that dismissals for lack of subject matter jurisdiction require dismissal without prejudice).

[7] Defendants GitHub and Microsoft do not contest that Plaintiffs have pled a cause of action for breach of the open-source licenses (count 2) or breach of GitHub's policies (count 3).

survives here for all the same reasons identified by the Court prior. *Id*. at *10-13.[8]

As previously explained, Section 1202(b) of the DMCA imposes liability for the removal or alteration of copyright management information ("CMI").[9] 17 U.S.C. § 1202(b); *Doe 1*, 2023 WL 3449131, at *11. Section 1202(c), which defines CMI and describes the protected categories of CMI, has been interpreted broadly. *See Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *3 (C.D. Cal. Feb. 12, 2015); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102 (N.D. Ill. 2014). The pleading burden is low. *See Mollman v. Zeotop Bus. Co.*, No. CV 22–4128 (PA) (GJSx), 2022 WL 17207103, at *3 (C.D. Cal. Sep. 16, 2022) (burden under the DMCA is "not as exacting" at the pleading stage).

"Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)." *Merideth v. Chi. Trib. Co., LLC*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). As long recognized by the Ninth Circuit, "direct proof of one's specific wrongful intent is rarely available" and such knowledge or intent can be inferred through circumstantial evidence. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (internal quotation marks omitted). "'[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally'" for purposes of pleading Section 1202(b)'s mental state requirements. *Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, No. 22-CV-01847-CRB, 2022 WL 14813836, at *9 (N.D. Cal. Oct. 25, 2022) (citations omitted). Further, "[n]othing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit. While a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for copyright infringement, claims under the DMCA are, however, simply not copyright infringement claims and are separate and distinct from the latter." *Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL

---

[8] Plaintiffs note that, were this not the case, Defendants were required to move for relief pursuant to Rule 60. *See* Fed R. Civ. P. 60(b)(1) ("[T]he court may relieve a party . . . from a[n] . . . order" for "mistake, inadvertence, surprise, or excusable neglect"). They have not done so.

[9] Section 1202(c) provides, in pertinent part, "[a]s used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work[.]"

22838094, at *3 (E.D. Pa. Nov. 25, 2003).[10]

### 2.    Plaintiffs Have (Once Again) Pled All Elements of a Section 1202(b) Violation

Therefore under the DMCA, a claim for a CMI violation requires the plaintiff to plead: "(1) the existence of CMI on the infringed work, (2) removal or alteration of that information, and (3) that the removal or alteration was done intentionally." *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1286-87 (C.D. Cal. 2022). The plaintiff must also plead the requisite scienter. *Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561, at *3-4 (N.D. Cal. Mar. 26, 2019). Scienter, however, need not be alleged with specificity. *Id.*

Briefly summarized, however, Plaintiffs have alleged they make their code available subject to open-source licenses, which include at least three types of CMI: (1) the name of the owner; (2) a copyright notice, and (3) the terms of the applicable license; and that the relevant CMI was affixed to their licensed code. *See* 17 U.S.C. § 1202(c); ¶¶ 104, 112, 120. Plaintiffs have alleged that Defendants were aware that such CMI appeared repeatedly across the data used to train Codex and Copilot, and that such CMI was important for protecting copyrights interests. ¶¶ 86-89. Plaintiffs alleged that Defendants coded their programs to ignore or remove CMI in order to stop reproducing CMI as output. ¶¶ 133-32. These allegations are still sufficient to plead a DMCA claim under Sections 1202(b)(1) and 1202(b)(3). *Doe 1*, 2023 WL 3449131, at *12-13.

### 3.    Section 1202(b) Does Not Require Identicality

Defendants take another shot at the DMCA claim, bizarrely insisting the DMCA claim must now be dismissed, even though Plaintiffs offer more detail to support their already-upheld claim. GitHub/Microsoft Br. at 13-15. Defendants again claim that under Section 1202(b) must

---

[10] A DMCA claim does not require proof of infringement. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 950-52 (9th Cir. 2010) (rejecting infringement nexus requirement for DMCA claims). Because a DMCA claim does not require proof of infringement, fair use is not a defense. *See Murphy v. Millennium Radio Grp.*, Civil Action No. 08-1743 MAS, 2015 WL 419884, at *5 (D.N.J. Jan. 30, 2015) ("A claim under § 1202(b) does not necessarily attack non-infringing fair uses of copyrighted works—it targets conduct that does harm to identifying information that helps to protect the copyright holder, such as CMI."); *see also Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019) ("a DMCA action under section 1202(b) is not an action for infringement").

be based on an "identical" copy of a work. *Id.* But this argument has been extensively (and exhaustively) briefed.[11] Given the amount of ink spilled, it is plain that this argument has been considered, and found wanting.

Section 1202(b) has no requirement that the copy from which CMI is removed be identical. *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) ("[T]he definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work."). Courts have recognized that code itself can include CMI. *ICONICS*, 192 F. Supp. 3d at 272 (copyright headers "comprised of relatively human-readable text at the top of a file of code" which includes a statement the material is confidential and then "provide[s] the name of the original author of the file" is "paradigmatic CMI"); *Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015) ("Weaving CMI into the text of the source code may be among the most efficient or security-enhancing ways to include CMI with that code."). The "copy" need not include the entire underlying work. *ICONICS*, 192 F. Supp. 3d at 272 ("[T]he definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work."). Indeed, courts have allowed Section 1202(b) claims to proceed where CMI that was incorporated into a work was removed, which would necessarily mean that the infringing copy would not be identical. *E.g.*, *id.* at 273 (finding liability under Section 1202 where defendant "deleted source code headers from at least two files that he copied"); *Bounce Exch.*, 2015 WL 8579023, at *2–4.

Critically, this case is about the copying of licensed code. ¶¶ 50 ("the Output is often a near-identical reproduction of code from the training data"); 91; 94 ( "in ordinary use, Copilot will reproduce passages of code verbatim" at least 1% of the time); 96 ("Though Output from

---

[11] *See*, *e.g.*, ECF Nos 50 at 13-14 (Defendants GitHub and Microsoft previously arguing that the DMCA "require the active step of removal or alteration of CMI in connection *with an identical copy of the work*") (emphasis added); 53 at 9-10 (OpenAI defendants arguing that "[w]here a defendant makes a copy of a defendant's work that is substantially similar, but not identical, to the plaintiff's work, and omits CMI from that copy, there may be a claim for copyright infringement, but there cannot be a claim under § 1202"); 66 at 8 (Plaintiffs' opposition to GitHub and Microsoft's prior motion to dismiss); 67 at 18-19 & n.11 (Plaintiffs' opposition to OpenAI's prior motion to dismiss); *see also* ECF No. 73 at 8-9 (OpenAI rearguing at reply that the DMCA requires identicality).

---

14

Copilot is often a verbatim copy, even more often it is a modification: for instance, a near-identical copy that contains only semantically insignificant variations of the original Licensed Materials, or a modified copy that recreates the same algorithm."). Plaintiffs have alleged that Copilot has copied their code because Copilot emitted near-matches of their code. *E.g.*, ¶¶ 103, 104, 112, 119 127. As alleged, the examples cited by Plaintiffs demonstrate that their code was copied from GitHub repositories because these code samples are distinctive—they are found in only one place, Plaintiffs' repositories. ¶¶ 103, 108. Each of these examples were published subject to open-source licenses with CMI, and none of that CMI was emitted with Copilot. ¶¶ 104, 112, 120, 126. That the emissions from Copilot were not exact or identical is of no moment when the allegations make clear that Defendants copied Plaintiffs' code in order to train Codex and Copilot.[12]

The cases GitHub and Microsoft offer are distinguishable. Each of Defendants' cases did not find a stated claim under the DMCA because there were no allegations that the defendant copied their works in their original form. *See*, *e.g.*, *Design Basics, LLC v. WK Olson Architects, Inc.*, Case No. 17 C 7432, 2019 WL 527535, at *5 (N.D. Ill. Feb. 11, 2019) (dismissing DMCA claim where "Plaintiffs do not allege WK Olson directly reproduced their plans without CMI"); *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352 (N.D. Fla. 2010) (finding no DMCA claims based on copying of textbooks because "student note takers simply took notes from Dr. Moulton's course and those notes were compiled into note packages"). Defendants cite *Frost-Tsuji Architects v. Highway Inn, Inc.*, Civil No. 13-00496 SOM/BMK, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015) for support, but Defendants cite an order resolving a *motion for reconsideration* regarding the court's grant of summary judgment. But Defendants *do not* cite to *Frost-Tsuji*'s original summary judgment opinion, which reveals why *Frost-Tsuji* is inapposite. *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282 (D. Haw.

---

[12] GitHub and Microsoft puzzlingly claim that because Doe 2's code contains information that can also be found on Wikipedia, Plaintiffs' claims are somehow undermined. Defendants sidestep the fact that Doe 2's code was a distinctive expression of these scientific facts rendered into programming code and published on GitHub *subject to an open-source license*, which was not reproduced, i.e., was removed or altered. ¶¶ 104, 221.

Nov. 7, 2014). As the *Frost-Tsuji* court made plain, the *Frost-Tsuji* court granted summary

judgment because "'[v]irtually identical' plans could have been created by redrawing Frost-

Tsuji's plans and not including Frost-Tsuji's copyright management information[.]" *Id.* at *5.

Indeed, as demonstrated by *Dolls Kill, Inc. v. Zoetop Bus. Co.*, Case No. 22-cv-01463, 2022 WL

16961477 (C.D. Cal. Aug. 25, 2022), cited by the OpenAI Defendants, the lack of identicality only

undermines the inference there was copying in the first place where no such allegations are made.

*Id.* at *4 ("The differences between the parties' products undercut any inference that

Defendants removed or altered Plaintiff's CMI."). In cases where there are allegations that

Defendant copied Plaintiffs' original work in its original form like Plaintiffs make here,

identicality has no role because no inference need be drawn.[13]

**C.    Plaintiffs Adequately Plead Their State Tort Claims[14]**

     **1.    Plaintiffs' California State Law Claims Are Not Preempted**

     Defendants argue Plaintiffs' state law claims are preempted by Section 301 of the

Copyright Act. 17 U.S.C. § 301(a). But they are mistaken. As this Court acknowledged in its prior

Order, "state law tort claims concerning unauthorized use are not preempted by the Copyright

Act." *Doe 1*, 2023 WL 3449131, at *10 ("A state law tort claim concerning the unauthorized use

of the software's end-product is not within the rights protected by the federal Copyright Act")

(citing *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005)). As Plaintiffs have

clarified in their FAC, *all* Plaintiffs' claims brought under California state law are premised on

the unauthorized use of Plaintiffs' code for training purposes by Codex and Copilot without their

consent and the removal of their CMI. *See* ¶¶ 221, 235, 248-49, 257–59, 269–71. Because

---

[13] Defendants cite *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999), but in that case, users could click on the supposedly infringing thumbnail and "[a] user who did this was given the name of the Web site from which Defendant obtained the image, *where any associated copyright management information would be available.*" *Id.* at 1122 (emphasis added). Here, there are no allegations nor evidence that Copilot users can access the original CMI from infringing works.

[14] Plaintiffs filed a correction of the FAC to properly identify "California" as the state under which Counts 2-8 were brought on July 21, 2023. Defendants' motion to dismiss was nonetheless based on California law and pleading requirements.

1  Plaintiffs seek to vindicate their rights predicated on their code's unauthorized use, which is not

2  an exclusive right under the Copyright Act, their California law claims are not preempted.

3         The Ninth Circuit uses a two-part test to analyze whether the Copyright Act preempts a

4  state law claim. *See Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1139 (9th Cir. 2006). Courts

5  must first "[d]ecide 'whether the "subject matter" of the state law claim falls within the subject

6  matter of copyright as described in 17 U.S.C. §§ 102 and 103.' Second, assuming it does, [courts]

7  determine 'whether the rights asserted under state law are equivalent to the rights contained in

8  17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.'" *Maloney v. T3*

9  *Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citations omitted, quoting *Laws*, 448 F.3d at

10  1137–38); *see also Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1122–23 (N.D. Cal. 2001).

11  "'To survive preemption, the state cause of action must protect rights which are qualitatively

12  different from the copyright rights,' and the 'state claim must have an extra element which

13  changes the nature of the action.'" *Software Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 8:21-cv-

14  01943-JLS-KES, 2022 WL 1527518, at*3 (C.D. Cal. May 13, 2022); *Jacobsen v. Katzer*, 609 F.

15  Supp. 2d 925, 933 (N.D. Cal. 2009) (citation omitted).

16         Plaintiffs allege that Codex and Copilot have taken Plaintiffs' code and used it as training

17  data impermissibly without their consent. ¶97. As these allegations make plain, it is that *use* that

18  is the predicate to Plaintiffs' California law claims; Plaintiffs' California law claims are not

19  predicated on the reproduction, distribution, performance, or any of the other exclusive rights

20  brought under the Copyright Laws.[15] 17 U.S.C. § 106; *see Doe 1*, 2023 WL 3449131, at *10 ("'The

21

---

22  [15] Defendants seem to suggest that their conduct is excluded because Plaintiff published their
code publicly. ECF No at 17 (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23,
23  34 (2003) ("the public may use the . . . work at will and without attribution"). But that is plainly
incorrect. As Courts have recognized, in the open-source context, the unauthorized or
24  inappropriate use of open-source code without abiding by the licenses results in cognizable injury
which can be vindicated in court. *See Jacobsen*, 535 F.3d at 1378–79; *see also Pitchford v. Aelitis,*
25  *SAS*, Case No. 8:12-cv-1897-T35-TGW, 2013 WL 12155928, at *5 (M.D. Fla. Apr. 11, 2013)
(finding no preemption were "Plaintiff also claims that Defendants failed to comply with the
26  terms of their agreement which required attribution to all contributors to the software, including
Plaintiff, and to maintain Plaintiff's software as an open source."). Indeed, it would be bizarre for
27  Defendant Microsoft to suggest that if code is publicly available then it is free for all to use given

28

[exclusive] rights under the Copyright Act include the rights of reproduction, preparation of derivative works, distribution, and display'") (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 760 (9th Cir. 2015)). The conduct Plaintiffs seek to redress through their California claims is separate and apart from those the Copyright Act seeks to vindicate, despite Defendants' distortion of Plaintiffs' allegations.

### 2. Plaintiffs State a Claim for Intentional and Negligent Interference with Economic Relations (Counts 4 & 5)

Defendants argue Plaintiffs fail to state a claim for intentional or negligent interference with prospective economic relations. ECF No. 107 at 18–19. This is not well taken. The elements for intentional interference with prospective economic relationships or advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1153 (2003) (cleaned up); *see also* 5 Witkin, Summary of Cal. Law (11th ed.2017) Torts, § 855, pp. 1163-64. A claim for negligent interference with prospective economic advantage overlaps, also requiring an economic relationship and knowledge. This claim, however, requires only proof that "the defendant was negligent" and that "such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *Behr Process Corp. v. RPM Int'l*, No. SACV14156JLSDFMX, 2014 WL 12584385, at *4 (C.D. Cal. May 20, 2014) (citing *N. Am. Chem. Co. v. Super. Court*, 59 Cal. App. 4th 746, 786 (1997)). Plaintiffs have alleged all these elements.

---

its extensive efforts to remove and foreclose the use of its own code that is published. *See*, *e.g.*, *Microsoft Corp. v. Does 1-10*, Case No. C17-1911RSM, 2018 WL 263313, at *1-2 (W.D. Wa. Jan. 2, 2018) (bringing suit against IP addresses for making available activation codes for Microsoft's software).

***Economic Relationship with the Probability of Future Economic Benefit.*** Plaintiffs identify the other open-source programmers who utilize their code pursuant to open-source licenses as the third parties with whom Plaintiffs have prospective economic relationships that Defendants are intentionally interfering with by scraping Plaintiffs' code and removing its CMI. Plaintiffs adequately identify the parties and contractual economic relationships that are being interfered with here. ¶ 242.

Plaintiffs' FAC alleges how Plaintiffs publish their code subject to open-source licenses in order to develop specific economic relationships with the community of open-source users. ¶ 242–48. Indeed, that is the point of open-source—the relationships with the community of users of their open-source code on GitHub are the specific economic relationships Defendants are intentionally interfering with by knowingly copying and stripping Plaintiffs' code of its CMI, which breaks Plaintiffs' open-source licensing chains and communities every time Copilot outputs Plaintiffs code without its CMI. ¶¶ 242–48, 256–58. "When a programmer uses an open-source software, a contract is formed based on the terms of the particular open-source license." ¶ 242. Courts have recognized the economic benefits of open-source, *see Jacobsen*, 535 F.3d at 1378–79 (explaining the value of open-source licenses), and it is those economic relationships which Defendants have interfered. Further, under California law, plaintiffs are not required to plead with specificity the name or identity of the injured party to recovery for intentional interference of prospective economic advantage. *See Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1133 (1986) (citing Restatement (Second) of Torts § 766 cmt. p. pp. 15–16). Defendants claim that Plaintiffs do not identify the third parties with whom Plaintiffs have a relationship that Defendants are interfering with is not only untrue, but not required under the law. ECF No. 107 at 19. Indeed, it would be bizarre for GitHub, which was founded to foster open-source, to disclaim any knowledge of how open-source works.

***Defendants' Knowledge of the Economic Relationship.*** Plaintiffs also adequately allege Defendants were aware of these open-source communities. In fact, GitHub was designed specifically to foster them. ¶¶ 244–48; 258–60. Plaintiffs allege that these user communities on GitHub "create the probability of future economic benefit in a number of ways" including

community software debugging, coding help, coding recognition and exposure that can result in licensing contracts. ¶¶ 245–46. With respect to Defendant Microsoft, the FAC describes Microsoft's history of hostility towards open-source. ¶¶ 145–54. As Plaintiffs allege, that hostility stems from Microsoft's understanding of the obligations that come with open-source licenses. *E.g.*, ¶ 151.

*Defendants' Intentional or Negligent Acts.* Plaintiffs allege that Defendants failure to attach licensing was an intentional interference in Plaintiffs' contractual relationships with the open-source users of their code. ¶¶ 249–51. Plaintiffs allege that even after Defendants knew that Codex and Copilot would reproduce code verbatim with incorrect licenses, Defendants intentionally or negligently changed the product to keep operating without producing CMI at all, depriving Plaintiffs of the very attribution in the open-source code community that GitHub was created to foster and the DMCA passed to preserve. ¶¶ 262–64. By doing so, Defendants performed an act that is "wrongful 'by some measure beyond the fact of the interference itself.'" *CRST Van Expedited, Inc. v. Werner Enters. Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007).

*Actual Disruption and Economic Harm.* The FAC alleges actual disruption of Plaintiffs' relationships with their users, a ¶¶ 249–51, 262–63, and does adequately allege economic harm due to interference with Plaintiffs' open-source code community. ¶¶ 253, 264; *see also Jacobsen*, 535 F.3d at 1378–79. The fact that the open-source software was offered for free does not mean there was no consideration owed under the open-source license should someone decide to the software. *See Artifex Software*, 2017 WL 4005508, at *3 ("The [open-source] license was not free in the sense that there was no consideration owed under the agreement." (citing *Jacobsen*, 535 F.3d at 1379)). Plaintiffs' claims for intentional and negligent interference should be upheld.

### 3.   Plaintiffs State a Claim for Unjust Enrichment (Count 6)

Defendants also attack Plaintiffs' claim for unjust enrichment. The Court had previously dismissed Plaintiffs' unjust enrichment claim on preemption grounds. *Doe 1*, 2023 WL 3449131, at *11. Plaintiffs, however, have cured the claim's defects and have now pled the claim on "Defendants' use of Plaintiffs' code for training purposes." *See id.*; *see also* ¶¶ 268-70.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS

1    Nonetheless, Defendants again claim Plaintiffs' unjust enrichment claim is deficient.

2    GitHub/Microsoft Br. at 20–21.

3         "Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and

4    (2) unjust retention of the benefit at the expense of another." *ChromaDex, Inc. v. Elysium Health,*

5    *Inc.,* No. SACV1602277CJCDFMX, 2017 WL 7080237, at *4 (C.D. Cal. Nov. 28, 2017). In the

6    Ninth Circuit, Plaintiffs may pursue a claim for unjust enrichment either "as an independent

7    cause of action or as a quasi-contract claim for restitution." *ESG Capital Partners, LP v. Stratos*,

8    828 F.3d 1023, 1038 (9th Cir. 2016). "[T]o allege a quasi-contract claim, a party must plausibly

9    allege the absence of any applicable and enforceable contract provisions, even if in the

10   alternative." *In re Bang Energy Drink Mktg. Litig.*, Case No. 18-CV_05758-JST, 2020 WL

11   4458916, at *10 (N.D. Cal. Feb. 6, 2020).

12        Defendants dispute Plaintiffs' allegations with respect to "the absence of such

13   provisions." ECF No. 107 at 20. While Plaintiffs assert rights under the open-source licenses, the

14   licenses themselves contain no provision providing for recourse. As Plaintiffs further allege,

15   Defendants used Plaintiffs' code without permission to train their commercial product that

16   Defendants currently sell to the public. This was all done without proper consent, authorization

17   or other licensing. ¶¶ 188–89, 270–72.

18        Plaintiffs have also alleged how Defendants benefit. Copilot's value as a commercial

19   product, currently for sale, currently profiting Defendants, is derived from its imminent

20   plagiarism risk and the licensed code it trained on as fodder for its AI output. Indeed, the point of

21   using Plaintiffs' licensed code was to provide the raw materials for Defendants' AI products,

22   which were then developed, marketed, and sold to the public. This is an unjust enrichment to

23   Defendants, ¶¶ 69, 272–73, and an impoverishment to Plaintiffs. ¶¶ 269–70.

24        Defendants also appear to claim that Plaintiffs may not receive compensation in the form

25   of the disgorgement or restitutionary remedies available as a consequence of unjust enrichment.

26   Defendants repeatedly argue with respect to other causes of action that Plaintiffs are ineligible or

27   barred from recovering damages for their injuries. Unjust enrichment provides a remedy for

28   conduct in just such a case. *E.g., Artifex Software*, 2017 WL 4005508, at *3 (commenting in case

21

involving the unauthorized use open-source licenses, "to the extent Plaintiff seeks unjust

enrichment disgorgement as a measure for damages, this too is proper under California law.")

(citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).

### 4.   Plaintiffs State a Claim Under California's Unfair Competition Law (Cal. Bus. & Profs. Code §§ 17200 *et seq.*) (Count 7)

California's Unfair Competition Law "provides a cause of action for business practices

that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033,

1050 (N.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200). Plaintiffs have cured the defects

in their prior pleading of a claim under the UCL and have pled a claim under all three prongs.

Plaintiffs allege that Defendants have violated the unlawful prong including, not limited

to, violating the DMCA. *See Cappello v. Walmart Inc.*, 394 F. Supp.3 d 1015, 1023 (N.D. Cal.

2019) ("By proscribing 'any unlawful' business act or practice, the UCL 'borrows' violations of

other laws and treats them as unlawful practices that the UCL makes independently

actionable.") (citations omitted).

Second, Plaintiffs may assert a claim under the "unfair" prong of the UCL under an

independent alternate theory. *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v.

MDL Info. Sys., Inc.*, No. C 04-05368 SI, 2006 WL 3218719, *4 (N.D. Cal. Nov. 7, 2006).

California UCL claims seeking equitable relief can be alleged in the alternative. *Byton N. Am. Co.

v. Breitfeld*, No. CV-19-10563-DMG (JEMx), 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020).

The Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those

claims are inconsistent. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–59 (9th Cir.

2007). UCL claims can proceed under the "unfair" prong where plaintiff allege an immoral,

unethical, oppressive or unscrupulous business practices that causes injury to consumers which

outweighs the utility of the practice. *Zeiger v. WellPet LLC,* 304 F. Supp. 3d 837, 852 (N.D. Cal.

2018). Plaintiffs allege that Defendants used Plaintiffs' licensed code without abiding by the

terms of the open-source licenses to train their commercial AI products (¶¶ 83–85, 94–96); that

certainly meets the threshold of being unfair. *Cf.*, *e.g.*, *Ojala v. Bohlin*, 178 Cal. App. 2d 292, 301

1   (1960) ("Unfair competition may consist of appropriating the property of another and selling it as

2   one's own.") (citation omitted). This is unfair under the UCL. ¶ 278.

3       Plaintiffs' allegations also allege a cause of action under the "fraudulent" prong. ¶ 279. A

4   UCL claim proceeding under the "fraudulent" prong may proceed by showing that "members of

5   the public are likely to be deceived" by the challenged AI Imaging output wrongfully associate

6   with their names. *Garcia v. Sony Comput. Entm't Am.*, LLC, 859 F. Supp. 2d 1056, 1062 (N.D.

7   Cal. 2012). By removing terms of the open-source licenses, Defendants deceive Copilot users

8   because users do not know the terms of the license they must follow *See*, *e.g.*, ¶¶ 131–34, 201.

9       Defendants argue Plaintiffs' UCL claim nonetheless fails because Plaintiffs have not

10  plausibly alleged the required "lost money or property." ECF No. 107 at 21. This is wrong. An

11  open-source license provides concrete and intangible rights and benefits—even in the absence of

12  a financial term, its violation results in injuries to property, including reputational harm. *See*

13  *Artifex Software*, 2017 WL 4005508, at *2–4; *Jacobsen*, 535 F.3d at 1379. Plaintiffs have suffered

14  economic harm in being denied the benefits of their open-source obligations. ¶¶ 243; 281.

15      **5.    Plaintiffs State a Claim for Negligence (Count 8)**

16      The elements of a claim for negligence are well-established. A plaintiff must establish: (1)

17  the defendant had a duty, or an "obligation to conform to a certain standard of conduct for the

18  protection of others against unreasonable risks," (2) the defendant breached that duty, (3) that

19  breach proximately caused the plaintiff's injuries, and (4) injury. *Corales v. Bennett*, 567 F.3d 554,

20  572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)). Plaintiffs have

21  pled these elements.

22      California courts consider several factors when deciding whether a duty of care exists,

23  including "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff

24  suffered injury, the closeness of the connection between the defendant's conduct and the injury

25  suffered, the moral blame attached to the defendant's conduct, the policy of preventing future

26  harm, the extent of the burden to the defendant and the consequences to the community of

27  imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and

28  prevalence of insurance for the risk involved." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039

(N.D. Cal. 2019) (quoting *Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 628, (2018) and *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968)); *see also Brown v. USA Taekwondo*, 11 Cal. 5th 204, 214 (2021) ("[T]he law imposes a general duty of care on a defendant only when it is a defendant who has '"created a risk"' of harm to the plaintiff, including when '"the defendant is responsible for making the plaintiff's position worse."'")). Further, these factors must be evaluated "at a relatively broad level of factual generality." *Id.* (quotation omitted).

Defendants argue that Plaintiffs' negligence claim fails because Plaintiffs fail to plead facts giving rising to a duty. ECF No. 107 at 22. But Defendants are wrong on the law—in California, a duty may arise out of a contract such that a party to a contract may have claims that sound in contract or tort. 6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 1201, p. 443 ("A duty may arise out of a contract, and negligent performance may be a tort as well as a breach of contract."); *see also Buxbom v. Smith*, 23 Cal. 2d 535, 548 (1944) ("A breach of contract is a wrong and in itself actionable. . . . It is also wrongful when intentionally utilized as the means of depriving plaintiff of his employees, and, . . . constitutes an unfair method of interference with advantageous relations").

In addition, Plaintiffs specifically allege that Defendants owed Plaintiffs a duty and they breach it. ¶¶ 283, 285–86. Tort liability may also arise where the tortfeasor has a "special relationship" with the injured party. Defendants GitHub and Microsoft owed Plaintiffs and other who maintained code in GitHub repositories. The duties included the duty to safeguard, keep, and maintain code in a secure fashion. Defendants breached that duty when they allowed others to take Plaintiffs' code for commercial purposes in violation of the open-source licenses.

A duty actionable in tort also arises where tortfeasor has a "special relationship" with the injured party. Plaintiffs must allege facts showing: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." *Vera Mona, LLC v. Dynasty Grp. USA LLC,* No. EDCV202615JGBKKX, 2021 WL 3623297, at *4 (C.D. Cal. Apr. 15, 2021).

A special relationship exists here. Plaintiffs are the providers of open-source code to GitHub (which started as an open-source community to foster such sharing), and Defendants induced Plaintiffs to upload their code under open-source based on GitHub's promises of being a safe place to do so. *Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10, 2006) (finding allegations that defendant, "[a]s custodians of the Representative Plaintiff's and the Class Members' personal and confidential information" "owe[d] a duty of care . . . to prevent access to such information by unauthorized third parties" sufficient). GitHub was created for the very purpose of fostering open-source communities. ¶¶ 155–166. Defendants induced Plaintiffs to post their code under open-source licenses on GitHub that provided Defendants a multibillion-dollar asset. ¶¶ 244–48. Defendants were well aware that the removal of CMI from Plaintiffs' code and violating other aspect of the licenses would affect Plaintiffs. The harm from that conduct to the licensors was foreseeable and intentional and directly resulted from that conduct. Whether this conduct is sufficiently blameworthy is, at a minimum, a question of fact and, making all reasonable inferences Plaintiffs' favor, should not be a basis for a motion to dismiss. *See Bass*, 394 F. Supp. 3d at 1039.

## IV.    CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss should be denied.

PLAINTIFFS' OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS

1  Dated: July 27, 2023                    By:    _/s/ Joseph R. Saveri_
2                                                  Joseph R. Saveri
3
4                                          Joseph R. Saveri (State Bar No. 130064)
5                                          Cadio Zirpoli (State Bar No. 179108)
                                           Christopher K.L. Young (State Bar No. 318371)
6                                          Louis A. Kessler (State Bar No. 243703)
                                           Elissa A. Buchanan (State Bar No. 249996)
7                                          Travis Manfredi (State Bar No. 281779)
                                           **JOSEPH SAVERI LAW FIRM, LLP**
8                                          601 California Street, Suite 1000
                                           San Francisco, California 94108
9                                          Telephone:    (415) 500-6800
                                           Facsimile:    (415) 395-9940
10                                         Email:        jsaveri@saverilawfirm.com
                                                         czirpoli@saverilawfirm.com
11                                                       cyoung@saverilawfirm.com
                                                         lkessler@saverilawfirm.com
12                                                       eabuchanan@saverilawfirm.com
                                                         tmanfredi@saverilawfirm.com
13
14                                         Matthew Butterick (State Bar No. 250953)
15                                         1920 Hillhurst Avenue, #406
                                           Los Angeles, CA 90027
16                                         Telephone:    (323) 968-2632
                                           Facsimile:    (415) 395-9940
17                                         Email:        mb@buttericklaw.com
18                                         _Counsel for Plaintiffs and the Proposed Class_
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS GITHUB AND MICROSOFT'S MOTION TO DISMISS