Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:         jsaveri@saverilawfirm.com
               czirpoli@saverilawfirm.com
               cyoung@saverilawfirm.com
               lkessler@saverilawfirm.com
               eabuchanan@saverilawfirm.com
               tmanfredi@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:         mb@butericklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| J. DOE 1 et al., <br><br>     Individual and Representative Plaintiffs, <br><br>     v. <br><br> GITHUB, INC., et al., <br><br>                     Defendants. | Case Nos.  4:22-cv-06823-JST <br>              4:22-cv-07074-JST <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS OPENAI, INC., OPENAI, L.P., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I, L.L.C., OPENAI STARTUP FUND I, L.P. AND OPENAI STARTUP FUND MANAGEMENT, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> Date:        September 14, 2023 <br> Time:       2:00 p.m. <br> Courtroom:  6, 2nd Floor <br> Judge:      Hon. Jon Tigar |

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ...................................... 2

       A.    The Court's Order on Defendants' Prior Motion to Dismiss ............................ 2

       B.    Plaintiffs' FAC and New Allegations .................................................. 3

III.   ARGUMENT ......................................................................................... 4

       A.    Plaintiffs Pled Sufficient Facts for Standing Under Article III Standing ............. 5

             1.    Plaintiffs Have Alleged Injury-in-Fact................................................ 6

       B.    Plaintiffs' FAC Satisfies Rule 8 and Defendants' Motion Should be Denied ..... 11

             1.    Plaintiffs' (Still) Plead a DMCA Claim Under Sections 1202(b)(1) and
                   1202(b)(3) ................................................................................ 11

             2.    Plaintiffs' Adequately Plead their State Tort Claims ............................. 16

IV.    CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, ___ F. Supp. 3d ___, 2023
WL 3366534 (S.D. Cal. May 9, 2023) ............................................................................ 16

*Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982, 2017 WL 4005508 (N.D. Cal.
Sep. 12, 2017) .................................................................................................... 20, 22, 23

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519
(1983) ............................................................................................................................... 4

*Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033 (N.D. Cal. 2014) ..................................................... 22

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................... 24, 25

*Behr Process Corp. v. RPM Int'l Inc.*, 2014 WL 12584385 (C.D. Cal. May 20, 2014) .................... 19

*Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*,
No. C 04-05368 SI, 2006 WL 3218719 (N.D. Cal. Nov. 7, 2006) ......................................... 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................................ 4

*Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268 (DLC), 2015 WL 8579023
(S.D.N.Y. Dec. 9, 2015) .............................................................................................. 14, 15

*Byton N. Am. Co. v. Breitfeld*, No. CV-19-10563-DMG, 2020 WL 3802700 (C.D. Cal.
Apr. 28, 2020) .................................................................................................................. 22

*Cappello v. Walmart Inc.*, 394 F. Supp.3 d 1015, 1023 (N.D. Cal. 2019) ...................................... 22

*ChromaDex, Inc. v. Elysium Health, Inc.,* 2017 No. SACV 16-02277-CJC(DFMX), WL
7080237 (C.D. Cal. Nov. 28, 2017) ................................................................................ 21

*Clapper v. Amnesty Int'l. USA*, 568 U.S. 398 (2013) ................................................................. 9, 10

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................................................ 4

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) ........................................................................... 23

*CRST Van Expedited, Inc. v. Werner Enters. Inc.*, 479 F.3d 1099 (9th Cir. 2007) .......................... 20

*Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL
5842756 (N.D. Tex. Nov. 7, 2019) .................................................................................. 12

*Doe 1 v. GitHub, Inc.*, Case No. 22-cv-06823, 2023 WL 3449131 (N.D. Cal. May 11,
2023) ........................................................................................................................*passim*

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) .................................................................. 4

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, Case No. 22-cv-01463, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ........................................................................................................................ 15

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) ...................................... 21

*Experian Mktg. Sols., Inc. v. List Service Direct, Inc.*, 2010 WL 11595830 (C.D. Cal. Apr. 21, 2010) ................................................................................................................................ 10

*Firoozyle v. Earthlink Network*, 153 F. Supp. 2d 1115 (N.D. Cal. 2001) ................................ 17

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016) ..................................... 12

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496, 2015 WL 263556 (D. Haw. Jan. 21, 2015) ................................................................................................................................ 15

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ...................................................................................................... 15

*Fry v. Ancestry.com Operations, Inc.,* No. 3:22-CV-140 JD, 2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) ................................................................................................................... 10

*Garcia v. Sony Comput. Entm't Am.*, LLC, 859 F. Supp. 2d 1056 (N.D. Cal. 2012) ................... 23

*ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) ..................................... 14, 15

*In re Bang Energy Drink Mktg. Litig.,* No. 18-CV-05758-JST, 2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ............................................................................................................... 21

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................................................................................... 24

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............................ 4

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................................................................................... 25

*Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561 (N.D. Cal. Mar. 26, 2019) ............................................................................................................................. 12

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) .................................................... 8, 19, 20, 23

*Jacobsen v. Katzer*, 609 F. Supp. 2d 925 (N.D. Cal. 2009) ...................................................... 17

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. C 07-3983JSW, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007) .................................................................................. 18

*Karter v. Epiq Sys., Inc.*, 2020 WL 11272318 (C.D. Cal. Nov. 9, 2020) ................................. 10

*Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999)................................. 16

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) ........................... 5

*Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134 (9th Cir. 2006)................................... 16

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D. Ill. 2014) ...........................................................................................................11

*Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836 (N.D. Cal. Oct. 25, 2022) .........................................................................................................12

*Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) ......................................17

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010) ...................................12

*Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov. 25, 2003) ..........................................................................................................12

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052 (N.D. Cal. 2016) ............... 17, 18

*Merideth v. Chi.Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) ............ 12

*Mollman v. Zoetop Bus. Co.*, No. CV 22–4128 (PA), 2022 WL 17207103 (C.D. Cal. Sep. 16, 2022) .........................................................................................................11

*Murphy v. Millennium Radio Grp.*, No. 08-1743 MAS, 2015 WL 419884 (D.N.J. Jan. 30, 2015) ..........................................................................................................12

*Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-cv-06226-EJD, 2020 WL 6700480 (N.D. Cal. Nov. 13, 2020)....................................................................................... 4, 14

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ................................. 12

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007) .................................. 23

*Pitchford v. Aelitis, SAS*, No. 8:12-CV-1897-T35-TGW, 2013 WL 12155928 (M.D. Fla. Apr. 11, 2013) .......................................................................................................17

*Shade v. Gorman*, No. C 08-3471 SI, 2009 WL 196400 (N.D. Cal. Jan. 28, 2009) ...................... 18

*Software Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 8:21-cv-01943-JLS-KES, 2022 WL 1527518 (C.D. Cal. May 13, 2022) ...............................................................17

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)............................................. 5, 6, 8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)........................................... 4

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ....................................6, 8, 10, 11

*Vera Mona, LLC v. Dynasty Grp. USA LLC,* No. EDCV 20-2615 ................................................ 25

*Versata Software, Inc. v. Ameriprise Fin., Inc.*, No. A-14-CA-12-SS, 2014 WL 950065
    (W.D. Tex. Mar. 11, 2014) ........................................................................................ 18

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ............................................ 5

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................................................ 6

*Williams v. Cavalli*, No. CV 14-06659-AB ...............................................................................11

*Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713 (N.D. Cal. Feb. 10,
    2006)................................................................................................................... 25

*Zeiger v. WellPet LLC,* 304 F. Supp. 3d 837 (N.D. Cal. 2018)........................................................ 23

**State Cases**

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021) .................................................................... 24

*Buxbom v. Smith*, 23 Cal. 2d 535 (1944) .............................................................................. 24

*Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134 (2003) ........................................... 19

*Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120 (1986)......................... 20

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (1996) ............................... 20

**Federal Statutes**

17 U.S.C. § 102 ......................................................................................................................17

17 U.S.C. § 103.......................................................................................................................17

17 U.S.C. § 106 ................................................................................................................. 17, 18

17 U.S.C. § 1202(b).........................................................................................................*passim*

17 U.S.C. § 1203(c) ................................................................................................................. 8

17 U.S.C. § 301(a) ............................................................................................................ 16, 17

17 U.S.C. § 411(a) ................................................................................................................. 12

**State Statutes**

Cal. Bus. & Prof. Code § 17200 et seq.......................................................................................22

PLAINTIFFS' OPPOSITION TO OPENAI'S MOTION TO DISMISS

**Rules**

Fed R. Civ. P. 60(b)(1) ........................................................................................... 11

Fed R. Civ. P. 8 ................................................................................................. 4, 11

Fed R. Civ. P. 12 .............................................................................................. 2, 4

**Other Authorities**

6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 1201 ..................................... 24

# I.   INTRODUCTION

Plaintiffs, in their First Amended Complaint ("FAC"), have addressed each of the pleading defects identified by the Court in Plaintiffs' initial complaint. Even so, the OpenAI Defendants (hereinafter, "OpenAI") maintain that Plaintiffs' FAC is still deficient, including for claims the Court has previously sustained.

First, Plaintiffs now allege their own code has been emitted without copyright management information ("CMI"), raising a plausible inference that Copilot has output their code before. Plaintiffs do so directly and, in addition, based on plausible inferences derived from the operation of Copilot. These are the same facts previously included for class members, other than the named Plaintiffs. As the Court found, such allegations were sufficient to show a substantial risk that Copilot outputs code in a manner that violates the underlying open-source licenses, thus satisfying Article III. Plaintiffs have made the same allegations with respect to the named Plaintiffs. Plaintiffs' FAC now alleges and demonstrates that Defendants' commercial generative AI product, Copilot, which OpenAI trained, can and does output—and therefore plausibly has output in the past—**these specific Plaintiffs' licensed code** without the code's CMI. The direct and foreseeable harm for which Plaintiffs are entitled to receive redress in the form of actual and statutory damages is concrete and actionable.

Second, the Court previously upheld Plaintiffs' Digital Millennium Copyright Act ("DMCA") claims under sections 1202(b)(1) and 1202(b)(3). OpenAI nonetheless repackages an argument they already litigated—and already lost—to assert that Plaintiffs have not adequately pled a DMCA claim. OpenAI appears to argue that Plaintiffs' more detailed FAC fails while the prior complaint was sufficient. Specifically, they claim the Court missed their argument that the DMCA requires identical copies in the first round of briefing. On the contrary—the Parties extensively briefed this issue. As Plaintiffs showed before, there is no such identicality requirement in the DMCA. And even if there were, Plaintiffs have alleged that Defendants made exact copies of Plaintiffs' code in order to train their AI product, from which Defendants knowingly removed Plaintiffs' CMI. This rehashing of arguments considered and dismissed by the Court is wasteful of judicial resources and should be rejected.

PLAINTIFFS' OPPOSITION TO OPENAI'S MOTION TO DISMISS

Third, Plaintiffs have now amended their claims to allege in detail with specificity how Defendants' unauthorized use of their code for training purposes violated their state law rights under California law in a manner not equivalent to or preempted by any copyright considerations. As the Court explained previously, the Copyright Act does not preempt cases based on the unauthorized use of software code. Any conflict of Plaintiffs' prior pleadings of their California law claims with the Federal copyright laws has now been cured. And, on the merits, they further adequately reallege the requisite economic harm to bring their claims. Thus, Plaintiffs' California law claims are now adequately alleged. The OpenAI Defendants' Motion to Dismiss the FAC (ECF No. 110; the "OpenAI Br.") should be denied.

## II.    FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

Plaintiffs allege that code they published to GitHub subject to open-source licenses was wrongfully used to train Defendants' Codex and Copilot products, in violation of federal and California law. By their amendment, Plaintiffs add additional allegations, specifically alleging that they suffered individually direct and concrete injury. Codex and Copilot have output their code without providing attribution and in violation of other terms of the licenses. This fact is supported by the pleading of specific facts and all the inferences to which Plaintiffs are entitled under Rule 12.

### A.    The Court's Order on Defendants' Prior Motion to Dismiss

In its prior Order, the Court upheld the sufficiency of Plaintiffs' allegations with respect to their claims for breach of contract and for violations of DMCA sections 1202(b)(1) and 1202(b)(3). 17 U.S.C. § 1202(b). ECF No. 95 (cited herein as *Doe 1 v. GitHub, Inc.*, Case No. 22-cv-06823, 2023 WL 3449131 (N.D. Cal. May 11, 2023)). The Court dismissed as to section 1202(b)(2). *Id*. at *13. The Court upheld Plaintiffs' contract claims based on breach of open-source license. *Id*. The Court dismissed the remainder of Plaintiffs' claims, granting leave to amend. *Id*. at *15

With respect to standing, the Court concluded that Plaintiffs sufficiently alleged facts showing "an imminent and significant harm" for claims for injunctive relief. *Doe 1*, 2023 WL 3449131, at *5. In particular, the Court found that according to Plaintiffs' allegations, there is at

least a substantial risk that Defendants' products will produce Plaintiffs' code as output. *Id.* at *5-6. With respect to damage claims, the Court concluded that Plaintiffs had not alleged facts sufficient facts for standing. *Id.* at *5, 7. In their original complaint, Plaintiffs had provided examples of how Codex and Copilot produce duplicate code with respect to other coders, without alleging that Codex and Copilot had done so with respect to the code of the named Plaintiffs. *E.g.*, ECF No. 1, ¶¶ 48-77. Specifically, the Court noted that "while Plaintiffs identify several instances in which Copilot's output matched licensed code written by a Github user, none of these instances involve licensed code published to GitHub by Plaintiffs." *Id.* at *5 (citation omitted and cleaned up).

**B.    Plaintiffs' FAC and New Allegations**

Plaintiffs' FAC asserts claims on behalf of Doe 5, an additional individual and representative class Plaintiff (Doe 5). Plaintiffs, and each of them, maintain their claims under Sections 1202(b)(1) and 1202(b)(3) under the Digital Millennium Copyright Act, ¶¶ 183-213[1] (Count 1); and breach of contract, ¶¶ 214-29 (Count 2) that were upheld by the Court. Plaintiffs add new allegations giving rise to claims for breach of contract for selling licensed materials in violation of GitHub's policies, ¶¶ 230-40 (Count 3); intentional interference with prospective economic relations, ¶¶ 241-53 (Count 4); negligent interference with prospective economic relations, ¶¶ 254-65 (Count 5); a realleged unjust enrichment claim, ¶¶ 266-74 (Count 6); a cured unfair competition claim, that also alleges violations of the unfair and fraudulent prongs in the alternative, ¶¶ 275-81 (Count 7); and a realleged negligence claim, ¶¶ 282-89 (Count 8). Plaintiffs' FAC also now asserts additional facts showing that Plaintiffs suffered particularized harm by specifying how Codex and Copilot output code that matches or nearly matches their code copied from GitHub without providing the required attribution and in violation of the terms of their licenses.

Specifically, Plaintiffs provide examples of Copilot emitting Plaintiffs' code as output with only minor cosmetic changes that do not alter its function or essential expressive content.

---

[1] All "¶ ___" citations are to the FAC unless otherwise indicated.

*E.g.*, ¶¶ 100-104 (Doe 2's code); 105-12 (Doe 1); 113-28 (Doe 5). The sample outputs from Copilot are sufficiently distinctive to prove that Copilot could have only cribbed its answers from one place: Plaintiffs' GitHub repositories. *E.g.*, ¶¶ 103, 110, 119. These examples illustrate the typical behavior of Copilot, and raise a plausible inference that Plaintiffs' code has also been output in the past. ¶ 97. Further, while Plaintiffs have been able to detect these examples of Copilot emitting their code without following the terms of the underlying open-source licenses, Defendants entirely control all records of when and how many times Plaintiffs' code has actually been emitted. ¶¶ 127-28. These allegations suffice to establish Plaintiffs standing to sue for damages to redress the harm caused to Plaintiffs themselves.

## III.   ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly*, 550 U.S. at 569 n.14, 570. The statements alleged in the complaint must provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." (citation omitted)). The court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Moreover, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "Dismissal 'is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Neo4j, Inc. v. Graph Found., Inc.*, No. 5:19-cv-06226-EJD, 2020 WL 6700480, at *2 (N.D. Cal. Nov. 13, 2020) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). The same standard applies with respect to standing. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also*

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (at the pleading stage, a plaintiff "need only show that the facts alleged, if proved, would confer standing upon him"); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989–90 (9th Cir. 2000) (same).

**A.   Plaintiffs Pled Sufficient Facts for Standing Under Article III Standing[2]**

Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

OpenAI continues its standing challenge. OpenAI claims that Plaintiffs have not demonstrated injury-in-fact because they claim that, with respect to Does 1 and 2, Plaintiffs have failed to demonstrate their injuries existed at the start of the action. OpenAI Br. at 7. OpenAI further claims that Plaintiffs have manufactured their injury. *Id.* But Plaintiffs have pleaded specific facts showing that their code was emitted by Codex and Copilot and as a result suffered particular personalized injury. The facts Plaintiffs have pleaded lead to the inference—and ineluctable conclusion—*their* code was copied as training material, Defendants removed *their* CMI, Defendants embedded *their* code in Copilot, that Copilot emitted *their* code in violation of their open-source licenses, and Defendants marketed and sold Copilot to the public for these purposes. ¶¶ 94-128. These facts are not only specifically alleged, they are supported by detailed allegations providing a demonstration that, when prompted, Copilot produces Plaintiffs' code. The detailed step-by-step explanation of how Plaintiffs' code is easily produced in response to straightforward instructions from Copilot leads to a reasonable inference that Plaintiffs' code *already has been* emitted. ¶ 97. Plaintiffs allege this conduct has caused them injury in the past, and, as the conduct continues, will suffer injuries in the future.

---

[2] Defendants do not challenge Plaintiffs' Article III standing to seek injunctive relief.

1

### 1.    Plaintiffs Have Alleged Injury-in-Fact

In a class action, plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan,* 504 U.S. at 560 n.1); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." (quoting *Raines v. Byrd,* 521 U.S. 811, 819 (1997))). Plaintiffs have now alleged injury personal to them.

The allegations that Plaintiffs were the authors and licensors of code maintained in GitHub repositories and that they suffered injury when that code was emitted in contravention of the license satisfy this standing requirement. *See Warth*, 422 U.S. at 502. Plaintiffs have expressly made these allegations. *E.g.*, ¶¶ 97, 100-28. They were personally injured—and they will be injured in the future—when Codex and Copilot emitted their code. The injury is concrete. Plaintiffs are entitled to redress, in the form of money damages, for each such incident.

The Court has recognized this in its prior standing ruling. In the prior Complaint, Plaintiffs had alleged, supported by demonstrative examples, that Codex and Copilot replicate matched class member code essentially verbatim. With respect to Article III, the Court held this was sufficient for injunctive relief claims. *See Doe 1*, 2023 WL 3449131, at *6 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988)). With respect to claims for damages, the Court ruled that "*Plaintiffs do not allege that they themselves have suffered the injury they describe*, they do not have standing to seek retrospective relief for that injury." *Id.* at *5 (emphasis added).

Plaintiffs directly address this criticism. They have amended their allegations, adding specific allegations that they have suffered the classwide injury they describe. Plaintiffs allege that Codex and Copilot have emitted code which matches their code, in violation of the attached license, directly causing injury to them as a result. These allegations are plausible, highly likely and indeed, virtually certain. One can reasonably infer this to be the case because copies of *their*

code exist within Copilot and further, that code has been emitted when the program is queried. ¶¶ 97-128. Plaintiffs' demonstrations of Copilot's capacity to output Plaintiffs' code establishes that the past harm to them is very real: (1) Defendants did in fact copy Plaintiffs' licensed computer code when it scraped and copied code from GitHub repositories, and inclusion in Codex and Copilot without Plaintiffs' consent; (2) that Copilot removed and/or altered the CMI from copies of Plaintiffs' code that it ingested, breaking the chain and purpose of Plaintiff's open-source licenses; and (3) that Copilot plausibly has emitted Plaintiffs' licensed computer code in violation of Plaintiffs' open source licenses.

Plaintiffs' allegations that the chance that Copilot has emitted their code in violation of their licenses is a near statistical certainty, considered with these exemplary demonstrations, are sufficient to plead standing for damages here. ¶¶ 94-95; *see also* ¶¶ 97 ("Because Copilot was trained on all available public GitHub repositories, if Licensed Materials have been posted to a GitHub public repository, Plaintiffs and the Class can be reasonably certain it was ingested by Copilot and is sometimes returned to users as Output"); 127 ("It is therefore likely if not certain that verbatim, near-verbatim or modified copies of each Plaintiffs' code have already been emitted by Copilot.").

The Court has already acknowledged there is at least a substantial risk that Defendants' products will produce Plaintiffs' code as output. *Doe 1*, 2023 WL 3449131, at *6-7. As the Court found, "Plaintiffs thus plausibly allege that, absent injunctive relief, there is a realistic danger that Codex or Copilot will reproduce Plaintiffs' licensed code as output." *Id.* at *6. Now that Plaintiffs have shown their code has been ingested by Copilot, and Copilot has emitted Plaintiffs' code, Plaintiffs, supported by the reasonable inferences to which they are entitled, have standing to seek damages for their retrospective harm. *See id.* at *5. The logic underlying the conclusion that Article III standing exists for injunctive relief leads to the same conclusion with respect to damages claims for the named Plaintiffs. The conclusion rests on the same set of facts and is no different than those the Court recognized leads to the conclusion that there is a substantial risk that Defendants' programs will reproduce Plaintiffs' licensed code as output in the future, sufficient for Article III standing for injunctive relief. *Doe 1*, 2023 WL 3449131, at *5-7. With the

FAC, Plaintiffs have further alleged that their work has already been output and their licenses repeatedly violated. ¶¶ 93-97, 127.

The injuries plaintiffs have sustained, and the resulting consequential damages are straightforward and foreseeable. First, with respect to claims under the DMCA, Plaintiffs are entitled to receive actual or statutory damages for harm to their property, i.e., their code and the licenses attached to it. 17 U.S.C. § 1203(c). This is sufficient under Article III. *See TransUnion*, 141 S. Ct. at 2204 ("The most obvious are traditional tangible harms, such as physical harms and monetary harms"). Moreover, the fact that Congress has created a statutory private right of action, with attendant actual or statutory damages, is significant. As the Court in *TransUnion* noted, "[i]n determining whether a harm is sufficiently concrete to qualify as an injury in fact, the Court in *Spokeo* said that Congress's views may be 'instructive.' 578 U.S. at 341[]. Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *Id.* at 2204 (citing *Spokeo*, 578 U.S. at 340–41). Less tangible types of harm, including reputational harm, are also sufficiently concrete for purposes of Article III. *Id*. at 264. ("Various intangible harms can also be concrete . . . Those include, for example, reputational harms . . ." (*citing Meese v. Keene*, 481 U. S. 465, 473 (1987) (reputational harms)).

As courts acknowledge, "there are substantial benefits, including economic benefits, to the creation and distribution of open-source code subject to these open-source licenses." ¶ 243; *see Jacobsen v. Katzer*, 535 F.3d 1373, 1378–79 (Fed. Cir. 2008) ("a programmer or company may increase its national or international reputation by incubating open source projects"). In addition to the reputational benefits personal to licensors, open-source licenses also promote and advance more generalized interests, market share for programs and code and the ability to trace and discover new improvements to their open-source projects which are part of the bargain. ¶ 243; *see also* ¶ 245. When Copilot emits their code in violation of their open source licenses. Plaintiffs are denied the bargained for benefit of those licenses, including those particular to them. These are concrete harms sufficient to confer Article III standing. *Jacobsen*, 535 at 1379; *see also TransUnion*, 141 S. Ct. at 2204 (describing "reputational harms" as among the "injuries with a close

relationship to harms traditionally recognized as providing a basis for lawsuits in American courts").

Having planted the goalposts when attacking the initial complaint, Defendants now attempt to move them. *See Doe 1*, 2023 WL 3449131 at *4-7. According to OpenAI, Plaintiffs still fail to adequately plead Does 1 and 2 have standing for damages, even though Plaintiffs now allege with specificity how *their* code has been copied and integrated into Copilot, which can be prompted to output *their* code without CMI. ¶¶ 100-12. OpenAI makes two arguments. First, they argue that despite Plaintiffs' exemplary allegations, that at least with respect to Does 1 and 2, "these plaintiffs have not alleged that Copilot generated this output before this action was commenced."[3] OpenAI Br. at 7. Second, OpenAI argues that with respect to Does 1, 2 and 5, the allegations showing Copilot outputs their code are still deficient because Plaintiffs fail to argue Copilot generated this output for anyone other than Plaintiffs.

OpenAI misapprehends the FAC's allegations. The facts alleged give rise to the reasonable inference that the harm to Plaintiffs—compensable by monetary damages—occurred in the past and that the continuing conduct will cause such harms until abated. Plaintiffs allege how Copilot emits copies of training material. ¶ 94. Plaintiffs further allege, "these are only a few examples of Plaintiffs' code being reproduced by Copilot . . . Multiplied across the many users of Copilot and the many times Copilot is prompted, each day theses violations must be occurring with astonishing frequency. It is therefore likely if not certain that verbatim, near-verbatim or modified copies of each Plaintiffs' code have already been emitted by Copilot." ¶ 127. Thus, by either direct allegation or reasonable inference, Plaintiffs' allegations when taken together, demonstrate Plaintiffs have been harmed by Defendants' conduct.

Defendants' claim that Plaintiffs have somehow manufactured injury is incorrect. *See Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm

---

[3] The OpenAI Defendants do not raise this challenge with respect to Doe 5's code.

that is not certainly impending."). [4] Plaintiffs have not undertaken conduct in order to give rise to a claim. Plaintiffs placed their code in the open-source repositories long ago, long before those licenses were taken, stripped of CMI and emitted to users by Codex and Copilot. The facts Plaintiffs allege constitute well pleaded particularized facts supporting the plausible inference that Codex and Copilot emitted and emit verbatim matched code subject to Plaintiffs' open source licenses. Requiring a Plaintiff to do more when all information about what code has been emitted is in the hands of Defendants would be unfair and raise the Article III standing requirement to an evidentiary burden while denying Plaintiffs the discovery rights to prove it. [5]

To the extent Defendants maintain that Plaintiffs lack standing because Plaintiffs' code has never been emitted *at all*, this dispute can be resolved after the Parties have had adequate discovery. *See, e.g.*, *Karter v. Epiq Sys., Inc.*, 2020 WL 11272318, at *2 (C.D. Cal. Nov. 9, 2020) (denying motion to dismiss on standing grounds without prejudice where "the key question relevant to whether Plaintiff has standing . . .is whether Plaintiff's social security number could have been on Defendant's systems at the time of the ransomware attack."); *Experian Mktg. Sols., Inc. v. List Service Direct, Inc.*, 2010 WL 11595830, at *1 (C.D. Cal. Apr. 21, 2010) (denying motion to dismiss on standing grounds). [6]

---

[4] In *Clapper*, Plaintiffs could "establish standing by asserting that they suffer present costs and burdens that are based on a fear of surveillance. . . ." 568 U.S. at 416. The Court held that "because the harm respondents seek to avoid is not certainly impending. In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id*. Here, as the Court has already found plaintiffs allegations show the significant risk of harm in the future. *Doe 1*, 2023 WL 3449131, at *6. Moreover, there is no allegation of harm which Plaintiffs "inflict[ed] . . . on themselves" or "based on theirs fears of hypothetical future harm." *See Clapper*, 568 U.S. at 416. Plaintiffs do not base their claims on acts they voluntarily took to put them in harm's way.

[5] Indeed, Defendants were free to submit evidence showing that Plaintiffs did not have standing. *See Fry v. Ancestry.com Operations, Inc.*, No. 3:22-CV-140 JD, 2023 WL 2631387, at *6 (N.D. Ind. Mar. 24, 2023) (explaining that a "court may look at evidence submitted on the issue where external facts call the court's jurisdiction [under Article III] in to question on motion to dismiss." (citing *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017))).

[6] In *TransUnion*, the issue of standing was resolved after discovery. There, discovery showed there were 1853 class members whose private information was disclosed to third-party businesses and 6332 class members whose private information was stipulated to be undisclosed. *See*

---

PLAINTIFFS' OPPOSITION TO OPENAI'S MOTION TO DISMISS

**B.      Plaintiffs' FAC Satisfies Rule 8 and Defendants' Motion Should be Denied**

    **1.      Plaintiffs' (Still) Plead a DMCA Claim Under Sections 1202(b)(1) and 1202(b)(3)**

Plaintiffs have pled all the elements of a DMCA violation. The Court has already sustained the DMCA claim under Sections 1202(b)(1) and 1202 (b)(3) from Plaintiffs' prior complaint. See *Doe 1*, 2023 WL 3449731, at *13. Defendants seek another bite at the apple on spurious grounds. Defendants again claim that under Section 1202(b) must be based on an "identical" copy of a work. Id. Defendants claim the Court did not reach this argument in its prior Order, and in so doing, the Court overlooked or ignored their argument. Given that the FAC contains all the same allegations as before—and now more—Plaintiffs' DMCA claim likewise survives here for all the same reasons identified by the Court the last time. *Id*. at *10-13.[7]

As previously explained, Section 1202(b) of the DMCA imposes liability for the removal or alteration of copyright management information ("CMI").[8] 17 U.S.C. § 1202(b); *Doe 1*, 2023 WL 3449131, at *11. Section 1202(c), which describes protected categories of CMI, has been interpreted broadly. *See Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *3 (C.D. Cal. Feb. 12, 2015); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102 (N.D. Ill. 2014). The pleading burden under the DMCA is low. *See Mollman v. Zoetop Bus. Co.*, No. CV 22–4128 (PA) (GJSx), 2022 WL 17207103, at *3 (C.D. Cal. Sep. 16, 2022).

---

*TransUnion*, 141 S. Ct. at 2209. The Court ruled that the first group had standing, but the second did not. *Id*. at 2212-13. Given that Defendants possess this information, Plaintiffs' claims should not be dismissed on standing grounds until discovery can be taken.

[7] Plaintiffs note that were the Court to have missed an argument, Defendants were required to move for relief pursuant to Rule 60. *See* Fed R. Civ. Pro 60(b)(1) ("[T]he court may relieve a party . . . from a[n] . . . order" for "mistake, inadvertence, surprise, or excusable neglect"). They have not done so.

[8] Section 1202(c) provides, in pertinent part, "[a]s used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work[.]"

"Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)." *Merideth v. Chi.Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). As long recognized by the Ninth Circuit, "direct proof of one's specific wrongful intent is rarely available" and such knowledge or intent can be inferred through circumstantial evidence. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (internal quotation marks omitted). "'[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally'" for purposes of pleading Section 1202(b)'s mental state requirements. *Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836, at *9 (N.D. Cal. Oct. 25, 2022) (citations omitted). Further, "[n]othing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit. While a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for copyright infringement, claims under the DMCA are, however, simply not copyright infringement claims and are separate and distinct from the latter." *Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003).[9]

### a. Plaintiffs Have (Once Again) Pled All Elements of a Section 1202(b) Violation, including Removal of CMI

Therefore, a claim for a copyright management information ("CMI") violation under the DMCA requires the plaintiff to plead: "(1) the existence of CMI on the infringed work, (2) removal or alteration of that information, and (3) that the removal or alteration was done intentionally." *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1286-87 (C.D. Cal. 2022). The plaintiff must also plead the requisite scienter. *Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561, at *3-4 (N.D. Cal. Mar. 26, 2019). Scienter, however, need not be alleged with specificity. *Id.*

---

[9] A DMCA claim does not require proof of infringement. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 950-52 (9th Cir. 2010) (rejecting infringement nexus requirement for DMCA claims). Because a DMCA claim does not require proof of infringement, fair use is not a defense. *See Murphy v. Millennium Radio Grp.*, No. 08-1743 MAS, 2015 WL 419884, at *5 (D.N.J. Jan. 30, 2015) ("A claim under § 1202(b) does not necessarily attack non-infringing fair uses of copyrighted works—it targets conduct that does harm to identifying information that helps to protect the copyright holder, such as CMI."); *see also Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019) ("a DMCA action under section 1202(b) is not an action for infringement").

Briefly summarized, however, Plaintiffs have alleged they make their code available subject to open-source licenses, which include at least three types of CMI: (1) the name of the owner; (2) a copyright notice, and (3) the terms of the applicable license; and that the relevant CMI was affixed to their licensed code. *See* 17 U.S.C. § 1202(c); ¶¶ 104, 112, 120. Plaintiffs have alleged that Defendants were aware that such CMI appeared repeatedly across the data used to train Codex and Copilot, and that such CMI was important for protecting copyrights interests. ¶¶ 86-89.  Plaintiffs alleged that Defendants coded their programs to ignore or remove CMI in order to stop reproducing CMI as output. ¶¶ 131-32.

The Court has already held that Plaintiffs adequately allege their licensed code contains CMI, that Defendants were aware such CMI appeared repeatedly across the data used to train Codex and Copilot, that Defendants subsequently trained these programs to "ignore or remove CMI and therefore stope producing it," and that Defendants knew these programs reproduced training data as output. *Doe 1*, 2023 WL 3449731, at *13. The Court has already held "Plaintiffs thus plead sufficient facts to support a reasonable inference that Defendants intentionally designed the programs to remove CMI from any licensed code they reproduce as output." *Id*. Defendants removed or altered the CMI from licensed code, distributed CMI knowing CMI had been removed or altered. These allegations are still sufficient to plead a DMCA claim under Sections 1202(b)(1) and 1202(b)(3). *Doe 1*, 2023 WL 3449131, at *12-13.

### b.     Plaintiffs' Section 1202(b) Claim Does Not Require Dismissal

Defendants take another shot at the DMCA claim, bizarrely insisting the DMCA claim must now be dismissed, even though Plaintiffs offer more detail to support their already-upheld claim. OpenAI Br. at 12-14. OpenAI claims that Plaintiffs' additional allegations do not show CMI removal at all (OpenAI Br. at 11-12), but they ignore the allegations that Plaintiffs publish their code *subject to open source licenses. E.g.*, ¶¶ 101 (Doe published code subject to the GNU General Public License v3.0); 106 (Doe 1 published code subject to the MIT License); 122 (Doe 5 published code subject to the MIT License). It is the fact that those licenses were not reproduced when required that form the basis of Plaintiffs' DMCA claim. ¶¶ 104, 112, 120, 126. Notably, OpenAI provides no authority to the contrary. Indeed, courts have held that removal of open

source licenses constitutes a Section 1202(b) violation even when that CMI was originally located in a separate file. *Neo4j*, 2020 WL 6700480 at *3, 5 (sustaining a claim under Section 1202(b) for removal of CMI "which is conveyed in a 'LICENSE.txt' file connection with each source code file").

OpenAI again claims that under Section 1202(b) must be based on an "identical" copy of a work. *Id.* OpenAI suggests the Court did not reach this argument in its prior Order, and in so doing, appear to assume that since the Court did not specifically address the issue in its Order, it must have missed it. But this argument has been extensively (and exhaustively) briefed.[10] Given the amount of ink spilled, it is plain that this argument has been considered, and found wanting.

Section 1202(b) has no requirement that the copy from which CMI is removed be identical. *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) ("[T]he definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work."). Courts have recognized that code itself can include CMI. *ICONICS*, 192 F. Supp. 3d at 272 (copyright headers "comprised of relatively human-readable text at the top of a file of code" which includes a statement the material is confidential and then "provide[s] the name of the original author of the file" is "paradigmatic CMI"); *Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015) ("Weaving CMI into the text of the source code may be among the most efficient or security-enhancing ways to include CMI with that code."). The "copy" need not include the entire underlying work. *ICONICS*, 192 F. Supp. 3d at 272 ("[T]he definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work."). Indeed, courts have allowed Section 1202(b) claims to proceed where CMI that was incorporated into a work was removed, which would necessarily

---

[10] *See*, *e.g.*, ECF Nos. 50 at 13-14 (Defendants GitHub and Microsoft previously arguing that the DMCA "require the active step of removal or alteration of CMI in connection *with an identical copy of the work*") (emphasis added); 53 at 9-10 (OpenAI arguing that "[w]here a defendant makes a copy of a defendant's work that is substantially similar, but not identical, to the plaintiff's work, and omits CMI from that copy, there may be a claim for copyright infringement, but there cannot be a claim under § 1202"); 66 at 8 (Plaintiffs' opposition to GitHub and Microsoft's prior motion to dismiss); 67 at 18-19 & n.11 (Plaintiffs' opposition to OpenAI's prior motion to dismiss); *see also* ECF No. 73 at 8-9 (OpenAI rearguing at reply that the DMCA requires identicality).

mean that the infringing copy would not be identical. *E.g.*, *ICONICS*, 192 F. Supp. 3d at 273; *Bounce Exch.*, 2015 WL 8579023, at *2–4.

Critically, this case is about the copying of licensed code. ¶¶ 50 ("the Output is often a near-identical reproduction of code from the training data"); 91; 94 (conceding "that in ordinary use, Copilot will reproduce passages of code verbatim" at least 1% of the time); 96 ("Though Output from Copilot is often a verbatim copy, even more often it is a modification: for instance, a near-identical copy that contains only semantically insignificant variations of the original Licensed Materials, or a modified copy that recreates the same algorithm."). Plaintiffs have alleged that Copilot has copied their code because Copilot emitted near-matches of their code. *E.g.*, ¶¶ 103, 104, 112, 119 127. The examples cited by Plaintiffs demonstrate that their code was copied from GitHub repositories because these code samples are distinctive—they are found in only one place, Plaintiffs' repositories. ¶¶ 103, 108. Each of these examples were published subject to open-source licenses with CMI, and none of that CMI was emitted with Copilot. ¶¶ 104, 112, 120, 126. That the emissions were not exact or identical is of no moment when the allegations make clear that Defendants copied Plaintiffs' code in order to train Codex and Copilot.

OpenAI again cites *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496 SOM/BMK, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015) for support. Tellingly, OpenAI cites *Frost-Tsuji*'s order on motion for reconsideration. OpenAI *does not* cite *Frost-Tsuji*'s original summary judgment opinion, which reveals why their reliance on *Frost-Tsuji* is misplaced. *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282, (D. Haw. Nov. 7, 2014). As the *Frost-Tsuji* court made plain, the *Frost-Tsuji* court granted summary judgment because "'[v]irtually identical' plans could have been created by redrawing Frost-Tsuji's plans and not including Frost-Tsuji's copyright management information[.]" *Id.* at *5. Indeed, as demonstrated by *Dolls Kill, Inc. v. Zoetop Bus. Co.*, Case No. 22-cv-01463, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022), the lack of identicality can only undermine the inference there was copying where no such allegations are made. *Id.* at *4 ("The differences between the parties' products *undercut any inference* that Defendants removed or altered Plaintiff's CMI." (italics

added).[11] In cases where there are allegations that Defendant copied Plaintiffs' original work in its original form as Plaintiffs allege here, no such inference need be drawn.[12]

### 2.    Plaintiffs' Adequately Plead their State Tort Claims [13]

#### a.    Plaintiffs' California Law Claims Are Not Preempted by the Copyright Act

OpenAI argues Plaintiffs' state law claims are preempted by Section 301 of the Copyright Act. 17 U.S.C. § 301(a). But they are mistaken. As this Court acknowledged in its prior Order, "state law tort claims concerning unauthorized use are not preempted by the Copyright Act." *Doe 1*, 2023 WL 3449131, at *10  ("A state law tort claim concerning the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act") (citing *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005)). As Plaintiffs have clarified in their FAC, *all* Plaintiffs' claims brought under California state law are premised on the unauthorized use of Plaintiffs' code for training purposes by Codex and Copilot without their consent and the removal of their CMI. *See* ¶¶ 221, 235, 248–49, 257–59, 269–71. Because Plaintiffs seek to vindicate their rights under California law for unauthorized use, which is not an exclusive right under the Copyright Act, their California law claims are not preempted.

The Ninth Circuit uses a two-part test to analyze whether the Copyright Act preempts a state law claim. *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1139 (9th Cir. 2006). Courts must first "decide 'whether the "subject matter" of the state law claim falls within the subject

---

[11] *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, ___ F. Supp. 3d ___, 2023 WL 3366534 (S.D. Cal. May 9, 2023) similarly involved a case where copies could have been made by independent reconstruction without removal of CMI. *Advanta-STAR* involved car comparisons that were alleged to have been copied that "contain largely the same facts about the same vehicles" "but those facts were presented in very different ways." *Id.* at *7.

[12] Defendants cite *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999), but in that case, users could click on the supposedly infringing thumbnail and "[a] user who did this was given the name of the Web site from which Defendant obtained the image, *where any associated copyright management information would be available.*" *Id.* at 1122 (emphasis added). Here, there are no allegations nor evidence that Codex or Copilot users can access the original CMI.

[13] Plaintiffs filed a correction of the FAC to properly identify "California" as the state under which Counts 2-8 were brought on July 21, 2023. Defendants suffered no prejudice as Defendants' motion to dismiss was based on California law as to Plaintiffs' state law claims.

matter of copyright as described in 17 U.S.C. §§ 102 and 103.' Second, assuming it does, [courts]
determine 'whether the rights asserted under state law are equivalent to the rights contained in
17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.'" *Maloney v.
T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citations omitted, quoting *Laws*, 448 F.3d at
1137–38); *see also Firoozyle v. Earthlink Network*, 153 F. Supp. 2d 1115, 1122–23 (N.D. Cal. 2001)
("After all, section 301(a) only preempts state-law claims where the work involved falls within
the general subject matter of the Copyright Act and the rights that the plaintiff asserts under state
law are equivalent to those protected by the Act"). "'To survive preemption, the state cause of
action must protect rights which are qualitatively different from the copyright rights,' and the
'state claim must have an extra element which changes the nature of the action.'" *Software
Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 8:21-cv-01943-JLS-KES, 2022 WL 1527518, at*3
(C.D. Cal. May 13, 2022); *see also Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 933 (N.D. Cal. 2009)
("In other words, to survive preemption, the state cause of action must protect rights which are
qualitatively different from the copyright rights.") (citation omitted).

Plaintiffs allege that Codex and Copilot have taken Plaintiffs' code and used Plaintiffs'
code as training data impermissibly without their consent. ¶ 97. As the FAC alleges, it is that
**wrongful use** that that underlies Plaintiffs' California law claims and violates their open-source
licensing rights. Plaintiffs' California law claims are not predicated on the reproduction,
distribution, performance, or any of the other exclusive rights brought under the Copyright Laws.
17 U.S.C. § 106; *see Doe 1*, 2023 WL 34493131, at *10 ("'The [exclusive] rights under the
Copyright Act include the rights of reproduction, preparation of derivative works, distribution,
and display'") (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 760 (9th Cir. 2015)); *see also
Pitchford v. Aelitis, SAS*, No. 8:12-CV-1897-T35-TGW, 2013 WL 12155928, at *5 (M.D. Fla. Apr.
11, 2013) (finding no preemption where "Plaintiff also claims that Defendants failed to comply
with the terms of their agreement which required attribution to all contributors to the software,
. . . , and to maintain Plaintiff's software as an open source.").

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052 (N.D. Cal. 2016) is
distinguishable. OpenAI Br. at 8. The rights implicated here by Defendants' misuse of Plaintiffs

code are qualitatively different than those enumerated in section 106 of the Copyright Act. *Media.net* was a straightforward copyright claim regarding HTML code that was copied by a competitor for the exact same commercial purpose for which Plaintiff registered their copyright. *Id.* at 1057. *Media.net* involved unauthorized copying. *See id.* at 1073–74. There was no unauthorized use of Plaintiffs' code or removal of Plaintiffs' CMI from that code. The use in contravention of the open-source licenses and the duties and obligations that derive therefrom distinguishes Plaintiffs' prospective economic advantage claims qualitatively from copyright claims. *See Versata Software, Inc. v. Ameriprise Fin., Inc.*, No. A-14-CA-12-SS, 2014 WL 950065, at *5 (W.D. Tex. Mar. 11, 2014) ("Copyright law imposes no open source obligations").[14]

Plaintiffs negligence claim is based on duties beyond limitations on reproduction, distribution, performance, or any of the other rights protected by copyright. Defendants owed Plaintiffs a duty of care not to prevent others from using their code to train AI products. They also had a duty to make sure they themselves did not misuse Plaintiffs' code either. The conduct Plaintiffs seek to redress are separate and apart from those the Copyright Act seeks to vindicate.

### b.     Plaintiffs State a Claim for Intentional and Negligent Interference with Economic Relations (Counts 4 & 5)

OpenAI argues Plaintiffs fail to state a claim for intentional or negligent interference with prospective economic relations. ECF No 107 at 18–19. This is not well taken. The elements for intentional interference with prospective economic relationships or advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual

---

[14] OpenAI's citation to *Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. C 07-3983JSW, 2007 WL 4532214, at *9 (N.D. Cal. Dec. 19, 2007) to argue Plaintiffs' unjust enrichment claim is preempted is similarly unavailing. ECF No. 109 at 9. Again, *Jonathan Browning* involved a copyright claim where sconces were copied from plaintiff's designs. 2007 WL 4532214, at *9. Similarly, *Shade v. Gorman*, No. C 08-3471 SI, 2009 WL 196400, at *5 (N.D. Cal. Jan. 28, 2009) involved straightforward copyright infringement claims as well. *See id.* ("[T]he gravamen of these claims is that defendant surreptitiously copied plaintiff's raw footage and photographs").

disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1153 (2003) (cleaned up). A claim for negligent interference with prospective economic advantage overlaps, also requiring an economic relationship and knowledge. This claim, however, requires only proof that "the defendant was negligent" and that "such negligence caused damage to plaintiff in that the relationship was actually interfered with or disputed and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *Behr Process Corp. v. RPM Int'l Inc.*, 2014 WL 12584385, at *4 (C.D. Cal. May 20, 2014) (citing *N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 746, 786 (1997)). Plaintiffs have alleged all these elements.

  ***Economic Relationship with the Probability of Future Economic Benefit.*** Plaintiffs' FAC alleges how they publish their code subject to open-source licenses in order to develop specific economic relationships with the community of open-source users. ¶ 4. Indeed, that is the point of open-source—the relationships with the community of users of their open-source code on GitHub are the specific economic relationships Defendants are intentionally interfering with by knowingly copying and stripping Plaintiffs' code of its CMI, which ignores and breaks Plaintiffs' open-source licensing relationships and communities every time Copilot outputs Plaintiffs code without its CMI. ¶ 242 ("When a programmer uses an open-source software, a contract is formed based on the terms of the particular open-source license."); ¶¶242–48, 256–58. These relationships have been recognized by courts as economic benefits, and the interruption of these relationships has been found to constitute cognizable injury. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1378–79 (Fed. Cir. 2008).

  ***Defendants' Knowledge of the Economic Relationship.*** Plaintiffs also adequately allege Defendants were aware of these relationships, including those of open-source communities. In fact, GitHub was designed specifically to foster them. ¶¶ 244–48; 258–60. Plaintiffs allege that these user communities "create the probability of future economic benefit in a number of ways" including community software debugging, coding help, coding recognition and exposure that can result in licensing contracts. ¶¶ 245–46. "Where a contract exists, it identifies the particular interest with which the defendant has allegedly interfered and hence serves to establish both the

fact and the amount of the plaintiff's resulting damages." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996). In any event, under California law, plaintiffs are not required to plead with specificity the name or identity of the injured party to recovery for intentional interference of prospective economic advantage. *See Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1133 (1986) (citing Restatement (Second) of Torts § 766 com. *p.* pp. 15–16.) ("The rule does not require, however, that the person who loses the performance of the contract as a result of the conduct of the actor should be specifically mentioned by name. It is sufficient that he is identified in some manner."). OpenAI's argument that Plaintiffs failed to identify specific third parties with which Plaintiffs will have a relationship is of little import. OpenAI Br. at 19.

*Defendants' Intentional or Negligent Acts.* Plaintiffs allege that Defendants' failure to attach open-source licenses when emitting code was an intentional interference in Plaintiffs' contractual relationships with the open-source users of their code. ¶¶ 249–51. Plaintiffs allege that even after Defendants knew that Codex and Copilot would reproduce code with incorrect licenses, Defendants intentionally or negligently changed the product to keep operating without producing CMI at all, depriving Plaintiffs of the very open-source relationships in the open-source code community that GitHub was created to foster. ¶¶ 262–64. By doing so, Defendants performed an act that is "wrongful 'by some measure beyond the fact of the interference itself.'" *CRST Van Expedited, Inc. v. Werner Enters. Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007).

*Actual Disruption and Economic Harm.* The FAC alleges actual disruption of Plaintiffs' relationships with their users, ¶¶ 249–51, 262–63, and does adequately allege economic harm due to interference with Plaintiffs' open-source code community. ¶¶ 253, 264; *see also Jacobsen*, 535 F.3d at 1378–79. The fact that the open-source software was offered for free does not mean there was no consideration owed under the open-source license should someone decide to use the software. *See Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982, 2017 WL 4005508, at *3 (N.D. Cal. Sep. 12, 2017) (citing *Jacobsen*, 535 F.3d at 1379).

### c.     Plaintiffs State a Claim for Unjust Enrichment (Count 6)

OpenAI also attacks Plaintiffs' claim for unjust enrichment. The Court had previously dismissed Plaintiffs' unjust enrichment claim on preemption grounds. *Doe 1*, 2023 WL 3449131, at *11. Plaintiffs, however, have cured the claim's defects and have predicated the claim on "Defendants' use of Plaintiffs' code for training purposes." *See id.*; *see also* ¶¶ 268–70. Nonetheless, Defendants again argue the unjust enrichment claim is deficient. OpenAI Br. at 19.

"Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." *ChromaDex, Inc. v. Elysium Health, Inc.,* 2017 No. SACV 16-02277-CJC(DFMX), WL 7080237, at *4 (C.D. Cal. Nov. 28, 2017). In the Ninth Circuit, Plaintiffs may pursue a claim for unjust enrichment either "as an independent cause of action or as a quasi-contract claim for restitution." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). "[T]o allege a quasi-contract claim, a party must plausibly allege the absence of any applicable and enforceable contract provisions, even if in the alternative." *In re Bang Energy Drink Mktg. Litig.,* No. 18-CV-05758-JST, 2020 WL 4458916, at *10 (N.D. Cal. Feb. 6, 2020).

OpenAI argues Plaintiffs' unjust enrichment claim must be dismissed because they have alleged that valid "contracts have been formed between Defendants on the one hand and Plaintiffs and the Class on the other" based on the terms of the open-source licenses. While the licenses do provide certain obligations, the licenses do not specifically address the use of code as training data or in connection with generative AI products sold to the public. As Plaintiffs specifically allege, Defendants used Plaintiffs' code without permission to train their commercial product which Defendants currently sell to the public. This was all done without proper consent, authorization or other licensing. ¶¶ 188-89, 270-72. Plaintiffs have also alleged how Defendants benefit. ¶ 181-82. Codex and Copilot's value as a commercial product, currently for sale, currently profiting Defendants, is derived from the licensed code it trained on. Indeed, the point of using Plaintiffs' licensed code was to provide the raw materials for Defendants' AI products, which were then developed, marketed and sold to the public. This is an unjust enrichment to Defendants, ¶¶ 69, 272-73, and an impoverishment to Plaintiffs. ¶269-70.

Defendants also appear to claim that Plaintiffs may not receive compensation in the form of the disgorgement or restitutionary remedies available as relief for unjust enrichment. Defendants repeatedly argue with respect to other causes of action that Plaintiffs have failed to state a claim or are barred from recovering damages for their injuries. Unjust enrichment provides a remedy for illegal or inequitable conduct in just such a case. *Artifex Software*, 2017 WL 4005508, at *3 (commenting in case involving the unauthorized use open-source licenses, "to the extent Plaintiff seeks unjust enrichment or disgorgement as a measure for damages, this too is proper under California law.") (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).

### d.   Plaintiffs State a Claim Under California's Unfair Competition Law (Cal. Bus. & Profs. Code §§ 17200 et seq.) (Count 7)

California's Unfair Competition Law "provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200). Plaintiffs have cured the defects in their prior pleading of a claim under the UCL and have pled a claim under all three prongs.[15]

Plaintiffs allege that Defendants have violated the unlawful prong including, but not limited to, violating the DMCA. *See Cappello v. Walmart Inc.*, 394 F. Supp.3 d 1015, 1023 (N.D. Cal. 2019) ("By proscribing 'any unlawful' business act or practice, the UCL 'borrows' violations of other laws and treats them as unlawful practices that the UCL makes independently actionable.") (citations omitted).

Second, Plaintiffs may assert a claim under the "unfair" prong of the UCL under an independent alternate theory. *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, No. C 04-05368 SI, 2006 WL 3218719, *4 (N.D. Cal. Nov. 7, 2006). California UCL claims seeking equitable relief can be alleged in the alternative. *Byton N. Am. Co.*

---

[15] Defendants argument that Plaintiffs' UCL claims are preempted also fail. ECF No. 109 at 9. To the extent Plaintiffs' UCL claim is brought under the "illegal" prong, they are equally based on Defendants predicate violations of the DMCA (¶ 276(a)), and violations of their open-source licenses (¶ 276(b)). Further Plaintiffs UCL claims are based in the alternative on allegations of "unfair" (¶ 278) and "fraudulent" conduct (¶ 279).

1    *v. Breitfeld*, No. CV-19-10563-DMG (JEMx), 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020).

2    The Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those

3    claims are inconsistent. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–59 (9th Cir.

4    2007). UCL claims can proceed under the "unfair" prong where plaintiff allege an immoral,

5    unethical, oppressive or unscrupulous business practices that causes injury to consumers which

6    outweighs the utility of the practice. *Zeiger v. WellPet LLC,* 304 F. Supp. 3d 837, 852 (N.D. Cal.

7    2018). Using Plaintiffs' licensed code without abiding by the terms of the open-source licenses to

8    train their commercial AI products certainly meets that bar.

9         Plaintiffs' allegations also allege a cause of action under the "fraudulent" prong. A UCL

10   claim proceeding under the "fraudulent" prong may proceed by showing that "members of the

11   public are likely to be deceived" by the challenged AI Imaging output wrongfully associate with

12   their names. *Garcia v. Sony Comput. Entm't Am.*, LLC, 859 F. Supp. 2d 1056, 1062 (N.D. Cal.

13   2012). Defendants scraping GitHub users' code without authorization in contradiction of its

14   promises not to commercially exploit open-source code, and then intentionally removing CMI

15   from it, is deceptive. ¶ 181. By otherwise failing to abide by the terms of the open-source licenses,

16   Defendants also deceive users who do not know they must follow the terms of a license. ¶ 279.

17        OpenAI argues Plaintiffs' UCL claim nonetheless fails because Plaintiffs have not

18   plausibly allege the economic injury. ECF No. 109 at 21. This is wrong. An open source license

19   provides significant concrete and intangible rights and benefits—even in the absence of a

20   financial term, its violation results in injuries to property, including reputational harm. *See Artifex*

21   *Software*, 2017 WL 4005508, at *2-4; *Jacobsen*, 535 F.3d at 1379. Plaintiffs have suffered a well-

22   pled economic harm in being denied their license, permission, and recognition. ¶¶ 243, 281.

23        e.    **Plaintiffs State a Claim for Negligence (Count 8)**

24        The elements of a claim for negligence are well-established. A plaintiff must establish: (1)

25   the defendant had a duty, or an "obligation to conform to a certain standard of conduct for the

26   protection of others against unreasonable risks," (2) the defendant breached that duty, (3) that

27   breach proximately caused the plaintiff's injuries, and (4) injury. *Corales v. Bennett*, 567 F.3d 554,

28

572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019).

California courts consider several factors when deciding whether a duty of care exists, including "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (quoting *Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 628, (2018) and *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968)); *see also Brown v. USA Taekwondo*, 11 Cal. 5th 204, 214 (2021) ("[T]he law imposes a general duty of care on a defendant only when it is a defendant who has '"created a risk"' of harm to the plaintiff, including when '"the defendant is responsible for making the plaintiff's position worse."'")). Further, these factors "must be evaluated at a relatively broad level of factual generality." *Id.* (quotation omitted).

OpenAI argues that Plaintiffs' negligence claim fails because Plaintiffs fail to plead facts giving rising to a duty. OpenAI Br. at 22. But Defendants are wrong on the law. In California, a duty may arise out of a contract such that a party to a contract may have claims that sound in contract or tort. 6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 1201, p. 443 ("A duty may arise out of a contract, and negligent performance may be a tort as well as a breach of contract."); *see also Buxbom v. Smith*, 23 Cal. 2d 535, 548 (1944) ("A breach of contract is a wrong and in itself actionable . . . It is also wrongful when intentionally utilized as the means of depriving plaintiff of his employees and, . . . constitutes an unfair method of interference with advantageous relations"). Plaintiffs specifically identify Defendants as having breached their duty of care to Plaintiffs. ¶¶ 283, 285-86.

In addition, tort liability may also arise where the tortfeasor has a "special relationship" with the injured party. To determine whether a special relationship giving rise to a duty of care exists, courts look to: "(1) the extent to which the transaction was intended to affect the plaintiff,

(2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." *Vera Mona, LLC v. Dynasty Grp. USA LLC,* No. EDCV 20-2615 JGB (KKx), 2021 WL 3623297, at *4 (C.D. Cal. Apr. 15, 2021).

Copilot is a joint venture between GitHub and OpenAI. ¶ 51. So to the extent Copilot generates a duty because it hosts Plaintiffs' open source code, that extends to OpenAI. Because Defendants possessed Plaintiffs' licensed code and had rights to control it, they owed various duties to Plaintiffs.[16] *Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10, 2006) (finding allegations that defendant, "[a]s custodians of the Representative Plaintiff's and the Class Members' personal and confidential information" "owe[d] a duty of care . . . to prevent access to such information by unauthorized third parties" sufficient); *see also Bass*, 394 F. Supp. 3d at 1039. Defendants breached their duties with respect to Plaintiffs' information by using it for their own economic purposes in disregard for Plaintiffs' rights. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014). Defendants were well aware that the removal of the CMI and other aspects of the licenses would affect Plaintiffs. ¶ 284. It is certainly foreseeable that Plaintiffs would be harmed if their open-source licenses were not honored, and the injury would not have happened had Defendants not used Plaintiffs' code to train on. ¶ 289. Whether this conduct is sufficiently blameworthy and is at a minimum a question of fact and, giving Plaintiffs' all reasonable inferences, should not be a basis for a motion to dismiss. *See Bass*, 394 F. Supp. 3d at 1039.

## IV.   CONCLUSION

For all the foregoing reasons, OpenAI's motion to dismiss should be denied.

---

[16] Indeed, GitHub was created for the very purpose of fostering open-source communities. ¶¶ 155-166. Defendants induced Plaintiffs to post their code under open-source licenses on GitHub that provided Defendants a multibillion-dollar asset. ¶¶ 244-48.

1    Dated: July 27, 2023                              By:      _/s/ Joseph R. Saveri_
2                                                               Joseph R. Saveri

3
4    Joseph R. Saveri (State Bar No. 130064)
     Cadio Zirpoli (State Bar No. 179108)
5    Christopher K.L. Young (State Bar No. 318371)
     Louis A. Kessler (State Bar No. 243703)
6    Elissa A. Buchanan (State Bar No. 249996)
     Travis Manfredi (State Bar No. 281779)
7    **JOSEPH SAVERI LAW FIRM, LLP**
     601 California Street, Suite 1000
8    San Francisco, California 94108
     Telephone:      (415) 500-6800
9    Facsimile:      (415) 395-9940
     Email:          jsaveri@saverilawfirm.com
10                   czirpoli@saverilawfirm.com
                     cyoung@saverilawfirm.com
11                   lkessler@saverilawfirm.com
                     eabuchanan@saverilawfirm.com
12                   tmanfredi@saverilawfirm.com

13   Matthew Butterick (State Bar No. 250953)
14   1920 Hillhurst Avenue, #406
     Los Angeles, CA 90027
15   Telephone:      (323) 968-2632
     Facsimile:      (415) 395-9940
16   Email:          mb@butericklaw.com

17
18   *Counsel for Plaintiffs and the Proposed Class*
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO OPENAI'S MOTION TO DISMISS