ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
DANIEL D. JUSTICE (SBN 291907)
djustice@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

WILLIAM W. OXLEY (SBN 136793)
woxley@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue
Los Angeles, CA 90071
Telephone:    +1 213 629 2020
Facsimile:    +1 213 612 2499

*Attorneys for GitHub, Inc. and Microsoft Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| J. DOE 1, et al.,<br><br>  Individual and<br>  Representative Plaintiffs,<br><br>  v.<br><br>GITHUB, INC., et al.,<br><br>  Defendants.<br><br>---<br><br>AND CONSOLIDATED ACTION | Case No. 4:22-cv-6823-JST<br><br>Consolidated w/ Case No. 4:22-cv-7074-JST<br><br>**DEFENDANTS GITHUB AND MICROSOFT'S REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT IN CONSOLIDATED ACTIONS**<br><br>Date:   September 14, 2023<br>Time:   2:00 p.m.<br>Courtroom: 6, 2d Floor<br>Judge:   Hon. Jon S. Tigar<br><br>Amended Complaint Filed:  June 8, 2023 |

1

# TABLE OF CONTENTS

2 TABLE OF AUTHORITIES .................................................................................................. ii

3 INTRODUCTION ............................................................................................................... 1

4 ARGUMENT ...................................................................................................................... 2

5 I.     THE AMENDED COMPLAINT DOES NOT ESTABLISH ARTICLE III
6         STANDING TO PURSUE CLAIMS FOR DAMAGES. .................................................... 2

        A.    Plaintiffs Fail To Defend Their Attempt At Manufactured Standing. ...................... 2
7
        B.    All Requests For Monetary Relief Should Be Dismissed. ........................................ 6
8
9 II.    PLAINTIFFS' DMCA CLAIMS FAIL WITHOUT AN ALLEGATION OF
        REMOVAL OF CMI FROM IDENTICAL COPIES OF WORKS. .................................. 6

10 III.   PLAINTIFFS' TORT CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT. ........ 9

11 IV.   THE TORT CLAIMS FAIL FOR OTHER REASONS AS WELL. ................................ 11

12         A.    Plaintiffs' Economic Interference Claims Should Be Dismissed. .......................... 11

13         B.    The Unjust Enrichment Claim Fails. ....................................................................... 12

        C.    Plaintiffs Lack UCL Standing. ................................................................................ 13
14
        D.    Plaintiffs Have No Claim For Negligence. ............................................................. 14
15
16 CONCLUSION ................................................................................................................... 15

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
   424 F.3d 1079 (9th Cir. 2005) ............................................................................................... 10

*Arroyo Escondido, LLC v. Balmoral Farm, Inc.*,
   No. 19-cv-08464, 2021 WL 3677580 (C.D. Cal. Aug. 19, 2021) ........................................... 13

*Artifex Software, Inc. v. Hancom, Inc.*,
   No. 16-cv-06982, 2017 WL 4005508 (N.D. Cal. Sep. 12, 2017) ..................................... 13, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 4

*Berkeley v. Wells Fargo Bank*,
   No. 15-cv-00749, 2015 WL 6126815 (N.D. Cal. Oct. 19, 2015) ........................................... 14

*Bounce Exchange, Inc. v. Zeus Enterprises Ltd.*,
   No. 15-cv-3268, 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) ................................................. 9

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................................... 6, 14

*Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*,
   532 P.3d 250 (Cal. 2023) ...................................................................................................... 14

*Clapper v. Amnesty Int'l, USA*,
   568 U.S. 398 (2013) ................................................................................................................. 3

*Coffen v. Home Depot U.S.A. Inc.*,
   No. 16-cv-03302, 2016 WL 4719273 (N.D. Cal. Sept. 9, 2016) ..................................... 14, 15

*Del Madera Properties v. Rhodes & Gardner, Inc.*,
   820 F.2d 973 (9th Cir. 1987) ............................................................................................ 10, 11

*Design Basics, LLC v. WK Olson Architects, Inc.*,
   No. 17 C 7432, 2019 WL 527535 (N.D. Ill. Feb. 11, 2019) .................................................... 8

*Dinerstein v. Google, LLC*,
   73 F.4th 502 (7th Cir. 2023) .................................................................................................... 6

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
   756 F. Supp. 2d 1352 (N.D. Fla. 2010) ................................................................................... 8

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   No. CIV. 13-00496, 2015 WL 263556 (D. Haw. Jan. 21, 2015) ............................................. 8

*ICONICS, Inc. v. Massaro*,
   192 F. Supp. 3d 254 (D. Mass. 2016) ................................................................................. 8, 9

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   9 Cal. 5th 1130 (2020) .................................................................................................... 11

*Jacobsen v. Katzer*,
   535 F.3d 1373 (Fed. Cir. 2008) ................................................................................ 12, 14

*Kelly v. Arriba Soft Corp.*,
   77 F. Supp. 2d 1116 (C.D. Cal. 1999) ............................................................................... 8

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ................................................................................................... 12

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ............................................................................................... 13, 14

*Moore v. Apple Inc.*,
   73 F. Supp. 3d 1191 (N.D. Cal. 2014) ............................................................................... 6

*Ott v. Alfa-Laval Agri, Inc.*,
   31 Cal. App. 4th 1439 (1995) .......................................................................................... 15

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
   177 Cal. App. 3d 1120 (1986) ......................................................................................... 12

*Rosen v. Uber Techs., Inc.*,
   164 F. Supp. 3d 1165 (N.D. Cal. 2016) ........................................................................... 11

*Silicon Labs Integration, Inc. v. Melman*,
   No. C-08-04030, 2010 WL 890140 (N.D. Cal. Mar. 8, 2010) ......................................... 11

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) .......................................................................................................... 4

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ............................................................................. 15

*Takeya USA Corp. v. PowerPlay Mktg. Grp., LLC*,
   No. 21-cv-00835, 2022 WL 17357781 (C.D. Cal. Sept. 1, 2022) ........................................ 13

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ...................................................................................................... 6

*Vallarta v. United Airlines, Inc.*,
   497 F. Supp. 3d 790 (N.D. Cal. 2020) ............................................................................. 13

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ............................................................................................ 12

*Whitesides v. E\*TRADE Sec., LLC*,
  No. 20-cv-05803, 2021 WL 930794 (N.D. Cal. Mar. 11, 2021)............................................. 15

*Wilbur v. Locke*,
  423 F.3d 1101 (9th Cir. 2005)................................................................................................... 5

*Witriol v. LexisNexis Grp.*,
  No. C05-02392, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006)............................................. 15

**Statutes**

Copyright Act, 17 U.S.C. §§ 101, *et seq.*
  § 101.............................................................................................................................................. 8
  § 102(a).......................................................................................................................................... 8
  § 106........................................................................................................................................... 9, 11
  § 408(b).......................................................................................................................................... 8
  § 504(c).......................................................................................................................................... 8
  § 1202(b)..................................................................................................................................... 5, 7
  § 1202(c)...................................................................................................................................... 8, 9
  § 1203(c)(3)(B)............................................................................................................................. 8

Patent Act, 35 U.S.C. § 271(c).......................................................................................................... 4

Cal. Bus. & Prof. Code §§ 17200, *et seq.* .................................................................................. 5, 13

**Other Authorities**

Applications for Registration of Claim to Copyright Under Revised Copyright Act,
  42 Fed. Reg. 48,944, 48,945 (Sept. 26, 1977) ............................................................................ 8

Federal Rules of Civil Procedure
  Rule 11........................................................................................................................................... 4
  Rule 12(b)(1)................................................................................................................................. 4
  Rule 12(b)(6)................................................................................................................................. 4

Restatement (Second) of Torts § 766 cmt. p..................................................................................... 12

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices
  § 503.1(A) (3d ed. 2021)............................................................................................................. 8

**INTRODUCTION**

The GitHub/Microsoft Motion explained how the additions to Plaintiffs' First Amended Complaint, aimed at manufacturing standing to pursue money damages, undermined Plaintiffs' basic legal theory.  Plaintiffs' newly-generated examples reveal an input problem:  The only way Plaintiffs could get Copilot to emit anything even similar to code in their repositories was by transcribing lines upon lines of their code as a prompt.  But they do not allege that anyone would ever use Copilot this way—a user would just copy and paste the code directly from Plaintiffs' public repositories.  These new examples also reveal an output problem:  Even Plaintiffs' elaborate contrivances yielded suggestions that differed significantly from the code Plaintiffs claimed those suggestions were copying.  The upshot is that, per Plaintiffs' own allegations, Copilot is not the copy-paste machine they initially claimed, but a generative product that "has learned common functional concepts across a universe of code, then generate[s] context-dependent suggestions that incorporate that learning."  Mot. 2.[1]  Simply put, Copilot does not "reproduce" attribution information because it does not "reproduce" anything.  Yet Plaintiffs offer no response to this fundamental defect in their reproduction-without-attribution theory.

With their primary theory undermined, Plaintiffs' Amended Complaint also launched an alternative challenge to the creation of Copilot through training, calling the result a derivative work.  But in their opposition, this theory never gets off the ground.  Plaintiffs do not even attempt to articulate what concrete injury they could possibly have suffered as a result of an artificial intelligence model learning from software code they made publicly available for all to see, and doing so pursuant to explicit consent to "parse" and "analyze" their code.

This Court should grant the motion to dismiss.  Plaintiffs' new allegations fail to establish the past injury that was lacking in the initial Complaint, leaving Plaintiffs without standing to pursue damages.  *Infra* § I.  Their DMCA claims fail because they have not and cannot allege that

---

[1] We cite GitHub and Microsoft's Motions to Dismiss the First Amended Complaint, ECF No. 108, as "Mot." and Plaintiffs' Opposition to those Motions, ECF No. 140, as "GH/MSFT Opp."  On July 21—after Defendants' motions, but before Plaintiffs' opposition—Plaintiffs filed a "Second Corrected First Amended Complaint" that identified the state law applicable to Plaintiffs' state-law claims.  ECF No. 134.  On July 28, this Court entered an agreed stipulation that Defendants' existing motions to dismiss are applicable to that complaint.

1   Copilot removes CMI from an identical copy of any work.  *Infra* § II.  Their state law claims are

2   preempted by the Copyright Act because each is predicated on copying or distribution of, or

3   preparation of a derivative work based on, software code.  *Infra* § III.  Each tort claim fails for

4   additional reasons as well.  *Infra* § IV.  And because Plaintiffs have now had two opportunities to

5   adequately plead subject matter jurisdiction and their claims, this Court should dismiss their

6   damages requests and the claims at issue in this motion with prejudice.

7                                                **ARGUMENT**

8   I.      **THE AMENDED COMPLAINT DOES NOT ESTABLISH ARTICLE III**
            **STANDING TO PURSUE CLAIMS FOR DAMAGES.**
9
            A.      **Plaintiffs Fail To Defend Their Attempt At Manufactured Standing**.
10

11          Defendants' Motion identified a very simple standing problem:  Plaintiffs' initial

12   Complaint failed to allege that "they themselves" have suffered injury from "Copilot

13   reproduc[ing] Plaintiffs' code as output," Order 8, ECF No. 95, and the additions of the First

14   Amended Complaint not only fail to plausibly fill the gap, but "weigh strongly against … an

15   inference" that their code has ever been output.  Mot. at 10.  The Amended Complaint still alleges

16   only that Copilot *can*—under highly stylized circumstances—output code similar to Plaintiffs',

17   not that it actually has injured Plaintiffs in this way already.  *Id.*

18          So it is telling that rather than confront this straightforward defect, Plaintiffs obscure what

19   this Court previously held, why it held it, and how, in Plaintiffs' view, they have addressed the

20   shortcoming.  They obfuscate because they have not addressed the shortcoming at all.  Plaintiffs

21   still fail to plausibly allege that Copilot has suggested any of their code as output in a way that has

22   harmed them.  And their training-based theory of injury, which is now explicit but relevant only

23   to their Unjust Enrichment and Negligence claims, is equally deficient—indeed, Plaintiffs

24   scarcely defend it at all.  Plaintiffs therefore lack standing to pursue damages.

25          ***Plaintiffs have not alleged past injury based on an output theory.***  There is no dispute

26   that when it comes to Plaintiffs' output theory, the only difference between the initial Complaint

27   and the First Amended Complaint is the inclusion of a series of "examples" Plaintiffs "have been

28   able to generate" that purport to demonstrate that Copilot is capable of generating code that is

1  similar (but not identical) to code in Plaintiffs' repositories.  Am. Compl. ¶ 121-28.  They do not

2  appear to be arguing that these self-generated outputs constitute injury in their own right, nor

3  could they.  Mot. 9-10.  It is well-settled that plaintiffs cannot "manufacture standing merely by

4  inflicting harm on themselves."  *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 416 (2013).  And

5  although Plaintiffs find this point "puzzling," GH/MSFT Opp. 9-10, that seems to be because they

6  rightly recognize that they cannot claim injury from the Copilot outputs that they generated

7  themselves—which was Defendants' reason for raising the point to begin with.

8       Instead, Plaintiffs' argument is that their new allegations are "exemplary demonstrations"

9  that establish not only that "Copilot can … output Plaintiffs' code," but that it "plausibly already

10  has."  GH/MSFT Opp. 7.  They establish no such thing.  Defendants' Motion explains why a

11  demonstration of bare *capability* does not show the *plausibility* of past injury.  Mot. 1, 9-10.

12       The problem with Plaintiffs' examples is that Plaintiffs have not alleged any facts giving

13  reason to believe that a real-world user plausibly has or would enter the sorts of prompts Plaintiffs

14  used in their examples.  Plaintiffs "exemplary demonstrations" must be plausibly exemplary to

15  mean anything.  Without such allegations, Plaintiffs' experiments do nothing more than establish

16  that Copilot is a device capable of generating the identified outputs under very specific and

17  artificial circumstances that have almost certainly never occurred.  Plaintiffs do not dispute it.

18  Page 1 of Defendants' Motion explained:  "Plaintiffs do not even attempt to allege that any real-

19  life user would or could come anywhere close to entering prompts anything like those that yielded

20  Plaintiffs' examples."  Mot. 1.  Plaintiffs offer no response.  Nor do they contest another page-1

21  assertion: "The fact that Plaintiffs had to go to such unrealistic lengths to manufacture even the

22  few examples they include … only reaffirms how unlikely it is that Plaintiffs have actually

23  suffered any injury."  Mot. 1.  Without establishing the basic plausibility of their examples,

24  Plaintiffs' experiments are like typing your own novel into Microsoft Word and declaring, "I have

25  demonstrated that Microsoft Word can be used to create verbatim copies of my novel; therefore

26  some user somewhere must have already used it to create verbatim copies of my novel.  I demand

27  damages from Microsoft for this injury!"

28       Plaintiffs offer a few responses, but none meets the point.  They assert that "Defendants'

argument about what is or is not normal use of Copilot is baffling" because "normal use" is not "a relevant inquiry with respect to Article III standing." GH/MSFT Opp. 9. They say that determining what is "normal" is a question for discovery. *Id.* This is misdirection. The question is one of plausibility: The initial Complaint failed to allege that Plaintiffs' code has ever been reproduced by Copilot; Plaintiffs tried to fix the defect with manufactured examples of Copilot reproducing (something similar to) their code; but those examples are meaningless because Plaintiffs do not and cannot allege any factual reasons giving rise to an inference anyone would ever have used Copilot in the manner Plaintiffs had to use it to generate the examples. This is a pleading defect. No discovery is needed.

This also answers Plaintiffs' argument that any "contention that Codex or Copilot have never emitted Plaintiffs' code misses the point" because they are entitled to "all reasonable inferences … under Rule 12(b)(6)." Mot. 9. (Leave aside that this is a Rule 12(b)(1) motion.) Plaintiffs must at least plausibly allege injury based on "well-pleaded, nonconclusory factual allegation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). It is mere hand-waving that past injury is "certain," Am. Compl. ¶ 97, when the allegations ostensibly supporting that bare contention are so implausible Plaintiffs do not even defend them.

Intellectual property law has long distinguished between a device with the bare capability of infringement and a device causing cognizable harm. *See* 35 U.S.C. § 271(c); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434-42 (1984). The important distinction between capability and unlawful use has cabined copyright to protect the technological development of devices from the photocopier to the PC to the DVR. As with those lawful technologies, the Court here should examine whether Plaintiffs have plausibly suffered any unlawful use simply because the device at issue has the capability of making a copy.

Perhaps now appreciating the defect in their "examples," Plaintiffs try to excuse it by arguing that "information about what code has been emitted is in the hands of Defendants," and that requiring Plaintiffs to do more than nakedly allege past injury is "to ask the impossible." GH/MSFT 10. But Plaintiffs are in possession of their own code, and their Amended Complaint contains allegations concerning how they say Copilot works. Nothing but the limits of Rule 11

1   would prevent Plaintiffs from alleging, say, that their code contains a solution to a common

2   coding problem or frequently recurs in GitHub repositories, or that a user might plausibly have

3   entered a prompt that would cause Copilot to reproduce their code in response.  Nothing prevents

4   them from explaining why anyone would want to copy their code.  Nothing prevents them from

5   explaining how they have lost opportunities to exploit their works.  After two complaints, it

6   plainly *is* "impossible" for Plaintiffs to allege any such thing—but not because they lack

7   information.  The obstacle is reality.[2]

8        Despite their attempts to manufacture standing to seek damages, Plaintiffs' Amended

9   Complaint at most alleges a "substantial risk that [Copilot] will produce Plaintiffs' licensed code

10  as output," Order 9, ECF No. 95—enough, in this Court's view, to confer standing to pursue

11  prospective injunctive relief, but insufficient to pursue retrospective damages for (non-existent)

12  past injury.  Mot. 10.  Plaintiffs therefore lack standing to seek damages for all claims based on

13  allegedly unlawful Copilot outputs, which includes claims under § 1202(b); for breach of

14  contract; for alleged interference with economic advantage; and under § 17200 of the UCL.

15  ***Plaintiffs have not alleged cognizable injury based on a training theory.***  Plaintiffs also

16  fail to establish standing to seek damages based on training alone.  Plaintiffs attempt no direct

17  answer to this Court's question of "how the training aspect of this product injures anybody's

18  rights" given that anyone could freely visit GitHub and view any publicly available code.  Mot.

19  11 (quoting Tr. 27-28).  And having previously conceded that "[p]erhaps [training] doesn't" run

20  afoul of any applicable open-source license, Mot. 11 (quoting Tr. 31), Plaintiffs now offer only

21  the cryptic statement that "[c]ourts in this district recognize that merely because open-source code

22  is offered free of charge does not mean that its use is unconditioned."  GH/MSFT Opp. 10.  That

23  is their entire argument on whether training has caused them injury.

24        It is not clear what this sentence means, but it is certainly not an identification of an

25  allegation in the Amended Complaint of a concrete injury that has befallen Plaintiffs based on

---

26  [2] The above is sufficient to defeat standing to pursue damages for all Plaintiffs.  Independently,

27  Does 1 and 2, who were Plaintiffs in the initial Complaint, cannot belatedly manufacture standing
    because "standing is determined as of the date of the filing of the complaint."  Mot. 11 (quoting

28  *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005)).  Plaintiffs' footnote, GH/MSFT Opp. 10
    n.4, makes no attempt to refute the relevant legal principles or authorities.

1   training alone.  If Plaintiffs mean to suggest that training alone constitutes breach of an open

2   source license, they have never alleged that in this case.  In fact, they have roundly disclaimed

3   any such theory.  Pls.' Resp. in Opp. to Defs. GitHub and Microsoft's Mot. to Dismiss 13-14,

4   ECF No. 66 ("Microsoft/GitHub inaccurately suggest[] that Plaintiffs' 'theory against GitHub is

5   predicated on training Copilot'—and nothing more.").  The reason Plaintiffs disclaimed that

6   theory in the initial Complaint was to evade GitHub's Terms of Service, which "expressly

7   authorizes" conduct that would include the training of Copilot.  Mot. 22.  This time around,

8   Plaintiffs do not even attempt to address GitHub's TOS, an abandonment that dooms Plaintiffs'

9   training-based claims on standing and the merits alike.  *Infra* 13-14.

10      Even apart from Plaintiffs' failure to dispute that they have authorized training, reliance

11   on a bare and theoretical cause of action would still not suffice, because "an injury in law is not

12   an injury in fact."  *Dinerstein v. Google, LLC*, 73 F.4th 502, 522 (7th Cir. 2023) (citing

13   *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)).  Only a plaintiff who has been

14   "concretely harmed" can sue in federal court.  *Id.* (finding lack of standing to pursue breach-of-

15   contract claim).  Because Plaintiffs allege no concrete injury flowing from training alone, they

16   cannot pursue damages for their unjust enrichment or negligence claims.

17          **B.**      **All Requests For Monetary Relief Should Be Dismissed.**

18      Plaintiffs do not dispute that if they lack standing to pursue damages claims, all

19   allegations pertaining to damages must be dismissed from the case.  Mot. 12.  Nor do they contest

20   that, even if they did have standing to pursue damages, they "include no non-conclusory

21   allegations that GitHub or Microsoft engaged in the intentionally wrongful behavior required" for

22   punitive damages, meriting dismissal of those allegations.  *Id.*  A "failure in an opposition to

23   address arguments raised in a motion to dismiss constitutes abandonment of the claim, which

24   results in dismissal with prejudice."  *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 122 (N.D. Cal.

25   2020) (quoting *Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014)).

26   **II.    PLAINTIFFS' DMCA CLAIMS FAIL WITHOUT AN ALLEGATION OF
        REMOVAL OF CMI FROM IDENTICAL COPIES OF WORKS.**

27

28      Defendants' Motion respectfully requested that this Court address an argument

1   Defendants made in their initial motion to dismiss, but that this Court's order did not appear to

2   reach:  That Plaintiffs' § 1202(b) claims fail because they have not alleged that Defendants

3   removed CMI from an "identical copy" of any copyrighted work.  Mot. 13-15.  Plaintiffs first

4   insist that this Court has already resolved this issue.  GH/MSFT Opp. 11 ("Defendants seek

5   another bite at the apple"); *id.* at 13 (Defendants "bizarrely insist[] the DMCA claim must now be

6   dismissed").  But they point to nothing in this Court's prior order addressing the identical-copies

7   argument; their reasoning is that "[g]iven the amount of ink spilled, it is plain that this argument

8   has been considered, and found wanting." *Id.* at 14.  There is nothing improper about Defendants

9   asking the Court to address a specific legal argument that went unmentioned in a prior order.

10      All the more true here, where Plaintiffs have included new allegations that make this

11   defect in their DMCA claims plain.  Plaintiffs' initial theory was that Copilot is a rote copy-paste

12   machine that ingests copies of Plaintiffs' code, removes CMI, and then spits out verbatim

13   reproductions.  They said it was "software piracy on an unprecedented scale."  But then they

14   actually tried Copilot and found, as their own examples reflect, that Copilot's recommendations

15   were in fact different from code in their repositories.  Plaintiffs do not dispute, for example, the

16   "extensive differences" between original code and Copilot output reprinted in Defendants'

17   Motion (at 7-8).  Their own allegations about Copilot's outputs thus undermine their theory that

18   Copilot removes CMI from a reproduced copy of anyone's code, instead showing that Copilot

19   "generates suggestions afresh based on what it has discerned across a training set."  Mot. 15.

20   Plaintiffs have no response, instead wondering how their inclusion of "more detail" in their

21   Amended Complaint could have made their § 1202(b) claim weaker.  GH/MSFT Opp. 13.  As

22   anyone skilled in the art of pleading knows, there is danger in saying too much.

23      Plaintiffs' attempt to address cases applying the identical-copy requirement actually

24   *confirms* that they are on point.  *See* Mot. 13.  Plaintiffs do not claim that these cases are wrongly

25   decided.  They say that they are "distinguishable" because "there were no allegations that the

26   defendant copied their works in their original form."  GH/MSFT Opp. 15.  That is correct—these

27   are all cases finding no § 1202(b) claim where the defendant did not remove CMI from a *copy* of

28   a work, but instead excerpted, referred to, traced, or otherwise made some modified use of some

portion of the plaintiffs' work.  *See* Mot. 13 (noting that courts have rejected claims "where the copy … is merely an excerpt or modification"[3]).  But that is no help to Plaintiffs, because modified use is *the most* Plaintiffs allege here.

Although Plaintiffs continue to allege that Copilot sometimes reproduces small "verbatim" snippets of code, Am. Compl. ¶ 94, nowhere do they allege reproduction of an identical *copy* of a *work*.  A work is the complete expression of original authorship.  17 U.S.C. §§ 102(a), 408(b); *see* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 503.1(A) (3d ed. 2021); Applications for Registration of Claim to Copyright Under Revised Copyright Act, 42 Fed. Reg. 48,944, 48,945 (Sept. 26, 1977).  A copy of the work is any material object in which the work is fixed.  17 U.S.C. § 101.  While it is sometimes possible to invade the right of reproduction with less than an entire copy, the definition of CMI in Section 1202(c) does not refer to less than an entire copy, a partial copy, or the infringing portion of a copy.  It refers to copies of a work.  17 U.S.C. § 1202(c). The statute therefore prohibits stripping *entire* embodiments of works of CMI.  If it were interpreted otherwise, the statutory damages of § 1203(c)(3)(B) would supplant those of § 504(c) in every case of infringement.

Moreover, Plaintiffs now acknowledge that "more often" Copilot's suggestions are "a modification."  Am. Compl. ¶ 96.  So just as in the cases Defendants cited, the Amended Complaint does not allege that Copilot reproduces copies of works "in their original form," GH/MSFT Opp. 15.  Instead, Plaintiffs concede the likelihood that any Copilot output is in modified form, while strongly suggesting that Copilot is creating new content rather than reproducing.  The resulting claims are thus squarely foreclosed by the cases Defendants cite.

The two cases Plaintiffs cite do not help their cause.  In *ICONICS, Inc. v. Massaro*, the defendant "transferred ICONICS files onto servers of Volpe Industries, removed the ICONICS copyright headers, and replaced them with new Volpe headers."  192 F. Supp. 3d 254, 272 (D.

---

[3] Citing *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1356, 1359 (N.D. Fla. 2010); *Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17 C 7432, 2019 WL 527535, at *5 (N.D. Ill. Feb. 11, 2019); *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir. 2017); *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999)*, rev'd on other grounds*, 336 F.3d 811 (9th Cir. 2003).

Mass. 2016).  The district court rejected an argument Defendants do not make here—that these copyright headers were *not CMI at all* within the meaning of 17 U.S.C. § 1202(c), because "the copyright at issue covers the full versions of programs."  *Id.*  Unlike here, there was no dispute in *ICONICS* that the defendants reproduced an identical copy of a full file, but replaced the CMI at the top.  As for *Bounce Exchange, Inc. v. Zeus Enterprises Ltd.*, the defendant there copied source code but removed CMI that was weaved within the lines code.  No. 15-cv-3268, 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015).  That is nothing like what is alleged here, and in any event the case does not implicate or address the identical-copy requirement.  Because the Amended Complaint cannot satisfy that requirement, the DMCA claims should be dismissed.

**III.   PLAINTIFFS' TORT CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT.**

Defendants' Motion explained that Plaintiffs' state-law tort claims are preempted by the Copyright Act because they are all veiled attempts to impose liability for allegedly unauthorized reproduction or distribution of their works, or for the unauthorized preparation of a derivative work.  Mot. 15.  Like Plaintiffs' Amended Complaint, their opposition is more an exercise in re-labeling than it is a substantive response.

Plaintiffs do not (and cannot) dispute that all of their claims implicate software code, and that software code falls within the "subject matter" of copyright.  Mot. 15-16.  The only remaining question is whether these claims assert rights equivalent to those protected under § 106 of the Copyright Act.  As to Plaintiffs' economic interference claims, they are explicitly predicated on the allegation that Copilot "emit[s] code subject to open-source licenses without the licenses attached."  Am. Compl. ¶ 250; *see* Mot. 16.  This is just a roundabout way of alleging that Defendants interfere with unspecified economic opportunities in the marketplace because Copilot reproduces and distributes code without authorization.  Plaintiffs do not dispute that their economic interference claims depend on this alleged reproduction and distribution; engage with case law finding economic interference claims preempted, Mot. 16; or offer some alternative basis for the economic interference claims that would not be preempted.

Instead, Plaintiffs' only substantive response appears aimed at recharacterizing their training-based claims.  They note this Court's prior statement that "claims concerning

1  unauthorized *use* are not preempted by the Copyright Act."  Order 17, ECF No. 95 (emphasis

2  added; quoting *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005)); *see*

3  GH/MSFT Opp. 16.  Plaintiffs say that their claims "allege that Codex and Copilot have taken

4  Plaintiffs' code and used it as training data impermissibly without their consent," and that it is this

5  "*use* that is the predicate to Plaintiffs' California law claims."  GH/MSFT Opp. 17.

6         To begin with, Plaintiffs ignore their own explicit allegation that "the Copilot product"

7  that results from training "itself … is a Derivative Work."  Am. Compl. ¶ 194 n.34; *see* Mot. 17.

8  That allegation gives up the game.  The gravamen of Plaintiffs' claim is a challenge to

9  Defendants using their code to prepare what they allege is a derivative work.  Wordplay with

10  synonyms like "take" and "use" does not change that.

11        This Court's short-hand description of the Ninth Circuit's decision in *Altera* does not

12  suggest otherwise, because *Altera* cannot be read to allow a plaintiff to evade preemption merely

13  by deploying the words "unauthorized use."  The *Altera* case primarily involved a claim of

14  infringement of mask works—semiconductor chips.  The software at issue was the accompanying

15  software used to program those chips, and the claim was that a byproduct of that programming

16  process, the software's "bitstream" output, was being unlawfully supplied to a competitor to

17  develop a competing product.  424 F.3d at 1082.  The customer was permitted to install the

18  software and program the chips, so there was no unauthorized reproduction of the software.  *Id.* at

19  1082, 1089.  But the contract prohibited customers from supplying the "bitstream" byproduct file

20  that could also be used to design the chips inexpensively.  The Court held that "[t]he right at issue

21  is not the reproduction of the software …, but … the use of the bitstream."  *Id.* at 1089.  In other

22  words, the case was about not unauthorized *copying* of the software code; it was about making

23  use of output data—i.e., "the software's end-product," *id.* at 1089-90—in a prohibited way.

24        Plaintiffs' claims, by contrast, are about unauthorized reproduction of their code, not

25  unlawful use of an output.  And the controlling case is not *Altera*, but *Del Madera Properties v.*

26  *Rhodes & Gardner, Inc.*  820 F.2d 973 (9th Cir. 1987), *overruled on other grounds by Fogerty v.*

27  *Fantasy, Inc.*, 510 U.S. 517 (1994).  There the plaintiff accused the defendant, a former joint

28  venturer in a property development project, of "*using* documents and information she acquired"

"to develop the property." *Id.* at 977 (emphasis added).  The Court nevertheless found the plaintiff's unfair competition claim preempted because it was "constructed upon the premise that the documents and information … were misappropriated," which is "part and parcel of the copyright claim." *Id.*  Same for the unjust enrichment claim, which was an attempt to create an "implied promise not to *use* or copy materials." *Id.* (emphasis added).  The gravamen of Plaintiffs' training claims is not "qualitatively different" from the exclusive rights of § 106; to the contrary, Plaintiffs allege unauthorized reproduction as part of the training and the accompanying unauthorized creation of a derivative work.  Plaintiffs' claims are therefore preempted.

## IV.     THE TORT CLAIMS FAIL FOR OTHER REASONS AS WELL.

### A.     Plaintiffs' Economic Interference Claims Should Be Dismissed.

Defendants' Motion explained that economic interference claims require interference with a specific business expectancy with a third party carrying the "probability of future economic benefit."  Mot. 18 (quoting *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020)).  The Amended Complaint alleges no such thing, pointing only to vague and hypothetical relationships with the "global open-source community."  Mot. 18-19.

The Opposition confirms this.  Plaintiffs agree that their claims are based on "interference with Plaintiffs' open-source code community," GH/MSFT Opp. 20, while identifying no actual member of that community.  That is not enough.  "In order to state a claim, [a plaintiff] must allege that it had a relationship with and expected to receive an economic benefit from a *specific* third party."  *Silicon Labs Integration, Inc. v. Melman*, No. C-08-04030, 2010 WL 890140, at *2 (N.D. Cal. Mar. 8, 2010) (emphasis added).  The "community of users of their open-source code" is not a "specific third party."  GH/MSFT Opp. 19; *Silicon Labs*, 2010 WL 890140, at *2.  Plaintiffs cannot rely on "'hypothetical relationship[s]' with the class of all potential" individuals.  *Rosen v. Uber Techs., Inc.*, 164 F. Supp. 3d 1165, 1179 (N.D. Cal. 2016).

Plaintiffs' only response is the threadbare assertion that "the relationships with the community of users of their open-source code on GitHub are the specific economic relationships Defendants are intentionally interfering with."  GH/MSFT Opp. 19; *id.* (referencing unidentified "open-source programmers who utilize [Plaintiffs'] code").  Plaintiffs assert that they are "not

1   required to plead with specificity the name or identity" of the third party. *Id.*  But Plaintiffs' own

2   authority reiterates that "[o]nly when the actor's conduct is intended to affect a *specific person* is

3   the actor subject to liability" for economic interference torts.  *Ramona Manor Convalescent Hosp.*

4   *v. Care Enters.*, 177 Cal. App. 3d 1120, 1133 (1986) (quoting Restatement (Second) of Torts §

5   766 cmt. p, pp. 15-16) (emphasis added).  Even where the person is not "specifically mentioned

6   by name" in the pleadings, they must still be "identified in some manner." *Id.*  They are not.

7       Nor can Plaintiffs rely on vaguely defined expected economic benefits from their

8   undefined relations with the global open-source community.  Plaintiffs claim only that "[c]ourts

9   have recognized the economic benefits of open-source," GH/MSFT Opp. 19 (citing *Jacobsen v.*

10   *Katzer*, 535 F.3d 1373, 1378-79 (Fed. Cir. 2008)), and observe that open-source communities can

11   assist with "community software debugging, coding help, coding recognition and exposure that

12   can result in licensing contracts." GH/MSFT Opp. 20.  But Plaintiffs provide no account of what

13   they stood to gain from whom, much less facts to establish that they "would have received th[at]

14   expected benefit had it not been for the defendant's interference." *Westside Ctr. Assocs. v.*

15   *Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 523 (1996).

16       Plaintiffs also fall short on the claims' remaining elements.  *See Korea Supply Co. v.*

17   *Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153 (2003).  As for whether Defendants knew about

18   the relationships they allegedly interfered with, Plaintiffs claim only that "Defendants were aware

19   of these open-source communities." GH/MSFT 19.  There is no allegation that Defendants knew

20   about and interfered with any specific relationship.  And Plaintiffs say almost nothing to support

21   the assertion that they were injured by Defendants' alleged interference.  They posit that "[t]he

22   fact that the open-source software was offered for free does not mean there was no consideration

23   owed." *Id.* at 20.  But they provide no explanation of what else was owed—and ostensibly

24   withheld—because of Defendants' alleged interference.

25       **B.**     **The Unjust Enrichment Claim Fails**.

26       The Motion explained that Plaintiffs' unjust enrichment claim fails because Plaintiffs did

27   not plead an unenforceable contract in the alternative and failed to adequately allege injury.  Mot.

28   20-21.  In response, Plaintiffs point to no pleading on the absence of an enforceable contract.

1    GH/MSFT Opp. 21.  Indeed, they tout their "rights under open-source licenses," noting only that

2    the "licenses themselves contain no provision providing for recourse."  *Id.*  If Plaintiffs are

3    suggesting an implied contract claim for "recourse" for breach of contract, that makes no sense.

4    Recourse for breach of a contractual duty is a breach-of-contract claim.  Plaintiffs cite no case

5    supporting an independent claim for an implied contractual right of "recourse."  In any event,

6    lawyer argument in opposition is no substitute for a properly pled claim.  *See Arroyo Escondido,*

7    *LLC v. Balmoral Farm, Inc.*, No. 19-cv-08464, 2021 WL 3677580, at *5 (C.D. Cal. Aug. 19,

8    2021) ("Arroyo claims … to assert a quasi-contract claim …. But Arroyo does not allege *in Count*

9    *VI of the Complaint* that the underlying express contract … is void or rescinded.") (citation

10   omitted); *Takeya USA Corp. v. PowerPlay Mktg. Grp., LLC*, No. 21-cv-00835, 2022 WL

11   17357781, at *17 (C.D. Cal. Sept. 1, 2022) (similar).

12          Plaintiffs also fail to explain how any benefit is unjust.  In fact, they effectively concede

13   that it is not:  Plaintiffs do not dispute that they agreed to GitHub's TOS, which specifically

14   authorizes the training upon which Plaintiffs predicate their claim.  Mot. 22.  A benefit is not

15   unjust where a plaintiff "ha[s] not adequately alleged that [d]efendant[s] engaged in any illegal or

16   fraudulent conduct."  *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 810 (N.D. Cal. 2020).

17   Far from illegal or fraudulent, the alleged conduct here was concededly authorized.

18          Plaintiffs' only authority is plainly inapposite.  *See* GH/MSFT Opp. 21.  The court in

19   *Artifex Software, Inc. v. Hancom, Inc.* recognized "unjust enrichment *as a remedy*" for a claim for

20   breach of open-source licenses—that is, as a "measure for damages."  No. 16-cv-06982, 2017 WL

21   4005508, at *3-4 (N.D. Cal. Sep. 12, 2017).  The only "claims for relief" in that case were breach

22   of contract and copyright infringement.  *Artifex* thus lends no support to Plaintiffs' attempt to

23   maintain an independent unjust enrichment cause of action.

24          **C.     Plaintiffs Lack UCL Standing**.

25          Standing under the UCL requires "lost money or property."  Cal. Bus. & Prof. Code

26   § 17204.  This is a "stringent" statutory requirement demanding "more" than the minimum

27   needed for Article III standing.  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011).

28   Plaintiffs assert they satisfy this requirement because "[a]n open-source license provides concrete

1   and intangible rights and benefits" and that "even in the absence of a financial term, its violation

2   results in injuries to property, including reputational harm."  GH/MSFT Opp. 23.  Plaintiffs have

3   not explained how the alleged loss of those "rights and benefits" resulted in economic harm to

4   them.  Plaintiffs do not allege that they "surrender[ed] in a transaction more, or acquire[d] in a

5   transaction less, than [they] otherwise would have," or any specific economic costs incurred as a

6   result of Defendants' conduct.  *Kwikset*, 51 Cal. 4th at 323.  And "non-monetary suffering" like

7   reputational harms "are not recoverable damages for a UCL claim."  *Berkeley v. Wells Fargo*

8   *Bank*, No. 15-cv-00749, 2015 WL 6126815, at *15 (N.D. Cal. Oct. 19, 2015).

9          As for Plaintiffs' general observation about the benefits of open source, that does not

10  "particularize any monetary loss" from Defendants' conduct "to render it more than mere

11  speculation."  *Id*.  Without specific "monetary loss," Plaintiffs cannot pursue a UCL claim.

12  "[O]nly economic injuries … can support standing."  *Cal. Med. Ass'n v. Aetna Health of Cal.*

13  *Inc.*, 532 P.3d 250, 258 (Cal. 2023).  Plaintiffs cite no case suggesting UCL standing is available

14  in such circumstances.  *See* GH/MSFT Opp. 23 (citing *Artifex Software*, 2017 WL 4005508, at

15  *2-4 (no discussion of the UCL), and *Jacobsen*, 535 F.3d at 1379 (no discussion of the UCL)).

16  The Amended Complaint thus fails to satisfy the UCL's stringent standing requirement.

17         **D.      Plaintiffs Have No Claim For Negligence.**

18         The negligence claim must be dismissed because Plaintiffs do not establish duty or injury.

19  Mot. 21-23.  Though Plaintiffs' purport to address the defects in this claim, it is all a diversion

20  from what they do not and cannot respond to.  As Defendants explained, "any alleged violation of

21  duty predicated on *training* Copilot with code published in public GitHub repositories … is

22  expressly *foreclosed* by GitHub's Terms of Service."  Mot. 22.  Defendants laid out the relevant

23  contractual provisions in detail.  *Id*.  Plaintiffs do not respond, conceding the point and thus

24  abandoning any negligence claim.  *See Brodsky*, 445 F. Supp. 3d at 122.

25         In any event, Plaintiffs cannot establish a duty.  GH/MSFT Opp. 24.  Though they point to

26  their alleged contracts, courts have dismissed negligence claims where the asserted duty "arose

27  solely from the contractual relationship between the parties."  *Coffen v. Home Depot U.S.A. Inc.*,

28  No. 16-cv-03302, 2016 WL 4719273, at *4 (N.D. Cal. Sept. 9, 2016).  Plaintiffs offer no reason

1   to depart from "the general rule" that contract claims cannot be converted to torts.  *Id.*

2          Plaintiffs instead argue the existence of a "special relationship," asserting Plaintiffs were

3   "induced" to upload their code to GitHub.  GH/MSFT Opp. 24.  Again, they do not contest that

4   when they did so, they expressly authorized the very training they know complain of.  Plaintiffs'

5   suggestion of a special duty also fails because Plaintiffs point to nothing that distinguishes them

6   from all other GitHub users.  *E.g.*, *Whitesides v. E\*TRADE Sec., LLC*, No. 20-cv-05803, 2021

7   WL 930794, at \*6-8 (N.D. Cal. Mar. 11, 2021) (finding no special relationship where plaintiffs

8   "trading platform was not intended to affect Plaintiffs in any way particular to Plaintiffs") (citing

9   *Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1455 (1995)); *In re Sony Gaming Networks &*

10  *Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 972-73 (S.D. Cal. 2014) (finding no

11  special relationship where the defendant did not develop goods and services for the plaintiffs'

12  "specific benefit, above and beyond what was offered to all consumers").

13         Plaintiffs' primary authority on this point is far afield.  *See* GH/MSFT Opp. 25 (citing

14  *Witriol v. LexisNexis Grp.*, No. C05-02392, 2006 WL 4725713, at \*8 (N.D. Cal. Feb. 10, 2006)).

15  *Witriol* accepted a threadbare assertion of a duty of care owed by a custodian of personal and

16  confidential information to prevent unauthorized third-party access.  2006 WL 4725713, at \*8.

17  Plaintiffs have abandoned any privacy claims.  All that is at issue here is software code Plaintiffs

18  have willingly posted to public repositories for all to see, under an express grant of authority to

19  "store, archive, parse, … display," and "analyze" "as necessary."  Am. Compl., Ex. 1 at 23, 26-27

20  (TOS at 3, 6-7).  This too forecloses any attempt to allege injury.  Mot. 23; *see* GH/MSFT Opp.

21  23-25.  For reasons already detailed, Plaintiffs have not and cannot articulate any injury they

22  suffer through a computer's authorized viewing and understanding of code Plaintiffs' have placed

23  in public repositories for all to see.

## CONCLUSION

25         The Court should grant the motions to dismiss portions of the Amended Complaint.

1

Dated: August 10, 2023

Orrick, Herrington & Sutcliffe LLP

2

3

By: _____ */s/ Annette L. Hurst* _____

4

ANNETTE L. HURST
Attorneys for Defendants

5

GitHub, Inc. and Microsoft Corp.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28