1   MICHAEL A. JACOBS (SBN 111664)
    MJacobs@mofo.com
2   JOSEPH C. GRATZ (SBN 240676)
    JGratz@mofo.com
3   TIFFANY CHEUNG (SBN 211497)
    TCheung@mofo.com
4   MELODY E. WONG (SBN 341494)
    MelodyWong@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California 94105-2482
    Telephone:    (415) 268-7000
7   Facsimile:    (415) 268-7522
    [CAPTION PAGE CONTINUED ON NEXT PAGE]
8
    Attorneys for Defendants OPENAI, INC., a Delaware nonprofit
9   corporation, OPENAI, L.P., a Delaware limited partnership,
    OPENAI OPCO, L.L.C., a Delaware limited liability company,
10  OPENAI GP, L.L.C., a Delaware limited liability company,
    OPENAI STARTUP FUND GP I, L.L.C., a Delaware limited
11  liability company, OPENAI STARTUP FUND I, L.P., a
    Delaware limited partnership, OPENAI STARTUP FUND
12  MANAGEMENT, LLC, a Delaware limited liability company

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16

17  J. DOE 1 and J. DOE 2, individually and on      Case No. 4:22-cv-06823-JST
    behalf of all others similarly situated,        Case No. 4:22-cv-07074-JST

18              Plaintiffs,                          Hon. Jon S. Tigar

19       v.                                          **CLASS ACTION**

20  GITHUB, INC., a Delaware corporation;           **DEFENDANTS OPENAI, INC.,**
    MICROSOFT CORPORATION, a Washington             **OPENAI, L.P., OPENAI OPCO,**
21  corporation; OPENAI, INC., a Delaware            **L.L.C., OPENAI GP, L.L.C., OPENAI**
    nonprofit corporation; OPENAI, L.P., a Delaware  **STARTUP FUND GP I, L.L.C.,**
22  limited partnership; OPENAI GP, L.L.C., a        **OPENAI STARTUP FUND I, L.P.**
    Delaware limited liability company; OPENAI       **AND OPENAI STARTUP FUND**
23  STARTUP FUND GP I, L.L.C., a Delaware            **MANAGEMENT, LLC'S REPLY IN**
    limited liability company; OPENAI STARTUP        **SUPPORT OF MOTION TO**
24  FUND I, L.P., a Delaware limited partnership;    **DISMISS FIRST AMENDED**
    OPENAI STARTUP FUND MANAGEMENT,                  **COMPLAINT**
25  LLC, a Delaware limited liability company,
                                                     Date:        September 14, 2023
26              Defendants.                          Time:        2:00 p.m.
                                                     Courtroom: 6
27

28

ALLYSON R. BENNETT (SBN 302090)
ABennett@mofo.com
ROSE S. LEE (SBN 294658)
RoseLee@mofo.com
ALEXANDRA M. WARD (SBN 318042)
AlexandraWard@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone:    (213) 892-5200
Facsimile:    (213) 892-5454

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION .............................................................................................. 1

4   II.     ARGUMENT ..................................................................................................... 1

         A.    Plaintiffs Cannot Allege Any Injury-in-Fact to Establish Article III Standing ....... 1

             1.     Does 1, 2, and 5 cannot establish standing by showing their own post-complaint acts harmed them ..................................................................... 1

             2.     Does 3 and 4 also lack standing. ..................................................... 2

             3.     Plaintiffs' hunch that their code has been output does not justify jurisdictional discovery. ................................................................. 3

         B.    The Copyright Act Preempts Plaintiffs' State Law Causes of Action ..................... 3

         C.    Plaintiffs Fail to Plead a DMCA Claim Under Section 1202(b) ............................ 6

             1.     Plaintiffs have not pled removal of CMI .......................................... 6

             2.     Plaintiffs fail to allege removal from identical copies. .............................. 7

         D.    Plaintiffs' Intentional and Negligent Interference with Prospective Economic Relations Claims Fail ........................................................................... 8

         E.    Plaintiffs Fail to State a Claim for Unjust Enrichment ........................................ 10

         F.    Plaintiffs Fail to State an Unfair Competition Claim ........................................... 11

         G.    Plaintiffs Fail to State a Claim for Negligence ................................................... 13

   III.    CONCLUSION ................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU v. Heller*,
    471 F.3d 1010 (9th Cir. 2006)............................................................................................. 3

*Altera Corp. v. Clear Logic, Inc.*,
    424 F.3d 1079 (9th Cir. 2005)............................................................................................. 5

*Artifex Software, Inc. v. Hancom, Inc.*,
    No. 16-CV-06982-JSC, 2017 WL 4005508 (N.D. Cal. Sept. 12, 2017)............................... 12

*In re Bang Energy Drink Mktg. Litig.*,
    No. 18-CV-05758-JST, 2020 WL 4458916 (N.D. Cal. Feb. 6, 2020)................................... 11

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................................................. 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................. 9

*Bounce Exch., Inc. v. Zeus Enter., Ltd.*,
    No. 15cv3268 (DLC), 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) ...................................... 7

*Britz Fertilizers, Inc. v. Bayer Corp.*,
    No. 1:07-cv-00846-OWW-SMS, 2008 WL 341628 (E.D. Cal. Feb. 5, 2008) ...................... 14

*Buxbom v. Smith*,
    23 Cal. 2d 535 (1944) ....................................................................................................... 14

*City of Los Angeles v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001).............................................................................................. 6

*Close v. Sotheby's, Inc.*,
    894 F.3d 1061 (9th Cir. 2018)............................................................................................. 4

*Damabeh v. 7-Eleven, Inc.*,
    No. 5:12-cv-1739-LHK, 2013 WL 1915867 (N.D. Cal. May 8, 2013) ................................. 9

*DocMagic, Inc. v. Ellie Mae, Inc.*,
    745 F. Supp. 2d 1119 (N.D. Cal. 2010) ............................................................................. 5

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020)........................................................................................... 13

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
    No. 22-cv-01463, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022)....................................... 8

*Eads v. Marks*,
    39 Cal. 2d 807 (1952) ........................................................................................... 14

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
    No. 13-00496 SOM/BMK, 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ........................ 7, 8

*Garcia v. Sony Comput. Ent. Am., LLC*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) ................................................................ 13

*Gomez v. Elite Lab. Servs. Weeklys, Ltd.*,
    No. 20-CV-01805-JST, 2021 WL 4992625 (N.D. Cal. Mar. 16, 2021) ........................ 3

*ICONICS, Inc. v. Massaro*,
    192 F. Supp. 3d 254 (D. Mass. 2016) ................................................................... 7

*Jacobsen v. Katzer*,
    535 F.3d 1373 (Fed. Cir. 2008) ...................................................................... 8, 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .................................................................................... 10

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ...................................................................................... 12

*Laws v. Sony Music Ent., Inc.*,
    448 F.3d 1134 (9th Cir. 2006) .......................................................................... 4, 5

*Logistick, Inc. v. AB Airbags, Inc.*,
    543 F. Supp. 3d 881 (S.D. Cal. 2021) .................................................................. 9

*Lou v. Am. Honda Motor Co., Inc.*,
    No. 16-CV-04384-JST, 2022 WL 18539358 (N.D. Cal. Aug. 26, 2022) ...................... 12

*name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    No. CV 12-8676 PA, 2013 WL 2151478 (C.D. Cal. Mar. 4, 2013) ............................ 10

*Nazemi v. Specialized Loan Servicing, LLC*,
    No. 2:22-cv-05006-MCS-PVC, 2022 WL 17220707 (C.D. Cal. Oct. 31, 2022) ............ 13

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) ................................................................. 13

*Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*,
    No. SACV 12-1608, 2015 WL 13309286 (C.D. Cal. June 22, 2015) .......................... 14

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
    177 Cal. App. 3d 1120 (1986) ............................................................................ 9

*Russell v. Walmart, Inc.*,
    No. 22-CV-02813-JST, 2023 WL 4341460 (N.D. Cal. July 5, 2023) .......................... 11

*Sharma v. Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021) ................................................................... 3, 11

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ...................................................................................... 11

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d at 955 (S.D. Cal. 2014) ..................................................................... 15

*Stelmachers v. Verifone Sys., Inc.*,
    No. 5:14-cv-04912-EJD, 2017 WL 3968871 (N.D. Cal. Sept. 7, 2017) ...................... 2

*Stolz v. Wong Commc'ns Ltd. P'ship*,
    25 Cal. App. 4th 1811 (1994) ..................................................................................... 10

*Symantec Corp. v. McAfee Assocs.*,
    No. C-97-20367, 1998 WL 740798 (N.D. Cal. Jun. 9, 1998) ........................................ 4

*Trump v. N.Y.*,
    141 S. Ct. 530 (2020) .................................................................................................... 3

*United States v. Smith*,
    389 F.3d 944 (9th Cir. 2004) ......................................................................................... 6

*Witriol v. LexisNexis Grp.*,
    No. 05-CV-02392 MJJ, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) ...................... 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ..................... 12

**Constitution, Statutes, and Rules**

U.S. Const. art. III ............................................................................................................... 1

17 U.S.C. §§ 1201-1205 (Digital Millennium Copyright Act ("DMCA")) ........................... *passim*

Fed. R. Civ. P.
    8(a)(2) ............................................................................................................................ 9
    9(b) .............................................................................................................................. 13
    60 .................................................................................................................................... 6

**Other Authorities**

6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 1201 ........................................... 14

I.      **INTRODUCTION**

Plaintiffs' Opposition fails to demonstrate how the First Amended Complaint ("FAC," Dkt. No. 97-3) cures the many defects found in Plaintiffs' original Complaint.  The post-Complaint "exemplary demonstrations" from Copilot (that Plaintiffs point to in an effort to allege standing) all required Plaintiffs to input substantial portions of their own code, showing that it is still not plausible that anyone other than Plaintiffs caused Copilot to output Plaintiffs' code prior to the filing of the FAC.  Plaintiffs therefore have shown that they cannot plausibly allege standing for monetary damages.  Plaintiffs also cannot avoid preemption of their state law claims by recharacterizing their claims as "wrongful use" of their code as training data, when Plaintiffs seek to vindicate their rights to prepare derivative works of their code.  Plaintiffs' newly pled examples of outputs also confirm the implausibility of Plaintiffs' DMCA claim.  Plaintiffs do not dispute that they must provide the majority of Plaintiffs' works as inputs in order to manufacture non-identical outputs from Copilot.  In addition, Plaintiffs' Opposition confirms that dismissal is appropriate for Plaintiffs' state law claims for intentional and negligent interference with prospective economic relations, unjust enrichment, unfair competition, and negligence.  These claims in the FAC should therefore be dismissed.

II.     **ARGUMENT**

A.      **Plaintiffs Cannot Allege Any Injury-in-Fact to Establish Article III Standing**

1.      **Does 1, 2, and 5 cannot establish standing by showing their own post-complaint acts harmed them.**

Plaintiffs' Opposition confirms that the specific examples alleged in the FAC, which form their basis for standing for monetary damages, were generated *after* they initiated this lawsuit and that there is no reason to think that *anyone other than Plaintiffs* prompted Copilot to output their code.  (*See* Opposition (Dkt. No. 141) ("Opp.") at 5-7, 9-10.)  In doing so, Plaintiffs acknowledge that the FAC does not contain *any* allegation that Copilot generated their code *in the past*.  Plaintiffs instead argue that the "detailed step-by-step explanation of how Plaintiffs' code is easily produced in response to straightforward instructions from Copilot leads to a *reasonable inference* that Plaintiffs' code already has been emitted."  (*Id.* at 5 (emphasis added and omitted).)

In so arguing, Plaintiffs effectively concede that they manufactured injury to establish evidence of past harm.  But Plaintiffs "cannot 'manufacture' standing by inflicting a burden on [themselves] out of a fear of [hypothetical future harm] that is nothing more than a remote prospect."  *Stelmachers v. Verifone Sys., Inc.*, No. 5:14-cv-04912-EJD, 2017 WL 3968871, at *4 (N.D. Cal. Sept. 7, 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).  Nor do Plaintiffs respond to OpenAI's argument that a plaintiff's own acts cannot give rise to a "concrete injury."  (*See* OpenAI Mot. to Dismiss (Dkt. No. 110) ("MTD") at 7 (citing *Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021) (Plaintiff's "five hours of investigation – researching [defendant's] use of the records" and "checking how easily he could find them with a web browser … does not create Article III standing.").)

Plaintiffs cannot evade the requirement to allege that someone harmed them prior to their filing of the Complaint by arguing that their *ability to harm themselves* makes it plausible that someone else also harmed them.  Indeed, this Court previously held that Plaintiffs had identified "at least a substantial risk" and a "realistic danger that Codex or Copilot will reproduce Plaintiffs' licensed code as output" in the original Complaint.  (Order Granting in Part and Denying in Part Defs.' Mots. to Dismiss (Dkt. No. 95) ("MTD Order") at 9.)  But that wasn't enough to make plausible that Codex or Copilot had *already* reproduced Plaintiffs' code as output.

Plaintiffs' new allegations only make their standing problem worse.  Plaintiffs' allegations establish that one must intentionally submit substantial portions of Plaintiffs' own code to prompt Copilot to generate near-verbatim copies of that code.  (*See* MTD at 4-5.)  For this injury to reoccur, Copilot users would need to already be in possession of Plaintiffs' code to use it as a prompt.  Because Plaintiffs' own "demonstrations" contradict their theory that Copilot would *inevitably* reproduce their code, Plaintiffs' allegations fail.

### 2.      Does 3 and 4 also lack standing.

Plaintiffs also concede that Does 3 and 4 lack standing by failing to identify any specific instances in which their code was output by Copilot.  They instead insist that any pleading deficiencies can be cured "after the Parties have had adequate discovery."  (Opp. at 10.)  But

1   standing must "exist at the time the complaint was filed." *ACLU v. Heller*, 471 F.3d 1010, 1015

2   (9th Cir. 2006) (cleaned up); *see also Trump v. N.Y.*, 141 S. Ct. 530, 534-35 (2020) ("A

3   foundational principle of Article III is that an actual controversy must exist not only at the time

4   the complaint is filed, but through all stages of the litigation.") (cleaned up).  After Plaintiffs

5   failed to allege any specific facts regarding their code in the original Complaint, the Court gave

6   Plaintiffs another chance to investigate further and amend their pleadings.  (*See* MTD Order.)

7   After a month of additional investigation, they have failed to provide *any* examples where Copilot

8   outputted code allegedly owned by Does 3 and 4.  This failure suggests they have tried—and have

9   been unable—to prompt Copilot to generate Does 3 and 4's code.  They therefore cannot

10  establish standing.

11               **3.      Plaintiffs' hunch that their code has been output does not justify**
                          **jurisdictional discovery.**
12

13          In addition, Plaintiffs have not shown that they are entitled to any jurisdictional discovery

14  to cure their standing defects.  (Opp. at 10.)  While courts have discretion to grant or deny

15  discovery, discovery is inappropriate where the request for discovery is "based on little more than

16  a hunch that might yield jurisdictionally relevant facts," or "when it is clear that further discovery

17  would not demonstrate facts sufficient to constitute a basis for jurisdiction."  *Gomez v. Elite Lab.*

18  *Servs. Weeklys, Ltd.*, No. 20-CV-01805-JST, 2021 WL 4992625, at *6 (N.D. Cal. Mar. 16,

19  2021)).  "Absent some evidence establishing a colorable basis for jurisdiction," a court must deny

20  a plaintiff's request for jurisdictional discovery.  *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891,

21  905 (N.D. Cal. 2021) (cleaned up).  Plaintiffs cannot meet these minimal standards.  The

22  Opposition does not provide any "colorable basis" or arguments beyond a mere "hunch" that such

23  discovery would establish standing for Does 3 and 4.  Any request for jurisdictional discovery

24  must be denied.

25          Because Plaintiffs have not plausibly pled an imminent and concrete injury necessary to

26  confer standing, all of their claims should be dismissed.

27          **B.      The Copyright Act Preempts Plaintiffs' State Law Causes of Action**

28          Plaintiffs affirmatively assert that their California law claims are "premised on the

unauthorized use of Plaintiffs' code for training purposes by Codex and Copilot without their consent and removal of their CMI." (Opp. at 16; *see also id.* at 17 (stating that "it is that wrongful use [of Plaintiffs' code as training data] that [] underlies Plaintiffs' California law claims").) Plaintiffs argue that the right to use Plaintiffs' code for training AI products places their claims beyond the reach of federal copyright law because Section 106 of the Copyright Act doesn't cover "use." (*Id.* at 17.) This is an admission that training AI models does not, in and of itself, infringe anyone's copyrights. OpenAI agrees, but Plaintiffs' claims are still preempted.

Where a state law claim arises from a right within the general subject matter of copyright, it can still be subject to preemption, even if the precise contours of the right differ from those conferred by Section 106 of the Copyright Act. *See Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1070-71 (9th Cir. 2018) (holding that a California law that granted rights beyond the scope of a copyright holder's distribution right nonetheless was equivalent to the distribution right for preemption purposes); *see also Symantec Corp. v. McAfee Assocs.*, No. C-97-20367, 1998 WL 740798, *4 (N.D. Cal. Jun. 9, 1998) (The "fact that the state-created right is ... broader ... than its federal counterpart will not save it from pre-emption.") (cleaned up). Plaintiffs do not appear to dispute that their claims fall within the subject matter of copyright.

The question, then, is whether Plaintiffs' claims are "equivalent to rights within the general scope of copyright as specified by section 106 of the Copyright Act." *Close*, 894 F.3d. at 1069 (cleaned up). Notably, a plaintiff's claims need not be "coextensive" with or "precisely within the contemplation of" the Copyright Act to be considered "equivalent" to the rights within Section 106 of the Copyright Act, *id.* at 1071; rather, claims are preempted unless they are "qualitatively different from the copyright rights," *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1143 (9th Cir. 2006) (cleaned up).

In arguing that that standard is met here, Plaintiffs claim that their state-law claims are about "use" of their code as training data, and that "use" is not one of the exclusive rights of copyright. (Opp. at 16 (citing MTD Order at 10).) But Plaintiffs made essentially the same argument with respect to their original Complaint. (*See* Dkt. No. 66 at 11 ("Plaintiffs allege that Defendants, through their unauthorized use of Plaintiffs' code to train Codex and Copilot, and

their display of Plaintiffs' code to others for commercial gain, violated Plaintiffs' rights under state and common law.").)  This Court rejected Plaintiffs' argument then, and it should do so now.  Plaintiffs' claims are fundamentally constructed on the premise that they own copyrighted code, and that that code was misappropriated by OpenAI to create unauthorized reproductions and an unauthorized derivative work.  (*See* MTD at 8-9.)  Those claims are "equivalent" to a claim based on rights within Section 106 of the Copyright Act, and Plaintiffs cannot escape that fact merely by attempting to label them as "use."  For example, in *Laws*, the plaintiff argued that her claim was not preempted because it was based only on unauthorized "use" of her voice, but the claim was nonetheless preempted, because the "the sole basis for her voice misappropriation claim is the unauthorized reproduction of her copyrighted vocal performance," whether or not that reproduction infringed anyone's copyright.  *Laws*, 448 F.3d at 1143-44.

     *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005), the case cited by the Court in its prior order (MTD Order at 17), does not compel a different conclusion.  In *Altera*, customers using the plaintiff's software, which programmed semiconductor chips, agreed to the terms of a licensing agreement that limited the use of software to "the sole purpose of programming [chips] manufactured by … and sold by [the plaintiff]."  424 F.3d at 1082.  In finding that plaintiff's breach-of-contract claim was not preempted, the court noted that the underlying conduct challenged was a prohibited use of the software's output bitstream files, rather than reproduction of the software itself.  *Id.* at 1089.  Here, Plaintiffs have not challenged OpenAI's use of any end-product of their code.  Rather, Plaintiffs' claims rest on the supposed unauthorized creation of a derivative work (in the form of the model) and reproduction of Plaintiffs' code (in the form of outputs from the model).  Such claims are preempted.  *See DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1148 (N.D. Cal. 2010) (concluding that, because the "unauthorized use of a software's end-product is, however, legally and factually distinct from the unauthorized use of software itself," defendant's counterclaim related to the unauthorized use of copyrighted software constitutes copyright infringement).  Therefore, all of Plaintiffs' state law claims, except for their breach of contract claim, must be dismissed because they are preempted.

1

### C.    Plaintiffs Fail to Plead a DMCA Claim Under Section 1202(b)

Plaintiffs spend much of the DMCA section of their Opposition (Opp. at 11-16) addressing arguments that OpenAI did not make in its motion. (*See* MTD at 10-14.)  Defendants are not relitigating issues the Court has ruled on.  Rather, Defendants' DMCA arguments are limited to two issues pertaining to newly pled facts in the FAC: (1) Plaintiffs' specific examples of "removal" are not removal of CMI from a work at all; and (2) the alleged "removals" from these added examples are not from identical copies of Plaintiffs' works.[1]  (*Id.*)

### 1.    Plaintiffs have not pled removal of CMI.

Plaintiffs argue that their DMCA claim cannot be dismissed because they offer more detail in the FAC than their original Complaint.  (Opp. at 13.)  But Plaintiffs' newly pled facts confirm the implausibility of Plaintiffs' DMCA claim.  Plaintiffs do not dispute that, in order to get Copilot to output modified portions of Plaintiffs' source code, Plaintiffs first had to input very specific and substantial portions of Plaintiffs' source code into Copilot.  (MTD at 11-12 (discussing example of Copilot suggesting five lines of modified code only after Plaintiffs input eight lines of verbatim code).)  Plaintiffs offer no explanation for how Copilot's suggestion of a modified snippet of Plaintiffs' code could constitute *OpenAI's* removal of CMI from Plaintiffs' work, when *Plaintiffs themselves* provided the majority of the work to Copilot as the input without any CMI.  In other words, if there was any CMI on the code in Plaintiffs' examples in the first place, Plaintiffs (not OpenAI) removed it, because in those examples Plaintiffs provided the majority of the work to Copilot without any CMI.  By Plaintiffs' logic, Plaintiffs could input into Copilot 99 out of 100 lines of a work's code without CMI, and if Copilot suggests an output that

---

[1] Plaintiffs argue that Defendants should have moved for relief under Federal Rule of Civil Procedure 60.  (Opp. at 11 n. 7.) But Defendants are not asking the Court to correct its prior order regarding the original Complaint.  Defendants are moving to dismiss a new filing (*i.e.*, Plaintiffs' FAC), and the proper mechanism to do so is through a motion to dismiss.  And at any rate, by its terms, Rule 60(b) is limited to "final" judgments, orders, or proceedings. See Fed. R. Civ. P. 60(b); *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 886–87 (9th Cir. 2001). "A district court's power to rescind, reconsider, or modify an interlocutory order is derived from the common law," *Santa Monica Baykeeper*, 254 F.3d at 886, and a district court may "reconsider its prior rulings so long as it retains jurisdiction over the case." *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004).

1    resembles the work's 100th line of code without including CMI, that output of a single line of

2    code would violate the DMCA, despite the fact that it was Plaintiffs who provided the first 99

3    lines of the work without CMI.  Plaintiffs provide no authority to support their argument that

4    OpenAI must reproduce CMI in such circumstances when Plaintiffs are responsible for providing

5    significant portions of the work as input without CMI.  Plaintiffs have thus failed to plead

6    removal of CMI.

7    **2.      Plaintiffs fail to allege removal from identical copies.**

8           In response to OpenAI's authority from the Ninth Circuit that they must allege removal of

9    CMI from identical copies (MTD at 12-14), Plaintiffs cite only to out-of-circuit cases that do not

10   support their position. (*See* Opp. at 14-15.)  *See Bounce Exch., Inc. v. Zeus Enter., Ltd.*,

11   No. 15cv3268 (DLC), 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) (addressing whether terms

12   appearing in source code were CMI, not whether removal from non-identical copies falls under

13   § 1202); *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) (addressing whether

14   source code headers were CMI, not whether copy must be identical).

15          Plaintiffs next argue "[t]hat the emissions were not exact or identical is of no moment

16   when the allegations make clear the Defendants copied Plaintiffs' code in order to train Codex

17   and Copilot."  (Opp. at 15.)  Plaintiffs appear to be arguing that the cases about identical copies

18   are really about whether an *inference* of copying can be made, and that they do not apply where

19   Plaintiffs have alleged copying of their original work in its original form such that an inference is

20   not required.  (*Id.*)  But these cases aren't about whether an inference is required—they are about

21   whether excerpting or modifying a work constitutes removal of CMI at all, and hold that it does

22   not.  (MTD at 12-13.)

23          Finally, Plaintiffs selectively quote from the original summary judgment opinion in *Frost-*

24   *Tsuji Architects v. Highway Inn, Inc.* (Opp. at 15), leaving out the vital remainder of the quoted

25   sentence: "'Virtually identical' plans could have been created by redrawing Frost-Tsuji's plans

26   and not including Frost-Tsuji's copyright management information, **but that would not involve**

27   **removal or alteration of copyright management information from Frost-Tsuji's original**

28   **work**."  No. 13-00496 SOM/BMK, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014) (language

1    omitted from Opp. bolded).  The *Frost-Tsuji* court did not "[make] plain" that copies could be

2    non-identical, as Plaintiffs contend.  (Opp. at 15.)  Rather, the court found the opposite—that

3    creating virtually identical plans without CMI *would not constitute removal* from an original

4    work.   *See Frost-Tsuji*, 2014 WL 5798282 at *5.  Plaintiffs also misread *Dolls Kill, Inc. v.*

5    *Zoetop Bus. Co.*, No. 22-cv-01463, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022), as

6    demonstrating "the lack of identicality can only undermine the inference there was copying when

7    no such allegations are made."  (Opp. at 15.)  *Dolls Kill* says no such thing, and in fact suggests

8    that the DMCA should not be implicated at all here, where Codex or Copilot is generating non-

9    identical copies.  2022 WL 16961477, at *3 ("Re-creating another party's work may be unlawful,

10   but it does not necessarily implicate the DMCA because copying a work does not require the

11   removal or alteration of CMI.").

12        Because Plaintiffs have failed to plead removal of CMI and affirmatively allege non-

13   identical outputs, their § 1202 claim should be dismissed with prejudice.

14        **D.    Plaintiffs' Intentional and Negligent Interference with Prospective Economic**
            **Relations Claims Fail**
15

16        The Opposition does not point to factual allegations to satisfy a single element of

17   Plaintiffs' claims for intentional or negligent interference with prospective economic advantage.

18        **No Economic Relationship with the Probability of Future Economic Benefit.**

19   Plaintiffs contend that they have satisfied this element because (i) the FAC refers to "open-source

20   licensing relationships and communities," (Opp. at 19), and (ii) courts have recognized that there

21   are "economic benefits[] to the creation and distribution of copyrighted works under public

22   licenses." *Jacobsen v. Katzer*, 535 F.3d 1373, 1379 (Fed. Cir. 2008).  While licenses may

23   sometimes confer benefits, Plaintiffs' cited authority does not involve a tortious interference

24   claim and does not stand for the proposition that referring to open source licenses alone is

25   sufficient to satisfy this element at the pleading stage.  As stated in OpenAI's Motion, Plaintiffs

26   must plead specific economic relationships between Plaintiffs and third parties that have the

27   probability of future economic benefit, not merely the hope of future transactions.  (*See* MTD at

28   15-16.)  Plaintiffs have failed to do so and have not cited a single case that states otherwise.

1        **No Knowledge of an Economic Relationship with Third Parties.**  Plaintiffs' conclusory

2    argument that Defendants were aware of "these relationships, including those of open-source

3    communities" (Opp. at 19.) fails to show that they adequately alleged OpenAI's knowledge of an

4    economic relationship between Plaintiffs and a third party.  Further, while Plaintiffs argue they

5    need not name the third party (*id*. at 20), the *Ramona* court made clear that the third party must be

6    "identified in some manner."  *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App.

7    3d 1120, 1133 (1986).  As many courts have acknowledged, the allegations "must do more than

8    conclusorily allege the existence of business relationships with which the defendant interfered."

9    *Logistick, Inc. v. AB Airbags, Inc.*, 543 F. Supp. 3d 881, 887 (S.D. Cal. 2021); *see also Damabeh*

10   *v. 7-Eleven, Inc.*, No. 5:12-cv-1739-LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) (a

11   plaintiff "must identify with particularity the relationships or opportunities with which defendant

12   is alleged to have interfered").  Plaintiffs' allegations do not identify with particularity the

13   relationships with which OpenAI allegedly interfered.

14        **No Actual Disruption and Economic Harm.**  Plaintiffs' conclusory statements that the

15   FAC "alleges actual disruption of Plaintiffs' relationship with their users" and "does adequately

16   allege economic harm due to interference with Plaintiffs' open source code community" are

17   insufficient to defeat OpenAI's Motion.  (Opp. at 20.)  These blanket assertions, without any

18   factual support, do not provide the requisite showing that OpenAI's conduct actually disrupted

19   Plaintiffs' relationships with third parties or resulted in economic harm.  *See Bell Atl. Corp. v.*

20   *Twombly*, 550 U.S. 544, 555 n.3 (2007) ("Rule 8(a)(2) still requires a 'showing,' rather than a

21   blanket assertion.").  For example, Plaintiffs do not allege in what way their future relationships

22   with specific third parties were disrupted.  Further, Plaintiffs' statement that "[t]he fact that the

23   open-source software was offered for free does not mean there was no consideration owed under

24   the open-source license" does not demonstrate that Plaintiffs have suffered economic harm.

25   (Opp. at 20.)  As stated in OpenAI's Motion, Plaintiffs have not identified any prospective

26   contracts, job offers, or research assignments that Plaintiffs allegedly lost due to OpenAI's

27   purported interference, or the alleged monetary and reputational harm Plaintiffs experienced.

28   (MTD at 18.)

**No Wrongful Conduct**.  Plaintiffs have no response to their failure to plead "conduct that was wrongful by some legal measure other than the act of interference itself."  (MTD at 18.) Plaintiffs refer to OpenAI's alleged failure to attach licenses when emitting code (*see* Opp. at 20), but that conduct is not separate and distinct from the act of interference itself as alleged in the FAC.  (*See* FAC ¶ 262 (alleging that OpenAI's operation of Codex and reproduction of code without correct licenses "depriv[ed] Plaintiffs of the economic benefits of open-source distribution").)  Plaintiffs' argument fails on its face.

**No Intentional Acts.**  Plaintiffs have failed to demonstrate that the FAC sufficiently pleads "acts on the part of the defendant designed to disrupt the relationship" to satisfy the intent element of an intentional interference claim.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003).  Rather, Plaintiffs conclude that OpenAI had the requisite intent based on its alleged "failure to attach open-source licenses when emitting code."  (Opp. at 20.) Those allegations, however, are insufficient because they do not allege facts that show that OpenAI's conduct was designed to disrupt Plaintiffs' relationships with unknown third parties. *See name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. CV 12-8676 PA (PLAx), 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013) (dismissing claim where the complaint did not identify "any intentional actions undertaken by [defendant] designed to induce breach of Plaintiff's contracts with its clients . . . . ") (cleaned up).

**No Duty of Care.**  Plaintiffs have failed to mention, let alone identify, sufficient factual allegations demonstrating that OpenAI owed Plaintiffs a purported duty of care, which is fatal to Plaintiffs' negligent interference claim.  *See Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811, 1825 (1994) (A negligent interference claim "arises only when the defendant owes the plaintiff a duty of care.").

### E.    Plaintiffs Fail to State a Claim for Unjust Enrichment

Plaintiffs' unjust enrichment claim fails because they have not alleged the absence of any applicable and enforceable contract provisions, even in the alternative, as required for a quasi-contract claim.  Plaintiffs do not deny that an unjust enrichment claim cannot proceed "when the parties have a valid contract regarding the same subject matter."  (*See* MTD at 19.)  Plaintiffs

1    allege that the open source licenses are a contract between them and OpenAI and that OpenAI

2    breached those licenses.  (FAC ¶¶ 217, 222-25.)  Although Plaintiffs now argue in their

3    Opposition that "the [open source] licenses do not specifically address the use of code as training

4    data or in connection with generative AI products sold to the public" (Opp. at 21), nowhere in the

5    FAC do Plaintiffs allege that the open source licenses are inapplicable.  *See In re Bang Energy

6    Drink Mktg. Litig.*, No. 18-CV-05758-JST, 2020 WL 4458916, at *10 (N.D. Cal. Feb. 6, 2020)

7    (dismissing unjust enrichment claim where "[p]laintiffs have not alternatively alleged the absence

8    of [applicable and enforceable] provisions").

9           Moreover, Plaintiffs do not sufficiently allege that OpenAI unjustly retained a benefit at

10   their expense.  (*See* MTD at 20.)  "Restitution [under unjust enrichment] is not mandated merely

11   because one person has realized a gain at another's expense," but rather, "the obligation arises

12   when the enrichment obtained lacks any adequate legal basis and thus cannot conscientiously be

13   retained."  *Russell v. Walmart, Inc.*, No. 22-CV-02813-JST, 2023 WL 4341460, at *2 (N.D. Cal.

14   July 5, 2023) (cleaned up).  Restitution requires "that a defendant has been *unjustly* conferred a

15   benefit," and "[a]bsent qualifying mistake, fraud, coercion, or request by [defendant], there is no

16   injustice."  *Id.* (cleaned up).  Plaintiffs fail to point to any such qualifying conduct by OpenAI to

17   render retention of any benefit unjust.  *See id.* (dismissing unjust enrichment claim based on

18   allegations that customers using Walmart's self-checkout conferred a benefit on Walmart by

19   providing uncompensated labor because plaintiff failed to allege qualifying mistake, fraud,

20   coercion, or request by Walmart).  This claim should be dismissed.

21          **F.      Plaintiffs Fail to State an Unfair Competition Claim**

22          Plaintiffs have not stated a UCL claim under any prong.[2]  Plaintiffs do not dispute that the

23   FAC failed to establish an inadequate remedy at law sufficient to state a UCL claim.  (*See* MTD

24   at 21; Opp. at 23.)  This alone warrants dismissal of their UCL claim.  *See Sharma*, 524 F. Supp.

25   3d at 907 (concluding that, under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir.

26

27          [2] Plaintiffs do not address OpenAI's argument with respect to its unfair competition claim under common law (*see* Opp. at 22-23), and accordingly, this common law claim should be dismissed.

28

2020), plaintiffs "must establish that they lack an adequate remedy at law before securing equitable restitution" under the UCL) (cleaned up); *Lou v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2022 WL 18539358, at *2 (N.D. Cal. Aug. 26, 2022) (finding plaintiff "concedes" argument when plaintiff "offers no response to [defendant's] argument that he failed to plead an inadequate remedy at law").

Moreover, Plaintiffs' argument that they were "denied their license, permission, and recognition" does not establish economic injury sufficient for UCL standing.  (Opp. at 23.) Standing under the UCL is "substantially narrower than federal standing under article III" and has "more stringent" requirements.  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011). Intangible losses are not enough.  *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *22 (N.D. Cal. Aug. 30, 2017) (Plaintiffs' "imminent risk of future costs as a result of the [d]ata [b]reaches" fail to "show that [p]laintiffs have specifically lost money or property as a result of [d]efendants' misconduct.") (cleaned up). Labeling alleged intangible losses as "economic benefits" does not create standing; "generating market share for programs, increasing national or international reputation…, and deriving value from improvements to software based on suggestions by end-users" do not constitute "lost money or property" under the UCL.  (*See* FAC ¶¶ 281, 243.)

Plaintiffs' cited cases do not show otherwise.  *Jacobsen* and *Arifex Software* did not involve UCL claims.  *Jacobsen*, 535 F.3d at 1377 (copyright infringement); *Artifex Software, Inc. v. Hancom, Inc.*, No. 16-CV-06982-JSC, 2017 WL 4005508, at *2 (N.D. Cal. Sept. 12, 2017) (breach of contract).  Rather, *Jacobsen* and *Arifex Software* merely noted that the "lack of money changing hands in open source licensing should not be presumed to mean there is no economic consideration" in an open source agreement.  *Jacobsen*, 535 F.3d at 1379; *Arifex*, 2017 WL 4005508, at *4 (citing *Jacobsen*).  Moreover, even if these purported "benefits" could qualify as economic injuries, Plaintiffs have not alleged that OpenAI's conduct caused decreased "market share[s] for [Plaintiffs' code]," decline in Plaintiffs' "national or international reputation," or any loss in value of Plaintiffs' code.  (*See* FAC ¶¶ 243, 281.)

Plaintiffs' UCL claim under the unlawful, unfair, and fraudulent prongs fails for

1    additional reasons.  For the "unlawful" prong, Plaintiffs do not dispute that their derivative UCL

2    claim fails if the predicate DMCA and state law claims fail.  (*See* MTD at 21; Opp. at 22-23.)  For

3    the "unfair" prong, Plaintiffs' conclusory assertion that OpenAI's use of Plaintiffs' code for

4    training is an "immoral, unethical, oppressive, or unscrupulous business practice[]" that

5    "outweighs the utility of the practice" (Opp. at 23.) is deficient.  *See Doe v. CVS Pharmacy, Inc.*,

6    982 F.3d 1204, 1215 (9th Cir. 2020) (affirming dismissal of unfair claim where plaintiffs "assert

7    in a conclusory fashion that [defendant's] conduct outweighs any justification, motive or reason

8    therefor, but they do not allege how that is so") (cleaned up); *Nazemi v. Specialized Loan*

9    *Servicing, LLC*, No. 2:22-cv-05006-MCS-PVC, 2022 WL 17220707, at *4 (C.D. Cal. Oct. 31,

10   2022) ("Plaintiff's bare conclusory recitation of one of the UCL's legal standards does not clarify

11   how Defendants' conduct satisfies" the tests for the unfair prong.) (cleaned up).  For the

12   "fraudulent" prong, Plaintiffs do not dispute that they must demonstrate actual reliance and

13   satisfy the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) on the

14   purported deception to state a UCL claim.  (*See* MTD at 22; Opp. at 23.)  As Plaintiffs' own cited

15   case shows, plaintiffs must plead "actual reliance on the alleged fraudulent conduct" and plead

16   "with specificity to meet Rule 9(b)'s strictures." *Garcia v. Sony Comput. Ent. Am., LLC*, 859 F.

17   Supp. 2d 1056, 1063, 1066 (N.D. Cal. 2012).  Plaintiffs have not done so here.  *See Opperman v.*

18   *Path, Inc.*, 84 F. Supp. 3d 962, 974 (N.D. Cal. 2015) (claims sounding in fraud must contain "an

19   account of the time, place, and specific content of the false representations as well as the

20   identities of the parties to the misrepresentations").  Their UCL claim should be dismissed.

21       **G.      Plaintiffs Fail to State a Claim for Negligence**

22       Plaintiffs have not adequately pled that OpenAI owe them any duty of care, as they would

23   need to in order to state a claim for negligence.  In their Opposition, Plaintiffs contend that

24   OpenAI's duty arises from Plaintiffs' open source licenses and their unspecified "special

25   relationship."  (Opp. at 24-25.)  Neither is true under the circumstances here.

26       Plaintiffs' argument that "a duty may arise out of a contract" (*id.* at 24) ignores

27   subsequent California case law that imposed an independent-duty requirement for tort claims

28   predicated on a breach of contract.  Plaintiffs' cited authority is inapplicable.  Plaintiff cites 6

Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 1201, which relies on *Eads v. Marks*, 39
Cal. 2d 807, 811-12 (1952) (where the California Supreme Court recognized a tort cause of action
based on negligent failure to perform contractual duties), but recent decisions raise serious doubts
about the viability of *Eads*. *See Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*, No.
SACV 12-1608 JGB (ANx), 2015 WL 13309286, at *8 n.11 (C.D. Cal. June 22, 2015) (observing
that "the continued relevance of *Eads* is somewhat questionable"); *Britz Fertilizers, Inc. v. Bayer
Corp.*, No. 1:07-cv-00846-OWW-SMS, 2008 WL 341628, at *11 (E.D. Cal. Feb. 5, 2008)
(determining that "*Eads* has been refuted by later California case law that establishes the
independent duty requirement"). In *Britz*, the court highlighted three later-decided California
Supreme Court cases that held "conduct amounting to a breach of contract only becomes tortious
when it also violates a duty independent of the contract arising from principles of tort law." *See*
2008 WL 13309286, at *7-9 (citing *Aas v. Super. Ct.*, 24 Cal. 4th 627 (2000); *Elrich v. Menezes*,
21 Cal. 4th 543 (1999); and *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85 (1995)).
Likewise, Plaintiffs cite *Buxbom v. Smith*, 23 Cal. 2d 535 (1944), but there the court did not hold
that a breach of contract could support a finding of duty. *See Buxbom* at 548. Because Plaintiffs
did not allege an independent duty distinct from any obligations under the open source licenses,
they fail to state a claim for negligence. (*See* Opp. at 24.)

Further, Plaintiffs have neither cited authority for finding a special relationship under
these circumstances, nor plausibly alleged that the balance of the six factors they cite in their brief
supports such a relationship. (*See id.* at 24-25 (citing *Vera Mona, LLC v. Dynasty Grp. USA
LLC*, No. EDCV 20-2615 JGB (KKx), 2021 WL 3623297, at *4 (C.D. Cal. Apr. 15, 2021) (courts
look to six factors to determine whether a special relationship exists: "(1) the extent to which the
transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3)
the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection
between the defendant's conduct and the injury suffered, (5) the moral blame attached to the
defendant's conduct and (6) the policy of preventing future harm"))).

These factors do not support any "special relationship" based on OpenAI's alleged use of
Plaintiffs' code for training AI. The open source nature of Plaintiffs' code makes it unlikely that

1  this use was intended to affect Plaintiffs, or that it was foreseeable and certain that Plaintiffs

2  would suffer injury.  Indeed, the purpose of open source is to make code publicly accessible for

3  *anyone* to use and modify, as well as foster collaboration.  Moreover, Plaintiffs have not cited any

4  authority finding that using publicly available data to train and develop generative AI products is

5  morally wrong or violates a public policy preventing such use.  (*See* Opp. at 25.)

6         Plaintiffs primarily argue that "to the extent Copilot generates a duty because it hosts

7  Plaintiffs' open source code," that would also extend to OpenAI because Copilot is alleged to be a

8  joint venture between GitHub and OpenAI.  (Opp. at 25.)  But Plaintiffs cite no cases supporting

9  their argument that entering into a business relationship with a separate entity that hosts publicly

10 available code somehow creates a duty to Plaintiffs.  The three cases that Plaintiffs do cite are

11 inapposite.  In *Witriol v. LexisNexis Group*, the court ruled that plaintiffs adequately pled the duty

12 element of negligence by alleging that "[a]s custodians of the Representative Plaintiff's and the

13 Class Members' *personal and confidential* information," defendants owed a duty to prevent

14 unauthorized access to private and sensitive data.  No. 05-CV-02392 MJJ, 2006 WL 4725713, at

15 *1, 8 (N.D. Cal. Feb. 10, 2006) (emphasis added).  Similarly, *Bass v. Facebook, Inc.* held that

16 Facebook owed its *users* a duty of care because "some of the information [published on

17 Facebook] was private."  394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019).  Neither case supports

18 finding a duty where an entity merely "possess[es]" publicly available data of individuals with

19 whom they lack any relationship.  (*See* Opp. at 25.)  Likewise, in *In re Sony Gaming Networks &

20 Customer Data Security Breach Litigation*, the court found that defendant owed a "legal duty to

21 safeguard consumer's *confidential* information *entrusted to* a commercial entity."  996 F. Supp.

22 2d at 955, 966 (S.D. Cal. 2014) (emphasis added).  That is not the case here.  Because Plaintiffs'

23 code is available to the public, no similar duty exists.  This claim should be dismissed.

24 **III.    CONCLUSION**

25        For these reasons, OpenAI's motion to dismiss the claims for violations of the DMCA,

26 intentional and negligent interference with prospective economic relations, unjust enrichment,

27 unfair competition, and negligence in the FAC should be granted.

28

1   Dated: August 10, 2023                         MORRISON & FOERSTER LLP

2

3                                                  By:   */s/ Joseph C. Gratz*
                                                         Joseph C. Gratz
4
                                                   MICHAEL A. JACOBS (SBN 111664)
5                                                  MJacobs@mofo.com
                                                   JOSEPH C. GRATZ (SBN 240676)
6                                                  JGratz@mofo.com
                                                   TIFFANY CHEUNG (SBN 211497)
7                                                  TCheung@mofo.com
                                                   MELODY E. WONG (SBN 341494)
8                                                  MelodyWong@mofo.com
                                                   MORRISON & FOERSTER LLP
9                                                  425 Market Street
                                                   San Francisco, California 94105-2482
10                                                 Telephone:    (415) 268-7000
                                                   Facsimile:    (415) 268-7522
11
                                                   ALLYSON R. BENNETT (SBN 302090)
12                                                 ABennett@mofo.com
                                                   ROSE S. LEE (SBN 294658)
13                                                 RoseLee@mofo.com
                                                   ALEXANDRA M. WARD (SBN 318042)
14                                                 AlexandraWard@mofo.com
                                                   MORRISON & FOERSTER LLP
15                                                 707 Wilshire Boulevard
                                                   Los Angeles, California 90017-3543
16                                                 Telephone:    (213) 892-5200
                                                   Facsimile:    (213) 892-5454
17
                                                   Attorneys for Defendants OPENAI, INC., a
18                                                 Delaware nonprofit corporation, OPENAI,
                                                   L.P., a Delaware limited partnership,
19                                                 OPENAI OPCO, L.L.C., a Delaware limited
                                                   liability company, OPENAI GP, L.L.C., a
20                                                 Delaware limited liability company, OPENAI
                                                   STARTUP FUND GP I, L.L.C., a Delaware
21                                                 limited liability company, OPENAI
                                                   STARTUP FUND I, L.P., a Delaware limited
22                                                 partnership, OPENAI STARTUP FUND
                                                   MANAGEMENT, LLC, a Delaware limited
23                                                 liability company

24

25

26

27

28

OPENAI'S REPLY ISO MTD FAC
Case No. 4:22-cv-06823-JST                                                          16