UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. DOE 1, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>GITHUB, INC., et al.,<br><br>        Defendants. | Case No. 22-cv-06823-JST<br><br>**ORDER GRANTING IN PART DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF Nos. 108, 110 |

Before the Court are motions to dismiss filed by Defendants GitHub, Inc., and Microsoft Corporation (collectively "Defendant GitHub"), ECF No. 108; and Defendants OpenAI, Inc., OpenAI, L.P., OpenAI OPCO, L.L.C., OpenAI GP, L.L.C., OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., and OpenAI Startup Fund Management, LLC (collectively "Defendant OpenAI"), ECF No. 110.[1] The Court will grant the motions in part and deny them in part.

**I.  BACKGROUND**

Because the facts are well-known to the parties and the Court has summarized Plaintiffs' allegations in detail in its prior order, ECF No. 95, the Court will not elaborate them here.

Defendants previously filed motions to dismiss, which this Court granted in part and denied in part. *Id.* On the question of standing, the Court agreed with Defendants that Plaintiffs failed to "identify any instance of Copilot reproducing Plaintiffs' licensed code and therefore failed to plead a particularized injury sufficient to confer standing [for monetary relief]." *Id.* at 7. Plaintiffs did, however, establish standing for injunctive relief, as their pleadings adequately

---

[1] Although the caption of this order cites to the redacted versions of Defendants' motions to dismiss, ECF Nos. 108, 110, the remainder of the order will refer to the sealed versions of these documents—ECF Nos. 107-3, 109-3.

alleged that there is "at least a substantial risk that Defendants' programs will reproduce Plaintiffs' licensed code as output" in the future. *Id.* at 9. On the merits, the Court denied Defendants' motions with respect to Plaintiffs' claims for breach of contract and for violations of Sections 1202(b)(1) and 1202(b)(3) of the Digital Millennium Copyright Act ("DMCA"). The Court did, however, dismiss Plaintiffs' claims for violations of Section 1202(a) and 1202(b)(2) of the DMCA, tortious interference in a contractual relationship, fraud, false designation of origin, unjust enrichment, unfair competition, breach of the GitHub Privacy Policy and Terms of Service, violation of the California Consumer Privacy Act ("CCPA"), and negligence with leave to amend. Plaintiffs' claims for civil conspiracy and declaratory relief were dismissed with prejudice.

In their first amended complaint ("FAC"), Plaintiffs have added a fifth Doe GitHub user as a plaintiff and bring eight claims for relief: (1) violation of Sections 1202(b)(1) and 1202(b)(3) of the DMCA, 17 U.S.C. §§ 1201–05; (2) common law breach of contract for open-source license violations; (3) common law breach of contract for selling licensed materials;[2] (4) common law intentional interference with prospective economic relations; (5) common law negligent interference with prospective economic relations; (6) common law unjust enrichment; (7) common law unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (8) common law negligence.

In support of these claims, Plaintiffs renew their allegations that Defendants "published Licensed Materials [that Plaintiffs] owned a copyright interest in to at least one GitHub repository" without proper copyright management information ("CMI"). ECF No. 97-3 ¶ 19; *see id.* ¶¶ 20–23, 191. Plaintiffs also assert that "[t]hough Output from Copilot is often a verbatim copy, even more often it is a modification," meaning "a near-identical copy that contains only semantically insignificant variations of the original Licensed Materials, or a modified copy that recreates the same algorithm." *Id.* ¶ 96.

Following this Court's finding that Plaintiffs lacked standing for monetary relief, the FAC now includes allegations that Defendants' programs released, or "output," code published to

---

[2] Plaintiffs' claim for breach of contract for selling licensed materials is alleged only against Defendant GitHub, Inc. ECF No. 97-3 at 60.

GitHub by Does 1, 2, and 5.

Beginning with Doe 1, "███████████████████████████████ ███████████ subject to the MIT License." *Id.* ¶ 106. This code ███████████████ ████████████████████████████████████████████ *Id.* According to the FAC, "[w]hen Copilot is prompted with ███████████████████████████████ ████████████████████████████████████████████████" *Id.* ¶ 107. Further, the FAC alleges that ████████████████████████████████ ██████████████████ do not appear in any other source file on GitHub[,]" and thus, "[t]he only way Copilot knows how to make this suggestion is because it ingested Doe 1's source file as training data." *Id.* ¶ 108. In light of this, the FAC avers that "the Copilot suggestion needs to follow the requirements of Doe 1's license for that code, including providing attribution[,]" and it currently does not. *Id.* ¶ 112.

Turning to Doe 2, the FAC alleges that ████████████████████████████ ████████████████████████████ subject to the GNU General Public License v3.0. ████████████████████████████████████████████ *Id.* ¶ 101. When Copilot was prompted with the first few lines of Doe 2's code, including the function name "███████████" and ████████████████████████ in Doe 2's code, its output was "identical to Doe 2's code," save for a few "cosmetic" differences in word choice. *Id.* ¶ 103. According to the FAC, "the Copilot suggestion is a nearly verbatim reproduction of Doe 2's unique code," and thus "it follows that Copilot copied Doe 2's code." *Id.* ¶ 104.

Finally, the FAC includes descriptions of two sets of Doe 5's code posted on GitHub: ████████████████████████████████ *Id.* ¶¶ 114, 122. The first code set, ███████████████████████████████████████████████████████ *Id.* ¶ 114. ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ *Id.* When a user prompts Copilot "████████ ████████████████████████████████████████████ "Copilot offers to complete the prompt with a verbatim copy of Doe 5's original code, except that

3

███████████████████████████████████████

██████████████████ *Id.* ¶¶ 115–16.

Doe 5's second set of code, ██████████████████████████████

████████████████████████████████████████████████████ *Id.* ¶ 122.

When a user prompts Copilot "with the first section of Doe 5's code, comprising the first complete test and the name of the second," "Copilot offers to complete the second test with a verbatim copy of Doe 5's original code." *Id.* ¶¶ 122–23.

Defendants now move to dismiss six of the eight claims raised in the FAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[3] ECF Nos. 107-3, 109-3. They argue that Plaintiffs lack standing to pursue claims for damages, and that Plaintiffs' amended complaint fails to state a claim.

## II.   JURISDICTION

The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

"Article III of the Constitution confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "No case or controversy exists if a plaintiff lacks standing or if a case is not ripe for adjudication, and consequently a federal court lacks subject matter jurisdiction." *Temple v. Abercrombie*, 903 F. Supp. 2d 1024, 1030 (D. Haw. 2012) (citations and quotations omitted). A defendant may attack a plaintiff's lack of standing jurisdiction by moving to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).").

---

[3] Defendants do not move to dismiss Plaintiffs' claims for breach of contract for open-source license violations or breach of contract for selling licensed materials. *See supra* at 2.

4

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Where, as here, a defendant makes a facial attack, the court assumes that the complaint's allegations are true and draws all reasonable inferences in the plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

### B.     Rule 12(b)(6)

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### C.     Leave to Amend

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision of whether to grant leave to amend is "within the discretion of the district court, which may deny leave due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. Article III Standing

In its order resolving prior motions to dismiss, the Court found that Plaintiffs had standing to seek injunctive relief, as they plausibly alleged that there is "at least a substantial risk that Defendants' programs will reproduce Plaintiffs' licensed code as output" in the future. ECF No. 95 at 9. Plaintiffs, however, failed to establish standing to seek retrospective relief for money damages because Plaintiffs did not allege "that they themselves have suffered the injury they describe[d]." *Id.* at 8.

Plaintiffs' first amended complaint largely resembles their initial version with one significant addition—they now include examples of licensed code owned by Does 1, 2, and 5 that has been output by Copilot. ECF No. 97-3 ¶¶ 97–128. Plaintiffs aver that these allegations establish a "particular personalized injury" sufficient to confer standing for damages, as such facts demonstrate that Defendants removed their CMI and emitted their code in violation of their open-source licenses. ECF No. 140 at 12. Defendants contend that even with these new allegations, Plaintiffs still fall short of demonstrating standing for money damages. In their view, Does 1, 2, and 5 have "manufactured injury to establish evidence of past harm," ECF No. 147 at 8, while Does 3 and 4 have again failed to raise instances in which their code was output by Copilot. ECF No. 109-3 at 18. Although the Court agrees with Defendants that Does 3 and 4 have not established standing for monetary damages, it finds that Does 1, 2, and 5 have adequately alleged "particular personalized injury" sufficient to confer standing for monetary damages.

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423. A plaintiff bears the burden of establishing standing, but that burden is low at the pleading stage, where "general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*,

6

594 U.S. at 431.

In a putative class action, named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

### a. Does 1, 2, and 5

Relying on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013), Defendants contend that Does 1, 2, and 5 have not adequately alleged past harm because "a plaintiff's own acts"—*i.e.*, inputting their own code into Copilot to demonstrate output—"cannot give rise to a 'concrete injury.'" ECF No. 147 at 8. In *Clapper*, plaintiffs challenged the constitutionality of Section 702 of the Foreign Intelligence Surveillance Act of 1978, which "allows the Attorney General and the Director of National Intelligence to acquire foreign intelligence information by jointly authorizing the surveillance of individuals who are not 'United States persons' and are reasonably believed to be located outside the United States." *Clapper*, 568 U.S. 398 at 401. Plaintiffs were "United States persons whose work [allegedly] require[d] them to engage in sensitive international communications with individuals who they believe[d] [were] likely targets of surveillance under" that statute. *Id.* As a basis for standing, plaintiffs alleged that, in response to the surveillance statutes, they had to incur costly and burdensome measures to protect the confidentiality of their communications. *Id.* at 401–02. The Supreme Court held that a plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Id.* at 402.

This case is not *Clapper*. The Court already determined in its prior order that Plaintiffs face "at least a substantial risk that Defendants' programs will reproduce Plaintiffs' licensed code as output" in the future. ECF No. 95 at 9. The present inquiry concerns whether Plaintiffs have alleged "that they have suffered a qualifying injury-in-fact that has actually occurred to them[.]" *Id*. To make such a showing, a plaintiff is not required to suffer an injury only inadvertently. *See, e.g.*, *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 297 (2022). Indeed, the Supreme Court has made clear that an injury resulting from an unlawful act "remains fairly traceable" to that act,

7

"even if the injury could be described in some sense as willingly incurred." *Id.* (holding that plaintiff suffered injury even though plaintiff willingly incurred a statutory penalty; distinguishing *Clapper*); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374–75 (1982) (finding plaintiff "has standing to sue in his capacity as a tester."). Plaintiffs submit that their code was emitted by Defendants' programs without their CMI in violation of their open-source licenses. ECF No. 97-3 ¶¶ 19–23, 191. That Plaintiffs themselves input their code into Defendants' programs (which caused the output) does not render their injury non-concrete.[4] Accordingly, Plaintiffs have made "a factual showing of perceptible harm" to establish standing for monetary damages. *Lujan*, 504 U.S. at 566.

In support of their position, Defendants contend that Plaintiffs "have not alleged any facts giving reason to believe that a real-world user plausibly has or would enter the sorts of prompts Plaintiffs used in their examples." ECF No. 146 at 8. They assert that Plaintiffs have neither explained that their code "frequently recurs in GitHub repositories," nor that "anyone would want to copy their code." *Id.* at 10. Maybe so, but Article III does not impose such requirements to confer standing for monetary damages. Further, the amount of damages for past harm suffered is a separate inquiry from whether Plaintiffs have alleged standing for damages in the first place.

Defendants' final argument is that Plaintiffs have not alleged that Copilot generated the output in question prior to the commencement of this action. ECF Nos. 107-3 at 18, 109-3 at 18. Defendants are correct that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Lujan*, 504 U.S. at 569 n.4 (quoting *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830 (1989)) (emphasis omitted). But "when a plaintiff files an amended complaint, the amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (citations and internal quotations omitted). Plaintiffs generated this output before filing their first amended complaint, which is now the operative complaint in this litigation. The Court finds Plaintiffs' allegations sufficient to confer standing for monetary damages.

---

[4] Nor does it render their injury non-traceable, as Defendant GitHub alleges. *See* ECF No. 107-3 at 17. Plaintiffs' asserted injury was not only the consequence of their own actions, but rather derived from Defendants' programs. *See Warth*, 422 U.S. at 505.

8

### b.     Does 3 and 4

Turning to Does 3 and 4, the Court agrees with Defendants that they have "yet again failed to plead specific instances in which *their* code was output by Copilot." ECF No. 109-3 at 18. "[A]t an irreducible minimum, [Article] III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)). Because Does 3 and 4 have not alleged instances where their code has been output, they have not demonstrated "a qualifying injury-in-fact that has actually occurred to them." ECF No. 95 at 9. Having previously found that Does 3 and 4 failed to allege standing for monetary damages on this same ground, the Court will now dismiss their request for monetary damages with prejudice.

In sum, the Court finds that Does 1, 2, and 5 have standing to pursue claims for both injunctive relief and damages, whereas Does 3 and 4 have standing to pursue only claims for injunctive relief.

### B.     Rule 12(b)(6)

Defendants move to dismiss most of Plaintiffs' claims for failure to state a claim on which relief may be granted. The Court grants Defendants' motions with regard to their copyright preemption claims, as well as their claims under Sections 1202(b)(1) and 1202(b)(3) of the DMCA.

#### 1.     Copyright Preemption

Defendants argue that Plaintiffs' state law claims—including intentional and negligent interference with prospective economic relations, unjust enrichment, unfair competition, and negligence—are preempted by Section 301 of the Copyright Act. For reasons set forth below, the Court agrees.

The Copyright Act of 1976 expressly preempts state law claims where the plaintiff's work "come[s] within the subject matter of copyright" and the state law grants "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright[.]" 17 U.S.C. § 301(a). The rights protected under the Copyright Act include the rights of reproduction,

preparation of derivative works, distribution, performance, and display. 17 U.S.C. § 106.

The Ninth Circuit has established a two-part test to determine whether state law claims are preempted by the copyright law. First, the court decides "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006). If it does, the court must then "determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106[.]" *Id.* at 1138. On the other hand, "[i]f a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law is not preempted by the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (quoting *Summit Mach. Tool Mfg. v. Victor CNC Sys.*, 7 F.3d 1434, 1439–40 (9th Cir. 1993)).

As a threshold matter, Plaintiffs do not appear seriously to dispute that the "subject matter" of their state law claims falls within the subject matter of copyright. Copyright encompasses "original works of authorship" including literary, musical, or dramatic works (among other categories) that are "fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). Plaintiffs' claims concern computer code, which is a form of "literary work[]" under Section 102(a). *See Google LLC v. Oracle Am., Inc.*, 593 U.S. ----, 141 S. Ct. 1183, 1198 (2021). Thus, the Court finds the first prong of the preemption test satisfied.

The dispositive question, accordingly, is whether Plaintiffs' state law claims assert "equivalent rights" to those protected under Section 106 of the Copyright Act. Defendants contend that although Plaintiffs label their claims as "unauthorized use," the gravamen of their state law claims sound in rights equivalent to those protected under Section 106 and are thus preempted. *See* ECF Nos. 107-3 at 22–24, 109-3 at 19–21. Relying on this Court's prior order, Plaintiffs respond that "claims concerning unauthorized use are not preempted by the Copyright Act." ECF No. 140 at 23; *see Altera*, 424 F.3d at 1089–90.

### a. Intentional and Negligent Interference with Prospective Economic Relations

The Court begins with Defendants' argument that Plaintiffs' state law claims for intentional and negligent interference with prospective economic relations are preempted.[5] Plaintiffs contend that "[w]hen a programmer uses an open-source software, a contract is formed based on the terms of the particular open-source license" and when Defendants "emit[] code subject to open-source licenses without the licenses attached," they are interfering with Plaintiffs' "prospective open-source relationship." ECF No. 97-3 ¶¶ 242, 250–51. Despite its stylization, the core of this claim is that "Plaintiffs have a tort-based exclusive right to control the reproduction and distribution of certain code to the general public[.]" ECF No. 107-3 at 23. Accordingly, "the right [Plaintiffs] seek to protect is coextensive with [] exclusive right[s] already safeguarded by the Act," including the rights of reproduction, distribution, and preparation of derivative works of copyrighted material. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539, 105 (1985); *see also Media.net Advert. FZ-LLC*, 156 F. Supp. 3d at 1073 (holding intentional interference with prospective economic relations claim preempted because it was "predicated on Defendant's unauthorized copying of Plaintiff's HTML code, in violation of its statutory rights under the Copyright Act.").[6]

### b. Unjust Enrichment

Defendants similarly argue that Plaintiffs' state law claim for unjust enrichment is preempted by the Copyright Act. This Court previously held that Plaintiffs' unjust enrichment

---

[5] To establish a claim of intentional interference with prospective economic advantage, a plaintiff must show: "(1) an economic relationship between the plaintiff and a third party, with a probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of this relationship; (3) intentional and wrongful conduct on the part of the defendant, designed to interfere with or disrupt the relationship; (4) actual disruption or interference; and (5) economic harm [to] the plaintiff as a proximate result of the defendant's wrongful conduct." *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1073 (N.D. Cal. 2016). Similarly, to prevail on a claim for negligent interference with prospective economic advantage, courts consider the following elements: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 621 (N.D. Cal. 2002).

[6] Plaintiffs do not argue that an extra element qualitatively changes the nature of their claims. But even if they did, courts have already rejected the argument that a loss of business stemming from the defendant's sale of plaintiff's copyrighted work constitutes an extra element to an intentional interference with prospective economic relations claim because "federal copyright laws already protect the exclusive right of distribution." *Media.net Advert. FZ-LLC*, 156 F. Supp. 3d at 1073–74 (quoting *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004)).

11

claim, which alleged that Defendants unlawfully reproduced Plaintiffs' code as output and prepared derivative works, was subject to preemption because the claim was based upon rights "protected by the federal Copyright Act."[7] ECF No. 95 at 17 (quoting *Altera*, 424 F.3d at 1079). Plaintiffs now bring a modified unjust enrichment claim, asserting that "Defendants used Plaintiffs' Licensed Materials to train Codex and Copilot without following the licenses under which the Licensed Materials were published." ECF No. 97-3 ¶ 269. Defendants contend that it is inconsequential whether Plaintiffs' claim is based on unlawful use of "output" or "training data"—both claims fall subject to preemption. *See* ECF Nos. 107-3 at 24, 109-3 at 20.

In support of their position, Plaintiffs rely on *Altera*, which held that claims "concerning the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act." *Altera*, 424 F.3d at 1090; *see* ECF No. 140 at 23. Plaintiffs' selective reliance on *Altera* is misplaced. *Altera* concerned a licensing dispute between Altera and Clear Logic, two competitors in the semiconductor industry. *Altera*, 424 F.3d at 1081. Pursuant to a licensing agreement, Altera customers were permitted to use Altera's software, which programmed semiconductor chips, for the "sole purpose of programming [chips] manufactured by . . . and sold by [Altera]." *Id.* at 1090. Clear Logic's business model relied on Altera customers using Altera software to create a file called a bitstream, which Clear Logic then used to create "a different type of chip" for the customer. *Id.* at 1082. Altera brought state law claims against ClearLogic "for inducing Altera's customers to intentionally breach their license agreements with Altera and also for intentionally interfering with those contractual relations." *Id*. Clear Logic contended that those claims were preempted by federal copyright law. *Id*. In finding that the claims were not preempted, the *Altera* court held that "[t]he right at issue is not the reproduction of the software as Clear Logic argues, but is more appropriately characterized as the use of the bitstream." *Id.* at 1089.

While the *Altera* dispute concerned the "unauthorized use of the software's end-product," *id.* at 1090, Plaintiffs' claims principally concern the unauthorized reproduction of their code to prepare derivative works—not the unlawful use of an end-product or output. Such claims fall

---

[7] Plaintiffs' claim for unjust enrichment was dismissed with leave to amend. ECF No. 95 at 18.

under the purview of the Copyright Act. *Cf. G.S. Rasmussen & Assoc. v. Kalitta Flying Service*, 958 F.2d 896, 904 (9th Cir. 1992), *cert. denied*, 508 U.S. 959 (1993) ("Copyright preemption is both explicit and broad"). Indeed, Plaintiffs' complaint explicitly alleges that "Defendants had access to but were not licensed by Plaintiffs . . . to create Derivative Works based upon the Licensed Materials." ECF No. 97-3 ¶ 194. Thus, the Court finds that Plaintiffs' unjust enrichment claim is preempted.

### c. Negligence

The Court turns next to Defendants' argument that Plaintiffs' state law claim for negligence is subject to preemption. In their FAC, Plaintiffs assert that Defendants owed them a duty of reasonable care and breached this duty by negligently "engineering, designing, maintaining, and controlling systems—including Codex and Copilot—which are trained on Plaintiffs' . . . Licensed Materials without their authorization." *Id.* ¶ 284. Defendants respond that "[t]he alleged duty of care is no more than a duty to refrain from what Plaintiffs regard as copyright infringement." ECF No. 109-3 at 20. It is well-established that where "the essential allegation" of a negligence claim is that a defendant "unlawfully copied" a plaintiff's idea, "it is still a copyright infringement claim." *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996). Here, because Plaintiffs "merely recharacterize[] a copyright infringement claim as one for negligence," the Court finds that it too is preempted by the Copyright Act. *Id.*

### d. Unfair Competition

Finally, Defendants argue that to the extent that Plaintiffs' unfair competition claim is predicated on their state law claims for intentional and negligent interference with prospective economic relations, unjust enrichment, and negligence, it must also be preempted. The Court agrees. When the underlying claims are dismissed on preemption grounds, a UCL claim predicated on the same causes of action must be dismissed as well. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998) (finding plaintiff's UCL claim preempted where it was "based solely on rights equivalent to those protected by the federal copyright laws."); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017) (same).

Having previously dismissed Plaintiffs' unjust enrichment claim on preemption grounds,

13

the Court now dismisses this claim with prejudice. Plaintiffs' unfair competition claim is dismissed to the extent it is predicated on their state law claims for intentional and negligent interference with prospective economic relations, unjust enrichment, and negligence. Finally, because the Court is unconvinced that Plaintiffs can cure their intentional and negligent interference with prospective economic relations and negligence claims, the Court likewise dismisses them with prejudice.

### 2. DMCA Section 1202(b)(1) and 1202(b)(3)

In its prior order, the Court denied Defendants' motions to dismiss Plaintiffs' claims under Sections 1202(b)(1) and 1202(b)(3) of the DMCA, reasoning that Plaintiffs pleaded "sufficient facts to support a reasonable inference that Defendants intentionally designed the programs to remove CMI from any licensed code they reproduce as output." ECF No. 95 at 19. Further, it found that Plaintiffs' allegations plausibly suggested that "Defendants knew or had reasonable grounds to know that removal of CMI carried a substantial risk of inducing infringement." *Id.* at 20.

Defendants now ask the Court to address an unresolved argument from the prior briefing—namely, that "[Section] 1202(b) claims lie only when CMI is removed or altered from an *identical* copy of a copyrighted work." ECF No. 107-3 at 20 (emphasis added); *see* ECF No. 109-3 at 23–24. Defendants argue that because Plaintiffs' new allegations state that output from Copilot is often a modification of their licensed works, as opposed to an "identical copy," they have effectively pleaded themselves out of their Section 1202(b)(1) and 1202(b)(3) claims. ECF No. 109-3 at 23. Agreeing with Defendants on both fronts, the Court finds that it is not precluded from analyzing this claim anew and that Section 1202(b) claims require that copies be "identical."[8]

CMI includes "information such as the title, the author, the copyright owner, the terms and conditions for use of the work, and other identifying information set forth in a copyright notice or conveyed in connection with the work." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 671 (9th Cir. 2018). To state a claim under Section 1202(b)(1), Plaintiffs must plausibly allege that Defendants

---

[8] A court may consider a motion "to the extent it presents issues not previously resolved." *Jones v. Life Ins. Co. of N. Am.*, No. 08-CV-03971-RMW, 2015 WL 8753996, at *3 (N.D. Cal. Dec. 15, 2015).

(1) "intentionally remov[ed] or alter[ed]" CMI while "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b)(1). Similarly, a violation of Section 1202(b)(3) requires that Plaintiffs plausibly allege that Defendants "distribute" or "import for distribution" copies of works "knowing that [CMI] has been removed or altered without authority of the copyright owner[.]" 17 U.S.C. § 1202(b)(3); *see also Stevens*, 899 F.3d at 674 (requiring plaintiff to demonstrate "pattern of conduct or modus operandi" to establish the requisite mental state); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 938 (C.D. Cal. 2018).

"Courts have held that no DMCA violation exists where the works are not identical." *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, No. 22-CV-1186 TWR (BLM), 2023 WL 3366534, at *12 (S.D. Cal. May 9, 2023) (internal quotations and citations omitted). "[E]ven where the underlying works are similar, courts have found that no DMCA violation exists" unless the works are identical. *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020); *see also Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir. 2017) (finding no Section 1202(b) violation where the allegedly infringing drawing was "not identical."). Plaintiffs' amended complaint alleges that "[t]hough Output from Copilot is often a verbatim copy, even more often it is a modification: for instance, a near-identical copy that contains only semantically insignificant variations of the original Licensed Materials, or a modified copy that recreates the same algorithm." ECF No. 97-3 ¶ 96. Indeed, the examples Plaintiffs provide with respect to Does 1, 2, and 5 state that the Copilot output is a "modified format," "variation[]," or the "functional[] equivalent" of the licensed code. *Id.* ¶¶ 103, 110, 120. This, however, is not sufficient for a Section 1202(b) claim. Accordingly, the Court agrees with Defendants that this is a "fundamental defect" "endemic to Plaintiffs' theory of [Section] 1202(b) liability." ECF No. 107-3 at 21.

Plaintiffs' arguments in response are unavailing. First, they cite to *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) for the proposition that "Section 1202(b) has no requirement that the copy from which CMI is removed be identical." ECF No. 142 at 21. But

*ICONICS* concerned whether various "copyright headers" were CMI within the meaning of Section 1202(c) because "the [plaintiff's] copyright at issue cover[ed] the full versions of programs, not individual files." *ICONICS, Inc.*, 192 F. Supp. 3d at 272. Notably, the parties did not dispute that the defendants reproduced an identical copy of the plaintiff's file. *Id.* Similarly, Plaintiffs' attempt to liken this case to *Bounce Exchange, Inc. v. Zeus Enterprises Ltd.*, No. 15CV3268, 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) is unpersuasive. The question in *Bounce* was whether two terms that appeared in the plaintiff's source code were CMI. *Id.* at *3. In concluding that the terms were CMI, the *Bounce* court reasoned that the terms were "a shorthand form of the official name of the author of the work, and they are inserted into the code itself[,]" thereby satisfying the requirements of Section 1202(c). *Id.* In short, neither case cited by Plaintiffs concerns Section 1202(b)'s identicality requirement.

Although the Court finds it unlikely that this deficiency could be cured by the allegation of additional facts, it grants leave to amend out of abundance of caution. *See Rivas v. Kijakazi*, No. C 23-03324 WHA, 2023 WL 8006846, at *2 (N.D. Cal. Nov. 17, 2023) (granting leave to amend where "defects [in complaint] could theoretically be cured").

## CONCLUSION

Defendants' motions to dismiss are denied in part and granted in part. Defendants' motions to dismiss Plaintiffs' claims for damages for lack of standing under Article III are denied as to Does 1, 2, and 5. Defendants' motions to dismiss Plaintiffs' claims for damages for lack of standing under Article III are granted with prejudice as to Does 3 and 4. Moreover, Defendants' motions to dismiss Plaintiffs' state law claims on preemption grounds, as well as their motions to dismiss Plaintiffs' claims under Sections 1202(b)(1) and 1202(b)(3) of the DMCA, are granted. Plaintiffs' state law claims for intentional and negligent interference with prospective economic relations, unjust enrichment, negligence, and unfair competition are dismissed with prejudice.[9] Plaintiffs' claims under Section 1202(b)(1) and 1202(b)(3) of the DMCA are dismissed with leave to amend.

---

[9] Plaintiffs' unfair competition claim is dismissed only to the extent that it is predicated on their state law claims for intentional and negligent interference with prospective economic relations, unjust enrichment, and negligence.

Plaintiffs may file an amended complaint within 21 days of the date of this order.  Leave to amend is granted solely to correct the deficiencies identified in this order.  Failure to file a timely amended complaint will result in dismissal of all dismissed claims with prejudice.

**IT IS SO ORDERED.**

Dated:  January 3, 2024



JON S. TIGAR
United States District Judge

17