January 30, 2024
The Honorable Donna M. Ryu
United States District Court for the Northern District of California
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street
Oakland, CA 94612

      RE:    *J. Doe 1 et al., v. GitHub Inc., et al.,* Case No. 4 :22-CV-06823-JST ("Action")

Dear Judge Ryu:

Pursuant to the Court's standing orders, the parties hereby submit this joint discovery letter brief concerning discovery of certain documents in the possession of non-party Morgan Stanley responsive to a Rule 45 Subpoena ("Subpoena"). Counsel met and conferred regarding the issues discussed herein on January 23, 2024, but were unable to reach a solution. This letter is filed with the permission of Morgan Stanley's counsel who has submitted "Morgan Stanley's Statement."[1]

## PLAINTIFFS' STATEMENT

In this Action, Plaintiffs Does 1 through 5 and the proposed class ("Plaintiffs") are authors of source code subject to open-source licenses that were posted on GitHub, a public, open-source computer code repository. Plaintiffs seek relief for Defendants'[2] act of copying their source code to train GitHub's Copilot and related generative AI products, which GitHub admits can output the licensed code it was trained on. Plaintiffs assert GitHub violates their contractual rights, among others, by commercializing and selling their code in violation of GitHub's terms of service under which Plaintiffs and others posted their code to GitHub. Further, when a coder posts a project on GitHub, they are offered suggested licenses they can place on their code to govern its use. These licenses include contractual terms including requirements of attribution, inclusion of the copyright notice, and inclusion of the copyright's text. Defendants intentionally designed their generative AI products to omit this information. Defendants' conduct violates GitHub's own terms of service, the open-source licenses, as well as the DMCA. Plaintiffs seek damages, and equitable remedies including specific performance, restitution and disgorgement for violation of these rights. Among other things, Defendants dispute the licenses created any enforceable obligations. They dispute the terms of the licenses, claiming they are ambiguous. Defendants also deny Plaintiffs' rights to those above-noted remedies. Defendants dispute the amounts to be paid as compensation or in the form of remedies.

Microsoft purchased GitHub in 2018 for $7.5 billion in stock. The chief asset of GitHub was the over 85 million code repositories. How and why Microsoft valued this asset and their plans for its use are directly relevant to Plaintiffs' claims and remedies in this matter. Morgan Stanley acted as an agent of GitHub, serving as its "exclusive financial advisor" in connection with the acquisition. Therefore, Morgan Stanley can be reasonably expected to possess documents analyzing the licenses, including rights and obligations attached to them. Morgan Stanley

---

[1] **Current Case Deadlines:** (1) Fact Discovery Cut-off: September 27, 2024; (2) Expert Discovery Cut-off: February 21, 2025; (3) Dispositive Motion Hearing: not scheduled; (4) Class Certification Motion: March 27, 2025; (4) Pretrial Conference and Trial Dates: not scheduled.

Hon. Donna M. Ryu
January 30, 2024
Page 2 of 7

prepared materials which can reasonably be expected to describe and value the monetization of the licenses, and future economic plans, the $7.5 billion valuation, as well as other general background regarding the technologies and market conditions and descriptions of the goals, plans and structure of the relevant business, post transaction. Morgan Stanley's initial review confirms it possesses responsive material within the categories of material Plaintiffs and Morgan Stanley have agreed upon. The materials also likely contain numerous party admissions and other admissible evidence.

**Any Motions to Quash the Subpoena (or for a Protective Order) Are Untimely**
Under the Federal Rules, a motion to quash must be "timely" filed. Fed. R. Civ. P. 45(d)(3)(A). Courts in the district generally require a motion to quash or for a protective order to be filed before the return date of the subpoena. For example, in *Handloser v. HCL Am., Inc.*, 2020 WL 4700989, at *5 (N.D. Cal. Aug. 13, 2020), the court held that where a defendant did not move to quash a subpoena or for a protective order before the date of compliance, the defendant "was not entitled to instruct [the non-party] to not comply with the subpoena after [non-party] and plaintiffs reached an agreement regarding [non-party's] compliance." **Handloser is directly on-point.** On September 20, 2023, Plaintiffs caused the Subpoena to be served on Morgan Stanley. The subpoena commanded production by October 11, 2023. Morgan Stanley served objections and responses on October 11, 2023. Morgan Stanley did not move to quash. None of the Defendants objected to the Subpoena, moved to quash, or for a protective order before the Subpoena's compliance date. Morgan Stanley agreed to comply with the Subpoena until Microsoft asked Morgan Stanley not to comply because Defendants Microsoft and GitHub may file a protective order. "Having failed to take any steps to protect [their] interests under the federal rules," Defendants were not entitled to instruct Morgan Stanley to withhold documents under the Subpoena. *Id.* For these reasons, Defendants' motion for a protective order is untimely and improper.

**Morgan Stanley Agreed to Produce Documents, Demonstrating a Lack of Undue Burden**
On December 8, 2023, Plaintiffs' counsel met and conferred with Akinyemi T. Akiwowo, Executive Director of Legal and Compliance at Morgan Stanley. On that video call, and as confirmed in a subsequent writing by Mr. Akiwowo, Morgan Stanley confirmed it possessed responsive documents. It agreed to "search for and produce ***relevant, non-privileged*** due diligence documents responsive to the subpoena . . ." Morgan Stanley also articulated a time frame under which Plaintiffs could expect the production.

On January 8, 2024, Morgan Stanley's outside counsel wrote Plaintiffs' counsel requesting a call to discuss "where we are in the process of tying [sic] to produce certain documents." On January 9, 2024, Morgan Stanley informed Plaintiffs it had located the deal file-type materials and e-folders and that those were being sent to a vendor for processing. Morgan Stanley stated that, as a first step, counsel would review its files and try to identify the documents that are most obviously responsive to what Plaintiffs are looking for. Morgan Stanley also stated there are slide decks that could be culled with relative ease based on readily identifiable filenames and filetypes. Morgan Stanley indicated this would comprise the first round of production, and that the parties could have further discussion regarding the potential for further production(s) beyond that initial production based on Plaintiffs' review of those documents. Plaintiffs agreed to this narrowed approach. Morgan Stanley advised that the production would occur the week of

January 15 or January 22. Morgan Stanley cannot support a burden objection. Indeed, its conduct demonstrates such an objection would not be well taken.

Responsive documents have been identified and collected, as agreed. Plaintiffs understand the documents are ready to be produced but for Defendants' efforts to obstruct the process.

**Morgan Stanley Reneged on its Agreement to Produce Documents**
On January 22, 2024, Morgan Stanley's counsel wrote to Plaintiffs informing them that Morgan Stanley now would not comply with the Subpoena. The following day, the parties met and conferred in an effort to resolve their dispute without the Court's intervention. Plaintiffs' reiterate their agreement as previously negotiated. Morgan Stanley refuses to produce any documents, apparently because Microsoft asked Morgan Stanley not to produce them. The parties are now at an impasse, necessitating this letter brief.

**The Documents Sought are Relevant to Plaintiffs' Breach of Contract Claims**
Information is relevant if it is "reasonably calculated to lead to admissible evidence." Fed. R. Civ. P. 26(b). The question of relevancy should be construed "liberally and with common sense," and "discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal 1995) (cleaned up).

Courts have permitted third-party discovery in breach of contract cases where the information is relevant to breach of contract claims. *See, e.g.*, *Meritage Homes of Tex. et al. v. AIG Specialty Ins. Co.*, 2024 WL 221448, at *6 (W.D. Tex. Jan. 18, 2024) (denying motion for protective order as respects insured's subpoena to non-party brokers for extrinsic evidence of interpretation of insurance policies); *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 404 (E.D.N.Y. 2011) (affirming Magistrate's denial of motion to quash Rule 45 subpoenas served on law firm where requests sought negotiations of an agreement, and observing the subpoenaing party sought such extrinsic evidence to explain the meaning of language contained in that agreement).

Here, the documents Plaintiffs seek are relevant to each element of their breach of contract claim. Whether Morgan Stanley contemplated the possible monetization of source code as training data for artificial intelligence models, how GitHub or Morgan Stanley evaluated the rights and duties set forth in the licenses, interpretation of license terms, enforceability, discussions of risk of copying and monetizing the code in violation of the licenses and terms of service, and the assessed the value of the source code hosted on GitHub in the context of Microsoft's acquisition of GitHub provide evidence of the meaning of the license terms. In addition, the material would be relevant to and would inform the amount of damages (reliance and restitutionary), and would also show whether Defendants acted with the requisite intent for establishing equitable remedies. *See* Restatement (Third) of Restitution and Unjust Enrichment, § 39 (2011) (confirming restitutionary contract remedies where "a **deliberate** breach of contract results in profit to the defaulting promisor . . .") (emphasis added). The materials Morgan Stanley has already gathered are discoverable, proportional and can be produced without additional burden.

The Court retains jurisdiction to hear the instant motion notwithstanding Morgan Stanley's argument to the contrary. The Court should compel Morgan Stanley to comply with its

agreement to produce the slide decks and any other due diligence documents it has identified and culled for production just prior to its sudden refusal to produce documents. Plaintiffs should be permitted to follow up with Morgan Stanley to request other documents that may be responsive, as the parties initially discussed and agreed to.

## MORGAN STANLEY'S STATEMENT

It is unfortunate that Plaintiffs felt it was necessary to submit this discovery letter at this time. As discussed below, Plaintiffs are improperly seeking an immediate production of Morgan Stanley documents before the Court has had an opportunity to rule on Defendants' request for a protective order precluding discovery of these very documents (and others). *See* ECF. No. 202 (Defendants' discovery letter).

Plaintiffs issued a subpoena to Morgan Stanley that focused on Morgan Stanley's role as financial advisor in connection with the Github acquisition. After receiving the subpoena, Morgan Stanley timely served objections and engaged in good-faith discussions with Plaintiffs about an appropriate response. Thereafter, however, Morgan Stanley learned that Defendants were planning to file a motion for a protective order that would preclude party and non-party discovery regarding the Github acquisition, including the subpoena issued to Morgan Stanley. At that time, Morgan Stanley expressed its concern to Plaintiffs that it was appropriate to respect Defendants' motion and allow the Court the opportunity to rule on the issue before Morgan Stanley made a production of the disputed documents. What is more, Morgan Stanley specifically advised Plaintiffs that, if the Court denied Defendants' motion for the protective order, Morgan Stanley would promptly produce documents in accordance with its prior discussions with Plaintiffs. Plaintiffs, however, rejected Morgan Stanley's compromise and insisted on an immediate production.

On January 26, 2024, Defendants filed their unilateral discovery brief (ECF. No. 202) that, among other things, specifically seeks a protective order relating to acquisition-related discovery, including discovery requested from Morgan Stanley in the subpoena. Defendants argue, among other things, that the Github acquisition is irrelevant and the burden of any search for responsive documents is unwarranted and not proportional to the needs of the case. Upon learning of the letter, Morgan Stanley once again reached out to Plaintiffs and requested that Plaintiffs hold off on submitting this letter until Your Honor has had an opportunity to rule on Defendants' request for a protective order – a ruling which, of course, will directly impact the propriety of the Morgan Stanley subpoena. Plaintiffs refused and, again, were unwilling to wait until Your Honor ruled on the issue. Instead, Plaintiffs demanded that Morgan Stanley immediately produce the disputed documents.

Morgan Stanley is perplexed by Plaintiff's unwillingness to allow time for the Court to rule on Defendants' motion for a protective order. It is our understanding that a hearing on Defendants' letter requesting the protective order would proceed fairly promptly in this Court. Moreover, discovery deadlines do not appear to be an issue as the end of fact discovery is not until September 2024. Thus, holding off on enforcement of the Morgan Stanley subpoena, pending the resolution of the issues raised by Defendants' motion for a protective order, would be prudent at this time with no undue consequence to Plaintiffs. *See, e.g.*, *Hives v. Cnty. of Alameda*, No. 15-CV-02490-DMR, 2016 WL 3547925, at *1 (N.D. Cal. June 30, 2016) ("The subpoenas

subject to the motion to quash shall not be operative pending resolution of the instant dispute…."); *Gragg v. Orange Cab Co., Inc.*, No. C-13-80109-JSW (DMR), 2013 WL 12147720, at *1 (N.D. Cal. May 22, 2013) ("The subpoena subject to the Motion [to quash] shall not be operative pending resolution of the instant dispute….").

Additionally, and perhaps as a technical matter, Plaintiffs' motion to compel relating to the Morgan Stanley subpoena must be brought in the Central District of California. The Federal Rules clearly provide that the appropriate forum for a motion to enforce a third-party subpoena is in the district where compliance with the subpoena is required. *Am. Marriage Ministries v. Google, LLC*, No. 21-mc-80040-SK, 2021 WL 1526757, at *1 (N.D. Cal. Apr. 12, 2021) ("[t]he appropriate forum for a motion to enforce a third party subpoena is in the district where compliance is required"); *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) ("[C]hallenges to the subpoena are to be heard by the district court encompassing the place where compliance with the subpoena is required."). Here, the subpoena was issued to Morgan Stanley in the Central District of California (Glendale, California) and demanded compliance in the Central District of California (Los Angeles, California). Accordingly, Plaintiffs' motion to compel must be brought in that District. *See, e.g.*, *Uniloc USA, Inc. v Apple Inc.*, No. 19-cv-01692-EJD, 2020 WL 6262349, at *2 (N.D. Cal. Oct. 23, 2020) ("the Court concludes that under the plain language of Rule 45(d), Apple's motion to compel is properly filed in this district, as it is the place where compliance is required on the face of the subpoena, even if that place of compliance is not proper under Rule 45(c)"); *In re Advanced Micro Devices, Inc.*, No. 22-mc-80146-VKD, 2022 WL 2905068, at *2 (N.D. Cal. July 22, 2022) ("[I]n this case, ST has specified a place of compliance in Austin, Texas. Having selected that location, Rule 37 requires ST to bring its motion to compel in a jurisdiction that encompasses that location—i.e., the Western District of Texas").

Furthermore, Plaintiffs' argument that any motion to quash by Morgan Stanley would be "untimely" because it was not filed before the subpoena's return date is both irrelevant and wrong. First, Morgan Stanley is not seeking to file a motion to quash. Rather, it is simply taking the position that Your Honor should be allowed time to decide the issues relating to the subpoena raised by Defendants' motion for a protective order before Morgan Stanley makes a production. Second, in any event, a non-party may bring a motion to quash after the return date, where, as here, written objections were timely served. *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 875 n.2 (N.D. Cal 2022) ("where (as here) a subpoena recipient moves to quash after lodging a written objection to the subpoena, the motion to quash is timely so long as it is filed within a reasonable time after the conclusion of informal efforts to resolve the objections").

In sum, Morgan Stanley simply seeks guidance from the Court, by issuance of a decision on Defendants' motion for a protective order, before proceeding with a production. To the extent that motion is denied with respect to the subpoena issued to Morgan Stanley, Morgan Stanley will promptly make a production in accordance with its prior discussions with Plaintiffs. If Defendants' motion for a protective order is granted, the need for the production and issues in this letter will be mooted.

Hon. Donna M. Ryu
January 30, 2024
Page 6 of 7

# CERTIFICATION

The undersigned lead counsel for each party certifies that they met and conferred via video conference regarding this discovery dispute.

Respectfully Submitted,

  /s/ Joseph R. Saveri
Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K. L. Young (State Bar No. 318371)
Holden Benon (State Bar No. 325847)
Louis A. Kessler (State Bar No. 243703)
Travis L. Manfredi (State Bar No. 281779)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:   jsaveri@saverilawfirm.com
           czirpoli@saverilawfirm.com
           cyoung@saverilawfirm.com
           hbenon@saverilawfirm.com
           lkessler@saverilawfirm.com
           tmanfredi@saverilawfirm.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

  /s/ Arthur I. Willner
Arthur I. Willner
550 South Hope Street
Suite 1850
Los Angeles, CA 90071
213-234-1750
awilner@leaderberkon.com

Glen Silverstein (*pro hac vice* to be filed)
Michael J. Tiffany (*pro hac vice* to be filed)
630 Third Avenue
New York, NY 10017
212-486-2400
gsilverstein@leaderberkon.com
mtiffany@leaderberkon.com

LEADER BERKON COLAO & SILVERSTEIN

*Counsel for Morgan Stanley & Co. LLC*

cc: All counsel of record via ECF

Hon. Donna M. Ryu
January 30, 2024
Page 7 of 7

## ATTESTATION OF FILER

Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I, Joseph R. Saveri, attest that concurrence in the filing of this document has been obtained.

Dated: January 30, 2024                                          */s/ Joseph R. Saveri*
                                                                                     Joseph R. Saveri