1  MICHAEL A. JACOBS (SBN 111664)
   MJacobs@mofo.com
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California  94105-2482
   Telephone:    (415) 268-7000
4  Facsimile:    (415) 268-7522
   [CAPTION PAGE CONTINUED ON NEXT PAGE]

5

6  Attorneys for Defendants OPENAI, INC., OPENAI, L.P., OPENAI
   OPCO, L.L.C., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I,
   L.L.C., OPENAI STARTUP FUND I, L.P., OPENAI STARTUP
7  FUND MANAGEMENT, LLC, OPENAI, L.L.C., OPENAI GLOBAL,
   LLC, OAI CORPORATION, OPENAI HOLDINGS, LLC, OPENAI
8  HOLDCO, LLC, OPENAI INVESTMENT LLC, OPENAI STARTUP
   FUND SPV I, L.P., and OPENAI STARTUP FUND SPV GP I, L.L.C.,

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12

13  J. DOE 1, et al.,                  Case No. 4:22-cv-06823-JST
                                       Case No. 4:22-cv-07074-JST
            Plaintiffs,
14                                     Hon. Jon S. Tigar
        v.
15                                     **CLASS ACTION**
    GITHUB, INC., et al.,
16                                     **DEFENDANTS OPENAI, INC., OPENAI,
            Defendants.                L.P., OPENAI OPCO, L.L.C., OPENAI GP,
17                                     L.L.C., OPENAI STARTUP FUND GP I,
                                       L.L.C., OPENAI STARTUP FUND I, L.P.,
18                                     OPENAI STARTUP FUND
                                       MANAGEMENT, LLC, OPENAI, L.L.C.,
19                                     OPENAI GLOBAL, LLC, OAI
                                       CORPORATION, OPENAI HOLDINGS,
20                                     LLC, OPENAI HOLDCO, LLC, OPENAI
                                       INVESTMENT LLC, OPENAI STARTUP
21                                     FUND SPV I, L.P., AND OPENAI
                                       STARTUP FUND SPV GP I, L.L.C.'S
22                                     MOTION TO DISMISS SECOND
                                       AMENDED COMPLAINT**
23
                                       Date: May 16, 2024
24                                     Time: 2:00 p.m.
                                       Dept: Courtroom 6
25

26

27

28

1   JOSEPH C. GRATZ (SBN 240676)
    JGratz@mofo.com
2   TIFFANY CHEUNG (SBN 211497)
    TCheung@mofo.com
3   MELODY E. WONG (SBN 341494)
    MelodyWong@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone:     (415) 268-7000
6   Facsimile:     (415) 268-7522

7   ALLYSON R. BENNETT (SBN 302090)
    ABennett@mofo.com
8   ROSE S. LEE (SBN 294658)
    RoseLee@mofo.com
9   ALEXANDRA M. WARD (SBN 318042)
    AlexandraWard@mofo.com
10  MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
11  Los Angeles, California 90017-3543
    Telephone:    (213) 892-5200
12  Facsimile:    (213) 892-5454

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 16, 2024 at 2:00 p.m., or at a different time and date set by the Court, Defendants OPENAI, INC., OPENAI, L.P., OPENAI OPCO, L.L.C., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I, L.L.C., OPENAI STARTUP FUND I, L.P., OPENAI STARTUP FUND MANAGEMENT, LLC, OPENAI, L.L.C., OPENAI GLOBAL, LLC, OAI CORPORATION, OPENAI HOLDINGS, LLC, OPENAI HOLDCO, LLC, OPENAI INVESTMENT LLC, OPENAI STARTUP FUND SPV I, L.P., and OPENAI STARTUP FUND SPV GP I, L.L.C. (hereinafter "OpenAI"), by and through counsel, will and hereby do move the Court to dismiss the following claims asserted in the Second Amended Complaint against OpenAI:  (1) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, et seq., and (2) breach of contract.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(6) and is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities included herewith, the Proposed Order submitted herewith, all pleadings and papers on file in this action, and such further evidence that may be submitted to the Court or before the hearing.

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.      INTRODUCTION ................................................................................................................. 1

II.     LEGAL STANDARD ........................................................................................................... 1

III.    PLAINTIFFS' CLAIMS AGAINST OPENAI SHOULD BE DISMISSED ...................... 2

        A.      DMCA Section 1202(b) ............................................................................................ 2

                1.      Plaintiffs Have Not Shown Evidence That Copilot Produces
                        Identical Copies of Plaintiffs' Works......................................................... 3

                2.      Plaintiffs' New Allegations Confirm Copilot Does Not Make
                        Identical Copies of Plaintiffs' Works......................................................... 4

        B.      Breach of Contract .................................................................................................... 6

                1.      The Open-Source Licenses Are Part of the SAC ........................................ 7

                2.      Plaintiffs Do Not Allege Breach Based on the Operation of
                        OpenAI's Codex Product ............................................................................ 7

                3.      Plaintiffs Also Fail to State a Claim Against OpenAI Based on
                        Copilot ........................................................................................................ 8

                        a.      Plaintiffs' Theory Based on Copilot Does Not Give Rise to
                                a Breach of Contract Claim Against OpenAI ................................ 8

                        b.      Plaintiffs' Theory Based on Copilot Fails on the Merits ............. 10

                                i.      The Attribution and Notice Terms Are Conditions,
                                        Not Covenants.................................................................... 10

                                ii.     Failure to Meet a Condition Does Not Give Rise to a
                                        Claim for Breach of Contract............................................ 18

IV.     CONCLUSION.................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Ambry Genetics Data Breach Litig.*,
  567 F. Supp. 3d 1130 (C.D. Cal. 2021) ................................................................ 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 1

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 2

*Britschgi v. McCall*,
  41 Cal. 2d 138 (1953) ........................................................................................ 18

*City of Palm Springs v. Living Desert Reserve*,
  70 Cal. App. 4th 613 (1999) .............................................................................. 18

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................. 2

*Graham v. James*,
  144 F.3d 229 (2d Cir. 1998) .............................................................................. 19

*Jacobsen v. Katzer*,
  535 F.3d 1373 (Fed. Cir. 2008) .................................................................... 11, 16

*Leadsinger, Inc. v. BMG Music Pub.*,
  512 F.3d 522 (9th Cir. 2008) ............................................................................... 7

*MDY Indus., LLC v. Blizzard Entm't., Inc.*,
  629 F.3d 928 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011) ................ 10, 18

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) .......................................................................... 1, 6

*Powell v. Wells Fargo Home Mortg.*,
  No. 14-cv-04248-MEJ, 2017 WL 840346 (N.D. Cal. Mar. 3, 2017) .......................... 4

*Sun Microsystems, Inc. v. Microsoft Corp.*,
  81 F. Supp. 2d 1026 (N.D. Cal. 2000) .............................................................. 18

*Sun Microsystems v. Microsoft Corp.*,
  188 F.3d 1115 (9th Cir. 1999) .......................................................................... 19

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ........................................................................... 5, 7

**Statutes, and Rules**

17 U.S.C. § 1201-1205 (Digital Millennium Copyright Act ("DCMA") ............................ *passim*

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 2, 6

**Other Authorities**

3 Nimmer on Copyright § 10.15 .................................................................................. 19

1 Witkin, Summary 11th Contracts § 800 (2023) ......................................................... 16

1 Witkin, Summary 11th Contracts § 801 (2023) ................................................... 17, 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF THE ISSUES TO BE DECIDED

This motion raises the following issues:

1. **Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201-1205 (Count 1).** Whether this claim should be dismissed for failing to allege (i) removal of CMI from identical copies or (ii) distribution of identical copies with removed CMI.

2. **Breach of Contract – Open-Source License Violations (Count 2):** Whether this claim should be dismissed for failing to allege sufficient (i) facts in support of breach of contract by OpenAI, or (ii) facts in support of breach of contract by any party.

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.      INTRODUCTION

3       Plaintiffs have twice attempted and failed to plead claims that pass muster on a motion to

4   dismiss.  Now, on their third attempt, Plaintiffs' only remaining claims against the OpenAI

5   entities (collectively, "OpenAI") are for violation of Section 1202(b) of the Digital Millennium

6   Copyright Act ("DMCA") and breach of contract for violations of certain open-source software

7   licenses.

8       The Court previously dismissed Plaintiffs' DMCA claim for failing to plausibly allege

9   that GitHub's Copilot product outputs identical copies of Plaintiffs' code.  As the Court

10   anticipated,[1] Plaintiffs' Second Amended Complaint ("SAC," D.I. 197-3) does not cure that

11   deficiency.

12       Plaintiffs' contract claim also fails.  As a threshold matter, Plaintiffs only allege breach of

13   contract based on the operation of Copilot and thus any claim based on the operation of Codex

14   should be dismissed.  In addition, Plaintiffs' theory of breach against OpenAI based on Copilot

15   fails for two independent reasons:  (1) Plaintiffs' theory is based on Copilot's outputs, which

16   Plaintiffs concede are controlled by GitHub, not OpenAI; and (2) Plaintiffs' theory of breach is

17   based on OpenAI's alleged failure to meet ***conditions*** on the grant of license, rather than

18   contractual ***covenants***, and thus at most gives rise to an action for copyright infringement (due to

19   an alleged lack of license), not an action for breach of contract.

20       Both remaining claims against OpenAI should thus be dismissed.

21

## II.      LEGAL STANDARD

22       To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual

23   matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

24   556 U.S. 662, 678 (2009) (cleaned up).  Dismissal is appropriate "where the complaint lacks a

25   cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.*

26

27   _____

[1] D.I. 189 at 16 (granting leave to amend "[a]lthough the Court finds it unlikely that this deficiency could be cured by the allegation of additional facts").

28

1  *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Moreover, "[f]actual allegations

2  must be enough to raise a right to relief above the speculative level" and "a formulaic recitation of

3  the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

4  (2007).  The Court need not accept as true conclusory allegations or legal characterizations, nor

5  need it accept unreasonable inferences or unwarranted factual deductions.  *In re Gilead Scis. Sec.*

6  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

7  **III.    PLAINTIFFS' CLAIMS AGAINST OPENAI SHOULD BE DISMISSED**

8          Plaintiffs have two remaining claims against OpenAI:  violation of Section 1202(b) of the

9  Digital Millennium Copyright Act ("DMCA") (Count 1) and breach of contract (Count 2).  As

10  detailed below, Plaintiffs have failed to plausibly plead either claim under Rule 12(b)(6).

11          **A.  DMCA Section 1202(b)**

12          The Court previously dismissed Plaintiffs' claims under Section 1202(b) of the DMCA

13  because they failed to allege that Copilot outputs identical copies of their code with Copyright

14  Management Information ("CMI") removed.  (Dkt. No. 189 at 15-16.)  The SAC still does not

15  allege any such output.  The SAC therefore contains the same "fundamental defect" as the First

16  Amended Complaint ("FAC," D.I. 97-3):  Plaintiffs allege only that Copilot will output portions

17  of their code when very specifically prompted to do so, and even then those portions are

18  modified.  (Dkt. No. 189 at 15.)

19          Plaintiffs cannot fix this problem by alleging, as the SAC does, that there is a "substantial

20  risk" that Defendants will violate Section 1202(b) in the future by distributing copies of their code

21  knowing CMI had been removed.  (SAC ¶ 206.)  Although a similar "substantial risk" argument

22  survived Defendants' first motion to dismiss the DMCA claim (Dkt. No. 95 at 20-21), the Court

23  did not then address the DMCA's identicality requirement.  (Dkt. No. 189 at 14 (describing the

24  requirement as "an unresolved argument from the prior briefing.").)  In its most recent order

25  dismissing the DMCA claim, the Court (i) established the identicality requirement, (ii) found that

26  the allegations in the FAC failed to meet the requirement, and (iii) clarified that the DMCA claim

27  will only survive if Plaintiffs present "additional facts" sufficient to cure this deficiency in an

28

amended complaint.  (*Id*. At 14-16.)  In the SAC, Plaintiffs primarily repeat their prior allegations and bring only two new allegations to the table.  Even accepting these new allegations as true, the allegations still fail to satisfy the identicality requirement and fall short of the required elements of a claim under Section 1202(b) of the DMCA.

### 1. Plaintiffs Have Not Shown Evidence That Copilot Produces Identical Copies of Plaintiffs' Works

This Court has held that Plaintiffs can bring a Section 1202(b) claim only if they plausibly allege that Copilot's output is identical to the Plaintiffs' works.  (Dkt. No. 189 at 14-16.)  "Section 1202(b) claims require that copies be 'identical.'"  (*Id.* at 14.)

In granting Plaintiffs' leave to amend their DMCA claim, the Court emphasized that Plaintiffs could cure the defects in their claim only with plausible allegations that satisfy Section 1202(b)'s identicality requirement.  (Dkt. No. 189 at 16.)  Plaintiffs have failed to do so.  Like the FAC, the SAC does not identify even a single example of Copilot producing an identical copy of any work.  Indeed, the SAC recites the same facts from the FAC that affirmatively demonstrated Copilot is ***not*** outputting identical copies:

- With respect to Doe 1, Plaintiffs admit that they could only get Copilot to output Doe 1's code "in Modified Format."  (SAC ¶ 124; FAC ¶ 112.)  They affirmatively allege that the output is not an "exact match for Doe 1's code," (SAC ¶ 120; FAC ¶ 108), relying instead on the fact that the new code output by Copilot supposedly "means the same thing" as Doe 1's code.  (SAC ¶ 121; FAC ¶ 109.)

- With respect to Doe 2, Plaintiffs allege that the output is "*functionally* equivalent" to Doe 2's code, but admit it's not identical.  (SAC ¶ 115 (emphasis added); FAC ¶ 103 (emphasis added).)

- With respect to Doe 5, Plaintiffs similarly admit that it could only get Copilot to output "*modified* copies" of Doe 5's code.  (SAC ¶ 125 (emphasis added), ¶ 133 (emphasis added); FAC ¶ 113 (emphasis added), ¶ 121 (emphasis added).)  Once again, they rely on the fact that the modification supposedly "does not affect how the code works."  (SAC ¶ 128; FAC ¶ 116.)

The Court deemed these facts "not sufficient for a Section 1202(b) claim."  (Dkt. No. 189 at 15.)  And these facts have not changed.  Moreover, Plaintiffs' continued failure to identify a single example of an identical work being output by Defendants' products, after more than a year

of litigation, renders implausible their allegations that Copilot is currently doing so or is likely to do so in the future.  *Powell v. Wells Fargo Home Mortg.*, No. 14-cv-04248-MEJ, 2017 WL 840346, at *15 (N.D. Cal. Mar. 3, 2017) (dismissing claims after "Plaintiff has had multiple opportunities to allege [sufficient] facts, yet . . . has repeatedly failed to do so"); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1151 (C.D. Cal. 2021) (dismissing claims after multiple amended complaints when "nothing in the record suggests that [the plaintiffs] could allege any new facts that would suffice to plausibly state most of these claims.").

### 2. Plaintiffs' New Allegations Confirm Copilot Does Not Make Identical Copies of Plaintiffs' Works

Unable to adduce evidence that Copilot has reproduced identical copies of Plaintiffs' works, Plaintiffs enlist two new allegations to speculate that such copying is likely occurring or likely to occur in the future:  (1) GitHub's code-referencing feature that "checks code completion suggestions" for its users, and (2) an unrelated academic study discussing that, when prompted with "prefixes," which consist of the first part of a passage (of training data), bigger models are more likely than smaller ones to reproduce the rest of that passage verbatim.  (SAC  ¶¶ 104, 146; *see also id*. ¶¶ 208-209.)  These two arguments, however, support Defendants' position:  they confirm that, like the FAC, the SAC does not allege identical copying of a work within the meaning of the DMCA.

Neither Plaintiffs' two new arguments show or even allege that Copilot removes (or is likely to remove) CMI from "a work" at all.  This is because neither argument implicates any work in its entirety.  First, Plaintiffs allege that the GitHub code referencing feature "checks for verbatim *excerpts*" of code—not verbatim copies of the entire work.  (SAC ¶ 145 (emphasis added).)  Moreover, these "verbatim excerpts" are reproduced only when a user provides the first part of the code.  (*Id*. ¶¶ 145-147).  As a result, Plaintiffs' allegations concerning the Copilot code-referencing feature do not suggest a "substantial risk" that identical copies of Plaintiffs' entire works will be outputted.

Second, Plaintiffs rely on an academic study, Nicholas Carlini, et. al, *Quantifying Memorization Across Neural Language Models*, Int'l Conference on Learning Representations

2023, Kigali, Rwanda (the "Carlini Study," Ex. 1),[2] that similarly shows that Copilot does not (and will not) reproduce identical works in their entirety.  (SAC ¶¶ 104, 209.)  As an initial matter, the Carlini Study is not about Plaintiffs' works, is not about Codex or Copilot, and is not about source code at all.  As such, it does not provide a basis to think that Plaintiffs face a "substantial risk" of anything.  (*Id*. ¶¶ 146, 206.)

But even on its own terms, the Carlini Study does not suggest anything about the appearance of identical works without CMI, because it is about short passages, not entire works. The Carlini Study discusses the potential for a model to reproduce verbatim "*parts* of [] training data" (SAC ¶¶ 104 (emphasis added)) when prompted with a "prefix"—*e.g.*, the first characters, words or sentences (or more) of a given passage of text or code.  (Carlini Study at 2.)  Critically, the Carlini Study is limited to analyzing the likelihood that a model will reproduce short passages equivalent to roughly ***25 words***.  (*Id.* at 4.)  And even within that limitation, the study is premised on a user supplying the first part of the passage to test whether the model will reproduce the rest of it.  "By feeding prefixes of these prompts into the trained model, [the authors] check whether the model has the ability to *complete the rest of the example verbatim*."  (*Id* at 2*.* (emphasis added).)  Thus, the Carlini Study does not allege that any models, much less the ones at issue here, are capable of reproducing identical copies of an entire work, much less the ones at issue here.  Indeed, it is entirely silent on those relevant points.  At most, the study shows that some models are capable of outputting identical parts of short passages when prompted with the first part of those passages.  And the reproduction of short passages that may be a part of larger work, rather than the reproduction of an entire work, is insufficient to violate Section 1202.  Thus, the Carlini Study does not support the existence of a "substantial risk" that Defendants will violate Section 1202(b)(3) of the DMCA.  (SAC ¶ 206.)

---

[2] Plaintiffs rely extensively on the Carlini Study and therefore incorporate it by reference into the SAC.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (document is incorporated by reference into a complaint if the plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim"); *see* SAC ¶¶ 104-107, 209.

Lastly, Plaintiffs again allege that Copilot output "may contain code snippets longer than ~150 characters that matches code from the training data" "about one percent of the time." (SAC ¶ 207; FAC ¶ 94.) Plaintiffs extrapolate this figure to speculate, as they did in the FAC, that violations are "constantly" occurring on the platform. (SAC ¶ 103; FAC ¶ 95.) But the Court already considered this allegation in the FAC and found it insufficient, without "the allegation of additional facts," to plausibly state a Section 1202(b) claim. (Dkt. No. 189 at 16.) Plaintiffs still have not done so. Even with their two new arguments, Plaintiffs remain unable to identify a single example of the identical reproduction of *any* entire work—Plaintiffs' or otherwise—despite the Court making plain that the fate of their claim rested on their ability to do so. As the Court recognized, "this is a 'fundamental defect' 'endemic to Plaintiffs' theory of [Section] 1202(b) liability." (*Id*. at 15 (cleaned up).) This defect has not been cured.

Accordingly, the 1202 claims should be dismissed in their entirety, even as to injunctive relief.

### B.  Breach of Contract

Plaintiffs allege that OpenAI breached a contract between OpenAI and each plaintiff by violating the terms of an open-source software license. (SAC ¶¶ 236-251.) As a threshold matter, Plaintiffs' only theory of breach is based on GitHub Copilot. Plaintiffs do not allege breach based on the operation OpenAI Codex and have thus failed to state a claim against OpenAI based on Codex. *See Mendiondo*, 521 F.3d at 1103-04 (to survive a Rule 12(b)(6) dismissal, "the plaintiff must give the defendant fair notice of what the claim is and the grounds upon which it rests.") (cleaned up).

In addition, Plaintiffs' claim against OpenAI based on Copilot fails for two independent reasons. First, Plaintiffs' theory of breach is based on Copilot's outputs, which Plaintiffs concede are controlled by GitHub, not OpenAI. Second, Plaintiffs have not articulated a theory of breach of contract by *anyone*. Plaintiffs allege that attribution is required in order to receive a license— but even then Plaintiffs' remedy would be an action for copyright infringement (due to the lack of a license), not for breach of contract (since these licenses contain no covenants by the licensee,

but instead only conditions on the grant of license).  Because none of these deficiencies can be cured, the Court should dismiss the breach of contract claim against OpenAI without leave to amend.  *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (the court may deny leave to amend for "futility of amendment," among other things).

### 1.   The Open-Source Licenses Are Part of the SAC

The named plaintiffs (Does 1-5) allege that OpenAI breached six open-source licenses: the MIT License (D.I. 98-1 at 58), GNU General Public License version 2.0 (*id.* at 28-34), GNU General Public License version 3.0 (*id.* at 35-48), GNU Affero General Public License 3.0 (*id.* at 16-27), 3-Clause BSD License (*id.* at 9), and Apache License 2.0 (*id.* at 2-6) (collectively, the "Doe Licenses").  (SAC ¶¶ 19-23.)  Each license is part of the SAC because they are, at minimum, incorporated by reference into the SAC.[3]  A document may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *See Ritchie*, 342 F.3d at 908.  Plaintiffs do both: Plaintiffs refer to the Doe Licenses throughout the SAC (by reference to the superset of "Suggested Licenses," SAC ¶ 46 n.4) and assert a claim for breach of contract based on the content of those licenses (*see id.* ¶¶ 238-239, 244-247).  The Court should thus treat the Doe Licenses as part of the SAC in considering this motion.  *See Ritchie*, 342 F.3d at 908.

### 2.   Plaintiffs Do Not Allege Breach Based on the Operation of OpenAI's Codex Product

The SAC refers to OpenAI's Codex product but fails to plead any facts supporting a theory of breach of contract based on that product.

Plaintiffs acknowledge that OpenAI Codex and GitHub Copilot are different products offered by different parties.  (SAC ¶¶ 24, 26.)  But Plaintiffs' allegations related to breach of the Doe Licenses are based entirely on the operation of Copilot.  Plaintiffs allege that the parties

---

[3]  In fact, it appears that Plaintiffs meant to attach the full text of the Doe Licenses to the SAC in Appendix A—as Plaintiffs did for the FAC—but inadvertently omitted Appendix A from their filing.  (*See, e.g.*, SAC ¶ 74 n.9 ("*See* Appendix A for full text of the MIT License."), ¶ 237 ("Plaintiffs and the Class offer code under various Licenses, the most common of which are set forth in Appendix A."); D.I. 98-1 (Appendix A to FAC).)

entered into the Doe Licenses when Defendants "used the licensed code to create ***Copilot*** and when it incorporated the licensed code into ***Copilot***," as well as "every time ***Copilot*** Output[s] Plaintiffs' or the Class's copyrighted code." (*Id.* ¶ 239 (emphasis added).)  Similarly, Plaintiffs allege that Defendants breached the licenses by failing to do certain things when ***Copilot*** provides outputs to users. (*Id.* ¶¶ 238, 246-247.)  They make no similar allegations about Codex. Plaintiffs thus fail to plead any theory for breach of the Doe Licenses based on OpenAI Codex.

### 3.  Plaintiffs Also Fail to State a Claim Against OpenAI Based on Copilot

Plaintiffs' theory of breach of contract against OpenAI based on Copilot should also be dismissed for two independent reasons.  First, Plaintiffs' theory is based on actions by other Defendants and does not give rise to a breach of contract claim against OpenAI.  Second, Plaintiffs' theory fails on the merits because the contract terms that Defendants purportedly breached are conditions, not covenants, to the Doe Licenses.

### a.  Plaintiffs' Theory Based on Copilot Does Not Give Rise to a Breach of Contract Claim Against OpenAI

The allegations in the SAC purporting to explain Plaintiffs' theory for breach of the Doe Licenses state in their entirety:

> 238. Plaintiffs and the Class granted Defendants a license to copy, distribute, and/or create Derivative Works under the Suggested Licenses. Each of the Suggested Licenses requires at least (1) that attribution be given to the owner of the Licensed Materials used, (2) inclusion of a copyright notice for the Licensed Materials used, and (3) inclusion of the terms of the applicable Suggested License. When providing Output, Copilot does not comply with any of these terms.

> * * *

> 244. Defendants have substantially and materially breached the applicable Licenses by failing to provide the source code of Copilot nor a written offer to provide the source code upon the request of each licensee.

> 245. Defendants have substantially and materially breached the applicable Licenses by failing to provide attribution to the creator and/or owner of the Licensed Materials.

> 246. Defendants have substantially and materially breached the applicable Licenses by failing to include copyright notices when Copilot Outputs copyrighted OS code.

> 247. Defendants have substantially and materially breached the applicable Licenses by failing to identify the License applicable to the Work and/or including its text when Copilot Outputs code including a portion of a Work.

(SAC ¶¶ 238, 244-247.)

All of these allegations are directed to ***Copilot's*** outputs.  Paragraph 238 alleges that "***[w]hen providing Output, Copilot*** does not comply with" certain terms of the Doe Licenses. Paragraphs 246 and 247 allege that Defendants breached the Doe Licenses by "failing to include copyright notices ***when Copilot Outputs copyrighted OS code***" and "failing to identify the License applicable to the Work and/or including its text ***when Copilot Outputs code including a portion of a Work***."  (Emphases added.)  Paragraphs 244 and 245 are silent as to when the alleged breach occurs but it is clear from the surrounding paragraphs that they must also be referring to Copilot's outputs.  (*See, e.g.*, SAC ¶ 238 (alleging that Copilot's outputs fail to comply with terms of the Doe Licenses), ¶ 239 (alleging that Defendants entered into the Doe Licenses "every time Copilot Output[s] Plaintiffs' or the Class's copyrighted code").

Plaintiffs acknowledge that Copilot is sold, marketed, and distributed by GitHub.  (SAC ¶ 24.)  Plaintiffs' only allegations here with respect to OpenAI are that "Copilot is a joint venture between GitHub and OpenAI" and that Codex "powers GitHub Copilot" (*id.* ¶ 59), and that OpenAI "program[m]ed, trained, and maintains Codex" and "Copilot requires Codex to function" (*id.* ¶ 26).  In other words, Plaintiffs' sole basis for asserting breach of contract against OpenAI is that OpenAI provided a product (Codex) to GitHub, which ***GitHub*** integrated into another product (Copilot), and ***GitHub's product*** (Copilot) outputs code in a manner that allegedly breaches to the Doe Licenses.

However, the SAC also makes clear that it is ***GitHub***, not OpenAI, that controls what Copilot outputs.  Plaintiffs allege that "***GitHub*** introduced a user-settable Copilot filter" that prevents "Copilot from suggesting verbatim excerpts of 'about 150 characters' that come from Licensed Materials" (*id.* ¶ 145 (emphasis added)), followed by "an option to either allow or block code completion suggestions that match publicly available code" (*id.* ¶ 146), as well as the option to include a link to the applicable open-source license (*id.* ¶ 148).  Plaintiffs rely on these

1    allegations as additional reasons why **GitHub** has purportedly violated open-source licenses.  (*Id.*

2    ¶ 149.)  Thus, by Plaintiffs' own assertions, Copilot outputs are subject to filtering and other

3    features provided by **GitHub**, not OpenAI.

4            In sum, Plaintiffs' only articulated theory of breach of the Doe Licenses is based entirely

5    on Copilot's outputs and actions by GitHub.  Because Plaintiffs have pled no facts plausibly

6    alleging that OpenAI controls Copilot's outputs—and, in fact, have pled facts showing the

7    opposite—Plaintiffs have failed to state a claim for breach of the Doe Licenses against OpenAI.

8    Plaintiffs' breach-of-contract claim against OpenAI should be dismissed for this reason alone.

9                      **b.  Plaintiffs' Theory Based on Copilot Fails on the Merits**

10           Plaintiffs' breach-of-contract claim should also be dismissed because it is based on

11   Defendants' alleged failure to meet the attribution and notice terms of the Doe Licenses, which at

12   most gives rise to a claim for copyright infringement (that Plaintiffs do not assert), not a claim for

13   breach of contract.  As detailed below, the attribution and notice terms are conditions, not

14   covenants:  a condition is an event that triggers an obligation under a contract, whereas a

15   covenant is an affirmative promise to do something.  Only failure to perform on a covenant can

16   give rise to a breach of contract claim; failure to fulfill a condition cannot.  If Plaintiffs are right

17   that there has been a failure to fulfill the attribution and notice terms, the consequence of that

18   failure would be that no license would be granted by Plaintiffs, and any unlicensed activity could

19   be copyright infringement.  Because the Doe Licenses do not contain any promise to fulfill the

20   attribution and notice terms, but only condition the grant of a license on fulfillment of those

21   terms, Plaintiffs have failed to plead a cognizable theory for breach of contract.  *MDY Indus.,*

22   *LLC v. Blizzard Entm't., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010), *as amended on denial of reh'g*

23   (Feb. 17, 2011).

24                  **i.    The Attribution and Notice Terms Are Conditions, Not**
                            **Covenants**
25

26           As discussed above, Plaintiffs allege that Defendants breached the Doe Licenses because

27   Copilot does not include attribution, copyright notice, or terms of the applicable license when

28   providing outputs.  (*See* SAC ¶¶ 238, 246-247.)  The precise requirements for attribution and

notice—and associated permissions granted by the licensor—vary across the Doe Licenses.  But for all of the Doe Licenses, any requirement to provide attribution or notice when copying or distributing the licensed code (or derivative works) is a condition, not a covenant, to the license.

*First*, all the Doe Licenses use the language of conditions when referring to the attribution and notice terms.  "Under California contract law, 'provided that' typically denotes a condition." *Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) (addressing an open-source license) (citing *Diepenbrock v. Luiz*, 159 Cal. 716, 115 P. 743 (1911)).  All the licenses except the MIT License grant permission to copy, modify, and distribute the licensed code "***provided that***" the licensor include the specified attribution and notices with the code:

| GNU General Public License ("GPL") version 2.0 | "1. ***You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, <u>provided that</u> you*** conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty; keep intact all the notices that refer to this License and to the absence of any warranty; and give any other recipients of the Program a copy of this License along with the Program.<br><br>* * *<br><br>2. ***You may modify your copy or copies of the Program or any portion of it, thus forming a work based on the Program, and copy and distribute such modifications or work*** under the terms of Section 1 above, <u>***provided that you also meet all of these <u>conditions</u>***</u>:<br><br>a) You must cause the modified files to carry prominent notices stating that you changed the files and the date of any change.<br><br>b) You must cause any work that you distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License.<br><br>c) If the modified program normally reads commands interactively when run, you must cause it, when started running for such interactive use in the most ordinary way, to print or display an announcement including an appropriate copyright notice and a notice that there is no warranty (or else, saying that you provide a warranty) and that users may redistribute the program under these conditions, and telling the user how to view a copy of this License. (Exception: if the Program itself is interactive but does not normally print such an announcement," |
|---|---|

| | |
|---|---|
| | your work based on the Program is not required to print an announcement.) |
| | * * * |
| | 3. **You may copy and distribute the Program (or a work based on it**, under Section 2) **in object code or executable form** under the terms of Sections 1 and 2 above **_provided that_ you also do one of the following**: |
| | a) Accompany it with the complete corresponding machine-readable source code, which must be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or, |
| | b) Accompany it with a written offer, valid for at least three years, to give any third party, for a charge no more than your cost of physically performing source distribution, a complete machine-readable copy of the corresponding source code, to be distributed under the terms of Sections 1 and 2 above on a medium customarily used for software interchange; or, |
| | c) Accompany it with the information you received as to the offer to distribute corresponding source code. (This alternative is allowed only for noncommercial distribution and only if you received the program in object code or executable form with such an offer, in accord with Subsection b above.)" |
| | (D.I. 98-1 at 29-31(sections 1-3) (emphasis added).) |
| GNU General Public License ("GPL") version 3.0 | "2. . . . You may make, run and propagate covered works that you do not convey, **_without conditions_** so long as your license otherwise remains in force. |
| | * * * |
| | 4. Conveying Verbatim Copies |
| | **You may convey verbatim copies of the Program's source code as you receive it, in any medium, _provided that_ you** conspicuously and appropriately publish on each copy an appropriate copyright notice; keep intact all notices stating that this License and any non-permissive terms added in accord with section 7 apply to the code; keep intact all notices of the absence of any warranty; and give all recipients a copy of this License along with the Program. |
| | * * * |
| | 5. Conveying Modified Source Versions |

***You may convey a work based on the Program, or the modifications to produce it from the Program, in the form of source code*** under the terms of section 4, ***provided that you also meet all of these conditions***:

a) The work must carry prominent notices stating that you modified it, and giving a relevant date.

b) The work must carry prominent notices stating that it is released under this License and any conditions added under section 7. This requirement modifies the requirement in section 4 to "keep intact all notices".

c) You must license the entire work, as a whole, under this License to anyone who comes into possession of a copy. This License will therefore apply, along with any applicable section 7 additional terms, to the whole of the work, and all its parts, regardless of how they are packaged. This License gives no permission to license the work in any other way, but it does not invalidate such permission if you have separately received it.

d) If the work has interactive user interfaces, each must display Appropriate Legal Notices; however, if the Program has interactive interfaces that do not display Appropriate Legal Notices, your work need not make them do so.

* * *

6. Conveying Non-Source Forms.

***You may convey a covered work in object code form*** under the terms of sections 4 and 5, ***provided that you*** also convey the machine-readable Corresponding Source under the terms of this License, in one of these ways:

a) Convey the object code in, or embodied in, a physical product (including a physical distribution medium), accompanied by the Corresponding Source fixed on a durable physical medium customarily used for software interchange.

b) Convey the object code in, or embodied in, a physical product (including a physical distribution medium), accompanied by a written offer, valid for at least three years and valid for as long as you offer spare parts or customer support for that product model, to give anyone who possesses the object code either (1) a copy of the Corresponding Source for all the software in the product that is covered by this License, on a durable physical medium customarily used for software interchange, for a price no more than your reasonable cost of

| | | |
|---|---|---|
| 1 | | physically performing this conveying of source, or (2) access to copy the Corresponding Source from a network server at no charge. |
| 2 | | |
| 3 | | c) Convey individual copies of the object code with a copy of the written offer to provide the Corresponding Source. This alternative is allowed only occasionally and noncommercially, and only if you received the object code with such an offer, in accord with subsection 6b. |
| 4 | | |
| 5 | | |
| 6 | | d) Convey the object code by offering access from a designated place (gratis or for a charge), and offer equivalent access to the Corresponding Source in the same way through the same place at no further charge. You need not require recipients to copy the Corresponding Source along with the object code. If the place to copy the object code is a network server, the Corresponding Source may be on a different server (operated by you or a third party) that supports equivalent copying facilities, provided you maintain clear directions next to the object code saying where to find the Corresponding Source. Regardless of what server hosts the Corresponding Source, you remain obligated to ensure that it is available for as long as needed to satisfy these requirements. |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | e) Convey the object code using peer-to-peer transmission, provided you inform other peers where the object code and Corresponding Source of the work are being offered to the general public at no charge under subsection 6d." |
| 15 | | |
| 16 | | |
| 17 | | (*Id.* at 37-41 (sections 2, 4-6) (emphasis added).) |
| 18 | GNU Affero General Public License ("Affero GPL") version 3.0 | Same as GNU General Public License version 3.0 above.  (*See id.* at 18-21 (sections 2, 4-6).) |
| 19 | | |
| 20 | | |
| 21 | 3-Clause BSD License | "Copyright <YEAR> <COPYRIGHT HOLDER> |
| 22 | | ***Redistribution and use in source and binary forms, with or without modification, are permitted <u>provided that</u> the following conditions are met***: |
| 23 | | |
| 24 | | 1. Redistributions of source code must retain the above copyright notice, this list of conditions and the following disclaimer. |
| 25 | | |
| 26 | | 2. Redistributions in binary form must reproduce the above copyright notice, this list of conditions and the following disclaimer in the documentation and/or other materials provided with the distribution. |
| 27 | | |
| 28 | | |

| | |
|---|---|
| | 3. Neither the name of the copyright holder nor the names of its contributors may be used to endorse or promote products derived from this software without specific prior written permission.<br><br>THIS SOFTWARE IS PROVIDED BY THE COPYRIGHT HOLDERS AND CONTRIBUTORS "AS IS" AND ANY EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. IN NO EVENT SHALL THE COPYRIGHT HOLDER OR CONTRIBUTORS BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES; LOSS OF USE, DATA, OR PROFITS; OR BUSINESS INTERRUPTION) HOWEVER CAUSED AND ON ANY THEORY OF LIABILITY, WHETHER IN CONTRACT, STRICT LIABILITY, OR TORT (INCLUDING NEGLIGENCE OR OTHERWISE) ARISING IN ANY WAY OUT OF THE USE OF THIS SOFTWARE, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGE."<br><br>(*Id.* at 9 (emphasis added).) |
| Apache version 2.0 | 4. Redistribution. ***You may reproduce and distribute copies of the Work or Derivative Works thereof in any medium, with or without modifications, and in Source or Object form, <u>provided that</u> You meet the following conditions***:<br><br>1. You must give any other recipients of the Work or Derivative Works a copy of this License; and<br>2. You must cause any modified files to carry prominent notices stating that You changed the files; and<br>3. You must retain, in the Source form of any Derivative Works that You distribute, all copyright, patent, trademark, and attribution notices from the Source form of the Work, excluding those notices that do not pertain to any part of the Derivative Works; and<br>4. If the Work includes a "NOTICE" text file as part of its distribution, then any Derivative Works that You distribute must include a readable copy of the attribution notices contained within such NOTICE file, excluding those notices that do not pertain to any part of the Derivative Works, in at least one of the following places: within a NOTICE text file distributed as part of the Derivative Works; within the Source form or documentation, if provided along with the Derivative Works; or, within a display generated by the Derivative Works, if and wherever such third-party notices normally appear. The contents of the NOTICE file are for informational |

| | purposes only and do not modify the License. You may add Your own attribution notices within Derivative Works that You distribute, alongside or as an addendum to the NOTICE text from the Work, provided that such additional attribution notices cannot be construed as modifying the License."<br><br>(*Id.* at 3-4 (section 4) (emphasis added).) |
|---|---|

In fact, the attribution and notice requirements in these licenses are analogous to the attribution requirement found to be a ***condition*** in *Jacobsen*:  "The Artistic License grants users the right to copy, modify, and distribute the software: provided that [the user] insert a prominent notice in each changed file stating how and when [the user] changed that file, and provided that [the user] do at least ONE of the following:…."  535 F.3d at 1380.

In addition, all the Doe Licenses, including the MIT License, use the word "condition" to describe the attribution and notice requirements, which further suggests that they are, in fact, conditions (not covenants).  1 Witkin, Summary 11th Contracts § 800 (2023) ("Express conditions are those that are stated in the contract, and they are determined by the intention of the parties as disclosed in the agreement" and can be stated with the words "provided" and "upon the condition"); *see also Jacobsen*, 535 F.3d at 1381 (finding the attribution requirement a condition in part because the license "states on its face that the document creates conditions: 'The intent of this document is to state the *conditions* under which a Package may be copied.'").

Specifically, the MIT License grants permission "subject to the following ***conditions***":

| MIT License | "Copyright <YEAR> <COPYRIGHT HOLDER><br><br>***Permission is hereby granted***, free of charge, ***to any person obtaining a copy of this software and associated documentation files (the "Software"), to deal in the Software without restriction***, including without limitation the rights to use, copy, modify, merge, publish, distribute, sublicense, and/or sell copies of the Software, and to permit persons to whom the Software is furnished to do so, ***<u>subject to the following conditions</u>***:<br><br>The above copyright notice and this permission notice shall be included in all copies or substantial portions of the Software.<br><br>THE SOFTWARE IS PROVIDED "AS IS", WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, |
|---|---|

1

2

3

4

5

6

7

| | INCLUDING BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT. IN NO EVENT SHALL THE AUTHORS OR COPYRIGHT HOLDERS BE LIABLE FOR ANY CLAIM, DAMAGES OR OTHER LIABILITY, WHETHER IN AN ACTION OF CONTRACT, TORT OR OTHERWISE, ARISING FROM, OUT OF OR IN CONNECTION WITH THE SOFTWARE OR THE USE OR OTHER DEALINGS IN THE SOFTWARE." |
| | (D.I. 98-1 at 58 (emphasis added).) |

8   The 3-Clause BSD and Apache version 2.0 licenses, *supra*, grant permission "provided that" the

9   licensee meet "the following **conditions**."  (D.I. 98-1 at 9 (emphasis added); *id.* at 3-4 (section 4)

10  (emphasis added).)  The GPL version 3.0 and Affero GPL version 3.0 licenses, *supra*, state that

11  the licensee "may make, run and propagate covered works that [the licensee does] not convey,

12  without **conditions**" (*id.* at 37, (section 2) (emphasis added); *id.* at 18 (same) (emphasis added)),

13  and then set forth the conditions of conveying such works, some of which are expressly referred

14  to as "conditions" (*id.* at 38-41 (sections 4-6); *id.* at 19-21 (same)).  And the GPL version 2.0

15  license, *supra*, expressly refers to at least some of the requirements for obtaining permission to

16  modify and distribute the licensed code as "conditions."  (*Id.* At 29-30 (section 2).)

17       ***Second***, the attribution and notice requirements cannot be covenants (and thus must be

18  conditions) because the licensee never affirmatively **promises** to provide attribution or notice, but

19  instead receives a benefit if and only if they provide attribution and notice.  The following set of

20  hypotheticals from Witkin is illustrative:

21       A covenant is a **promise** to render some performance. The practical
         distinction between a condition and a covenant may be illustrated as

22       follows: (1) **If B agrees to render some performance to A,
         provided a condition happens**, and the condition does not happen,

23       A's duty to perform is excused, but A cannot recover damages from
         B. (2) On the other hand, if no condition is stated, and ***B merely***

24       ***makes a promise***, his or her breach of covenant will give rise to a
         right of action for damages, but will not necessarily excuse A's

25       performance. (3) However, if the condition is stated, ***and in
         addition B promises that the condition will happen***, upon the

26       failure of the condition to occur not only is A's duty excused, but A
         can also recover damages for the breach of covenant or promise.

27

28   1 Witkin, Summary 11th Contracts § 801 (2023) (emphasis added).

The structure of the permissions and associated attribution and notice requirements in the Doe Licenses aligns with the first scenario in Witkin.  In each license, the licensor (*B*) agrees to render some performance to the licensee *A* (to grant *A* permission to copy, modify, and/or distribute the licensed code) provided that a condition happens (*A* includes the specified attribution and notices with the code).  The licensee (*A*) never **promises** to include the specified attribution and notices with the code—thus confirming that those requirements are conditions, not covenants.  *See id.*; *see also Britschgi v. McCall*, 41 Cal. 2d 138, 144 (1953) (a contract term that was "devoid of any affirmative undertaking on the part of the defendants to fulfill" was a condition that the defendants were not obligated to fulfill because they had never promised to do so); *MDY Indus.*, 629 F.3d at 939 ("A covenant is a contractual promise, i.e., a manifestation of intention to act or refrain from acting in a particular way, such that the promisee is justified in understanding that the promisor has made a commitment.") (applying Delaware law).

### ii.   Failure to Meet a Condition Does Not Give Rise to a Claim for Breach of Contract

It is well established that a breach of contract is "the unjustified failure to perform *a material promise or covenant*."  *Sun Microsystems, Inc. v. Microsoft Corp.*, 81 F. Supp. 2d 1026, 1030 (N.D. Cal. 2000) (emphasis added).  Failure to meet a condition does not give rise to a claim for breach of contract.  *City of Palm Springs v. Living Desert Reserve*, 70 Cal. App. 4th 613, 621 (1999) ("The breach of condition may result in the termination of the transferee's interest, but it does not subject the transferee to actions for damages or to enforce the condition."); *see also* 1 Witkin, Summary 11th Contracts  § 801 (2023) (in analogous first scenario discussed above, failure to meet the condition excuses performance by *B* but does not support a claim for damages against *A*).

In the context of copyright licenses like the Doe Licenses, failure to meet a condition to the license gives rise to a claim for **copyright infringement**, not breach of contract:

> If the grantee's violation consists of a failure to satisfy a condition to the grant (as distinguished from a breach of a covenant), it follows that the rights dependent on satisfaction of that condition have not been effectively granted, rendering any use by the grantee

1

2

> without authority from the grantor.  The legal consequence is that
> the grantee's conduct may constitute copyright infringement.

3    3 Nimmer on Copyright § 10.15 [A][2]; *see also Graham v. James*, 144 F.3d 229, 236–37 (2d

4    Cir. 1998) (quoting and adopting this principle from Nimmer).  This is because the conditions are

5    limitations on the scope of the copyright license:  if the licensee fails to satisfy the condition and

6    thus "acts outside the scope [of the license], the licensor can bring an action for copyright

7    infringement."  *Sun Microsystems v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999).

8    Plaintiffs have chosen not to bring a claim for copyright infringement—under which Plaintiffs

9    would have the burden of providing additional elements, including but not limited to, registration

10   of copyright.  Plaintiffs cannot evade those elements by pleading a copyright claim as a breach of

11   contract claim.

12   **IV.   CONCLUSION**

13        For the foregoing reasons, the Court should dismiss without leave to amend Plaintiffs'

14   remaining claims against OpenAI for violation of Section 1202(b) of the DMCA (Count 1) and

15   breach of contract (Count 2).

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: February 28, 2024

MORRISON & FOERSTER LLP


By:   /s/ Joseph C. Gratz
         Joseph C. Gratz

MICHAEL A. JACOBS
MJacobs@mofo.com
JOSEPH C. GRATZ
JGratz@mofo.com
TIFFANY CHEUNG
TCheung@mofo.com
MELODY E. WONG
MelodyWong@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    (415) 268-7000
Facsimile:     (415) 268-7522

ALLYSON R. BENNETT
ABennett@mofo.com
ROSE S. LEE
RoseLee@mofo.com
ALEXANDRA M. WARD
AlexandraWard@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone:    (213) 892-5200
Facsimile:     (213) 892-5454

Attorneys for Defendants OPENAI, INC., a
Delaware nonprofit corporation, OPENAI,
L.P., a Delaware limited partnership,
OPENAI OPCO, L.L.C., a Delaware limited
liability company, OPENAI GP, L.L.C., a
Delaware limited liability company, OPENAI
STARTUP FUND GP I, L.L.C., a Delaware
limited liability company, OPENAI
STARTUP FUND I, L.P., a Delaware limited
partnership, OPENAI STARTUP FUND
MANAGEMENT, LLC, a Delaware limited
liability company