Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
William W. Castillo Guardado (State Bar No. 294159)
Holden J. Benon (State Bar No. 325847)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:         jsaveri@saverilawfirm.com
               czirpoli@saverilawfirm.com
               cyoung@saverilawfirm.com
               lkessler@saverilawfirm.com
               eabuchanan@saverilawfirm.com
               wcastillo@saverilawfirm.com
               hbenon@saverilawfirm.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| J. DOE 1 et al.,<br><br>*Individual and Representative Plaintiffs,*<br><br>v.<br><br>GITHUB, INC., et al.,<br><br>*Defendants.* | Case Nos.   4:22-cv-06823-JST<br>             4:22-cv-07074-JST<br><br>**PLAINTIFFS' OPPOSITION TO GITHUB AND MICROSOFT'S MOTION TO DISMISS PORTIONS OF THE SECOND AMENDED COMPLAINT**<br><br>Date:        May 16, 2024<br>Time:        2:00 p.m.<br>Courtroom:   6, 2nd Floor<br>Judge:       Hon. Jon Tigar |

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL HISTORY .................................................................................. 1

       A.   Plaintiffs' Initial Complaint (ECF No. 1) ............................................... 1

       B.   The Court's Order on Defendants' Motion to Dismiss the Initial Complaint
            (ECF No. 95) .......................................................................................... 1

       C.   Plaintiffs' First Amended Complaint (ECF No. 97) ................................. 2

       D.   The Court's Order on Defendants' Motion to Dismiss First Amended
            Complaint (ECF No. 189) ....................................................................... 3

       E.   Plaintiffs' SAC (ECF No. 200) and New Allegations ............................... 4

III.   ARGUMENT ...................................................................................................... 4

       A.   Plaintiffs' Second Amended Complaint Plausibly Alleges DMCA Violations
            under DMCA §§ 1202(b)(1) and 1202(b)(3) ........................................... 5

            1.   Plaintiffs' DMCA claims are plausibly alleged under any standard ........ 7

                 a.   Identicality is not an element of a DMCA § 1202 claim ............... 7

                 b.   Plaintiffs allege that Copilot reproduces identical copies of
                      Plaintiffs' code ....................................................................... 11

            2.   Plaintiffs have otherwise plausibly alleged violations of DMCA
                 §§ 1202(b)(1) and (b)(3) ..................................................................... 14

                 a.   Plaintiffs have identified works in which they have a copyright interest ......... 14

                 b.   The DMCA does not require an entire work be copied ................. 15

                 c.   Plaintiffs plead scienter under § 1202(b) .................................. 16

       B.   Plaintiffs Adequately Allege Unjust Enrichment .................................... 17

IV.    CONCLUSION ................................................................................................. 19

PLAINTIFFS' OPPOSITION TO GITHUB AND MICROSOFT'S MOTION TO DISMISS PORTIONS OF
THE SAC

1
2

# TABLE OF AUTHORITIES

**Cases**

3
*ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*,
   667 F. Supp. 3d 411 (S.D. Tex. 2023) ............................................................ 7, 9, 10

4
5
*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*,
   672 F. Supp. 3d 1035 (S.D. Cal. 2023) ....................................................................4

6
7
*Alkayali v. Hoed*,
   No. 3:18-CV-777-H-JMA, 2018 WL 3425980 (S.D. Cal. July 16, 2018) ................... 17

8
9
*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ............................................................................... 18

10
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................4

11
12
*Burroughs v. Metro–Goldwyn–Mayer, Inc.*,
   683 F.2d 610 (2d Cir. 1982) ................................................................................. 16

13
14
*Columbia Pictures Indus., Inc. v. Galindo*,
   No. 20-cv-3129-MEMF, 2022 WL 17094713 (C.D. Cal. Nov. 18, 2022) ...................8

15
*Design Basics, LLC v. WK Olson Architects, Inc.*,
   No. 17-cv-7432, 2019 WL 527535 (N.D. Ill. Feb. 11, 2019) .................................... 15

16
17
*Doe 1 v. GitHub, Inc.*,
   672 F. Supp. 3d 837 (N.D. Cal. 2023) .............................................................. 2, 6, 15

18
19
*Elec. Constr. Main. Co. v. Maeda Pac. Corp.*,
   764 F.2d 619 (9th Cir. 1985) ..................................................................................5

20
*Falkner v. Gen. Motors LLC*,
   393 F. Supp. 3d 927 (C.D. Cal. 2018) ................................................................... 15

21
22
*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
   756 F. Supp. 2d 1352 (N.D. Fla. 2010) ................................................................. 15

23
24
*Fischer v. Forrest*,
   286 F. Supp. 3d 590 (S.D.N.Y. 2018) ......................................................................9

25
26
*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...................................................................5

27
*Free Speech Systems, LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ................................................................. 14

28

*Friedman v. Live Nation Merch., Inc.*,
    833 F.3d 1180 (9th Cir. 2016) ...................................................................................... 10

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
    No. CIV. 13-00496 SOM, 2015 WL 263556 (D. Haw. Jan. 21, 2015) ................................. 9, 15

*Harrington v. Pinterest, Inc.*,
    No. 5:20-CV-05290-EJD, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) ............................... 6

*Hernandez v. Lopez*,
    180 Cal. App. 4th 932 (2009) ...................................................................................... 17

*Horgan v. Macmillan, Inc.*,
    789 F.2d 157 (2d Cir. 1986) ....................................................................................... 16

*Kadrey v. Meta Platforms, Inc.*,
    No. 23-CV-03417-VC, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) .................................. 14

*Kelly v. Arriba Soft Corp.*,
    77 F. Supp. 2d 1116 (C.D. Cal. 1999) .......................................................................... 9, 15

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
    No. CV 20-1931-DMG (EX), 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ................. 4, 9, 10

*Logan v. Meta Platforms, Inc.*,
    636 F. Supp. 3d 1052, 2022 WL 14813836 (N.D. Cal. Oct. 25, 2022) ................................... 6

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ....................................................................................... 5

*McShannock v. J.P. Morgan Chase Bank NA*,
    976 F.3d 881 (9th Cir. 2020) ........................................................................................ 5

*Mollman v. Zoetop Bus. Co.*,
    No. CV 22–4128 (PA), 2022 WL 17207103 (C.D. Cal. Sep. 16, 2022) ................................. 6

*MSC.Software Corp. v. Heroux-Devtek Inc.*,
    No. 8:19-cv-01987-SB-(DFMx), 2021 WL 9696752 (C.D. Cal. Sept. 16, 2021) ..................... 18

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295 (3d Cir. 2011) ....................................................................................... 10

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ........................................................................................ 5

*Oracle Int'l Corp. v. Rimini St., Inc.*,
    No. 8:19-cv-01987-SB-(DFMx), 2023 WL 4706127 (D. Nev. July 24, 2023) ............... 11, 13, 14

PLAINTIFFS' OPPOSITION TO GITHUB AND MICROSOFT'S MOTION TO DISMISS PORTIONS OF
THE SAC

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990) ............................................................................ 16

*Software Pricing Partners, LLC v. Geisman*,
    No. 3:19-cv-00195-RJC-DCK, 2022 WL 3971292 (W.D.N.C. Aug. 31, 2022) ...................... 10

*Splunk Inc. v. Cribl, Inc.*,
    662 F. Supp. 3d 1029 (N.D. Cal. 2023) ........................................................... 11, 14

*Stevens v. Corelogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) .................................................................................. 5

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*,
    524 F. Supp. 2d 1184 (C.D. Cal. 2007) ................................................................... 8

*Tremblay v. OpenAI, Inc.*,
    No. 23-CV-03223-AMO, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ........................ 16, 17

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*,
    No. 3:20-CV-2541-K, 2023 WL 8721435 (N.D. Tex. Dec. 17, 2023) ............................ 10

**Statutes**

17 U.S.C. § 101 ................................................................................................ *passim*

17 U.S.C. § 106 ........................................................................................... 5, 6, 9

17 U.S.C. § 1201(d)(2) ................................................................................... 8, 11

17 U.S.C. § 1202 ........................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 8 .................................................................................................. 4

Fed. R. Civ. P. 12 ............................................................................................. 4, 5

**Treatises**

55 Cal. Jur. 3d Restitution § 2 ...................................................................... 18, 19

Restatement (Third) of Restitution and Unjust Enrichment § 39 ............................. 18

**Other Authorities**

CACI No. 375 .................................................................................................... 19

Nicholas Carlini et al., *Quantifying Memorization Across Neural Language Models* ............ 4

S. Rep. No. 105-190 (1998) ......................................................................... 8, 11

PLAINTIFFS' OPPOSITION TO GITHUB AND MICROSOFT'S MOTION TO DISMISS PORTIONS OF
THE SAC

## I.     INTRODUCTION

Plaintiffs have heeded this Court's call and have amended their complaint to clarify and sharpen the allegations that give rise to their well-pleaded claims. But Microsoft and GitHub ("Defendants") once again take affront to Plaintiffs' well-pleaded allegations.

Notably, Defendants take aim again at Plaintiffs' Digital Millennium Copyright Act ("DMCA") claim under Section 1202(b). The core allegations which give rise to Plaintiffs' DMCA claim are unchanged from their initial complaint—the Court weighed these allegations and found them sufficient. Defendants continue to argue that a copy needs to be identical in order for liability under the DMCA to attach. In so doing, Defendants try to add this extra element to claims under Section 1202(b) which has no basis in the statutory text of the DMCA nor in its legislative history. In any event, Plaintiffs have pled that Copilot is capable of emitting verbatim (i.e., identical) copies of code, which, as this Court has already determined, gives rise to a prospective claim. Defendants' other arguments fare no better—they simply rehash their prior arguments that Plaintiffs did not plead the requisite scienter. But again, the Court has already determined Plaintiffs' allegations sufficient. To the extent Defendants challenge Plaintiffs' prayer for relief seeking unjust enrichment, unjust enrichment is a paradigmatic restitutionary remedy for breach of contract claims under California law.

Defendants' Motion should be denied.

## II.    PROCEDURAL HISTORY

### A.     Plaintiffs' Initial Complaint (ECF No. 1)

On November 21, 2022, Plaintiffs Doe 1, Doe 2, Doe 3, and Doe 4 filed their initial complaint in this matter alleging that GitHub and Microsoft (and other defendants) violated DMCA §§ 1202(b)(1) and (b)(3) by removing or altering Copyright Management Information ("CMI") from Plaintiffs' Licensed Materials and distributing copies of those materials that did not include CMI. ECF No. 1 ¶¶ 138–67.

### B.     The Court's Order on Defendants' Motion to Dismiss the Initial Complaint (ECF No. 95)

On January 26, 2023, Microsoft and GitHub filed their motion to dismiss. ECF No. 50.

Defendants argued, among other things, that Plaintiffs failed to state a claim for violation of the DMCA. ECF No. 50 at 8-14.

On May 11, 2023, the Court issued its order. ECF No. 95 (cited herein as *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837 (N.D. Cal. 2023) or "First MTD Order"). The Court upheld the sufficiency of Plaintiffs' allegations under DMCA §§ 1202(b)(1) and 1202(b)(3). 672 F. Supp. 3d at 859.

With respect to standing, the Court concluded that Plaintiffs sufficiently alleged facts showing an imminent and substantial risk of harm for claims for injunctive relief under the DMCA. *Id.* at 851. The Court held that this satisfied the pleading requirements for seeking injunctive relief under the DMCA because the "alleged future injury is neither conjectural nor hypothetical: their licensed code was used to train these programs and there is presently a realistic danger that the code will be reproduced as output." *Id.* at 851, n.9 In particular, the Court found that according to Plaintiffs' allegations, there is at least a substantial risk that Defendants' products will produce Plaintiffs' code as output. *Id.* With respect to damage claims, the Court concluded that Plaintiffs had not alleged enough particularized facts as to their own damages to confer standing to pursue damages. *Id.* at 852. In their original complaint, Plaintiffs had provided examples of how Codex and Copilot produce duplicate code with respect to other coders, without alleging that Codex and Copilot had done so with respect to the code of the named Plaintiffs. *E.g.*, ECF No. 1, ¶¶ 48–77. Specifically, the Court noted that "while Plaintiffs identify several instances in which Copilot's output matched licensed code written by a GitHub user, none of these instances involve licensed code published to GitHub by Plaintiffs." *Id.* at 850 (citation omitted and cleaned up).

### C.   Plaintiffs' First Amended Complaint (ECF No. 97)

On June 8, 2023, Plaintiffs filed their First Amended Complaint. ECF No. 97. Plaintiffs maintained their claims for violations of DMCA §§ 1202(b)(1) and (b)(3). *Id.* at ¶¶ 183–213. Plaintiffs' FAC asserted claims on behalf of an additional individual and representative class Plaintiff (Doe 5).

Plaintiffs' FAC also set forth additional facts showing Does 1, 2, and 5 suffered

particularized harm by specifying how Codex and Copilot output code that matches their licensed code that appears in GitHub public repositories, yet without providing the required attribution and notice and in violation of other terms of their licenses. Specifically, Plaintiffs provided examples of Copilot emitting code owned by Does 1, 2, and 5 verbatim as output, with only cosmetic changes. *E.g.*, *id.* at ¶¶ 100–28. The sample outputs are sufficiently distinctive to prove Copilot could have only taken or copied the underlying code for these outputs from Plaintiffs' GitHub repositories. *E.g.*, *id.* at ¶¶ 103, 110, 119. As the FAC alleged, these examples illustrate the typical behavior of Copilot and raise a plausible inference that Plaintiffs' code has also been output in the past. *Id.* at ¶ 97.

On June 29, 2023, Microsoft and GitHub filed their motion to dismiss the FAC. ECF No. 108. As to the DMCA claim, they argued that Plaintiffs had failed to allege CMI removal from identical copies. ECF No. 108 at 13. As to unjust enrichment, the Defendants argued that Plaintiffs did not identify the profits or benefits underlying their claims. ECF No. 108 at 20.

### D.  The Court's Order on Defendants' Motion to Dismiss First Amended Complaint (ECF No. 189)

On January 3, 2024, the Court issued its order on the motion to dismiss the FAC. ECF No. 189 (hereinafter "Second MTD Order"). The Court rejected Defendants renewed standing arguments and noted that:

> "The Court already determined in its prior order that Plaintiffs face 'at least a substantial risk that Defendants' programs will reproduce Plaintiffs' licensed code as output' in the future." ECF No. 95 at 9. The present inquiry concerns whether Plaintiffs have alleged 'that they have suffered a qualifying injury-in-fact that has actually occurred to them[.]' *Id.*"

The Court dismissed Plaintiffs' claims under DMCA §§ 1202(b)(1) and (b)(3), holding that the pleadings were insufficient because output from Copilot is often a modification of Plaintiffs' licensed works, as opposed to an "identical copy." *Id.* at 15. Though the Court recognized that DMCA § 1202(b)(1) only requires intentionally removing or altering any copyright management information without the authority of the copyright owner, and is distinct from § 1202(b)(3), which makes it illegal to "distribute, [or] import for distribution . . . copies of

works," the court applied an "identicality" requirement to both DMCA §§ 1202(b)(1) and (b)(3). *Id*. at 15. The Court relied on *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035, 1057 (S.D. Cal. 2023), which involved distribution of "copies of works" under DMCA § 1202(b)(3). ECF No. 189 at 15. The Court also cited *Kirk Kara Corp. v. W. Stone & Metal Corp.,* No. CV 20-1931-DMG (EX), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020), a case that involved jewelry designs where the CMI was engraved in the copyrighted work. ECF No. 189 at 15. The Court granted Plaintiffs leave to amend their DMCA §§ 1202(b)(1) and (b)(3) claims.

### E.    Plaintiffs' SAC (ECF No. 200) and New Allegations

On January 25, 2024, Plaintiffs filed their Second Amended Complaint. ECF No. 200. Consistent with the Second MTD Order, the SAC included new allegations regarding the increased likelihood that Plaintiffs' or class members' licensed code will be emitted verbatim as the capacity and scope of the Copilot and Codex model grows. *Id*. at ¶¶ 104–07.

The SAC also includes allegations about GitHub's duplication-detection and code-referencing features, which GitHub implemented as an optional feature so its users can compare Copilot outputs to indexes of public code repositories on GitHub for exact matches of at least 150 characters. *Id*. at ¶¶ 145–54. This feature provides a link to the matching code and license in a separate log. *Id*. at ¶ 150. GitHub admits this feature is not comprehensive, does not match all training data, and would not be triggered for near-matches that would ordinarily require attribution under the typical terms of open-source licenses, which cover modifications as well as verbatim use of the licensed code. *Id*. at ¶¶ 151–54. Plaintiffs further alleged that a study by Nicholas Carlini et al., *Quantifying Memorization Across Neural Language Models,* demonstrates that Copilot is more likely to emit its training data verbatim in the future. *Id* at ¶¶ 104–05.

## III.   ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly*, 550 U.S. at 569 n.14, 570. The plaintiff's allegations need only provide "the

1    defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash*

2    *Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted).

3        In weighing a motion to dismiss under Rule 12, "[a]ll allegations of material fact are taken

4    as true and construed in the light most favorable to the nonmoving party." *McShannock v. J.P.*

5    *Morgan Chase Bank NA*, 976 F.3d 881, 886–87 (9th Cir. 2020). "Dismissal is proper only where

6    there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable

7    legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Still, if a court grants a motion

8    to dismiss, it should also grant leave to amend the complaint, unless it "determines that the

9    pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d

10   1122, 1127 (9th Cir. 2000). Furthermore, "court[s] should be especially reluctant to dismiss on

11   the basis of the pleadings when the asserted theory of liability is novel . . . since it is important

12   that new legal theories be explored and assayed in the light of actual facts." *Elec. Constr. Main. Co.*

13   *v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985).

14   **A.    Plaintiffs' Second Amended Complaint Plausibly Alleges DMCA Violations**
15   **under DMCA §§ 1202(b)(1) and 1202(b)(3)**

16       The DMCA restricts "the removal or alteration of copyright management information

17   ("CMI")—information such as the title, the author, the copyright owner, the terms and

18   conditions for use of the work, and other identifying information set forth in a copyright notice or

19   conveyed in connection with the work." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 671 (9th Cir.

20   2018). Sections 1202(b)(1) and (b)(3) of the DMCA, under which Plaintiffs plead, provide that

21   one cannot, without authority of the copyright owner, "(1) "intentionally remove or alter any

22   copyright management information," *or* (3) "distribute or import for distribution . . . copies of

23   works . . . knowing that copyright management information has been removed or altered" while

24   "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or

25   conceal an infringement of *any right under this title*." 17 U.S.C. § 1202(b) (emphasis added).

26   Rights under Title 17, which encompasses the Copyright Act and DMCA, are not limited to the

27   exclusive right of copyright holders to make copies of their works under § 106(1), but also include

28   the exclusive right to make derivative works under § 106(2), and to distribute copies under

PLAINTIFFS' OPPOSITION TO GITHUB AND MICROSOFT'S MOTION TO DISMISS PORTIONS OF
THE SAC

§ 106(3). *See* 17 U.S.C. § 106. Further, the Copyright Act's definition of "copies" does not require identicality. 17 U.S.C. § 101.

"The pleading burden under the DMCA is low." *See Mollman v. Zoetop Bus. Co.*, No. CV 22–4128 (PA) (GJSx), 2022 WL 17207103, at *3 (C.D. Cal. Sep. 16, 2022). Moreover, while Section 1202(b) claims require a plaintiff to plead scienter, such knowledge may be alleged generally and can be inferred through circumstantial evidence of intent. *See, e.g.*, *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1063-64, 2022 WL 14813836, at *9 (N.D. Cal. Oct. 25, 2022) ("'[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally'" for purposes of pleading DMCA § 1202(b)'s mental state requirements" ((citations omitted)).

A violation of § 1202(b)(1) is distinct from a violation of § 1202(b)(3) because it does not require the "distribution" or "import for distribution" of "copies of works" for liability. "To plead a violation of Section 1202(b)(1), a plaintiff must allege intentional removal of CMI." *Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022). The DMCA makes the mere removal of CMI from digital copies illegal before distribution of copies and, to the extent an identicality requirement can be read into § 1202(b)(1), it should regard how the copy was made and CMI removed, i.e., whether it was digital copying and removal of CMI. Here, Plaintiffs have alleged that Defendants made direct identical digital copies of Plaintiffs' works and thereafter automated the removal of its CMI. SAC ¶¶ 94–96, 143–44.

In its First MTD Order (ECF No. 95) this Court held that Plaintiffs had sufficiently alleged violations of DMCA §§ 1202(b)(1) and 1202(b)(3) because Plaintiffs had plausibly alleged that their "licensed code contain[ed] CMI," and that "Defendants removed or altered that CMI from licensed code, distributed CMI knowing CMI had been removed or altered, and distributed copies of the code knowing that CMI had been removed or altered, all while knowing and possessing reasonable grounds to know that doing so would induce infringement." *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 857 (N.D. Cal. 2023).

In its Second MTD Order, however, the Court dismissed Plaintiffs' DMCA claims solely

on the grounds that "no DMCA violation exists where the works are not identical," and Plaintiffs

had failed to satisfy this requirement "[b]ecause the Complaint characterized Copilot output as 'a

"modified format,' 'variation[ ],' or the 'functional[ ] equivalent' of the licensed code." ECF

No. 189 at 15 (quoting FAC ¶¶ 103, 110, 120).

In sum, this Court has already held that Plaintiffs have otherwise sufficiently pled DMCA

violations under §§ 1202(b)(1) and 1202(b)(3). The sole issue remaining before the Court is

whether Plaintiffs' SAC sufficiently alleges that Copilot produces "identical" copies of Plaintiffs'

licensed code. For the following reasons, and for the reasons the Court set forth in its First MTD

Order, Plaintiffs' SAC satisfies this requirement, and thus Plaintiffs' claims under §§ 1202(b)(1)

and 1202(b)(3) for injunctive relief should not be dismissed.

### 1. Plaintiffs' DMCA claims are plausibly alleged under any standard

Plaintiffs do not seek to relitigate previous arguments concerning the DMCA's alleged

"identicality" requirement and its application to the facts in this case. Plaintiffs, however, ask this

Court to address new issues arising in relation to this standard and its application to software code

in particular—issues that were either never previously raised or addressed in prior briefing or the

Court's Second MTD Order.[1]

Relatedly, Plaintiffs ask this Court to reconsider the caselaw on which it relied in reaching

its "identicality" holding in the Second MTD Order, particularly in light of the recent district

court decision in *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411 (S.D. Tex.

2023) ("*ADR Int'l*"), where this alleged "identicality" element was squarely rejected. *See id.* at

427–29 (finding no "identicality" requirement under the DMCA claims after examining the

statutory language, legislative history, and caselaw).

### a. Identicality is not an element of a DMCA § 1202 claim

The plain language of DMCA § 1202 makes it a violation to remove or alter CMI. It does

---

[1] ECF No. 189 ("A court may consider a motion "to the extent it presents issues not previously resolved." (quoting *Jones v. Life Ins. Co. of N. Am.*, No. 08-CV-03971-RMW, 2015 WL 8753996, at *3 (N.D. Cal. Dec. 15, 2015)). Plaintiffs also acknowledge that there is a pending motion for reconsideration that addresses some of these arguments though under standards applicable to reconsideration.

1    not require that the output work be original or identical to obtain relief. *See* 17 U.S.C.

2    § 1202(b)(1). Similarly, the definition of "copy" under the DMCA includes no requirement of

3    identicality. *See* 17 U.S.C. § 101. Indeed, the DMCA contains only one mention of the word

4    "identical"—as an exemption under Section 1202 for certain types of institutions. *See* 17 U.S.C.

5    § 1201(d)(2) ("The exemption made available under paragraph (1) shall only apply with respect

6    to a work when an **identical** copy of that work is not reasonably available in another form.")

7    (emphasis added). One can presume therefore that Congress could have required an "identical

8    copy" element into other sections to the DMCA if it so intended.

9        To be considered a copy under the DMCA, the "allegedly infringing work must be fixed in

10   some tangible form from which the work can be perceived, reproduced, or otherwise

11   communicated, either directly or with the aid of a machine or device." *Columbia Pictures Indus.,*

12   *Inc. v. Galindo*, No. 20-cv-3129-MEMF (GJSx), 2022 WL 17094713, at *8 (C.D. Cal. Nov. 18,

13   2022) (citing 17 U.S.C. § 101). The statute defines CMI as "information conveyed in connection

14   with copies . . . of a work[.]" 17 U.S.C. § 1202(c). By a plain reading of the statute, there is no

15   need for a copy to be identical—there only needs to be copying, which Plaintiffs have amply

16   alleged. *See, e.g.*, SAC ¶¶ 112–40.

17       The DMCA was enacted to protect copyrights in the digital era where digital copies can

18   be made and disseminated in an instant. *See, e.g.*, *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524

19   F. Supp. 2d 1184, 1199 (C.D. Cal. 2007) ("With this evolution in technology, the law must adapt

20   in order to make digital networks safe places to disseminate and exploit copyrighted works."); *see*

21   *also* S. Rep. No. 105-190, at 2 (1998) ("[T]he law must adapt in order to make digital networks

22   safe places to disseminate and exploit copyrighted materials") (footnote call numbers omitted).

23       Here, Plaintiffs allege that Defendants utilized identical digital copies of their copyrighted

24   works to train Codex (SAC ¶¶ 91, 95-97) and removed the CMI from it knowing that Copilot

25   (which runs on top of Codex and which OpenAI codeveloped with GitHub, *id.* at ¶ 59)

26   reproduces Plaintiffs' copyrighted code identically, without attribution, notice, or any of the other

27   requirements that may adhere from the applicable license. *Id.* at ¶¶ 102-03, 145-49. Defendants,

28   therefore, knowingly enable and induce Copilot users to infringe on Plaintiffs' exclusive right

1    under § 106(2) of the Copyright Act to prepare derivative works. 17 U.S.C. § 106(2);

2    *see* SAC ¶¶ 90–105. Liability is established under DMCA § 1202 (b)(1) when CMI is removed

3    from digital copies knowing doing so "will induce, enable, facilitate, or conceal an infringement of

4    *any right* under this title." 17 U.S.C. § 1202(b).

5          *None* of the cases that Defendants previously relied on—and this Court cited in its Second

6    MTD Order adopting an "identicality" standard for DMCA violations—explain the origins of

7    this so-called standard. For good reason—there is no support from statutory language, legislative

8    history, or potentially analogous interpretations of "copying" under the Copyright Act. In fact,

9    careful review reveals that these cases also cite other cases that never discussed the issue of

10   "identicality" (despite being cited for that proposition).

11         For example, this Court (and Defendants) cited *Kirk Kara Corp. v. W. Stone & Metal Corp.*,

12   No. CV 20-1931-DMG (EX), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) as central

13   support for the DMCA's alleged "identicality" requirement. *Kirk Kara*, however, never

14   examined the standard, and instead relied on three cases each of which provide no support for it.

15   As the court in *ADR Int'l* noted, the *Kirk Kara* court cited *Kelly v. Arriba Soft Corp.*, 77 F. Supp.

16   2d 1116, 1122 (C.D. Cal. 1999) and *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496

17   SOM, 2015 WL 263556, at *2 (D. Haw. Jan. 21, 2015), "but neither [of these cases] mentioned

18   nor employed an identical copies requirement." *ADR Int'l*, 667 F. Supp. 3d. at 427. The *Kirk

19   Kara* court similarly cited *Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018); yet, the term

20   "identical" appears nowhere in the decision. In fact in the *Fischer* court's brief discussion of

21   whether sufficient copying had occurred, the court did not apply an identicality standard at all,

22   stating that where DMCA claims had been adequate, "the underlying work has been *substantially

23   or entirely reproduced.*" *Id.* at 609 (emphasis added); *see also ADR Int'l*, 667 F. Supp. 3d at 427

24   (rejecting *Kirk Kara*'s reliance on *Fischer*).

25         Notably, in *ADR Int'l*, the district court expressly rejected Defendants' claim that the

26   DMCA included an "identicality" requirement in part by dissecting the very cases on which

27   Defendants here—and this Court in its Second MTD Order—relied on when imposing an

28   "identicality" requirement on DMCA violations. *ADR Int'l*, 667 F. Supp. 3d at 427-29

1   (observing that "Defendants' cases do not require a plaintiff to plead allegedly infringing works

2   are identical copies" and recognizing "the one case that requires identical copies [i.e., *Kirk Kara*]

3   is not well reasoned.").

4       The *ADR Int'l* court also held that neither the statute's plain language nor its legislative

5   history—which the district court examined (unlike the cases that Defendants rely on)—

6   supported an "identicality" requirement. Instead, well-established standards of statutory

7   construction compelled the opposite conclusion, namely, that "copying" under the DMCA

8   should align with "copying" under the Copyright Act, given that the DMCA is contained in

9   Chapter 12 of the Copyright Act and, therefore, subject to Section 101 of the Copyright Act's

10  definition of copying. Section 101 defines "copies" as "material objects, other than

11  phonorecords, in which a work is fixed by any method now known or later developed, and from

12  which the work can be perceived, reproduced, or otherwise communicated, either directly or with

13  the aid of a machine or device." 17 U.S.C. § 101. This definition "lacks any requirement for an

14  identical copy." *ADR Int'l*, 667 F. Supp. 3d at 427*; cf. Murphy v. Millennium Radio Grp. LLC*, 650

15  F.3d 295, 305 (3d Cir. 2011) ("Defendants are essentially asking us to rewrite § 1202 to insert a

16  term—that is, 'automated copyright protection or management system'—which appears nowhere

17  in the text of the DMCA and which lacks a clear definition. We would need compelling

18  justification indeed to adopt such a statutorily-unmoored interpretation.").

19      In accord with this correct analysis, courts have routinely declined to require identicality

20  when evaluating DMCA claims under a standard drawn directly from Copyright Act infringement

21  claims. *See, e.g.*, *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016);

22  *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, No. 3:20-CV-2541-K, 2023

23  WL 8721435, at *1 (N.D. Tex. Dec. 17, 2023); *Software Pricing Partners, LLC v. Geisman*, No.

24  3:19-cv-00195-RJC-DCK, 2022 WL 3971292, at *5 (W.D.N.C. Aug. 31, 2022) ("Geisman, as a

25  former employee of SPP, reasonably knew that such information was copyrighted work and knew

26  he was altering it by changing it enough to look like his own work while maintaining a substantial

27  similarity to the original work. Accordingly, Geisman is liable for violating the DMCA."). Under

28  the DMCA, all these actions would fail if courts adhered to the "identicality" standard

Defendant propose—and which this Court adopted in the Second MTD Order. Defendants have not cited a single case holding that the standard for "copying" under the DMCA is higher than the Copyright Act or that the statutes should be read disharmoniously.

In addition to being incorrect, adopting Defendants' rigid "identicality" standard to software code also has uniquely troubling implications given that mere cosmetic differences between the original and copied code are not probative of whether the copied code is "identical." *See* 17 U.S.C. § 1201(d)(2) (containing the only mention of the word "identical" in 17 U.S.C. §1201(d)(2) regarding an exemption for public institutions); *see also* S. Rep. No. 105-190, at 31 (1998) (explaining the meaning of public institution exemption and requirement that copies be "identical" for exemption to apply). A court in this very district has already found that an allegation of CMI removal from code that is derivative of a plaintiff's copyrighted source code is sufficient without an allegation of "identicality" at the pleading stage to sustain a DMCA § 1202 claim. *See Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1053 (N.D. Cal. 2023). The decision in *Oracle Int'l Corp. v. Rimini St., Inc.*, No. 8:19-cv-01987-SB-(DFMx), 2023 WL 4706127 (D. Nev. July 24, 2023) is especially instructive. There, the court rejected the party's argument "that a work that removes copyright management information must be an *exact copy of the original work.*" *Id.* at *82 (emphasis added). The court stated that "this construction of the DMCA" demanding an exact copy—the same construction Defendants demand in this case— "would weaken the statute's intended protections for copyright holders" and that "when a defendant modifies source code 'substantially similar'" to the underlying "copyrighted source code, including by replacing the author's name with its own, the defendant is liable under the DMCA." *Id.* (internal quotations omitted); *see Rimini St., Inc.*, 2023 WL 4706127, at *14 (examining whether copies of code were "substantially similar"). Identicality is simply not an element of a § 1202 claim.

### b. Plaintiffs allege that Copilot reproduces identical copies of Plaintiffs' code

Even if "identicality" were actually an element of a DMCA violation, Plaintiffs' allegations under §§ 1202(b)(1) and (b)(3) still satisfy this standard. Plaintiffs have plausibly

PLAINTIFFS' OPPOSITION TO GITHUB AND MICROSOFT'S MOTION TO DISMISS PORTIONS OF THE SAC

alleged that any differences between Copilot-generated code and Plaintiffs' original code are "immaterial" and "semantically insignificant"—in other words: identical. *See, e.g.*, SAC ¶ 108.

Plaintiffs identify several instances where Copilot *has* reproduced verbatim (i.e., identical) copies of Plaintiffs' code. *See id* at ¶¶ 135, 137. With respect to Doe 5, Plaintiffs allege that "[w]hen Copilot is prompted with the first section of Doe 5's code . . . [t]he first suggestion from Copilot offers . . . a verbatim copy of Doe 5's original code." *Id.* at ¶ 135. Plaintiffs similarly allege that Copilot reproduces "a verbatim copy of Doe 5's code (except for small cosmetic variations in line breaks)" when prompted by different lines of Doe 5's code. *Id.* at ¶ 137. Line breaks do not comprise the copyrighted work as they are not "semantically meaningful," *id.* at ¶ 72, and thus any difference in line breaks between Copilot output and Plaintiffs' code are immaterial to the analysis.

Elsewhere, the SAC plausibly alleges that Copilot reproduces code sufficient to satisfy an "identicality" requirement, because minor deviations between the original code and Copilot's copy of that code are "immaterial" or "semantically insignificant variations of the original Licensed Materials." *Id.* at ¶ 108. With respect to Doe 2, Plaintiffs allege that slight differences in three key words are insignificant, rendering the Copilot code "semantically equivalent," and that the code is otherwise "a verbatim copy" of the original code. *Id.* at ¶ 115. Plaintiffs further allege that "the particular arrangement and sequencing seen in [Doe 2's] code is distinctive expression found only in one location on GitHub." *Id.* Similarly, Plaintiffs allege that Copilot clearly reproduces Doe 1's code given that its omitted output only contains "cosmetic" differences that do not affect the way the code functions, and that the output even contains Doe 1's actual "comments in the code"—in other words, the coder's own expressive commentary about his own code, which could only come from Doe 1, further evidencing copying. *Id.* at ¶ 121.

Plaintiffs further allege that Copilot renders a "verbatim copy" of Doe 5's original code, except with an aspect of the code that is immaterial to the question of whether it has been copied. *Id.* at ¶ 128. The renaming of variables is akin to renaming James Bond as "Jim Bond": republishing the popular 007 movie series would still constitute an act of infringement irrespective of a shortened name. Indeed, the SAC is replete with allegations making clear that

the scant "cosmetic" differences in Copilot-generated code have no bearing on whether the Copilot-generated code is "functionally equivalent" or identical to Plaintiffs' code. *See, e.g.*, *id.* at ¶¶ 122, 131, 137. Plaintiffs also allege that these small cosmetic differences are "a feature, not a bug" that enables "Copilot to conceal the copying of Licensed Materials." *Id.* at ¶ 155.

Moreover, Defendants' contention on this point do not raise pleading issues but disputes of fact to be addressed after discovery, whether the minor differences in line breaks, capitalization, or variable names defeat a finding of identicality is a factual argument that can be tested through expert testimony or other proof showing that these modifications are, in fact, material such that the code is, in fact, *not* identical. *See, e.g.*, *Rimini St., Inc.*, 2023 WL 4706127, at *14 ("Ms. Frederiksen-Cross performed analytic dissection as part of her comparison of RSI810ST.SQR against TAX810DC.SQR. She determined that the RSI810ST.SQR file contains substantial portions of Oracle's protected expression and was substantially similar to Oracle's TAX810DC.SQR file. Examples of Oracle's protected expression within the RSI810ST.SQR file include, "blocks of identical lines that are performing exactly the same function using identical code in the same order." (internal citations omitted)). But this case is about *code*. Minor differences may have no implication as to whether the code functions identically or not.

In addition, Plaintiffs' SAC contains new specific allegations regarding Copilot's duplicate-detection feature, which GitHub created "in response to public criticism of Copilot's mishandling of Licensed Materials." SAC. ¶ 145. As Plaintiffs allege, the feature "either allow[s] or block[s] code completion suggestions that match publicly available code." *Id.* In other words, the feature was created *because* GitHub, OpenAI, and the other defendants *knew* that Copilot was emitting verbatim copies of licensed code on which it had trained. *See id* at ¶¶ 144-48. A tool that attempts to block Copilot from producing output that is identical to code hosted in public GitHub repositories *by definition* establishes Copilot's ability to reproduce verbatim copies of code. There is no other plausible inference for the tool. Moreover, as Plaintiffs allege, "even assuming the filter works as advertised, because it only checks for verbatim excerpts, it does nothing to impede the Outputs from Copilot that are modifications of Licensed Materials." *Id.* at ¶ 145. In other words, code that includes minor differences in line breaks, capitalization, or even order of

PLAINTIFFS' OPPOSITION TO GITHUB AND MICROSOFT'S MOTION TO DISMISS PORTIONS OF THE SAC

1    enums—all semantically "immaterial differences"—are not necessarily flagged by the feature. *Id.*

2        At the pleading stage, Plaintiffs' allegations regarding the duplication-detection feature

3    clearly bolster the plausibility of Plaintiffs' claims that Copilot produces identical code and is

4    substantially likely to continue producing Plaintiffs' licensed code.

5        **2.    Plaintiffs have otherwise plausibly alleged violations of DMCA**

6             **§§ 1202(b)(1) and (b)(3)**

7             **a.    Plaintiffs have identified works in which they have a copyright**

8                 **interest**

9        Defendants' contention that Plaintiffs' DMCA claims fail for the additional reason that

10   "the SAC does not *identify* any work in which Plaintiffs own a copyright interest" is incorrect as a

11   matter of fact and law. GitHub/Microsoft Br. at 2. Plaintiffs expressly allege that they "owned a

12   copyright interest in" their licensed code hosted on GitHub during the relevant period, SAC

13   ¶¶ 19–23, 182–85, and Plaintiffs identify specific works in their GitHub public repositories that

14   Copilot copied and emitted, *id.* ¶¶ 109–40. This is sufficient to identify the work at issue.

15       This is readily distinguishable from the two cases on which Defendants rely. There,

16   DMCA claims were either dismissed for failure to identify any work, *Free Speech Systems, LLC v.*

17   *Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019), or for failure to plead that works had been

18   distributed with CMI removed, *Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC, 2023 WL

19   8039640 (N.D. Cal. Nov. 20, 2023). *See* GitHub/Microsoft Br. at 11–12.

20       *Splunk Inc.*, 662 F. Supp. 3d 1029 is instructive. The *Splunk* court distinguished *Free*

21   *Speech Systems*, and held that CMI removal under DMCA §§ 1202(b)(1) and (b)(3) was

22   sufficiently pleaded where the plaintiff alleged that the defendant created derivative code using

23   plaintiff's source code, and removed CMI indicating authorship and ownership. *Id* at 1053. Here,

24   as in *Splunk,* Plaintiffs identify the code from which CMI was removed (the "Licensed

25   Materials," SAC ¶¶ 1, 210, 212), that Copilot distributed identical copies of Plaintiffs' code,

26   SAC ¶¶ 112–40, and that the CMI removed from Copilot output indicated Plaintiffs' authorship

27   and ownership (SAC ¶ 211). Moreover, as this Court already recognized in its First MTD Order,

28   Plaintiffs have plausibly alleged "that there is at least a substantial risk that Defendants'

1   programs will reproduce Plaintiffs' licensed code as output." *Doe 1*, 672 F. Supp. 3d at 851; *see*

2   *also* SAC ¶¶ 104–07.

3                               **b.    The DMCA does not require an entire work be copied**

4               Defendants raise a new claim that Plaintiffs must allege that CMI was removed from an

5   *entire* work, as opposed to a portion of a work, to sustain a DMCA violation. GitHub/Microsoft

6   Br. at 1–2. The DMCA has no such requirement, and the five cases cited by Defendants for this

7   proposition contain no such rule. For example, in *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927

8   (C.D. Cal. 2018), the defendant took a picture of the plaintiff's mural at an angle that obscured

9   CMI written in the mural. *Id*. at 938. The issue before the *Falkner* court concerned the scienter

10  element of a DMCA claim at summary judgment, and Defendants' description wildly and

11  inaccurately misstates its holding by saying that DMCA § 1202(b) does not apply to excerpts of a

12  work. *Id* at 938–39; *see also id*. at 939 (explaining that rather than remove or alter CMI, defendant

13  "simply chose not to include the perpendicular mural wall in his photograph"). Neither did the

14  court in *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352 (N.D. Fla. 2010),

15  where the question before the court was whether CMI was removed when student note-takers

16  transcribed notes from the plaintiffs' course and those notes were then compiled into note

17  packages. *Id*. at 1359 (explaining no CMI was removed and instead the "courses were allegedly

18  copied into a different form and then incorporated into the note packages"). The courts in *Design

19  Basics, LLC v. WK Olson Architects, Inc.*, No. 17-cv-7432, 2019 WL 527535 (N.D. Ill. Feb. 11, 2019)

20  (architectural design); *Frost-Tsuji Architects*, 2015 WL 263556 (architectural design); and *Kelly*, 77

21  F. Supp. 2d 1116, 1122 (copying thumbnail images of a website) similarly did not hold that a

22  DMCA violation only attaches where an entire work, rather than portion of a work, has been

23  copied.

24               Like Defendants' "identicality" argument, the claim that DMCA liability attaches only

25  where the offending party has copied an "entire work" contravenes the most basic tenets of

26  copyright law. By Defendants' logic, a party could copy and distribute a fragment of a copyrighted

27  work—say, a chapter of a book, a stanza of a poem, or a scene from a movie—and face no

28  repercussions for infringement. This is wrong. Courts, however, have routinely acknowledged

PLAINTIFFS' OPPOSITION TO GITHUB AND MICROSOFT'S MOTION TO DISMISS PORTIONS OF
THE SAC

1   that "[e]ven a small amount of the original, if it is qualitatively significant, may be sufficient to be

2   an infringement" even where "the full original could not be recreated from the excerpt." *Horgan*

3   *v. Macmillan, Inc.*, 789 F.2d 157, 162 (2d Cir. 1986); *see also Burroughs v. Metro–Goldwyn–Mayer,*

4   *Inc.*, 683 F.2d 610, 624 n.14 (2d Cir. 1982) ("[A] copyright infringement may occur by reason of a

5   substantial similarity that involves only a small portion of each work.").

6        Defendants' unsupported theory would render the DMCA toothless by allowing anyone

7   to copy another's work so long as they only copied something less than the whole. But " '[n]o

8   plagiarist can excuse the wrong by showing how much of his work he did not pirate.' " *Shaw v.*

9   *Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990), *overruled by Skidmore v. Led Zeppelin*, 952 F.3d 1051

10   (9th Cir. 2020).

11                     **c.     Plaintiffs plead scienter under § 1202(b)**

12        Defendants allege that "Plaintiffs still cannot explain how infringement is likely to occur

13   in the context of their DMCA claims," and that "the tampering with CMI contemplated by

14   § 1202 must be part of a scheme involving purposeful infringement." GitHub/Microsoft Br. at 17.

15   But as this Court has already held, "Plaintiffs' allegations raise the reasonable inference that

16   Defendants knew or had reasonable grounds to know that removal of CMI carried a substantial

17   risk of inducing infringement." ECF No. 95 at 20.

18        These allegations have remained unchanged in the SAC. Defendants offer no reason why

19   the Court must now find otherwise, other than a perplexing claim that Defendants' duplication-

20   detection feature prevents Copilot from infringing licensed material. GitHub/Microsoft Br. at 18.

21   Again, Defendants' claims about this feature are factual arguments unsuitable for resolution on

22   the pleadings. Moreover, as Plaintiffs squarely allege, this feature was created specifically to

23   combat potentially infringing conduct. SAC ¶¶ 145–47.

24        Defendants additionally contend that the recent decision in *Tremblay v. OpenAI, Inc.*,

25   No. 23-CV-03223-AMO, 2024 WL 557720, at *4 (N.D. Cal. Feb. 12, 2024) further warrants

26   dismissal of Plaintiffs' DMCA claims because the case establishes that parties must plausibly

27   allege that a defendant's tampering with CMI was done knowingly to enable infringement.

28   GitHub/Microsoft Br. at 18. Defendants' reliance on this case is bizarre. In *Tremblay*, the court

1  dismissed the parties' DMCA claims for failing to allege facts similar to those *alleged in this case*.

2  *Id.* at \*4. Citing this Court's First MTD Order, the *Tremblay* court stated that the plaintiffs here

3  "alleged where the CMI typically appeared, that defendants were aware that the CMI appeared

4  repeatedly, and that defendants subsequently 'trained these programs to ignore or remove CMI

5  and therefore stop producing it.' That was *sufficient* to support a 'reasonable inference that

6  Defendants intentionally designed the programs to remove CMI. By contrast, Plaintiffs here only

7  make conclusory allegations that by design, the training process does not preserve any CMI." *Id.*

8  For these reasons, Plaintiffs plead the intent requirements under DMCA § 1202(b), as this Court

9  previously held.

10        **B.    Plaintiffs Adequately Allege Unjust Enrichment**

11              GitHub and Microsoft argue that Plaintiffs' request for relief of an "award of damages in

12  the amount Defendants have been unjustly enriched through their conduct as alleged herein as

13  well as punitive damages in connection with this conduct" (SAC ¶ 263(e)) should be dismissed.

14  GitHub/Microsoft Br. at 18. They claim that because Plaintiffs' stand-alone unjust-enrichment

15  claim based on unauthorized use of Plaintiffs' code in training Copilot was previously dismissed,

16  all forms of restitutionary relief sought in relation to Plaintiffs' remaining contract claims must be

17  stricken at the pleading stage. *Id.*[2]

18              The Court should deny this request. Plaintiffs seeking redress for breaches of contract

19  may pursue multiple forms of relief, including alternative measures of claims and other relief.

20  Plaintiffs need not elect one at the pleading stage and indeed, alternative theories may be

21  presented to the jury. *See Hernandez v. Lopez*, 180 Cal. App. 4th 932, 939 (2009) (noting that "a

22  plaintiff need not amend his pleading to seek compensation under an unjust enrichment theory,

23  but could do so based on the pleaded cause of action for breach of contract"); *Alkayali v. Hoed*,

24  No. 3:18-CV-777-H-JMA, 2018 WL 3425980, at \*6 (S.D. Cal. July 16, 2018) ("California law

---

26  [2] In part, Defendants seek to do so in order to prevent Plaintiffs from taking discovery as to
27  certain elements of Plaintiffs' breach of contract claims. This has given rise to a motion for a
   protective order, and more recently, the suggestion that discovery should be bifurcated. The jury,
28  not Defendants, should resolve the questions of breach of contract and fix the appropriate relief
   for the breach.

permits plaintiffs to seek disgorgement of a defendant's unjust enrichment as a restitutionary remedy for breach of contract."). Here, restitution for unjust benefits derived from Defendants' breach of the terms of the open-source licenses and GitHub's own policies is an available measure of damages or forms of relief in a case like this where rescission of the license is appropriate. Restitution of Defendants' ill-gotten profits from breach of their contractual duties is especially appropriate here because such rescission is impossible to enforce fully now that the Codex and Copilot models themselves have been publicly released. Ultimately, a jury should decide if Plaintiffs are entitled to restitution of Defendants' profits unjustly derived from their breach based on the evidence presented to it.

Under California law, it is settled that "[r]estitution may . . . be awarded in contract actions." 1 Witkin, Summary 11th Contracts § 1050 (2021); The Restatement (Third) of Restitution and Unjust Enrichment § 39 provides that where "a deliberate breach of contract results in profit to the defaulting promisor and the available damage remedy affords inadequate protection to the promisee's contractual entitlement, the promisee has a claim to restitution of the profit realized by the promisor as a result of the breach." Restatement (Third) of Restitution and Unjust Enrichment, § 39 (2011). The Restatement continues: "A case in which damages afford inadequate protection to the promisee's contractual entitlement is ordinarily one in which damages will not permit the promisee to acquire a full equivalent to the promised performance in a substitute transaction." *Id*. The "profits" that a plaintiff can recover in restitution can "include saved expenditure and consequential gains that the defendant would not have realized but for the breach." *Id*. Further, whether Defendants are entitled to monetary damages for disgorgement of profits under § 39 should be considered an issue of monetary damages for the jury to decide. *See MSC.Software Corp. v. Heroux-Devtek Inc.,* No. 8:19-cv-01987-SB-(DFMx), 2021 WL 9696752, at *2 (C.D. Cal. Sept. 16, 2021) ("[C]ontrary to Defendant's assertion, Plaintiff's request for restitution may still be tried by a jury.") (citing *Welborne v. Ryman-Carroll Found.,* 22 Cal. App. 5th 719, 728 n.8 (2018)).

Defendants mislead the Court when they claim "a plaintiff must plead 'mistake, fraud, coercion, or request,'" quoting the Ninth Circuit's decision in *Astiana v. Hain Celestial Grp., Inc*.,

783 F.3d 753, 762 (9th Cir. 2015) and 55 Cal. Jur. 3d Restitution § 2. Mot. at 18. The *Astiana* decision quotes 55 Cal. Jur. 3d Restitution § 2, which states that "an action seeking a recovery for unjust enrichment is a claim for restitution, *ordinarily* based on a benefit conferred through mistake, fraud, coercion, or request, which ordinarily does not lie when an enforceable, binding agreement exists defining the rights of the parties." (emphasis added). As the model jury instructions confirm, a plaintiff need not prove such facts. CACI No. 375. Indeed, 55 Cal. Jur 3d Restitution § 2 immediately goes on to discuss just such other "unordinary" bases to seek restitution, including that "a party to an express contract can assert a claim for restitution based on unjust enrichment by alleging in that cause of action that the express contract is void or was rescinded." *Id.* (citing *Russell City Energy Co., LLC v. City of Hayward,* 14 Cal. App. 5th 54, (2017)). Further, restitution is permitted "even if the party inconsistently pleads a breach of contract claim that alleges the existence of an enforceable agreement." *Id.* (citing *Russell City Energy Co; Rutherford Holdings, LLC v. Plaza Del Rey,* 223 Cal. App. 4th 221 (2014)).

**IV.    CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that Defendants' motion to dismiss be denied.

PLAINTIFFS' OPPOSITION TO GITHUB AND MICROSOFT'S MOTION TO DISMISS PORTIONS OF THE SAC

1   Dated: March 27, 2024                    By:    _/s/ Joseph R. Saveri_
                                                     Joseph R. Saveri
2

3                                            Joseph R. Saveri (State Bar No. 130064)
                                             Cadio Zirpoli (State Bar No. 179108)
4                                            Christopher K.L. Young (State Bar No. 318371)
                                             Louis A. Kessler (State Bar No. 243703)
5                                            Elissa A. Buchanan (State Bar No. 249996)
                                             William W. Castillo Guardado (State Bar No. 294159)
6                                            Holden J. Benon (State Bar No. 325847)
7                                            **JOSEPH SAVERI LAW FIRM, LLP**
                                             601 California Street, Suite 1000
8                                            San Francisco, CA 94108
9                                            Telephone:    (415) 500-6800
                                             Facsimile:    (415) 395-9940
10                                           Email:        jsaveri@saverilawfirm.com
11                                                         czirpoli@saverilawfirm.com
                                                           cyoung@saverilawfirm.com
12                                                         lkessler@saverilawfirm.com
                                                           eabuchanan@saverilawfirm.com
13                                                         wcastillo@saverilawfirm.com
                                                           hbenon@saverilawfirm.com
14

15                                           Matthew Butterick (State Bar No. 250953)
                                             1920 Hillhurst Avenue, #406
16                                           Los Angeles, CA 90027
17                                           Telephone:    (323) 968-2632
                                             Facsimile:    (415) 395-9940
18                                           Email:        mb@buttericklaw.com
19
                                             _Counsel for Individual and Representative_
20                                           _Plaintiffs and the Proposed Class_
21

22

23

24

25

26

27

28