```
 1                  UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3        Before The Honorable Jon S. Tigar, District Judge
 4
 5  DOE 1, et al.,                )
                                  )
 6          Plaintiffs,           )
                                  )
 7  vs.                           )  No. C 22-06823-JST
                                  )
 8  GITHUB, INC., et al.,         )
                                  )
 9          Defendants.           )
    _____)
10
                                     Oakland, California
11                                   Friday, March 22, 2024
12
      TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13            RECORDING 1:30 - 1:49 = 19 MINUTES
14
    APPEARANCES:
15
    For Plaintiffs:
16                              Joseph Saveri Law Firm, LLP
                                601 California Street
17                              Suite 1000
                                San Francisco, California
18                                94108
                          BY:   JOSEPH R. SAVERI, ESQ.
19
                                1920 Hillhurst Avenue
20                              Suite 406
                                Los Angeles, California 90027
21                        BY:   MATTHEW BUTTERICK, ESQ.
22
23           (APPEARANCES CONTINUED ON THE NEXT PAGE.)
24
25
```

*Echo Reporting, Inc.*

```
                                                                    2
 1  For GitHub, Inc. and
      Microsoft Corporation:    Orrick Herrington
 2                                 & Sutcliffe, LLP
                                405 Howard Street
 3                              San Francisco, California
                                   94105
 4                         BY:  ANNETTE HURST, ESQ.

 5  For OpenAI, Inc.:
                                Morrison & Foerster, LLP
 6                              425 Market Street
                                San Francisco, California
 7                                 94105
                           BY:  JOSEPH C. GRATZ, ESQ.
 8
 9  Transcribed by:             Echo Reporting, Inc.
                                Contracted Court Reporter/
10                              Transcriber
                                echoreporting@yahoo.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

1  Friday, March 22, 2024                                    1:30 p.m.
2                      P-R-O-C-E-E-D-I-N-G-S
3                             --oOo--
4          THE CLERK:  Your Honor, now calling civil matter
5  22-6823, J. DOE 1, et al. v. Github, Inc., et al.
6      If Counsel could please state their appearances with
7  the record, starting with counsel for Plaintiffs.
8          MR. SAVERI (via Zoom):  Good afternoon, your
9  Honor.  Joseph Saveri for the Plaintiffs.
10         MR. BUTTERICK (via Zoom):  Good afternoon, your
11 Honor.  Matthew Butterick for the Plaintiffs.
12         MS. HURST (via Zoom):  Good afternoon, your Honor.
13 Annette Hurst for Defendants Github and Microsoft.
14         MR. GRATZ (via Zoom):  Good afternoon, your Honor.
15 Joe Gratz for the OpenAI Defendants.
16         THE COURT:  Good afternoon.  So, let me start by
17 identifying things we might want to say, at least a little
18 something about from your case management statement.
19     I didn't see that there are any party, or even third-
20 party discovery disputes that are ripe for the Court's
21 attention.  I'm not the person who would adjudicate them in
22 the first instance anyway.
23     The Plaintiffs have signaled that they think
24 enlargement of the fact discovery deadline is likely to be
25 necessary.  Microsoft and GitHub want to bifurcate discovery

and push off discovery in a class wide damages.  And the parties, while they do have a dispute that appears to be ripe, or almost ripe, about the amount of telemetry data GitHub is required to store.

So that's what I've got in my notes.  Mr. Saveri, do you have anything else on your list?

MR. SAVERI:  I think that covers it.

THE COURT:  And who would like to take the lead for Defendants this afternoon?

MS. HURST:  Your Honor, I think those are both our issues, so I'll take the lead on those.

THE COURT:  Okay.  So let me offer some -- well, let me offer a couple comments.  I'm not a big bifurcation of discovery person, and I'm not inclined to bifurcate discovery here, but I'm happy to take further argument if somebody wants to make it.

MS. HURST:  Your Honor, I think the main concern we had was we were perfectly fine with Judge Ryu addressing these issues, as a matter of relevance and sequencing, but Plaintiffs had indicated that they thought that that was an improper request that could only be directed to the Court as a matter of bifurcation.  And we just don't want this to fall through the jurisdictional cracks.

We're perfectly happy to have Judge Ryu address it, as she has been doing, but her -- even her last order had

1 indicated that she had consulted with your Honor, and so we
2 wanted to just make sure that we have a process that
3 addresses the issue once the pleadings are settled, without
4 need for considering possible intra court jurisdictional
5 issues.
6          THE COURT:  Different magistrate judges have
7 different styles.  I am very hands off.  I don't ever
8 provide -- well, I wouldn't say -- my favorite deposition
9 answer of all time is when a witness said, "Never is a very
10 long time."  So I wouldn't say that I would never provide
11 guidance to a magistrate judge, but it's not my style, and
12 occasionally they do check with me, just because they want
13 to make sure that they're not getting sideways, I guess,
14 with the district court.  But I have a tremendous amount of
15 confidence in Judge Ryu.  Tremendous.  And I don't even
16 remember what she asked me, honestly, when she did consult
17 with me.
18      I'll just tell you what my notes say, and then you all
19 can tell me if you think there's more to be said this
20 afternoon.  And these are just notes to myself about what I
21 might tell you this afternoon.  And what I wrote was,
22 whether discovery into Microsoft's acquisition of GitHub is
23 proper, can be determined by reference to the concepts of
24 relevance and proportionality under Rule 26 of the Federal
25 Rules of Civil Procedure.  And if the parties bring that

1 dispute to the Court, it, like other disputes in the --
2 discovery disputes in this case, will be resolved in the
3 first instance by Magistrate Judge Ryu.  But the Court will
4 not bifurcate merits and damages or different kinds of
5 damages discovery.
6     But it sounds like, Ms. Hurst, you're fine.  That's
7 what -- that's what you appear to want from Judge Ryu.  Am I
8 missing something?
9         MS. HURST:  No, your Honor.  I think that's
10 sufficient guidance for our purposes on this issue today.
11         THE COURT:  Mr. Saveri, is there anything more to
12 be said on that topic?
13         MR. SAVERI:  I don't -- I don't believe so.  I
14 think, your Honor, except that -- you set the Court's
15 schedule and we wanted to talk with you in the first
16 instance about modifications to the -- to the pretrial
17 schedule and --
18         THE COURT:  Oh, yeah, I'll get there next,
19 actually.  I think -- I think enlargement of the fact
20 discovery deadline is likely to be necessary, and the
21 Defendants have shrugged that off in the case management
22 statement.  But I  -- I don't read in that statement -- I
23 don't see any information that would allow somebody to
24 confidently predict when discovery is going to be over.  So
25 I'm -- I think, Mr. Saveri, you haven't made a motion and no

1  one has submitted a stipulation, but on the facts I see, I
2  think it -- I think, enlargement of the deadlines it's
3  likely -- very likely to be necessary.
4          MR. SAVERI:  And, your Honor, thank you.  I mean,
5  we generally agree with that.  There's probably more
6  information that I would like to have before we make that
7  proposal, but you're of course right, we haven't made a
8  motion to enlarge it.
9       We could -- just checking in on where we are, I think
10 that foretells where we may land, and that's as far as we
11 are right now.
12         THE COURT:  I try to be very understanding about
13 requests for continuance, and the question I ask myself is,
14 have the parties been diligent, have they been doing things?
15 Or, have they just been sitting on their hands?  The parties
16 here seem very clearly to be doing things.  I learned that
17 lesson when I was on the state court.
18      There was some database -- not a database -- like a
19 list serve, that kind of thing, where lawyers expressed
20 their opinions about sitting judges.  I wasn't supposed to
21 have access to it, but someone gave me access.  So, of
22 course, I read it.  And some of the comments were laudatory,
23 so I enjoyed reading those.  One commenter said, Judge Tigar
24 is a very good judge in most respects, and then he listed a
25 lot of -- or she listed a lot of positive attributes.  And

1 then, after that, a commenter said, but he's a complete jerk
2 about continuances.  He seems to have forgotten, you know,
3 what it was like to practice law and all of this kind of
4 stuff.  Because I was very rough about continuances, because
5 I'm a believer that deadlines promote prompt decision
6 making.  But, I took the comment to heart, and so I try to
7 have more of a nuanced view of these thing.
8        Anyway, it just seems to me like the parties in this
9 case are working hard.  It's a big case.  A request for a
10 continuance of the deadlines would not surprise me.
11             MR. SAVERI:  Thank you, your Honor.
12             THE COURT:  I think that just leaves telemetry.
13 So this is going to be like a technology tutorial for Judge
14 Tigar.  I'm excited. What is telemetry data?  What is that?
15 Who wants to -- who wants to speak first about what
16 telemetry data is?
17             MR. SAVERI:  I'm going to defer to Ms. Hurst,
18 because it's her telemetry data.  I have a view, but I think
19 it makes sense in the first instance for her to proceed.
20             THE COURT: Ms. Hurst, do you accept the
21 microphone?
22             MS. HURST:  I will, your Honor.
23      Your Honor, telemetry data is use -- broadly speaking,
24 usage data.  So, it's the kind of metadata that's being
25 collected during the use of the GitHub co-pilot coding tool,

9

1  with consent, about how users are using the tool.
2          THE COURT:  Interesting.  So, how end users are
3  using it?
4          MS. HURST:  Correct, your Honor.
5          THE COURT:  Yes.  Okay.  And, can you give me a
6  few examples of the kind of data that we're talking about?
7          MS. HURST:  Sure.  Broadly speaking, there are two
8  categories.  One category is user engagement data, and
9  that's the sort of data about, you know, when people log in,
10 how frequent -- how frequently --
11         THE COURT:  I have so many social media securities
12 cases, I think I know what this is.
13         MS. HURST:  Right.  How frequently and to what
14 extent they're using the service.  That kind of thing.
15         THE COURT:  Right.  Okay.
16         MS. HURST:  The other category, your Honor, which
17 is, you know, the one that frankly brings us here today, in
18 the sense that it's the category where the relevance --
19 potential relevance lies, is the -- what we're calling the
20 snippet data.  And the snippet data is a combination of the
21 prompt and the suggestion for the --
22         THE COURT:  Yeah.  Okay.
23         MS. HURST:  Okay.  So the Court can see, you know,
24 that those are basically, you know, what the users are
25 asking for and the outputs that they're getting as a result.

10

1           THE COURT:  Very interesting.  What is -- putting
2  this litigation to one side, and whatever other litigations
3  might be seeking such data, because I know there are other
4  litigations, does OpenAI have a policy about how long it
5  keeps such data?  In other words, if you didn't have to
6  worry about the lawyers, is there a policy?  What would the
7  policy be?
8           MR. GRATZ:  And, your Honor, your Honor asked
9  about OpenAI, did your Honor intend to ask about GitHub
10 or --
11          THE COURT:  Sure.  I actually -- as I was asking
12 the question, I wondered which I should be asking about.
13          MS. HURST:  Yeah.
14          THE COURT:  But I'll -- I'll stand corrected.  So,
15 okay, GitHub.
16          MS. HURST:  Yes.  Yes, your Honor.  The policy --
17          THE COURT:  Okay.
18          MS. HURST:  The policy in the absence of a
19 litigation hold is 18 months of retention.
20          THE COURT:  Okay.  So, Mr. Saveri -- well, first
21 of all, I'm not going to decide the question.  I just want
22 to understand it.  What do you want it for?  And I don't
23 mean that in like an accusatory way.  I'm just asking.
24          MR. SAVERI:  Yeah.
25          THE COURT:  To what use -- I guess a different way

1  of saying the same question is, to what use would Plaintiffs
2  put such data if they could get it?
3          MR. SAVERI:  So, the things that Ms. Hurst
4  described, right, which have to do with the way users touch
5  and what they do with the data, including queries and code
6  that may be generated as a result of these accessing the
7  software, are among the things that we claim are violative
8  of the rights of our Plaintiffs.
9          THE COURT:  All right.
10         MR. SAVERI:  And so -- and also, I believe, would
11 have outputs, which we would be able to discern, consistent
12 with our allegations, whether they are identical or near
13 identical outputs.
14     We could also tell about any variations, and we'd also
15 be able to learn from that what output licenses, which are
16 at issue in this case, would attach to, or could have been
17 omitted from.
18     So, at some level this telemetry data kind of reveals
19 or provides insight on a kind of granular, almost
20 transactional level, of the things that we claim are
21 violative of our client's rights.  Ultimately, may also
22 touch issues regarding class damages.
23     I think the -- there isn't -- I don't want to put words
24 in my opponent's mouth, but I don't think there is a dispute
25 that the material in the telemetry data does contain

1 information that touches on the case.  It's an issue that
2 has to do with the expense of maintenance.
3          THE COURT:  Yes, I understand that.
4          MR. SAVERI:  Okay.
5          THE COURT:  I asked -- I've asked the relevance
6 question so that I could -- because I didn't know what the
7 data was or what use it would be put to.  Now I understand
8 that.
9     No, I very much understand that -- I think I understand
10 very clearly the perimeters of the dispute, and I'll just
11 offer a few comments and then I'll leave you to your -- to
12 your devices with Judge Ryu.
13     If that dispute comes to me, which I suppose it might
14 eventually, I think I would need GitHub to do a lot better
15 job of explaining what overwhelm means and how expensive is
16 expensive and all of that.  On the one hand -- you know, on
17 the one hand, expense and proportionality are important
18 considerations and just because you sue somebody doesn't
19 mean that you get to make them do handstands in perpetuity.
20 I get that.
21     But, you know, this is a company that is headed for
22 $2,000,000,000 in revenue, is aiming for $100,000,000,000 a
23 year valuation, is able to hire the best lawyers in the
24 country.  And, when people in that position, who often find
25 themselves in federal court, so I see lots of people in that

position, when people in that position say, this is really hard.  For the most part, they are people who are really good at doing hard things and so -- so I would need a lot more information about what does that really mean, you know, that it's hard.  Or that something is overwhelming, some other thing.

    Mr. Saveri, I wouldn't take too much comfort from what I just said, because for your part, when they say, the volume of telemetry data is now starting to overwhelm the data store, in terms of both rate and daily capacity, and they would need to undertake a significant engineering effort.  My guess is they'll be able to back that up enough, you know, for a -- for a judge like me or Judge Ryu.

    And then, the question will be, I think probably it will be, you know, do you contest all of that, but it will also be, what do you get -- what does Joe Saveri get at nine petabytes that he doesn't get at three and a half?  That's, I think, where the rubber hits the road.  So, I'm sure you have smart consultants working for you.  If I were you, that's the question I might be asking them.

    MR. SAVERI:  Thank you.  Thank you.

    THE COURT:  Sorry I can't solve it for you today.

    MS. HURST:  That's very helpful, your Honor.  Thank you.

    THE COURT:  Other things we should talk about?

14

1     (No response.)
2         THE COURT:  The line goes quiet.
3         MR. SAVERI:  I'm just looking at my notes, which -
4 - your Honor, excuse me.  Enlargement bifurcation telemetry
5 was your list, and then -- so, that's -- that's, from my
6 perspective, that's right.
7         THE COURT:  Yeah.  And, you know, I -- I think,
8 Mr. Saveri, you're probably going to win bifurcation.  You
9 are probably going to get an enlargement if you need it, but
10 I do wonder why -- why is nine better than three and a half.
11 I think that would my -- my summary of this afternoon.
12        MR. SAVERI:  Fair enough, your Honor.  I
13 appreciate that.
14        THE COURT:  I continue to think these case
15 management conferences are useful, if -- only because they
16 act as an informal sort of deadline sea wall.  So, perhaps
17 -- are the parties available on the afternoon of June the
18 21st?
19        MR. SAVERI:  Give me one second to check, your
20 Honor, please.  Your Honor, I am going to be in Europe,
21 according to the current plans, the last two weeks in June.
22        THE COURT:  We could say July 5, but who does
23 that?  How about July 12 at 1:30?
24        MR. SAVERI:  For the Plaintiffs, your Honor,
25 that's fine.  Although, on your first point, I'm -- I'm

1 personally acquainted with another article three judge who
2 does that -- or has done that.
3     THE COURT:  That's fine.  I'll probably be working
4 that day myself, but I don't -- it's a different question
5 whether you make other people work on days like that.
6     MR. SAVERI:  July 12th works for the Plaintiffs,
7 your Honor.  Thank you.
8     MR. GRATZ:  That works for OpenAI, your Honor.
9     THE COURT:  All right.
10    MS. HURST:  And for us, your Honor.
11    THE COURT:  Let's have a case management
12 conference -- Ms. Lee, let's set a case management
13 conference 1:30 p.m. on July 12.
14    THE CLERK:  Yes, sir.
15    THE COURT:  The case management statement is due
16 on the 5th, but if you don't want to work that day, you can
17 submit it on the 3rd if you want to.
18   Thank you, all.
19    MS. HURST:  Thank you.
20    MR. SAVERI:  And, excuse me, your Honor.  It's by
21 Zoom, I -- still?
22    THE COURT:  Yes.  All of the Court's case
23 management conferences and all of its motion hearings, for
24 that matter, are by Zoom unless the Court says otherwise.
25    MR. SAVERI:  Thank you, your Honor.

1        THE COURT:  Thank you.
2        MR. GRATZ:  Thank you, your Honor.
3        MS. HURST:  Thank you, Judge.
4    (Proceedings adjourned at 1:49 p.m.)

*Echo Reporting, Inc.*

17

1               CERTIFICATE OF TRANSCRIBER

2

3      I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.
9      I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.

16          Echo Reporting, Inc., Transcriber
17               Sunday, April 7, 2024