ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
DANIEL D. JUSTICE (SBN 291907)
djustice@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

WILLIAM W. OXLEY (SBN 136793)
woxley@orrick.com
ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue
Los Angeles, CA 90071
Telephone:   +1 213 629 2020
Facsimile:   +1 213 612 2499

*Attorneys for GitHub, Inc. and Microsoft Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| J. DOE 1, et al., <br><br> Individual and Representative Plaintiffs, <br><br> v. <br><br> GITHUB, INC., et al., <br><br> Defendants. <br><br> AND CONSOLIDATED ACTION | Case No. 4:22-cv-6823-JST <br><br> Consolidated w/ Case No. 4:22-cv-7074-JST <br><br> **DEFENDANTS GITHUB AND MICROSOFT'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PORTIONS OF THE SECOND AMENDED COMPLAINT IN CONSOLIDATED ACTIONS** <br><br> Date: May 16, 2024 <br> Time: 2:00 p.m. <br> Courtroom: 6, 2d Floor <br> Judge: Hon. Jon S. Tigar <br><br> Second Amended Complaint Filed: January 25, 2024 |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.    The Complaint Fails To State A DMCA Claim. ........................................................ 2

    A.    Plaintiffs Fail To Identify Any Copyrighted Work From Which CMI Has Been Or Is Likely To Be Removed. ............................................................. 2

    B.    The Court's Previous Ruling That A § 1202(b) Copy Of A Work Means A Complete And Identical Version Is Correct. ............................................... 4

        1.    Snippets cannot support a § 1202 claim. ................................................ 4

        2.    Section 1202 requires identicality for a CMI stripping claim. ............... 6

        3.    The SAC does not allege identicality. .................................................. 10

    C.    Plaintiffs Fail To Allege The Required Likelihood Of Infringement. ........ 11

II.    Plaintiffs' Requests For Unjust Enrichment And Punitive Damages Should Be Dismissed. ....................................................................................................... 13

CONCLUSION ..................................................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ADR Int'l Ltd. v. Inst. For Supply Mgmt. Inc.*,
  667 F. Supp. 3d 411 (S.D. Tex. 2023) .................................................................................. 8, 9, 10

*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*,
  672 F. Supp. 3d 1035 (S.D. Cal. 2023) ............................................................................................ 8

*Alkayali v. Hoed*,
  No. 18-cv-777, 2018 WL 3425980 (S.D. Cal. July 16, 2018) .................................................. 15

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) .............................................................................................................. 14, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................................ 12

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .......................................................................................................... 13

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) .......................................................................................... 13

*Davis v. Leal*,
  43 F. Supp. 2d 1102 (E.D. Cal. 1999) ........................................................................................... 14

*Design Basics, LLC v. WK Olson Architects, Inc.*,
  No. 17-cv-7432, 2019 WL 527535 (N.D. Ill. Feb. 11, 2019) ....................................................... 5

*Dunkin v. Boskey*,
  82 Cal. App. 4th 171 (2000) ........................................................................................................... 15

*Falkner v. Gen. Motors LLC*,
  393 F. Supp. 3d 927 (C.D. Cal. 2018) ............................................................................................. 5

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
  756 F. Supp. 2d 1352 (N.D. Fla. 2010) ....................................................................................... 5, 8

*Fischer v. Forrest*,
  286 F. Supp. 3d 590 (S.D.N.Y. 2018) .............................................................................................. 8

*Foley v. Interactive Data Corp.*,
  47 Cal. 3d 654 (1988) ................................................................................................................ 14, 15

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
  No. CIV. 13-00496, 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ............................................. 5, 8

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
　　No. CIV. 13-00496 SOM, 2015 WL 263556 (D. Haw. Jan. 21, 2015) ................................... 8

*Free Speech Systems, LLC v. Menzel*,
　　390 F. Supp. 3d 1162 (N.D. Cal. 2019) ................................................................................. 3

*Hernandez v. Lopez*,
　　180 Cal. App. 4th 932 (2009) ............................................................................................... 15

*Kadrey v. Meta Platforms, Inc.*,
　　No. 23-cv-03417, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ........................................... 3

*Kelly v. Arriba Soft Corp.*,
　　77 F. Supp. 2d 1116 (C.D. Cal. 1999) .................................................................................... 5

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
　　No. CV 20-1931, 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ........................................ 7, 8

*Moore v. Apple Inc.*,
　　73 F. Supp. 3d 1191 (N.D. Cal. 2014) .................................................................................. 13

*MSC.Software Corp. v. Heroux-Devtek Inc.*,
　　No. 19-cv-01987, 2021 WL 9696752 (C.D. Cal. Sept. 16, 2021) ......................................... 15

*Nat. Res. Def. Council v. U.S. Env't Prot. Agency*,
　　857 F.3d 1030 (9th Cir. 2017) ................................................................................................. 6

*Oracle Int'l Corp. v. Rimini St., Inc.*,
　　No. 19-cv-01987, 2023 WL 4706127 (D. Nev. July 24, 2023) ............................................... 9

*Rich v. Shrader*,
　　No. 09-cv-0652, 2010 WL 3717373 (S.D. Cal. Sept. 17, 2010) ............................................ 14

*Schiffer Publ'g., Ltd. v. Chron. Books, LLC*,
　　No. CIV.A. 03-4962, 2004 WL 2583817 (E.D. Pa. Nov. 12, 2004) ........................................ 5

*Software Pricing Partners, LLC v. Geisman*,
　　No. 19-cv-00195, 2022 WL 3971292 (W.D.N.C. Aug. 31, 2022) ........................................... 9

*Splunk Inc. v. Cribl, Inc.*,
　　662 F. Supp. 3d 1029 (N.D. Cal. 2023) ............................................................................... 3, 9

*Stevens v. Corelogic, Inc.*,
　　899 F.3d 666 (9th Cir. 2018) ............................................................................................ 11, 12

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*,
　　524 F. Supp. 2d 1184 (C.D. Cal. 2007) .................................................................................. 7

*Tremblay v. OpenAI, Inc.*,
  Nos. 23-cv-03223, 23-cv-03416, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ................................................................................................................... 7, 11, 12, 13

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*,
  No. 20-cv-2541-K, 2023 WL 8721435 (N.D. Tex. Dec. 17, 2023) .......................................... 9

**Statutes**

Copyright Act, 17 U.S.C. §§ 101, *et seq.*

  § 1202(b) ............................................................................................................... *passim*

  § 1202(c) ............................................................................................................... *passim*

**Other Authorities**

55 Cal. Jur. 3d Restitution § 2 ................................................................................................ 13

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 12

Restatement (Third) of Restitution and Unjust Enrichment § 39 ............................... 13, 14, 15

S. Rep. No. 105-190 (1998) ................................................................................................. 2, 7

Webster's Third New International Dictionary 504 (1986) ..................................................... 6

**INTRODUCTION**

This is Plaintiffs' third attempt to state a claim under § 1202 of the DMCA, and with each iteration it has become increasingly clear why they will never be able to do so. A viable § 1202(b) claim must show removal of copyright management information "conveyed in connection with copies" of a "work." 17 U.S.C. § 1202(c). No matter how hard Plaintiffs try, such a claim will never apply to an AI code-completion tool that does not yield *copies of a work*, but generates short snippets of code that occasionally look similar to code in public repositories. Every attempt Plaintiffs have made to plead around this reality has exposed a new problem with their DMCA claim. After this third attempt, the Court should dismiss that claim with prejudice.

Plaintiffs' Opposition to Defendants' latest motion does not identify a set of allegations in the Second Amended Complaint ("SAC") that address the legal defects of Count I. Instead, Plaintiffs attempt to triangulate through prior rulings, asking this Court to reverse its previous legal findings, all the while ignoring the problems their various workarounds have exposed. By way of review: the Court held that Plaintiffs' allegations in its original Complaint failed to establish standing to seek damages. To fix that problem, Plaintiffs' First Amended Complaint offered "examples" of their code being output by GitHub Copilot. These "examples" of outputs revealed a key reality about Copilot's functioning: that Copilot generates its output from scratch each time and therefore does not make identical copies of code contained in Plaintiffs' repositories.

The current SAC still does not allege facts to show a likelihood that Copilot will somehow emit an identical copy of a copyrightable work. It adds only thin generalities about the mere possibility of a *short snippet* of code matching *someone's* work. Plaintiffs again made their problems worse. Count I of the SAC, their final attempt to state a DMCA claim, reveals once and for all that Plaintiffs cannot identify a *copy of any of their copyrighted works* from which CMI has been removed or is likely to be removed through operation of Copilot. That defect is fundamental, as were the ones before that properly led this Court to dismiss Plaintiffs' claims.

A straightforward application of § 1202(b) to Count I of the SAC thus forecloses that claim. Plaintiffs fail to identify any of their allegedly copyrighted works, or any copy of those

works from which CMI has been removed.  *Infra* § I.A.  Plaintiffs' new allegations do not make it any more plausible that Copilot would ever output a full, identical copy.  *Infra* § I.B.  And Plaintiffs allege no basis for inferring that Copilot's non-inclusion of CMI is likely to facilitate infringement of any of Plaintiffs' (unidentified, never-output) works.  *Infra* § I.C.

The Court should also dismiss Plaintiffs' conclusory prayers for unjust enrichment and punitive damages.  Plaintiffs properly abandon their flawed request for punitive damages on a breach of contract claim by failing to defend it.  As to their request for unjust enrichment monetary relief, Plaintiffs rely on inapposite authorities and misstate California law.  These requests for monetary relief should also be dismissed with prejudice.  *Infra* § II.

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A DMCA CLAIM.

#### A. Plaintiffs Fail To Identify Any Copyrighted Work From Which CMI Has Been Or Is Likely To Be Removed.

Defendants' Motion identified a basic problem with Count I of the SAC:  Plaintiffs have not identified a copyrighted work which was either (a) copied and stripped of CMI, § 1202(b)(1), or (b) copied and distributed after removal of CMI, § 1202(b)(3).  Mot. 13.  That is a crucial failing for a cause of action based on information "conveyed in connection *with copies* … of a *work*."  17 U.S.C. § 1202(c) (emphasis added).  The very point of CMI, Congress understood, is to potentially "assist in tracking and monitoring uses of *copyrighted works*," S. Rep. No. 105-190 (1998) at 16 (emphasis added), and the point of protecting its integrity is to thwart pirated copies.  The text and aims of § 1202 thus demand, at a minimum, that a plaintiff sufficiently identify the copyrighted work at issue—only then would it be possible to plausibly allege *removal* of CMI from a copy of that work, and to establish a likelihood of future infringement as a result of such removal.

Plaintiffs argue that the Complaint alleges "a copyright interest in … licensed code"—the works in their repositories—and "identif[ies] specific works … that Copilot copied and emitted"—seemingly a reference to Copilot's code suggestions.  GH/MSFT Opp. 14.  Plaintiffs then confusingly assert that the "Licensed Materials" are "the code from which CMI was

2

GitHub and Microsoft's Reply
ISO MTD Second Am. Compl.
No. 4:22-cv-6823-JST

1  removed," yet simultaneously say "that the CMI [was] removed from Copilot *output*," which are
2  ostensibly the "specific works" they reference. *Id*. (emphasis added).

3        This misdirection does not work. Plaintiffs do not identify any alleged copyrighted work
4  in their repositories at all, except by way of the handful of examples of Copilot *output* they claim
5  are similar to code in their repositories. GH/MSFT Opp. 14 (citing SAC ¶¶ 109-40). These are
6  Doe 2's 21-line list of ▮▮▮▮▮ without "any semantically significant order" and with different
7  names, SAC ¶ 113; Doe 1's 18-line "modified" snippet of code "▮▮▮▮▮
8  ▮▮▮▮▮," SAC ¶ 118, and Doe 5's 6-line snippets of code "▮▮▮▮▮
9  ▮▮▮▮▮," SAC ¶ 126. As the Motion made clear, the SAC fails to show that this is
10 copyrighted code. Mot. 12. Plaintiffs do not dispute this, nor do they contest that they have
11 failed to identify *any* code from Does 3 and 4. *Id.*

12       Plaintiffs also cannot overcome the extensive authority rejecting § 1202 claims in similar
13 circumstances. Plaintiffs do not dispute that *Free Speech Systems, LLC v. Menzel* rejected § 1202
14 claims for failing to allege "any facts to identify *which* photographs had CMI removed," 390 F.
15 Supp. 3d 1162, 1175 (N.D. Cal. 2019) (emphasis added), and that *Kadrey v. Meta Platforms, Inc.*
16 applied the same rule in the context of the sort of large language model at issue in this case, No.
17 23-cv-03417, 2023 WL 8039640, at *2 (N.D. Cal. Nov. 20, 2023) (complaint did not adequately
18 allege "facts to support the allegation that [the model] ever distributed the plaintiffs' books").
19 Plaintiffs offer no basis upon which to think these cases were wrongly decided.

20       Plaintiffs invoke *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029 (N.D. Cal. 2023), but
21 that case is of no help at all—if anything, it demonstrates how far the SAC falls from the mark.
22 *See* GH/MSFT Opp. 14. In *Splunk*, the plaintiff identified a work—"Splunk's copyrighted S2S
23 version 3 code." 662 F. Supp. 3d at 1052. S2S was a "Splunk-to-Splunk protocol which Splunk
24 uses to send data to, or receive data from, Splunk Enterprise and other Splunk Software." *Id.* at
25 1035. The argument by the defendant in that case was that plaintiff had failed to adequately
26 specify *the CMI that was removed*, not the underlying work from which it was removed. *Id.* at
27 1053-54. Plaintiffs here identify no coherent description of any works of the type that Splunk
28 identified in that case. Rather, the SAC simply alleges that Plaintiffs created "repositories" of

3

GitHub and Microsoft's Reply
ISO MTD Second Am. Compl.
No. 4:22-cv-6823-JST

"Licensed Material." SAC ¶¶ 4, 19-23. These allegations tell us nothing about the identity or nature of the work. Nor does the SAC provide any allegation showing that the snippets they managed to generate with lengthy prompts comprise any copyrightable work, a failure requiring dismissal. *See* Mot. 11-13.

### B. The Court's Previous Ruling That A § 1202(b) Copy Of A Work Means A Complete And Identical Version Is Correct.

The Court has already correctly ruled, based on extensive authority, that a § 1202(b) claim requires that a copy be identical. ECF No. 189 at 15. Plaintiffs nevertheless ask the Court to revisit that holding and instead hold that § 1202(b) "does not require that the output work be original or identical to obtain relief." GH/MSFT Opp. 7-8. On Plaintiffs' reading of § 1202, if someone opened an anthology of poetry and typed up a modified version of a single "stanza of a poem," *id.* at 15, without including the anthology's copyright page, a § 1202(b) claim would lie. Plaintiffs' reading effectively concedes that they are attempting to turn every garden-variety claim of copyright infringement into a DMCA claim, only without the usual limitations and defenses applicable under copyright law. Congress intended no such thing.

#### 1. Snippets cannot support a § 1202 claim.

Plaintiffs cannot maintain a claim based only on short generated code suggestions that may be, at best, similar to small excerpts of their works. Mot. 12-13. Section 1202 defines CMI based on "copies of a work"; to state a claim, CMI must be removed from the copies with which it was connected. That is why courts have repeatedly held that excerpting, framing, or replicating "aspects" of a copy of a work cannot support a claim for removal of CMI from a copy of a work. *See* Mot. 13 (collecting cases).

Plaintiffs do not argue that they have or could plead more than a snippet-sized generated output. Instead, they ask the Court to ignore the text and underlying purposes of § 1202 by urging that even a *portion* of a copyrighted work that lacks CMI connected with the work as a whole will support a § 1202 claim—the argument is that because copying of a portion may be sufficient to support a copyright infringement claim, it has to be sufficient for a § 1202 claim. GH/MSFT Opp. 15. The premise is flawed. A CMI claim is not about *reproducing* a portion of

copyrighted content from *within* a work; it is about *removing* "information conveyed *in connection with copies* … of a work." 17 U.S.C. § 1202(c) (emphasis added).

Courts have repeatedly adhered to this understanding of the statute: "[T]o be actionable under § 1202(b), a defendant must remove copyright management information from the 'body' of, or area around, plaintiff's *work itself*." *Schiffer Publ'g., Ltd. v. Chron. Books, LLC*, No. CIV.A. 03-4962, 2004 WL 2583817, at *14 (E.D. Pa. Nov. 12, 2004) (emphasis added). In *Schiffer*, for example, the district court addressed a CMI removal claim under § 1202(b) based on plaintiffs' theory that defendants included certain photographs from plaintiffs' book without CMI. *Id.* at *1. But the court noted that "[t]he *individual photographs*, which are the subjects of this action, did not contain any copyright management information whatsoever, either on or near the images themselves." *Id.* at *14 (emphasis added). Instead, the only CMI that plaintiffs included "were notices of copyright that appeared on the inside covers of [plaintiffs'] *books*." *Id.* (emphasis added). Copying of the excerpted photos without reproducing CMI found elsewhere therefore could not support a claim. *Id.* (citing *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999)).

Plaintiffs' efforts to distinguish the various other cases Defendants cited are unavailing—by and large they just ignore the courts' reasoning. GH/MSFT Opp. 15. For instance, Plaintiffs elide the *Falkner* court's conclusion that "there can be no knowledge of any removal or alteration *if there is no underlying removal or alteration*," and found that there was no CMI removal or alteration where defendants "merely … fram[ed] the scene" by taking a photograph of a portion of a mural wall, rather than "defacing or altering" the CMI. *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 938-39 (C.D. Cal. 2018) (emphasis added); *see* Mot. 13. Plaintiffs likewise skirt cases rejecting claims based on copying "aspects," *Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17-cv-7432, 2019 WL 527535, at *5 (N.D. Ill. Feb. 11, 2019); potentially "redrawing … plans" without including CMI, *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014); incorporating "thumbnails," *Kelly*, 77 F. Supp. 2d at 1122; or "inclu[ding] … various practice questions" lifted from textbooks, *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1356 (N.D. Fla. 2010). But these authorities

unavoidably support the rule that a Plaintiff must identify a complete copy of a work from which CMI is removed in order to state a claim.

### 2. Section 1202 requires identicality for a CMI stripping claim.

Next, Plaintiffs take aim at the identicality requirement. But their arguments based on both statutory text and case law fail.

***The statutory text requires removal from an identical copy.*** Plaintiffs' textual argument observes that § 1202(b) does not use the words "identicality" or "identical copy." GH/MSFT Opp. 7-8. From this lack, they argue that "there is no need for a copy to be identical—there only needs to be copying." *Id.* at 8. But Plaintiffs' interpretation cannot be squared with the statutory text "in light of the particular statutory language at issue, as well as the language and design of the statute as a whole," *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 857 F.3d 1030, 1036 (9th Cir. 2017) (internal quotation marks omitted). Section 1202 most certainly does not prohibit mere "copying" of anything in any form, enforceable by anyone. It safeguards CMI, which is expressly defined as "information conveyed in connection with *copies* … of a *work*." 17 U.S.C. § 1202(c) (emphasis added). It then creates liability for the affirmative acts of "remov[ing]" or "alter[ing]" that CMI—that is, removing or altering the "information conveyed in connection with" those "copies … of a work." *Id*. The subject "copies" of a work, under § 1202, are the copies to which the CMI is connected; so to constitute removal of CMI from a work, the CMI must be removed from the "copies" with which the CMI was conveyed. It makes no sense to speak of *removing* CMI from a copy of a work that is different than the work with which the CMI was conveyed. One cannot "remove" something where it never existed in the first place.

Plaintiffs also ignore that the plain meaning of the word "copy" is an "imitation," "transcript[ion]," "reproduction," or otherwise the product of "duplicat[ion]." Webster's Third New International Dictionary 504 (1986). Copy implies sameness, not difference. If Congress had intended that § 1202 cover claims involving altered versions, it could have added words to encompass "alterations," "abridgments," "adaptations," "derivatives," or any of a number of other words previously used by Congress in the Copyright Act to indicate something other than a copy. That Congress did not do so indicates an intent that the claim address only identical rather than

modified versions of a work.

Plaintiffs are thus incorrect that requiring sameness in the material from which the CMI was stripped creates "disharmon[y]" with other provisions of the Copyright Act by requiring more for a CMI removal claim than for a copyright infringement claim.  GH/MSFT Opp. 11.  There is no disharmony from imposing a narrower standard under § 1202(b) than an ordinary infringement claim.  Rather, it is Plaintiffs' reading that would disrupt Congress's statutory design, because it would permit § 1202 to swallow the rest of the Copyright Act whole.  As noted, the purpose of § 1202 is to "assist in tracking and monitoring uses of copyrighted works."  S. Rep. No. 105-190 (1998) at 16; *see* Mot. 13.  Section 1202 was explicitly adopted to implement WIPO treaties addressing risks associated with the "rapid dissemination of perfect copies."  *See Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184, 1198 (C.D. Cal. 2007) (quoting House Committee Report).  It is an anti-piracy statute, enacted because "copyright owners will hesitate to make their works readily available on the Internet without reasonable assurance that they will be protected against massive piracy." *Id.* at 1199 (quoting Senate Report).

And this is where Plaintiffs' square peg and a round hole become fully visible: GitHub Copilot generates short snippets of code based on specific context provided by the user.  Even if those snippets may (rarely) be similar to other code snippets, this is a far cry from the multi-billion dollar piratical copy-generating engine that Plaintiffs describe.  As one recent court put it in the very context of AI large language models, "[w]hile it may be unlawful to recreate another's work (e.g., under the Copyright Act), this conduct does not necessarily implicate the DMCA," which applies only when a defendant creates not merely "*substantially similar*" but "*identical copies of Plaintiff's works and then remove[s] the engraved CMI*."  *Tremblay v. OpenAI, Inc.*, No. 23-cv-03223, 23-cv-03416, 2024 WL 557720, at *5 (N.D. Cal. Feb. 12, 2024) (quoting *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020)).

**The great weight of authority supports an identical copy requirement.**  Plaintiffs fare no better in answering the many cases that have recognized the identical copy requirement, or in

1    overcoming that authority with the few cases that have uncritically rejected such a requirement.
2    As this Court previously recognized, the identicality requirement is deeply rooted in the caselaw.
3    *Kirk Kara*, for instance (cited at ECF 189 at 15), directly held that "even where the underlying
4    works are similar, … no DMCA violation exists where the works are not identical."  2020 WL
5    5991503, at *6.  Plaintiffs complain that this decision did not "examine[] the standard."
6    GH/MSFT Opp. 9.  But as Plaintiffs concede, *Kirk Kara* relied on other authorities like *Fischer v.*
7    *Forrest*, which rejected a claim based on "four discrete phrases among the many" taken from a
8    brochure and website, as well as an advertisement that "drew upon various materials" belonging
9    to the plaintiff.  286 F. Supp. 3d 590, 608-10 (S.D.N.Y. 2018).  That result, *Fischer* reasoned,
10   "accords with the DMCA text that requires CMI to be 'conveyed in connection with copies … of
11   a work,'" *id.* at 609 (quoting 17 U.S.C. § 1202(c))—the same textual basis discussed above.  And
12   *Fischer* also noted still more cases, like *Faulkner Press*, 756 F. Supp. 2d at 1359, which rejected
13   a claim where "information … was allegedly copied into a different form."

14         Plaintiffs next turn to *Frost-Tsuji* (cited at ECF 189 at 15), claiming that it did not
15   "mention[] or employ[] an identical copies requirement."  GH/MSFT Opp. 9.  But it did.  The
16   Court held that because the copy in question was "not identical," the Defendant could not be
17   liable for "remov[ing] or alter[ing]" the CMI.  *Frost-Tsuji Architects v. Highway Inn, Inc.*, No.
18   CIV. 13-00496 SOM, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674
19   (9th Cir. 2017).  And Plaintiffs do not even address *Advanta-STAR* (cited at ECF 189 at 15),
20   which also held that "no DMCA violation exists where the works are not identical" and cited
21   other cases so holding as "persuasive."  *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search*
22   *Optics, LLC*, 672 F. Supp. 3d 1035, 1057 (S.D. Cal. 2023) (quotation marks omitted).

23         Plaintiffs rely principally on *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d
24   411 (S.D. Tex. 2023), an out-of-circuit case they never previously cited even though it was
25   available at the time of previous briefing.  *See* ECF 228 at 6.  Concededly, the court in that case
26   rejected the argument that § 1202 requires an identical copy—where defendant made a "copy of
27   [the plaintiff's] training materials on the same subject" and simply "chang[ed] the color of a
28   graph here, or the size of a chart there."  667 F. Supp. 3d at 418-19.  The decision involved

allegations of an unquestionable effort to create a copy of an entire work, with superficial modifications made only as "a thin veil over the facially obvious copying." *Id.* at 418. Insofar as those allegations gave rise to the inference that an identical copy was made, and then the CMI was stripped in the process of making superficial content alterations to hide the origin, the entire discussion of an identical copy requirement was unnecessary anyway. Making an identical copy then stripping the CMI while modifying it is the paradigmatic stripping situation covered by the statute. There was no need for the *ADR* court to reach the identicality issue. Nonetheless, if it wasn't *dicta*, then the *ADR* court was wrong—textually, as a matter of legislative history, and as a matter of legislative purpose, all as outlined above.

Moreover, the virtual identicality in *ADR* is wholly different from Plaintiffs' allegations here, which involve short snippets that are *generated* in response to user input, and represent at most small subsets of protected works. The same goes for *Friedman v. Live Nation Merch., Inc.*, another newly-cited case, GH/MSFT Opp. 10, which permitted a § 1202(b) claim where "the *only* material difference [between the copy and the original] was that the CMI was missing"—exactly what is not true here. 833 F.3d 1180, 1188 (9th Cir. 2016) (emphasis original).

In other cases Plaintiffs cite, the identicality issue was simply not genuinely at issue. In *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.* (cited at GH/MSFT Opp. 10), the defendant did not raise identicality; the court simply rejected the defendant's argument that a DMCA claim requires proof of copyright infringement. No. 20-cv-2541-K, 2023 WL 8721435, at *16 (N.D. Tex. Dec. 17, 2023). *Software Pricing Partners, LLC v. Geisman* (cited at GH/MSFT Opp. 10) was a default judgment. No issue regarding identicality was raised. *See* No. 19-cv-00195, 2022 WL 3971292, at *1-2 (W.D.N.C. Aug. 31, 2022). The same is true of *Splunk, Inc. v. Cribl, Inc.*, 662 F. Supp. 3d at 1053. That leaves *Oracle Int'l Corp. v. Rimini St., Inc.* (cited at GH/MSFT Opp. 11), another case involving deliberate copying of specific identified code, in which the requirement of an identical copy was improperly raised and the court therefore did not evaluate the many authorities supporting the majority rule. *See* No. 19-cv-01987, 2023 WL 4706127, at *82 (D. Nev. July 24, 2023).

As this Court previously appreciated, the weight of authority supports the requirement,

grounded in § 1202(b)'s text, legislative history, and legislative purpose, that CMI be removed from a complete and identical copy. Plaintiffs do not show otherwise.

### 3. The SAC does not allege identicality.

Finally, Plaintiffs fail to show that they have now adequately pleaded identical copies. GH/MSFT Opp. 7-14. To begin with, Plaintiffs abandon two sets of allegations the Motion attacked as lending no support on the identical copies issue. The first is the repeated refrain that "about 1% of the time" output "may contain code snippets longer than ~150 characters that matches code from the training data." SAC ¶¶ 102-03, 207. The Motion explained why this allegation *does not* suggest that there is a 1% chance that *Plaintiffs'* code would be a match, and that "[n]o allegations in the [Second Amended] Complaint support any inference that *Plaintiffs'* code has anything close to even a 1% chance of being output as an identical snippet." Mot. 16-17. Plaintiffs do not respond. Similarly, the Motion also established that Plaintiffs' new citation to an academic study not only fails to move the needle in Plaintiffs' favor on the likelihood of an identical output, but in fact demonstrates that Copilot is highly unlikely to emit identical matches with anything in its training data, much less Plaintiffs' code. Mot. 16. Again, Plaintiffs fail to respond, conceding the point.

Instead, Plaintiffs assert that the SAC alleges identical copies because the differences between the alleged outputs and Plaintiffs' code are "semantically insignificant" or "immaterial." GH/MSFT Opp. 12. But again, the handful of examples Plaintiffs give of supposedly identical-*enough* copies are nevertheless the same short snippets of code Copilot generated based on its predictions. *See id.* at 11. Unlike cases like *ADR*, these outputs are not *copies* of any works of code at all; as the Motion explained (at 14), and Plaintiffs do not dispute, these short "passages … represent[] suggested completions for coding processes initiated by a user." That Plaintiffs believe the differences between generated suggestions and the code in their repositories may be "semantically insignificant" is irrelevant to whether they are identical copies from which CMI has been removed. The reality is that Copilot outputs, per Plaintiffs' own allegations and illustrations of how Copilot functions, will "virtually never constitute something that could be described as a copy of a work, let alone an *identical* copy." Mot. 14. And this basic reality is why Plaintiffs,

despite repeated attempts, have failed to adequately plead a § 1202 claim.

Plaintiffs' final argument is to fall back on their allegations involving the duplication-detection tool, which detects and allows users to block outputs longer than 150 characters matching code in public repositories. GH/MSFT Opp. 13-14; *see* Mot. 15. To begin with, this tool simply enables users to block matching short snippets and therefore in no way suggests that Copilot would ever output suggestions matching entire works. *See* Mot. 15; *supra* 4-6. And as explained in the Motion, even as to those short snippets, the tool makes it *less* likely that Copilot would ever generate an identical copy. Mot. 1-2, 10, 15. Plaintiffs claim that the mere existence of the duplicate detection tool "by definition establishes Copilot's *ability* to reproduce verbatim copies of code." GH/MSFT Opp. 13 (original emphasis omitted and emphasis added). But Plaintiffs do not explain how the tool makes it plausible that Copilot will in fact do so through its normal operation or how any such verbatim outputs are likely to be anything beyond short and common boilerplate functions, as opposed to something containing sparks of creativity. Nor do Plaintiffs dispute that their theory relies on multiple conjectural assumptions: that a user (1) "might elect not to use the blocking feature," (2) might "review[] the references" the tool identifies, (3) might notice an identical match of around 150 characters; and (4) might decide to use it without attribution. Mot. 15 (quoting SAC ¶ 150). In short, Plaintiffs' reliance on the duplication-detection feature only weakens the speculation that Copilot will ever output the kind of copies that could give rise to liability under the DMCA.

### C. Plaintiffs Fail To Allege The Required Likelihood Of Infringement.

Recent precedent also makes clear that a third prerequisite for Plaintiffs' § 1202(b) claim is missing from the SAC: Plaintiffs cannot show that the purported removal or alteration of CMI was part of a scheme of purposeful infringement. Mot. 17-18.

Plaintiffs do not dispute that *Stevens v. Corelogic, Inc.* holds that a § 1202 claim requires a showing "that future infringement is *likely* … to occur as a result of the removal or alteration of CMI." 899 F.3d 666, 675 (9th Cir. 2018) (emphasis added). And they acknowledge that under the recent *Tremblay* decision, they "must plausibly allege that [the alleged] tampering with CMI was done knowingly to enable infringement." GH/MSFT Opp. 16. Yet Plaintiffs cannot explain

how Copilot's non-inclusion of CMI in its code suggestion is likely to result in infringement. Mot. 17-18. Nor do they respond to GitHub and Microsoft's explanation of why such infringement is exceedingly *unlikely*. The chances of any match between a Copilot output and a short snippet of Plaintiffs' code are small to begin with, but the numerous hurdles that Plaintiffs need to clear to establish copyright infringement—fair use, merger, scènes à faire, license authorization, and more, not to mention the copyrightability of the small snippets in question in the first place—bring those chances close to zero. Mot. 18.

Plaintiffs' only response relates to the duplication-detection tool. GH/MSFT Opp. 16. Plaintiffs argue that the effects of the tool are "unsuitable for resolution on the pleadings." *Id.* They do not explain how the development of a tool that the SAC acknowledges operates to *prevent* outputting matching snippets somehow could ever make it plausible that Copilot is designed to facilitate purposeful infringement. *See* Mot. 18. The existence of the tool does nothing more than confirm the potential for duplicate snippets (already alleged elsewhere, and insufficient for all of the reasons discussed above) and adds for users the ability to block them— on its face quelling any notion that such snippets are intended as a piratical copy-generating engine. Plaintiffs do not explain how their plea for more discovery about this feature (which they have already had more than a year of prior to filing the SAC) could possibly alter this calculus. The question for the Court now is whether the SAC's allegations make it plausible that Copilot's alleged CMI tampering is "likely" to provoke purposeful infringement in the future. *Stevens*, 889 F.3d at 675. Under Rule 12(b)(6), the answer is a simple no. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

Plaintiffs' argument that *Tremblay* somehow helps them (GH/MSFT Opp. 16-17) is wholly off base. If anything, *Tremblay* underscores the deficiencies in the SAC. In *Tremblay*, the Court determined that "[e]ven if Plaintiffs provided facts showing Defendants' knowing removal of CMI," the plaintiffs failed to show how doing so "gave Defendants reasonable grounds to know that ChatGPT's output would induce, enable, facilitate, or conceal infringement." 2024 WL 557720, at *4. The same is true here. Even assuming Copilot alters or removes CMI from identical copies of Plaintiffs' works (which Plaintiffs have not come close to

plausibly alleging after three tries, see supra 10-11), the Complaint does not raise a plausible inference that such conduct is likely to facilitate copyright infringement. Plaintiffs claim that they have supplied the allegations the Court found missing in *Tremblay*, because they alleged that GitHub and Microsoft supposedly "designed [Copilot] to remove CMI." GH/MSFT Opp. 17. But what is missing is the link between allegedly removing the CMI and the likelihood of infringement. Without such a plausible link, the § 1202(b) claim should be dismissed.

## II. PLAINTIFFS' REQUESTS FOR UNJUST ENRICHMENT AND PUNITIVE DAMAGES SHOULD BE DISMISSED.

As an initial matter, Plaintiffs fail to address Defendants' motion to dismiss the punitive damages request. Mot. 19; see *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 122 (N.D. Cal. 2020) ("[A] failure in an opposition to address arguments raised in a motion to dismiss constitutes abandonment of the claim, which results in dismissal with prejudice.") (citing *Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014)). The punitive damages request should be dismissed with prejudice.

Regarding unjust enrichment, Plaintiffs argue that "Defendants mislead the Court when they claim 'a plaintiff must plead "mistake, fraud, coercion, or request,"' quoting the Ninth Circuit's decision in *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) and 55 Cal. Jur. 3d Restitution § 2." GH/MSFT Opp. 18-19 (quoting Mot. 18). Far from it: *Astiana* provides the correct statement of California law, Plaintiffs have not even attempted to meet *Astiana*'s requirements, and the basis Plaintiffs rely upon to justify their request for unjust enrichment is insupportable under California law.

Plaintiffs do not contest that they failed to plead mistake, fraud, coercion, or request. See GH/MSFT Opp. 18-19. Instead, Plaintiffs rely heavily on the Restatement (Third) of Restitution and Unjust Enrichment § 39, to argue that "where 'a *deliberate* breach of contract results in profit to the defaulting promisor and the available damage remedy affords inadequate protection to the promisee's contractual entitlement, the promisee has a claim to restitution of the profit realized by the promisor as a result of the breach.'" GH/MSFT Opp. 18 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 39) (emphasis added).

Neither the California Supreme Court nor any California intermediate appellate court has ever adopted § 39 as properly reflecting California law. It is obvious why not: § 39 is flatly inconsistent with at least two long-established principles of California law preventing the tortification of breach of contract claims.

*First*, § 39's discussion of restitutionary relief for "exceptional cases" involving "intentional and profitable interference with another person's legally protected interests," is an obvious attempt to seek tort remedies for breach of contract claims in contravention of the California Supreme Court's edict in *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988). In *Foley*, the California Supreme Court gave extensive treatment to this controlling question. *See id.* at 682-700. It explained that "[t]he distinction between tort and contract is well grounded in common law, and divergent objectives underlie the remedies created in the two areas." *Id.* at 683. The California Supreme Court went on to squarely reject the plaintiff's invitation to "exten[d] … tort remedies … for a duty whose breach previously has been compensable by contractual remedies." *Id.* Yet the reporters of § 39 explicitly acknowledge their desire to throw out the majority rule of American law: "the rationale of disgorgement liability in restitution, in a contractual context or any other, *is inherently at odds with the idea of efficient breach in its usual connotation*." Rest.3d Restitution § 39 *comment h* (emphasis added); *see id.* Reporters Note *a* ("analogy to an … interference with other legally protected interests"). Plaintiffs' effort to rely upon § 39 is a thinly veiled attempt to upend longstanding California precedent adopting the theory of efficient breach and thereby foreclosing tort remedies for breach of contract claims.

*Second*, Plaintiffs' reliance on § 39 is inconsistent with the well-settled principle of California law that motive is irrelevant to a breach of contract claim. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 516 (1994) (motives for breach are "immaterial"); *Rich v. Shrader*, No. 09-cv-0652, 2010 WL 3717373, at *4 (S.D. Cal. Sept. 17, 2010) ("Motive is not an element of a breach of contract action."); *Davis v. Leal*, 43 F. Supp. 2d 1102, 1112 (E.D. Cal. 1999) ("For the contractual remedies, [defendant]'s motive or other state of mind in breaching the agreement is not pertinent to the discussion"). Section 39's central tenet that disgorgement can be imposed in the exceptional cases of "deliberate" breach runs directly

afoul of this line of cases as well. Taken together, *Foley* and *Applied Equipment* soundly reject any notion that the California Supreme Court would adopt § 39.

The cases cited by Plaintiffs in support of a new principle of California contract law do not address these longstanding doctrines. *MSC.Software Corp. v. Heroux-Devtek Inc.*, for instance (cited at GH/MSFT Opp. 18), fails to address much less reconcile its holding with *Foley*. No. 19-cv-01987, 2021 WL 9696752, at *2 (C.D. Cal. Sept. 16, 2021). The remainder of Plaintiffs' cases (at GH/MSFT Opp. 17-18) rely on a quasi-contract theory Plaintiffs have not pled. *See Hernandez v. Lopez*, 180 Cal. App. 4th 932, 939 (2009) (citing *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 195-98 (2000), which dealt with an illegal contract); *Alkayali v. Hoed*, No. 18-cv-777, 2018 WL 3425980, at *6 (S.D. Cal. July 16, 2018) (citing authorities addressing quasi-contract theory)). Indeed, Plaintiffs' prior attempt to plead an unjust enrichment quasi-contract claim ran headlong into copyright preemption. Plaintiffs' request for unjust enrichment monetary relief should be dismissed with prejudice.

## CONCLUSION

The Court should grant the motion to dismiss Count I and the remedies of unjust enrichment and punitive damages with prejudice.

Dated: April 10, 2024

Orrick, Herrington & Sutcliffe LLP

By:     */s/ Annette L. Hurst*
ANNETTE L. HURST
Attorneys for Defendants
GitHub, Inc. and Microsoft Corp.