1  JOSEPH C. GRATZ (CA SBN 240676)
   JGratz@mofo.com
2  MORRISON & FOERSTER LLP
   425 Market Street,
3  San Francisco, California  94105-2482
   Telephone:     (415) 268-7000
4  Facsimile:      (415) 268-7522
   [CAPTION CONTINUED ON NEXT PAGE]
5
   Attorneys for Defendants OPENAI, INC., OPENAI, L.P., OPENAI
6  OPCO, L.L.C., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I,
   L.L.C., OPENAI STARTUP FUND I, L.P., OPENAI STARTUP
7  FUND MANAGEMENT, LLC, OPENAI, L.L.C., OPENAI GLOBAL,
   LLC, OAI CORPORATION, OPENAI HOLDINGS, LLC, OPENAI
8  HOLDCO, LLC, OPENAI INVESTMENT LLC, OPENAI STARTUP
   FUND SPV I, L.P., and OPENAI STARTUP FUND SPV GP I, L.L.C.
9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

13 J. DOE 1, et al.,                          Case No. 4:22-cv-06823-JST
                                              Case No. 4:22-cv-07074-JST
              Plaintiffs,
14                                            Hon. Jon S. Tigar
        v.
15                                            **CLASS ACTION**
   GITHUB, INC., MICROSOFT
16 CORPORATION, OPENAI, INC., et al.,         **DEFENDANTS OPENAI, INC.,
                                              OPENAI, L.P., OPENAI OPCO, L.L.C.,
17            Defendants.                      OPENAI GP, L.L.C., OPENAI
                                              STARTUP FUND GP I, L.L.C., OPENAI
18                                            STARTUP FUND I, L.P., OPENAI
                                              STARTUP FUND MANAGEMENT,
19                                            LLC, OPENAI, L.L.C., OPENAI
                                              GLOBAL, LLC, OAI CORPORATION,
20                                            OPENAI HOLDINGS, LLC, OPENAI
                                              HOLDCO, LLC, OPENAI
21                                            INVESTMENT LLC, OPENAI
                                              STARTUP FUND SPV I, L.P., AND
22                                            OPENAI STARTUP FUND SPV GP I,
                                              L.L.C.'S REPLY IN SUPPORT OF
23                                            THEIR MOTION TO DISMISS
                                              SECOND AMENDED COMPLAINT**
24
                                              Date:  May 16, 2024
25                                            Time:  2:00 p.m.
                                              Courtroom:  6, 2nd Floor
26

27

28

TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
JOYCE C. LI (CA SBN 323820)
JoyceLi@mofo.com
MELODY ELLEN WONG (CA SBN 341494)
MelodyWong@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California  94105-2482
Telephone:     (415) 268-7000
Facsimile:     (415) 268-7522

ALLYSON R. BENNETT (CA SBN 302090)
ABennett@mofo.com
ROSE S. LEE (CA SBN 294658)
RoseLee@mofo.com
ALEXANDRA M. WARD (CA SBN 318042)
AlexandraWard@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone:    (213) 892-5200
Facsimile:     (213) 892-5454

MAX I. LEVY (CA SBN 346289)
MLevy@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone:     (650) 813-5600
Facsimile:     (650) 494-0792

ERIC K. NIKOLAIDES (*pro hac vice*)
ENikolaides@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Telephone:    (212) 468-8000
Facsimile:     (212) 468-7900

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   PLAINTIFFS' CLAIMS AGAINST OPENAI SHOULD BE DISMISSED ...................... 1

    A.   DMCA Section 1202(b) ..................................................................................... 1

        1.   Plaintiffs Have Not Alleged the "Additional Facts" Necessary to Meet the DMCA's Identicality Requirement ....................................................... 1

            a.   Plaintiffs Admit They Pled No New Facts Alleging the Identical Output of Their Works by Codex or Copilot .................... 1

            b.   Plaintiffs Confirm the Only Two New Facts in the SAC Fail to Allege Identical Copying ...................................................... 2

        2.   The Court Correctly Dismissed Plaintiffs' DMCA Section 1202(b)(1) Claim for Failure to Allege Removal of CMI ................................................. 3

        3.   The Court Correctly Recognized the DMCA's Identicality Requirement ............... 3

            a.   The Identicality Requirement Applies to Code ................................ 3

            b.   Plaintiffs' Newly Cited Case Law Confirms the Court Correctly Applied the Identicality Requirement ................................ 4

                i.   *ADR International* ................................................. 4

                ii.   Pre-DMCA Copyright Cases ................................. 5

            c.   Plaintiffs' Policy Arguments Misunderstand the Relationship between the DMCA and Copyright Law ......................... 6

    B.   Breach of Contract ........................................................................................... 6

        1.   The Court Should Consider OpenAI's Contract Arguments in the Interests of Judicial Economy .................................................................. 7

        2.   Plaintiffs Fail to State a Claim Based on Codex ............................................. 8

         3.   Plaintiffs Fail to State a Claim Based on Copilot ........................................... 9

            a.   Plaintiffs' Theory Based on Copilot Does Not Give Rise to a Breach of Contract Claim Against OpenAI ................................ 9

            b.   Plaintiffs' Theory Based on Copilot Fails on the Merits ............... 10

                i.   The Attribution and Notice Terms Are Conditions and Do Not Give Rise to a Contract Claim ............................ 10

                ii.   *Jacobsen v. Katzer* Is Relevant ............................ 12

                iii.   Plaintiffs' Policy Arguments Are Both Wrong and Irrelevant to the Issue Presented ............................ 13

                iv.   The Publishing Terms Are Subject to the Same Analysis as the Attribution and Notice Terms .................................... 15

III.  CONCLUSION ................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADR Int'l Ltd. v. Inst. For Supply Mgmt. Inc.*,
   667 F. Supp. 3d 411 (S.D. Tex. 2023) ................................................................ 4, 5

*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*,
   No. 22-cv-1186, 2023 WL 3366534 (S.D. Cal. May 9, 2023) ................................ 4

*In re Apple iPhone Antitrust Litig.*,
   846 F.3d 313 (9th Cir. 2017), *aff'd sub nom.*
   *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019) ...................................................... 7, 8

*Artifex Software, Inc. v. Hancom, Inc.*,
   No. 16-cv-06982-JSC, 2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) .................. 15

*Burroughs v. MGM, Inc.*,
   683 F.2d 610 (2d Cir. 1982) .................................................................................... 6

*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) .................................................................................. 11

*Forest v. Equitable Life Assurance Soc'y of U.S.*,
   No. C99-5173 SI, 2001 WL 1338809 (N.D. Cal. June 12, 2001) ............................ 9

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   No. 13-cv-00496, 2015 WL 263556 (D. Haw. Jan. 21, 2015),
   *aff'd*, 700 F. App'x 674 (9th Cir. 2017) .................................................................. 4

*Gautier v. Gen. Tel. Co.*,
   234 Cal. App. 2d 302 (1965) .................................................................................... 9

*Horgan v. Macmillan, Inc.*,
   789 F.2d 157 (2d Cir. 1986) ..................................................................................... 6

*Jacobsen v. Katzer*,
   535 F.3d 1373 (Fed. Cir. 2008) ................................................................. 10, 12, 13

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
   No. 21-cv-00673, 2022 WL 1105751 (W.D. Tex. Apr. 13, 2022) ........................... 5

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
   No. 20-cv-1931-DMG, 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) .................... 4

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .................................................................................. 14

*Lloyd's Underwriters v. Craig & Rush, Inc.*,
  26 Cal. App. 4th 1194 (1994) ............................................................................. 10

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................. 8

*Netbula, LLC v. Storage Tech. Corp.*,
  No. 06-cv-07391, 2008 WL 228036 (N.D. Cal. Jan. 18, 2008) ........................ 11, 14

*Oracle Int'l Corp. v. Rimini St., Inc.*,
  No. 14-cv-01699, 2023 WL 4706127 (D. Nev. July 24, 2023) ............................... 4

*Orosco v. Sun-Diamond Corp.*,
  51 Cal. App. 4th 1659 (1997) ............................................................................. 10

*ProCD, Inc. v. Zeidenberg*,
  86 F.3d 1447 (7th Cir. 1996) .............................................................................. 12

*S. Cal. Edison Co. v. Superior Ct.*,
  37 Cal. App. 4th 839 (1995) ............................................................................... 11

*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) .............................................................................. 6

*Software Freedom Conservancy, inc. v. Vizio, Inc.*,
  No. 21-cv-01943, ECF No. 25 (C.D. Cal. Apr. 29, 2022) ..................................... 15

*Software Freedom Conservancy, inc. v. Vizio, Inc.*,
  No. 21-cv-01943, 2022 WK 1527518 (C.D. Cal. May 13, 2022) ........................... 15

*Splunk Inc. v. Cribl, Inc.*,
  No. 22-cv-07611-WHA, ECF No. 31 (N.D. Cal. Dec. 23, 2022) ............................. 4

*Splunk Inc. v. Cribl, Inc.*,
  No. 22-cv-07611-WHA, ECF No. 35 (N.D. Cal. Jan. 27, 2023) ............................. 4

*Splunk Inc. v. Cribl, Inc.*,
  No. 22-cv-07611-WHA, ECF No. 41 (N.D. Cal. Feb. 17, 2023) ............................. 4

*Splunk Inc. v. Cribl, Inc.*,
  662 F. Supp. 3d 1029 (N.D. Cal. 2023) ................................................................. 4

*Symantec Corp. v. Zscaler, Inc.*,
  No. 17-CV-04426-JST, 2018 WL 1456678 (N.D. Cal. Mar. 23, 2018) ................... 7

*Ticketmaster L.L.C. v. Prestige Ent., Inc.*,
  306 F. Supp. 3d 1164 (C.D. Cal. 2018) ............................................................... 11

*Versata Software, Inc. v. Ameriprise Financial, Inc.*,
  No. A-14-CA-12-SS, 2014 WL 950065 (W.D. Tex. Mar. 11, 2014) ....................... 15

**Statutes**

17 U.S.C. § 1201-1205 (Digital Millennium Copyright Act ("DMCA")) ............................ *passim*

**Other Authorities**

Fed. R. Civ. P.
  1 ................................................................................................................................ 7, 8
  12(b)(6) ................................................................................................................... 7, 14
  12(c) .............................................................................................................................. 8
  12(g)(2) ......................................................................................................................... 7
  12(h)(2) ......................................................................................................................... 7

S. Rep. No. 105-190 (1998) ....................................................................................... 2, 6

1 Witkin, Summary 11th Contracts § 800 (2023) ....................................................... 10

1

## I.      INTRODUCTION

The issues before the Court are narrow and specific to Plaintiffs' claims in the Second Amended Complaint ("SAC"):  (1) whether the SAC cures the failure of the First Amended Complaint ("FAC") to plausibly allege that Codex or Copilot outputs identical copies of Plaintiffs' code; and (2) whether Plaintiffs have pleaded that OpenAI breached an obligation to Plaintiffs by failing to satisfy certain conditions of particular open-source licenses in connection with outputs by Copilot.  Plaintiffs have not done so, and their claims should be dismissed, with prejudice.

## II.     PLAINTIFFS' CLAIMS AGAINST OPENAI SHOULD BE DISMISSED

### A.      DMCA Section 1202(b)

Plaintiffs concede that the SAC contains no new allegations showing that Codex outputted identical copies of their works without CMI.  Instead, Plaintiffs attempt to relitigate the DMCA's identicality requirement.  But Plaintiffs do not address the Court's conclusion that the DMCA applies only if Plaintiffs can allege "additional facts" plausibly showing that Codex outputted identical copies of their works without CMI.  (ECF No. 189 at 16.)  Plaintiffs have therefore failed to cure the "fundamental defect" that caused the Court to dismiss their DMCA claim previously.  (*Id*. at 15.)  The Court should do so again, this time with prejudice.

#### 1.       Plaintiffs Have Not Alleged the "Additional Facts" Necessary to Meet the DMCA's Identicality Requirement

##### a.       Plaintiffs Admit They Pled No New Facts Alleging the Identical Output of Their Works by Codex or Copilot

Plaintiffs' opposition concedes that the SAC pleads no additional facts about identical copying of Doe Plaintiffs' works.  (ECF No. 219 ("Mot.") at 3-4.)  First, it is unrebutted that Does 3 and 4 have not plausibly pled a DMCA claim.  These claims should thus be dismissed.  (*Id.*)

Second, Plaintiffs admit that Copilot has not reproduced identical copies of Does 1 and 2's code.  (ECF No. 235 ("Opp.") at 10.)  Plaintiffs acknowledge that the Copilot output alleged to have copied those works contains "deviations" and "variations," or "differences," from the original code (*id.*), which the Court found falls short of the DMCA's identicality requirement. (ECF No. 189 at 15.)  The Court should thus also dismiss the DMCA claims of Does 1 and 2.

Finally, Plaintiffs' opposition confirms that the SAC fails to allege identical copying of

Doe 5's works.  Plaintiffs merely repeat allegations that the Court already deemed insufficient.  (ECF No. 189 at 15.)  The Court was correct then because even the FAC characterized the copying as non-identical and lacked any showing of identical output of any entire work or that such output is likely.  (ECF 97-3 ¶¶ 113-120 ("Copilot Outputs the Code of Doe 5 in *Modified* Format"), ¶¶ 121-128 ("Copilot Outputs the Code of Doe 5 *Essentially* Verbatim") (emphases added).)  Nothing Plaintiffs argue in their motion warrants a reconsideration of that conclusion.

> **b.    Plaintiffs Confirm the Only Two New Facts in the SAC Fail to Allege Identical Copying**

This Court granted leave to amend "out of an abundance of caution" in the "unlikely" event that Plaintiffs could cure the deficiencies the Court identified by alleging "additional facts." (ECF No. 189 at 16.)  Plaintiffs alleged only two new facts:  (1) the existence of the "Carlini Study" (ECF No. 219-1; SAC (ECF No. 197-3) ¶¶ 104, 209) and (2) the existence of the GitHub code referencing feature (SAC ¶ 145).  Neither shows identical copying of Plaintiffs' code.

First, Plaintiffs fail to rebut OpenAI's argument that the Carlini Study does not support the existence of a "substantial risk" that Defendants will violate Section 1202(b)(3) of the DMCA.  (Mot. at 5.)  Plaintiffs' only mention of the study is an unexplained citation to the FAC. (*See* Opp. at 3 (citing SAC ¶¶ 104-07, without analyzing the study itself).)

Second, Plaintiffs also do not (and cannot) rebut OpenAI's explanation for why the existence of the GitHub code referencing feature fails to support their DMCA claim.  (Opp. at 11-12.)  Plaintiffs' allegations do not suggest a substantial risk that identical copies of Plaintiffs' entire works will be outputted because the feature can only check for code-snippets of up to about 150 characters.  (Mot. at 9-10.)  Such limited, partial copying, even if identical, would not show removal of CMI from an identical copy of a work, and at any rate Plaintiffs do not even allege that *their* code has been detected by that feature.

Plaintiffs' sole argument that the GitHub code referencing feature saves their complaint is the following:  because GitHub's Copilot allegedly has features to prevent the reproduction of identical output, it "by definition establishes Copilot's ability to reproduce verbatim copies of code."  (Opp. at 11.)  But even if true (it is not), the mere *ability* to reproduce verbatim copies of code is insufficient to allege a DMCA violation.  *See* S. Rep. No. 105-190, at 34 (1998)

1   (discussing Section 1202) ("Furthermore, this section imposes liability for specified acts. It does

2   not address the question of liability for persons who manufacture devices or provide services.").

3   A printing press, a photocopier, and the copy-paste function of a computer can all reproduce

4   verbatim copies of code.  That does not make Xerox liable for violating Section 1202.  For

5   Plaintiffs to rely on the code referencing feature to cure the defects of the FAC, they must allege

6   facts that plausibly show that Copilot (despite that feature) or Codex (which they cannot even

7   allege has such a feature) either has actually reproduced verbatim copies of *their* code or is likely

8   to do so.  Because Plaintiffs fail to make this showing, they have failed to cure the FAC's defects.

9   **2.   The Court Correctly Dismissed Plaintiffs' DMCA Section 1202(b)(1) Claim for Failure to Allege Removal of CMI**

10   Plaintiffs try to save their Section 1202(b)(1) claim by retrofitting it to satisfy the

11   identicality requirement.  (Opp. at 4 ("To the extent an identicality requirement can be read into

12   § 1202(b)(1), it should focus on how the copy was made and CMI removed.").)  As Plaintiffs

13   observe, Section 1202(b)(1) "makes the mere removal of CMI from digital copies illegal before

14   distribution of copies." (*Id.*)  To the extent Plaintiffs now focus on the pre-distribution removal

15   of CMI, their claim fails because Plaintiffs do not allege any such removal.[1]  In fact, the SAC

16   admits that no pre-distribution removal occurred.  (SAC ¶¶ 109, 143-44 (alleging Copilot was

17   trained on files from which CMI had not been removed); *see also* ECF No. 95 at 19 ("CMI

18   appeared repeatedly across the data used to train Codex and Copilot").)  Because Plaintiffs do not

19   allege removal of CMI from any pre-distribution copies, it is irrelevant to the Section 1202(b)(1)

20   analysis whether such copies are identical to Plaintiffs' works.  Plaintiffs have only ever alleged

21   removal upon—not before—distribution of the alleged copies via Copilot or Codex output.  (*See*

22   SAC ¶¶ 204-235.)  Their new pre-distribution argument therefore fails.

23   **3.   The Court Correctly Recognized the DMCA's Identicality Requirement**

24   **a.   The Identicality Requirement Applies to Code**

25   Plaintiffs admit that they are foreclosed from relitigating previously decided issues.  (Opp.

26   at 5.)  As a workaround, Plaintiffs seek to cast the identicality requirement's "application to

27   ─────────────

28   [1] To the extent Plaintiffs allege removal of CMI *after* distribution (*e.g.*, when Codex/Copilot outputs code), it fails because the alleged code is not identical to Plaintiffs' works.  (ECF 189 at 15 ("Courts have held that no DMCA violation exists where the works are not identical.").)

1   software code in particular" as an issue "never previously raised or addressed in prior briefing or

2   the Court's Second MTD Order." (*Id.*)  Plaintiffs' efforts fail for at least three reasons.

3       First, Plaintiffs raised this issue in both prior oppositions.  (ECF No. 67 at 17 ("This case

4   is about code published subject to open-source licenses."); *see also id.* at 18 n. 11 (distinguishing

5   Defendants' cases because "none of [them] deal with computer code"); ECF No. 141 at 15

6   ("Critically, this case is about the copying of licensed code.").)  The Court has already considered

7   and rejected their arguments.

8       Second, Plaintiffs' effort to frame the issue as a code-specific application of the

9   identicality requirement fails because the case forming the primary basis for Plaintiffs' argument

10  is about PowerPoint slides, not code.  (Opp. at 5-6 (requesting reconsideration in view of *ADR*

11  *Int'l Ltd. v. Inst. For Supply Mgmt. Inc.*, 667 F. Supp. 3d 411 (S.D. Tex. 2023)); *cf. ADR Int'l Ltd.*

12  at 429 n. 8 ("the issue is whether the DMCA's § 1202 is limited to identical copies and involves

13  PowerPoint slides allegedly distributed over the Internet").)

14      Finally, Plaintiffs' cited cases that ***do*** mention code do not suggest that the identicality

15  requirement should apply differently to code.  *Oracle International Corp. v. Rimini Street, Inc.*

16  only references the identicality requirement's application to "copyright holders" generally.  No.

17  14-cv-01699, 2023 WL 4706127 at *82 (D. Nev. July 24, 2023).  *Splunk Inc. v. Cribl, Inc.* does

18  not discuss the identicality requirement at all (nor was it briefed).  662 F. Supp. 3d 1029 (N.D.

19  Cal. 2023); *id.*, ECF No. 31 at 24-25; *id.*, ECF No. 35 at 25; *id.*, ECF No. 41 at 15.  The Court

20  should decline Plaintiffs' wholly unsupported request to exempt software code from the DMCA's

21  identicality requirement.

22               **b.    Plaintiffs' Newly Cited Case Law Confirms the Court
                         Correctly Applied the Identicality Requirement**

23                    **i.    *ADR International***

24      The Court previously recognized that "no DMCA violation exists where the works are not

25  identical."  (ECF 189 at 15.)  This recognition is in accord with case law across the Ninth Circuit.

26  *See Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, No. 22-cv-1186, 2023 WL

27  3366534, at *12 (S.D. Cal. May 9, 2023); *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. 20-

28  cv-1931-DMG, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020); *Frost-Tsuji Architects v.*

1   *Highway Inn, Inc.*, No. 13-cv-00496, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), *aff'd*, 700

2   F. App'x 674 (9th Cir. 2017).  Seeking to relitigate the issue, Plaintiffs rely on an out-of-circuit

3   district court case—*ADR International Ltd. v. Institute For Supply Management Inc.*—in which

4   the court adopted a recommendation by a magistrate judge who applied a different standard, 667

5   F. Supp. 3d 411, 428 (S.D. Tex. 2023).  (Opp. at 5-6.)  *ADR International*, however, merely

6   confirms that the Court decided the issue correctly.

7            The *ADR International* court expressly distinguished *Kipp Flores Architects, LLC v.*

8   *Pradera SFR, LLC*, No. 21-cv-00673, 2022 WL 1105751, at *3 (W.D. Tex. Apr. 13, 2022)—a

9   case with facts that mirror the facts here.  *ADR Int'l*, 667 F. Supp. 3d at 428.  In *Kipp Flores*, the

10  plaintiff alleged that the defendant "generate[d] nonidentical renditions of [the plaintiff's]

11  copyrighted works" that failed to include the plaintiffs' CMI.  *Kipp Flores*, 2022 WL 1105751, at

12  *3.  Accordingly, the *Kipp Flores* court held that the plaintiff failed to allege a DMCA violation

13  because the DMCA does not apply when the plaintiff alleges CMI was removed from a new work

14  that is not identical to the plaintiff's works.  *Id.*  The *Kipp Flores* court relied on the same cases

15  that this Court did in reaching the same conclusion.  *Id.* (citing *Kirk Kara Corp.* and *Frost-Tsuji*

16  *Architects*).  (*See also* ECF No. 189 (same).)

17           *ADR International* does not contradict *Kipp Flores*.  Instead, it deemed *Kipp Flores*

18  inapplicable because the plaintiff in *ADR International* "allege[d] that Defendants reproduced

19  Plaintiff's training materials without its CMI and replaced it with [Defendants'] CMI." *ADR Int'l*

20  *Ltd.*, 667 F. Supp. 3d at 429.  Plaintiffs here have made no such allegation.  Additionally, *ADR*

21  *International*'s characterization of the holding in *Kipp Flores* would apply with equal force here:

22  *Kipp Flores* was a case "interpreting the plain meaning of 'remove,' finding the DMCA does not

23  apply when the plaintiff alleges CMI was removed from a new work that is a nonidentical or

24  derivative rendition of the plaintiff's copyrighted works because the new work never had the CMI

25  on it to be removed." *ADR Int'l Ltd.*, 667 F. Supp. 3d at 428-29.  Thus, *ADR International*

26  confirms that the Court correctly applied the DMCA's identicality requirement.

27                          **ii.    Pre-DMCA Copyright Cases**

28           Plaintiffs also argue that a defendant may copy less than the entire work and still satisfy

the DMCA's identicality requirement.  (Opp. at 12.)  Plaintiffs provide no relevant authority for this assertion.  Each of the three cases they cite were decided years before the 1998 passage of the DMCA and thus are irrelevant to what the statute requires; they were about copyright infringement, not the removal of CMI or distribution of works with CMI removed.  *See Horgan v. Macmillan, Inc.*, 789 F.2d 157, 162 (2d Cir. 1986); *Burroughs v. MGM, Inc.*, 683 F.2d 610, 624 n.14 (2d Cir. 1982); *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990).

### c.   Plaintiffs' Policy Arguments Misunderstand the Relationship between the DMCA and Copyright Law

Plaintiffs conclude their attack on the DMCA's identicality requirement by arguing that it would "render the DMCA toothless by allowing anyone to copy another's work so long as they only copied a part of it."  (Opp. at 12.)  But the DMCA isn't about copying; it's about the removal of CMI (or the addition of false CMI).  The DMCA was intended to serve a limited purpose: to "assist in tracking and monitoring uses of copyrighted works, as well as licensing of rights and indicating attribution, creation and ownership."  S. Rep. No. 105-190, at 16 (1998).  Without requiring identicality with the entire works from which CMI is allegedly removed, the DMCA would swallow copyright whole.  It would create a right of action for the copying of any part of a work in which someone failed to include CMI, even if the CMI was found in an entirely different part of the work.  Such a right of action already exists—a claim for copyright infringement—as Plaintiffs' citations to copyright infringement cases illustrate.  *See Horgan*, 789 F.2d at 162; *Burroughs*, 683 F.2d at 624 n.14; *Shaw*, 919 F.2d at 1362.  The DMCA does not (and was not intended to) create an end run around the limitations on copyright infringement claims (such as the registration requirement), which would be the result of Plaintiffs' interpretation.

### B.   Breach of Contract

Plaintiffs' contract claim against OpenAI should also be dismissed.  (Mot. at 6-19.) Plaintiffs fail to state any claim for breach based on the operation of OpenAI's Codex, as opposed to GitHub's Copilot.  In addition, Plaintiffs' theory based on Copilot fails for two independent reasons: (1) it is based on Copilot's outputs, which OpenAI does not control; and (2) it is based on OpenAI's alleged failure to fulfill conditions, not covenants, to the licenses at issue and thus cannot give rise to a contract claim.  None of Plaintiffs' arguments warrant a different outcome.

1

### 1. The Court Should Consider OpenAI's Contract Arguments in the Interests of Judicial Economy

2

Plaintiffs argue that, under Rule 12(g)(2), OpenAI has "waived" its right to challenge

3

Plaintiffs' breach of contract claim because OpenAI did not previously move to dismiss that

4

claim.  (Opp. at 13-15.)  OpenAI can, at minimum, assert its challenge via other procedural means

5

under Rule 12(h)(2).  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317-18 (9th Cir. 2017),

6

*aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019) ("A defendant who omits [from a

7

Rule 12 motion] a defense under Rule 12(b)(6)—failure to state a claim upon which relief can be

8

granted—does not waive that defense.").  In any event, Rule 12(g)(2) does not preclude a court

9

from reviewing new arguments in a later motion to dismiss; pursuant to Rule 1, Rule 12(g)(2)

10

should "be construed, administered, and employed by the court and the parties to secure the just,

11

speedy, and inexpensive determination of every action and proceeding."  *Id.* at 318.  "Denying

12

late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues

13

specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of

14

Rule 1."  *Id.*  Accordingly, where new arguments "do not appear to have been filed for any

15

strategically abusive purpose," it is proper for a court to consider those arguments in a later

16

motion to dismiss; otherwise, the defendant would be forced to assert those arguments via other

17

means, "substantially delay[ing] resolution" of the issues "for no apparent purpose."  *Id.* at 320.

18

That is why courts in this District have regularly considered new arguments on a later motion to

19

dismiss "where doing so would serve the interests of judicial economy."  *Symantec Corp. v.

20

Zscaler, Inc.*, No. 17-CV-04426-JST, 2018 WL 1456678, at *2 (N.D. Cal. Mar. 23, 2018)

21

(finding the Ninth Circuit's "more flexible and efficiency-oriented view" warranted consideration

22

of a new argument on a second motion to dismiss and collecting cases from this District).

23

The same reasoning applies to OpenAI's present arguments for dismissal of Plaintiffs'

24

breach of contract claim.  Like the later filed motions considered in *In re Apple* and *Symantec*,

25

OpenAI's motion was not brought for any "strategically abusive" purpose and should be

26

considered in the interests of judicial economy.  Plaintiffs more specifically articulated their

27

theory of breach at the last motion to dismiss hearing when Plaintiffs' counsel made clear that

28

1  their theory presumes that the attribution and notice terms are obligations imposed on the

2  licensee, as opposed to conditions to the grant of license by the licensor—and OpenAI brings this

3  motion in response to Plaintiffs' refined articulation.  (*See* ECF No. 174 at 20:13-21:6 ("[I]f you

4  were a human programmer using this code that is subject to an open source license…, the

5  moment you do so, you incur the obligations under the license.  And when the license has a

6  provision that says you must provide attribution and a copy of the license, that is, right, a CMI

7  obligation that is being incurred.").)  In addition, this motion presents an opportunity to end the

8  case with respect to OpenAI.  If the Court does not consider OpenAI's contract arguments now,

9  OpenAI will have to raise those arguments via other avenues, such as a substantively identical

10  Rule 12(c) motion, which would at minimum require the parties to re-brief the issues.  In the

11  meantime, as Plaintiffs note, Plaintiffs have already issued numerous discovery requests to

12  OpenAI relating to their contract claim and the parties have expended substantial resources

13  engaging in meet and confers and discovery correspondence—and will continue to do so.  (Opp.

14  at 15.)  Considering OpenAI's arguments now could "materially expedite[] the district court's

15  disposition of the case," and avoid unnecessarily delay and cost to both parties related to the

16  contract claim, consistent with the direction of Rule 1.  *See In re Apple*, 46 F.3d at 320.  The

17  Court should thus exercise its discretion to consider OpenAI's present contract arguments.

18  **2.      Plaintiffs Fail to State a Claim Based on Codex**

19      "Under California law, to state a claim for breach of contract a plaintiff must plead 'the

20  contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage

21  to plaintiff therefrom.'"  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012)

22  (quoting *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 305 (1965)).  As detailed in OpenAI's

23  opening brief, the SAC fails to plead any facts supporting a theory of breach based on OpenAI

24  ***Codex***, which Plaintiffs acknowledge is a different product from GitHub ***Copilot***.  (Mot. at 7-8

25  (citing SAC ¶¶ 24, 26).)  In response, Plaintiffs assert that "OpenAI's copying and use of

26  Plaintiffs' licensed code through Codex" gives rise to a contract claim.  (Opp. at 15.)  But the

27  SAC is silent as to any copying and use of ***Doe Plaintiffs'*** code via Codex.  Plaintiffs' general

28  allegation that Codex "has not been trained to provide Attribution" and does not include "a

Copyright Notice nor any License Terms attached to the Output" is based on the single example of a supposed output from Codex in the SAC, which is described as "taken from *Eloquent Javascript* by Marijin Haverbeke," who is not a named Plaintiff.  (*See* SAC ¶¶ 60-61, 68.)  The SAC does not identify the contracts at issue or explain how the Doe Plaintiffs and OpenAI entered those contracts, how OpenAI purportedly breached those contracts with respect to the Doe Plaintiffs, or how Doe Plaintiffs suffered damage from that breach.  *See Gautier*, 234 Cal. App. 2d at 305-06 (dismissing contract claim where the plaintiffs failed to allege the terms of the contract, what constituted the defendant's breach, or legally actionable damage to plaintiffs resulting from that breach).  Plaintiffs have thus failed to state a claim for breach of contract based on the operation of Codex.

### 3.    Plaintiffs Fail to State a Claim Based on Copilot

#### a.    Plaintiffs' Theory Based on Copilot Does Not Give Rise to a Breach of Contract Claim Against OpenAI

Plaintiffs agree that the only allegations in the SAC supporting their theory for breach of the Doe Licenses are in paragraphs 238 and 244-247 and that all of those allegations are directed to *Copilot's* (not Codex's) outputs.  (*See* Mot. at 8-9; Opp. at 15-16.)  Plaintiffs also agree that they alleged that *GitHub* (not OpenAI) controls what Copilot outputs through a "Copilot filter" that "*GitHub* introduced" (SAC ¶ 145 (emphasis added)), which provides "an option to either allow or block code completion suggests that match publicly available code" (*id.* ¶ 146) and an option to include a link to the applicable open-source license (*id.* ¶ 147)—and which Plaintiffs rely on to assert claims against *GitHub* (*id.* ¶ 149).  (*See* Mot. at 9-10; Opp. at 15-16.)  Plaintiffs' claim for breach of the Doe Licenses against OpenAI fails for these reasons alone.

Plaintiffs attempt to confuse the issues by arguing that if Copilot is a joint venture between OpenAI and GitHub, OpenAI would be liable for breach of the Doe Licenses by GitHub related to Copilot.  (Opp. at 15-16.)  But a joint venture requires (among other elements) "equal authority and right to direct and control the conduct of all co-venturers with respect to the joint venture."  *Forest v. Equitable Life Assurance Soc'y of U.S.*, No. C99-5173 SI, 2001 WL 1338809, at *5 (N.D. Cal. June 12, 2001).  The SAC pleads facts that establish that, at minimum, Copilot is not a joint venture because OpenAI lacks "equal authority and right to direct and control the

conduct" of GitHub with respect to Copilot, as demonstrated by the fact that GitHub alone has released features altering Copilot's outputs (*see* SAC ¶¶ 145-157).  *See Orosco v. Sun-Diamond Corp.*, 51 Cal. App. 4th 1659, 1666 (1997) (raisin production was not a joint venture in part because no "entity other than Sun-Maid ha[d] any control over the production of raisins").

### b.    Plaintiffs' Theory Based on Copilot Fails on the Merits

Plaintiffs' contract claim based on Copilot also fails on the merits because they do not and cannot allege that OpenAI made or breached any promise.  No breach, no claim; it is that simple.

### i.    The Attribution and Notice Terms Are Conditions and Do Not Give Rise to a Contract Claim

As OpenAI explained in its opening brief, a condition is an event that triggers an obligation under a contract, whereas a covenant is an affirmative promise to do something.  (Mot. at 10, 17-18.)  Plaintiffs do not dispute this basic premise.  (*See* Opp. at 18-19.)  Plaintiffs also agree that failure to fulfill a condition to a copyright license grant does not give rise to a contract claim and may only give rise to a claim for copyright infringement.  (*See id.*)  Plaintiffs argue, however, that the attribution and notice terms of the Doe Licenses are covenants, not conditions, and thus OpenAI's purported failure to fulfill those terms is breach of the Doe Licenses.  (*Id.*)

"In interpreting a contract, the objective intent, as evidenced by the words of the contract, is controlling."  *Lloyd's Underwriters v. Craig & Rush, Inc.*, 26 Cal. App. 4th 1194, 1197 (1994).  As detailed in OpenAI's opening brief (Mot. at 11-18), the words of the Doe Licenses show that the attribution and notice terms are conditions on the grant of a license by the Doe Plaintiffs, not covenants undertaken by OpenAI.[2]  Each license uses the ordinary language of conditions in describing those terms: all the licenses except the MIT License grant permission to copy, modify, and distribute the licensed code "provided that" the licensor includes the specified attribution and notices with the code (*see* Mot. at 11-16); the MIT License similarly grants permission "subject to the following conditions" related to attribution and notice (*id.* at 16-17).  *See Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("Under California contract law, 'provided that' typically denotes a condition."); 1 Witkin, Summary 11th Contracts § 800 (2023) ("Express conditions"

---

[2] Plaintiffs do not dispute that the Doe Licenses are part of the SAC.  (*See* Mot. at 7; Opp. at 13-25.)

1  can be stated with the words "provided" and "upon the condition").  The Doe Licenses thus

2  contain "plain, unambiguous language" that requires finding the attribution and notice terms

3  conditions, not covenants.  *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir.

4  1990).  (Opp. at 19.)  Indeed, Plaintiffs concede this language is unambiguous by failing to even

5  offer an alternative interpretation, let alone showing that it is reasonable.  *S. Cal. Edison Co. v.*

6  *Superior Ct.*, 37 Cal. App. 4th 839, 847 (1995) ("When a dispute arises over the meaning of

7  contract language, the first question to be decided is whether the language is 'reasonably

8  susceptible' to the interpretation urged by the party.  If it is not, the case is over.").

9          Plaintiffs' own authorities also make clear that the attribution and notice terms are

10  conditions, not covenants.  The court in *Netbula, LLC v. Storage Technology Corp.* explained:

11          A covenant is another word for a contractual promise.  A promise
            for contract purposes is a manifestation of intention to act or refrain
12          from acting in a specified way, so made as to justify a promisee in
            understanding that a commitment has been made. . . . A condition,
13          on the other hand, is an event, not certain to occur, which must
            occur, unless its non-occurrence is excused, before performance
14          under a contract becomes due.

15  No. 06-cv-07391, 2008 WL 228036, at *3 (N.D. Cal. Jan. 18, 2008) (cleaned up); *see also*

16  *Ticketmaster L.L.C. v. Prestige Ent., Inc.*, 306 F. Supp. 3d 1164, 1172 (C.D. Cal. 2018) ("Under

17  California law, a covenant is a promise to do or refrain from doing a specific act.  A condition is a

18  qualification to the parties' obligations; if it occurs, the interest is terminated or enlarged.")

19  (cleaned up).  (Opp. at 18-19.)[3]  The attribution and notice terms in the Doe Licenses are not

20  covenants because the licensee (*e.g.*, OpenAI) never **promises** to fulfill those terms.  Rather, the

21  licensor (*e.g.*, Doe Plaintiff) grants certain permissions to the licensee **on the condition that** the

22  licensee fulfill the attribution and notice terms.  (*See* Mot. at 11-17.)  The Doe Licenses do not

23  reflect any "manifestation of **intention**" by the licensee to fulfill the attribution and notice terms;

24  the licensee simply has the option of doing so, and receives a benefit if he or she chooses to do so.

25  *See Netbula*, 2008 WL 228036, at *3.  Accordingly, the licensee's fulfillment of the attribution

26  and notice terms is a condition—an uncertain event that must occur before the licensor's

27

28  _____
    [3] A party's obligations under a contract can arise, of course, only if a contract has been formed.
    OpenAI does not separately address formation in this motion, but does not concede formation.

OPENAI'S REPLY ISO MOTION TO          11
DISMISS SAC CASE NO. 4:22-CV-0623-JST

1    performance (grant of certain permissions) is due.  *See id.*

2          Lastly, contrary to Plaintiffs' suggestion (Opp. at 21-22), *ProCD, Inc. v. Zeidenberg*, 86

3    F.3d 1447 (7th Cir. 1996), does not support finding otherwise.  *ProCD* addressed an entirely

4    different issue than that presented here: whether a purchaser of software is bound by the terms of

5    a contract enclosed with the software packaging.  *See id.* at 1450-53.  The underlying assumption

6    was that the contractual terms were a ***promise*** to use the software only for non-commercial

7    purposes; the issue was whether the purchaser assented to that promise.  *See id.* at 1450-51

8    (analogizing to a concert ticket wherein "[t]he back of the ticket states that the patron ***promises***

9    not to record the concert; to attend is to agree") (emphasis added).  *ProCD* is thus irrelevant to

10   whether the attribution and notice terms are conditions or covenants—because, as explained

11   above, nothing in the Doe Licenses suggests that the licensee made a ***promise***.

12                    **ii.    *Jacobsen v. Katzer* Is Relevant**

13         Plaintiffs attempt to sidestep the plain language of the Doe Licenses by trying (and

14   failing) to distinguish *Jacobsen*.  (Opp. at 20-24.)  First, Plaintiffs argue that *Jacobsen* does not

15   apply to this case because the Artistic License at issue in *Jacobsen* had a preamble stating, "The

16   intent of this document is to state the ***conditions*** under which a Package may be copied."  *Id*. at

17   21 (citing *Jacobsen*, 535 F.3d at 1381).)  But that was not the court's sole basis for finding the

18   terms of the Artistic License to be conditions: the court went on to find that "[t]he Artistic

19   License also uses the traditional language of conditions by noting that the rights to copy, modify,

20   and distribute are granted '***provided that***' the conditions are met" (*Jacobsen*, 535 F.3d at 1381)—

21   the exact language use in five of the six Doe Licenses.  (*See* Mot. at 11-16.)  But even if the

22   Artistic License's characterization of its attribution and notice terms as "conditions" were

23   dispositive, that would not distinguish *Jacobsen* from the facts here: each of the Doe Licenses

24   also characterizes its attribution and notice terms as "conditions."  (*See* ECF No. 98-1 at 29 ("You

25   may modify your copy or copies of the Program…provided that you also meet all of these

26   ***conditions***") (GPL version 2.0); *id.* at 37 ("All rights granted under this License are granted for

27   the term of the copyright on the Program, and are irrevocable provided the stated ***conditions*** are

28   met") (GPL version 3.0); *id*. at 38 ("You may convey a work based on the Program…provided

that you also meet all of these **conditions**") (same); *id.* at 18-19 (same) (Affero GPL version 3.0);

*id.* at 9 ("Redistribution and use…are permitted provided that the following **conditions** are met")

(3-Clause BSD License); *id.* at 3 ("You may reproduce and distribute copies of the Work or

Derivative Works…provided that You meet the following **conditions**") (Apache version 2.0); *id.*

at 58 (Permission is hereby granted…subject to the following **conditions**") (MIT License)

(emphases added).)

  Second, Plaintiffs argue that *Jacobsen* is inapposite because it addressed whether the

plaintiff could bring a claim for copyright infringement, not a claim for breach of contract.  (Opp.

at 21.)  Plaintiffs miss the point: *Jacobsen* is relevant because it found that terms similar to those

in the Doe Licenses were conditions to the license grant (giving rise to a copyright claim), and not

covenants undertaken by the licensee (giving rise to a contract claim).  (*See* Mot. at 11-16.)  The

same analysis applies whether the plaintiff ultimately brings a copyright or contract claim.

  Lastly, Plaintiffs note that *Jacobsen* involved code that had been registered with the

Copyright Office, thus allowing the plaintiff to bring a claim for copyright infringement, whereas

none of the Plaintiffs in this case have registered their code.  (Opp. at 22 n.3.)  Plaintiffs cite no

authority, however, for the novel proposition that they should be entitled to bring a claim not

available to them simply because they have chosen not to meet the requirements necessary to

enforce their rights through legally cognizable means.

### iii. Plaintiffs' Policy Arguments Are Both Wrong and Irrelevant to the Issue Presented

  Plaintiffs rely heavily on the unsupported assertion that dismissing their contract claim

will "imperil the entire ecosystem of open-source licensing" because software developers will

only be able to enforce their rights under copyright law.  (*See* Opp. at 19-25.)  Plaintiffs

mischaracterize the open-source ecosystem, which has long been supported by copyright (not

contract) enforcement actions.[4]  Plaintiffs upend the standard practice by bringing a contract

claim.  Indeed, Columbia Law School Professor Eben Moglen, who serves as President and

Executive Director of the Software Freedom Law Center,[5] describes the GPL as "a true copyright

---

[4] *See, e.g.*, https://softwarefreedom.org/news/2009/dec/14/busybox-gpl-lawsuit.
[5] *See* https://softwarefreedom.org/about/team.

1 license: a unilateral permission, in which no obligations are reciprocally required by the

2 licensor":[6]

> Because the GPL does not require any promises in return from licensees,
> it does not need contract enforcement in order to work. A GPL licensor
> doesn't say in the event of trouble "But, judge, the licensee promised me
> he wouldn't do what he's doing now." The licensor plaintiff says "Judge,
> the defendant is redistributing my copyrighted work without permission."

In other words, failure to meet the terms of the GPL gives rise to a claim for copyright

infringement, not a claim for breach of contract—which is exactly OpenAI's point.

In any event, Plaintiffs' purported policy arguments are irrelevant to the issue before the

Court—whether Plaintiffs have met their burden of stating a claim against OpenAI for breach of

the Doe Licenses—and thus should be rejected for two independent reasons.  First, Plaintiffs'

arguments rely entirely on attorney assertions that appear nowhere in the SAC.  (*See* Opp. at 19-

25.)  "[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule

12(b)(6), review is limited to the complaint"—with limited exceptions that Plaintiffs do not argue

apply here.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (cleaned up).

Second, even if Plaintiffs' policy assertions were included in the SAC, they would still be

improper extrinsic evidence to the Doe Licenses.  "Where the parties have reduced their

agreement to writing, their mutual intention is to be determined, whenever possible, from the

language of the writing alone."  *Netbula*, 2008 WL 228036, at *3 (cleaned up).  Extrinsic

evidence may only be considered to determine the intent of the parties if the agreement is

"uncertain or ambiguous," or to show "the parties' understanding and intended meaning of ***the***

***words used in their written agreement***."  *See id.* (cleaned up; emphasis added) (other exception

not relevant here).  As detailed above, the Doe Licenses clearly and unambiguously identify the

attribution and notice terms as conditions, not covenants—and Plaintiffs have identified nothing

in the Doe Licenses suggesting otherwise.  In addition, although Plaintiffs make sweeping

proclamations about the peril to the "entire ecosystem of open-source licensing" (*e.g.*, Opp. at

19), they do not attempt to tie those broad assertions to the specific language of the Doe Licenses.

Plaintiffs' public policy arguments are thus irrelevant to the intended meaning of "the words

---

[6] https://lwn.net/Articles/61292.

used" in the Doe Licenses—and certainly do not support finding that those words reflect an intention to create covenants (as opposed to conditions), contrary to their plain meaning.

### iv. The Publishing Terms Are Subject to the Same Analysis as the Attribution and Notice Terms

Plaintiffs assert that, in addition to the attribution and notice terms, three of the six Doe Licenses (GPL versions 2.0 and 3.0 and Affero GPL version 3.0) contain provisions related to publishing the licensee's modifications of the licensed code, which Plaintiffs refer to as "copyleft" terms. (Opp. at 24 & n.5.) These terms are provided in the same format and with the same "provided that" language as the attribution and notice terms, and thus are conditions (not covenants) for the same reasons. (*See* Mot. at 12 (GPL version 2.0, section 3), 13-14 (GPL version 3.0, section 6), 14 (Affero GPL version 3.0, section 6).)

Plaintiffs also cite to three cases that specifically address the GPL publishing terms: *Versata Software, Inc. v. Ameriprise Financial, Inc.*, No. A-14-CA-12-SS, 2014 WL 950065 (W.D. Tex. Mar. 11, 2014); *Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982-JSC, 2017 WL 1477373 (N.D. Cal. Apr. 25, 2017); and *Software Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 21-cv-01943, 2022 WL 1527518 (C.D. Cal. May 13, 2022) ("*SFC*"). (Opp. at 24-25.) None of those cases controls here. *Versata* found a contract claim not preempted because those terms impose an additional element distinct from rights provided by copyright laws. 2014 WL 950065, at *5. But *Versata* assumed that the publishing terms were a "contractual promise," without considering whether they were conditions or covenants. *See id.* *Artifex* discussed the publishing terms in dicta but ultimately found the contract claim not preempted because the parties agreed that the action was "premised upon possible extraterritorial infringement to which the Copyright Act would not apply." 2017 WL 1477373, at *3-4. *SFC* found *Versata* persuasive and found contract claims not preempted for the same reasons. 2022 WL 1527518, at *3.[7]

### III. CONCLUSION

The Court should dismiss Plaintiffs' claims against OpenAI with prejudice.

---

[7] Although *SFC* also briefly addressed whether the publishing term was a "condition" to the license, it did so to determine whether copyright preemption applied. 2022 WL 1527518, at *4. The court was not presented with, and did not address, arguments regarding the language of the license and whether that required finding the term to be a condition, not a covenant. *See id.*; *see also SFC*, ECF No. 25 (Opp. to Vizio Mot. to Dismiss).

1    Dated: April 10, 2024                    MORRISON & FOERSTER LLP

2

3                                             By:  /s/ *Joseph C. Gratz*
                                                   Joseph C. Gratz
4

5                                             JOSEPH C. GRATZ
                                              JGratz@mofo.com
6                                             TIFFANY CHEUNG
                                              TCheung@mofo.com
7                                             JOYCE C. LI
                                              JoyceLi@mofo.com
8                                             MELODY E. WONG
                                              MelodyWong@mofo.com
9                                             MORRISON & FOERSTER LLP
                                              425 Market Street
10                                            San Francisco, California  94105-2482
                                              Telephone:   (415) 268-7000
11                                            Facsimile:    (415) 268-7522

12                                            ALLYSON R. BENNETT
                                              ABennett@mofo.com
13                                            ROSE S. LEE
                                              RoseLee@mofo.com
14                                            ALEXANDRA M. WARD
                                              AlexandraWard@mofo.com
15                                            MORRISON & FOERSTER LLP
                                              707 Wilshire Boulevard
16                                            Los Angeles, California 90017-3543
                                              Telephone:   (213) 892-5200
17                                            Facsimile:    (213) 892-5454

18                                            MAX I. LEVY
                                              MLevy@mofo.com
19                                            MORRISON & FOERSTER LLP
                                              755 Page Mill Road
20                                            Palo Alto, CA 94304-1018
                                              Telephone:   (650) 813-5600
21                                            Facsimile:    (650) 494-0792

22                                            ERIC K. NIKOLAIDES (*pro hac vice*)
                                              ENikolaides@mofo.com
23                                            MORRISON & FOERSTER LLP
                                              250 West 55th Street
24                                            New York, NY 10019-9601
                                              Telephone:   (212) 468-8000
25                                            Facsimile:    (212) 468-7900

26                                            Attorneys for Defendants OPENAI, INC.,
                                              OPENAI, L.P., OPENAI OPCO, L.L.C.,
27                                            OPENAI GP, L.L.C., OPENAI STARTUP
                                              FUND GP I, L.L.C., OPENAI STARTUP
28                                            FUND I, L.P., OPENAI STARTUP FUND
                                              MANAGEMENT, LLC, OPENAI, L.L.C.,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPENAI GLOBAL, LLC, OAI
CORPORATION, OPENAI HOLDINGS,
LLC, OPENAI HOLDCO, LLC, OPENAI
INVESTMENT LLC, OPENAI STARTUP
FUND SPV I, L.P., and OPENAI STARTUP
FUND SPV GP I, L.L.C.