UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. DOE 1, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GITHUB, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-06823-JST<br><br>**ORDER GRANTING IN PART DENYING IN PART MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 215, 219 |

Before the Court are motions to dismiss filed by Defendants GitHub, Inc., and Microsoft Corporation (collectively, "Defendant GitHub"), ECF No. 215; and Defendants OpenAI, Inc., OpenAI, L.P., OpenAI OPCO, L.L.C., OpenAI GP, L.L.C., OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., and OpenAI Startup Fund Management, LLC (collectively, "Defendant OpenAI"), ECF No. 219. The Court will grant the motions in part and deny them in part.[1]

## I.  BACKGROUND

Because the facts are well-known to the parties and the Court has summarized Plaintiffs' allegations in detail in its prior orders, *see* ECF Nos. 95, 189, the Court will not elaborate them here.

Following the last round of briefing, the Court found that Plaintiffs alleged standing for damages as to Does 1, 2, and 5, but not Does 3 and 4. Further, the Court dismissed Plaintiffs' state law claims for intentional and negligent interference with prospective economic relations,

---

[1] Although the caption of this order cites to the redacted version of Defendant GitHub's motion to dismiss, ECF No. 215, the remainder of the order will refer to the sealed version of this document—ECF No. 214-2.

unjust enrichment, negligence, and unfair competition with prejudice. And finally, the Court dismissed Plaintiffs' claim under Section 1202(b) of the Digital Millenium Copyright Act ("DMCA"), reasoning that Plaintiffs failed to meet Section 1202(b)'s identicality requirement. "[O]ut of abundance of caution," however, Plaintiffs were granted leave to amend their DMCA claim. ECF No. 189 at 16.

In Plaintiffs' second amended complaint ("SAC"), ECF No. 201, three claims remain.[2] Count One alleges a violation of DMCA Section 1202(b)(1) and 1202(b)(3) against all Defendants. ECF No. 201 at 53. Count Two alleges breach of contract for violation of open-source licenses against all Defendants. *Id.* at 59. Count Three alleges breach of contract for selling licensed materials against only Defendant GitHub. *Id.* at 61.

In support of these claims, Plaintiffs add two primary new assertions to their SAC. First, they allege that "[i]n July 2022," "GitHub introduced a user-settable Copilot filter called '[s]uggestions matching public code.'" *Id.* ¶ 145. This filter is also referred to as the "duplication-detection feature." *Id.* ¶ 146 n.23. Users can set the filter "to either allow or block code completion suggestions that match publicly available code." *Id.* ¶ 146. If a user chooses to block suggestions that match public code, "GitHub Copilot checks code completion suggestions with their surrounding code of about 150 characters against public code on GitHub." *Id.* "If there is a match, or a near match, the suggestion is not shown" to the user. *Id.* However, "GitHub makes [this feature] entirely optional to users, and provides no such optionality to licensors." *Id.* ¶ 148. Therefore, in Plaintiffs' telling, "users who want to receive identical code from GitHub or do not want to exclude it, may do so." *Id.* In light of this feature, Plaintiffs "believe it is likely that their licensed code is omitted[3] by Github [sic] in violation of the open source licenses[,]" and that "there is a substantial risk, if not certainty, that identical code will be emitted in the future." *Id.* ¶ 149.

Second, Plaintiffs allege that "[r]ecent academic research shows that the likelihood Plaintiffs' or class members' code would be emitted verbatim is only increasing." *Id.* ¶ 104. They

---

[2] The redacted version of Plaintiffs' SAC is available at ECF No. 200.
[3] For purposes of this order, the Court assumes Plaintiffs meant "emitted."

2

cite to a study entitled *Quantifying Memorization Across Neural Language Models* by Nicholas Carlini et al., which reasoned that "[m]emorization significantly grows as we increase (1) the capacity of a model, (2) the number of times an example has been duplicated, and (3) the number of tokens of context used to prompt the model."[4] *Id.* Accordingly, Plaintiffs assert that "as generative AI models such as Copilot increase capacity and continue to scale, it becomes more likely that training data will become memorized and emitted verbatim, i.e., as an exact duplicate." *Id.* ¶ 105.

Both Defendants move to dismiss Plaintiffs' Section 1202(b) claim pursuant to Fed. R. Civ. P. 12(b)(6). In addition, OpenAI moves to dismiss Plaintiffs' breach of contract claim for violation of open-source licenses, and GitHub moves to dismiss Plaintiffs' requests for unjust enrichment and punitive damages.

## II. JURISDICTION

The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

## III. LEGAL STANDARD

### A. Rule 12(b)(6)

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the

---

[4] The full citation of this study is as follows: Nicholas Carlini, et al., *Quantifying Memorization Across Neural Language Models*, arXiv (submitted Feb. 15, 2022, revised Mar. 6, 2023), https://arxiv.org/pdf/2202.07646.pdf (last accessed April 16, 2023). Going forward, the Court refers to this study as the "Carlini Study."

3

pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### B. Leave to Amend

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision of whether to grant leave to amend is "within the discretion of the district court, which may deny leave due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. DMCA Section 1202(b)(1) and 1202(b)(3)

Defendants ask the Court to dismiss Plaintiffs' Section 1202(b) claim. *See* ECF Nos. 214-2 at 17–22, 219 at 10–13. Although each Defendant contends that Plaintiffs' claim fails on various grounds, the Court finds one argument dispositive: Plaintiffs again fail Section 1202(b)'s identicality requirement.

Plaintiffs' opposition spills much ink arguing that identicality is not an element of a Section 1202(b) claim. *See* ECF Nos. 234 at 12–16, 235 at 12–15. Having twice addressed this issue already, the Court will not revisit it at length.[5] Plaintiffs focus on a non-binding decision from the Southern District of Texas, *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 425 (S.D. Tex. 2023), which concluded that the "DMCA is not limited to [copyright management information] conveyed in connection with identical copies of a work." But caselaw from courts in the Ninth Circuit continues to compel this Court to reach a different conclusion. *See, e.g.*, *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) ("courts have found that no DMCA violation exists where the works are

---

[5] On February 28, 2024, Plaintiffs filed a motion for leave to file a motion for reconsideration of the Court's prior order, ECF No. 189, pursuant to Civil Local Rule 7–9. ECF No. 218. The Court ordered Defendants to file responses by March 15, 2024. After considering arguments from both sides, the Court declined to grant Plaintiffs' motion. ECF No. 246.

4

not identical."); *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035, 1057 (S.D. Cal. 2023) ("Plaintiff has not plausibly alleged that Defendants distributed identical copies of Plaintiff's comparison"); *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir. 2017) (denying Section 1202(b) claim where the drawing at issue was "not identical" to the drawing by plaintiff); *Tremblay v. OpenAI, Inc.*, No. 23-CV-03223-AMO, — F.Supp.3d —, 2024 WL 557720, at *5 (N.D. Cal. Feb. 12, 2024) (citing *Kirk Kara Corp.* for the proposition that a defendant must make identical copies of a plaintiff's work "to implicate the DMCA.").

Turning to the allegations in the SAC, Defendants argue that "[l]ike the FAC, the SAC does not identify even a single example of Copilot producing an identical copy of any work." ECF No. 219 at 10. The Court agrees. The SAC includes the same allegations that Defendants' programs released, or "output," code published to GitHub by Does 1, 2, and 5. *See* ECF No. 201 ¶¶ 115, 120, 121, 124, 125, 133. In its last order, the Court concluded that these facts were "not sufficient for a Section 1202(b) claim" because they were not identical. ECF No. 189 at 15. Because these facts have not changed, the Court must again conclude that Plaintiffs have failed to meet the DMCA's identicality requirement.

Plaintiffs' new allegations fare no better. Plaintiffs allege that, should a user elect to *not* use the duplication-detection feature, a user could conceivably view an identical match of 150 characters, and use it without attribution. *See* ECF No. 201 ¶¶ 147–151. While Plaintiffs aver that the duplication-detection tool "by definition establishes Copilot's ability to reproduce verbatim copies of code," ECF No. 234 at 18 (emphasis omitted), they "do not explain how the tool makes it plausible that Copilot will in fact do so through its normal operation or how any such verbatim outputs are likely to be anything beyond short and common boilerplate functions." ECF No. 242-1 at 16; *see also Iqbal*, 556 U.S. at 680 (finding that plaintiff had not "nudged [his] claims" . . . "across the line from conceivable to plausible."). And, as Defendant GitHub also points out, "the mere existence of such a feature does not make it more likely that Copilot would ever output an identical copy of *Plaintiffs'* works." ECF No. 214-2 at 21 (emphasis in original). Thus, Plaintiffs have not demonstrated that Copilot's duplication-detection tool is likely to give rise to Section

5

1202(b) liability.

In addition, the Court is unpersuaded by Plaintiffs' reliance on the Carlini Study. It bears emphasis that the Carlini Study is not exclusively focused on Codex or Copilot, and it does not concern Plaintiffs' works. That alone limits its applicability. And further, as Defendant GitHub notes, the Carlini Study does nothing to "rehabilitate Plaintiffs' own concession that, still, 'more often,' Copilot's suggestions are 'a modification.'" ECF No. 214-2 at 21 (quoting ECF No. 201 ¶ 108).

The Study "tested multiple models by feeding prefixes of prompts based on training data into each model in order to compare the performance of models of different sizes to emit output that is identical to training data." ECF No. 201 ¶ 104. It determined that when models are "prompted appropriately, they will emit the memorized training data verbatim." *Id.* (quoting Carlini Study). In regard to the GitHub Copilot model in particular, the Study concluded that it "rarely emits memorized code in benign situations, and most memorization occurs only when the model has been prompted with long code excerpts that are very similar to the training data." Carlini Study at 6. To paraphrase Defendant GitHub, "Plaintiffs tried to [prompt Copilot] in their last complaint . . . to generate an identical copy of their code" and they were unable to do so. ECF No. 214-2 at 22 (emphasis omitted). Accordingly, Plaintiffs' reliance on a Study that, at most, holds that Copilot may theoretically be prompted by a user to generate a match to someone else's code is unpersuasive.

To conclude, the Court dismisses Plaintiffs' Section 1202(b) claim. Having previously dismissed this claim on the same ground, the Court will now dismiss Plaintiffs' Section 1202(b) claim with prejudice.

**B. Breach of Contract**

Defendant OpenAI moves to dismiss Plaintiffs' breach of contract claim for violation of open-source licenses. ECF No. 219 at 13. In support of this argument, OpenAI contends that (1) Plaintiffs fail to state a claim based on Codex; (2) Plaintiffs fail to state a claim based on Copilot; and (3) Plaintiffs' theory based on Copilot fails on the merits because "the attribution and notice terms are conditions and do not give rise to a contract claim." *Id.* at 14–17. Plaintiffs respond that

6

OpenAI has waived its right to challenge Plaintiffs' breach of contract claim pursuant to Federal Rule of Civil Procedure 12(g)(2), and in any event, its arguments fail on the merits. Having considered these arguments, the Court declines to dismiss Plaintiffs' breach of contract claim.

### 1. Rule 12(g)(2)

The Court begins by examining whether Rule 12(g)(2) forecloses OpenAI's arguments. Rule 12(g)(2) states: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The Ninth Circuit has made clear that it "read[s] Rule 12(g)(2) in light of the general policy of the Federal Rules of Civil Procedure, expressed in Rule 1. That rule directs that the Federal Rules 'be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019) (quoting Fed. R. Civ. P. 1). Accordingly, "[d]enying late-filed Rule 12(b)(6) motions . . . can produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id.*; *see also Banko v. Apple, Inc.*, No. 13–02977 RS, 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013) (internal quotations omitted) ("Although Rule 12(g) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion . . . courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy."). The Court agrees with OpenAI that "[c]onsidering [these] arguments now could 'materially expedite[] the district court's disposition of the case,' and avoid unnecessarily delay and cost to both parties related to the contract claim, consistent with the direction of Rule 1." ECF No. 244 at 15 (quoting *In re Apple*, 846 F.3d at 320). It will thus consider OpenAI's arguments.

### 2. Plaintiffs State a Claim Based on Codex

OpenAI's first argument is that Plaintiffs fail to state a claim based on Codex. OpenAI contends that "[t]he SAC does not identify the contracts at issue or explain how the Doe Plaintiffs and OpenAI entered those contracts, how OpenAI purportedly breached those contracts with respect to the Doe Plaintiffs, or how Doe Plaintiffs suffered damage from that breach." ECF No.

7

244 at 15 (citing *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 305–06 (Ct. App. 1965)).

In its prior order denying Defendants' motions to dismiss Plaintiffs' breach of contract claim, the Court explained:

> Plaintiffs advance claims for breach of the eleven suggested licenses GitHub presents to users that require (1) attribution to the owner, (2) inclusion of a copyright notice, and (3) inclusion of the license terms. [ECF No. 1] ¶ 34 n.4. [. . .] Plaintiffs allege that use of licensed code "is allowed only pursuant to the terms of the applicable Suggested License," and that each such license requires that any derivative work or copy include attribution, a copyright notice, and the license terms. *Id*. ¶¶ 173, 34 n.4. Plaintiffs further allege that Codex and Copilot reproduce licensed code as output without attribution, copyright notice, or license terms, thereby violating the relevant provisions of each license. While Plaintiffs do not identify the specific subsections of each suggested license that correspond to each of these requirements, the Court finds that Plaintiffs have sufficiently identified "the contractual obligations allegedly breached," as required to plead a breach of contract claim. [*Williams v. Apple, Inc*., 449 F. Supp. 3d 892, 908 (N.D. Cal. 2020)].

ECF No. 95 at 22. Having already determined that Plaintiffs adequately stated a breach of contract claim, the Court declines to reanalyze this issue. Therefore, Plaintiffs' breach of contract claim will not be dismissed on this ground.

### 3. Plaintiffs State a Claim Based on Copilot

OpenAI's second argument is that Plaintiffs fail to state a claim based on Copilot. In OpenAI's view, "Plaintiffs' theory is based on actions by other Defendants and does not give rise to a breach of contract claim against OpenAI." ECF No. 219 at 15. Plaintiffs respond that their breach of contract claim must stand, as they have alleged that Copilot and Codex are "related," and that "Copilot is a joint venture relationship" between GitHub and OpenAI. ECF No. 235 at 21–22 (citing ECF No. 201 ¶ 59).

"A joint venture is 'an undertaking by two or more persons jointly to carry out a single business enterprise for profit.'" *Forest v. Equitable Life Assurance Soc'y of U.S*., No. C99-5173 SI, 2001 WL 1338809, at \*5 (N.D. Cal. June 12, 2001) (quoting *Nelson v. Abraham*, 29 Cal. 2d 745, 749 (1947)). "The elements necessary for a joint venture are: (1) an intent to become partners; (2) a community of interest in the undertaking; (3) an understanding to share profits and losses; and (4) equal authority and right to direct and control the conduct of all co-venturers with

8

respect to the joint venture." *Forest*, 2001 WL 1338809, at *5. Plaintiffs allege that "Copilot requires Codex to function," and that "[e]ach [Defendant] acted as the principal, agent, or joint venture of, or for other Defendants with respect to the acts, violations, and common course of conduct alleged herein." ECF No. 201 ¶¶ 26, 45. Additionally, they aver that "Codex is a standalone product released by OpenAI that also 'powers GitHub Copilot, which [OpenAI] built and launched in partnership with GitHub'" and that "'GitHub Copilot uses the OpenAI Codex to suggest code and entire functions in real-time, right from your editor.'" *Id.* ¶ 59. Finally, they allege that "[t]he profits attributable to Defendants' violation . . . include the revenue from: Copilot subscription fees, sales of or subscriptions to Defendants' Copilot-related products and/or services that are used to run Copilot, hosting Copilot on Azure, and any other of Defendants' products." *Id.* ¶ 225.[6]

OpenAI responds that "Copilot is not a joint venture because OpenAI lacks 'equal authority and right to direct and control the conduct' of GitHub with respect to Copilot, as demonstrated by the fact that GitHub alone has released features altering Copilot's outputs." ECF No. 244 at 15–16 (citing ECF No. 201 ¶¶ 145–157). True, Plaintiffs' allegations concerning the duplication-detection feature state that "GitHub Copilot now includes an option to either allow or block code completion suggestions that match publicly available code." ECF No. 201 ¶ 145. But this does not dispel Plaintiffs' other allegations that "Copilot requires Codex to function," and that "Codex . . . powers GitHub Copilot." *Id.* ¶ 59. Accordingly, the Court declines to dismiss Plaintiffs' breach of contract claim on this ground.

### 4. Conditions Versus Covenants

Finally, Defendants contend that even if they violated the attribution and notice terms of the Doe Licenses, those breaches were of conditions that sound in copyright law, and therefore Plaintiffs' claims for breach of contract must be dismissed.[7]

---

[6] While this allegation is specific to Plaintiffs' DMCA claim, the Court finds that it sufficiently alleges that there is "an understanding to share profits and losses" amongst Defendants.

[7] Although it appears that Plaintiffs forgot to attach the full text of the Doe Licenses to the SAC, as they did for their first two complaints, the Court will nonetheless incorporate these licenses by reference. Plaintiffs refer to the Doe Licenses throughout the SAC and assert a claim for breach of contract based on the content of those licenses. *United States v. Ritchie*, 342 F.3d 903, 908 (9th

9

Before delving into the specifics of this argument, a brief refresher on the intersection between covenants, conditions, and copyright law is in order. "Generally, a copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement and can sue only for breach of contract." *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008) (quoting *Sun Microsystems, Inc., v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999); *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998)). "If, however, a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement." *Jacobsen*, 535 F.3d at 1380 (citing *S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1087 (9th Cir. 1989); *Nimmer on Copyright* § 1015[A]). "[C]ontractual terms that limit a license's scope [are] 'conditions,' the breach of which constitute copyright infringement." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011). "[A]ll other license terms [are] 'covenants,' the breach of which is actionable only under contract law." *Id*. "Conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language." *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir. 1990).

While OpenAI is likely correct that the attribution and notice terms in the Doe Licenses at issue are conditions, this does not impede Plaintiffs' ability to bring a breach of contract claim. *Patry on Copyright* is instructive: "[i]t is common for courts to say that if there is a material breach of a condition of the license, the copyright owner has the *option* of suing for copyright infringement *or* breach of contract, but if there is a violation of a covenant, only a breach-of-contract claim will lie." 5 *Patry on Copyright* § 17:43 (emphasis added); *see also* 3 *Nimmer on Copyright* § 10.15 (emphasis added) ("If the grantee's violation consists of a failure to satisfy a condition to the grant (as distinguished from a breach of a covenant), it follows that . . . the

---

Cir. 2003) (holding that documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Relevant here, Plaintiffs argue that Defendants breached six open-source licenses: the MIT License (ECF No. 98-1 at 58), GNU General Public License version 2.0 (*id*. at 28–34), GNU General Public License version 3.0 (*id*. at 35–48), GNU Affero General Public License 3.0 (*id*. at 16–27), 3-Clause BSD License (*id*. at 9), and Apache License 2.0 (*id*. at 2–6).

10

grantee's conduct *may* constitute copyright infringement."); *Costello Pub. Co. v. Rotelle*, 670 F.2d 1035, 1041 (D.C. Cir. 1981) (citing 3 *Nimmer on Copyright* § 10.15) ("if Talbot Press failed to satisfy a condition to the license, any use by the licensee or its assignee would constitute an infringement of copyright and defendant-intervenors could elect to pursue a remedy for infringement rather than breach of contract."); *Sohm v. Scholastic Inc.*, 959 F.3d 39, 46 (2d Cir. 2020) (quotation marks and alteration omitted) ("If a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement."); *Sun Microsystems*, 188 F.3d at 1121 (if the licensee fails to satisfy the condition and "acts outside the scope [of the license], the licensor can bring an action for copyright infringement."). Accordingly, the Court declines to read in a requirement that a plaintiff *must* bring suit for copyright infringement in the event of a breach of condition.

Finally, OpenAI contends that *Jacobsen* "is relevant because it found that terms similar to those in the Doe Licenses were conditions to the license grant (giving rise to a copyright claim), and not covenants undertaken by the licensee (giving rise to a contract claim)." ECF No. 244 at 19. In OpenAI's view, "[t]he same analysis applies whether the plaintiff ultimately brings a copyright or contract claim." *Id.* The Court disagrees. Although the language of the licenses in *Jacobsen* is fairly analogous to the language of the Doe Licenses, this is immaterial to whether Plaintiffs can bring a breach of contract claim. As evidenced by the treatises and caselaw above, suing for copyright infringement is not the exclusive avenue a plaintiff must pursue in the event of a breach of a condition of a license—it is simply one option a plaintiff may elect.

Therefore, the Court concludes that Plaintiffs have alleged a breach of contract claim for violation of open-source licenses.

### C. Unjust Enrichment and Punitive Damage Requests

#### 1. Unjust Enrichment

Finally, the Court addresses Defendant GitHub's argument that Plaintiffs' request for monetary relief in the form of unjust enrichment, as well as their request for punitive damages, should be denied. ECF No. 214-2 at 24–25. Agreeing with GitHub on both fronts, the Court dismisses Plaintiffs' requests for unjust enrichment and punitive damages.

11

Beginning with unjust enrichment, "[u]njust enrichment is not a cause of action [] or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (internal quotations and citations omitted). "There are several potential bases for a cause of action seeking restitution. For example, restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason. Alternatively, restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (internal quotations and citations omitted).

GitHub argues that Plaintiffs' "request for unjust enrichment is insupportable under California law." ECF No. 242-1 at 18. GitHub avers that "although unjust enrichment is sometimes a 'theory underlying a claim that a defendant has been unjustly conferred a benefit,' a plaintiff must [also] plead 'mistake, fraud, coercion, or request.'" ECF No. 214-2 at 25 (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). California law supports this position: absent an exception, "a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172 (2001). The Court agrees with GitHub that Plaintiffs' breach of contract claims do not contain any allegations of mistake, fraud, coercion, or request. Accordingly, unjust enrichment damages are not available.[8]

In response, Plaintiffs point to the Restatement (Third) of Restitution and Unjust Enrichment § 39, which provides that where "a deliberate breach of contract results in profit to the

---

[8] To the extent Plaintiffs' request for unjust enrichment monetary relief stems from their standalone claim of unjust enrichment that was previously dismissed with prejudice, the Court agrees with GitHub that such a request is improper and must be stricken. *See Santa Clara Valley Water Dist. v. Olin Corp.*, No. 07-cv-03756-RMW, 2007 WL 2890390, at *5 (N.D. Cal. Sept. 28, 2007) ("Improper prayers for relief are proper subjects for a motion to strike.").

12

defaulting promisor and the available damage remedy affords inadequate protection to the romise's contractual entitlement, the romise has a claim to restitution of the profit realized by the promisor as a result of the breach." Restatement (Third) of Restitution and Unjust Enrichment, § 39 (2011); *see* ECF No. 234 at 23. Plaintiffs, however, cite to no California authority (and the Court is aware of none) that adopts Section 39. *See AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1372 (11th Cir. 2021) (rejecting plaintiff's reliance on Section 39 in asserting that, as a remedy for its breach-of-contract claims, it was entitled to disgorgement of defendant's profits, as Georgia law did not follow Section 39 in permitting disgorgement as a remedy for claims sounding in contract.). Further, Plaintiffs contend that 55 Cal. Jur. 3d Restitution § 2 supports their position, as it states that "[a] party to an express contract can assert a claim for restitution based on unjust enrichment by alleging in that cause of action that the express contract is void or was rescinded." ECF No. 234 at 24. But critically, Plaintiffs do not assert that the contracts at issue are either void or rescinded.

The caselaw Plaintiffs provide is similarly unavailing. In *MSC.Software Corp. v. Heroux-Devtek Inc.*, No. 8:19-cv-01987-SB-(DFMx), 2021 WL 9696752, at *2 (C.D. Cal. Sept. 16, 2021), the court concluded that "contrary to Defendant's assertion, Plaintiff's request for restitution may still be tried by a jury." However, in reaching that conclusion the *MSC* court relied on caselaw concerning quasi-contract. *See Welborne v. Ryman-Carroll Found.*, 22 Cal. App. 5th 719, 725 (2018) ("A cause of action for quasi-contract invokes consideration of equitable principles, rather than of contract . . . . In applying the principles of unjust enrichment, . . . a plaintiff is entitled to restitution of the amount at issue."). The other cases Plaintiffs cite fall prey to the same issue. *See Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938–39 (2009) (allowing plaintiffs to recover for unjust enrichment on a quasi-contract theory); *Alkayali v. Hoed*, No. 18- cv-777, 2018 WL 3425980, at *6 (S.D. Cal. July 16, 2018) (citing cases relying on quasi-contract).

One final point bears mention. The Court conducted additional research concerning whether "a defendant's unjust enrichment can satisfy the 'damages' element of a breach of contract claim, such that disgorgement is a proper remedy." *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 Fed. Appx. 665, 669 (9th Cir. 2010). In *Foster Poultry Farms, Inc.*, the Ninth

13

held that "[u]nder California law, disgorgement of improperly obtained profits can be an appropriate remedy for breach of a contract . . . ." *Id.* (citing *Ajaxo Inc. v. E*Trade Group, Inc.*, 135 Cal. App. 4th 21, 56 (2005)). The Court declines to follow the reasoning of this non-binding case. In *Ajaxo Inc.*—the sole California case upon which *Foster Poultry Farms, Inc.*, relies—the plaintiff established that the defendant provided protected information to a competitor, and in doing so, violated the terms of their NDA. *Ajaxo Inc.*, 135 Cal. App. 4th at 55–56. As damages for the breach of the NDA, the plaintiff was awarded unjust enrichment damages. *Id.* However, that was not because the *Ajaxo Inc.* court determined that, as a matter of California law, unjust enrichment damages were generally recoverable for a breach of contract. Rather, the NDA in *Ajaxo Inc.* expressly "allow[ed] for an equitable remedy in addition to 'whatever remedies it might have at law.'" *Id.* at 58. Put differently, the unjust enrichment measure of damages was explicitly written into the parties' contract. *See Adcor Indus., Inc. v. Beretta U.S.A. Corp.*, 248 A.3d 1137, 1150 (2021) (concluding that the *Ajaxo Inc* court determined that unjust enrichment damages applied because they were "grounded in the parties' contract," not because "unjust enrichment damages, as a matter of California law, were generally recoverable for a breach of NDA."). To this Court's knowledge, absent rare circumstances,[9] California courts do not hold that a party may recover restitution of a defendant's unjust enrichment as a remedy where valid contractual agreements exist and define the parties' rights.[10]

In sum, Plaintiffs' claims do not support they remedy they seek. Plaintiffs have failed to establish, as a matter of law, that restitution for any unjust enrichment is available as a measure of Plaintiffs' damages for their breach of contract claims.

### 2. Punitive Damages

Turning to GitHub's arguments concerning punitive damages, the Court agrees that these

---

[9] *Dunkin v. Boskey*, 82 Cal. App. 4th 171 (2000), allowed recovery for breach of contract on an unjust enrichment theory. That case, however, involved a unique set of facts concerning an artificial insemination contract involving an unmarried couple. After the child was born, the mother began to deny the male partner his rights under the contract. The court concluded that the male partner could not recover under breach of contract for loss of the relationship with the child, but it held he could recover "special damages for readily ascertainable economic loss under an unjust enrichment theory." *Id.* at 195.

[10] *Foster Poultry Farms, Inc.* has also not been cited by any other Ninth Circuit decision.

claims must be dismissed. For one, Plaintiffs' opposition fails to address GitHub's motion to dismiss Plaintiff's punitive damages claim. This alone warrants dismissal of Plaintiffs' claim for punitive damages. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (finding that a failure in an opposition to address arguments raised in a motion to dismiss "constitutes abandonment of the claim," which results in dismissal with prejudice). But regardless, the sole remaining causes of action are for breach of contract, for which punitive damages are generally not recoverable. *Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 77 (1993) ("As a general rule, California law does not authorize the award of general or punitive damages for breach of a commercial contract."); *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *21 (N.D. Cal. Nov. 11, 2016) ("the parties agree that punitive damages are only available for contract claims if the breaches of contract are also tortious.").

## CONCLUSION

In sum, the Court dismisses Plaintiffs' Section 1202(b) claim, this time with prejudice. The Court declines to dismiss Plaintiffs' claim for breach of contract of open-source license violations against all Defendants. Finally, the Court dismisses Plaintiffs' request for monetary relief in the form of unjust enrichment, as well as Plaintiffs' request for punitive damages.

**IT IS SO ORDERED.**

Dated: June 24, 2024

_____
JON S. TIGAR
United States District Judge

15