Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
William W. Castillo Guardado (State Bar No. 294159)
Holden J. Benon (State Bar No. 325847)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                lkessler@saverilawfirm.com
                eabuchanan@saverilawfirm.com
                wcastillo@saverilawfirm.com
                hbenon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:          mb@butericklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| J. DOE 1 et al.,<br><br>*Individual and Representative Plaintiffs,*<br><br>v.<br><br>GITHUB, INC., et al.,<br><br>*Defendants.* | Case Nos.     4:22-cv-06823-JST<br>              4:22-cv-07074-JST<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br>Date:         July 12, 2024<br>Time:         1:30 p.m.<br>Courtroom:    6, 2nd Floor<br>Judge:        Hon. Jon Tigar |

Plaintiffs Does 1 through 5 and the proposed class ("Plaintiffs"); Defendants GitHub, Inc. ("GitHub"); Microsoft Corporation ("Microsoft"); and OpenAI, Inc.; OpenAI, LP; OpenAI OpCo, LLC; OpenAI GP, LLC; OpenAI Startup Fund GP I, LLC; OpenAI Startup Fund I, LP; OpenAI Startup Fund Management LLC, OpenAI LLC, OAI Corporation, OpenAI Holdings LLC, OpenAI Holdco LLC, OpenAI Investment LLC, Open AI Startup Fund SPV I, LP, and OpenAI Startup Fund Management, LLC ("OpenAI") file this Joint Case Management Statement ("CMS") pursuant to ECF No. 231.

I.   **STATUS OF DISCOVERY**

A.   **Plaintiffs' Discovery Requests**

1.   **Discovery Propounded by Plaintiffs and Responses from Defendants.**

**Requests for Production of Documents ("RFPs"):**

***Status of Microsoft and GitHub Document Production:***

**Plaintiffs' Position:**  Plaintiffs have attempted to conduct ESI discovery in a manner consistent with Guideline 1.02 (Cooperation) of the Northern District of California's Guidelines for the Discovery of Electronically Stored Information. As explained below, Plaintiffs' efforts have been continually frustrated by Defendants' delays and empty promises. To date, over a year into the litigation, and despite regular meet and confers, few documents have been produced—Microsoft has produced only one document; GitHub has produced roughly one thousand documents, and OpenAI has produced approximately 185 documents. The lions-share of the documents that have been produced are publicly available, or are routine discovery that should have been produced months ago (e.g., organizational charts).

On July 12, 2023 Plaintiffs served First Sets of Requests for Production on GitHub (49 requests), Microsoft (60 requests), and OpenAI (57 requests). Defendants served responses and objections on August 18, 2023. The First Set of Requests was served prior to the Court's entry of the ESI protocol. In the September 8, 2023 Joint Case Management Statement (ECF No. 153), Defendants attributed their failure to produce any documents to the lack of an ESI Protocol in this case. Then, Defendants ignored repeated

requests to meet and confer on Plaintiffs' draft ESI Protocol until shortly before the deadline set by this Court. *See* ECF No. 166. The Court entered a version of the Northern District of California ESI Patent Protocol which, among other things, limits email ESI discovery to five custodians and five search terms and does not account for non-email ESI. Even after the entry of an ESI Protocol, document production continued to lag.

On March 4, 2024, Plaintiffs served their second set of requests for production to Defendants Microsoft and GitHub. On March 14, 2024, Plaintiffs served their third request for production of documents, emails specifically, pursuant to the ESI protocol, on Defendants Microsoft and GitHub. On May 23, 2024, Plaintiffs sent a Supplemental Third Set of RFPs to Microsoft and GitHub with revised search terms and custodians regarding discovery topics gleaned from the GitHub production.

Plaintiffs have sought information regarding corporate structure; identification of those with management or other responsibility for the conduct alleged; the creation, training and operation of the AI models utilized by GitHub Copilot; the source and use of the training data and datasets; use of and compliance with applicable open-source licenses; the AI models trained on Plaintiffs' code outputting matches or near matches of that code; submissions of information to regulators and governmental agencies; public statements regarding these topics; business and financial relationships between and among the parties and their principals, including specifically Microsoft's financial interest in OpenAI's models and Copilot's operation; income, revenue and profit sharing from the sale or distribution of Copilot; and insurance policies and other materials ordinarily produced in cases of this type. Much of this information is classic first-wave discovery common in all cases. Nonetheless, Defendants objected to each and every one of Plaintiffs' RFPs.

Microsoft and GitHub first produced a smattering of documents on December 12, 2023. The productions consisted of one Microsoft document—their relevant organizational charts—and 331 GitHub documents. That Microsoft employees were in involved in many of these GitHub-sourced conversations

1  demonstrates that Microsoft's production of **one** document thus far has been a function of delay and

2  obfuscation, and nothing else. Indeed discovery has shown that Microsoft's employees developed

3  Copilot's duplicate detection feature. That GitHub has offered to make the Copilot model available for on-

4  site inspection is not an excuse for Microsoft's failure to make the most basic document productions

5  regarding relevant information that will provide Plaintiffs and Plaintiffs' experts with the knowledge base

6  to query the model adequately when it is ripe to do so. Nor does inspection serve as a replacement for

7  contemporaneous documents evidencing the development, testing, sourcing or other aspects of Copilot's

8  development or operation. Microsoft has known but failed to disclose that its employees were directly

9  involved in the creation, operation and management of Copilot and its underlying models, and Microsoft

10  employees were directly involved in addressing the problem of Copilot regurgitation its training data.

11       With respect to GitHub specifically, GitHub recently produced 533 documents earlier this month,

12  June 2024. Microsoft has yet to supplement its production, despite repeatedly promising to do so. But

13  Microsoft has recently tried to delay production yet again, citing unspecified technical difficulties related

14  to searching Slack, its internal messaging platform, as reasons they need to delay production and further

15  discuss search terms and custodians. They further have intimated all their productions need to be put on

16  hold for 21 days to assess the proportionality of discovery given the Court's recent order dismissing

17  Plaintiffs DMCA claims. Many, if not all of Plaintiffs' RFPs, however, apply with equal force to the

18  breach of contract claim (and the breach of open-source license claim in particular) as they did to the

19  DMCA claim. Nor do technical difficulties concerning Slack inhibit Microsoft's ability to produce other

20  categories of ESI such as emails. Thus, Microsoft and GitHub's excuses are merely another delay tactic.

21  Such endless delay will eventually require court intervention if not resolved soon and in good faith.

22       Microsoft, in turn, has repeatedly changed its reasons for not producing other go-get documents,

23  from claiming, for example, they are not a party to the contracts and not liable for breaches, to suggesting

24  the contracts are not subject to multiple reasonable interpretations and not ambiguous and can be

25

objectively interpreted without discovery into Microsoft's role, to claiming the scope of discovery is contingent on the Motion to Dismiss that was just recently decided. The limited document production provided by GitHub has shown that Microsoft had a role at every stage in the creation and operation of GitHub Copilot, which was a partnership/joint venture between OpenAI, and Microsoft/GitHub. Microsoft employees help test and run the models developed by OpenAI and used by Copilot, and Microsoft runs the operation of Copilot on its Azure cloud computing system. Microsoft employees helped develop the duplication detection feature in Copilot. Microsoft sells Copilot directly through its Visual Studio software. Microsoft has a financial interest in OpenAI and certain of its models, including the models that power Copilot, into which Plaintiffs seek discovery. Plaintiffs await the promised production of the agreements between OpenAI and Microsoft/GitHub regarding Copilot and models that use GitHub repositories as training data that Microsoft agreed to produce.

**Microsoft and GitHub's Position:**  Plaintiffs are abusing the privilege of the Court's time and attention to this matter with a litany of bickering complaints that neither fairly depict the course of discovery nor raise any disputes ripe for this Court's intervention.

From the outset of discovery, GitHub and Microsoft responded that the most pertinent evidence in this case was (1) the source code demonstrating the operation of the product at issue, GitHub Copilot; and (2) data generated by usage of the product.  GitHub and Microsoft always recognized that the breach of contract claims would require such discovery, irrespective of the parties' disputes about the remaining scope of the case playing out in multiple motions to dismiss.  Rather than focus on what was clearly necessary, Plaintiffs have utterly failed to pursue relevant discovery of these topics efficiently and in good faith.  Instead, they focused all of their time and attention on (1) material with at best fringe theories of relevance, and (2) the most burdensome possible approaches to even relevant matters.

To wit, as to the first category, source code, in its very first set of document responses in August 2023, GitHub tendered its source code for inspection.  Both GitHub and Microsoft's discovery responses

1   called the source code the "source of truth" about how the GitHub Copilot product operates—a set of facts

2   essential to any claim that the operation of the product breaches a contractual obligation.  Counsel for

3   GitHub also explained, repeatedly, that GitHub's main line of business is to offer systems for managing

4   the development of source code and that GitHub used its own source code management systems to

5   develop its GitHub Copilot product.  Accordingly, the vast majority of information about how the product

6   was developed and operates is contained within the GitHub source code repository used to develop

7   GitHub Copilot.  Nevertheless, nearly a year later, Plaintiffs *have never set foot in a room with GitHub's*

8   *source code repository*.

9        Instead, Plaintiffs pursued a burdensome and inefficient companywide fishing expedition for all

10  documents and communications stored in all of the company's *other* systems while ignoring the nuts and

11  bolts of the product itself.  Despite the total inefficiency of Plaintiffs' approach, GitHub nonetheless

12  collected and produced *its entire Google Docs repository* of documents regarding the development of

13  GitHub Copilot.  Plaintiffs misleadingly attempt to characterize this as a paltry production.  It was a

14  complete production of exactly what they asked for, without limitation other than privilege.  The problem

15  is that what Plaintiffs want is in a place that they apparently don't want to look.  Now, Plaintiffs have

16  moved on from the entire Google Docs repository and are seeking vast quantities of emails and other

17  electronic messages *from more than 30 named Microsoft and GitHub employees and from every member*

18  *of several teams within GitHub and Microsoft* despite the limitations expressly adopted by the Court in the

19  ESI Protocol.  Plaintiffs' approach to discovery about how the product operates is absurd.

20        As to the second category, usage data, Plaintiffs have been equally or even more dilatory when it

21  comes to pursuing the data that would likely be the most pertinent evidence of whether the GitHub Copilot

22  product ever offered any code matching their own.  Plaintiffs have no evidence at all that anyone other

23  than a subset of themselves have caused GitHub Copilot to suggest matching code.  The obvious place to

24  look for such evidence is in the usage data, which GitHub has been maintaining at its own considerable

25

expense and also occasional disruption to its own operations.  GitHub first voluntarily disclosed the schema and descriptions of such usage data all the way back in September 2023.  Plaintiffs then ignored that disclosure for months.   Eventually they asked for a sample of the data, and on February 29, 2024, GitHub voluntarily produced a sample.  More months went by without any word from Plaintiffs.  Finally, approaching nine months after GitHub's first disclosure regarding usage data and when the parties were approaching 90 days from the fact discovery cutoff, Plaintiffs finally woke up and provided a draft of a 30(b)(6) Deposition Notice designed to assist them in conducting discovery of the usage data.  GitHub immediately agreed to produce a witness on many of the proposed topics and has been working to identify the witness and offer dates for this deposition.

Regarding ESI, Plaintiffs have been as dilatory and extreme in their approach as on these other issues.  On November 16, 2023, Microsoft and GitHub first sent a letter requesting that Plaintiffs serve custodial document requests as outlined in paragraphs 6 and 8 of the ESI Order issued in this matter.  *See* ECF No. 168 ("ESI Order").  GitHub specifically identified Slack as a source of custodial data in meet and confers, and also repeatedly said to Plaintiffs' counsel that the challenges associated with production of Slack data were significant.  Plaintiffs waited three months and sent a letter.  Finally, on March 14, 2024, Plaintiffs propounded custodial document requests.  Those requests included requests for both e-mail production and other custodial ESI (like Slack messages) that went far beyond the limits of the ESI Order—as Microsoft and GitHub noted in their objections and responses served on April 15.  The parties have conducted *several* meet-and-confers on this topic.  Finally, on May 28, 2024, Plaintiffs sent a letter that prioritized custodians and hit counts while continuing to seek ESI from more than 30 named Microsoft and GitHub employees and potentially dozens of additional members of GitHub and Microsoft teams.  Microsoft and GitHub are currently in the process of collecting and processing data to provide hit counts for the custodians and search terms that Plaintiffs identified in that letter as their top priority custodians, and offered to assist Plaintiffs with identifying key custodians for specific topics to the extent

Plaintiffs are unable to determine the proper individuals from Microsoft's and GitHub's interrogatory responses and document productions.  The volume of Slack data is large and Slack data is singularly resistant to efficient processing.  GitHub is continuing to explore means of speeding up the process but it may take another few weeks to be able to process the Slack data and provide the Slack and email hit counts in order to enable the parties to evaluate the proportionality of the search terms.

As to the overall scope of relevance of discovery, this case started with 22 claims and now has 2. Microsoft and GitHub have consistently explained that the scope of relevance is tied to the pleadings, indeed one such dispute ripened into a protective order entered by Judge Ryu regarding the six subpoenas and dozens of document requests served by Plaintiffs regarding the GitHub acquisition.  As the motion to dismiss the Second Amended Complaint was pending and fully briefed, Microsoft and GitHub offered to supplement their responses to the pending requests for production within 21 days of the order on the motion to dismiss to identify any requests to which they will maintain relevance and burden/proportionality objections in light of the final scope of the pleadings.  Microsoft and GitHub reiterated that commitment on June 25, 2024—the day after the Court's order.  Microsoft and GitHub plan to serve those supplemental responses by July 15, 2024, and expect that the parties will thereafter continue their meet-and-confers.  Microsoft and GitHub also agreed to produce additional non-custodial documents that are not impacted by the Court order prior to July 15, 2024.

There are no disputes ripe for Court intervention.

### ***Status of OpenAI Document Production:***

**Plaintiffs' Position:** OpenAI initially produced 40 documents—almost all publicly available and has since produced 143 more. OpenAI promised in an early April meet and confer to update its interrogatory responses and produce further relevant documents regarding its use of GitHub repositories as training data for the base GPT models, and the quantity of the GitHub-sourced training data used in both the base GPT models and used to "fine tune" the multiple AI models used in Copilot. Copilot utilizes AI

models that are "fine-tuned" versions of OpenAI's GPT models, which were trained on the entirety of GitHub public repositories. Plaintiffs await such information to advance the protocol regarding the production, inspection, and/or online access to such training data, and to assist in identifying relevant custodians.

Plaintiffs are aware that OpenAI has made a substantial document production numbering tens of thousands of documents in separate matters pending in this district and the Southern District of New York involving ChatGPT (), a generative AI product based on the same GPT models used to develop Codex and Copilot. *See Authors Guild v. OpenAI Inc.,* 1:23-cv-08292, (S.D.N.Y.); *In re OpenAI ChatGPT Litigation*, No. 3:23-cv-03223-AMO. This asymmetry in OpenAI's document production is puzzling, especially considering that  those cases were filed months after this one. Plaintiffs' counsel is also prosecuting the action pending in this district, and OpenAI is also represented by the same counsel in both the action pending here in the Northern District of California and in the Southern District of New York. Plaintiffs believe many of the documents produced in those actions are relevant here and responsive to Plaintiffs' RFPs. To be clear, Plaintiffs are not asking for "cloned" discovery—Plaintiffs have only asked OpenAI to cross-produce *relevant* documents here because the GPT models at issue there were all trained on GitHub's public repositories and are used as the "base" models for the code-specific models used by Copilot (including but not limited to Codex, which was a fine-tuned version of GPT-3).

Plaintiffs have requested cross-production both orally and in writing. OpenAI has thus far refused to commit to cross-producing any documents. Any burden associated with producing those documents would be minimal given that these documents have already been identified, collected, and produced. Given their relevance and the nominal burden, OpenAI should cross-produce those documents in this matter. Plaintiffs will continue to meet and confer with OpenAI about the relevance and scope of cross-production.

**OpenAI's Position:**  Plaintiffs have not served any discovery since they served their First Set of Requests for Production ("RFPs") in July 2023.  OpenAI served its responses and objections in August 2023, and has made three productions since that date.  These productions comprise non-custodial documents regarding its corporate structure and corporate formation; employee organization charts reflecting those with management or other responsibility for the conduct alleged; documents describing the operation of the relevant technologies; Plaintiffs' GitHub licenses; and insurance policies applicable to this case.  Because OpenAI is a research company that routinely publishes its research, much of the relevant technical documentation Plaintiffs have requested and OpenAI has produced is publicly available.

OpenAI is continuing its review of potentially responsive documents and intends to make subsequent rolling productions of relevant documents.  This process has been hindered by Plaintiffs' continual focus on demanding modifications to provisions of the final ESI Protocol (applicable only to email documents) rather than moving discovery forward.  For example, the ESI Protocol requires that Plaintiffs serve separate requests for email documents.  They have not done so.  Yet they have repeatedly insisted that the Protocol entered by the Court is unworkable and have aimed to modify it to permit ten email custodians and 15 search terms per email request.  But the Court previously considered and rejected Plaintiffs' arguments for an expanded number of custodians and search terms in the letter brief submitted by the parties prior to entering the Protocol.  ECF No. 165 (letter brief filed by parties with ESI proposals for each).  When Plaintiffs serve proper email requests under the ESI Protocol that the Court entered, OpenAI will respond to those requests appropriately.

Moreover, in an effort to move discovery forward, OpenAI proposed that the parties agree to a mutual exchange of search terms and custodians for non-email document requests.  OpenAI shared a proposed list of custodians and search terms with Plaintiffs on May 23, and invited Plaintiffs to request up to ten additional search terms or propose alternate terms or custodians.  Plaintiffs did not respond to that

proposal.  OpenAI will likely provide a revised list of custodians and search terms in light of the Court's Order dismissing Plaintiffs' Section 1202(b) claim.  ECF No. 253.

While ignoring OpenAI's efforts to progress with discovery, Plaintiffs sent a letter to OpenAI on June 25, 2024 (1) stating their belief that they are entitled to all documents produced in the *In re OpenAI ChatGPT* case and (2) indicating that they believed "[m]any (if not all) of the discovery requests relevant to the DMCA claims and the breach of contract claim are co-extensive" and therefore all propounded discovery requests continue to be relevant.[1]  Neither argument has merit.

***First***, Plaintiffs point to no specific documents produced in the *In re OpenAI ChatGPT* case that are relevant to the claims here.  Instead, they merely claim that the documents produced in the copyright case "appear to be relevant" and demand that "OpenAI produce them given that there is no burden in producing them given that they have already been collected and that proportionality considerations set forth in Rule 26 support the discovery."  Plaintiffs misunderstand the relevant standard—they must make an adequate showing that the requested discovery is relevant to their remaining breach of contract claims.  *See, e.g., Ludlow v. Flowers Foods, Inc.,* No. 18-cv-1190, 2019 WL 6252926, at *18 (S.D. Cal. Nov. 22, 2019) (requesting "all documents produced in another matter is not generally proper" because the propounding party "cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for").  Plaintiffs cannot demonstrate the relevance of documents produced in another case where that case involves far different claims, plaintiffs, and OpenAI products.  Indeed, this case is the *only* one among various recently filed against OpenAI (both in this

---

[1] In this joint case management statement, Plaintiffs request (for the first time) that OpenAI produce documents produced in *Authors Guild v. OpenAI Inc.,* 1:23-cv-08292, (S.D.N.Y.) in addition to *In re OpenAI ChatGPT Litigation*, No. 3:23-cv-03223-AMO (N.D. Cal.).  This request is similarly without basis.

District and others) that involves breach of contract claims for open-source licenses.  The other cases (*In re OpenAI ChatGPT* included) bring various copyright, trademark, and consumer protection claims.

**Second**, Plaintiffs cannot reasonably claim that every discovery request bearing on their dismissed DMCA claim is also relevant to their breach of contract claims.  For example, ROG No. 10 asks OpenAI to identify "all Persons [. . . ] previously and currently responsible for, or having oversight or control over Ethics Teams relating to artificial intelligence ethics including but not limited to Copilot."  Artificial intelligence ethics are wholly unconnected to the breach of contract claims Plaintiffs bring in their Complaint.  Similarly, RFP No. 51 requests "advertising, promotional materials, press releases, magazines, blogs, social media posts or feeds, or websites CONCERNING COPILOT."  These materials have little relevance to the licenses governing Plaintiffs' code and OpenAI's purported breach of those licenses.  OpenAI will meet and confer with Plaintiffs on these issues but anticipates that Court intervention will be necessary if Plaintiffs do not narrow their current discovery requests to appropriately tailor them to the remaining claims.

### Issues Applicable to All Defendants

**Plaintiffs' Position:** Over a year after discovery was opened, Microsoft and GitHub have not identified any custodians for document production. OpenAI has only identified four custodians they are searching for non-email ESI; OpenAI has still not identified potential custodians for email ESI. Plaintiffs have been forced to propose custodians for searches based on GitHub's production and public information. Plaintiffs have been routinely and regularly attempting to negotiate and identify potential custodians throughout the discovery process, including requesting Defendants, consistent with Guideline 1.02, to identify who they believe should be potential custodians. However, neither Defendant has identified even the five custodians Plaintiffs are entitled to under the operative ESI Order. Defendants have cited various shifting reasons for their refusal to provide or agree to disclose potential custodians, including the pending motions to dismiss (even though discovery requests have been pending for over a

year and those requests would be unaffected by the outcomes of the motions to dismiss); and improperly conditioning identification of custodians to other unrelated aspects of discovery, such as demanding Plaintiffs answer premature contention interrogatories before being willing to produce relevant documents. Plaintiffs, for their part, despite having no obligation, consistent with Guideline 1.02's dictate encouraging parties to cooperate in ESI discovery, have met and gone beyond Defendants' conditions, but Defendants continue to refuse to identify custodians.

This is complex litigation against three multinational corporations involving two separate types of contract disputes stemming from open-source licenses and GitHub's terms of service, respectively. The terms of the open-source licenses at issue are written broadly and require appropriate discovery into whether Copilot, a commercial generative AI product that was trained on class members' computer code and outputs it, is a "use" or is "based on" that code, such that it triggers the duties under the open-source licenses. Defendants know this—after all, the licenses were attached to Plaintiffs' complaint. GitHub's terms of service and privacy policies are similarly broad: whether selling the Copilot product violates GitHub's promises that it would not and does not "sell" its users' code requires discovery into the objective facts surrounding Microsoft and GitHub's behavior subsequent to Plaintiffs' acceptance of the contracts at issue when they posted their code subject to open-source licenses on GitHub. Further, Plaintiffs seek discovery into the relationship between three multinational corporate defendants who together developed and operate commercial artificial intelligence technology and have complex financial interests with respect to various aspects of Copilot. Contrary to OpenAI's assertion otherwise, marketing of models trained on GitHub repositories that regularly regurgitate their training data is relevant extrinsic evidence to the promise not to sell Plaintiffs' code at issue in this litigation. The parties are continuing to meet and confer on the use of more than five search terms and custodians for email discovery.

Plaintiffs have conducted face-to-face meetings with GitHub, Microsoft, and OpenAI on the outstanding discovery requests, as well as countless meet and confers regarding custodians and search

terms. The parties have continued to discuss the necessary searches and custodians by videoconference and letter and Plaintiffs have arranged for further meetings with Defendants to continue these discussions. Consistent with the principles of cooperation underlying discovery as outlined by the Federal Rules, the Sedona Conference principles, and the Northern District of California's Guidelines for the Discovery of Electronically Stored Information, Plaintiffs continue to be committed to the principles of cooperation in order to minimize litigation costs and delay; but discovery is a two-way street.

Generally, Plaintiffs anticipate Defendants will continue to produce responsive documents through (1) the collection of responsive materials within their possession, custody, or control (*i.e.*, "go and get") and (2) implementing search terms for custodial ESI as new information is uncovered. Plaintiffs propounded discovery requests months ago to its selection of custodians and search terms which Defendants' have largely improperly refused to answer or continue to delay in answering. *See In re Folding Carton Antitrust Litig.*, 76 F.R.D. 417, 419 (N.D. Ill. 1977) (describing the types of information requested by Plaintiffs here as "classic first-wave discovery"). OpenAI and Microsoft have produced only a fraction of the documents requested despite repeated promises to produce more. Considering Defendants' continued refusal to comply with their discovery obligations, Plaintiffs anticipate some remaining discovery issues will require court intervention, which will soon be brought to Magistrate Judge Ryu now that the pleadings have been resolved.

**OpenAI's Position:**  As discussed in the section above, Plaintiffs have not served *any* requests for email communications.  OpenAI has not identified any email custodians because, without knowing what Plaintiffs' email requests will be, OpenAI cannot determine which custodians would be appropriate.  Once Plaintiffs make the appropriate requests, as required by the ESI Protocol, OpenAI will identify appropriate custodians.

As to non-email documents, as noted above, OpenAI has already identified four non-email custodians and search terms for non-email documents (despite having no obligation to do so under the ESI

1    Protocol, which applies only to email document requests), but has yet to hear back from Plaintiffs on

2    whether they believe additional custodians or search terms would be appropriate.  Plaintiffs incorrectly

3    state that they have been "forced to propose Custodians for searches based on GitHub's production and

4    information."  Plaintiffs have *never* proposed custodians for searches to OpenAI.

5           OpenAI also believes that the scope of continuing discovery should be revisited in light of the

6    Court's dismissal of the DMCA claim.  As discussed above, Plaintiffs have indicated that they not only

7    believe that all pending discovery remains relevant, but also that discovery should be expanded to include

8    all discovery produced in two actions involving copyright claims not at issue here (*Authors Guild* and *In*

9    *re ChatGPT*).  OpenAI believes this position is improper (*see supra*) and anticipates Court intervention

10   will be needed if Plaintiffs refuse to appropriately narrow their discovery to the remaining claims.

11          **Microsoft and GitHub's Position:**  Microsoft and GitHub's position is outlined above.  Microsoft

12   and GitHub are currently in the process of collecting and processing data to provide hit counts for

13   Plaintiffs' top priority custodians, and have offered to assist Plaintiffs with identifying key custodians for

14   specific topics at their request.  There are no disputes ripe for Court intervention.

15          **Third Party Discovery:**

16                      ***Venture and Banking Subpoena Recipients***

17          **Plaintiffs' Position:**  Beginning in September 2023, Plaintiffs propounded discovery to certain

18   investment firms who were involved in providing investments to GitHub and were involved in the

19   purchase of GitHub by Microsoft. Those requests seek information regarding the open-source licenses at

20   issue in this lawsuit as well other information regarding the transactions.  Plaintiffs served the following

21   entities with subpoenas: (1) Morgan Stanley; (2) Hydrazine Capital; (3) Andreesen Horowitz, AH Capital

22   Management LLC; and (4) Sequoia Capital ("VC Recipients"). The VC Recipients confirmed such

23   information is contained in investment decks and other material prepared in connection with analyzing the

24   proposed transactions. Such information is relevant as proof of the elements of the breach of contract

25

claim, including Microsoft's intent to use GitHub repositories for training and selling Copilot, damages and other remedies. Microsoft and GitHub intervened, preventing VC Recipients from producing the agreed-upon material and filed a unilateral motion for protective order with Judge Ryu,[2] who delayed resolution until after Defendants' motions to dismiss the Second Amended Complaint (ECF No. 200) was resolved. *See* ECF No. 226. That order was recently entered. *See* ECF No. 253, dismissing Plaintiffs' DMCA claims. Regardless of the dismissal of the DMCA claims, Defendants' commercial intent and valuation of Plaintiffs' and class members code as training data for Copilot and Microsoft's other commercial generative AI products, as reflected in Microsoft's acquisition of GitHub, is relevant objective evidence of whether Microsoft and GitHub breached GitHub's promise to its users that it does not, and would not, "sell" Plaintiffs' code. Plaintiffs intend to seek the production of these documents forthwith.

**Microsoft and GitHub's Position:**  As the Court is aware, Plaintiffs' campaign of discovery regarding the GitHub Acquisition (six subpoenas, multiple interrogatories, and dozens of document requests) resulted in a protective order issued by Magistrate Judge Ryu deferring any discovery on this issue until the pleadings were settled.  ECF. 226.  The GitHub Acquisition has nothing to do with the standard terms of public OSS licenses drafted by third parties, terms of service between GitHub and its customers, whether any GitHub Copilot output matches Plaintiffs' code, whether any failure to attribute such output has caused Plaintiffs harm.  The Acquisition simply has nothing to do with any of the elements of the Plaintiffs' claims.  This is particular true in light of the Court's dismissal of the unjust enrichment remedy.  Plaintiffs sought this discovery to quantify a theory of value to GitHub that is plainly irrelevant.  Magistrate Judge Ryu has already provided a mechanism if this issue requires further attention from the Court.

There are no disputes ripe for Court intervention.

---

[2] Plaintiffs had sought similar material directly from Microsoft and GitHub. Both objected and refused to produce it.

### ___Former Employees of Defendants___

**Plaintiffs' Position:**  Plaintiffs served subpoenas for production of documents on former OpenAI employees David Willner, Daniela Amodei, and Dario Amodei. Mr. Willner performed agreed searches on his personal communications but has stated what he found is irrelevant and has only to do with broader Trust and Safety issues. Plaintiffs and Mr. Willner agreed to revisit the issue of the relevance of broader Trust and Safety issues of models that used GitHub repositories as training data after the Court's order on Defendants' motion to dismiss. Dario and Daniela Amodei have each agreed to run searches of their personal documents, and discussions regarding the production of their documents is ongoing.

**OpenAI's Position:**  On March 28, 2024, Plaintiffs served a subpoena on third party David Willner, former Head of Trust & Safety at OpenAI from February 2022 until July 2023.[3]  The parties have met and conferred numerous times on the propriety of this subpoena given Mr. Willner's knowledge and its relevance to the claims in the case.  As repeatedly expressed to Plaintiffs, during Mr. Willner's employment at OpenAI, he was primarily responsible for product safety issues that did *not* encompass copyright, regurgitation, licensing, or any other intellectual property issues.  Mr. Willner has no memory of ever working on issues related to copyright or potential regurgitation of training data, a fact also conveyed to Plaintiffs.  Despite this lack of relevant knowledge, Plaintiffs refused to withdraw their subpoena.  The parties did agree to further discussion of the relevance of the subpoenas after the Court's ruling on OpenAI's motion to dismiss.  This meet and confer has not yet occurred, though the dismissal of the DMCA claim eliminates the arguments that Plaintiffs have made to date about why Mr. Willner's testimony or documents would be relevant to the case.

---

[3] OpenAI's counsel in this matter was retained to represent Mr. Willner in his individual capacity.

### *Common Crawl Foundation*

**Plaintiffs' Position:** Plaintiffs served a subpoena on Common Crawl Foundation regarding donations from and agreements with the Defendants. Common Crawl runs software that crawls, scrapes, and archives the entire internet, whose corpus was used to train the AI models at issue. Common Crawl refused to produce documents citing disproportionate burden as a non-profit and the unresolved motion to dismiss in the litigation. Plaintiffs intend to pursue such documents now that the motions to dismiss have been resolved and upheld.

### Rule 30(b)(6) Deposition Notice on Telemetry Data:

**Plaintiffs' Position:** Plaintiffs are continuing to seek discovery related to Copilot's Telemetry Data (data generated by Copilot that is routinely stored in databases by Defendants). Such data includes the prompt and output pairings of Copilot's use as well as information about Copilot's duplication detection feature, which stores information about the identity of regurgitated training data. Microsoft and GitHub previously suggested seeking relief from storing Telemetry Data as it had previously agreed, through February of 2025. GitHub and Microsoft have indicated they are no longer seeking relief from the data storage agreement and are in the process of identifying a Rule 30(b)(6) deponent(s) and proposing dates for the deposition about the Telemetry Data, including how best to access or produce it for inspection.

### Interrogatories:

**Plaintiffs' Position:** On July 19, 2023, Plaintiffs propounded 14 interrogatories each on GitHub, Microsoft, and OpenAI. The interrogatories, among other things, ask Defendants to identify persons responsible for the subject matter or events relevant to Plaintiffs' claims, description or identification of training data, and identification and location of current and former employees who are likely to possess relevant information. These interrogatories are routine first-wave discovery requests propounded in nearly every case. Following an extension, on August 25, 2023, Microsoft provided limited responses to some

interrogatories, indicating their investigation was not complete, and objected to others. Microsoft, instead of answering interrogatories about its agreements with GitHub and OpenAI regarding Copilot and its underlying AI models, represented that it would produce those agreements. To date, Microsoft has not produced any documents other than one organizational chart, delaying their long-promised initial production of relevant documents. On September 28, 2023, GitHub supplemented its response to Interrogatory 12 regarding contact information of former employees. On December 19, 2023, GitHub submitted a second supplemental response in which it refused to identify the contracts between the parties but stated it would "produce final agreements between Microsoft and GitHub regarding Copilot, and final agreements between Microsoft and GitHub regarding the acquisition of GitHub by Microsoft." It has yet to do so. It further represented that GitHub did not train or develop the models underlying Copilot or Codex. Plaintiffs continue to discover information showing that Microsoft, GitHub and OpenAI developed numerous models together that are used in Copilot. Plaintiffs are continuing to meet and confer with Defendants regarding Interrogatory responses and supplementation.

OpenAI continues to stall in producing the information and supplemental interrogatory responses it promised in April 2024 (but would not provide a date certain to produce) regarding: (1) its use of GitHub repositories as training data for its AI models; (2) which of its models have been utilized as base models in Copilot; and (3) which models it has helped train or "fine-tune" for use in CoPilot. The Parties will continue to negotiate the terms of access to this training data and expect documents concerning the training of its models with GitHub repositories. Discovery regarding the GitHub-sourced training data, including the identification of the sources of the training data, how it was manipulated in "pretraining," its size and searchability, and its use by Defendants to train the products at issue in this case is a threshold discovery issue and is ongoing. Plaintiffs continue to work with OpenAI in good faith to obtain these discovery materials despite repeated delays.

**OpenAI's Position:**  OpenAI has repeatedly explained the burden associated with locating relevant information to respond to several of Plaintiffs' interrogatories.  It has communicated its progress in compiling the requested information during various meet and confers prior to the Court's Order dismissing the DMCA claim.  Following the Order, OpenAI believes many of Plaintiffs' interrogatories are no longer relevant given the claims remaining in this case.  OpenAI intends to meet and confer with Plaintiffs to discuss appropriate tailoring of the requests.

Additionally, OpenAI continues to diligently work to allow Plaintiffs access to the data used to train models used for Codex.  To that end, OpenAI sent Plaintiffs a draft training data inspection protocol on April 19, and technical details regarding how to effectively inspect that data on May 9.  For over two months, Plaintiffs have not provided any edits to the protocol or engaged in further negotiations with OpenAI on possible inspection of the data they claim is central to their case, instead leveling unfounded claims of delay against OpenAI.  OpenAI is amenable to continuing to meet and confer with Plaintiffs on access to training data if Plaintiffs can adequately explain its relevance to their remaining breach of contract claims.

**Microsoft and GitHub's Position:**  There are no disputes ripe for Court intervention.

**B.       Defendants' Discovery Requests**

**1.       Discovery propounded by Defendants and responses from Plaintiffs.**

**Requests for Production of Documents ("RFPs"):**

**Plaintiffs' Position:** On July 12, 2023, OpenAI served a separate set of RFPs on each of the five plaintiffs. On August 11, 2023, all Plaintiffs served objections and responses to OpenAI's first sets of RFPs and produced responsive documents (131 pages). Plaintiffs' production is complete. On July 27, 2023, GitHub and Microsoft jointly served separate sets of RFPs on each of the five Plaintiffs, broadly seeking material related to threats that Plaintiffs received (the "Joint RFPs"). On August 28, 2023,

Plaintiffs served objections and responses to the Joint RFPs. Plaintiffs' document production is substantially complete.

**OpenAI's Position:**  OpenAI continues to meet and confer with Plaintiffs regarding Plaintiffs' deficient production, which includes unreadable JSON files, a blank HTML file, emails without any metadata, and improperly redacted PNG files of Slack and other messages.  At this juncture, these disputes do not require Court intervention.

**Microsoft and GitHub's Position:**  Microsoft and GitHub agree with OpenAI that Plaintiffs' production is incomplete and deficient.  It will meet and confer with Plaintiffs.  At this juncture, these disputes do not require Court intervention.

**Interrogatories:**

**Plaintiffs' Position:**  On July 12, 2023, OpenAI served a separate set of interrogatories on each of the five Plaintiffs. On August 11, 2023, Plaintiffs served objections and complete responses to OpenAI's interrogatories. On October 11, 2023, GitHub propounded interrogatories on the Plaintiffs. All Plaintiffs provided complete responses on November 13, 2023.  On January 19, 2024, Plaintiffs served supplemental responses and objections to OpenAI regarding their first set of interrogatories. On March 5, 2024, GitHub and Microsoft sent Plaintiffs a letter requesting that Plaintiffs respond more fully to Interrogatories 1-10, and provide largely irrelevant information or information already in their possession. On March 28, 2024, GitHub served their second set of interrogatories on Plaintiffs and Microsoft served their first set. On April 26, 2024, Plaintiffs supplemented their responses to GitHub's first set of interrogatories. On April 29, Plaintiffs responded to Microsoft's first set and GitHub's second set of interrogatories. On May 6, Plaintiff Doe 4 supplemented their response and objections to OpenAI's first set of interrogatories. And on June 6, Plaintiffs supplemented their responses to Microsoft's first set and GitHub's second set of interrogatories. Microsoft and GitHub have not raised any further issues with

Plaintiffs' responses; Plaintiffs believe their responses are substantially complete, but will continue to meet and confer with respect to any perceived deficiencies.

**OpenAI's Position:**  On December 19, 2023, OpenAI sent Plaintiffs a letter notifying them of deficiencies in their interrogatory responses.  After OpenAI and Plaintiffs met and conferred on January 4, 2024 regarding these deficiencies, Plaintiffs served supplemental responses on January 19, 2024.  On February 8, 2024, OpenAI identified additional deficiencies with Plaintiffs' supplemental responses to Plaintiffs, who agreed to provide a response soon.  After substantial delay, Plaintiffs provided additional supplemental responses on May 6, 2024.  There are no disputes requiring Court intervention at this time.

**Microsoft and GitHub's Position**:  On March 5, 2024, Microsoft and GitHub sent a meet and confer letter to Plaintiffs regarding Plaintiffs' deficient responses to GitHub's First Set of Interrogatories. The Parties are still meeting and conferring regarding these responses.

On March 28, 2024, Microsoft and GitHub served contention interrogatories seeking, *inter alia*, the facts Plaintiffs contend support each element of their breach of contract claims, whether Plaintiffs contend any provisions of the contracts at issue are ambiguous, and the extrinsic evidence Plaintiffs contend is relevant to the question of interpretation of any allegedly ambiguous provisions.  On April 29, 2024, Plaintiffs served responses, refusing to respond to some interrogatories and failing to provide facts supporting Plaintiffs contentions in response to others.  After meeting and conferring regarding Plaintiffs' deficient responses, on June 06, 2024, Plaintiffs supplemented several of their responses to provide more information regarding their contentions, including that the open-source licenses at issue do not contain ambiguous terms.  However, Plaintiffs' supplemental responses failed to respond to several requests in full and improperly incorporated by reference lawyer correspondence and the Second Amended Complaint instead of providing separate and complete responses.  Accordingly, on June 14, 2024,

1    Microsoft and GitHub sent another meet and confer letter to Plaintiffs regarding remaining deficiencies.

2    The Parties are still meeting and conferring.

3         There are no disputes ripe for Court intervention.

4    **II.    INITIAL DISCLOSURES**

5         Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), Plaintiffs served their Initial Disclosures

6    on June 30, 2023. Defendants[4] served their initial disclosures on July 5, 2023. The Parties will supplement

7    Initial Disclosures, when necessary, as required by Rule 26(e). Plaintiffs have recently sought the

8    disclosure of any indemnity agreements between OpenAI and Microsoft that were not previously

9    disclosed. Plaintiffs continue to await production of the indemnity agreements between Microsoft and

10   OpenAI.

11   **III.    DISCOVERY REFERRAL**

12        **Plaintiffs' Position:**  On November 21, 2023, this Court issued its Order Referring All Discovery

13   Disputes to Magistrate Judge, which directs the parties to bring all future discovery disputes to Magistrate

14   Judge Ryu according to her procedures. ECF No. 175. Pursuant to Judge Ryu's standing order,[5] the parties

15   must have last met and conferred within five days of bringing any discovery dispute to the Court by joint

16   letter brief. A joint letter brief, ECF No. 213, regarding certain discovery requests related to information

17   about Microsoft's acquisition of GitHub is currently before Judge Ryu, who has postponed ruling on them

18   until after the pleadings have been resolved. ECF No. 226. Another letter brief is before Judge Ryu on the

19   propriety of discovery Plaintiffs seek into: (1) OpenAI's productions to government regulators that relate

20   to LLMs, GitHub, Copilot, or the ownership and control of OpenAI; and (2) persons and entities who own

21   interests of more than 5% of OpenAI. Microsoft's unity of interest, financial interest, control and

22

23   ───────────────

     [4] GitHub, Microsoft, and OpenAI are collectively referred to as "Defendants."

24   [5] https://www.cand.uscourts.gov/dmr-revised-standing-order-072022/

25

influence over OpenAI are discoverable issues in this matter. A videoconference hearing is scheduled for July 11, 2024, before Judge Ryu.

Because Defendants have been uncooperative and reticent in producing relevant responsive documents, Plaintiffs intend to submit a motion or joint stipulation to extend discovery in this matter in the coming weeks.

**OpenAI's Position:**  OpenAI disagrees that there is any need to extend discovery at this time, especially considering the narrowed scope of discovery following dismissal of Plaintiffs' DMCA claim. Any purported delay in discovery has been the result of Plaintiffs' refusal to engage with OpenAI to move the discovery process forward.  Nevertheless, OpenAI is willing to consider a reasonable extension of the case schedule, should Plaintiffs propose one.

**Microsoft and GitHub's Position:**  See above.

## IV.   CASE MANAGEMENT ORDERS

On August 7, 2023, the Court entered an Amended Stipulated Protective Order For Litigation Involving Patents, Highly Sensitive Confidential Information AND/OR Trade Secrets. ECF No. 145 ("Protective Order"). On October 30, 2023, the Court entered a Stipulated Order Concerning Expert Discovery. ECF No. 167 ("Expert Discovery Order"). On November 1, 2023, the Court entered an Order Re Discovery of Electronically Stored Information. ECF No. 168 ("ESI Protocol"). On November 21, 2023, the Court ordered all discovery disputes be referred to Magistrate Judge Donna M. Ryu. ECF No. 175. On December 12, 2023, the Court ordered the case management conference scheduled for December 20, 2023, to be continued to March 22, 2024. ECF No. 186.

## V.   ISSUES REQUIRING THE COURT'S ATTENTION

### A.   Scope of Discovery

**Plaintiffs' Position:**  The Plaintiffs anticipate that the Court or Magistrate Judge Ryu will be asked to determine the continued applicability of the model patent ESI protocol to this case if the parties cannot

agree on the appropriate number of custodians and search terms to satisfy the requisite diligence with which reasonable searches must be conducted under Fed. R. Civ. P. 34. Due to the significant delay in document production and the dearth of documents produced, the model patent order has proven unworkable. As discussed above, this matter is not typical patent litigation and involves far more nuanced issues regarding Defendants' creation of Copilot and Defendants' knowledge of and intent to breach open-source licenses and GitHub's terms and conditions wherein it promises not to sell its users' code.

Further, now that the DMCA claims have been dismissed, Defendants are already attempting to cancel meet and confers to supposedly "assess what discovery remains relevant and necessary." Given that the open-source licenses are licenses whose duties are triggered by use of the licensed code, the scope of discovery will be largely the same regardless of the disposition of the DMCA claims. Discovery into how Copilot copied Plaintiffs' code for training and creates infringing works "based on" or "using" Plaintiffs' code is relevant to whether the training and operation of Copilot triggers the duties of the open-source licenses, and whether Defendants breached those duties. Further, extrinsic evidence is discoverable and admissible to establish the meaning of the broad and ambiguous language of the contracts at issue, as they are applied to the training and sale of Copilot. This includes objective facts that inform the meaning of contract terms and the actions of the parties subsequent to the contract creation—when Plaintiffs and class members posted their code on GitHub under an open-source license.

Plaintiffs anticipate the potential need for court intervention to clarify the scope of discovery regarding the breach of the open-source licenses and GitHub's policies and promises not to sell its users' code.

**OpenAI's Position:**  OpenAI believes the operative ESI Protocol is appropriately tailored to discovery in this case, particularly after dismissal of the DMCA claim.  Plaintiffs have continually attempted to re-negotiate the provisions of the Protocol, raising the same arguments already considered— and rejected—by this Court.  *See* ECF No. 165 (arguing without basis that this case "is much more

1    complex than non-class patent or trade secret matters," necessitating 10 custodians and other provisions

2    rejected by the Court).

3         Contrary to Plaintiffs' assertions, they have made no attempt to contact OpenAI to schedule a meet

4    and confer after dismissal of the DMCA claim.  OpenAI has made no attempt to cancel any meet and

5    confers and remains willing to discuss the scope of discovery given the Court's narrowing of the claims in

6    this case.  As mentioned above, OpenAI anticipates the potential need for Court intervention should

7    Plaintiffs refuse to appropriately narrow their discovery requests to the claims remaining in this case.

8         **Microsoft and GitHub's Position:**  Plaintiffs' approach to the ESI Order has been to delay and

9    then completely ignore its limitations on the number of custodians and search terms.  This Court made

10   clear that it would pursue a baseball arbitration approach to the ESI Order.  As a result, Defendants

11   proposed a reasonable order based on the form used by the Court.  Plaintiffs proposed a 46-page

12   monstrosity that bore little resemblance to the model order, and bore no relationship to the type of case at

13   issue.  Unsurprisingly, the Court picked Defendants' form of order.  Ever since then, Plaintiffs have been

14   acting as if the Court chose their form of order instead.  They refused to serve custodial discovery

15   requests.  After they finally served custodial discovery requests, those requests specified far more

16   custodians and search terms than authorized.  Then they took the view that the Order authorized an

17   unlimited number of custodians and search terms, all they had to do was serve as many requests as they

18   wanted and specify different custodians and terms for every separate request.  Plaintiffs kept looking for

19   an excuse to declare "impasse" and try to seek the Court's reconsideration of the ESI Protocol.  Despite

20   this absurd position, Microsoft and GitHub kept trying to move the ball forward and keep focused on the

21   actual relevance and proportionality of the custodial discovery requests.  Those efforts ultimately resulted

22   in the May 28, 2024 letter described above where Plaintiffs prioritized their requests among a list of

23   dozens of custodians, and Microsoft and GitHub are processing data and running hit counts on the priority

24   custodians.

25

Plaintiffs' statement that Defendants are "attempting to cancel meet and confers" is patently false. *Prior to* the Court's order on the motion to dismiss, Microsoft and GitHub informed Plaintiffs that they would supplement their discovery responses to identify any requests to which they will maintain relevance and burden/proportionality objections in light of the final scope of the pleadings. The day after the Court's order, in response to a request for a meet-and-confer on non-custodial documents, Microsoft and GitHub reiterated their commitment to providing that supplementation within 21 days.

## VI.   <u>ISSUES BEARING ON THE PROGRESS OF THE CASE</u>

### A.   **Interlocutory Appeal**

**Plaintiffs' Position:** Plaintiffs are considering appealing this Court's order dismissing Plaintiffs' DMCA § 1202 and unjust enrichment claims with prejudice in its recent order on the Defendant's motion to dismiss the Second Amended Complaint pursuant to 28 U.S.C. § 1292(b). ECF No. 253 at 15. Should Plaintiffs move the Court to certify its order for interlocutory appeal under 28 U.S.C. § 1292(b), Plaintiffs do not believe litigation must be stayed during this appeal and that their prosecution of the remaining contract claims can continue. Plaintiffs believe the factors for granting such leave exists here: (1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation. *Id.* An immediate appeal would advance the issue of the applicability of the DMCA to generative AI products that are trained on copyrighted material and output portions of code. It would further advance the issue of appropriate remedies for breach of promises not to sell code where no remedy for doing so was contemplated or expressed in the contract.

**OpenAI's Position:** OpenAI will oppose any motion to certify interlocutory appeal of the Court's recent order. The Court's order (1) does not present a controlling question of law, as piecemeal appeals on the DMCA dismissal would not have any immediate effect on the course of the litigation; (2) Plaintiffs do not identify (and there does not exist) a substantial ground for difference of opinion on the legal issues

on which this Court ruled in the motion to dismiss; and (3) the requested appeal would not "materially advance" the termination of litigation as it would only implicate a portion of Plaintiffs' class-wide claims and would not encourage a quick end to the lawsuit.  OpenAI looks forward to more fully developing these points in the event Plaintiffs choose to file a motion to which they would be responsive.

**Microsoft and GitHub's Position:**  An interlocutory appeal is not appropriate.  The Court's decision does not involve the kind of "exceptional circumstances" that would warrant a departure from the normal process of awaiting final judgment for appellate review.  *See Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 957 (N.D. Cal. 2019).  Among other things, there are not "substantial grounds for difference of opinion" on the Court's rulings because this Court's decisions have been in line with all others in this Circuit.  *Id.*  As to both the DMCA § 1202 and unjust enrichment claims, courts in this Circuit are in agreement.  Claims of occasional out-of-circuit district court decisions following different analyses are not enough to create a substantial grounds for difference.  *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point'") (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010) (emphasis added)). And interlocutory review would serve little purpose with respect to unjust enrichment, because only the California Supreme Court can definitively interpret California law.  *See Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028-29 (9th Cir. 2000).  Nor would interlocutory review "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  As to both claims, an immediate appeal would not further the ultimate termination of the litigation but instead prolong it.

1  Dated: July 5, 2024                    By:  ___/s/ Joseph R. Saveri_____
2                                               Joseph R. Saveri

3                                          Joseph R. Saveri (State Bar No. 130064)
                                           Cadio Zirpoli (State Bar No. 179108)
4                                          Christopher K.L. Young (State Bar No. 318371)
                                           Louis A. Kessler (State Bar No. 243703)
5                                          Elissa A. Buchanan (State Bar No. 249996)
                                           William W. Castillo Guardado (State Bar No. 294159)
6                                          Holden J. Benon (State Bar No. 325847)
                                           **JOSEPH SAVERI LAW FIRM, LLP**
7                                          601 California Street, Suite 1505
                                           San Francisco, California 94108
8                                          Telephone:    (415) 500-6800
                                           Facsimile:    (415) 395-9940
9                                          Email:        jsaveri@saverilawfirm.com
                                                         czirpoli@saverilawfirm.com
10                                                        cyoung@saverilawfirm.com
                                                         lkessler@saverilawfirm.com
11                                                        eabuchanan@saverilawfirm.com
                                                         wcastillo@saverilawfirm.com
12                                                        hbenon@saverilawfirm.com

13                                         Matthew Butterick (State Bar No. 250953)
                                           1920 Hillhurst Avenue, #406
14                                         Los Angeles, CA 90027
                                           Telephone:    (323) 968-2632
15                                         Facsimile:    (415) 395-9940
                                           Email:        mb@butcoricklaw.com
16

17                                         *Counsel for Plaintiffs and the Proposed Class*

18

19

20

21

22

23

24

25

Dated: July 5, 2024

By:       */s/ Annette L. Hurst*
              Annette L. Hurst

Annette L. Hurst (State Bar No. 148738)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:     415-773-5700
Facsimile:     415-773-5759
Email:         ahurst@orrick.com

*Counsel for GitHub, Inc. and Microsoft Corporation*

Dated: July 5, 2024

By:       */s/ Joseph C. Gratz*
              Joseph C. Gratz

Joseph C. Gratz (State Bar No. 240676)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
Telephone:     415-268-7000
Facsimile:     415-268-7522
Email:         jgratz@mofo.com

*Attorneys for Defendants OPENAI, INC., OPENAI, L.P., OPENAI OPCO, L.L.C., OPENAI GP, L.L.C., OPENAI STARTUP FUND GP I, L.L.C., OPENAI STARTUP FUND I, L.P., OPENAI STARTUP FUND MANAGEMENT, LLC, OPENAI, L.L.C., OPENAI GLOBAL, LLC, OAI CORPORATION, OPENAI HOLDINGS, LLC, OPENAI HOLDCO, LLC, OPENAI INVESTMENT LLC, OPENAI STARTUP FUND SPV I, L.P., and OPENAI STARTUP FUND SPV GP I, L.L.C.,*

1

## L.R. 5-1 SIGNATURE ATTESTATION

As the ECF user whose user ID and password are utilized in the filing of this document, I attest under penalty of perjury that concurrence in the filing of the document has been obtained from each of the other signatories.

Dated: July 5, 2024

/s/ Joseph R. Saveri

Joseph R. Saveri