Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
William W. Castillo Guardado (State Bar No. 294159)
Holden Benon (State Bar No. 325847)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:        jsaveri@saverilawfirm.com
              czirpoli@saverilawfirm.com
              cyoung@saverilawfirm.com
              lkessler@saverilawfirm.com
              eabuchanan@saverilawfirm.com
              wcastillo@saverilawfirm.com
              hbenon@saverilawfirm.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| J. DOE 1, et al.,<br><br>Individual and Representative Plaintiffs,<br><br>    v.<br><br>GITHUB, INC., et al.,<br><br>                Defendants. | Case Nos.   4:22-cv-06823-JST<br>              4:22-cv-07074-JST<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO AMEND AND CERTIFY THE COURT'S JUNE 24, 2024 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: September 26, 2024<br>Time: 2:00 PM<br>Judge: Hon. Jon S. Tigar<br>Courtroom 6, 2nd Floor |

**TO THE COURT, PLAINTIFFS, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 26, 2024, at 2:00 PM. in Courtroom 6, 2nd Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Plaintiff will move for an Order to amend and certify this Court's June 24, 2024 Order Granting in Part and Denying in Part Motions to Dismiss (ECF No. 253) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, all other pleadings on file, and on such further written or oral argument as permitted by this Court.

Dated: July 24, 2024

By:      */s/ Joseph R. Saveri*
         Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
William W. Castillo Guardado (State Bar No. 294159)
Holden Benon (State Bar No. 325847)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:        jsaveri@saverilawfirm.com
              czirpoli@saverilawfirm.com
              cyoung@saverilawfirm.com
              lkessler@saverilawfirm.com
              eabuchanan@saverilawfirm.com
              wcastillo@saverilawfirm.com
              hbenon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:    (323) 968-2632
Facsimile:    (415) 395-9940
Email:        mb@buttericklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

## TABLE OF CONTENTS

I. .........INTRODUCTION..........................................................................................................1

II. .........RELEVANT BACKGROUND ......................................................................................3

III.........ARGUMENT ..................................................................................................................4

    A.........Whether Sections 1202(b)(1) or (b)(3) Include an "Identicality"
            Requirement is a Controlling Question of Law ..................................................5

    B. ........Differences of Opinion as to Section 1202(b)'s "Identicality" Requirement
            Already Exist and are Likely to Proliferate ......................................................6

    C.........An Appeal will Materially Advance this Litigation and Others Like It ...............9

    D.........The District Court Should Enter of Stay of Proceedings Pending Appeal .......12

IV.........CONCLUSION ............................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Cnty. of Sacramento*,
   No. 222CV01499WBSKJN, 2023 WL 3413672 (E.D. Cal. May 12, 2023) ........................ 5, 11

*ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*,
   667 F. Supp. 3d 411 (S.D. Tex. 2023) .............................................. 4, 7, 8

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
   634 F. Supp. 2d 1081 (E.D. Cal. 2008) ............................................ 11, 13

*Boniface v. Viliena*,
   417 F. Supp. 3d 113 (D. Mass. 2019) ..................................................... 5

*Bounce Exch., Inc. v. Zeus Enter., Ltd.*,
   No. 15cv3268 (DLC), 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) ......................... 8

*In re Cal. Title Ins. Antitrust Litig.*,
   No. 08-01341 JSW, 2010 WL 785798 (N.D. Cal. Mar. 3, 2010) .......................... 9

*Camacho v. Bridgeport Fin. Inc.*,
   2004 WL 7336833 (N.D. Cal. July 16, 2004) ......................................... 8

*Canela v. Costco Wholesale Corp.*,
   Case No. 13-cv-03598-BLF, 2018 WL 3008532 (N.D. Cal. June 15, 2018) ............... 10

*Casas v. Victoria's Secret Stores, LLC*,
   2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) ..................................... 9, 10, 11

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1982) ........................................................ 5

*DeMartini v. Johns*,
   693 F. App'x 534 (9th Cir. 2017) .................................................... 12

*Finder v. Leprino Foods Co.*,
   No. 13-cv-2059, 2017 WL 1355104 (E.D. Cal. Jan. 20, 2017) ......................... 12

*Fischer v. Forrest*,
   286 F. Supp. 3d 590 (S.D.N.Y. 2018) .............................................. 7, 8

*Friedman v. Live Nation Merch., Inc.*,
   833 F.3d 1180 (9th Cir. 2016) ........................................................ 7

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   No. 13-00496, 2015 WL 263556 (D. Haw. Jan. 21, 2015) ............................... 7

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
   No. C 10-MD-02184 JW, 2011 WL 13257346 (N.D. Cal. July 18, 2011)....................................6

*Gustavson v. Mars, Inc.*,
   No. 13-CV-04537-LHK, 2014 WL 6986421 (N.D. Cal. Dec. 10, 2014)...................................13

*Henley v. Jacobs*,
   No. C 18-2244 SBA, 2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) .........................................5

*United States ex rel Huangyan Import & Export Corp. v. Nature's Farm Prods., Inc.*,
   370 F. Supp. 2d 993 (N.D. Cal. 2005) ......................................................................................9

*Huangyun Import & Export Corp.*,
   370 F. Supp. 2d at1005..............................................................................................................9

*United States ex rel. Integra Med. Analytics LLC v. Providence Health & Servs.*,
   No. 17-1694, 2019 WL 6973547 (C.D. Cal. Oct. 8, 2019) ........................................................4

*J. B. v. G6 Hosp.*,
   No. 19-CV-07848-HSG, 2021 WL 6621068 (N.D. Cal. Dec. 16, 2021) ...................................9

*Keene Corp. v. United States*,
   508 U.S. 200 (1993) ...................................................................................................................5

*Kelly v. Arriba Soft Corp.*,
   77 F. Supp. 2d 1116 (C.D. Cal. 1999) .......................................................................................7

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
   No. CV 20-1931-DMG (EX), 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ...........................7

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir.1990) .......................................................................................................11

*Krangel v. Crown*,
   791 F.Supp. 1436 (S.D. Cal. 1992) .........................................................................................11

*Kuang v. U.S. Dep't of Defense*,
   No. 18-cv-3698, 2019 WL 1597495 (N.D. Cal. Apr. 15, 2019) ..............................................12

*Landis v. North American Co.*,
   299 U.S. 248 (1936)............................................................................................................12, 13

*Leite v. Crane Co.*,
   No. 11-00636 JMS/RLP, 2012 WL 1982535 (D. Haw. May 31, 2012)...................................10

*In re Methyl Tertiary Butyl Ether Prods. Liability Litig.*,
   399 F. Supp. 2d 320 (S.D.N.Y.2005)......................................................................................11

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ..................................................................................................4

*In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*,
    526 F. Supp 887 (N.D. Cal. 1981) ...........................................................................10

*Oracle Int'l Corp. v. Rimini St., Inc.*,
    No. 214CV01699MMDDJA, 2023 WL 4706127 (D. Nev. July 24, 2023) ...............8

*Ray v. Cal. Dep't of Soc. Servs.*,
    Case No. CV 17-4239 PA, 2017 WL 10436062 (C.D. Cal. Nov. 20, 2017).............7

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)................................................................................7, 9

*Rollins v. Dignity Health*,
    2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ............................................... 7, 8, 10

*S.E.C. v. Mercury Interactive, LLC*,
    Case No. 5:07-cv-02822-JF, 2011 WL 1335733 (N.D. Cal. Apr. 7, 2011) .......... 9, 11

*San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.*,
    No. CV 20-9663-GW-KSX, 2021 WL 4988033 (C.D. Cal. June 1, 2021) ...............6

*Silbersher v. Allergan Inc.*,
    No. 18-CV-03018-JCS, 2021 WL 292244 (N.D. Cal. Jan. 28, 2021) .......................6

*Software Pricing Partners, LLC v. Geisman*,
    No. 319CV00195RJCDCK, 2022 WL 3971292 (W.D.N.C. Aug. 31, 2022) .............8

*Splunk, Inc. v. Cribl, Inc.*,
    662 F. Supp 3d 1029 (N.D. Cal. 2023).....................................................................8

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012)..............................................................................10, 11

*Synthesis Indus. Holdings I, LLC v. U.S. Bank Nat'l Ass'n*,
    Case no. 2-19-CV-1431 JCM, 2021 WL 2406895 (D. Nev. June 11, 2021) ..........5, 6

*Thompson v. Procter & Gamble Co.*,
    Case No. C-80-3711 EFL, 1982 WL 114 (N.D. Cal. Dec. 8, 1982) .......................12

*Pettis ex rel. U.S. v. Morrison-Knudsen Co., Inc.*,
    577 F.2d 668 672 (9th Cir. 1978) ..............................................................................6

**Statutes**

15 U.S.C. § 1051(e) ...........................................................................................................6

17 U.S.C. § 1201(d)(2) ............................................................................................................2, 5

17 U.S.C. § 1202(b) ............................................................................................................*passim*

17 U.S.C. § 1206(c)(3)(B) ...............................................................................................................9

28 U.S.C. § 1292 ..............................................................................................................*passim*

**Other Authorities**

Congress. S. Rep. 105-190 (1998) ..............................................................................................6

# I.     INTRODUCTION

Plaintiffs seek to certify for interlocutory appeal a question of pure statutory interpretation in a class action of tremendous public import—precisely the type of legal issue for which interlocutory appeals were designed. Plaintiffs' class action complaint brings claims under 17 U.S.C. § 1202(b) of the Digital Millenium Copyright Act ("DMCA"), which collectively concern the removal of Copyright Management Information ("CMI") during both the Large Language Model ("LLM") training process and in the output generated by the LLM. Plaintiffs' DMCA claims are the heart of their class case: damages under the DMCA would potentially be in the billions of dollars. Whether CMI removal in the LLM training process is an issue of tremendous import is incontrovertible: Since Plaintiffs filed this case in 2022, at least five new lawsuits[1] have been brought against some of the same Defendants in this case, alleging analogous DMCA violations.

In this Court's June 24, 2024 Order Granting in Part and Denying in Part Motions to Dismiss (ECF No. 253) ("Third MTD Order"), it dismissed Plaintiffs' § 1202(b) claims, holding that those claims require that copies be "identical" in order for liability to attach. But for the Court's adoption of an "identicality" element to Plaintiffs' §§ 1202(b)(1) and (b)(3) claims—a term and legal standard that appears nowhere in § 1202 or its legislative history—Plaintiffs' DMCA claims would still be in this case. The question of whether claims under § 1202(b)(1) or (b)(3) contain an element of "identicality" is a question ripe for interlocutory appeal.

It is readily apparent that the first and second elements for interlocutory appeal under 28 U.S.C. § 1292 are met. This is a controlling question of law as to which there is a substantial ground for difference of opinion upon which reasonable jurists can disagree. This is not merely a case where Plaintiffs vigorously disagree with the Court's ruling.

---

[1] *See Concord Music Group, Inc. v. Anthropic PBC*, in the U.S. District Court for the Middle District of Tennessee, Nashville Division, No. 3:23-cv-01092 (filed Oct. 18, 2023) (same); *The New York Times Co. v. Microsoft Corp.*, in the U.S. District Court for the Southern District of New York, 1:23-cv-11195 (filed Dec. 27, 2023) (alleging violations of § 1202(b)); *Huckabee v. Bloomberg*, in the U.S. District Court for the Southern District of New York, 1:23-cv-11195 (filed Dec. 27, 2023) (same); *Raw Story Media, Inc. v. OpenAI*, in the U.S. District Court for the Southern District of New York, 1:24-cv-01514 (filed Feb. 28, 2024) (alleging violations of § 1202(b)); *Intercept Media Inc. v. OpenAI*, in the U.S. District Court for the Southern District of New York, 1:24-cv-01515 (filed Feb. 28, 2024) (same).

As a starting point, there is no dispute that the plain language of § 1202 itself does not require that a copy be "identical." The only instance of the word "identical" is found in another provision of the DMCA, 17 U.S.C. § 1201(d)(2), which provides for an exemption for liability for certain public institutions under that section of the statute. That Congress chose to include the word "identical" in one section of the DMCA but not the other presumes Congress acted intentionally and purposely in the disparate inclusion or exclusion. Indeed, nothing in the legislative materials leading up to the DMCA's passage into law suggests Congress had a different intent.

Setting aside the plain language of the statute, there is no controlling case law on this point. No Court of Appeals has spoken on this issue. The Court's own analysis of contrary precedent confirms that "there is substantial ground for difference of opinion," as to whether §§ 1202(b)(1) and (b)(3) includes an "identicality" element. Though the Ninth Circuit has not spoken on this point specifically, it has implicitly rejected an "identicality" standard for the DMCA. Given the lack of clarity from the federal circuit courts, district courts have been sharply divided. The lack of clarity on this critical question for § 1202 claims are precisely the questions ripe for interlocutory appeal.

The third element for review under § 1292(b) is also met: resolution by the Ninth Circuit will materially advance the ultimate termination of the litigation. Importantly, this is a class case wherein Plaintiffs' key claim has been dismissed. No one disputes that the bulk of Plaintiffs' damages lie in their DMCA claim. And early resolution of that key claim will advance the final resolution of this litigation. As explained by Judge Posner, "[t]hat is enough to satisfy the 'may materially advance' cause of section 1292(b)[.]" Further, appeal will result in little delay. Although pending for almost two years, this case is still in its infancy with respect to its procedural posture. Discovery has not meaningfully advanced, given the centrality of Plaintiffs' DMCA claims. Indeed, due to those claims' importance, even were Plaintiffs to prevail at trial, a separate trial would likely be required again should this Court's decision be reversed. But there is more. The certification of these "controlling questions of law" to the Ninth Circuit stretches well beyond the instant litigation. Guidance from the Ninth Circuit will not only settle the law of this Circuit but will also materially affect several analogous cases pending both within and outside this Circuit.

For these reasons and others set forth below, Plaintiffs have met their burden of demonstrating that the Court's Third MTD Order meets all three elements for § 1292(b) certification and presents the kind

of extraordinary circumstance that warrants interlocutory review. Plaintiffs therefore respectfully seek certification of this Court's June 24, 2024 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and a stay pending appeal.

## II.     RELEVANT BACKGROUND

On November 21, 2022, Plaintiffs filed their initial complaint in this matter alleging, as relevant here, that Defendants violated § 1202(b)(1) and §1202(b)(3) by removing or altering Copyright Management Information ("CMI") from Plaintiffs' licensed software code and distributing copies of that licensed code without including its CMI. ECF No. 1 ¶¶ 138–167. On May 11, 2023, the Court issued its First MTD Order upholding Plaintiffs' DMCA claims under §1202(b). ECF No.95 ("First MTD Order").

On June 8, 2023, Plaintiffs filed their First Amended Complaint (ECF No. 97) ("FAC"), which included new facts to address deficiencies the Court identified in other causes of action First Amended Complaint, ECF No. 97. When moving to dismiss the FAC, Defendants asked the Court to reconsider its decision with respect to Plaintiffs' previously upheld §1202(b) claims, arguing that such claims failed to allege facts sufficient to show that Defendants' copying was "identical" under the DMCA. ECF Nos. 107-2, 109-3. In this Court's January 3, 2024 Order Granting in Part Denying in Part Motion to Dismiss (ECF No. 189) ("Second MTD Order"), the Court found that the new facts Plaintiffs alleged showed that Plaintiffs had failed to plead that the Defendants had reproduced Plaintiffs' work in violation of the DMCA. In particular, the Court held that the DMCA required Plaintiffs to plead facts sufficient to show that output from Copilot is an "identical copy." ECF No. 189 at 15. The Court noted that Plaintiffs did not allege that Defendants had produced identical copies of Plaintiffs' works. *Id.* at 14-15. Though the Court recognized that § 1202(b)(1) only requires intentionally removing or altering CMI without the authority of the copyright owner, and is therefore distinct from § 1202(b)(3) (which makes it illegal to "distribute, [or] import for distribution . . . . . copies of works" with CMI removed or altered), the Court attached an "identicality" requirement to claims under both DMCA §§ 1202(b)(1) and (b)(3). ECF No. 189 at 15. Plaintiffs were given leave to amend to meet this standard.

On January 25, 2024, Plaintiffs filed their Second Amended Complaint (EFC No. 200) ("SAC"), which included, among other facts, new allegations showing the likelihood that Plaintiffs' and class members' licensed code would be emitted verbatim overtime as the capacity and scope of Copilot grew.

MOTION TO AMEND AND CERTIFY THE COURT'S JUNE 24, 2024 ORDER FOR INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(B)

ECF No. 200 at ¶¶ 104-07. On June 24, 2024, this Court reconfirmed its dismissal of Plaintiffs' §1202(b) claims because Plaintiffs had "failed to meet the DMCA's identicality requirement." ECF No. 253 at 5. This Court ruled that *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.,* 667 F. Supp. 3d 411 (S.D. Tex. 2023)("*ADR Int'l"*) was not binding, and instead relied on decisions within the Ninth Circuit to support the conclusion that §1202(b) included an "identicality" requirement. *Id.* at 4–5. As Plaintiffs argued, those cases did not support such a conclusion because they either never addressed the issue of identicality, relied on faulty reasoning, or misapplied or misinterpreted relevant case law.

### III.   ARGUMENT

A "district court should not hesitate to certify an interlocutory appeal" when its ruling "[i]nvolves a new legal question or is of special consequence" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009). "The trial judge has discretion to certify a decision for interlocutory review if all of the following statutory elements are met: (1) the order 'involves a controlling question of law'; (2) there is 'substantial ground for difference of opinion'; and (3) 'an immediate appeal from the order may materially advance the termination of the litigation.'" *United States ex rel. Integra Med. Analytics LLC v. Providence Health & Servs.*, No. 17-1694, 2019 WL 6973547, at *4 (C.D. Cal. Oct. 8, 2019) (quoting 28 U.S.C. § 1292(b)). The Court's Third MTD Order granting Defendants' motion to dismiss Plaintiffs' DMCA claims satisfies each of these elements such that there are compelling reasons to depart from the general rule disfavoring piecemeal appeals. Specifically, the Court's Third MTD Order includes the following two "controlling question[s] of law," 28 U.S.C. § 1292(b):

1. Whether an "identicality" standard applies to Plaintiff's §1202(b)(1) claim, which prohibits the "intentional[] remov[al] or alter[ation of] any copyright management information" from a work while "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title"; and

2. Whether an "identicality" standard applies to Plaintiffs' §1202(b)(3) claim, which prohibits the "distribut[ion] or import for distribution . . . [of] copies of works . . . knowing that copyright management information has been removed or altered" while "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."

For the reasons discussed below, this Court should certify for interlocutory appeal its dismissal of Plaintiffs' §1202(b) claims.

## A. Whether Sections 1202(b)(1) or (b)(3) Include an "Identicality" Requirement is a Controlling Question of Law

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). The "controlling question of law in an interlocutory appeal generally is a purely legal one that can be resolved quickly without delving into a particular case's facts," *Henley v. Jacobs*, No. C 18-2244 SBA, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019) (citing *Steering Comm. v. United States*, 6 F.3d 572, 575-76 (9th Cir. 1993)), and "need not be dispositive of a litigation," *See Adams v. Cnty. of Sacramento*, No. 222CV01499WBSKJN, 2023 WL 3413672, at *1 (E.D. Cal. May 12, 2023). Such "purely legal" questions are appropriate for interlocutory appeal because they involve abstract legal issues which the court of appeals can resolve quickly and cleanly. The best examples of this are the meaning of a statute, regulation, or constitutional provisions. *See, e.g.*, *Boniface v. Viliena*, 417 F. Supp. 3d 113, 123 (D. Mass. 2019) ("A controlling question of law usually involves a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than an application of law to the facts." (citations omitted)). "In the absence of controlling Ninth Circuit precedent, and in the presence of conflicting authority elsewhere, the Ninth Circuit should have the opportunity to review this question of law." *Synthesis Indus. Holdings I, LLC v. U.S. Bank Nat'l Ass'n*, Case no. 2-19-CV-1431 JCM, 2021 WL 2406895, at *2 (D. Nev. June 11, 2021) (citation and internal quotation marks omitted).

The plain language of § 1202(b) does not include the word "identical." Indeed, the DMCA contains only one mention of the word "identical"—as an exemption under Section 1201 for nonprofit libraries, archives, and educational institutions. *See* 17 U.S.C. § 1201(d)(2) ("The exemption made available under paragraph (1) shall only apply with respect to a work when an **identical** copy of that work is not reasonably available in another form.") (emphasis added). The inclusion of the word "identical" in § 1202's sister provision of the DMCA compels a singular conclusion—if Congress wanted to include an "identicality" element for § 1202 claims, it would have. *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (alteration in original, internal quotation marks omitted, citing *Russello v. United States*, 646

U.S. 16, 23 (1983)); *see also Pettis ex rel. U.S. v. Morrison-Knudsen Co., Inc.*, 577 F.2d 668 672 (9th Cir. 1978) ("We have no doubt but that under such circumstances the intent of Congress resides in the words of the statute. That is, discharge of our obligation to follow the intent of Congress requires that we assume that Congress said what it meant and meant what it said."). The legislative history of the DMCA is in accord. Indeed, nothing in the legislative materials leading up to the passage of the DMCA suggests any other intent by Congress. S. Rep. 105-190, at 31 (1998). Nonetheless, this Court reached a different conclusion.

Whether §§ 1202(b)(1) or (b)(3) requires parties to plead and prove "identicality" between the original and the copy is a purely legal question as it concerns a matter of statutory interpretation. *In re Google Inc. St. View Elec. Commc'ns Litig.*, No. C 10-MD-02184 JW, 2011 WL 13257346, at *1 (N.D. Cal. July 18, 2011) (finding a "controlling question of law" suitable for interlocutory appeal regarding a "novel question of statutory interpretation"); *San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co*., No. CV 20-9663-GW-KSX, 2021 WL 4988033, at *3 (C.D. Cal. June 1, 2021) ("The Court agrees that the language of 15 U.S.C. § 1051(e) is ambiguous and subject to statutory interpretation which is strictly a legal question. And because the statute is subject to interpretation, courts have made opposing decisions."); *Synthesis Indus. Holdings*, 2021 WL 2406895, at *2 (finding a "controlling question of law" where it involved "one of pure statutory interpretation, the interpretation and application of Fed. R. Bankr. P. 7004(h)."). Moreover, the Court of Appeals can resolve this question quickly and cleanly without delving into the factual record, and resolution of this purely legal question in favor of Plaintiffs will materially impact the outcome of litigation by reviving a claim Plaintiffs will otherwise appeal after a final judgement.

### B. Differences of Opinion as to Section 1202(b)'s "Identicality" Requirement Already Exist and are Likely to Proliferate

Also satisfied is §1292(b)'s requirement for "substantial ground for difference of opinion" as to the meaning of the statute. "Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Silbersher v. Allergan Inc.*, No. 18-CV-03018-JCS, 2021 WL 292244, at *2 (N.D. Cal. Jan. 28, 2021) (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted)). Notably, the Ninth Circuit has stated that "when novel legal issues are presented, on which fair-

minded jurists *might* reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (italics added). "[I]dentification of a sufficient number of conflicting and contradictory opinions would provide substantial ground of disagreement." *Ray v. Cal. Dep't of Soc. Servs.*, Case No. CV 17-4239 PA (SKx), 2017 WL 10436062, at *3 (C.D. Cal. Nov. 20, 2017) (quoting *Union Cnty., Iowa v. Piper Jaffray & Co., Inc.*, 525 F.3d 643 (8th Cir. 2008), cited with approval in *Couch*, 611 F.3d at 633-34); *see also Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014) ("One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed.") (citing *Couch*, 611 F.3d 629, 633 and *Reese*, 653 F.3d at 688).

Whether §§ 1202(b)(1) or (b)(3) include an "identicality" requirement is a novel issue on which no Court of Appeals has directly spoken. Notably, the Ninth Circuit has implicitly rejected an "identicality" standard for the DMCA. *See Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (holding a "'striking similarity' between the works may give rise to a permissible inference of copying" supporting a DMCA claim). Further, district courts are sharply divided.

This Court chiefly relied on *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG (EX), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) in support of its conclusion that an "identicality" requirement adheres to §§1202(b)(1) and (b)(3) claims. But as noted in *ADR Int'l*, "[a]lthough the court in *Kirk Kara* held the DMCA requires identical copies, the case law it cited does not support its holding." *ADR Int'l*, 667 F. Supp. 3d at 427. For example, the *Kirk Kara* court pointed to *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) and *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496, 2015 WL 263556, at *2 (D. Haw. Jan. 21, 2015), but neither case mentioned nor employed an identical copies requirement under the DMCA. The *Kirk Kara* court similarly cited *Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018); yet the term "identical" appears nowhere in that decision. *Fischer* also did not hold identicality was required—in the *Fischer* court's brief discussion of the issue, it indicated that Plaintiffs had not plead that "the underlying work ha[d] been *substantially* or entirely reproduced." *Id.* at 609 (emphasis added); *see also ADR Int'l*, 667 F. Supp. 3d at 427 (rejecting *Kirk Kara*'s reliance on *Fischer*).

District courts, including those within the Ninth Circuit, have held DMCA liability can attach even when the work at issue itself is not an "exact copy" or even when the copy is "altered," implying the copied

work is not identical. *See, e.g.*, *Oracle Int'l Corp. v. Rimini St., Inc.*, No. 214CV01699MMDDJA, 2023 WL 4706127, at *82 (D. Nev. July 24, 2023) (rejecting argument "that a work that removes copyright management information must be an *exact copy* of the original work") (emphasis added); *see also, e.g.*, *Software Pricing Partners, LLC v. Geisman*, No. 319CV00195RJCDCK, 2022 WL 3971292, at *5 (W.D.N.C. Aug. 31, 2022) ("Here, Geisman *altered* SPP's copyrighted documents by removing indications of the copyright or otherwise altering the documents prior to distributing to customers. Geisman, as a former employee of SPP, reasonably knew that such information was copyrighted work and knew he was altering it by changing it enough to look like his own work while maintaining a substantial similarity to the original work. Accordingly, Geisman is liable for violating the DMCA.") (emphasis added, citations omitted).

The Court's adoption of an "identicality" element for § 1202 claims is also in tension with other cases addressing DMCA violations with respect to software code specifically. In those cases, courts have recognized that CMI can be embedded within computer code itself, so removal of that CMI would necessarily mean that the infringing copy would no longer be identical. *Oracle Int'l*, 2023 WL 4706127, at *82 ("Courts have held that when a defendant 'modifie[s] source code "substantially similar" to Plaintiff's copyrighted source code,' including by replacing the author's name with its own, the defendant is liable under the DMCA" citation omitted)); *Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15cv3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015) (finding § 1202(b) liability for removing CMI that was woven into and incorporated into code). At least one court in this circuit has determined that a § 1202 claim is adequately pleaded when the copy of the software at issue was a "derivative"—and derivatives are, not identical. *Splunk, Inc. v. Cribl, Inc.*, 662 F. Supp 3d 1029, 1053-54 (N.D. Cal. 2023).

The foregoing indicates that reasonable jurists might not reach the same conclusion as this Court. The divided conclusions of district courts, the lack of guidance from any circuit (let alone the Ninth Circuit), and the contrary conclusions reached by the *ADR Int'l* and *Fischer* courts (among others), confirms that "substantial grounds for differences of opinion" on the correct legal standard already exist. *See, e.g.*, *Rollins*, 2014 WL 6693891, at *3 (finding "substantial grounds for disagreement" where "two district courts have decided this issue explicitly in conflict with this Court's decision"); *Camacho v. Bridgeport Fin. Inc.*, 2004 WL 7336833, at *1 (N.D. Cal. July 16, 2004) (finding "there is a substantial ground for difference of opinion as to a controlling question of law" where "[d]istrict courts have split

widely on the matter" and where "[t]here is no controlling authority in the Ninth Circuit").

### C. An Appeal will Materially Advance this Litigation and Others Like It

"[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 988 (citing 28 U.S.C. § 1292(b)). The Ninth Circuit settling this legal standard would materially advance not only this particular class action litigation, but numerous others challenging LLM models under the DMCA across the country. *J. B. v. G6 Hosp.*, No. 19-CV-07848-HSG, 2021 WL 6621068, at *4 (N.D. Cal. Dec. 16, 2021) ("Rather than litigating the case to the finish under a standard that will be challenged on appeal, the Court and the parties will benefit from definitive guidance from the Ninth Circuit at the outset, before time and resources are invested."). Indeed, "[w]hether an appeal may materially advance the termination of the litigation is 'linked to whether an issue of law is "controlling" in that the court should consider the effect of a reversal by the Ninth Circuit on the management of the case.'" *In re Cal. Title Ins. Antitrust Litig.*, No. 08-01341 JSW, 2010 WL 785798, at *2 (N.D. Cal. Mar. 3, 2010). And certification of interlocutory appeal will materially advance the litigation for at least four reasons:

***First***, courts have certified questions for interlocutory appeals where the "issues go to the heart of the case." *United States ex rel Huangyan Import & Export Corp. v. Nature's Farm Prods., Inc.*, 370 F. Supp. 2d 993, 1005 (N.D. Cal. 2005). Plaintiffs' § 1202 claims (their remaining federal claims) are certainly at the core of this case. *See Huangyan Import & Export Corp.*, 370 F. Supp. 2d at 1005 ("Depending on how the three issues are resolved [on interlocutory appeal], the United States might have two FCA claims, one FCA claim, no claim at all or might be in the wrong court altogether."). And that is before considering the stakes—should Plaintiffs prevail on their DMCA claim, they would be entitled to recover statutory damages "in the sum of not less than $2,500 or more than $25,000" per violation. 17 U.S.C. § 1206(c)(3)(B). And Plaintiffs have alleged tens of thousands, if not more, individual violations, amounting to potentially billions in damages. *Huangyun Import & Export Corp.*, 370 F. Supp. 2d at 1005 ("Furthermore, the stakes are large—after trebling and civil penalties, there are tens of millions of dollars in controversy."); *Casas v. Victoria's Secret Stores, LLC*, 2015 WL 13446989, at *3 (C.D. Cal. Apr. 9, 2015) (certifying interlocutory appeal and noting that an estimated $37 million amount-in-controversy for claim at issue "is not a 'life-jacket' claim; it is central to Plaintiffs' case."); *S.E.C. v. Mercury Interactive, LLC*, Case No. 5:07-

cv-02822-JF, 2011 WL 1335733, at *3 (N.D. Cal. Apr. 7, 2011) (certifying appeal where "[t]he bulk of the damages sought against Defendants arise from the § 304 claims"); *see also Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) ("[T]he completion of the litigation will take longer than if the destruction claim is out of the case, especially since that claim appears to be the plaintiffs' main one, with the disclosure claim perhaps just a life jacket.") (Posner, J.).

*Second,* and relatedly, this is a class action. The grant of an interlocutory appeal would "advance termination of litigation by increasing odds of settlement," an efficiency gain courts have recognized is particularly relevant in the context of "class action cases, where litigants would be able to more accurately predict their odds of success, scope of potential liability, and a fair estimate of the case's value." *See In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 526 F. Supp 887, 919 (N.D. Cal. 1981) (recognizing that an appeal may materially advance termination where "immediate resolution . . . will lead to increased settlements and save thousands of hours of court time"). As observed by one court in the Ninth Circuit, "especially in class actions, uncertainty over a key claim's status 'may delay settlement (almost all class actions are settled . . . ), and by doing so further protract the [case].'" *Casas*, 2015 WL 13446989, at *3 (quoting *Sterk*, 672 F.3d at 536 (Posner, J.)). "As Judge Posner explained in *Sterk*, '[t]hat is enough to satisfy the "may materially advance" cause of section 1292(b)[.]'" *Id.*; *see also Canela v. Costco Wholesale Corp.*, Case No. 13-cv-03598-BLF, 2018 WL 3008532, at *2 (N.D. Cal. June 15, 2018) ("If Canela is limited to pursuing only her individual PAGA claim . . . , the trial would involve fewer disputed issues and it would be more likely that the parties would reach a settlement given Costco's willingness to settle this case under that circumstance."); *Rollins*, 2014 WL 6693891, at *4 ("By addressing the questions now, the Court saves time and expense. If the Ninth Circuit reverses, the parties can turn to these issues sooner rather than later. And if the Court of Appeals affirms, the case can proceed on the relatively few issues that remain with greater certainty. Such certainty could even encourage a negotiated settlement, which would not just materially but completely advance the termination of this litigation.").

*Third,* courts have routinely found this requisite met where the grant of an appeal "would resolve a legal issue implicated in a large number of other cases." *See, e.g., Leite v. Crane Co.*, No. 11–00636 JMS/RLP, 2012 WL 1982535, at *7 (D. Haw. May 31, 2012) (collecting cases recognizing how the impact of an interlocutory appeal on other cases is a factor that courts "may take into account in deciding whether

to accept an appeal that has been properly certified by the district court"); *Krangel v. Crown*, 791 F.Supp. 1436, 1449 (S.D. Cal. 1992) ("Certification for appeal may also materially advance the conclusion of other cases involving this same legal issue."); *In re Methyl Tertiary Butyl Ether Prods. Liability Litig.*, 399 F. Supp. 2d 320, 324 (S.D.N.Y.2005) (stating that courts consider, in part, whether the certified issue has precedential value for a large number of cases); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir.1990) ("[T]he impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court."). Numerous other cases challenging other LLMs, almost all of them class actions, have brought similar DMCA claims. *See* note 1, *supra*. Those similarly situated will benefit from the resolution of these issues on interlocutory appeal. *See Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008) ("The opportunity to achieve appellate resolution of an issue important to other similarly situated dairies can provide an additional reason for certification . . . .") (citing *Klinghoffer*, 921 F.2d at 24 (2d Cir. 199); 16 *Wright, Miller & Coper*, Fed. Prac. & Proc., § 3930, p. 425).

**Fourth**, this case is still in an early procedural stage. Given the import of Plaintiffs' § 1202 claims, resolution of this question would eliminate duplication should the Court's dismissal of Plaintiffs' § 1202 claims be reversed after trial. *Casas*, 2015 WL 13446989, at *4("Given the centrality of Plaintiffs' call-in reporting-time claim to their overall case, and the early stage at which the issue presents itself, the Court would conclude that Plaintiffs have established that an appeal 'may materially advance' the ultimate resolution without unduly delaying the currently-planned course of litigation."). At this juncture, discovery has not materially advanced. Little effort to date would need to be duplicated and, indeed, in the event of reversal, much duplicative work to come would be prevented. *Adams v. Cnty. of Sacramento*, No. 2:22-cv-01499 WBS KJN, 2023 WL 3413672, at *2 (E.D. Cal. May 12, 2023) (stating that a "final decision on a controlling legal issue sooner, rather than later [will] save the courts and litigants unnecessary trouble and expense"). But if this case were to proceed, after which this Court's order is reversed, the parties and the Court's efforts would be undoubtedly duplicated. *See Sterk*, 672 F.3d at 536; *see also Adams*, 2023 WL 3413672, at *2 ("[A]n immediate appeal could avoid the need for two separate trials in the event this court's dismissal of Claims 3 and 4 is reversed."); *Mercury Interactive*, 2011 WL 1335733, at *3 ("A final resolution as the scope of the statute would have a significant effect on the trial of this action, and perhaps upon the

parties' efforts to reach settlement."); *Thompson v. Procter & Gamble Co.*, Case No. C-80-3711 EFL, 1982 WL 114, at *2 (N.D. Cal. Dec. 8, 1982) ("The primary reason that this Court requests review is the potential waste of judicial time and effort which would result from reversal after trial.").

Give the foregoing, the Court should certify for interlocutory appeal its Third MTD Order so that the Ninth Circuit can clarify whether §§1202(b)(1) and (b)(3) includes an identicality standard.

### D.  The District Court Should Enter of Stay of Proceedings Pending Appeal

"A district court 'has broad discretion to stay proceedings as an incident to its power to control its own docket' in an effort to promote judicial economy." *DeMartini v. Johns*, 693 F. App'x 534, 538 (9th Cir. 2017) (quoting *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997)). District courts may also order a stay of proceedings pending an interlocutory appeal. *See* 28 U.S.C. § 1292(b). Indeed, "a district judge presiding over an action from which interlocutory appeal has been granted may exercise its discretion to impose a stay of proceedings if such a stay would 'promote economy of time and effort for itself, for counsel, and for litigants." *Finder v. Leprino Foods Co.*, No. 13-cv-2059, 2017 WL 1355104, at *1 (E.D. Cal. Jan. 20, 2017) (quoting *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)).

This Court has held that the test derived from *Landis v. North American Co.*, 299 U.S. 248 (1936) provides the appropriate standard under which to consider a request to stay proceedings pending an interlocutory appeal. *Kuang v. U.S. Dep't of Defense*, No. 18-cv-3698, 2019 WL 1597495, at *2-4 (N.D. Cal. Apr. 15, 2019) (Tigar, J.). "Under this test, courts examine (1) 'the possible damage which may result from the granting of a stay'; (2) 'the hardship or inequity which a party may suffer [if the case is allowed] to go forward'; and (3) 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Id.* at *2 (alteration in original). Application of all three factors weighs in favor of granting a stay of proceedings pending appeal.

With respect to the first two *Landis* factors, no damage will result to Defendants if the Court enters a stay. The parties are still in the early stages of discovery: less than one-thousand documents have been produced to date by the three Defendants combined. No depositions have been taken. A stay of the proceedings would merely pause a case that has been moving slowly through the motion to dismiss process. In contrast to the lack of harm to Defendants, however, failing to grant a stay will cause great hardship and inequity to Plaintiffs. If the Ninth Circuit agrees with Plaintiffs that §1202(b) does not include an

"identicality" standard, Plaintiffs' DCMA claims will be revived given that this Court upheld them initially. Plaintiffs will then be forced to redo discovery, expert work, and class certification, which will be costly and burdensome. *See, e.g.*, *Gustavson v. Mars, Inc.*, No. 13-CV-04537-LHK, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014) (finding these factors met because "the need to re-brief class certification and potentially re-open discovery would involve a significant expenditure of time and resources").

The third *Landis* factor similarly favors a stay of the proceedings. Were the Ninth Circuit to disagree with this Court's interpretation of the appropriate legal standard for §§1202(b)(1) and (b)(3) claims, considerable judicial resources will be expended as the parties are forced to relitigate claims on a bifurcated timeline. "It would be a waste of judicial and party resources to proceed with the other claims while the appeal is pending." *Ass'n of Irritated Residents*, 634 F. Supp. 2d at 1094.

## IV.    CONCLUSION

For the foregoing reasons, the Court should certify for interlocutory appeals the questions of whether claims brought under §§ 1202(b)(2) and (b)(3) require an element of "identicality." The Court should also enter a stay pending the resolution of the interlocutory appeal.

Dated: July 24, 2024

By:     */s/ Joseph R. Saveri*
            Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
William W. Castillo Guardado (State Bar No. 294159)
Holden Benon (State Bar No. 325847)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:  (415) 395-9940
Email:  jsaveri@saverilawfirm.com
       czirpoli@saverilawfirm.com
       cyoung@saverilawfirm.com
       lkessler@saverilawfirm.com
       eabuchanan@saverilawfirm.com
       wcastillo@saverilawfirm.com
       hbenon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:  (323) 968-2632
Facsimile:  (415) 395-9940
Email:  mb@butericklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*